# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| WALTER PHILLIPS, On Behalf of Himself and All Others Similarly Situated, )<br><br>Plaintiff, )<br><br>v. )<br><br>MOLSON COORS BREWING COMPANY, et al. )<br><br>Defendants. ) | C.A. No. 05-604-KAJ |

## DEFENDANTS' OPENING BRIEF IN SUPPORT
## OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT

Of Counsel:

Brian T. Ortelere
Morgan Lewis & Bockius LLP
1701 Market Street
Philadelphia, Pennsylvania 19103-2921
(215) 963-5150/5201

Donald L. Havermann
Morgan Lewis & Bockius LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 739-5072

Tamsin J. Newman
Morgan, Lewis & Bockius LLP
101 Park Avenue
New York, NY 10178-0600
(212) 309-6367

Attorneys for Defendants Peter H. Coors, W. Leo Kiely III, Charles M. Herington, Franklin W. Hobbs, Randall Oliphant, Pamela Patsley, Wayne Sanders, and Albert C. Yates, Barbara Albanesi, David Barnes, Chat Chatterjee, James Fredericks, Michael J. Gannon, Robert Klugman, Michael Kruteck, Vonda Mills, Jeff Morgan, Michael Rumley, Ben Schwartz, Rob Witwer, Timothy Wolf, Katherine L. MacWilliams and Harold R. Smethhills

Michael R. Young
Antonio Yanez
Willkie Farr & Gallagher
787 Seventh Avenue
New York, NY 10019-6099
(212) 728-8000

Attorneys for Molson Coors Brewing Company

Charles F. Richards, Jr. (#701)
*richards@rlf.com*
Jeffrey L. Moyer (#3309)
*moyer@rlf.com*
Elizabeth C. Tucker (#4468)
*tucker@rlf.com*
Richards, Layton & Finger, P.A.
One Rodney Square, P.O. Box 551
Wilmington, Delaware 19899-0551
(302) 651-7700

Attorneys for Defendants Molson Coors Brewing Company, Peter H. Coors, W. Leo Kiely III, Charles M. Herington, Franklin W. Hobbs, Randall Oliphant, Pamela Patsley, Wayne Sanders, and Albert C. Yates, Barbara Albanesi, David Barnes, Chat Chatterjee, James Fredericks, Michael J. Gannon, Robert Klugman, Michael Kruteck, Vonda Mills, Jeff Morgan, Michael Rumley, Ben Schwartz, Rob Witwer, Timothy Wolf, Katherine L. MacWilliams and Harold R. Smethhills

Dated: May 31, 2006

### TABLE OF CONTENTS

Page

NATURE AND STAGE OF PROCEEDINGS ................................................................ 1

STATEMENT OF FACTS ............................................................................................... 3

    A.    Overview Of The Company, The Memphis Plan And The S&I Plan ............... 3

    B.    The Memphis Plan And The S&I Plan ........................................................... 4

        1.    Participant Contributions ..................................................................... 5

        2.    Investment Options ............................................................................... 5

        3.    The Voting Rights Of Plan Participants ............................................... 6

    C.    Plaintiff Walter Phillips ................................................................................ 7

    D.    Procedural History And The Shifting "Class Period" ................................... 8

ARGUMENT ................................................................................................................... 9

I.    PLAINTIFF LACKS STANDING TO SUE UNDER ERISA .................................. 9

    A.    The Legal Standard Under Rules 12(b)(1) and (h)(3) ................................... 9

    B.    Plaintiff Lacks Standing To Sue On Behalf Of Participants In The S&I Plan Because He Never Participated In That Plan .................................................. 10

    C.    Plaintiff Lacks Standing To Sue On Behalf Of Participants In Either The S&I Plan Or The Memphis Plan Because He Took A Full Distribution From The Memphis Plan And Is No Longer Employed By The Company ................................................................................................. 11

II.    EVEN IF PLAINTIFF HAD STANDING TO SUE UNDER ERISA, HIS PRUDENCE CLAIM (CLAIM I) FAILS TO STATE A CLAIM ............................ 14

    A.    Plaintiff's Prudence Claim Fails Because ERISA Expressly Excepts EIAPs Like The Memphis and S&I Plans From The Duty To Diversify Or Deselect Investments In Employer Stock ...................................................................... 15

        1.    EIAPs Are Statutorily Exempt From ERISA's Diversification Requirement And 10% Limitation On Employer Stock Investments ......................................................................................... 15

        2.    The Exemption From The Duty To Diversify Embodied In Section 1104(a)(2) Mandates Dismissal Of Plaintiff's Prudence Claim ........... 17

    B.    Plaintiff's Prudence Claim Fails In Any Event Because It Is Premised Upon The Purported Failure Of The Molson-Coors Merger To Realize Promised Synergies Over The Short-Term ...................................................................... 19

    C.    Plaintiff's Prudence Claim Fails Under Trust Law Principles Set Forth In *Moench v. Robertson* ...................................................................................... 21

        1.    *Moench* Compels Judicial Deference ................................................. 22

        2.    The *Moench* Presumption Requires Dismissal Of The Prudence Claim .................................................................................................... 25

    D.    Plaintiff's Prudence Claim Further Fails Because The Plan Fiduciaries Could Not Have Prevented The Alleged Loss ............................................... 27

i

## TABLE OF CONTENTS

Page

III.    EVEN IF PLAINTIFF HAD STANDING TO SUE UNDER ERISA,
        HIS MISREPRESENTATION CLAIM (CLAIM II) FAILS TO
        STATE A CLAIM .......................................................................................... 29

        A.    Plaintiff Does Not Challenge Any Fiduciary Conduct On The Part Of
              The Defendants ................................................................................ 29

        B.    The Misrepresentations Alleged Were Not Material As A Matter Of
              Law ................................................................................................... 33

        C.    Plaintiff Fails To Allege Detrimental Reliance .................................. 35

        D.    It Is Neither The Purpose Nor The Domain Of ERISA To Regulate
              Purely Corporate Behavior That Is Fully Regulated Elsewhere ......... 36

IV.     EVEN IF PLAINTIFF HAD STANDING TO SUE UNDER ERISA,
        HIS FAILURE TO MONITOR CLAIM (CLAIM III) FAILS TO STATE A CLAIM .. 36

V.      EVEN IF PLAINTIFF HAD STANDING TO SUE UNDER ERISA,
        HIS CLAIMS AGAINST THE NON-FIDUCIARY
        DIRECTOR DEFENDANTS FAIL AS A MATTER OF LAW ................................ 37

CONCLUSION ................................................................................................... 40

## TABLE OF AUTHORITIES

Abrams v. Van Kampen Funds, Inc., Civ. No. 01-C-7538, 2002 U.S. Dist. LEXIS 9814
(N.D. Ill. 2002) .................................................................................................................. 21

Acosta v. Pac. Enterprises, 950 F.2d 611 (9th Cir. 1991) .............................................. 11

Adams v. Freedom Forge Corp., 204 F.3d 475 (3d Cir. 2000) ....................................... 35

Akers v. Palmer, 71 F.3d 226 (6th Cir. 1995) ................................................................ 32

Arizonans For Official English v. Arizona, 520 U.S. 43 (1997)....................................... 9

Baker v. Kingsley, 387 F.3d 649 (7th Cir. 2004) ................................................... 29, 31, 32

Ballone v. Eastman Kodak Co., 109 F.3d 117 (2d Cir. 1997)........................................ 33

Barnes v. Lacy, 927 F.2d 539 (11th Cir. 1991) .............................................................. 33

Basic Inc. v. Levinson, 485 U.S. 224 (1988) .................................................................. 28

Bauer v. Summit Bancorp, 325 F.3d 155 (3d Cir. 2003) ................................................ 10

Becker v. Midwest Stamping & Mafg. Co. Profit Sharing Plan and Trust Admin.
Committee, No. 99-3313, 2000 U.S. App. LEXIS 15805 (6th Cir. June 29, 2000) ....... 17

Bennett v. Conrail Matched Sav. Plan Admin. Committee,
168 F.3d 671 (3d Cir 1999) ......................................................................................... 4, 30

Berger v. Edgewater Steel Co., 911 F.2d 911 (3d Cir. 1990) ......................................... 12

Blau Knox Retirement Income Plan v. White Consolidated Industrial Inc.,
998 F.2d 1185 (3d Cir. 1993) ......................................................................................... 30

Bollenbacher v. Helena Chemical Co., 934 F. Supp. 1015 (N.D. Ind. 1996) ................ 31

Burstein v. Retirement Account Plan For Employees of Allegheny
Health Research Foundation, 334 F.3d 365 (3d Cir. 2003)............................................ 29

In re Calpine Corp. ERISA Litigation, No. 03-1685, 2005 WL 1431506
(N.D. Cal. Mar. 31, 2005) ....................................................................................... passim

In re Calpine Corp. ERISA Litigation, No. 03-1685, 2005 WL 3288469
(N.D. Cal. Dec. 5, 2005) ................................................................................................ 32

Cerasoli v. Xomed, Inc., 47 F. Supp. 2d 401 (W.D.N.Y. 1999) ..................................... 32

Confer v. Custom Engineering Co., 952 F.2d 34 (3d. Cir. 1991) ................................... 37

Crawford v. Lamantia, 34 F.3d 28 (1st Cir. 1994)...................................................... 9, 13

Crowley v. Corning, Inc., 234 F. Supp. 2d 222 (W.D.N.Y. 2002)......................31, 38

Dickerson v. Feldman, 04 Civ. 7935, 2006 U.S. Dist. LEXIS 14230
(S.D.N.Y. Mar. 30, 2006)..................................................................13

In re Duke Energy ERISA Litigation, 281 F. Supp. 2d at 786
(W.D.N.C. 2003).......................................................................passim

Edgar v. Avaya, Inc., No. Civ. A. 05-3598 SRC, 2006 WL 1084087
(D.N.J. April 25, 2006)................................................................passim

In re Enron Corp. Sec., Derivative & ERISA Litigation, 284 F. Supp.
2d 511 (S.D. Tex. 2003)......................................................................38

Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101 (1989)....................11, 12

Fischer v. Phila. Electric Co., 96 F.3d 1533 (3d Cir. 1996)..............................31

Fischer v. Phila. Electric Co., 994 F.2d 130 (3d Cir. 1993)..............................33

Flanigan v. Gen. Elec. Co., 242 F.3d 78 (2d Cir. 2001)..................................32

Foltz v. U.S. News & World Report, Inc., 865 F.2d 364 (D.C. Cir. 1989)..............20

Gilquist v. Becklin, 675 F. Supp. 1168 (D. Minn. 1987),..............................13

Graden v. Conexant System, Inc., No. 05-0695, 2006 U.S. Dist. LEXIS 16176
(D.N.J. Mar. 31, 2006).............................................................12, 13, 14

Great-West Life & Annuity Insurance Co. v. Knudson, 534 U.S. 204 (2002)..............12

Haber v. Brown, 774 F. Supp. 877 (S.D.N.Y. 1991)......................................38

Hargrave v. TXU Corp., 392 F. Supp. 2d 785 (N.D. Tex. 2005)......................13, 14

Harpster v. Aarque Management., No. 4:03CV1282, 2005 WL 171920
(N.D. Ohio July 22, 2005).............................................................36, 39

Hull v. Policy Management System, No. Civ. A. 3:00-778-17, 2001 WL
1836286 (D.S.C. Feb. 9, 2000).......................................................passim

J.I Case Co. v. Borak, 377 U.S. 426 (1964)..............................................27

Kuntz v. Reese, 785 F.2d 1410 (9th Cir. 1986)......................................11, 12

Kuper v. Iovenko, 66 F.3d 1447 (6th Cir. 1995).....................................passim

Lalonde v. Textron, Inc., No. 02-334S, 2006 U.S. Dist. LEXIS 8483
(D.R.I. Mar. 1, 2006)..................................................................9, 13

Martin v. Feilen, 965 F.2d 660 (8th Cir. 1992)..........................................30

iii

Mass. Mutual Life Insurance Co. v. Russell, 473 U.S. 134 (1985)................................12

In re McKesson HBOC, Inc. ERISA Litigation, 391 F. Supp. 2d 812
(N.D. Cal. 2005)................................................................................................3, 32

In re McKesson HBOC, Inc. ERISA Litigation, No. C-00-2003-RMW,
2002 WL 31431588 (N.D. Cal. Sept. 30, 2002)..................................................19, 28

Mertens v. Hewitt Associates, 113 Ct. 2063, 508 U.S. 248 (1993)...........................29

Miller v. Rite Aid Corp., 334 F.3d 335 (3d Cir. 2003)...............................9, 10, 11

Moench v. Robertson, 62 F.3d 553 (3d Cir. 1995)................................................passim

Mortensen v. First Federal Sav. & Loan Association, 549 F.2d 884 (3d Cir. 1977)............9

Mullins v. Pfizer, Inc., 23 F.3d 663 (2d Cir. 1994)................................................33

Muth v. Dechert, Price & Rhoads, 391 F. Supp. 935 (E.D. Pa. 1975)...........................36

Ortiz v. Fibreboard Corp., 119 S. Ct. 2295 (1999)................................................11

Pa. Federal, Brotherhood of Maintenance of Way Employees v. Norfolk S. Corp.,
Civ. No. 02-9049, 2004 U.S. Dist. LEXIS 1987 (E.D. Pa. Feb. 4, 2004)......................15

Payonk v. HMV Industrial Inc., 883 F.2d 221 (3d Cir. 1989)..................................30

Pegram v. Herdrich, 530 U.S. 211 (2000)..........................................................37

Pension Benefit Guaranty Corp. v. LTV, 496 U.S. 633 (1990).................................4, 34

Peterson v. AT&T Co., Civ. No. 99-4982, 2004 U.S. Dist. LEXIS 854
(D.N.J. Jan. 9, 2004)..................................................................................33, 34, 35

Plumb v. Fluid Pump Serv., Inc., 124 F.3d 849 (7th Cir. 1997)................................29

In re: RCN Litigation, Civ. No. 04-5068, 2006 WL 753149
(D.N.J. Mar. 21, 2006)..........................................................................30, 37, 39

