# EXHIBIT 1
# Part 1 of 3

*Signed
2/28/2002*

---

# 401(k) Savings Plan
## for
## Hourly Employees at the
## Memphis, Tennessee Brewery

As Amended and Restated
Effective January 1, 1997

---

**Holme Roberts & Owen LLP**
Suite 4100
1700 Lincoln Street
Denver, CO 80203
(303) 861-7000
www.hro.com

# Table of Contents

Page

ARTICLE I  DEFINITIONS ................................................................................................1
  1.1  Account ...............................................................................................................1
  1.2  ADP Test.............................................................................................................1
  1.3  Alternate Payee ...................................................................................................1
  1.4  Annual Addition..................................................................................................1
  1.5  Appeals Committee .............................................................................................2
  1.6  Beneficiary..........................................................................................................2
  1.7  Code ....................................................................................................................2
  1.8  Committee............................................................................................................2
  1.9  Compensation ......................................................................................................2
  1.10  Covered Employee ............................................................................................3
  1.11  Determination Date...........................................................................................4
  1.12  Determination Year...........................................................................................4
  1.13  Disability ...........................................................................................................4
  1.14  Distributable Amount........................................................................................4
  1.15  Domestic Relations Order .................................................................................4
  1.16  Effective Date ...................................................................................................4
  1.17  Employee ...........................................................................................................4
  1.18  Employer............................................................................................................5
  1.19  ERISA ...............................................................................................................5
  1.20  Five-Percent Owner ..........................................................................................5
  1.21  Hardship Withdrawal ........................................................................................5
  1.22  Highly Compensated Employee........................................................................5
  1.23  Hour of Service..................................................................................................6
  1.24  Key Employee....................................................................................................7
  1.25  Limitation Year..................................................................................................7
  1.26  Look-Back Year.................................................................................................7
  1.27  Non-Highly Compensated Employee ................................................................7
  1.28  Non-Key Employee ...........................................................................................7
  1.29  Normal Retirement Age.....................................................................................7
  1.30  Participant .........................................................................................................8
  1.31  Participant 401(k) Contributions.......................................................................8
  1.32  Participating Employer ......................................................................................8
  1.33  Participation Requirements ................................................................................8
  1.34  Plan ...................................................................................................................8
  1.35  Plan Administrator.............................................................................................8
  1.36  Plan Sponsor .....................................................................................................8
  1.37  Plan Year...........................................................................................................8
  1.38  Qualified Domestic Relations Order ("QDRO")...............................................8
  1.39  Related Group ...................................................................................................8
  1.40  Required Beginning Date...................................................................................8
  1.41  Rollover Contribution .......................................................................................8
  1.42  Section ...............................................................................................................9
  1.43  Spouse ...............................................................................................................9
  1.44  Stock..................................................................................................................9
  1.45  Taxable Year......................................................................................................9
  1.46  Temporary Employee.........................................................................................9

1.47 Top Heavy Plan.................................................................................9
1.48 Trust.............................................................................................9
1.49 Trust Fund.....................................................................................9
1.50 Trustee..........................................................................................9
1.51 Union............................................................................................9
1.52 Valuation Date...............................................................................9
1.53 Year of Service..............................................................................9

ARTICLE II  PARTICIPATION....................................................................11
2.1 Participation Requirements................................................................11
2.2 Break in Covered Employee Status .....................................................11
2.3 Contribution Election - Procedure ......................................................11

ARTICLE III  CONTRIBUTIONS..................................................................12
3.1 Participant 401(k) Contributions.........................................................12
3.2 Return of Contributions....................................................................13
3.3 Limitation on Annual Additions .........................................................13
3.4 Contribution Limits for Highly Compensated Employees (ADP Test) .........14
3.5 Military Service..............................................................................15

ARTICLE IV  INTERESTS IN THE TRUST .....................................................16
4.1 Participants' Accounts......................................................................16
4.2 Valuation of Trust...........................................................................16
4.3 Allocation of Net Income, Gain or Loss ..............................................16

ARTICLE V  VESTING..............................................................................17
5.1 Vesting Schedule.............................................................................17
5.2 Forfeitures.....................................................................................17
5.3 Restoration of Forfeitures..................................................................17
5.4 Allocation of Forfeitures...................................................................17

ARTICLE VI  DISTRIBUTION OF BENEFITS ..................................................18
6.1 Beneficiaries..................................................................................18
6.2 Consent Requirements......................................................................18
6.3 Distributable Amount.......................................................................18
6.4 Manner of Distribution.....................................................................19
6.5 Time of Distribution........................................................................19
6.7 Minimum Distributions.....................................................................20
                                                                                21

ARTICLE VII  WITHDRAWALS AND LOANS ..................................................23
7.1 In-Service Withdrawals ....................................................................23
7.2 Loans...........................................................................................24

ARTICLE VIII  ALLOCATION OF RESPONSIBILITIES - NAMED FIDUCIARIES........27
8.1 No Joint Fiduciary Responsibilities......................................................27
8.2 The Employer.................................................................................27
8.3 The Trustee....................................................................................27
8.4 The Committee - Plan Administrator....................................................27
8.5 Committee to Construe Plan...............................................................27
8.6 Duties and Powers of the Plan Administrator..........................................27
8.7 Organization of Committee................................................................28
8.8 Agent for Process............................................................................29

8.9  Indemnification of Committee Members ........................................................................29

ARTICLE IX  TRUST AGREEMENT - INVESTMENTS ..................................................30
   9.1  Trust Agreement ..................................................................................................30
   9.2  Expenses of Trust ................................................................................................30
   9.3  Directed Investments ..........................................................................................30
   9.4  Special Rules for Stock .......................................................................................30

ARTICLE X  TERMINATION AND AMENDMENT ..........................................................32
   10.1  Termination of Plan or Discontinuance of Contributions ..................................32
   10.2  Allocations upon Termination or Discontinuance of Contributions ..................32
   10.3  Procedure Upon Termination of Plan or Discontinuance of Contributions ........32
   10.4  Amendment by the Plan Sponsor .......................................................................33
   10.5  Amendment to Vesting Schedule .......................................................................33

ARTICLE XI  PLAN ADOPTION BY PARTICIPATING EMPLOYERS ..........................34
   11.1  Adoption of Plan ................................................................................................34
   11.2  Agent of Participating Employer .......................................................................34
   11.3  Withdrawal and Removal from Plan ..................................................................34

ARTICLE XII  TOP HEAVY PROVISIONS ........................................................................35
   12.1  Application of Top Heavy Provisions .................................................................35
   12.2  Top Heavy Plan ..................................................................................................35
   12.3  Special Minimum Contribution ..........................................................................36
   12.4  Change in Top Heavy Status ..............................................................................36

ARTICLE XIII  MISCELLANEOUS ....................................................................................37
   13.1  Right to Dismiss Employees - No Employment Contract ..................................37
   13.2  Claims Procedure For Claims Filed Before January 1, 2002 .............................37
   13.3  Claims Procedure For Claims Filed On or After January 1, 2002 ......................38
   13.4  Source of Benefits ..............................................................................................40
   13.5  Exclusive Benefit of Employees ........................................................................40
   13.6  Forms of Notices .................................................................................................41
   13.7  Merger, Consolidation, or Transfer ....................................................................41
   13.8  Inalienability of Benefits ...................................................................................41
   13.9  Qualified Domestic Relations Order (QDROs) ................................................412
   13.10  Payments Due Minors or Incapacitated Individuals ........................................44
   13.11  Uniformity of Application .................................................................................45
   13.12  Disposition of Unclaimed Payments .................................................................45
   13.13  Information to Participants and Beneficiaries ...................................................45
   13.14  Fiduciaries not Insurers ....................................................................................45
   13.15  Waiver of Notice ..............................................................................................45
   13.16  Pronouns:  Gender and Number ........................................................................45
   13.17  Applicable Law .................................................................................................46

# 401(k) Savings Plan for
# Hourly Employees at the Memphis, Tennessee Brewery

## PREAMBLE

Effective September 1, 1990, Coors Brewing Company established the Plan. At the same time, the Employer entered into the Trust with a trustee to provide for the investment and management of the assets of the Plan. The Plan and the Trust are intended to comply with the provisions of the Code and ERISA, to qualify as a profit sharing plan for all purposes of the Code, and to provide a cash or deferred arrangement that is qualified under Code § 401(k).

The Plan is hereby amended and restated, effective January 1, 1997. The provisions of this Plan, as a restated Plan, shall apply solely to an Employee who performs one Hour of Service for the Employer on or after the restated Effective Date of the Plan. If an earlier effective date for a provision in this restated Plan applies, the provision shall be effective as of the earlier effective date notwithstanding the later general Effective Date of the restated Plan.

## ARTICLE I
## DEFINITIONS

1.1 *Account* means the accounts or records of the interest in the Trust of each Participant and Beneficiary. The Plan Administrator shall maintain the following accounts:

    (a)    <u>401(k) Contribution Account</u>. The account established to hold the Participant 401(k) Contributions.

    (b)    <u>Rollover Contribution Account</u>. The account established to hold the Participant's Rollover Contributions.