Register v. PNC Finance Services Group, Inc., Civ. No. 04-6097,
2005 U.S. Dist. LEXIS 29678 (E.D. Pa. Nov. 21, 2005)........................................35

In re Reliant Energy ERISA Litigation, 336 F. Supp. 2d 646 (S.D. Tex. 2004)...............32

In re Reliant Energy ERISA Litig., No. H-02-2051, 2006 U.S. Dist. LEXIS 3181 (S.D.
Tex. Jan. 18, 2006)..................................................................................32

Riley v. Murdock, 828 F. Supp. 1215 (D.N.C. 1993)................................................38

In re Schering Plough ERISA Litigation, 420 F.3d 232 (3d Cir. 2005).........................27

iv

Sereboff v. Mid Atlantic Med. Servs., Inc., 126 S.Ct. 1869 (2006) ...................................... 11

Smith v. Delta Air Lines, Inc., No. 1:04 CV 2592, 2006 WL 855777
(N.D. Ga. Mar. 31, 2006) .................................................................................. 18, 36

Stein v. Smith, 270 F. Supp. 2d 157 (D. Mass. 2003) ............................................... 3, 31

Steinman v. Hicks, 352 F.3d 1101 (7th Cir. 2003) ........................................... 21, 25, 26

Swinney v. General Motors Corp., 46 F.3d 512 (6th Cir. 1995) ..................................... 33

In re Syncor ERISA Litigation, 351 F. Supp. 2d 970 (C.D. Cal. 2004) ............................. 31

In re Syncor ERISA Litigation, No. 03-2446, 2006 WL 162699
(C.D. Cal. Jan. 10, 2006) ................................................................................. 18, 26

Tatum v. R.J. Reynolds Tobacco Co., 392 F.3d 636 (4th Cir. 2004) ................................. 21

Taylor v. Peoples Natural Gas Co., 49 F.3d 982 (3d Cir. 1995) ..................................... 29

Thomas v. Aris Corp. of America, 219 F.R.D. 338 (M.D. Pa. 2003) ................................. 35

In re Tyco International Ltd. Multidistrict Litigation, No. 02-1335-PB,
2004 WL 2903889 (D.N.H. Dec. 2, 2004) ........................................................ 32, 36, 39

In re Unisys Sav. Plan Litigation, 173 F.3d 145 (3d Cir. 1999) ................................ 29, 35

In re Unisys Sav. Plan Litigation, Civ. No. 91-3067, 1997 U.S. Dist. 19198 (E.D. Pa.
Nov. 24, 1997) ............................................................................................. 34

Varity Corp. v. Howe, 516 U.S. 489 (1996) ............................................................ 30

Walling v. Brady, 125 F.3d 114 (3d Cir. 1997) ....................................................... 38

Waste Management Inc. Securities Litigation, No. 97-C-7709, 2003 WL 1463585
(N.D. Ill. Mar. 19, 2003) .................................................................................. 3

In re Williams Co. ERISA Litigation, 271 F. Supp. 2d 1328 (N.D. Okla. 2003) ......... 16, 31, 38

Wiseman v. First Citizens Bank & Trust Co., 215 F.R.D. 507 (W.D.N.C. 2003) ................... 35

Wright v. Metallurgical Corp., 360 F.3d 1090 (9th Cir. 2004) ................................. passim

**STATUTES**

15 U.S.C. § 78n(a) ......................................................................................... 38

29 U.S.C. § 1102(a) ........................................................................................ 37

29 U.S.C. § 1002(7) ........................................................................................ 11

v

29 U.S.C. § 1104(a)(1)(B) ................................................................................................ 15

29 U.S.C. § 1104(a)(2) ............................................................................................... passim

29 U.S.C. § 1107(a) ......................................................................................................... 15

26 U.S.C. § 1107(d)(3) .................................................................................................... 15

29 U.S.C. § 1107(d)(5) .................................................................................................... 15

29 U.S.C. § 1132(a)(3) ....................................................................................................... 9

## RULES

Fed. R. Civ. P. 12(b)(1) ................................................................................................. 3, 9

Fed. R. Civ. P. 12(b)(6) ...................................................................................................... 3

Fed. R. Civ. P. 12(h)(3) ...................................................................................................... 9

## TREATISES

Canan, Michael J., Qualified Retirement Plans (West Group 2006) .................................. 20

Frankel, Michael E.S., Merger and Acquisitions Basics:  The Key Steps of Acquisitions,
Divestitures and Investments 214 (2005) ....................................................................... 20

Hitt, Michael A., Jeffrey S. Harrison & R. Duane Ireland, Mergers and Acquisitions: A
Guide to Creating Value for Stakeholders 82 (2001) ..................................................... 15

RLF1-3020509-1

## NATURE AND STAGE OF PROCEEDINGS

Plaintiff Walter Phillips ("Plaintiff" or "Phillips"), brings this action on behalf of a putative class of participants in two separate plans: (i) the 401(k) Savings Plan for Hourly Employees at the Memphis, Tennessee Brewery ("Memphis Plan") and (ii) the Coors Savings & Investment Plan ("S&I Plan"). Plaintiff claims that the stock of Coors Brewing Company ("Coors"), and later the stock of Molson Coors Brewing Company, became unsuitable for inclusion in either Plan, because the corporate merger of Coors' parent company, Adolph Coors Company, and Molson Inc. ("Molson") allegedly failed to produce immediately the merger "synergies" that had been predicted.

This putative class action is yet another addition to the growing list of "stock-drop" cases pending in the federal courts, where plaintiffs seek a recovery under the Employee Retirement Income Security Act, 29 U.S.C. § § 1001-1461 ("ERISA"), based upon the same, or virtually the same, allegations made in related cases brought under Section 10b-5 of the securities laws. The basic assertions in most of these "stock drop" cases (this case included) include allegations that the defendants: (i) knew or should have known about certain material non-public information pertaining to their employers (i.e., information about alleged corporate misrepresentations, accounting manipulations, defective products, etc.); (ii) knew or should have known that the price of the company's stock would drop when the information was revealed to the public; and (iii) knew or should have known that the company stock was an imprudent investment for the company's plan as a consequence. The complaints in these cases assert that, notwithstanding the prohibition on insider trading imposed by the securities laws, the Plan fiduciaries should have either instructed the Plan's trustee to sell the Plan's investments in company stock before the market could react to the "correct" information or furnished the "correct" information to the Plan participants so they could sell their company stock investments before the stock price dropped.

These claims – Plaintiff's claims included – are wrong as a matter of law, not only because of the obvious conflict with the insider trading prohibitions of the federal securities laws,

but also because ERISA treats company stock differently from other plan investments. Put simply, the statute relieves Plan fiduciaries of the obligations that might otherwise give legs to Plaintiff's arguments.

Nevertheless, the Court need not reach these issues for the simple reason that Phillips lacks standing to sue, and the Court's inquiry may properly end at that juncture. Aside from the insurmountable standing obstacle, there are seven additional reasons why some or all of the Counts in Plaintiff's Amended Complaint fail to state a claim upon which relief may be granted, as more fully explained below:

- The Plans, as "eligible individual account plans," are statutorily exempt from ERISA's diversification requirement and 10% limitation on employer stock investments; hence, investing Plan assets in Company stock cannot constitute a fiduciary breach, given the special statutory treatment of such investments;

- There can be no recovery as a matter of law because Plaintiff's prudence claim is improperly premised upon the purported failure of the Molson-Coors merger to realize promised synergies over the short-term, given the indisputable fact that the results of the merger must be assessed over the long-term;

- The decision of the Plans' fiduciaries to continue to offer the Coors Stock Fund as an investment option was entirely proper, particularly in light of the voting rights afforded employee-participants;

- The Plans' fiduciaries could not have prevented the alleged loss claimed by Phillips without running afoul of the federal securities laws;

- Plaintiff's misrepresentation claim fails as a matter of law because Plaintiff fails to plead each of the requisite elements, including, *inter alia*, materiality and detrimental reliance;

- Plaintiff's derivative failure-to-monitor claim fails because it is premised on his invalid claim that the Plans' fiduciaries did not act prudently; and

- Phillips' claims against the Director Defendants fail because these Defendants never acted as (and therefore never were) ERISA fiduciaries.

2

Moreover, the lawsuit, at bottom, impermissibly seeks to modify the carefully-crafted disclosure requirements of the federal securities laws, notwithstanding the fact that the Plans are putative class members in the companion securities actions.[1]  For these reasons, the Court should now grant Defendants' Motion[2] and dismiss the Amended Complaint.

## STATEMENT OF FACTS

### A.  Overview Of The Company, The Memphis Plan And The S&I Plan

On July 22, 2004, Adolph Coors Company and Molson announced they would merge. (Am. Compl. ¶¶61, 66, 68)  The deal was consummated on February 9, 2005, and the combined company is known as the Molson Coors Brewing Company (hereinafter the "Company")  (Id. ¶21).[3]  The merger was accomplished by an exchange of Coors stock for Molson stock in a transaction valued at approximately $3.6 billion.  As a result of the merger, the Company became the fifth-largest brewer by volume in the world.  (See Molson Coors, Form 10-K, 03/10/06 attached to Affidavit of Tamsin J. Newman as Exhibit 11 ("Ex. 11") at 3).  While the Amended Complaint is replete with allegations of discrete acts suggesting some grand unlawful conspiracy, entirely missing from the Amended Complaint is the undisputable fact that the Company remains

---

[1]     In re McKesson HBOC, Inc. ERISA Litig., 391 F. Supp. 2d 812, 842 (N.D. Cal. 2005); Stein v. Smith, 270 F. Supp 2d 157, 173 n.4 (D. Mass. 2003); Waste Mgmt. Inc. Sec. Litig., 2003 WL 1463585, at *2 (N.D. Ill. Mar. 19, 2003); Hull v. Policy Mgmt., Civ. No. 3:00-778-17, 2001 WL 1836286, at * 6 n.4 (D.S.C. Feb. 9, 2001).

[2]     This Motion is brought on behalf of the Company, Peter H. Coors, W. Leo Kiely III, Charles M. Herington, Franklin W. Hobbs, Randall Oliphant, Pamela Patsley, Wayne Sanders, Albert C. Yates, Timothy Wolf, and Katherine L. MacWilliams (the "Director Defendants") and Barbara Albanesi, David Barnes, Chat Chatterjee, James Fredericks, Michael J. Gannon, Robert Klugman, Michael Kruteck, Vonda Mills, Jeff Morgan, Michael Rumley, Ben Schwartz, and Rob Witwer (the "Fiduciary Defendants") (collectively, "Defendants").  Plaintiff also purports to assert his claims against Harold R. Smethhills, Adolph Coors Company's Executive Vice President and Chief Financial Officer from 1986 through 1995, even though Mr. Smethhills was not a board member during the 2003 and 2004 time-frame at issue in the Amended Complaint.  In any event, Mr. Smethhills has not been served and is not a proper defendant to this action.

[3]     Reference to "Coors" and "Molson" refers to those entities prior to the merger.  Reference to the "Company" refers to the combined company after the merger.

profitable and, as recently as May 26, 2006, paid a quarterly dividend to shareholders. (See List of Historical Dividends (Ex. 14) at 05/26/06).

Prior to the merger, Adolph Coors Company sponsored the Memphis Plan and the S&I Plan.[4] (Am. Compl. ¶39). Post-merger, the Company became the sponsor of both plans. (See Trust Agreement Between Adolph Coors Company and Fidelity Management Trust Company ("Trust Agreement") (Ex. 5) at Nineteenth Amendment).[5] The Amended Complaint refers to the "Plans" as if they were a single entity, when in fact they are, and have always been, two separate plans with discrete eligibility requirements.[6] As discussed below, Plaintiff is a former participant in the Memphis Plan, but he never participated in the S&I Plan.

**B.    The Memphis Plan And The S&I Plan**

Both the Memphis Plan and the S&I Plan are defined contribution plans. (Am. Compl. ¶39).[7] Only "covered employees" are eligible to participate in either Plan. (Memphis Plan (Ex. 1) § 2.1, at 11; S&I Plan (Ex. 3) § 2.1, at 12). In the Memphis Plan, for example, a "covered employee" generally is defined as "any Employee of the Employer who is a member of a collective bargaining unit represented by the Union." (Memphis Plan (Ex. 1) § 1.10, at 3-4). The definition of "covered employee" in the S&I Plan generally includes all non-Union employees. (S&I Plan (Ex. 3) § 1.11, at 4).

---

[4]    On July 1, 2004, the plan sponsor of the Memphis Plan changed from Coors Brewing Company to Adolph Coors Company, its parent. See Fifth Amendment to Memphis Plan (Ex. 1).

[5]    The Trust Agreement covers both the S&I and Memphis Plans. See Trust Agreement (Ex. 5) at 1, Ninth Amendment.

[6]    See Ninth Amendment to Trust Agreement (Ex. 5) (providing that "the Trustee shall maintain a separate account reflecting the equitable share of each Plan in the Trust and in all investments, receipts, disbursements and other transactions hereunder.").

[7]    A participant in a defined contribution plan is entitled only to the value of the investments purchased plus the gains and losses on those investments. See, e.g., Pension Benefit Guar. Corp. v. LTV, 496 U.S. 633, 637 n.1 (1990); Bennett v. Conrail Matched Sav. Plan Admin. Comm., 168 F.3d 671, 675 n.2 (3d Cir 1999), cert. denied, 528 U.S. 871 (1999); see also 29 U.S.C. § 1002(34).