1.2 *ADP Test* means the actual deferral percentage test of Code § 401(k)(3) and the regulations thereunder.

1.3 *Alternate Payee* means a Participant's Spouse, former spouse, child, or other dependent who is recognized by a QDRO as having a right to receive all, or a portion of, the benefits payable under this Plan with respect to the Participant.

1.4 *Annual Addition* means the allocations to a Participant's Accounts for any Limitation Year. Annual Additions shall be determined separately for each Related Group.

    (a)    Annual Additions shall include: (i) Employer contributions to this Plan and any other defined contribution plan maintained by the Employer; (ii) after-tax contributions to any other defined contribution plan maintained by the Employer; (iii) Participant 401(k) Contributions to this Plan and similar contributions to any other defined contribution plan maintained by the Employer, including any such contributions distributed to satisfy the ADP Test; (iv) forfeitures allocated to a Participant's Accounts in this Plan and any other defined contribution plan maintained by the Employer (except as provided in paragraphs (b)(iii) and (b)(vii) below); (v) all amounts paid or accrued after

December 31, 1985 in Taxable Years ending after December 31, 1985, to a welfare benefit fund as defined in Code § 419(e) and allocated to the separate account (under such welfare benefit fund) of a Key Employee to provide post-retirement medical benefits; and (vi) contributions allocated on the Participant's behalf, while the Participant is an Employee, to any individual medical account as defined in Code § 415(l)(2).

(b)     Annual Additions shall not include: (i) Rollover Contributions to this Plan or rollover contributions made pursuant to Code § 402(c), 403(a)(4), 405(d)(3), or 408(d)(3)(A)(ii) to any other defined contribution plan maintained by the Employer; (ii) repayments of loans made to a Participant from a qualified plan maintained by the Employer; (iii) repayments of forfeitures for rehired Participants, as described in Code §§ 411(a)(7)(B) and 411(a)(3)(D); (iv) direct transfer of employee contributions from one qualified plan to this Plan or any other qualified defined contribution plan maintained by the Employer; (v) deductible employee contributions within the meaning of Code § 72(o)(5); or (vi) employee contributions to a simplified employee pension, if such contributions are deductible under Code § 219(a); or (vii) repayments of forfeitures of missing individuals pursuant to Section 5.3.

1.5 *Appeals Committee* means the committee appointed by Coors Brewing Company's Vice President of Human Resources. The Appeals Committee shall consist of five members (not including the chairman). The chairman and members of the Appeals Committee shall serve two-year terms. The chairman of the Appeals Committee shall not vote in the determination of an appeal. If at least three voting members are present at a meeting they shall constitute a quorum. If four voting members are present and their vote is a tie, the matter shall be reconsidered at the next meeting of the Appeals Committee. The Appeals Committee shall adopt such rules and procedures as it determines to be necessary or appropriate for the conduct of its affairs. The Appeals Committee may appoint agents (who need not be members of the Appeals Committee) to whom it may delegate such powers as it deems appropriate, provided that all claims presented to the Appeals Committee shall be decided by the Appeals Committee. It may authorize one or more of its members or agents to sign instructions, notices and determinations on its behalf. The action of a majority of the voting members of the Appeals Committee shall constitute the action of the Appeals Committee.

1.6 *Beneficiary* means a person, designated by a Participant, who is or may become entitled to a benefit under the Plan. A Beneficiary who becomes entitled to a benefit under the Plan shall remain a Beneficiary under the Plan until the Trustee has fully distributed the Participant's benefit due to the Beneficiary.

1.7 *Code* means the Internal Revenue Code of 1986, as amended, and the regulations and rulings in effect thereunder.

1.8 *Committee* means the committee provided for in Section 8.4.

1.9 *Compensation* means:

(a)     Code § 415 Compensation. For purposes of determining the limitation on Annual Additions, Compensation shall mean those amounts reported as "wages, tips, other compensation" on Form W-2 by the Employer that are paid during a Limitation Year, and, effective January 1, 1998, the deferrals specified in Code § 415(c)(3)(D). For purposes of determining the minimum contribution when the Plan is a Top Heavy Plan, Compensation shall mean those amounts reported as "wages, tips, other compensation" on Form W-2 by the Employer, excluding amounts paid or reimbursed by the Employer for moving expenses incurred by an Employee to the extent that it is reasonable to

believe at the time of payment that such amounts are deductible by the Employee under Code § 217. For purposes of any minimum contribution required when the Plan is a Top Heavy Plan, Compensation shall include amounts paid during the Plan Year while the Employee is a Covered Employee. For purposes of this subsection, Compensation shall be determined separately for each Related Group.

(b)     <u>Code § 414(q) Compensation</u>.    For purposes of identifying Highly Compensated Employees and Key Employees, Compensation shall mean those amounts reported as "wages, tips, other compensation" on Form W-2 by the Employer, and elective contributions that are not includible in the Employee's income pursuant to Code §§ 125, 402(e)(3), 402(h), 403(b), or 132(f)(4) (effective January 1, 2001).    However, Compensation shall exclude amounts paid or reimbursed by the Employer for moving expenses incurred by an Employee to the extent that it is reasonable to believe at the time of payment that such amounts are deductible by the Employee under Code § 217. Compensation shall also include all foreign earned income as defined in Code § 911(b) (whether or not excludable from gross income under Code § 911) from the Employer, and any amounts from the Employer that are excluded from the Employee's income under Code §§ 931 or 933. For purposes of identifying Key Employees, Compensation shall be measured over a Plan Year; for purposes of identifying Highly Compensated Employees, Compensation shall be measured over a Determination Year or Look-Back Year, whichever is applicable.    For purposes of this subsection, Compensation shall be determined separately for each Related Group.

(c)     <u>Code § 414(s) Compensation</u>.  For purposes of the ADP Test, Compensation shall mean those amounts reported as "wages, tips, other compensation" on Form W-2 by the Employer that are paid during the Plan Year, excluding those amounts that are elective contributions that are not includible in the Employee's income pursuant to Code §§ 125, 402(e)(3), 402(h), or 403(b) or, effective January 1, 2001, § 132(f)(4).  For purposes of this subsection, Compensation shall be determined separately for each Related Group.

(d)     <u>Compensation for Plan Contribution Purposes</u>.  Prior to January 1, 1998, for purposes of determining the amount of any contributions under the Plan, Compensation shall mean those amounts reported as "wages, tips, other compensation" on Form W-2 by the Employer, but excluding expense reimbursements and any amount contributed under any other employee benefit plan or for any form of individual or group insurance. On and after January 1, 1998, for purposes of determining the amount of any contributions under the Plan, Compensation shall mean the Employee's gross base pay, plus overtime but excluding commissions and bonuses before any deductions.

(e)     <u>Limit on Compensation</u>. Compensation taken into account for the Plan Year shall not exceed the compensation limit in effect for the calendar year.  Effective for Plan Years beginning before January 1, 2002, the compensation limit is $150,000 (as adjusted by the Secretary of the Treasury). Effective for Plan Years beginning on or after January 1, 2002, the compensation limit is $200,000 (as adjusted by the Secretary of the Treasury).

1.10 *Covered Employee* means any Employee of the Employer who is a member of a collective bargaining unit represented by the Union, except for:

(a)     A non-resident alien who either (i) receives no earned income (within the meaning of Code § 911(d)(2)) from the Employer that constitutes income from sources within the United States (within the meaning of Code § 861(a)(3)) or (ii) receives earned income from the Employer that constitutes income from sources within the United States, but

such income is exempt from United States income tax by an income tax treaty or convention;

(b)   An Employee included in a unit of Employees covered by a collective bargaining agreement, unless the collective bargaining agreement specifically provides for participation in the Plan by the Employees covered by the collective bargaining agreement; and

(c)   An Employee who is a resident of Puerto Rico and has Puerto Rico source income.

1.11 *Determination Date* means, with respect to each Plan Year, the last day of the preceding Plan Year.

1.12 *Determination Year* means the Plan Year.

1.13 *Disability* means a physical or mental condition rendering a Participant totally and permanently disabled, as determined by eligibility for and receipt of Social Security disability benefits.

1.14 *Distributable Amount* means the amount determined pursuant to Section 6.3.

1.15 *Domestic Relations Order* means any judgment, decree or order (including approval of a property settlement agreement) issued by a court of competent jurisdiction that relates to the provision of child support, alimony payments, or marital property rights to a Spouse, former spouse, child, or other dependent of the Participant and is made pursuant to a state domestic relations law (including a community property law).

1.16 *Effective Date* means January 1, 1997, the effective date of this Plan restatement. The original Effective Date was September 1, 1990.