4

## 1.    Participant Contributions

Participants in the Plans may make contributions on a pre-tax basis up to the annual dollar limitation prescribed by the Internal Revenue Code. (Memphis Plan (Ex. 1) § 3.1, at 12; S&I Plan (Ex. 3) § 3.1, at 13). Each participant's contribution is allocated to his or her 401(k) Contribution Account. (Memphis Plan (Ex. 1) § 1.1(a), at 1, Memphis Plan (Ex. 1) § 3.1, at 12; S&I Plan (Ex. 3) § 1.1(a), at 1, S&I Plan (Ex. 3) § 3.1, at 13). Although separate accounts are maintained on behalf of each participant, assets of each Plan's trust are not segregated. (Memphis Plan (Ex. 1) § 4.1, at 16; S&I Plan (Ex. 3) § 4.1, at 22). Rather, each account contains specified contributions and the increase and decrease in the net worth of the trust attributable to such contributions. (Id.). Each participant is fully vested in his or her investments at all times. (Memphis Plan (Ex. 1) § 5.1, at 17; S&I Plan (Ex. 3) § 5.1, at 23).[8]

## 2.    Investment Options

Participants in each Plan had the option to invest in up to 18 separate funds, including the Coors Stock Fund. (Memphis Plan Summary Plan Description ("Memphis SPD") (Ex. 2) at 8; S&I Plan Summary Plan Description ("S&I SPD") (Ex. 4) at 19). Particularly important to this dispute, and underscoring the unique role played by such investments, the SPDs provide that "[t]he objective of the Coors Stock Fund is to provide Participants with an opportunity <u>to participate in the future growth of Coors through the ownership of common stock</u>." (Memphis SPD (Ex. 2) at 8, emphasis added; S&I SPD (Ex. 4) at 20).[9] Participants also enjoy the unbridled

---

[8]    The S&I Plan also generally provides for regular employer matching contributions and an additional profit-based matching contribution based upon the extent to which the Company meets certain profit targets. The additional profit-based matching contribution "shall be initially invested in [Company] Stock," but participants may then direct the investment of the additional matching contribution into other investment options. (S&I Plan (Ex. 3) §3.2, at 15; S&I SPD (Ex. 4), at 16).

[9]    The SPDs further advise participants: "The Coors Stock Fund is considered a higher risk investment because, among other reasons, it consists of a single security rather than a diversified portfolio of securities. The Coors Stock Fund is not a managed or diversified investment." (Memphis SPD (Ex. 2) at 9; S&I SPD (Ex. 4) at 20).

discretion to increase or decrease their investment in the Coors Stock Fund.[10] (Memphis Plan (Ex. 1) § 9.3, at 30; Memphis SPD (Ex. 2) at 9; S&I Plan (Ex. 3) § 9.3, at 18, 34; S&I SPD (Ex. 4), at 38; Trust Agreement § 4(c) at 4).

### 3.   The Voting Rights Of Plan Participants

The gravamen of this lawsuit is that the Plans' fiduciaries, as of July 22, 2004, should have taken steps to remove Company stock from the Plans and/or should have disclosed inside information prior to divesting the Company's stock in the Plans.[11] To strip the Plans of these investments would have usurped the employees' right to vote on the merger, a right guaranteed under the certificate of incorporation. More specifically, Plan participants with investments in the Coors Stock Fund "are entitled to direct the exercise of voting rights or other rights" with respect to shares of Coors stock allocated to their accounts. (Memphis Plan (Ex. 1) § 9.4, at 30-31, Memphis SPD (Ex. 2) at 9; S&I Plan (Ex. 3) § 9.4, at 38-39, S&I SPD (Ex. 4) at 22). The Trust Agreement provides for specific rules that the trustee must follow in voting shares of Company stock at a participant's direction. (See Trust Agreement (Ex. 5) at Fourteenth Amendment).

Prior to the merger, the Coors Stock Fund held "Class B nonvoting common stock." (Memphis Plan (Ex. 1) § 1.44, at 9; S&I Plan (Ex. 3) § 1.52, at 10). Owners of such stock, despite its name, enjoyed the right to vote on any agreement of merger that requires shareholder approval under Delaware law, any sale, lease or exchange of all or substantially all of the property and assets of the company, and a dissolution of the company. (Id.; see also Molson

---

[10]     As of the date of merger, Participants were eligible to invest in the Molson Coors Brewing Company Stock Fund. (See Trust Agreement (Ex. 5) at Nineteenth Amendment).

[11]     See Am. Compl. ¶116 (Defendants "should also have directed the Plans to sell all of their shares in the Fund and should have disclosed nonpublic information prior to any sales by the Plans.").

Coors, Form 14A, 08/29/2003 (Ex. 8) at Certificate of Incorporation of Adolph Coors Company, § 4(b)).[12]

Plaintiff alleges that when the proposed merger was announced on July 22, 2004, "analysts questioned whether the merger would be profitable." (Am. Compl. ¶71). Thus, as the public debate over the beneficial effects of the proposed merger continued to heat up, and "investors continued to voice opposition to the Merger," the Plan participants (the putative class members in this lawsuit) shouldered the right – indeed, the responsibility – to vote on the destiny of their employer and, by so doing, their own futures. (Am. Compl. ¶86). Nevertheless, the Amended Complaint alleges that the Defendants' failure to discard the Company stock was a breach of fiduciary duty, notwithstanding the fact that the Plaintiff and other Plan participants would have been stripped of their shareholder suffrage rights at the very moment when such rights became most valuable to them.

**C.    Plaintiff Walter Phillips**

Phillips was employed as an hourly employee at the Coors brewery in Memphis, Tennessee from October 5, 1998 to August 12, 2005. (See Affidavit of James G. Walker (Ex. 7) ¶2; Am. Compl. ¶1). During this time, he was a member of the International Brotherhood of Teamsters, Local 1196, in Memphis, Tennessee (the "Union"). (Walker Aff. (Ex. 7) ¶3). Pursuant to the collective bargaining agreement negotiated by the Union ("Memphis CBA"), Coors made weekly contributions on Phillips' behalf to the Central States, Southeast and Southwest Areas Pension Fund. (See Memphis CBA (Ex. 6) at Article XXX, pp. 36-37).

The Memphis CBA also afforded Phillips the option to participate in the Memphis Plan. (Id. at Article XXIX, § 4, p. 35). Phillips made regular contributions to that Plan, including investments in Company stock, throughout his employment with the Company. (Walker Aff.

---

[12]    The August 29, 2003 proxy statement requested that shareholders approve the reincorporation of Adolph Coors Company in Delaware. (See Molson Coors, Form 14A, 08/29/2003 (Ex. 8)). The shareholders approved the reincorporation effective October 3, 2003. (See Molson Coors, Form 8-K, 10/6/2003 (Ex. 9)).

(Ex. 7) ¶6). Indeed, armed with the "shockingly disappointing results" disclosed on April 28, 2005 supposedly making the investment imprudent (Am. Compl. ¶98), Phillips nevertheless bought additional Company stock on <u>nine</u> subsequent occasions.[13] (Walker Aff. (Ex. 7) ¶6). About two months after commencing this action, on October 12, 2005, Phillips took all of his investments out of the Memphis Plan, including his investments in Coors stock. (<u>Id.</u> ¶7).

### D.    Procedural History And The Shifting "Class Period"

Plaintiff commenced this lawsuit on August 17, 2005. (Dkt. 1). The original Complaint defined the "Class Period" as July 22, 2004 – the date that the merger agreement was announced – to "the present," presumably the date that the Complaint was filed, August 17, 2005. (Compl. ¶1). Focusing solely on the start and end dates of the original proposed class period, the Company share price decreased in that time period from $69.84 to $62.95. (<u>See</u> Chart of Historical Stock Prices (Ex. 13)).

After the Complaint was filed, however, the Company share price continued to rise. On March 30, 2006, when Plaintiff filed his Amended Complaint, the Company share price increased to $68.35. (<u>Id.</u>). Apparently realizing that he would not be able to point to "substantial losses" if he maintained a class period that extended to "the present," Plaintiff now suggests that the Class Period should be July 22, 2004 to the date of the filing of the Amended Complaint, March 30, 2006. (Am. Compl. ¶101). Given the indisputable fact that investments in employer stock must be scrutinized over a long-term perspective, and given the peculiar role of such investments and the extraordinary non-economic advantages flowing to employees from such investments, the artifice of the "Class Period" and its shameless manipulation is clear.

---

[13]    Phillips purchased additional Company stock on May 3, 17 and 31, June 14 and 28, July 12 and 26, and August 9 and 23, 2005. (Walker Aff. (Ex. 7) ¶6).

**ARGUMENT**

I.   **PLAINTIFF LACKS STANDING TO SUE UNDER ERISA**

   A.   **The Legal Standard Under Rules 12(b)(1) and (h)(3)**

As noted, Phillips lacks standing to sue under ERISA and this handicap obviates the need for the Court to address the substantive challenges to the Amended Complaint. That being said, Rule 12(b)(1) permits a party to seek dismissal of an action for lack of subject matter jurisdiction. Once subject matter jurisdiction is challenged, the plaintiff bears the burden of proving its existence. Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). Moreover, no presumptive truthfulness attaches to Plaintiff's allegations, and the Court may properly consider extrinsic evidence to satisfy itself as to its authority to hear the case. Id. For subject matter jurisdiction to exist, "an actual controversy must be extant at all stages of review, not merely at the time the complaint was filed." Arizonans For Official English v. Arizona, 520 U.S. 43, 67 (1997) (cites and quotes omitted). Therefore, "[w]herever it appears by the suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." FED. R. CIV. P. 12(h)(3).

ERISA affords remedies only to participants, beneficiaries and fiduciaries of benefits plans. See 29 U.S.C. § 1132(a)(3); Mass. Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 139-30 (1985). The requirement that Plaintiff be a plan participant is both a standing and subject matter jurisdiction requirement. Miller v. Rite Aid Corp., 334 F.3d 335, 340-341 (3d Cir. 2003) (citations omitted). Phillips purports to bring this action as a "participant" in the Memphis Plan and the S&I Plan. (Am. Compl. ¶¶1, 5, 20). To have standing to bring this action, however, Plaintiff must meet the statutory definition of "participant" in ERISA "at the time the action was brought and maintain that status throughout [his] lawsuit." Lalonde v. Textron, Inc., No. 02-334S, 2006 U.S. Dist. LEXIS 8483, at *5 (D.R.I. Mar. 1, 2006) (citing Crawford v. Lamantia, 34 F.3d 28, 32 (1st Cir. 1994)); see also Miller, 334 F.3d at 340-343 (observing that the question is

whether the plaintiff "is" a participant, not whether he "was" a participant.) Plaintiff plainly cannot do so with respect to the S&I Plan or the Memphis Plan.

**B.    Plaintiff Lacks Standing To Sue On Behalf Of Participants In The S&I Plan Because He Never Participated In That Plan**

Phillips assumes that he has standing to sue not only on behalf of participants in the Memphis Plan, but also on behalf of participants in the larger S&I Plan.[14]  However, the Third Circuit has squarely held that to qualify as a "participant" under ERISA with standing to sue under the statute, an individual must be, "according to the language of the plan itself, eligible to receive a benefit under the plan." Bauer v. Summit Bancorp, 325 F.3d 155, 160 (3d Cir. 2003) (emphasis added).  In sum, an individual who cannot satisfy the plan's eligibility provisions "lacks standing to sue." Bauer, 325 F.3d at 160.

Although Plaintiff alleges that he participated in the S&I Plan (Am. Compl. preamble, ¶1), this is simply not true.[15]  The S&I Plan expressly excludes Coors employees who are members of a collective bargaining unit, unless the applicable collective bargaining agreement "specifically provides for participation" in the S&I Plan.  (See S&I Plan (Ex. 3), Art. 1.11, at 4).  The Memphis CBA does not specifically provide for participation in the S&I Plan, and Phillips therefore was not a participant in it.  (See Memphis CBA (Ex. 6)).  Because Phillips cannot possibly qualify for a benefit under the S&I Plan, he does not have standing to prosecute claims on behalf of participants in that Plan.  As the Ninth Circuit has held, in circumstances indistinguishable from the present case:

> If an individual does not participate in a specific plan, the
> fiduciaries of that plan generally have no fiduciary duty to him.
> The fact that a fiduciary maintains or administers general plans
> does not automatically give each participant entitlement in every

---

[14]    E.g., Am. Compl. ¶1 (alleging that Phillips is a participant in "Plans" defined, in preceding introductory statement, to embrace both Memphis Plan and S&I Plan).

[15]    See Miller, 334 F.3d at 343 ("[s]tanding is 'not [a] mere pleading requirement[,] but rather an indispensable part of the plaintiff's case, each element [of which] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of litigation.'") (internal citations omitted).

> other plan . . . . We therefore conclude that [Plaintiff] has
> standing under ERISA to bring an action for breach of fiduciary
> duty in the administration of [one plan], but lacks standing to sue
> regarding the administration of the remaining plans, in which he
> does not participate.

Acosta v. Pac. Enters., 950 F.2d 611, 617 (9th Cir. 1991).[16]  Plaintiff's claims based upon the S&I

Plan therefore must be dismissed for lack of standing and subject matter jurisdiction.

### C.    Plaintiff Lacks Standing To Sue On Behalf Of Participants In Either The S&I Plan Or The Memphis Plan Because He Took A Full Distribution From The Memphis Plan And Is No Longer Employed By The Company

Likewise, Phillips' claims must be dismissed because he fails to satisfy the statutory

definition of "participant" in either the S&I Plan or the Memphis Plan. ERISA defines

"participant" as "any employee or former employee of an employer . . . who is or may become

eligible to receive a benefit of any type from an employee benefit plan." 29 U.S.C. § 1002(7). In

Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 117-18 (1989), the Supreme Court held

that the term "participant" means either "employees in, or reasonably expected to be in, currently

covered employment," or "former employees who have a reasonable expectation of returning to

covered employment or who have a colorable claim to vested benefits." See also Miller, 334

F.3d at 341. In so holding, the Supreme Court adopted in part the definition set out in Kuntz v.