1.17 *Employee* means any individual who provides services to the Employer as a common law employee and whose remuneration is subject to the withholding of federal income tax pursuant to Code § 3401. Employee shall not include any individual (a) who provides services to the Employer under an agreement, contract, or any other arrangement pursuant to which the individual is initially classified as an independent contractor or leased employee or (b) whose remuneration for services has not been treated initially as subject to the withholding of federal income tax pursuant to Code § 3401, even if the individual described in (a) or (b) is subsequently reclassified as a common law employee as a result of a final decree of a court of competent jurisdiction or the settlement of an administrative or judicial proceeding. For the sole purpose of applying the nondiscrimination requirements of Code § 414(n)(3), Employee shall include leased employees who, pursuant to an agreement between the Employer and a leasing organization, have performed services for the Employer on a substantially full-time basis for a period of at least one year, and the services are performed under the primary direction and control of the Employer. The Employer shall treat contributions or benefits provided to the leased employees by the leasing organization as contributions or benefits provided by the Employer to the extent attributable to services the leased employees performed for the Employer. Notwithstanding the foregoing, the Employee shall not include a leased employee for the purpose of applying the nondiscrimination requirements if:

(a)   the leased employee is covered by a money purchase pension plan providing:

(i)    a nonintegrated employer contribution rate of at least 10 % of Compensation (including amounts that are excludable from the leased employee's gross income under Code §§ 125, 402(e)(3), 402(h), or 403(b),

(ii)     immediate participation, and

(iii)    full and immediate vesting; and

(b)      leased employees who are otherwise included for nondiscrimination purposes as described above do not constitute more than 20 % of the Employer's Non-Highly-Compensated Employees.

1.18 *Employer* means the Plan Sponsor and any Participating Employer.

1.19 *ERISA* means the Employee Retirement Income Security Act of 1974, as amended, and the regulations and rulings in effect thereunder.

1.20 *Five-Percent Owner* means:

(a)      With respect to a corporation, any individual who owns (either directly or indirectly according to the rules of Code § 318) more than 5 percent of the value of the outstanding stock of the corporation or stock possessing more than 5 percent of the total combined voting power of all stock of the corporation.

(b)      With respect to a non-corporate entity, any individual who owns (either directly or indirectly according to rules similar to those of Code § 318) more than 5 percent of the capital or profits interest in the entity.

An individual shall be a Five-Percent Owner for a particular year if such individual is a Five-Percent Owner at any time during such year.

1.21 *Hardship Withdrawal* means a withdrawal authorized pursuant to subsection 7.1(c).

1.22 *Highly Compensated Employee* means:

(a)      Any Employee who performs service for the Employer during the Determination Year and who (i) was a Five-Percent Owner at any time during the Determination Year or the Look-Back Year or (ii) during the Look-Back Year received Compensation from the Employer in excess of $80,000 (as adjusted by the Secretary of the Treasury) and was a member of the Top-Paid Group.

(b)      The "Top-Paid Group" means the top 20 percent of Employees ranked on the basis of Compensation received during a Determination Year or Look-Back Year. For purposes of determining the number of Employees in the Top-Paid Group, the following Employees may be excluded; however, the Employer may elect, on a consistent and uniform basis, to modify the permissible exclusions by substituting any shorter period of service or lower age.

(i)      any Employee who has not completed six months of service before the end of the applicable year;

(ii)     any Employee who normally works less than seventeen and one-half hours per week, as defined in the regulations under Code § 414(q);

(iii)    any Employee who normally works less than six months during the applicable year, as defined in the regulations under Code § 414(q);

(iv)    any Employee who has not attained age twenty-one before the end of the applicable year; and

(v)    any Employee who is a non-resident alien and who receives no earned income (within the meaning of Code § 911(d)(2)) from the Employer that constitutes income from sources within the United States (within the meaning of Code § 861(a)(3)) during the applicable year.

Highly Compensated Employees shall be determined with respect to each Related Group by applying the definitions of Highly Compensated Employee separately to the workforce of each Related Group.

1.23 *Hour of Service* means:

(a)    Each hour for which an Employee is paid or entitled to payment by the Employer and its Related Group for the performance of duties for the Employer and its Related Group during the applicable computation period. Hours of Service under this subsection shall be credited to the Employee for the computation period or periods in which the duties are performed, regardless of when the Employee is paid for such duties.

(b)    Each hour for which an Employee is paid or entitled to payment by the Employer and its Related Group on account of a period of time during which no duties are performed (irrespective of whether the employment relationship has terminated) due to vacation, holiday, illness, incapacity (including Disability), layoff, jury duty, military duty or leave of absence. Hours of Service under this subsection shall be credited to the Employee for the computation period or periods in which the period during which no duties are performed occurs, beginning with the first unit of time to which the payment relates. Notwithstanding the preceding sentence:

(i)    No more than 501 Hours of Service shall be credited under this subsection to an Employee on account of any single continuous period during which the Employee performs no duties (whether or not such period occurs in a single computation period);

(ii)    An hour for which an Employee is directly or indirectly paid, or entitled to payment, on account of a period during which no duties are performed shall not be credited to the Employee if such payment is made or due under a plan maintained solely for the purpose of complying with applicable worker's compensation, unemployment compensation, or disability insurance laws; and

(iii)    Hours of Service shall not be credited for a payment that solely reimburses an Employee for medical or medically related expenses incurred by the Employee. For purposes of this subsection a payment shall be deemed to be made by or due from the Employer and its Related Group regardless of whether such payment is made by or due from the Employer and its Related Group directly, or indirectly through, among others, a Trust Fund, or insurer, to which the Employer and its Related Group contributes or pays premiums and regardless of whether contributions made or due to the Trust Fund, insurer or other entity are for the benefit of particular Employees or are on behalf of a group of Employees in the aggregate.

(c)    Each hour for which back pay, irrespective of mitigation of damages, is either awarded or agreed to by the Employer or a member of its Related Group.  Hours of Service under this subsection shall be credited to the Employee for the computation period or periods to which the award or agreement pertains rather than the computation period in which the award, agreement or payment is made.  The same Hours of Service shall not be credited both under this subsection and either subsection (a) or subsection (b).

(d)    In the case of each Employee who is absent from work for any period by reason of the pregnancy of the Employee, by reason of the birth of a child of the Employee, by reason of the placement of a child with the Employee in connection with the adoption of such child by such Employee, or for purposes of caring for such child for a period beginning immediately following such birth or placement, the Plan shall treat as Hours of Service, the following hours:  (i) the Hours of Service that otherwise would normally have been credited to such Employee but for such absence, or (ii) in any case in which the Plan is unable to determine the hours described in paragraph (i), eight Hours of Service per day of such absence, provided, however, that the total number of hours treated as Hours of Service under this subsection shall not exceed 501 Hours of Service.  The hours described in this subsection shall be treated as Hours of Service only in the year in which the absence from work begins, if an Employee has earned less than 501 Hours of Service in such year (prior to crediting Hours of Service under this subsection), or in any other case, in the immediately following year. Notwithstanding the foregoing, the Committee may determine that no credit will be given pursuant to this subsection unless the Employee furnishes to the Committee such timely information as the Committee may reasonably require to establish that the absence from work is for reasons referred to in the first sentence of this subsection and the number of days for which there was such an absence.

(e)    For purposes of calculating the Hours of Service to be credited to periods during which no duties are performed and determining the computation periods to which hours shall be credited, the rules set forth in subsections (b) and (c) of Department of Labor Regulation section 2530.200b-2 are hereby incorporated by reference as though such provisions were fully set forth at this point.

1.24  *Key Employee* means an individual described in Code § 416(i) and the regulations thereunder.  Key Employees shall be determined with respect to each Related Group by applying the definition of Key Employee separately to the workforce of each Related.

1.25  *Limitation Year* means the Plan Year.

1.26  *Look-Back Year* means the twelve-month period preceding the Determination Year.

1.27  *Non-Highly Compensated Employee* means any Employee who is not a Highly Compensated Employee.  Non-Highly Compensated Employees shall be determined with respect to each Related Group by applying the definition of Non-Highly Compensated Employee separately to the workforce of each Related Group.

1.28  *Non-Key Employee* means any Employee who is not a Key Employee.  Non-Key Employees shall be determined with respect to each Employer by applying the definitions of Non-Key Employee separately to the workforce of each Related Group.

1.29  *Normal Retirement Age* means age 55.

1.30 *Participant* means any individual with an Account under the Plan (except Beneficiaries and Alternate Payees) and any Covered Employee who has satisfied the Participation Requirements but does not have an Account.

1.31 *Participant 401(k) Contributions* means contributions made to the Plan by the Employer at the election of the Participant pursuant to Section 3.1, that are excludable from the Participant's income under Code §§ 401(k) and 402(e)(3).

1.32 *Participating Employer* means any entity that has adopted the Plan pursuant to Article XI.

1.33 *Participation Requirements* means the requirements set forth in Section 2.1 for eligibility to participate in the Plan.

1.34 *Plan* means the 401(k) Savings Plan for Hourly Employees at the Memphis, Tennessee Brewery.

1.35 *Plan Administrator* means the Committee or such individual as the Plan Sponsor shall appoint to act as Plan Administrator. The Plan Sponsor has appointed the head of the benefits department of Coors Brewing Company to act as Plan Administrator.

1.36 *Plan Sponsor* means Coors Brewing Company or any successor thereto.

1.37 *Plan Year* means the calendar year.

1.38 *Qualified Domestic Relations Order ("QDRO")* means a Domestic Relations Order that creates or recognizes the existence of an Alternate Payee's right to, or assigns to an Alternate Payee the right to, receive all or a portion of the benefits payable with respect to a Participant under the Plan.