Reese, 785 F.2d 1410, 1411 (9th Cir. 1986); cert. denied, 479 U.S. 916 (1986), which found, in

turn, that "former employees whose vested benefits under the plan [had] already been distributed

in a lump sum" did not have standing to sue. The Ninth Circuit in Kuntz reasoned that to allow

such former plan participants to bring suit would, in effect, create suits for money damages not

---

[16]     The fact that the Amended Complaint is styled as a putative class action cannot change the result, i.e., Rule 23 cannot give rise to a finding that Phillips is a participant in the S&I Plan with standing to sue. Ortiz v. Fibreboard Corp., 119 S. Ct. 2295, 2314 (1999) ("no reading of the Rule [23] can ignore the [Rules Enabling Act's] mandate that rules of procedure 'shall not abridge, enlarge or modify any substantive right'") (quoting 29 U.S.C. § 2072(b)).

authorized by ERISA. Id.[17] For breaches of fiduciary duties, relief under ERISA is limited to recovery that "inures to the benefit of the plan as a whole," not to the benefit of individual participants. Russell, 473 U.S. at 140. Thus, a former employee lacks standing to sue under ERISA where he or she has taken a final distribution of vested benefits and has no reasonable expectation of returning to covered employment.[18] Firestone, 489 U.S. at 118.

The Kuntz reasoning has been applied in "stock drop" cases to require the dismissal of claims brought by former employees like Phillips, who have taken final Plan distributions. In Graden v. Conexant Sys., Inc., No. 05-0695, 2006 U.S. Dist. LEXIS 16176 (D.N.J. Mar. 31, 2006), a case involving allegations indistinguishable from those presented here, the court dismissed the suit for lack of standing based upon the plaintiff's inability to establish "participant" status. Plaintiff in Graden directed some of his investments in the Conexant Retirement Savings Plan into Conexant stock. Id. at *2. Graden alleged that the defendants violated their fiduciary duty to Plan participants by continuing to allow Conexant stock to be offered as an investment option to participants in the Plan, despite the stock's allegedly precipitous decline following Conexant's merger with another company. Id. at *2-3. Graden's employment with Conexant terminated on September 3, 2002. Id. at *3. He liquidated the balance of his Plan account in October of 2004, and filed his complaint four months later. Id.

Because Graden did not specifically allege any reasonable expectation of returning to Conexant as an employee, the court focused on whether, as a former employee, Graden had a "colorable claim to vested benefits" affording him standing under ERISA, or whether he was "merely seeking damages." Id. at *7-8. Because Graden essentially sought losses sustained as a

---

[17]    See also Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 217 (2002) (claim for money damages not authorized under section 502(a)(3) of ERISA, 29 U.S.C. §1132(a)(3)); see also Sereboff v. Mid Atlantic Med. Servs., Inc., 126 S.Ct. 1869 (2006) (confirming Great-West holding that suit could not proceed under section 502(a)(3) if merely seeking legal, rather than equitable, remedy).

[18]    E.g., Berger v. Edgewater Steel Co., 911 F.2d 911, 922 (3d Cir. 1990) (citing Kuntz and finding that former employees lacked standing because they retired and accepted payment of pension benefits before filing their complaint).

12

result of the alleged imprudent investments in Conexant stock, the court concluded that Graden sought damages, not vested benefits.[19] Thus, Graden was not a participant under ERISA because he "received all benefits due to him when he left Conexant's employment and withdrew from the Plan." Id. at *13-14. The court accordingly dismissed the case for lack of standing. Id. at *18-19.[20]

Graden establishes that Phillips lacks standing to sue because he is not a "participant" in either the Memphis Plan or the S&I Plan. Plaintiff concedes that he is a "former employee" of Coors, and does not allege that he has a reasonable expectation of returning to work for Coors. (Am. Compl. ¶1). Nor does Plaintiff have a colorable claim to vested benefits. Five days after commencing this lawsuit, Plaintiff cashed out his investments in the Memphis Plan on October 12, 2005 (and, as discussed above, he never participated in the S&I Plan). (Walker Aff. (Ex. 7)

---

[19]    As the district court further held: "Such allegations seek to claim a sum that could possibly be earned if the Defendants did not commit the alleged breaches of fiduciary duty. Additional damages that might have accrued, however, are speculative and cannot be considered as vested under ERISA... The difference between what Plaintiff's account might have earned and what it actually earned is not a benefit that is promised for, or promised under, the terms of the Plan. The remedy being sought here is not for the payment of a vested benefit, but rather a monetary damage amount for an alleged breach of fiduciary duty." Id. at *13 (internal citations and quotes omitted; emphasis in original).

[20]    Indeed, numerous courts dismissed cases under circumstances indistinguishable from the instant lawsuit because the plaintiffs lacked standing to sue under ERISA. E.g., Crawford, 34 F.3d at 30-32 (affirming summary judgment against plaintiff for lack of standing because plaintiff was former employee and took full distribution from ESOP prior to filing amended complaint); Dickerson v. Feldman, 04 Civ. 7935, 2006 U.S. Dist. LEXIS 14230, at *14 (S.D.N.Y. Mar. 30, 2006) (granting motion to dismiss for lack of standing because the plaintiff had taken a final distribution from defined contribution plan; "If this action were to go forward, the Court would be powerless to craft a remedy in which Jeremy Dickerson, a non-participant, would have any stake."); Lalonde, 2006 U.S. Dist. LEXIS 8483, at *16 (granting defendants' motion for summary judgment and denying plaintiff's class certification motion based on finding that plaintiff lacked standing because they were former employees and had received all of their benefits under the plan); Hargrave v. TXU Corp., 392 F. Supp. 2d 785, 789-90 (N.D. Tex. 2005) (finding that plaintiffs lacked standing to sue under ERISA for breach of fiduciary duty because they "are demanding that Defendants make good to the Thrift Plan for the losses sustained as a result of the investments in TXU stock. This argument most closely resembles a claim for damages to the plan.") (emphasis in original); Gilquist v. Becklin, 675 F. Supp. 1168, 1171 (D. Minn. 1987) (finding that former employees who took lump sum distributions from ESOP lacked standing to sue under ERISA), aff'd mem., 871 F.2d 1093 (8th Cir. 1988).

13

¶7).[21] Plaintiff does not allege that benefits were improperly calculated or withheld. Rather, invoking a tort-like legal theory and, indistinguishable from the plaintiff in Graden, he alleges that he and the putative class "suffered" "losses" and were "injured" as a result of Defendants' actions, and he seeks "losses" to be calculated based upon "the profits the Participants would have made if the Defendants fulfilled their fiduciary obligations," based upon the "most profitable alternative investment." (Am. Compl. ¶138, Prayer for Relief; see also Am. Compl. ¶¶ 2, 16, 107, 109).

Under these circumstances, in Graden, the difference between what Plaintiff's account might have earned and what he actually earned is not a benefit that is promised for, or promised under, the terms of the Plan. Graden, 2006 U.S. Dist. LEXIS 16176, at *13. Phillips seeks, at bottom, money damages for the alleged fiduciary breaches; hence, he lacks standing to sue. Id.[22]

The Court's inquiry may, and indeed should, end at this juncture.

## II.    EVEN IF PLAINTIFF HAD STANDING TO SUE UNDER ERISA, HIS PRUDENCE CLAIM (CLAIM I) FAILS TO STATE A CLAIM

In Claim I, Plaintiff alleges that Defendants acted imprudently by "permitting the Plans to maintain and offer the [Coors Stock] Fund as an investment option and to facilitate, direct and approve the investment of the Plans' assets in the Fund and the Fund's investment in Coors Stock instead of other investments." (Am. Compl. ¶115; emphasis added). Plaintiff further alleges that Defendants "had a duty to prevent, and should have prevented, the Plans from purchasing shares in the Fund," and that Defendants "also should have directed the Plans to sell all of their shares in the Fund." (Id. ¶116). In other words, Phillips asserts that the Plans should have ceased their offering of Coors Stock Fund as an investment option during the Class Period, notwithstanding the unique treatment afforded investments in company stock under ERISA.

---

[21]    Indeed, Plaintiff admits that he "participated in the Plans during the Class Period," and that he "was at all relevant times, a participant in the Plans." (Am. Compl. ¶¶5, 20; emphasis added).

[22]    See also Hargrave, 392 F. Supp. 2d at 789-90 (focusing on plaintiffs' demand "that Defendants make good to the Thrift Plan for the losses sustained as a result of the investments in TXU stock" and finding that they sought damages) (emphasis in original).

**A.    Plaintiff's Prudence Claim Fails Because ERISA Expressly Excepts EIAPs Like The Memphis and S&I Plans From The Duty To Diversify Or Deselect Investments In Employer Stock**

At bottom, Plaintiff asserts that Defendants should have deselected or diversified holdings in the Coors Stock Fund. (E.g., Am. Compl. ¶¶109, 110, 114-116.) This claim is fundamentally inconsistent with the statute's special treatment afforded investments in employer stock, as the provisions relieving fiduciaries of the duty to diversify make certain.

**1.    EIAPs Are Statutorily Exempt From ERISA's Diversification Requirement And 10% Limitation On Employer Stock Investments**

ERISA generally requires a fiduciary to act as a prudent person would "in the conduct of an enterprise of a like character and with like aims," which ordinarily includes "diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so." 29 U.S.C. § 1104(a)(1)(B), (C). Likewise, ERISA generally prohibits fiduciaries from investing more than 10% of plan assets in employer stock. 29 U.S.C. § 1107(a).[23] However, both the Memphis and the S&I Plans are "eligible individual account plans" or "EIAPs" under ERISA because they intended "to qualify as a profit sharing plan for all purposes of the [Internal Revenue] Code," and because they provide that "[t]he Committee may permit 'qualifying employer securities' (as defined in ERISA) to be an available investment option." (Memphis Plan (Ex. 1) Preamble at 1, Memphis Plan (Ex. 1) § 9.3 at 30; S&I Plan (Ex. 3) Preamble at 1, S&I Plan (Ex. 3) § 9.3, at 38). See 26 U.S.C. § 1107(d)(3)(A) & (B).[24] "Qualifying employer securities" include Company stock. 29 U.S.C § 1107(d)(5).

---

[23]    See Edgar v. Avaya, Inc., No. Civ. A. 05-3598 SRC, 2006 WL 1084087, at *5 (D.N.J. Apr. 25, 2006) (observing that an EIAP "is granted special treatment under ERISA which exempts it from any specific statutory diversification requirements) (citing 29 U.S.C. §1104(a)(2)); Michael J. Canan, Qualified Retirement Plans § 16.59 (West Group 2006) ("A plan which is an 'eligible individual account plan' may acquire up to 100 percent qualifying employer securities or qualifying employer real property.") ("Qualified Retirement Plans") (citations omitted).

[24]    EIAPs can include "'an individual account plan which is a profit-sharing, stock bonus, thrift or savings plan; [or] an employee stock ownership plan '" 29 U.S.C. § 1107(d)(3)(A)(i)." Pa. Fed. Bhd. of Maint. of Way Employees v. Norfolk S. Corp., Civ. No. 02-9049, 2004 U.S. Dist. LEXIS 1987 at *3 (E.D. Pa. Feb. 4, 2004).

EIAPs are exempt from the diversification requirement set forth in section 404(a)(1), 29

U.S.C. § 1104(a)(1), and quoted above:

> In the case of an <u>eligible individual account plan</u> . . , the
> diversification requirement of paragraph (1)(C) and the prudence
> requirement (only to the extent that it requires diversification) of
> paragraph (1)(B) is not violated by the acquisition or holding of
> . . qualifying employer securities . . . .

29 U.S.C. § 1104(a)(2) (emphasis added).

Congress' decision to exempt EIAPs from the duty to diversify and the 10% limitation

was no accident. EIAPs are unique creatures in ERISA's statutory scheme because, unlike

traditional pension plans, they are <u>not</u> intended primarily as retirement vehicles for employees,

and by their very nature assume more risk than does a typical diversified ERISA plan.[25] Indeed,

"[b]ut for these exceptions, EIAPs, <u>due to their very nature</u>, would run afoul of ERISA." <u>Wright</u>,

360 F.3d at 1094 (emphasis added). Rather, Congress carved out these investments for special

treatment to: (1) encourage employees' ownership and provide a financial incentive to toil to

make their employer succeed; and (2) afford employees intangible and non-economic benefits

including the right to vote their shares (a non-economic feature of this investment having

immeasurable value in these circumstances, where the Plan participants' futures are directly tied

to the merger itself).[26]

---

[25]     <u>See</u> Tax Reform Act of 1976, Pub. L. No. 94-455 § 803(h), 90 Stat. 1590 (1976) (Congress
encourages use of employee stock ownership plans, whether structured as pension, stock bonus, or
profit-sharing plans, "as a bold and innovative method of strengthening the free private enterprise system
which will solve the dual problems of securing capital funds for necessary capital growth and of bringing
about stock ownership by all corporate employees"); <u>see also</u> <u>Wright v. Metallurgical Corp.</u>, 360 F.3d
1090, 1097 n.2 (9th Cir. 2004) (citations omitted).

[26]     <u>See</u> <u>In re: Calpine Corp. ERISA Litig.</u>, No. 03-1685, 2005 WL 1431506 at *4 (N.D. Cal.
Mar. 31, 2005) ("EIAPs are exempt from these requirements because of the strong policy favoring
investment in employer stock."); <u>In re Williams Co. ERISA Litig.</u>, 271 F. Supp. 2d 1328, 1331-32
(N.D. Okla. 2003) (citation and quotes omitted) ("Congress enacted this exemption because it
believed that, in permitting unlimited investment in employer securities, such plans are a device for
expanding the national capital base among employees – an effective merger of the role of capitalist
and worker."); S. Rep. No. 95-1263, at 82 (1978) ("The Committee recognizes the general need for
voting rights under . . ESOPs . . . .") Technically, participants in the Plans are not shareholders under

16

2.    **The Exemption From The Duty To Diversify Embodied In Section 1104(a)(2) Mandates Dismissal Of Plaintiff's Prudence Claim**

Against this statutory backdrop, Plaintiff's prudence claim, based upon Defendants' purported failure to sell "all" of the Plans' shares in Coors stock (Am. Compl. ¶116), fails as a matter of law. The Ninth Circuit's decision in Wright, 360 F.3d 1090, supplies the governing rule. Imprudence claims in these circumstances run headlong into the statutory exemption from the diversification requirement and must be dismissed.