1.39 *Related Group* means shall mean a controlled group of corporations (as defined in Code § 414(b)), trades or businesses (whether or not incorporated) which are under common control (as defined in Code § 414(c)), an affiliated service group (as defined in Code § 414(m)), and any other entity required to be aggregated with the Employer pursuant to Code § 414(o) and the Treasury regulations thereunder. If the Employer is a member of a Related Group, the Plan shall treat all Employees of the members of such Related Group as if employed by a single employer. Solely for purposes of applying the Code § 415 limitations, the Plan Administrator shall determine any Related Group by modifying Code § 414(b) and (c) in accordance with Code § 415(h).

1.40 *Required Beginning Date* means, if a Participant is not a 5% owner, the April 1 following the close of the calendar year in which the Participant attains age 70½ or retires, if later. If a Participant is a 5% owner, Required Beginning Date shall mean the April 1 following the close of the calendar year in which the Participant attains age 70½. A Participant is a 5% owner if he or she owns, after applying the stock attribution rules of Code § 318, more than 5% of (1) the outstanding stock of the Employer, (2) the total combined voting power of all stock of the Employer, or (3) the capital or profits interest in the Employer, at any time during the Plan Year ending with or within the calendar year in which the 5% owner attains age 70½.

1.41 *Rollover Contribution* means a contribution to the Plan by an Employee of a distribution from a qualified plan under Code § 402(c), a distribution from a qualified annuity plan under Code § 403(a)(4), or a distribution from an individual retirement account or annuity under Code § 408(d)(3)(A)(ii), including any "direct rollover." A "direct rollover" is a voluntary, direct transfer of assets to this Plan, from another qualified retirement plan, that is nontaxable under Code §§ 402(c) and 401(a)(31).

1.42 *Section* means a reference to a section or subsection of the Plan.

1.43 *Spouse* means the individual to whom a Participant is lawfully married according to the law of the state of the Participant's domicile.

1.44 *Stock* means the Class B nonvoting common stock of Adolph Coors Company.

1.45 *Taxable Year* means the accounting period of the Plan Sponsor for federal income tax purposes.

1.46 *Temporary Employee* means an Employee who is assigned to a job or jobs that will last 1480 Hours of Service or less.

1.47 *Top Heavy Plan* shall have the meaning assigned to it by Section 12.2.

1.48 *Trust* means the separate trust created by the Employer pursuant to Article IX.

1.49 *Trust Fund* means all property of every kind held or acquired by the Trustee under the Plan.

1.50 *Trustee* means the person or persons who accept the position of Trustee in writing.

1.51 *Union* means Memphis, Tennessee, I.B.T. Local 1196.

1.52 *Valuation Date* means each day on which the Trustee values the Trust Fund. The Trustee shall value the Trust Fund on the last day of each Plan Year to determine the current fair market value of the Trust Fund assets. The Trustee shall value the Trust on such other dates as directed by the Plan Administrator.

1.53 *Year of Service* means each 365 day period, beginning with the first day of employment and ending on the later of the date the Employee last performs an Hour of Service, plus service credit for the following time periods:

(a)    Any period of severance after the Employee quits, is discharged, or retires if he returns to such employment with the Employer or a member of its Related Group within 12 months of such severance;

(b)    The first 12 months of any leave of absence, plus any additional credit required under federal law pertaining to military duty;

(c)    The first 12 months of any absence beginning after December 31, 1984, by reason of pregnancy of the Employee, birth of the Employee's child, placement of a child with the Employee in connection with the adoption of such child by such Employee, and absence for purposes of caring for such child for a period beginning immediately after such birth or placement; and

(d)    If the Employee quits, is discharged, or retires at any time during the first 12 months of an authorized leave of absence, the period of severance after the date he so quits, is discharged, or retires if he returns to such employment with the Employer and its Related Group within 12 months of the date when his leave of absence began.

Partial credit shall be given for any period less than 365 days in length. The Plan Administrator shall not credit service for any day more than once.

*** End of Article I ***

## ARTICLE II
## PARTICIPATION

2.1 **Participation Requirements.** Effective January 1, 1998, each Employee shall be eligible to participate in the Plan on the date the Employee becomes a Covered Employee. Effective prior to January 1, 1998, each Employee shall be eligible to participate in the Plan on the later of (a) the date the Employee becomes a Covered Employee or (b) the date the Employee completes 30 days of employment with the Employer as an Employee and as a member of the collective bargaining unit represented by the Union.

2.2 **Break in Covered Employee Status.** A Covered Employee who had satisfied the Participation Requirements before ceasing to be a Covered Employee, and who later becomes a Covered Employee again, shall immediately be eligible to participate in the Plan. If a Participant ceases to be a Covered Employee but does not terminate employment with the Employer, then during the period the Participant is not a Covered Employee, the Plan Administrator shall not allocate any contributions to the Participant's Accounts except to the extent the Participant rendered services for the Employer as a Covered Employee. However, the Participant shall continue to receive service credit for each Year of Service and the Participant's Accounts shall continue to share fully in the Plan's Trust allocations, even though the Participant is not a Covered Employee.

2.3 **Contribution Election - Procedure.** In order to contribute to the Plan, each Participant shall comply with the contribution election procedures established by the Committee. The Committee shall have the authority to prescribe any administrative rules or procedures relating to contribution elections that it deems to be necessary or desirable. A Participant may elect to contribute at any time, effective as soon as practicable.

*** End of Article II ***

## ARTICLE III
## CONTRIBUTIONS

3.1  **Participant 401(k) Contributions.** A Participant may elect to defer the receipt of a portion of the Participant's Compensation during a Plan Year and contribute such amount to the Plan as a Participant Contribution. Participant 401(k) Contributions may be made in any whole percentage of Compensation received in a pay period rounded up to the next whole dollar. Participant 401(k) Contributions shall be allocated to 401(k) Contribution Accounts.

Plan Limits. A Participant's Participant 401(k) Contributions in a Plan Year shall not be less than 1 % of the Participant's Compensation and shall not exceed 25% (50%, effective January 1, 2002) of the Participant's Compensation.

Code Limitations and Return of Excess Deferrals. No Participant shall be permitted to have Participant 401(k) Contributions under this Plan, or elective deferrals under any other qualified plan maintained by the Employer or a member of its Related Group during the calendar year, in excess of the dollar limitation contained in Code § 402(g) in effect for the calendar year (as adjusted for cost-of-living increases). The Employer shall inform the Committee if the Code § 402(g) limit, as adjusted, has been exceeded; the excess amount (less any amount already returned to satisfy the ADP Test) shall be returned as soon as administratively possible. If the sum of the Participant 401(k) Contributions, similar contributions to any qualified plan maintained by the Related Group, and any similar contributions to a qualified plan maintained by an unrelated entity exceeded the Code § 402(g) limit, as adjusted, in a calendar year, and the Participant timely informs the Committee of the amount of the excess allocated to this Plan, then the excess (less any amount already returned to satisfy the ADP Test) shall be returned to the Participant as soon as administratively practicable. The amount returned shall be adjusted to reflect the net increase or decrease in the net worth of the Trust attributable to such amount for the Plan Year. The Committee may use any reasonable method to allocate this adjustment.

Participant Elections. Participant 401(k) Contributions shall be made according to rules prescribed by the Committee, and may be made only after the Employer has received authorization from the Participant to deduct the contributions from the Participant's Compensation. The Participant's authorization shall remain in effect until revoked or changed by the Participant. In order to be effective, any authorization, change of authorization or notice of revocation must be made in accordance with any rules and procedures specified by the Committee from time to time. If a Participant receives a Hardship Withdrawal, the Participant's contribution rate shall be immediately reduced to 0%, and shall remain at 0% for 12 months (6 months effective January 1, 2002 for Hardship Withdrawals made on or after January 1, 2001).

Rollover Contributions. Effective January 1, 1998, the Committee may authorize the Trustee to accept Rollover Contributions from Covered Employees. Rollover Contributions may be made by any Covered Employee; however, a Covered Employee shall not be entitled to receive an allocation of any contributions or to make Participant 401(k) Contributions until the Covered Employee has satisfied the Participation Requirements. Rollover Contributions shall be allocated to Rollover Contribution Accounts.

Direct Transfers. The Committee may authorize the Trustee to accept the direct transfer of assets from the trustee or funding agent of another qualified retirement plan (the "Transferor Plan") attributable to the participation under the Transferor Plan of a Covered Employee in connection with the acquisition by the Employer of equity interests in, or the assets of, another entity. Nevertheless, no amount may be transferred to this Plan, directly or indirectly, from a plan required to provide automatic survivor benefits pursuant to Code § 401(a)(11). The Committee shall authorize such a direct transfer only if the Transferor Plan is a plan qualified under Code § 401(a). Unless a transfer of assets in kind is specifically authorized by the Committee, all direct transfers shall be made in cash pursuant to such procedures, rules,

and regulations as the Committee may adopt from time to time. No amounts representing "qualified voluntary employee contributions" within the meaning of Code § 219(e) may be directly transferred to this Plan. All amounts transferred to this Plan pursuant to this Section shall be fully vested at all times. An Employee whose accounts are directly transferred to this Plan shall not be entitled to receive an allocation of Employer contributions or to make Participant 401(k) Contributions until the Employee satisfies the Participation Requirements.