In Wright, the EIAP held employer stock while the share price fell almost 75%, from $28.94 to $7.94 per share following the merger of two companies. Id. at 1096. Participants sued, claiming that the failure to sell off the employer's post-merger shares was imprudent. Id. at 1097. The district court granted the fiduciaries' motion to dismiss, and the Ninth Circuit affirmed. Id. at 1099. In so doing, the Court questioned whether a fiduciary breach claim could ever lie for investing in employer securities, because such a claim was inconsistent with the statutory text and the underlying purposes of employee ownership:

> Interpreting ERISA's prudence requirement to subject EIAPs to an albeit tempered duty to diversify arguably threatens to eviscerate congressional intent and the guiding rationale behind EIAPs themselves.

Id. at 1097. Although the Court held that the Third Circuit's presumption of prudence framework set forth in Moench v. Robertson, 62 F.3d 553 (3d Cir. 1995), discussed below, was "difficult to reconcile with ERISA's statutory text" because EIAPs were statutorily exempt from any duty to divest themselves of employer stock, the Court nonetheless concluded that plaintiffs' prudence claim was "unavailing under any existing approach." Wright, 360 F.3d at 1097-98; see also infra at II.C

---

federal securities laws. Rather, the trustee is the record owner. See, e.g., Becker v. Midwest Stamping & Mfg. Co. Profit Sharing Plan and Trust Admin. Comm., No. 99-3313, 2000 U.S. App. LEXIS 15805, at *2 (6th Cir. June 29, 2000) (unpublished). The voting rights associated with the shares, however, "pass through" the Plans to participants. Id.

17

Building on the Ninth Circuit's ruling in <u>Wright</u>, the district court in <u>Calpine</u>, 2005 WL 1431506, further explained the controlling rule which, properly applied here, compels the dismissal of the Amended Complaint. In <u>Calpine</u>, plaintiffs claimed that the defendants breached their duty of prudence by failing to "deselect" the Calpine stock fund as an investment option – a claim the court found was "substantively the same as a claim based on failure to diversify the Calpine stock fund." <u>Id.</u> at *4. Holding that ERISA "specifically exempts fiduciaries of EIAPs from certain requirements, including the duty to diversify and the duty of prudence to the extent it requires diversification," the court held that the plaintiffs' claim "<u>failing to deselect or diversify the Calpine stock</u>" was inconsistent with the "<u>plain meaning of Section 404(a)(2)</u>, [29 U.S.C. § 1104(a)(2)]," and dismissed the claim. <u>Id.</u> (citing <u>Wright</u>, 360 F.3d at 1097) (emphasis added).[27]

In this case, Phillips alleges that Defendants should have divested the Plans of Coors stock during the Class Period (Am. Compl. ¶¶115-16) – a claim that is indistinguishable from the claims rejected in the many cases cited above. As such, ERISA section 404(a)(2), 29 U.S.C. § 1104(a)(2), compels dismissal of the entirety of Plaintiff's Amended Complaint.[28]

---

[27]    The court went on to apply the <u>Moench</u> standard of prudence, discussed <u>infra</u> at II.C, in the alternative, and reached the same result. <u>Calpine</u>, 2005 WL 1431506, at *5. The governing rule was most recently applied in <u>Smith v. Delta Air Lines, Inc.</u>, No. 1:04 CV 2592, 2006 WL 855777, at *12 (N.D. Ga. Mar. 31, 2006), in which the district court granted the defendants' motion to dismiss the prudence claim. In <u>Delta</u>, plaintiff alleged that defendants breached their prudence duty by continuing to allow the Plan to offer the Delta Common Stock Fund as an investment option and by making matching contributions in Delta stock under the ESOP portion of the Plan. <u>Id.</u> at *1, 7. At the outset, the court observed that "EIAP fiduciaries do not have a duty to diversify and do not act imprudently by not diversifying the assets of an EIAP." <u>Id.</u> at *12 (citing 29 U.S.C. §1104(a)(2)). The Court then analyzed the plaintiff's prudence claim through the prism of this express statutory limitation on the fiduciary's obligations: "Obviously cognizant of 29 U.S.C. § 1104 (a)(2)'s provisions, Plaintiff does not directly allege that the Investment Committee members failed to diversify the ESOP and the Delta Common Stock Fund. Rather, Plaintiff attempts to argue around ERISA's diversification exemption by alleging that the Savings Plan's heavy investment in Delta securities was imprudent irrespective of lack of diversification. <u>At its core, however, Count I just amounts to another form of diversification argument. Section 1104(a)(2) speaks to such an argument, exempting not only the duty to diversify but also the duty of prudence to the extent it requires diversification. Therefore, regardless of Plaintiff's phraseology, a strict application of §1104(a)(2) mandates dismissal of Count I as to the members of the Investment Committee.</u>" <u>Id.</u> at 14 (emphasis added).

[28]    <u>See also</u> <u>In re Syncor ERISA Litig.</u>, No. 03-2446, 2006 WL 162699, *3-4 (C.D. Cal. Jan. 10, 2006) (finding that based upon statutory exemption alone, breach of fiduciary duty claim based on

**B.    Plaintiff's Prudence Claim Fails In Any Event Because It Is Premised Upon The Purported Failure Of The Molson-Coors Merger To Realize Promised Synergies Over The Short-Term**

The Ninth Circuit's ruling in Wright, aside from compelling dismissal of the prudence claims under ERISA section 404(a)(2), further requires dismissal for the singular reason that the benefits of a corporate merger may not be realized for many years and ERISA is properly construed to preclude fiduciary breach claims where to countenance such suits may frustrate the goals of employee ownership (which goals may bear no relationship to the short-term stock price). Simply stated, Wright holds that claims challenging investments in employer stock in the merger context are subject to immediate dismissal for the simple reason that the benefits of a merger may not be immediately realized, the bedrock of Phillips' imprudence claims.

The merger was consummated on February 9, 2005. (Am. Compl. ¶89). As Plaintiff eagerly acknowledges, on March 1-2, 2005, the Company predicted "merger synergies" over a period of three years. (Am. Compl. ¶93). Nonetheless, Plaintiff further alleges that, "[o]nly weeks after the merger," "the public" learned that "cost synergies from the Merger would not be achieved." (Am. Compl. ¶96; emphasis added). Plaintiff bases this conclusion on the Molson Coors 2005 first quarter results, issued on April 28, 2005. (Id.). The newly-combined company just commenced operations; nevertheless, Phillips contends that the fiduciaries should have immediately declared the stock imprudent and jettisoned the investment.[29]

---

failure to diversify failed as a matter of law); In re McKesson HBOC, Inc. ERISA Litig., No. C00-2003RMW, 2002 WL 31431588, at *5 (N.D. Cal. Sept. 30, 2002) (granting motion to dismiss prudence claim based upon ERISA's statutory language; "If there is no duty to diversify ESOP plan assets under the statute, it logically follows that there can be no claim for breach of fiduciary duty arising out of a failure to diversify, or in other words, arising out of allowing the plan to become heavily weighted in company stock.").

[29]    Nevertheless, the Company is certainly on track to timely realize the anticipated synergies, as set forth in the most recent Form 10-Q filed with the Securities and Exchange Commission: "[W]e now anticipate capturing $75 million in additional cost reduction opportunities by the end of 2008, above and beyond the original $175 million three years synergies target." See Molson Coors, Form 10-Q, 5/5/06 (Ex. 12) at 42.

However the Class Period is manipulated, the conclusion is the same: Plaintiff's prudence claim – based upon the Company's alleged failure to realize merger "synergies" – fails as a matter of law. As the Court recognized in Wright, the effects of a merger can only be measured over the long-term, a rule having particular application here given the fact that one of the express goal of both Plans is to allow employees like Plaintiff to share in the Company's "growth" (see supra at Statement of Facts, B.2):

> Plaintiffs, with 20-20 hindsight, argue that the Oremet Defendants acted improvidently in declining to sell the stock and capture the merger-related "premium" before the stock price declined. The "premium" Plaintiffs emphasize is nothing more than a rise in share value following a major, though not necessarily unique, corporate development. Stock price benefits accruing from the merger could likewise be generated years into the future.

Wright, 360 F.3d at 1099 (emphasis added). As the District of Columbia Circuit has similarly held in the EIAP context, the statute mandates scrutiny of investments in employer stock from a long-term perspective: "ERISA, far from manifesting any intention to discourage long-term employee ownership, specifically favors that pattern." Foltz v. U.S. News & World Report, Inc., 865 F.2d 364, 375 (D.C. Cir. 1989).[30]

Assuming the investments in the Coors Stock Fund are subject to fiduciary standards, the inquiry is vastly premature. Only a year has elapsed since the merger was consummated. Indeed, had the Coors stock been sold off or eliminated as an investment option, Defendants most likely would have been sued for any later appreciation of the investment and the abrogation of the proxy rights. See Moench, 62 F.3d at 571-572 ("[I]f the fiduciary, in what it regards as an exercise of

---

[30]    See also Michael E.S. Frankel, Merger and Acquisitions Basics: The Key Steps of Acquisitions, Divestitures and Investments 214 (2005) ("When projecting revenue synergies . . . it is important to remember that it takes time to implement changes that drive those synergies. From training sales forces to reaching customers with a new marketing message, to integrating technologies and productizing them, it is likely that, in most cases, revenue synergies will not emerge immediately but rather over time."); Michael A. Hitt, Jeffrey S. Harrison & R. Duane Ireland, Mergers and Acquisitions: A Guide to Creating Value for Stakeholders 82 (2001) ("Time is required to determine the level of success a firm earns through a merger or acquisition.").

20

caution, does not maintain the investment in the employer's securities, it may face liability for that caution, particularly if the employer's securities thrive.").[31]  Indeed, the price of Molson Coors stock rose to $73.49 on April 28, 2006, demonstrating that any claim that there was some actionable merger-related misstatement has long ago been rejected by the market.  See List of Historical Stock Prices (Ex. 13), at 4/28/06; cf In re Duke Energy ERISA Litig., 281 F. Supp. 2d at 786, 794-95 (W.D.N.C. 2003) (observing that "Plaintiffs ignore the fact" that after the filing of the complaint, the company's stock price "exceeded the price at the beginning of the Class Period" and holding that prudence claim failed as a matter of law).[32]  Plaintiff's fiduciary breach claim is predicated upon the downward price movement of the Molson Coors stock following the issuance of the first post-merger quarterly earnings allegedly revealing that "the cost synergies from the merger would not be achieved." (Am. Compl. ¶ 96)  Such a narrow focus would frustrate the goals of employee ownership and, as such, the lawsuit should now be dismissed. Wright, 360 F.3d at 1099.

### C.    Plaintiff's Prudence Claim Fails Under Trust Law Principles Set Forth In *Moench v. Robertson*

As discussed above, the fundamental purpose of EIAPs is to align the interests of employees with their employer by encouraging employee ownership.  See supra at II.A.1.  To so align the interests of these varied constituent groups creates incentives deemed worthy by

---

[31]    See also Tatum v. R.J. Reynolds Tobacco Co., 392 F.3d 636, 639-40 (4th Cir. 2004) (reviving prudence claim brought against fiduciaries who were sued for liquidating Nabisco stock following at 60% decline, because the stock "rebounded sharply" in the months following the sale"); Steinman v. Hicks, 352 F.3d 1101, 1104 (7th Cir. 2003) ("Of course, the upside would have been truncated with the downside; if [the company] did better than the stock or bond markets – and no one could know at the time of the acquisition . . . what the future held for [the company] – then the participants . . . would be better off as a result of the trustees' retaining the [company] stock.").

[32]    Indeed, since the merger was consummated, many analysts continue to recommend the holding of Molson Coors stock today.  See http://finance.yahoo.com; see also Abrams v. Van Kampen Funds, Inc., Civ. No. 01-C-7538, 2002 U.S. Dist. LEXIS 9814, at *7-8 (N.D. Ill. May 30, 2002) (observing that analyst ratings may be considered on a motion to dismiss) (collecting cases); Kuper v. Iovenko, 66 F.3d 1447, 1460 (6th Cir. 1995).  Tellingly, Plaintiff shared the analysts' rosy predictions for the combined company, and in fact increased his investments in Molson Coors stock following the merger.  See Walker Aff. (Ex. 7) ¶6.

Congress and also affords participants important intangible rights or benefits, like the right to vote on the merger through the exercise of proxies. Cf. Moench, 62 F.3d at 570 (judicial deference to the fiduciaries' actions may be required where "there [is] some non-tangible loyalty interest served by retaining investments in employer stock"). Moreover, and aside from the voting rights and incenting the workforce, the Plan documents state that employees should be allowed to share in the "growth" of the Company, a goal necessarily frustrated by any claim that Company stock should have been stripped from the Plans. See supra at Statement of Facts, B.2. As the District of Columbia Circuit Court similarly explained, maintaining employee ownership is a goal shared by both the employees and the Defendants. The interest in employee ownership is "an interest that Plan participants share[], inseparable from their interests in the Plan itself." Foltz, 865 F.2d at 374.

The proposed Molson-Coors merger was the most significant event in the long histories of these two legendary brewing companies. Affording participants an uninterrupted interest in both the process and the outcome is consistent with, and required by, the language of the Plans and directly furthers the Congressional goal. Cf. Moench, 62 F.3d at 568 (for Congress, "the concept of employee ownership constitutes a goal in and of itself"). Defendants' actions are, at most, subject to only deferential abuse of discretion review as set forth by the Third Circuit in Moench, 62 F.3d 553. And, under Moench, Plaintiff has failed to allege facts sufficient to permit a finding that the Defendants abused their discretion.

### 1.   *Moench* Compels Judicial Deference

In Moench, the employer and EIAP sponsor, Statewide, suffered a complete financial collapse. Id. at 557. As a result, Statewide's stock fell over 98%, from $18.25 to less than $0.25 per share. Id. The Federal Deposit Insurance Company was forced to take control of bank operations and Statewide filed for bankruptcy. Id. Participants in the EIAP sued, claiming that its fiduciaries (i.e., members of the Plan Committee) should have sold off the Statewide stock before the collapse. Id. 559-60. The district court granted the Committee summary judgment

22

based upon its finding that the Statewide EIAP "mandated that the Committee invest the ESOP

assets solely in Statewide stock." Id. at 562. Reviewing the district court's decision, the Third

Circuit observed that ERISA contained specific provisions governing EIAPs, including an

exemption from the duty to diversify. Id. at 568 (citing 29 U.S.C. § 1104(a)(2)). The Court held

that the "[t]he reason for these specific rules arises out of the nature and purpose of ESOPs

themselves," i.e., to promote employee ownership and achieve "an effective merger of the roles

of capitalist and worker." Id. (citing Donovan v. Cunningham, 716 F.2d 1455, 1458 (5th Cir.