3.2 **Return of Contributions.** Upon written request from the Employer, the Trustee shall return to the Employer the amount of the Employer's contribution made by mistake of fact. Any contribution made by the Employer because of a mistake of fact must be returned to the Employer within one year after the date when the contribution was made. The Trustee shall not increase the amount of the Employer contribution to be returned for any earnings attributable to the contribution, but the Trustee shall decrease the Employer contribution to be returned for any losses attributable to the contribution.

3.3 **Limitation on Annual Additions.**

(a)    The Annual Additions to a Participant's Accounts in this Plan and any other defined contribution plan maintained by the Employer and its Related Group for any Limitation Year shall not exceed in the aggregate the lesser of (i) 25 % of the Participant's Compensation (or, effective for Limitation Years beginning on or after January 1, 2002, 100 % of the Participant's Compensation) or (ii) the applicable Dollar Limitation, as adjusted for cost-of-living increases by the Secretary of the Treasury, as modified by subsection (c), if applicable. For purposes of this Section, "Dollar Limitation" means $30,000, for Limitation Years beginning before January 1, 2002, and means $40,000 for Limitation Years beginning on or after January 1, 2002. The limit described in (i) shall not apply to any contribution for medical benefits after separation from service which is otherwise treated as an Annual Addition. The Annual Additions limitation shall be determined separately for each Related Group.

(b)    If, as a result of a reasonable error in estimating Compensation, or as a result of the allocation of forfeitures, or as a result of other facts and circumstances as provided in the regulations under Code § 415, the Annual Additions to a Participant's Accounts in this Plan would, but for this subsection, exceed the foregoing limits, the Participant 401(k) Contributions shall be reduced.

The Employer shall pay any reduction in Participant 401(k) Contributions, together with earnings attributable to the refunded Participant 401(k) Contributions, to the Participant as soon as administratively practicable, subject to any withholding.

(c)    This subsection applies to Limitation Years beginning before January 1, 2000. If a Participant participates or ever participated in a defined benefit plan maintained by the Employer, including the Coors Retirement Plan, the sum of the Participant's "defined contribution plan fraction" and the "defined benefit plan fraction," as defined below, shall not exceed 1.0 for any Limitation Year. For purposes of this subsection, voluntary contributions to a qualified defined benefit plan are treated as a separate defined contribution plan; all defined contribution plans maintained by the Employer are treated as one contribution plan; and all defined benefit plans currently maintained or ever maintained by the Employer are treated as one defined benefit plan, whether or not such plans have been terminated. If the sum of the Participant's defined contribution plan fraction and defined benefit plan fraction exceeds 1.0, the Participant's benefits under the first defined benefit plan shall be reduced to the extent necessary such that the sum of the

fractions does not exceed 1.0. For purposes of this subsection, "Employer" shall mean a Participating Employer and its Related Group.

(i)   Defined Contribution Plan Fraction. A Participant's "defined contribution plan fraction" for any Limitation Year is a fraction, the numerator of which is the sum of the Annual Additions to the Participant's Accounts for the Limitation Year, and the denominator of which is the sum of the lesser of the following amounts determined for such Limitation Year and for each prior Limitation Year:

(A)   125 % of the Dollar Limitation in effect for such Limitation Year (without regard to the special Dollar Limitations under Code § 415(c)(6)), or

(B)   35 % of the Employee's Compensation for each Limitation Year.

(ii)   Special Rule for Defined Contribution Plan Fractions. Notwithstanding paragraph (i) above, for all Limitation Years ending before January 1, 1983, the amount taken into account in determining the denominator of a Participant's defined contribution plan fraction shall be an amount equal to the product of:

(A)   the amount determined under subparagraphs (i)(A) and (i)(B) above (as in effect for the Limitation Year ending in 1982); and

(B)   a fraction, the numerator of which is the lesser of $51,875 or 35 % of the Employee's Compensation for the Limitation Year ending in 1981, and the denominator of which is the lesser of $41,500 or 25 % of the Employee's Compensation for the Limitation Year ending in 1981.

(iii)   Special Adjustment for Defined Contribution Plan Fractions. Notwithstanding paragraphs (i) and (ii) above, the numerator of the defined contribution plan fraction shall be reduced by the amount required to decrease the combined fractions to 1.0. The amount to be subtracted is the product of the excess of the sum of the fractions over 1.0, and the denominator of the defined contribution plan fraction, as computed through the Limitation Year ending in 1982.

(iv)   Defined Benefit Plan Fraction. A Participant's "defined benefit plan fraction" for any Limitation Year is a fraction, the numerator of which is the sum of the Participant's projected annual benefit (determined as of the last day of the Limitation Year) under all defined benefit plans currently maintained or ever maintained by the Employer, and the denominator of which is the lesser of 125 % of the Dollar Limitation for such Limitation Year, or 140 % of the Participant's highest three-year average Compensation.

(v)   Top heavy Adjustments. In any Limitation Year that contains any portion of a Plan Year for which the Plan is a Top Heavy Plan, the denominators of the defined benefit plan fraction and the defined contribution plan fraction shall be computed using 100 % of the Dollar Limitation instead of 125 %.

### 3.4   Contribution Limits for Highly Compensated Employees (ADP Test).

(a)   Limits on Contributions. The Plan shall satisfy the ADP Test for each Related Group. Code § 401(k) and the regulations issued thereunder are hereby incorporated by

reference. Each Related Group shall apply the ADP Test separately to the Participants employed by the Related Group.

(b)    ADP Testing Method. The Plan shall use the current year testing method for the ADP Test.

(c)    Limitation on Participant 401(k) Contributions. The Committee may limit the Participant 401(k) Contributions of any Highly Compensated Employee at any time during the Plan Year. This limitation may be made, if practicable, whenever the Committee believes that the limits of this Section or the Annual Additions limitation will not be satisfied.

(d)    Corrections to Satisfy Test. If the ADP Test is not satisfied, the Employer shall return Participant 401(k) Contributions to the Highly Compensated Employees, without the consent of the Highly Compensated Employee. Any return shall be made within 2½ months after the close of the Plan Year if possible, and in no event later than 12 months after the close of the Plan Year.

(e)    Determining Amounts Returned. The following procedure shall be applied to determine the amounts returned. First, the aggregate excess contribution for all Highly Compensated Employees as a group shall be determined by calculating the amount by which the Participant 401(k) Contributions of the Highly Compensated Employee(s) with the highest actual deferral ratio (as defined in Code § 401(k)) must be reduced until the actual deferral ratio for such Highly Compensated Employee(s) is reduced to the greater of (i) the actual deferral ratio that causes the ADP Test to be satisfied or (ii) the actual deferral ratio of the Highly Compensated Employee with the next highest actual deferral ratio. The calculation described in the preceding sentence shall be continued until the ADP Test is satisfied. The aggregate excess contribution shall be equal to the sum of the amounts by which the Highly Compensated Employees' Participant 401(k) Contributions must be reduced to cause the ADP Test to be satisfied. Next, the Highly Compensated Employee(s) with the largest dollar amount of Participant 401(k) Contributions shall have an amount returned equal to the lesser of (i) the amount that will cause the dollar amount of such Highly Compensated Employee(s)' Participant 401(k) Contributions to equal the dollar amount of Participant 401(k) Contributions of the Highly Compensated Employee(s) with the next lowest amount of Participant 401(k) Contributions or (ii) the amount of the aggregate excess contribution. Highly Compensated Employees who have contributed the same dollar amount of Participant 401(k) Contributions shall have an equal amount of Participant 401(k) Contributions returned. This procedure shall be repeated until the aggregate excess contribution is exhausted. The amounts returned shall be reduced by any amounts previously returned for the Plan Year under this Article III. The amounts returned shall be adjusted to reflect any increase or decrease in the net worth of the Trust attributable to such contributions for the Plan Year. The Committee may use any reasonable method to calculate the adjustment.

3.5 Military Service. Notwithstanding any provision of this Plan to the contrary, contributions, benefits, and service credit with respect to qualified military service will be provided in accordance with Code § 414(u) for individuals who initiate reemployment on or after December 12, 1994.

*** End of Article III ***

## ARTICLE IV
## INTERESTS IN THE TRUST

4.1 **Participants' Accounts.** The Committee shall establish and maintain separate Accounts in the name of each Participant, but the maintenance of such Accounts shall not require any segregation of assets of the Trust. Each Account shall contain its specified contributions and the increase or decrease in the net worth of the Trust attributable to such contributions.

4.2 **Valuation of Trust.** The Trustee shall separately value the assets of the Trust and each investment account therein at least annually as of the last day of the Plan Year, and as of any other dates determined by the Committee, at their current fair market value and determine the net worth of the Trust and each investment account. The Trustee shall allocate the expenses of the Trust occurring since the preceding Valuation Date (if the expenses are not paid by the Employer), and then determine the increase or decrease in the net worth of the Trust that has occurred since the preceding Valuation Date. The Committee may direct the Trustee to have a special valuation of the assets of the Trust when the Committee determines, in its sole discretion, that such valuation is necessary or appropriate or in the event of unusual market fluctuations of such assets.