1983)).

The special goals of employee ownership compel deferential judicial review of an EIAP

fiduciary's actions:

> First, <u>by subjecting an ERISA fiduciary's decision to invest in</u>
> <u>employer stock to strict judicial scrutiny, we essentially would</u>
> <u>render meaningless the ERISA provision excepting ESOPs from</u>
> <u>the duty to diversify.</u> Moreover, we would risk transforming
> ESOPs into ordinary pension benefit plans, which then would
> frustrate Congress' desire to encourage employee ownership.
> After all, why would an employer establish an ESOP if its
> compliance with the purpose and terms of the plan could subject
> it to second-guessing? Further still, basic principles of trust law
> require that the interpretation of the terms of the trust be
> controlled by the settlor's intent. That principle is not well
> served in the long run by ignoring the general intent behind such
> plans in favor of giving beneficiaries the maximum opportunities
> to recover their losses.

Id. at 570 (emphasis added). The Court further observed that participation in the Statewide EIAP

was voluntary, and as investors in Statewide, "participants should have recognized that the value

of their interests was dependent upon Statewide's performance." Id.

With the general policies behind EIAPs as the starting point, the Court likened the

Statewide EIAP to a trust under which the trustee is either "mandated or permitted" to make an

investment in employer stock. Id. at 571 (citing Restatement (Third) of Trusts § 228 (1992)

("Restatement")). If a trust requires the fiduciary to invest in a particular stock, "the trustee must

comply unless 'compliance would be impossible . . . or illegal' or a deviation is otherwise

approved by the court." Id. (citing Restatement § 228 cmt. e) (emphasis added). If a trust only allows or permits a particular investment, the trustees are subject to deferential judicial review. Id.

The Moench Court was confronted with a situation in which the Statewide fiduciary was "not absolutely required to invest in employer securities but [was] more than simply permitted to make such investments." Id. The Third Circuit thus set forth an abuse of discretion standard applicable to such permissive investments in employer stock:

> [W]hile the fiduciary [of an ESOP] presumptively is required to invest in employer securities, there may come a time when such investments no longer serve the purpose of the trust, or the settlor's intent. Therefore fiduciaries should not be immune from judicial inquiry, as a directed trustee essentially is, but also should not be subject to the strict scrutiny that would be exercised over a trustee only authorized to make a particular investment. Thus, a court should not undertake a de novo review of the fiduciary's actions . . . . Rather, the most logical result is that the fiduciary's decision to continue investing in employer securities should be reviewed for an abuse of discretion.

Id. at 571 (citations omitted) (emphasis added). Stated differently, "an ESOP fiduciary who invests the assets in employer stock is entitled to a presumption that it acted consistently with ERISA by virtue of that decision," but "the plaintiff may overcome that presumption by establishing that the fiduciary abused its discretion by investing in employer securities." Id. An abuse of discretion can be shown only if the plaintiff demonstrates that, "owing to circumstances not known to the settlor and not anticipated by him," the making of the investment would "defeat or substantially impair the accomplishment of the purposes of the trust." Id. at 571 (citing Restatement (Second) Trusts § 227 comment g).[33]

---

[33]    See also Kuper, 66 F.3d at 1459 (adopting the Third Circuit's standard in Moench and holding that the presumption of prudence only can be overcome "by showing that a prudent fiduciary acting under similar circumstances would have made a different investment decision").

    2.      **The *Moench* Presumption Requires Dismissal Of The Prudence Claim**

As described above, the operative documents gave Plan participants an opportunity to vote on the merger and the fiduciaries could not strip the Plans of the investments in employer stock and, by so doing, deprive employees of the right to pass on the merger (a right secured in the Plan documents), particularly where there is no allegation that the Company's prospects are imperiled. As such, this Court must review the fiduciaries' actions under the deferential <u>Moench</u> standard. An abuse of discretion can be established only if, due to circumstances unknown and unanticipated by the Company, investment in Coors stock would "defeat or substantially impair the accomplishment of the purposes" of the EIAP. <u>Moench</u>, 62 F.3d at 571. As explained by the Ninth Circuit in <u>Wright</u>, this occurs only when "a precipitous decline in the employer's stock is <u>combined</u> with evidence that the company is on the brink of collapse or undergoing serious mismanagement." <u>Wright</u>, 360 F.3d at 1098 (emphasis in original). Under those circumstances, employees are likely to lose their stock ownership and voting rights regardless of the EIAP's holdings because their employer will cease operating or go bankrupt, regardless of who owns its shares (precisely what happened in <u>Moench</u>).

In <u>Wright</u>, the stock price during the class period decreased from $28.94 to $7.94, a 73% drop. <u>Id.</u> at 1096. Despite this steep decline in stock price, the Ninth Circuit concluded that there was no breach of fiduciary duty even under the Third Circuit's approach:

> <u>Mere stock fluctuations, even those that trend downward significantly, are insufficient . . . to rebut the Moench presumption.</u> . . . The *Moench* standard does not compel fiduciaries to permit further diversification of EIAP pension plans upon each subsequent rise in share value attributed to a merger or, for that matter, any other major corporate development.

Id. at 1098-99 (citations omitted; emphasis added). Critically, in concluding that the fiduciaries did not abuse their discretion, the Court of Appeals looked to the employer's "earnings and financial fundamentals," not to its stock price. Id.[34]

Plaintiff's Amended Complaint does not sufficiently allege that the Plans' fiduciaries abused their discretion. As the Moench and Wright courts make plain, the only way for an investment in employer stock to defeat or substantially impair the purposes of an EIAP is if the employer's business was destined to fail in the immediate future – such that the Plans' goals would not be fulfilled over the long-term regardless of whether the Plans hold employer stock. See Moench, 62 F.3d at 571; Wright, 360 F.3d at 1098-99. Plaintiff does not allege that the Company's business was (or is) destined to fail, nor could he. In re Duke Energy ERISA Litig., 281 F. Supp. 2d at 794-95;[35] see also supra at Statement of Facts at A, II B. As noted, the Company remains profitable and continues to pay dividends. Id. There is no allegation that Molson Coors is immediately destined to fail and any contention that the fiduciaries should have

---

[34]    Like the Ninth Circuit in Wright, courts have consistently held that even where there is a precipitous decline in the employer's stock price, there is no breach of fiduciary duty for maintaining investments in employer stock, absent cataclysm to the plan sponsor. E.g., Steinman, 352 F.3d at 1106 (observing that plaintiffs did not attempt to demonstrate company's "impending collapse," and accordingly affirming summary judgment for administrators with respect to breach of fiduciary duty claim, despite 32% drop in share price); Kuper, 66 F.3d at 1459-60 (finding that plaintiffs had failed to show that a hypothetical prudent fiduciary would have sold employer stock where the price of the stock "fluctuated significantly" and "several investment advisors recommended holding" the stock, and accordingly affirming judgment in defendants' favor, despite 80% drop in share price); In re Syncor ERISA Litig., 2006 WL 162699 at *6 (taking judicial notice of plan sponsor's financial statements showing an increase in revenues and profits, finding that "these financial statements show that [the company's] viability was not threatened throughout the class period and was not subject to the short of deteriorating financial circumstances that must be shown to rebut the Moench presumption," and accordingly entering summary judgment against plaintiffs); Calpine, 2005 WL 1431506, at *5-6 (taking judicial notice of company's financial statements, concluding that the company was a "viable concern throughout the alleged class period and was not in the sort of deteriorating financial circumstances that must be pled in order to rebut the presumption of prudence" and accordingly dismissing breach of fiduciary duty claim under Rule 12(b)(6)); In re Duke Energy ERISA Litig., 281 F. Supp. 2d at 795 (taking judicial notice that the plan sponsor "is a solid, viable company, far from 'impending collapse,' and not in 'dire circumstances,'" and accordingly granting motion to dismiss breach of fiduciary duty claim despite 42% drop in share price).

[35]    See also Steinman, 352 F.3d at 1106; In re Syncor ERISA Litig., 2006 WL 162699 at *3; Calpine, 2005 WL 1431506, at *5-6; In re Duke Energy ERISA Litig., 281 F. Supp. 2d at 795.

jettisoned the stock would have denied participants the right to vote their shares, one of the intangible rights secured by the Congressional scheme.[36]  Plaintiff's prudence claim fails as a matter of law.[37]

### D.    Plaintiff's Prudence Claim Further Fails Because The Plan Fiduciaries Could Not Have Prevented The Alleged Loss

Phillips alleges that "Defendants concealed material, non public facts from Participants and provided misleading, inaccurate and incomplete information to them regarding the nature of Defendants' improper activities, as well as the true underlying values of Coors Stock offered by the Plans, misrepresenting its soundness as an investment vehicle." (Am. Compl. ¶108).  This paragraph of the Amended Complaint is not unique.  The Amended Complaint is cluttered with numerous other allegations that material non-public information was known to the Defendants, and this knowledge should have triggered an obligation on the part of the Defendants to take steps to "divest[] the Plans from Company Stock." (Am. Compl. ¶109).  In fact, there were no steps that the Defendants lawfully could have taken to prevent the loss claimed by Phillips, requiring the immediate dismissal of their claims.

Defendants could not have simply instructed the EIAP trustee to divest the Plans of Company stock.  If Defendants were in possession of material inside information, as pled, then the securities laws – specifically, Section 10(b) of the Securities and Exchange Act of 1934, 15

---

[36]      Cf. J.I Case Co. v. Borak, 377 U.S. 426, 431 (1964) ("[F]air corporate suffrage is an important right that should attach to every equity security").  The fact that participants "directed" their investments and, by so doing, affirmatively chose to have the opportunity to vote on the merger further compels judicial deference and the immediate dismissal of the lawsuit.  See supra at II.C.2; Moench, 62 F.3d at 570.

[37]      Given the peculiar circumstances presented here, the Third Circuit's dictum in In re Schering Plough ERISA Litigation, 420 F.3d 232, 238 n 5 (3d Cir. 2005) has no application.  The Court of Appeals there noted in passing that the plan at issue made the investment in employer securities wholly discretionary; hence, the abuse of discretion standard of Moench might not govern.  Simply stated, given the special role of proxy voting in the context of a merger, the plan statements speaking to the role of the employer stock investment (affording participants an opportunity to share in the "growth" of the company, see supra at Statement of Facts, B 2), the Plans' pass-through voting provisions and the participant-directed nature of the Plans, application of the abuse of discretion standard compels the immediate dismissal of this suit, assuming the Schering Plough Court's opinion is not dictum.

U.S.C. 78j(b), and Regulation FD, 17 C.F.R. § 243.100 – would have prohibited the Defendants from either disclosing the information to the EIAP trustee (followed by a subsequent sale by the EIAP trustee) or directing the EIAP trustee to sell the company stock based upon the information. Indeed, as Judge Chesler recently observed in indistinguishable circumstances in <u>Avaya</u>: "If . . . the Defendants proceeded to divest the Plans of their holdings in Avaya stock prior to any public disclosure of the allegedly adverse information, the Defendants would be in violation of federal securities laws that prohibit insider trading." 2006 WL 1084087, at *10.[38]

Disclosure of the material non-public information to Plan participants, another path suggested by Plaintiff (Am. Compl. ¶¶109, 116), would not have prevented the alleged loss. The efficient markets theory, adopted by the Supreme Court in <u>Basic Inc. v. Levinson</u>, 485 U.S. 224, 246-247 (1988), dictates that the market price of a publicly-traded security will immediately reflect all public information bearing on the value of the stock.[39] Phillips contends that Defendants should have refused to purchase additional Company stock during the Class Period. (Am. Compl ¶138). Assuming, without conceding, that this proposed solution would be permissible under Section 10(b), Plaintiff's potential recovery necessarily would be limited to alleged losses associated with additional purchases of Company stock during the proposed Class Period. It would <u>not</u> include any purported losses associated with Company stock purchased and held by the Plans prior to the Class Period, because such any such purported losses would have occurred in any event upon disclosure of the material non-public information. At best, Plaintiff can seek relief limited to new purchases of Company stock during the proposed Class Period.

---

[38]    See also <u>In re McKesson</u>, 2002 WL 31431588, at *6-7 ("Fiduciaries are not obligated to violate the securities law in order to satisfy their fiduciary duties.").

[39]    See also <u>Avaya, Inc.</u>, 2006 WL 1084087, at * 9 (observing that even if defendants had disclosed alleged adverse information, "such a disclosure would have resulted in a swift market adjustment," and "the Plans would have sustained the same losses" regardless); <u>In re McKesson</u>, 2002 WL 31431588, at *6-7 (there is no means for the fiduciary to avoid loss to the plan arising from the disclosure of adverse information)

## III.    EVEN IF PLAINTIFF HAD STANDING TO SUE UNDER ERISA, HIS MISREPRESENTATION CLAIM (CLAIM II) FAILS TO STATE A CLAIM

Plaintiff's misrepresentation claim fails at the outset because, as explained above, investments in Company stock were (and are) prudent when measured against the peculiar policy goals furthered by EIAPs. As such, the claimed misrepresentations or omissions could not have caused an actionable loss, and the Court may, and indeed should, immediately dismiss Claim II.[40] Even if the Court were to consider the specific allegations in the Amended Complaint, Phillips' misrepresentation claims fail. Specifically, to establish a claim for breach of fiduciary duty based on alleged misrepresentations, a plaintiff must establish each of the following: (1) the defendant's status as an ERISA fiduciary; (2) a misrepresentation on the part of the defendant; (3) the materiality of that misrepresentation; and (4) detrimental reliance by the plaintiff on the misrepresentation. See Burstein v. Ret. Account Plan For Employees of Allegheny Health Research Found., 334 F.3d 365, 384 (3d Cir. 2003). Here, Plaintiff fails to adequately plead each of the requisite elements.