4.3 **Allocation of Net Income, Gain or Loss.** As of each Valuation Date the Trustee shall adjust the Accounts to reflect net income, gain, or loss since the last Valuation Date in accordance with the provisions of this Section.

**Participant Directed Accounts.** The Trustee first shall reduce the appropriate Accounts for any forfeitures and for distributions since the last Valuation Date and shall increase the Participants' Accounts for any contributions actually received by the Trustee since the last Valuation Date prior to the allocation of net income, gain or loss, if the contributions will receive an allocation of net income, gain, or loss for the period since the lat Valuation Date from the investment option. Then the Trustee shall determine the net income, gain, or loss by investment option and shall allocate the net income, gain, or loss for the particular investment option pro rata to the portion of the Participants' Accounts invested in that investment option. The allocable net income, gain, or loss for an investment option shall be the net income (or net loss) for the investment option, including the increase or decrease in the fair market value of assets of the investment option, since the last Valuation Date.

**Suspense Accounts.** A suspense account shall not share in the allocation of net income, gain, or loss described in this Section.

*** End of Article IV ***

# ARTICLE V
# VESTING

5.1  __Vesting Schedule.__ A Participant shall be 100% vested in the Participant's Accounts at all times.

5.2  __Forfeitures.__

(a)     Notwithstanding the foregoing vesting rules, Participant 401(k) Contributions may be reduced, pursuant to Section 3.3, if a contribution is made under a mistake of fact or if the contribution is not deductible.  Any such reduction shall be allocated as specified in Section 3.3.

(b)     Notwithstanding the foregoing vesting rules, Annual Additions to a Participant's Accounts and any increase or decrease in the net worth of the Trust attributable to such Annual Additions may be reduced to satisfy the Annual Additions limitation.  Any such reduction shall be allocated as specified in Section 3.4.

(c)     Notwithstanding the foregoing vesting rules, a missing individual's vested Accounts shall be forfeited as provided in Section 13.12.  Any such forfeiture shall be allocated as specified in Section 5.4.

5.3  __Restoration of Forfeitures.__  The forfeiture of a missing individual's Accounts, as described in Section 13.12, shall be restored by the Employer to the individual if the individual makes a claim for such amount.  No other forfeitures shall be restored.  All benefits, rights, and features available to the missing individual when the forfeiture occurred shall be available with respect to the restored forfeiture. The funds for the forfeiture restoration may come from other forfeitures occurring during the Plan Year or from a special Employer Contribution.

5.4  __Allocation of Forfeitures.__  Forfeitures shall be used to reduce the Employer contributions to the Plan as soon as administratively practicable and shall be attributed to the Participating Employer that employed the Participant from whose Account the amounts were forfeited.

*** End of Article V ***

## ARTICLE VI
## DISTRIBUTION OF BENEFITS

6.1 <u>Beneficiaries.</u>  Each Participant shall, in accordance with procedures designated by the Committee from time to time, designate the Beneficiaries and contingent Beneficiaries to whom the Distributable Amount shall be paid in the event of his death.  A Beneficiary designation may be changed by the Participant at any time and without the consent of any previously designated Beneficiary; however, if the Participant is married, his Spouse shall be the Beneficiary designated to receive the benefits payable under this Article VI unless his Spouse has consented to the designation of a different Beneficiary.  To be effective, the Spouse's consent must be in writing, witnessed by a notary public, and filed with the Committee.  An election shall be effective only as to the Spouse who signed the election.  Effective December 19, 1997, if a Participant has designated the Participant's Spouse as the Participant's Beneficiary, and the Participant and this Spouse subsequently divorce, then the Beneficiary designation shall be void and of no effect on the day the divorce is final.  In the absence of an effective Beneficiary designation as to any portion of the Distributable Amount of the deceased Participant's Accounts, the amount shall be paid to the Participant's surviving Spouse; or if none, to the Participant's estate.  If a Beneficiary dies within 120 hours after the Participant died, the Beneficiary shall be treated as having pre-deceased the Participant; if a contingent Beneficiary dies within 120 hours after the primary Beneficiary died, the contingent Beneficiary shall be treated as having pre-deceased the primary Beneficiary.

6.2 <u>Consent Requirements.</u>

<u>Distribution Without Consent.</u>  The Trustee shall distribute the Participant's Accounts without the Participant's (or the Participant's Spouse's or Beneficiary's) consent as soon as practicable if (a) the Participant's Accounts are immediately distributable under Section 6.5 and (b) the aggregate value of a Participant's Accounts is $3,500 ($5,000, effective January 1, 1998) or less or was $3,500 ($5,000, effective January 1, 1998) or less at the time of any prior distribution calculated in accordance with applicable Treasury regulations (for distributions made prior to March 22, 1999).  Any distribution without consent shall be in the form of a lump sum and shall be made in cash to the Participant, (or if deceased, to the Participant's Beneficiary).

<u>Consent Required.</u>  Except as provided in Section 6.5(c) or Section 6.5(d), a Participant (or, if the Participant is deceased, the Beneficiary) must consent to any distribution if (a) a Participant's Accounts are immediately distributable under Section 6.5, and (b) the aggregate value of a Participant's Accounts is greater than $3,500 ($5,000, effective January 1, 1998).  To be effective, the consent to the form of distribution and the time of distribution must be given according to rules prescribed by the Committee.  A consent once given shall be irrevocable once distribution has begun.  Nevertheless, if a Participant (or Beneficiary) has elected to receive distributions in the form of installments, the Participant may elect to accelerate any or all remaining installments.

Not earlier than 90 and not later than 30 days before the Participant's annuity starting date, the Plan Administrator shall provide a benefit notice to a Participant who is eligible to make an election or required to consent under this Article.  For purposes of this Article, the term "annuity starting date" means the first day of the first period for which the Plan pays an amount in any form.  The benefit notice shall explain the optional methods of distribution from the Plan, including the material features and relative values of those methods, and the Participant's right to defer distribution until his or her Required Beginning Date.

If a distribution is one to which Code §§ 401(a)(11) and 417 do not apply, distribution may commence less than 30 days after the notice required under Treas. Reg. § 1.411(a)-11(c) is given, provided that:

(a)     the Plan Administrator clearly informs the Participant that the Participant has a right to a period of at least 30 days after receiving the notice to consider the decision of whether or not to elect a distribution (and, if applicable, a particular distribution option), and

(b)     the Participant, after receiving the notice, affirmatively elects a distribution.

6.3 <u>Distributable Amount</u>. The Distributable Amount of a Participant's Accounts is the value of the Participant's Accounts as of the Valuation Date coincident with or immediately preceding the date distribution is made to the Participant or Beneficiary, reduced by (a) any amount that is payable to an Alternate Payee, (b) any amount withdrawn pursuant to Section 7.1 since such Valuation Date, (c) any distributions under this Article VI since such Valuation Date, and (d) the outstanding balance of any Plan loan.

6.4 <u>Manner of Distribution</u>. The distribution options of this Section (other than a lump sum distribution) are available only if the Participant's Accounts at the time of the distribution to the Participant exceed $3,500 ($5,000, effective January 1, 1998). Effective prior to January 1, 1998, the only available distribution option is a lump sum distribution. Effective January 1, 1998, the distributions options as described in this Section apply.

<u>Lump Sum Distribution Required</u>. A Participant shall receive a lump sum distribution following termination of employment if (a) the Participant's Accounts at the time of the distribution to the Participant are $3,500 ($5,000, effective January 1, 1998) or less or (b) if the Participant terminated employment with the Employer prior to attaining age 55 or dying.

<u>Distribution Options</u>. If a Participant is not required to receive a lump sum distribution, a Participant may elect either or both of the following options:

(a)     a lump sum distribution.

(b)     monthly, quarterly, semi-annual, or annual installments (which need not be equal in amount) over a specified period. The minimum installment payment is $25. The Committee may establish limits on the number of times per year that a Participant or Beneficiary may change the amount of his installment payments. An individual receiving installment payments may elect to receive a partial lump sum payment in an amount not less than $100. The specified period may not exceed the joint life expectancy of the Participant and the Participant's Beneficiary, calculated according to the regulations issued under Code § 401(a)(9). The amount distributed each calendar year shall be at least the minimum amount required to be distributed pursuant to the regulations issued under Code § 401(a)(9). The Participant and the Participant's Spouse (if the Participant's Spouse is the Participant's Beneficiary) may each elect to have their life expectancies redetermined annually. If a Participant (or the Participant's Spouse) fails to make an election, then that individual's life expectancy shall not be redetermined annually.

<u>Stock Distribution</u>. To the extent that any Accounts are invested in Stock at the time of distribution, the Participant (or, if deceased, the Participant's Beneficiary) may elect to receive a distribution in the form of cash or whole shares of Stock. Fractional shares shall be converted to cash. All other distributions shall be in cash.

Distributions to Alternate Payees. Distributions to Alternate Payees shall be made in a lump sum as soon as administratively practicable after the Plan Administrator determines that the Domestic Relations Order is a QDRO.