### A.    Plaintiff Does Not Challenge Any Fiduciary Conduct On The Part Of The Defendants

The misrepresentation claims must be dismissed for the singular reason that the challenged conduct was not fiduciary in nature. By way of background, ERISA defines a fiduciary "in functional terms of control and authority over the plan." Mertens v. Hewitt Assocs., 113 Ct. 2063, 508 U.S. 248, 262 (1993) (emphasis in original). That is, a "person may be ERISA fiduciary for some purposes, but not for others." Baker v. Kingsley, 387 F.3d 649, 660 (7th Cir. 2004).[41] An ERISA fiduciary may, for example, wear "two hats": one as a fiduciary of the plan

---

[40]    See, e.g., In re Unisys Sav. Plan Litig. ("Unisys II"), 173 F.3d 145, 159 (3d Cir. 1999) (fiduciary misrepresentation and omission claims not actionable where plaintiff could "not prove that any alleged failures to disclose caused the participants to suffer damages").

[41]    See also Plumb v. Fluid Pump Serv., Inc., 124 F.3d 849, 854 (7th Cir. 1997) (when considering breach of fiduciary duty claim based on misrepresentations, "[w]e must determine, therefore, whether [defendant] was a fiduciary with respect to the activity of notifying plan participants and beneficiaries") (emphasis added).

and another as an employer of the corporate plan sponsor. Varity Corp. v. Howe, 516 U.S. 489,

504 (1996).[42] This distinction between fiduciary and business conduct is particularly critical with

respect to ERISA plans holding employer stock because "[v]irtually all of an employer's

significant business decisions affect the value of its stock, and therefore the benefits that ESOP

plan participants will ultimately receive." Martin v. Feilen, 965 F.2d 660, 666 (8th Cir. 1992).[43]

Accordingly, fiduciary duties will only attach to communications where there is some intentional

connection between the communication and the future of participant benefits or the future of the

plan itself, connections wholly absent here. Varity, 516 U.S. at 505. The absence of any

allegations suggesting that Phillips himself considered any of the supposed misstatements further

establishes that the challenged statements were not made in a fiduciary capacity.

The New Jersey district court, for example, on indistinguishable facts, held that

statements regarding a company's growth made to the market through press conferences and

national media networks that allegedly affected the price of plan-owned company stock were not

actionable under ERISA. In re: RCN Litig., Civil No. 04-5068, 2006 WL 753149, at *11 (D.N.J.

Mar. 21, 2006). More specifically, the court found as a matter of law that the statements were not

fiduciary communications:

> The statements cited in the Plaintiffs' Complaint were all made
> by the Company or officers of the Company – none of whom
> were acting in the capacity of the Plan's administrator. None of
> these statements, regardless of truth or falsity, were made in any
> fiduciary capacity regarding the Plan.

---

[42]    See e.g., Bennett, 168 F.3d at 679; Taylor v. Peoples Natural Gas Co., 49 F.3d 982, 984 n.1
(3d Cir. 1995); Blau Knox Ret. Income Plan v. White Consol. Indus. Inc., 998 F.2d 1185, 1189 (3d
Cir. 1993) (a decision to transfer the pension plans was a "corporate decision outside the scope of
ERISA"); Payonk v. HMV Indus. Inc., 883 F.2d 221, 225 (3d Cir. 1989).

[43]    See also Hull, 2001 WL 1836286, at *4 (fiduciary status cannot be imposed on ordinary
business decisions or statements about corporate finances simply because statements or decisions
impact plan finances).

30

Id. at *12.[44]  See also Baker, 387 F.3d at 663 (failure to disclose information not challengeable under fiduciary standards and "to create a new fiduciary duty, as plaintiffs request [would] run the risk of disturbing the carefully delineated corporate disclosure laws"); Crowley v. Corning, Inc., 234 F. Supp. 2d 222, 228 (W.D.N.Y. 2002) (alleged misrepresentations were not actionable under ERISA because they were not fiduciary communications).

Likewise, here, the only communications identified in the Amended Complaint are those made to the market as a whole:  SEC filings, press releases, and conference calls with analysts. (Am. Compl. ¶¶68-70, 78-81, 89-95).  Plaintiff challenges, by way of example, statements like the following contained in an October 28, 2004 press release:  "For the 13-week quarter ended September 26, 2004, the company achieved consolidated new sales of $1.10 billion, a 5.3 percent increase from third quarter 2004." (Am. Compl. ¶77).  Similarly, Plaintiff incorporates into the Amended Complaint a few slides from an October 2004 presentation to analysts while failing to: i) point to the additional slides speaking to the many risks attendant to the proposed merger and ii) allege that he himself considered any of these statements.  (Am. Compl. ¶76).

As such, none of these communications were specifically directed to Plan participants and none had any relationship to plan administration.  Indeed, "[a] corporation could not function if ERISA required complete disclosure of every facet of these on-going activities." Fischer v. Phila. Elec. Co., 96 F.3d 1533, 1539 (3d Cir. 1996) [45]  Accordingly, as a matter of law, these

---

[44]    See also In re Syncor ERISA Litig., 351 F. Supp. 2d 970, 987 (C.D. Cal. 2004) (statements made to the market are not made in a fiduciary capacity; Hull, 2001 WL 1836286, at *4 (same); In re Williams Co., 271 F. Supp. at 1338 (same); Stein v. Smith, 270 F. Supp. 2d at 173 (general statements made in press releases to the public at large are not acts of "plan administration").  In addition, the "preparation of reports required by government agencies" is not a fiduciary function. Bollenbacher v. Helena Chem. Co., 934 F. Supp. 1015, 1023 (N.D. Ind. 1996) (quoting 29 C.F.R. § 2509.75-8, D-2(5)).

[45]    The Court further explained "[e]very business must develop strategies, gather information, evaluate options, and make decisions.  Full disclosure of each step in this process is a practical impossibility." Fischer, 96 F.3d at 1539.

statements are not fiduciary communications.[46]  As one court held in finding that communications
were not fiduciary functions actionable under ERISA, "[s]uch statements are routinely made . . .
in any business, and to hold that they give rise to a fiduciary duty would be to expand ERISA's
reach well beyond what is warranted by the statute itself or under the case law." Cerasoli v.
Xomed, Inc., 47 F. Supp. 2d 401, 409-10 (W.D.N.Y. 1999) (emphasis added, citation omitted).[47]

      In short, each of these communications "at its core" is a corporate business
communication, not one of benefit plan administration.  See Flanigan v. Gen. Elec. Co., 242 F.3d
78 (2d Cir. 2001), 242 F.3d at 88.  Hence, they are not actionable under ERISA.

---

[46]     See In re: Calpine Corp. ERISA Litig., No. 03-1685, 2005 WL 3288469, at *9 (N.D. Cal.
Dec. 5, 2005) (dismissing breach of fiduciary duty misrepresentation claims because "general
statements made in press releases are not acts of plan administration.") (internal citation and
quotations omitted).

[47]     Plaintiff's argument seems to be that every communication about the business, whether to the
market, to the public, or to a customer is subject to ERISA's fiduciary duties merely because an
ERISA plan holds employer stock and those activities may impact the stock price.  The statute cannot
be construed so broadly.  Cf. Akers v. Palmer, 71 F.3d 226, 229 (6th Cir. 1995) ("ERISA is designed
to accomplish many worthwhile objectives, but the regulation of purely corporate behavior is not one
of them.").  Here, moreover, the seeming premise of the Amended Complaint is that the price of
Company stock was inflated in the market because of communications made to the market.  It is
indisputable that these communications are regulated by federal securities laws that have been
carefully crafted to both protect investors and to deter meritless litigation.  To subject these
communications to additional regulation under ERISA would "run the risk of disturbing the carefully
delineated corporate disclosure laws." Baker, 387 F.3d at 662.  See also In re Tyco Int'l Ltd.
Multidistrict Litig., No. 02-1335-PB, 2004 WL 2903889, at *6 (D.N.H. Dec. 2, 2004) ("Although
plaintiffs plainly had a right to expect that [defendant] would refrain from making material
misstatements in its SEC filings, that expectation must be enforced under the securities laws rather
than ERISA."); In re McKesson, 391 F. Supp. 2d at 842 ("The Court is unwilling to create new law
under ERISA when Plaintiffs may obtain the same relief elsewhere by conventional means."
Moreover, attaching a plan document to the company's SEC filings does not constitute fiduciary
activity. In re Reliant Energy ERISA Litig., 336 F. Supp. 2d 646, 662-63 (S.D. Tex. 2004) ("To the
extent Plaintiff construes [company] to be a fiduciary... simply because [the] S-8 incorporates by
reference future SEC filings, Plaintiff's theory fails.  The fact of the incorporation per se of future
SEC reports is not a discretionary act, giving rise to a fiduciary capacity.").  As such, each of these
communications was, at its core, a business communication, not a fiduciary act.  See, e.g., In re
Reliant Energy ERISA Litig., No. H-02-2051, 2006 U.S. Dist. LEXIS 3181, at *13 (S.D. Tex. Jan. 18,
2006) ("REI – as the issuer of stock to be provided to employees under an employee benefit plan –
complied with the SEC requirement that it file a Form S-8.  REI was not acting in connection with the
management or administration of the REI Savings Plan and, therefore, was acting solely as the issuer
of stock rather than in a fiduciary capacity.")

**B.    The Misrepresentations Alleged Were Not Material
        As A Matter Of Law**

Plaintiff's misrepresentation/omission claim also fails because the challenged

communications were not material, as a matter of law. First, the materiality of any representation

about Company stock must be measured against the nature and purpose of the investments in the

Plans. Again, EIAPs afford long-term investment opportunities along with a host of intangible

benefits. Kuper, 66 F.3d at 1457; see also supra at II.A. The misrepresentations alleged by

Plaintiff, however, merely challenge projections made about the Company's post-merger growth

in a relatively short time span. None of these statements speak to the suitability of Company

stock as an investment calculated to fulfill the goals of employee ownership. These alleged

misrepresentations cannot be actionable under ERISA, as a matter of law.

Moreover, and especially given the qualified nature of the challenged statements, there

can be no finding of materiality where the challenged statements were qualified and, as such,

contained no guarantees about future benefits. See Peterson v. AT&T Co., Civ. No. 99-4982,

2004 U.S. Dist. LEXIS 854, at *36 (D N.J. Feb. 4, 2004), aff'd, 127 Fed. Appx. 67, 73 (3d Cir.

2005) (finding no material misrepresentation where general predictions accompanied by

disclaimers); Ballone v. Eastman Kodak Co., 109 F.3d 117, 125 (2d Cir. 1997) ("Whereas mere

mispredictions are not actionable false statements about future benefits[, they] may be material if

couched as a guarantee, especially where, as alleged here, the guarantee is supported by specific

statements of fact.") (emphasis added) (citations omitted).[48]

---

[48]    See also Fischer v. Phila. Elec. Co., 994 F.2d 130, 135 (3d Cir. 1993) ("ERISA does not
impose a duty of clairvoyance on fiduciaries. An ERISA fiduciary is under no obligation to offer
precise predictions about future changes to its plan . . .a duty that does not require the fiduciary to
disclose its internal deliberations") (citations and quotations omitted); see also Peterson, 2004 U.S.
Dist. LEXIS 854 at *34 ("Defendant in the present case had every reason to believe that its predictions
were correct and should not be held liable because unexpected future actors and future decisions
proved those predictions inaccurate."). The Third Circuit's position is consistent with other courts of
appeal that likewise have emphasized the absence of any duty of clairvoyance as well as the fact that
disclosure does not extend to internal deliberations. See, e.g., Swinney v. Gen. Motors Corp., 46 F.3d
512, 520 (6th Cir. 1995); Mullins v. Pfizer, Inc., 23 F.3d 663, 669 (2d Cir. 1994); Barnes v. Lacy, 927
F.2d 539, 544 (11th Cir. 1991).

Here, there were no guarantees made by Defendants about Plaintiff's Plan benefits.

Indeed, each and every one of the challenged statements was identified as a forward-looking

statement under the Private Securities Litigation Reform Act and was accompanied with a

disclaimer and cautionary statement identifying the risks inherent in the projections. (See, e.g.

Molson Coors, Form Def 14A, 10/01/2004 (Ex. 10)). The October 2004 Company presentation,

for example, states:

> This presentation includes 'forward-looking statements' within
> the meaning of the U.S. federal securities laws. Forward-looking
> statements are commonly identified by such terms as 'would',
> 'may' will', 'expects' or 'expected to' and other terms with
> similar meaning indicating possible future events or actions or
> potential impact of the businesses or shareholders of Adolph
> Coors Company and Molson Inc. (separately and together the
> "Companies"). Such statements include, but are not limited to,
> statements about the anticipated benefits, savings and synergies
> of the merger between Adolph Coors Company and Molson,
> Inc., including financial and operating results, Coors' and
> Molson's plans, objectives, expectations and intentions, the
> market for Coors' and Molson's products, the future
> development of Coors' and Molson's business, and the
> contingencies and uncertainties to which Coors and Molson may
> be subject and other statements that are not historical fact.