6.5 **Time of Distribution.** Following termination of employment with the Employer and its Related Groups, a Participant may elect to receive a distribution as soon as practicable. Distribution must commence no later than the Participant's Required Beginning Date.

401(k) Restrictions. Effective prior to January 1, 2002, no amount may be distributed to a Participant from the Participant's 401(k) Contribution Account unless at least one of the following conditions is satisfied: (A) the Participant has separated from service (within the meaning of Code § 401(k)(2)(B)(i)(I)) from the Employer; (B) the Participant's Employer was a corporate entity that disposed of substantially all of the assets used in one of its trades or businesses to an another corporate entity that is not an Affiliated Employer with respect to the Participant's Employer, the Participant is employed by the purchaser of those assets, and the purchaser does not maintain the Plan; (C) the Participant's Employer was a corporate entity that disposes of its interest in a subsidiary employing the Participant and the Participant continues employment with the subsidiary; (D) the Participant has attained age 59½; or (E) the Plan terminates.

Effective on and after January 1, 2002, no amount may be distributed to a Participant from the Participant's 401(k) Contribution Account unless at least one of the following conditions is satisfied: (A) the Participant has severed from employment (within the meaning of Code § 401(a)(2)(B)(i)(J)); (B) the Participant has attained age 59½; or (C) the Plan terminates.

Distribution Upon Participant's Death. The Beneficiary may elect to have the Distributable Amount distributed (A) by the end of the calendar year containing the fifth anniversary of the Participant's death, or (B) in installments over a period not exceeding the life expectancy of the Beneficiary, with the first installment distributed by the end of the calendar year containing the first anniversary of the Participant's death, if the Participant's Accounts at the time of the distribution to the Beneficiary exceed $3,500 ($5,000, effective January 1, 1998). The Beneficiary of an Alternate Payee is not entitled to an installment distribution. If the Beneficiary is the Participant's surviving Spouse, the Beneficiary may elect to defer distribution until the end of the calendar year in which the Participant would have attained age 70½, or, if later, the end of the calendar year containing the first anniversary of the Participant's death. If the surviving Spouse makes such an election but dies before receiving the entire Distributable Amount, then the rules of this subsection shall be applied as if the Spouse were the Participant and as if the Spouse's Beneficiary were the Participant's Beneficiary. If distribution began before the Participant died, then the remaining Distributable Amount shall be distributed at least as rapidly as under the method in use on the date of the Participant's death.

Direct Rollover Election. A Participant, an Alternate Payee who is the Spouse or former Spouse of the Participant, or a surviving Spouse of a deceased Participant (collectively, the "distributee") may direct the Trustee to pay all or any portion of the Participant's "eligible rollover distribution" to an "eligible retirement plan" in a "direct rollover." Within a reasonable period of time before an eligible rollover distribution, the Committee shall inform the distributee of this direct rollover option, the appropriate withholding rules, other rollover options, the options regarding income taxation, and any other information required by Code § 402(f).

   (i) Eligible Rollover Distribution. An eligible rollover distribution is any distribution other than (A) distributions required under Code § 401(a)(9), (B) except as described in this paragraph, distributions of amounts that have already been subject to federal income tax (such as defaulted loans), (C) installment payments in a series of substantially equal payments made at least

annually and (1) made over a specified period of ten or more years, (2) made for the life or life expectancy of the distributee, or (3) made for the joint life or joint life expectancy of the distributee and his designated Beneficiary, (D) a distribution to satisfy the limits of Code § 415 or 402(g), (E) a deemed distribution of a defaulted loan from this Plan, (F) a distribution to satisfy the ADP Test, (G) a Hardship Withdrawal of elective deferrals (effective for distributions after December 31, 1998), (H) a Hardship Withdrawal from any source (effective for distributions after December 31, 2001), or (I) any other actual or deemed distribution specified in the regulations issued under Code § 402(c). Effective for distributions after December 31, 2001, a portion of a distribution shall not fail to be an eligible rollover distribution merely because the portion consists of after-tax employee contributions that are not includible in gross income. However, such portion may be transferred only to an individual retirement account or annuity described in Code § 408(a) or 408(b), or to a qualified defined contribution plan described in Code § 401(a) or 403(a) that agrees to separately account for amounts so transferred, including separately accounting for the portion of such distribution that is includible in gross income and the portion of such distribution that is not so includible.

(ii)   <u>Eligible Retirement Plan</u>. For a Participant or an Alternate Payee who is the Spouse or former Spouse of the Participant, an eligible retirement plan is an individual retirement account or annuity described in Code § 408(a) or 408(b), an annuity plan described in Code § 403(a), or the qualified trust of a qualified plan that accepts eligible rollover distributions. Effective for distributions made after December 31, 2001, an eligible retirement plan includes an annuity contract described in Code § 403(b) and an eligible plan under Code § 457(b) which is maintained by a state, political subdivision of a state, or any agency or instrumentality of a state which agrees to separately account for amounts transferred into such plan from this Plan. Effective for distributions made before January 1, 2002 for a surviving Spouse of a deceased Participant, an eligible retirement plan is an individual retirement account or annuity. Effective for distributions made after December 31, 2001 for a surviving Spouse of a deceased Participant, an eligible retirement plan means an individual retirement account or annuity described in Code § 408(a) or 408(b), an annuity plan described in Code § 403(a), the qualified trust of a qualified plan that accepts eligible rollover distributions, an annuity contract described in Code § 403(b) and an eligible plan under Code § 457(b) which is maintained by a state, political subdivision of a state, or any agency or instrumentality of a state which agrees to separately account for amounts transferred into such plan from this Plan.

(iii)   <u>Direct Rollover</u>. A direct rollover is a payment by the Trustee to the eligible retirement plan specified by the distributee.

6.6   <u>Minimum Distributions</u>. With respect to distributions under the Plan made on or after January 1, 2001 ("New Reg Effective Date") for calendar years beginning on or after January 1, 2001, the Plan will apply the minimum distribution requirements of Code § 401(a)(9) in accordance with the regulations under Code § 401(a)(9) that were proposed on January 17, 2001 (the "2001 Proposed Regulations"), notwithstanding any provision of the Plan to the contrary. If the total amount of required minimum distributions made to a Participant for 2001 prior to the New Reg Effective Date are equal to or greater than the amount of required minimum distributions determined under the 2001 Proposed Regulations, then no additional distributions are required for such participant for 2001 on or after such date. If the total amount of required minimum distributions made to a Participant for 2001 prior to the

New Reg Effective Date are less than the amount determined under the 2001 Proposed Regulations, then the amount of required minimum distributions for 2001 on or after such date will be determined so that the total amount of required minimum distributions for 2001 is the amount determined under the 2001 Proposed Regulations.  This amendment shall continue in effect until the last calendar year beginning before the effective date of the final regulations under Code § 401(a)(9) or such other date as may be published by the Internal Revenue Service.

*** End of Article VI ***

**ARTICLE VII**
**WITHDRAWALS AND LOANS**

7.1 <u>In-Service Withdrawals</u>. While employed, an Employee may withdraw amounts from the Employee's Accounts only as provided in this Section. An Employee shall request withdrawals in the manner prescribed by the Committee. The Committee may limit the number of such withdrawals. A withdrawal may not be made on the same day as a loan. An Employee may withdraw amounts from the following Accounts as follows.

(a)    <u>401(k) Contribution Account</u>. Effective January 1, 1998, an Employee may withdraw all or any portion of the Employee's Participant 401(k) Contributions from the Employee's 401(k) Contribution Account at any time after attaining age 59½, provided that the Employee concurrently withdraws the entire balance, if any, in the Employee's Savings and Investment Contribution Account.

(b)    <u>Rollover Contribution Account</u>. Effective January 1, 1998, an Employee may withdraw all or any portion of the balance in the Employee's Rollover Contributions from the Employee's Rollover Contribution Account at any time after attaining age 59½.

(c)    <u>Hardship Withdrawals</u>. An Employee may withdraw certain funds as a Hardship Withdrawal from the Employee's 401(k) Contribution Account (but not the earnings thereon) in the event of a financial hardship, provided that the Employee concurrently makes all possible withdrawals under subsections (b). A Hardship Withdrawal is available only if the Employee has an immediate and heavy financial need, as defined in paragraph (i), the withdrawal is needed to satisfy the financial need, as explained in paragraph (ii), and the withdrawal is not greater than the maximum permissible withdrawal described in paragraph (iii). After receiving a Hardship Withdrawal, the Employee may not make Participant 401(k) Contributions (and, effective before January 1, 1999, Rollover Contributions) for twelve months (or six months, for Hardship Withdrawals on or after January 1, 2001, effective January 1, 2002).

(i)    <u>Financial Need</u>. Only the following expenses constitute an immediate and heavy financial need: medical care of the Employee or the Employee's Spouse or dependents; costs associated with the purchase of a principal residence of the Employee; tuition and related educational fees for the next twelve months of post-secondary education of the Employee or the Employee's Spouse or dependents; payments to prevent the Employee from being evicted from the Employee's principal residence; and payments to prevent the mortgage on the Employee's principal residence from being foreclosed.