(Id.; Am. Compl. ¶76; emphasis added). In short, these disclaimers preclude any finding that

these statements are actionable under ERISA. Peterson, 2004 U.S. Dist. LEXIS 854, at *32

(finding no material misrepresentation where statements "replete with the appropriate

qualifiers."). There was no guarantee about future benefits, and Plaintiff's misrepresentation

claim fails.[49]

---

[49]    Indeed, it is difficult to posit a circumstance where a court could find a guarantee of future
benefits actionable as a fiduciary misrepresentation given the indisputable proposition that the benefits
paid from a defined contribution plan like the Plan are never certain. Pension Benefit Guar. Corp. v.
LTV Corp., 496 U.S. 633, 637 n.1 (1990) (participants in defined contribution plans "are not promised
any particular level of benefits; instead, they are promised only that they will receive the balances in
their individual accounts."). To the extent Phillips seeks relief on an omission theory, he must still
allege that, with the benefit of the withheld information, he would have altered his investment
strategy, an impossibility given his investment history. See supra at Statement of Facts, C. See also
In re Unisys Savings Plan Litig., Civ. No. 91-3067, 1997 U.S. Dist. 19198, at *82 n.34 (E.D.Pa. Nov.
24, 1997) ("no plaintiff testified that the failure to disclose this information influenced his investment
decisions and, as such, there can be no finding that this claimed lack of disclosure caused any harm");

34

**C.**     **Plaintiff Fails To Allege Detrimental Reliance**

Plaintiff's misrepresentation claim also fails because Phillips does not allege that he read any of the allegedly misleading statements or that he relied on those statements to his detriment. To state an ERISA claim based on alleged misrepresentations, Plaintiff must allege that he personally relied to his detriment on the alleged misrepresentations. See, e.g., Adams v. Freedom Forge Corp., 204 F.3d 475, 492 (3d Cir. 2000) ("An employee may recover for a breach of fiduciary duty if he or she proves that an employer, acting as a fiduciary, made a material misrepresentation that would confuse a reasonable beneficiary about his or her benefits, and the beneficiary acted thereupon to his or her detriment.") (emphasis added); Register v. PNC Fin. Servs. Group, Inc., 2005 U.S. Dist. LEXIS 29678, at *34 (E.D. Pa. 2005) (dismissing claim on motion to dismiss where plaintiffs failed to plead detrimental reliance).

Plaintiff does not allege that he personally read any of the allegedly misleading SEC filings, or press releases, or that he listened to any analyst conference calls. Nor does Plaintiff allege that he personally relied on any of these communications to his detriment. For this independent reason, Plaintiff's misrepresentation claim should now be dismissed.[50]

---

Unisys II, 173 F.3d at 159 ("We need not address the question of whether the alleged nondisclosures were material, however, because it is clear that [plaintiff] did not prove that any alleged failures to disclose cause the participants to suffer damages. The District Court found that [plaintiff] and the other class plaintiffs (1) already had actual knowledge of much of the information it is claimed that Unisys failed to disclose, (2) did not read the Plan documents, and (3) testified that they would not have withdrawn or transferred their money from the Fund even if they had known . . . .").

[50]     Nor can Plaintiff depend on the presumption of reliance sometimes applicable under federal securities laws. Such a presumption has been rejected by every court to have considered the question and such a rule is particularly appropriate here, because employee-investors hold employer stock for many reasons other than maximizing investment returns. Cf. Thomas v. Aris Corp. of Am., 219 F.R.D. 338, 342 (M.D. Pa. 2003) (addressing misrepresentation claims based on investment in employer stock, holding that "in the context of an ERISA claim, a plan participant's detrimental reliance upon the representation or omission of a fiduciary may not be presumed") (internal citation omitted) (collecting cases); Wiseman v. First Citizens Bank & Trust Co., 215 F.R.D. 507, 510 (W.D.N.C. 2003) ("In order to prove detrimental reliance, the Plaintiffs would have to establish that each member of the proposed class relied on the Defendants' alleged misrepresentations in making his or her investment decisions . . . Such proof requires an individualized analysis and cannot be presumed."). See also Unisys II, 173 F.3d at 159 (requiring proof of individual damages for omission claim based upon findings of individual causation and reliance).

**D.    It Is Neither The Purpose Nor The Domain Of ERISA To Regulate
Purely Corporate Behavior That Is Fully Regulated Elsewhere**

There is an important reason why Phillips' disclosure claims do not fit into ERISA's

remedial scheme – the elephant in the room in this litigation. Although Plaintiff plainly had a

right to expect that Defendants would refrain from making material misstatements in its SEC

filings (and they did not make such misstatements), "that expectation must be enforced under the

securities laws rather than ERISA " In re Tyco Int'l, 2004 WL 2903889, at *6 (emphasis added).

"It is neither the purpose nor the domain of ERISA to regulate purely corporate behavior that is

adequately covered elsewhere." Harpster v. Aarque Mgmt., No. 4:03CV1282, 2005 WL 171920,

at *6 (N.D. Ohio July 22, 2005) (citation omitted). Such claims (aside from whether they are

indeed meritorious) fit comfortably and appropriately under well-settled provisions of securities

law, and attempts to circumvent those statutory regimes should not be permitted. See, e.g., Hull,

2001 WL 1836286, at *9 (refusing to apply higher standard to ERISA fiduciaries as to Plan

purchases of employer stock than would be applied to other stock purchase under applicable

securities law) [51]

**IV.    EVEN IF PLAINTIFF HAD STANDING TO SUE UNDER ERISA, HIS FAILURE
TO MONITOR CLAIM (CLAIM III) FAILS TO STATE A CLAIM**

Plaintiff's failure to monitor claim (Claim III) is premised on his claim that Coors stock

was not a prudent investment. E.g., Am. Compl. ¶133 (alleging that "[t]he duty of prudence

requires that appointing fiduciaries have procedures in place so that on an ongoing basis they may

review and evaluate whether investment fiduciaries are doing an adequate job"). However,

"Plaintiff cannot maintain a claim of failure to monitor when those to be monitored were acting

prudently." Delta Airlines, 2006 WL 855777, at *19.

---

[51]    A tacit admission that the ERISA action is Plaintiff's "second bite" at the same apple,
Plaintiff has adopted wholesale in his ERISA Complaint the allegations in the securities action. (Am.
Compl. ¶¶36, 81, 92, 95, 100). Courts have consistently prohibited a pleading in one civil action
adopting by reference the allegations in a pleading from another civil action, even if the underlying
allegations are the same. See, e.g. Muth v. Dechert, Price & Rhoads, 391 F. Supp. 935, 938 (E.D. Pa.
1975) (third party complaint may not incorporate by reference pleadings in another related case).

As explained above, Coors stock was a prudent investment for the Plans as a matter of law. Accordingly, this derivative claim should be dismissed for the same reasons that Plaintiff's prudence claim should be dismissed. E.g., Avaya, Inc., 2006 WL 1084087, at *11 (dismissing failure to monitor claim based on finding that complaint failed to state a claim for breach of fiduciary duty at the threshold) [52]

## V.   EVEN IF PLAINTIFF HAD STANDING TO SUE UNDER ERISA, HIS CLAIMS AGAINST THE NON-FIDUCIARY DIRECTOR DEFENDANTS FAIL AS A MATTER OF LAW

In addition to the arguments applicable to all Defendants set forth above, each of the claims brought against the Director Defendants fails because the Director Defendants never acted as (and therefore never were) ERISA fiduciaries.

The mere fact that an individual is an officer of a company is legally insufficient to make that individual a fiduciary. Confer v. Custom Eng'g Co., 952 F.2d 34, 35 (3d. Cir. 1991). Rather, to qualify as an ERISA fiduciary, an individual or entity must either: (1) be named or designated as a fiduciary under the terms of an ERISA plan (see 29 U.S.C. § 1102(a)); or (2) act as a "functional" or "de facto" fiduciary with respect to an ERISA plan by exercising discretionary control over the management or administration of the plan or its assets (see 29 U.S.C. § 1002(21)(A)). Furthermore, fiduciaries may be held liable under ERISA only "to the extent" they exercise discretionary control over the management or administration of a plan or its assets. See 29 U.S.C. § 1002(21)(A); Pegram v. Herdrich, 530 U.S. 211, 225-26 (2000); Confer, 952 F.2d at 37. A defendant's fiduciary status under ERISA may be decided on a motion to dismiss. See, e.g., Wright, 360 F.3d at 1101-02; In re RCN Litig., 2006 WL 753149, at *8.

---

[52]    See also Wright, 360 F.3d at 1100 ("Plaintiffs' exclusive purpose claim is derivative of their prudence claim and fails for the reasons outlined above."); In re Duke Energy ERISA Litig., 281 F. Supp. 2d at 795 (finding the breach of fiduciary claim failed as a matter of law and accordingly dismissing derivative claims that "depend upon the establishment of an underlying breach of fiduciary duty cognizable under ERISA"); Calpine, 2005 WL 1431506 at *6 (same).

Here, it is undisputed that the Director Defendants are not named fiduciaries for purposes of Section 1102(a). Rather, the Pension Committee, not the Director Defendants, administered the Plans as the named fiduciaries. (Memphis Plan (Ex. 1) § 8.4, at 27; S&I Plan (Ex. 3) § 8.4, at 35). The Director Defendants were not at any time members of the Pension Committee, and Plaintiff does not allege otherwise (nor can he).

Second, Plaintiff's conclusory allegations that the Director Defendants are de facto fiduciaries because they exercised authority or control respecting management or disposition of Plan assets, must fail. (Am. Compl. ¶¶27-35.) While Plaintiff has mimicked the language of 29 U.S.C. § 1002(21)(A), he does not provide any factual allegations in support of this conclusion sufficient to support a finding that the Director Defendants are de facto fiduciaries on this basis. See, e.g., Haber v. Brown, 774 F. Supp. 877, 879 (S.D.N.Y. 1991) (ordering dismissal of fiduciary allegations "incorporating terms directly from statute"); Riley v. Murdock, 828 F. Supp. 1215, 1219 (D.N.C. 1993) (same).

In fact, the only factual bases that Plaintiff provides to establish de facto fiduciary status are (1) allegations that the Director Defendants[53] were "instrumental" in negotiating the merger

---

[53]    Plaintiff also alleges that W. Leo Kiely, III was responsible for the appointment of members of the Pension Committee. (Am. Compl. ¶27.) The ability to appoint fiduciaries may confer fiduciary status only to the actual exercise of that power, and Plaintiff does not allege here that Mr. Kiely exercised this authority in an improper fashion. See, e.g., Crowley, 234 F. Supp. 2d at 229 (power to appoint or remove confers "fiduciary obligations [that] extend only as to those acts"); accord In re: Williams Co., 271 F. Supp. 2d at 1339; see also In re Enron Corp. Sec., Derivative & ERISA Litig., 284 F. Supp. 2d 511, 552-53, 553 n.59 (S.D. Tex. 2003) (collecting cases and noting that only the actual exercise of appointment and removal powers establishes a fiduciary duty to monitor the fiduciaries so appointed). In addition, the allegation that Mr. Kiely may have signed amendment to Plan documents does not confer fiduciary status; rather, it is well-recognized that Plan amendments constitute settlor conduct not actionable under ERISA. See, e.g. Walling v. Brady, 125 F.3d 114, 120 (3d Cir. 1997) ("[T]he ERISA fiduciary obligations simply do not apply to a plan amendment").

and (2) that the Director Defendants participated in the preparation of the proxy and/or prospectus.[54] (Am. Compl. ¶28). Neither of these bases has any merit. First, both the merger negotiations and the associated proxy are quintessential corporate activities not regulated by ERISA. E.g., Harpster, No. 4:03CV1282, 2005 WL 171920, at *6 ("It is neither the purpose nor the domain of ERISA to regulate purely corporate behavior that is adequately covered elsewhere."). Second, Plaintiff must allege facts indicating that the Director Defendants somehow assumed fiduciary status by taking particular actions with respect to Plan fiduciaries or Plan participants. See In re: RCN Litig., 2006 WL 753149, at *8 (dismissing individual defendants where plaintiff failed to show that they exercised control over the decisions of the named fiduciary). Here, Plaintiff fails to make such allegations. For example, the Amended Complaint does not allege that the Director Defendants instructed or pressured any of the Plan fiduciaries or the participants to make certain investments, or that the Director Defendants provided information to the Plan fiduciaries or participants that was not provided to other investors.[55] Because Plaintiff failed to allege any facts supporting a finding that the Director Defendants were plan fiduciaries, all the claims against them should be dismissed.

---

[54]     In any event, even if there were misstatements in the proxy at issue (there were not), those misstatements are actionable under Section 14(a) of the Securities and Exchange Act, not under ERISA. See, e.g., 15 U.S.C. §78n(a); 17 CFR 240.14a-9 (1990); In re Tyco Int'l, 2004 WL 2903889, at *6 (expectation that defendants would refrain from making material misstatements in its SEC filings "must be enforced under the securities laws rather than ERISA.") (emphasis added).

[55]     See Hull, 2001 WL 1836286, at *6 n.4 (dismissing claim where "the only allegations against the corporate defendants suggest that their wrongs, if any, were directed to the market generally" and noting that in such case, "the Plan, its Committee and participants stand in no different position as to the corporate defendants than do all other shareholders").

**CONCLUSION**

For each and all of the foregoing reasons, Plaintiff's Amended Complaint should be dismissed.

Respectfully submitted,

Charles F. Richards, Jr. (#701)
*richards@rlf.com*
Jeffrey L. Moyer (#3309)
*moyer@rlf.com*
Elizabeth C. Tucker (#4468)
*tucker@rlf.com*
Richards, Layton & Finger, P.A.
One Rodney Square, P.O. Box 551
Wilmington, Delaware 19899-0551
(302) 651-7700

Attorneys for Defendants Molson Coors
Brewing Company, Peter H. Coors, W. Leo
Kiely III, Charles M. Herington, Franklin W.
Hobbs, Randall Oliphant, Pamela Patsley,
Wayne Sanders, and Albert C. Yates, Barbara
Albanesi, David Barnes, Chat Chatterjee,
James Fredericks, Michael J. Gannon, Robert
Klugman, Michael Kruteck, Vonda Mills, Jeff
Morgan, Michael Rumley, Ben Schwartz, Rob
Witwer, Timothy Wolf, Katherine L.
MacWilliams and Harold R. Smethills

Dated:  May 31, 2006

40

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 31, 2006, copies of Defendants' Opening Brief in Support of Their Motion to Dismiss the Amended Complaint were served upon the following counsel of record in the manner indicated:

### BY CM/ECF:

Pamela S. Tikellis
Chimicles & Tikellis LLP
One Rodney Square
P.O. Box 1035
Wilmington, Delaware 19899

Elizabeth C. Tucker (#4468)
*tucker@rlf.com*