(ii)    <u>Deemed Satisfaction of Need</u>. The withdrawal is deemed to be needed to satisfy the Employee's financial need if (A) the Employee has obtained all withdrawals and all non-taxable loans available from the Employer's qualified plans, (B) for a period of at least twelve months (or six months, for Hardship Withdrawals on or after January 1, 2001, effective January 1, 2002) from the date the Employee receives the withdrawal, the Employee ceases to make Participant 401(k) Contributions and elective contributions to all qualified and non-qualified plans maintained by the Employer (excluding a cafeteria plan qualified under Code § 125 and any health and welfare benefit plans) and the Employee does not exercise any stock options granted by the Employer, and (C) the Participant 401(k) Contributions that the Employee makes in the calendar year after the

withdrawal are limited to the maximum amount allowed by Code § 402(g) (as adjusted by the Secretary of the Treasury for the calendar year after the withdrawal) less the Employee's Participant 401(k) Contributions made during the calendar year of the withdrawal. Effective January 1, 2002, the restriction in (c) shall apply only to Hardship Withdrawals made before January 1, 2001.

(iii)   Maximum Withdrawal. An Employee may not withdraw more than the lesser of (A) the sum of the amount needed to satisfy the Employee's financial need and any taxes and penalties resulting from the withdrawal, and (B) the Participant 401(k) Contributions. An Employee may not withdraw any increase in the net worth of the Trust allocated to the Employee's 401(k) Contribution Account.

(h)   Limitations and Administrative Provisions. An Employee may not withdraw any amount that is subject to a QDRO or that has been pledged as security for a loan. The Committee shall issue such rules as to the frequency of withdrawals, and withdrawal procedures, as it deems appropriate. The Committee may postpone the withdrawal until after the next Valuation Date. The Committee may have a special valuation of the Trust performed before a withdrawal is permitted. The Plan may charge a fee for the withdrawal as well as a fee for having a special valuation performed. The Committee shall have full discretion in setting the amount of the fees.

(i)   Form of Payment of Withdrawal. Hardship Withdrawals shall be in cash. To the extent that an Employee's Accounts are invested in Stock at the time of the Withdrawal, the Employee making a withdrawal other than a Hardship Withdrawal may elect to receive his withdrawal in cash or whole shares of Stock. Fractional shares shall be converted to cash. To the extent that an Employee's Accounts are not invested in Stock, the withdrawal shall be in cash.

7.2   Loans. Participant loans shall be permitted under the Plan in accordance with this Section. The Committee may adopt additional guidelines for administering its Participant loan program, in the form of a loan policy. The Committee shall administer the Plan's loan program in accordance with any loan policy and the following rules:

Availability. Loans are available only to Employees (referred to in this Section as "Borrowers"). Loans shall be made on a reasonably equivalent basis to any eligible Borrower who has demonstrated to the satisfaction of the Committee that the Borrower intends to repay the loan and that the Borrower has sufficient income to repay the Borrower's loan, except that a loan shall not be available to an otherwise eligible individual if the individual either (1) has a Plan loan in default at the time the loan request is made, or (2) is not receiving Compensation from the Employer at the time a loan request is made. Loans shall not be made available to Highly Compensated Employees in an amount greater than the amount made available to other Employees.

Loan Amount. The minimum loan amount for any single loan is $1,000. A Borrower may only have one outstanding loan at a time from this Plan. The original principal amount of each loan shall be a whole dollar amount. The maximum outstanding indebtedness under this Plan shall not exceed 50 % of the aggregate balance in all the Borrower's Plan Accounts, less any portion allocated to an Alternate Payee. The maximum total outstanding indebtedness of the Borrower under this Plan and all other plans maintained by the Employer is the lesser of:

(i)   $50,000, reduced by the excess (if any) of (A) the highest outstanding balance of loans to the Borrower from this Plan and all other plans maintained by the Employer during the one-year period ending on the day before such loan is made, over (B) the outstanding

balance of loans to the Borrower from this Plan and all other plans maintained by the Employer on the date such loan is made; or

(ii) one-half the values of the Borrower's Accounts under this Plan and under all other qualified plans maintained by the Employer, excluding amounts allocated to an Alternate Payee.

Rate of Interest. The rate of interest charged on a loan shall be the prime rate as reported in the *Wall Street Journal* on the first business day of the month in which the loan application is submitted to the Committee, plus 1%.

Loan Term. The term of a loan may be 12, 24, 36, 48, or 60 months.

Repayment. All loans shall be repaid, with interest, in substantially level amortized payments made not less frequently than monthly. Loans shall be repaid through payroll withholding unless the Employee is pre-paying some or all of the Employee's loan, or the Employee is not receiving a paycheck (because, for example, the Employee is on an unpaid leave of absence, has been temporarily laid off or has incurred a Disability), in which case the pre-payment need not be through payroll withholding. Payment other than through payroll withholding must be made by certified check or cashier's check. Prepayment of a loan in full or in part may be made at any time without penalty.

Repayment Upon Termination of Employment. If a Borrower terminates employment for any reason (including death or retirement), the outstanding loan balance is due and payable upon the Borrower's termination of employment. Effective prior to January 1, 2002, the outstanding loan balance shall be in default, if the loan is not paid within 30 days of employment termination. Effective on and after January 1, 2002, the outstanding loan balance shall be in default upon the Borrower's termination of employment.

Loan Repayments During Layoff or Unpaid Leave of Absence. Effective prior to January 1, 2002, if the Participant is laid off or begins an unpaid leave of absence, the Participant is required to submit monthly loan payments. Effective January 1, 2002, the Participant's loan payments shall be suspended for 12 months following the date the Participant is laid off or begins an unpaid leave of absence. The Participant's loan repayments shall be reamortized and shall resume immediately upon the expiration of the 12 month period. The loan shall not be in default if the unpaid balance of the loan, which shall include the interest accrued during the period of leave, is repaid in substantially level payments amortized at least quarterly over a period not longer than sixty months from the date of the original loan. After the expiration of the 12 month period, the Participant is required to submit monthly loan payments. If the Participant returns to active employee status, payroll deductions for loan payments are reactivated.

Loan Repayments During Military Leave. If a Participant takes a military leave within the meaning of Code § 414(u), the Participant's loan payments shall be suspended during the period of the military leave. The Participant's loan payments shall be reamortized and shall resume immediately upon the Participant's return to employment with the Employer. The loan shall not be in default if the unpaid balance of the loan, which shall include the interest accrued during the period of military leave, is repaid in substantially level payments amortized at least quarterly over a period not longer than the remaining term of the loan plus the period of military service. If the Participant does not return to employment following the period of military service within the time prescribed by Code § 414(u), the loan shall be in default on the day following the last day of the reemployment period.

Default. All loans shall be payable in full on the expiration of the "cure period," which is, effective prior to January 1, 2002, sixty days after a default unless the default is cured within those sixty days or effective on and after January 1, 2001, the calendar quarter following the calendar quarter in which the default occurs unless the default is cured prior to the last day of the calendar quarter following the calendar quarter in which the default occurs. A loan shall be considered to be in default upon the earliest of the following: (i) non-payment of a loan installment on its due date; (ii) effective on and after January 1, 2002, the Borrower's death; (iii) effective on and after January 1, 2002, the Borrower's separation from service, unless the Borrower is laid off or on an approved leave of absence, and (iv) if the Participant does not return to employment following a period of military service under Code § 414(u), the day following the last day of the reemployment period. If a default is not cured before the expiration of the cure period, the entire outstanding balance of the loan (determined as of the last day of the cure period) shall be treated as a deemed distribution and shall be taxable to the Borrower. The Committee may, in addition to all other remedies, apply the Borrower's Accounts toward payment of the loan; however, the Trustee may not exercise such right of set-off with respect to the 401(k) Contribution Account until it has become payable pursuant to Section 6.5.

Administration. A Borrower shall apply for a loan by submitting an application to the Committee specifying the amount of the loan, which must be in whole dollars. The loan shall be processed as quickly as administratively possible after the Committee has received the Borrower's application. The Committee may impose a loan application fee, loan origination fee, and loan maintenance fees. All loans shall be evidenced by a promissory note and shall be fully secured by the Borrower's Account pro rata. No Borrower whose Accounts are so pledged may obtain distribution of any portion of the Borrower's Accounts that has been pledged. The rights of the Trustee under such pledge shall have priority over all claims of the Borrower, the Borrower's Beneficiaries, and creditors. Loans shall be treated as a directed investment of the Borrower. The loan shall remain a part of the Trust, but, to the extent of the loan outstanding at any time, the Borrower's Account alone shall share in any interest paid on the loan, and it alone shall bear any expense or loss it incurs in connection with the loan. The Trustee may retain any principal or interest paid on the Borrower's loan in an interest bearing segregated investment Account on behalf of the Borrower until the Trustee deems it appropriate to add the amount paid to the Participant's Accounts under the Plan.

Other Federal Laws. The terms of any loan shall be modified, if necessary, to comply with any federal law (including, but not limited to, the Soldiers' and Sailors' Civil Relief Act, as amended, that limits the interest rate on loans to individuals in military service if the loan was made before the individual's entry into military service).

*** End of Article VII ***