# EXHIBIT 2

This document constitutes part of a prospectus covering securities that have been registered under the Securities Act of 1933.

# 401(k) SAVINGS PLAN FOR HOURLY EMPLOYEES AT THE MEMPHIS, TENNESSEE BREWERY

**Summary Plan Description and Prospectus**

**June 2, 2004**

**The date of this Prospectus is June 2, 2004**

## TABLE OF CONTENTS

**Subject**                                                                                                   **Page**

INTRODUCTION ................................................................................................................ 2
OVERVIEW OF THE PLAN ............................................................................................... 3
TYPE OF PLAN ................................................................................................................... 4
PLAN ELIGIBILITY ........................................................................................................... 4
HOW MUCH YOU CAN CONTRIBUTE ........................................................................... 5
    Regular Contributions ..................................................................................................... 5
    Catch-Up Contributions ................................................................................................... 5
    Compensation Definition .................................................................................................. 5
    Limits on Your Contributions .......................................................................................... 5
ROLLOVER CONTRIBUTIONS AND TRANSFERRED BENEFITS ................................ 6
YOUR ACCOUNTS ............................................................................................................. 7
INVESTMENT OF YOUR ACCOUNTS .............................................................................. 7
    Coors Stock Fund ............................................................................................................. 8
    Insider Trading Restrictions on the Coors Stock Fund ...................................................... 10
    Other Trading Restrictions on Funds ............................................................................... 13
    Additional Information Available Upon Request ................................................................ 14
    Contacting the Coors Benefits Service Center .................................................................. 14
CHANGING YOUR CONTRIBUTIONS OR INVESTMENTS ........................................... 15
    401(k) Contribution Amount ............................................................................................ 15
    Fund Investment Percentages .......................................................................................... 15
    Fund Balances ................................................................................................................. 15
VALUATION ....................................................................................................................... 15
VESTING ............................................................................................................................. 16
TERMINATION, RETIREMENT, DEATH, OR DISABILITY ........................................... 16
    Account Balances of $5,000 or Less ................................................................................ 16
    Account Balances of More than $5,000 ........................................................................... 16
    Payments Upon Your Death ............................................................................................. 17
    Rolling Over Plan Distributions ....................................................................................... 17
    Form of Payment ............................................................................................................. 17
WITHDRAWALS ................................................................................................................ 17
    Rollover Contribution Account ........................................................................................ 18
    401(k) Contribution Account ........................................................................................... 18
    Hardship Withdrawals ..................................................................................................... 18
LOANS ................................................................................................................................ 18
    Eligibility ......................................................................................................................... 19
    Fees ................................................................................................................................. 19
    Amount of Loan .............................................................................................................. 19
    Term of Loan .................................................................................................................. 19
    Interest Rate .................................................................................................................... 19
    Loan Application .............................................................................................................. 19
    Loan Approval ................................................................................................................ 19
    Loan Security .................................................................................................................. 19
    Receipt of Loan Funds .................................................................................................... 19
    Loan Payments ................................................................................................................ 19
    Payment Due Date ........................................................................................................... 20
    Loan Prepayment ............................................................................................................ 20
    New Loan After Loan Payoff ........................................................................................... 20

Default Upon Death ................................................................................ 20
Repayment at Termination or Retirement ............................................... 20
Repayments During Unpaid Leave of Absence ....................................... 20
Late Payment ........................................................................................... 21
Loan Default ............................................................................................ 21
Loan Tax Status ....................................................................................... 21
ABOUT TAXES ............................................................................................. 21
401(k) Contributions ............................................................................... 21
Investment Earnings ................................................................................ 21
Penalty Tax .............................................................................................. 22
Coors Stock .............................................................................................. 22
Special Ten-Year Averaging Election ..................................................... 22
Rollovers and Income Tax Withholding .................................................. 22
Distributions Eligible for Rollover .......................................................... 23
Sale of Coors Stock Distributed From the Plan ...................................... 23
REPORTS TO PARTICIPANTS ...................................................................... 23
OTHER IMPORTANT FACTS ........................................................................ 24
Failure to Provide Current Address ......................................................... 24
Termination or Amendment of Plan ........................................................ 24
Payments to Minors and Incompetent Persons ....................................... 24
Controlling Law ....................................................................................... 24
Employer Records .................................................................................... 24
Loss of Benefits ....................................................................................... 24
Terms and Conditions of Employment .................................................... 25
Assignment; QDROs ............................................................................... 25
Applying for Benefits ............................................................................... 25
CLAIMS PROCEDURE ................................................................................... 25
Notification of Your Benefits ................................................................... 25
Timing of Adverse Benefit Determination ............................................... 25
Appealing an Adverse Benefit Determination ......................................... 26
Statute of Limitations for Bringing Suit .................................................. 26
Discretion of the Plan Administrator and Appeals Committee ............... 26
STATEMENT OF ERISA RIGHTS ................................................................. 26
Receive Information About Your Plan and Benefits ................................ 26
Prudent Actions by Plan Fiduciaries ....................................................... 27
Enforce Your Rights ................................................................................ 27
Assistance with Your Questions .............................................................. 27
SALE OF COORS STOCK .............................................................................. 28
DOCUMENTS INCORPORATED BY REFERENCE .................................... 28
FOR MORE INFORMATION ......................................................................... 29
PLAN ADMINISTRATION ............................................................................. 29

## 401(k) SAVINGS PLAN FOR HOURLY EMPLOYEES
## AT THE MEMPHIS, TENNESSEE BREWERY

133,265 shares of Class B Nonvoting Common Stock of Adolph Coors Company, par value $0.01 per share ("Coors Stock"), have been registered for issuance under the Securities Act of 1933, as amended (the "Securities Act"), under the 401(k) Savings Plan for Hourly Employees at the Memphis, Tennessee Brewery. In addition, an indeterminate amount of participation interests in the Plan have been registered under the Securities Act to be offered or sold pursuant to the Plan.

This Prospectus does not constitute an offer to sell, or the solicitation of an offer to buy, the securities to which this Prospectus relates in any jurisdiction to any person to whom it is unlawful to make such an offer or solicitation in such jurisdiction.

**These securities have not been approved or disapproved by the Securities and Exchange Commission, or any State securities commission, nor has the Securities and Exchange Commission, or any State securities commission, passed upon the accuracy or adequacy of this prospectus. Any representation to the contrary is a criminal offense.**

Neither delivery of this Prospectus nor investment in accordance with the Plan shall, under any circumstances, imply that there have been no changes in Adolph Coors Company's affairs since the date of this Prospectus.

# INTRODUCTION

Coors Brewing Company maintains the 401(k) Savings Plan for Hourly Employees at the Memphis, Tennessee Brewery (the "Plan") to enable eligible employees to gain a measure of economic security for retirement.

The Plan covers the employees of Coors Brewing Company ("Employer") who are members of a collective bargaining unit represented by Memphis, Tennessee, I.B.T. Local 1196.

The Plan was most recently amended and restated effective January 1, 1997. This booklet reflects the provisions of the Plan effective as of June 2, 2004. This booklet (your "Summary Plan Description" or "SPD") describes the terms of the Plan as they apply to eligible employees of the Employer.

The Plan consists of two formal legal documents: the Plan document and the trust agreement (the "trust"). The Internal Revenue Service ("IRS") has issued a letter that the form of the Plan document and trust agreement satisfies the qualification requirements of the Internal Revenue Code of 1986, as amended (the "Code").

This Summary Plan Description is provided to explain to you, in easy to understand language, how the Plan works. It describes your benefits and rights as well as your obligations under the Plan. It is important for you to understand that because this SPD is only a summary, it cannot cover all the details of the Plan or how the rules will apply to every person in every situation. You, your beneficiaries and your lawyer or other legal representative, may examine the Plan document, the trust agreement and other documents relating to the Plan during regular business hours or by appointment at a mutually convenient time in the office of the Plan Administrator. You may obtain a copy of the Plan and trust agreement; however, you must pay the charges for photocopying.

**Every effort has been made to accurately describe the complicated provisions of the Plan. If there is any conflict between this SPD and the Plan document or trust agreement, the official Plan documents will always be followed in the actual determination of your benefits.**

If you have any questions about the Plan or trust agreement, you should contact the Plan Administrator.

---

Este folleto contiene un resúmen en inglés de sus derechos y beneficios bajo el Plan de ahorros e inversiónes de Coors 401(k) Savings Plan for Hourly Employees at the Memphis, Tennessee Brewery. Si usted tiene alguna dificultad en comprender cualquier parte de este folleto, favor de comunicarse con Barbara Albanesi, la administradora del plan, en su oficina en Coors Brewing Company, Mail No. NH212, P.O. Box 4030, Golden, CO 80401. Usted también puede llamar a la oficina de la Administradora del Plan al (303) 277-6273 para asistencia. Las horas de oficina son de las 8:00 de la mañana hasta las 5:00 de la tarde, lunes a viernes.

---

## OVERVIEW OF THE PLAN

This section of the SPD is an outline of the major features of the Plan. They are described in more detail in other sections.

- Generally, you may contribute any percentage of your compensation for the pay period. However, your contributions may never exceed your compensation after subtracting all mandatory and voluntary withholdings and deductions.

- Your contributions are deducted from your paycheck before federal and most state income taxes are calculated -- which lowers the amount of taxes withheld from each paycheck.

- You are immediately 100% vested in (entitled to) your contributions and all investment earnings on those contributions credited to your account.

- Your contributions and investment earnings are not subject to income tax until they are withdrawn from the Plan.

- You may direct how your Plan accounts are invested. You may invest your accounts in a number of investment options. You will receive information on the investment options available at the time you first become eligible to participate and with each of your statements. The available investment options may be changed in the future. You will be notified whenever this happens.

- You may withdraw your 401(k) contributions from the Plan while you are still employed by Coors in cases of extreme financial hardship, subject to IRS restrictions and penalties.

- Loans from the Plan give you the opportunity to use your contributions in times of financial need.

- You may receive a distribution from the Plan when you terminate your employment with Coors and all related companies. Your beneficiary receives a distribution from the Plan after you die, if you had a balance in your Account at your death.

## TYPE OF PLAN

The Plan is a profit sharing 401(k) plan. The purpose of the Plan is to encourage you to prepare for your retirement by permitting you to save on a pre-tax basis, which is permitted under § 401(k) of the Internal Revenue Code.

Under this type of plan, there is no fixed dollar amount of retirement benefits. The amount of your benefit from the Plan will equal the amount of your account balance at the time your benefits are distributed. The amount in your account(s) will reflect your contributions, the length of time you participated in the Plan and your success in investing your account.

Although a governmental agency known as the Pension Benefit Guaranty Corporation ("PBGC") insures the benefits payable under plans which provide for fixed and determinable retirement benefits, the PBGC does not include this Plan within its insurance program because this Plan does not provide a fixed and determinable retirement benefit.

## PLAN ELIGIBILITY

In order to be eligible to join the Plan, you must be employed in "covered employment."

You are in *"covered employment"* if you are employed by the Employer and you are a member of a collective bargaining unit represented by the Memphis, Tennessee, I.B.T. Local 1196 (the "Union") **unless:**

- you are a leased employee (i.e., an employee provided by an agency) (even if you are later reclassified as a common law employee as a result of an administrative or judicial proceeding);
- you are a non-U.S. citizen who lives outside the U.S.;
- your position is covered by another collective bargaining agreement (unless the agreement specifically provides for your participation in the Plan);
- you are a resident of Puerto Rico and you have Puerto Rico source income; or
- you are classified by Coors as a seasonal employee at the Memphis, Tennessee plant.

If you are in covered employment, you are eligible to join the Plan immediately.

You may join the Plan by calling the Coors Benefits Service Center at 1-888-881-7123 or logging in at https://netbenefits.fidelity.com any time after you are eligible. When you enroll through the Coors Benefits Service Center, you:

- authorize a payroll deduction by electing the percentage of compensation you want to contribute, and

- elect how you want your contributions invested.

You must submit a beneficiary designation form (naming a beneficiary or beneficiaries to receive any benefits payable when you die) which is included in your enrollment packet. A beneficiary designation form is also available from the Coors Benefits Service Center. You may change your beneficiary at any time by filing a new beneficiary form. If you are married and wish to name someone other than your spouse as your sole primary beneficiary, you must have your spouse's written and notarized consent. Please note the following with respect to your beneficiary designation:

♦  If you and your spouse divorce and your spouse was named as your beneficiary, your spouse will automatically be revoked as your beneficiary upon your divorce, so you should then name another beneficiary (or rename your former spouse, if that is your intent).

♦  If you have completed and returned a common law spouse affidavit form to the Coors Benefits Department for other purposes (such as to obtain coverage of your common law spouse under your health plan) your common law spouse is also treated as your spouse for all other benefits purposes, including your beneficiary designation under the 401(k) Plan.

If you do not join the Plan when you are first eligible, you may join the Plan at a later date, as long as you are still eligible.

Your 401(k) contributions start being withheld from your next paycheck beginning as soon as practical after you enroll.

## HOW MUCH YOU CAN CONTRIBUTE

**Regular Contributions** -- Generally, you may contribute any percentage of your compensation each pay period through payroll withholding. However, your contributions may never exceed your compensation after subtracting all mandatory and voluntary withholdings and deductions. The amount you contribute must be in whole percentages (for example: 2%, 25%). The percentage you elect to contribute is multiplied by your compensation, rounded down to the next dollar, and limited if necessary to the amount available after mandatory and voluntary withholdings and deductions.

**Catch-Up Contributions** -- An additional type of contribution permitted under the Plan is called a catch-up contribution. You are eligible to make catch-up contributions if you are age 50 or older (or will attain age 50 by the last day of the Plan Year). Catch-up contributions are not subject to federal income tax and, in most states, state income tax, in the year in which they are made, but are subject to Social Security ("FICA") taxes. However, catch-up contributions are not subject to the limitations imposed on regular 401(k) contributions (discussed below). If you are eligible to make catch-up contributions, the law permits you to make catch-up contributions to the Plan each Plan Year even if that contribution would exceed the limits that otherwise apply to regular 401(k) contributions. The maximum catch-up contribution for 2004 is $3,000. That maximum amount increases by $1,000 each year until the year 2006 (i.e., $4,000 in 2005, and $5,000 in 2006). Therefore, if you are eligible to make catch-up contributions for the 2004 Plan Year, you could make a maximum regular 401(k) contribution of $13,000 and a maximum catch-up contribution of $3,000, for a total pre-tax contribution to the Plan of $16,000 for the 2004 Plan Year.

The amount you elect to contribute is deducted automatically from each of your paychecks. Your contributions are contributed to your 401(k) Contribution Account.

**Compensation Definition** -- Compensation includes your base pay and overtime pay before any deductions, but excludes bonuses and commissions from your Employer. (**Special Note:** Under federal law, the amount of compensation that may be considered for Plan purposes is limited to a dollar amount which is indexed and may change from year to year. For the Plan Year beginning January 1, 2004, this limit is $205,000.)

**Limits on Your Contributions** -- The Code limits annual 401(k) contributions. This limit may change from year to year.

| Calendar Year | Maximum Amount |
|---------------|----------------|
| 2004          | $13,000        |
| 2005          | $14,000        |
| 2006          | $15,000        |

Once the limit reaches $15,000 in 2006, the limit is indexed for increases in the cost of living and may be increased in future calendar years. Contributions of some highly compensated employees may have additional restrictions. This dollar limit applies to your 401(k) contributions to this Plan as well as any other 401(k) savings plans in which you may participate in the same year (other than any catch-up contributions). The Form W-2 you receive from each employer for the calendar year will list your total salary reduction contributions for that calendar year under that employer's plan. If your total exceeds the maximum amount, you must have the excess amount distributed from one of the plans by April 15th of the year following the year you over-contributed **in order to avoid certain penalty taxes**. If you decide you want the excess contributions distributed from this Plan, you must notify the Coors Benefits Service Center as soon as possible following the end of the calendar year in which you made the excess salary reduction contribution so that the Coors Benefits Service Center will have enough time to actually refund the excess amount to you, adjusted to reflect earnings or losses, by April 15th. **(Special Note:** The dollar limit does not apply to rollover contributions or transferred benefits, as discussed below, or to any amount you contribute on a salary reduction basis under a cafeteria plan, flexible spending account plan, dependent care assistance plan, adoption assistance plan, or qualified transportation fringe benefit.) If you only participate in this Plan, the Plan Administrator will keep track of these limits; if any are exceeded, the Plan Administrator will refund some of your contributions to you.

Federal law also limits the total amount that can be added to your accounts under the Plan. In general, the limit for 2004 is the lesser of 100% of your compensation from the employer or $41,000. The dollar limit increases for cost of living adjustments from time to time. This limit on the total amount that can be added to your accounts under the Plan applies to your 401(k) contributions. This limit does not apply to any rollover contributions you make to the Plan. Part of the limit applies to catch-up contributions. The 100% of compensation limit applies to your catch-up contributions, but the $41,000 limit does not. Contributions of some highly compensated employees may have additional restrictions. The Plan Administrator will keep track of these limits; if any are exceeded, the Plan Administrator will refund some of your contributions to you.

## ROLLOVER CONTRIBUTIONS AND TRANSFERRED BENEFITS

If you previously worked for another employer, you may have accumulated benefits under another employer-sponsored "qualified" pension or profit sharing plan. Under certain circumstances, you may be able to put those benefits into this Plan by making a "rollover contribution" or having your vested benefits transferred directly from your prior employer's plan into this Plan.

Most distributions from qualified plans can be rolled over except, in general, payments made over a single life expectancy or joint life expectancies, installments for a period of 10 years or more, the minimum amount required to be distributed each year after you reach your "required beginning date" (generally, the April 1 following the later of the calendar year in which you retire or the calendar year in which you attain age 70½), and hardship distributions.

Your distribution can be directly transferred or rolled over to this Plan from your prior employer's plan by (1) asking your prior employer's plan to make the check payable to the trustee of this Plan, or, (2) if your distribution check was made payable to you, you can deposit the check in this Plan within 60 days after you received the check. You can also deposit an amount equal to the amount that was withheld for federal income taxes from your distribution from your prior employer's plan. *See*, "Rollovers and Income Tax Withholding," below for more information concerning rollovers and withholding.

In addition, if you deposited your distribution in an individual retirement account (an "IRA"), you can withdraw your benefits (plus the earnings) from the IRA and deposit them in this Plan. You must deposit the funds in this Plan within 60 days of the date you received them from your IRA.

The Coors Benefits Service Center must approve all rollover contributions and transferred benefits. If you have benefits from another employer's plan or an IRA and you want to put those funds in this Plan, contact the Coors Benefits Service Center at 1-888-881-7123.

## YOUR ACCOUNTS

All contributions to the Plan are held in a trust fund established to hold the Plan's assets. The trust contains various separate accounts. You may have the following separate accounts in the Plan.

1.  **401(k) Contribution Account.** This account holds your 401(k) contributions, plus earnings, gains and losses on those contributions.

2.  **Rollover Contribution Account.** You may also have a Rollover Contribution Account if you rolled money from another employer's plan into this Plan. This account holds those contributions, plus earnings, gains and losses on those contributions.

The Coors Benefits Service Center maintains records and accounts of all assets held in the Plan and of all investments, receipts, disbursements and other transactions. A separate account is maintained by the Coors Benefits Service Center for each participant. All accounts of Participants are maintained by the Coors Benefits Service Center in accordance with the instructions of the Plan Administrator.

Within 90 days after the close of each Plan Year, the Coors Benefits Service Center will file with the Plan Administrator a written account setting forth all investments, receipts, disbursements and other transactions effected by it during the year and showing all cash and other property held at the end of the Plan Year.

## INVESTMENT OF YOUR ACCOUNTS

You may direct the investment of the funds in your Plan accounts. Contributions to the Plan may be invested, upon the election of each Participant, in whole percentage, in any one or more of the available investment options.

There is a Plan committee that has selected the investment options that are available under the Plan. The committee may decide to change the available investment options in the future. You will be notified if this occurs.

The Plan is intended to satisfy the requirements of § 404(c) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), and the regulations issued by the Department of Labor under ERISA § 404(c). If you direct the investment of your accounts, the Plan's fiduciaries are relieved of liability for losses that are the direct and necessary result of your investment directions.

Information regarding performance history and investment criteria of each investment option (other than the Coors Stock Fund) is contained in the prospectus for each fund. You should carefully review the prospectus for each fund.

The Trustee or the Plan Administrator will periodically send you additional information on the available investment options. In addition, you may contact the Coors Benefits Service Center or the Plan Administrator to obtain more detailed information on any of the investment options, such as the most recent prospectus, financial statement, list of assets, current and past investment performance, and similar information. Furthermore, information on the available investment options will be included with each of your quarterly statements.

As of June 2, 2004, the following funds are available under the Plan:

- Fidelity Retirement Government Money Market Portfolio
- Fixed Fund
- PIMCO Total Return Fund
- Fidelity Equity-Income Fund
- Fidelity Fund
- Fidelity Growth & Income Portfolio
- Spartan U.S. Equity Index Fund
- Fidelity Blue Chip Growth Fund
- Fidelity Low-Priced Stock Fund
- Fidelity Magellan Fund
- INVESCO Small Company Growth Fund
- Fidelity Diversified International Fund
- American Funds New Perspective
- USAA International Fund
- Fidelity Asset Manager: Growth
- Fidelity Asset Manager
- Fidelity Asset Manager: Income
- Coors Stock Fund

**Coors Stock Fund** -- One of the investments available under the Plan is the Coors Stock Fund. The Coors Stock Fund is an investment in the shares of Class B Common Stock (Nonvoting) of Adolph Coors Company, par value $0.01 per share ("Coors Stock") and short-term liquid investments necessary to satisfy the fund's cash needs for transfers and payments. Your proportionate interest in the Coors Stock Fund is measured in units of participation, not in shares of Coors Stock. It is expected that the short-term investments will be minimal in relation to the total value of the Fund. The objective of the Coors Stock Fund is to provide Participants with an opportunity to participate in the future growth of Coors through the ownership of common stock.

- The Coors Stock Fund is considered a higher risk investment because, among other reasons, it consists of a single security rather than a diversified portfolio of securities. The Coors Stock Fund is not a managed or diversified investment.

- You may elect to increase or decrease your investment in the Coors Stock Fund. However, there may be restrictions on the ability to buy or sell in the Coors Stock Fund under the Plan during certain periods, including restrictions caused by market conditions.

- If you transfer funds out of the Coors Stock Fund, you must wait 14 days before you may transfer funds back into the Coors Stock Fund.

- If you request a transaction in the Coors Stock Fund, the transaction may be suspended (delayed) if there are not sufficient short-term liquid investments in the Coors Stock Fund to process your transaction. A shortage of short-term liquid investments in the Coors Stock Fund is unlikely to occur, because the Coors Stock Fund may have a line of credit to address liquidity needs. However, if a shortage occurs, your transaction may be suspended. In that case, transactions will generally be processed on a first-in, first-out basis, at the price for the processing date. Loans, withdrawals, and distributions from the Coors Stock Fund will be given priority over exchanges out of the stock fund. In unusual circumstances, suspended requests may be cancelled and the Coors Stock Fund may be closed to new purchases and sales. If you want to determine whether your requested transaction has been processed, you will need to monitor your account by contacting the Coors Benefits Service Center at 1-888-881-7123 or https://netbenefits.fidelity.com. If your request has not been processed, the transaction status will be shown as "pending" and plan balances will not reflect transaction activity. If you monitor your transaction and learn that it has been suspended, you have the option of waiting until sufficient liquidity has been restored to the Coors Stock Fund, or you may cancel the transaction while it is still pending and has not yet been processed. If you wait, your transaction will be processed at the closing price for the processing date, so long as the fund remains open. If you decide not to wait, cancellations must be received by the Coors Benefits Service Center before the close of the New York Stock Exchange to affect transactions that would otherwise be processed that day.

- If the Coors Benefits Service Center receives your request for a sale from the Coors Stock Fund before the close of the New York Stock Exchange (generally, 4 p.m. Eastern time) on any business day and the transaction is processed that day, you will receive the closing price for that day. If the Coors Benefits Service Center receives your request for a sale from the Coors Stock Fund on weekends, holidays, or after the close of the New York Stock Exchange on a business day, and your transaction is processed on the next business day, you will receive that day's closing price. In either case, if the transaction is suspended due to insufficient liquidity and processed on a later date, you will receive the closing price on the processing date.

- Commissions and other remuneration paid to brokers or dealers when purchases of Coors Stock are made in the open market are charged against the entire Coors Stock Fund and included in the determination of the fund's net asset value. Brokers are selected by the Trustee, who will evaluate the reasonableness of their commissions.

- The shares of Coors Stock held in a participant's account may be voted by the Participant. The shares are registered in the Trustee's name. However, the Trustee will vote the shares for the

participant in accordance with the instructions of the participant, and will not vote the shares unless instructed by the participant.

**Insider Trading Restrictions on the Coors Stock Fund** – Employees, Board members of Adolph Coors Company, officers of Adolph Coors Company and its direct and indirect subsidiaries (referred to collectively in this section as "Coors"), members of their households, and members of the Coors family who are employees of Coors and members of their households, whether in their personal or representative capacity, are subject to restrictions that prohibit insider trading in the Coors Stock Fund and in "Securities" outside the Plan. "Securities" for these purposes means common stock, preferred stock, or debt securities of Coors and the options to sell or buy those securities (puts, calls, etc.). From time to time, Coors may determine that it is prudent to restrict trading by certain employees or groups not described in these insider trading restrictions. Special notifications will be given in those circumstances.

Many of the restrictions on insider trading govern the disclosure of information that is "material" and "nonpublic" information. Information is "material" if it is information about Coors that the average investor would want to know before deciding whether to buy, sell or hold Coors securities (i.e., it could affect the market price of those securities). Examples of information that may be material are:

- ✓ financial performance, especially quarterly and year-end earnings;
- ✓ company projections and strategic plans;
- ✓ significant changes in sales volume;
- ✓ significant product recalls;
- ✓ new product introductions;
- ✓ significant pricing changes;
- ✓ stock splits, public or private Securities offerings, or other changes in capital structure;
- ✓ changes in dividend policies or amounts;
- ✓ significant changes in senior management, the Board, or Coors' accountants;
- ✓ actual or threatened significant litigation or enforcement action, and the resolution of such action;
- ✓ significant mergers and acquisitions or the sale of assets involving Coors; and
- ✓ major events such as changes in accounting policies, marketing plans, or the availability of raw materials or key supplies.

Information is "nonpublic" if it is information that has not been included in Coors' filings with the Securities and Exchange Commission (SEC) or in a press release broadly disseminated to the investing public. For these purposes, information is not considered public until after one full trading day from its filing or public release.

- <u>Insider Trading Restrictions that Apply to All Employees:</u>

  - ➤ Employees may not purchase or sell Securities from the time they learn of material, nonpublic information until one full trading day (or in special circumstances, two full trading days) from the public release of the material information. This prohibition includes purchases or sales by members of the employee's household, purchases and sales by entities controlled by the employee (corporations, partnerships, trusts, etc.), and purchases and sales in the Coors Stock Fund through the Plan (except purchases from payroll deductions based on instructions given by the employee at a time when trading by the employee was permissible).

> Employees may not purchase or sell the securities of another company while they have material, nonpublic information about that company that they learned while performing their job at Coors.

> Employees must not disclose material, nonpublic information regarding Coors to other employees (except on a need-to-know basis), family members or any other third party. This is to assure that no employee becomes a "tipper," liable for the trading of his "tippee." (Such disclosure may also violate confidentiality obligations to Coors.)

> Employees are encouraged to pre-clear purchases and sales of Securities with Coors' Chief Legal Officer, Chief Financial Officer, Corporate Secretary or Assistant Secretary.

- <u>Insider Trading Restrictions that Apply to Key Employees</u>:    In addition to the insider trading restrictions that apply to all employees, the following restrictions apply to "key employees." An employee is considered a "key employee" if the employee is an officer of Coors, an administrative assistant to an officer, a Coors employee who is included on the executive payroll or who otherwise participates in the Equity Incentive Plan, a paralegal or administrative assistant to a Director in the Finance or Legal Department or the Corporate Secretary's office, an employee in Corporate Accounting or Corporate Planning or who otherwise participates in monthly forecast meetings, and any employee who reports directly to an Assistant Vice President for Field Sales. The no trade periods described below also restrict all Coors family members who are Coors employees and members of their households. All of the following requirements apply.

> Except for trades made pursuant to "Rule 10b5-1 plans," key employees may not trade in Securities during the period commencing two weeks before the end of any fiscal quarter and ending after one full trading day from the public release of earnings for that quarter (the "no trade period"). In special circumstances, the no trade period may be extended to end after two full trading days from the public release of earnings. A "Rule 10b5-1 plan" is a predetermined plan for trading Securities under Rule 10b5-1 of the Securities Exchange Act of 1934. Such plans provide specific terms for trading Securities and permit trading by the shareholder during times when trading may otherwise be prohibited. Rule 10b5-1 plans must be adopted at a time that trading by the shareholder would be permitted under this policy and must be approved by the Chief Legal Officer, Corporate Secretary or Chief Financial Officer. Board members, "Section 16 officers" (Coors officers who have been designated by the Adolph Coors Company Board of Directors as "executive officers of the registrant" under Section 16 of the Securities Exchange Act of 1934), and key employees are eligible to establish Rule 10b5-1 plans.

> Even if permitted by the preceding paragraph, key employees and others covered by the key employee restrictions may not trade in Securities from the time they learn of material, nonpublic information until after one full trading day from the public release of the material information. In special circumstances, this period may be extended to end after two full trading days from the public release of material information. A key employee who has established a Rule 10b5-1 plan may continue to make trades under the Rule 10b5-1 plan (but not outside the 10b5-1 plan). Notwithstanding the Rule 10b5-1 plan, exceptions may exist and the key employee must contact the Chief Legal Officer, Chief Financial Officer, Corporate Secretary or Assistant Secretary at the time the key employee learns of material information. In certain limited circumstances (e.g., during a public offering of Coors' stock, or depending upon the nature of the material information), the Chief Legal Officer may suspend trading under the Rule 10b5-1 plans.

> ➢ Key employees must pre-clear any transaction in Securities with the Chief Legal Officer, the Chief Financial Officers, Corporate Secretary or Assistant Secretary. This is important to determine whether the prohibition against trading will end one or two full trading days after the public release of earnings or material information. Rule 10b5-1 plans must be approved by the Chief Legal Officer, Corporate Secretary, or Chief Financial Officer in advance of trading.

> ➢ Key employees are encouraged to trade only in periods of relative stability for Coors, even when they do not know of material, nonpublic information, and to limit their transactions in Securities to periods immediately after all material information has been disclosed in a filing or otherwise.

> ➢ Key employees may not sell or buy any publicly traded options to sell or buy Securities (puts, calls, etc.)

> ➢ Key employees may not at any time engage in any short sale of Securities. Key employees may not use Securities as collateral in a margin account with a broker-dealer except under special circumstances approved in writing by the Chief Legal Officer or Chief Financial Officer.

> ➢ Key employees may not place standing orders with brokers for automatic execution of transactions in Securities for more than one trading day unless a longer term is approved by the Chief Legal Officer, the Chief Financial Officer, the Corporate Secretary or Assistant Secretary, except pursuant to a Rule 10b5-1 plan. (These orders present too great a risk that the broker will effect a transaction without the employee's knowledge at a time when the employee has or may be viewed as having material, nonpublic information.)

> ➢ Key employees are strongly encouraged to use a broker designated by Coors for all market trades, including those made under a Rule 10b5-1 plan. All trades with respect to the exercise of options must be made through Fidelity. Key employees should contact the Coors Benefits Department or Fidelity (1-800-544-9354) if further information is needed on exercise of options through Fidelity.

> ➢ Key employees who are participants in the Plan may give instructions to acquire or dispose of Securities in the Plan or change any instructions with respect to the amount of stock to be acquired or disposed of for the employee's account only during periods when trading is otherwise permissible under these restrictions.

- <u>Insider Trading Restrictions that Apply to Board Members and Section 16 Officers</u>:   In addition to the insider trading restrictions that apply to all employees and key employees, the following restrictions apply to members of the Board of Directors of Adolph Coors Company and "Section 16 officers" (Coors officers who have been designated by the Adolph Coors Company Board of Directors as "executive officers of the registrant" under Section 16 of the Securities Exchange Act of 1934).

> ➢ Board members and Section 16 officers may trade in Securities only during the same periods as key employees unless there is a Rule 10b5-1 plan in place.

> ➢ Even during the period described in the previous paragraph, board members and Section 16 officers may not trade in Securities from the time they learn of material, nonpublic information until after one full trading day from the public release of the

material information. In special circumstances, this period may be extended to end after two full trading days from the public release of the material information. A board member or Section 16 officer who has established a Rule 10b5-1 plan may continue to make trades under the Rule 10b5-1 plan (but not outside the plan). Notwithstanding the existence of a Rule 10b5-1 plan, exceptions may exist and the board member or Section 16 officer must contact the Chief Legal Officer, Chief Financial Officer, Corporate Secretary or Assistant Secretary at the time he or she receives or learns of material information. In certain limited circumstances (e.g., during a public offering of Coors' stock, or depending upon the nature of the material information), the Chief Legal Officer may suspend trading under Rule 10b5-1 plans.

> Board members and Section 16 officers must pre-clear any transaction in Securities with both the Chief Legal Officer and the Corporate Secretary or Assistant Secretary. This is important to assure compliance with Rule 144 and Section 16 filing requirements.

> Board members and Section 16 officers must promptly inform Coors of the broker they have designated for all market trades and trades under a Rule 10b5-1 plan.

Failure by any board member or employee to abide by these inside trading restrictions will result in sanctions, which may include dismissal for cause. These insider trading restrictions are intentionally broader than the law as these restrictions are intended to avoid even the appearance of improper conduct. Trading on material, nonpublic information is a crime subject to significant fines and jail terms for individuals. In addition, the SEC may seek civil penalties and violators must disgorge any profits made or the amount equal to losses avoided, and may be subject to civil liability to private plaintiffs. Coors is authorized by law to require violators to disgorge any profits made or the amount equal to losses avoided. Employers and other controlling persons are also at risk under federal law and may be fined if they fail to take reasonable steps to prevent inside trading. Any sanctions imposed upon a board member or employee for violation of insider trading laws will be the sole responsibility of the board member or employee. Coors will not pay for or indemnify the individual for these costs.

**Other Trading Restrictions on Funds –** In addition to the transaction restrictions described above with respect to the Coors Stock Fund, transaction restrictions may also apply to other funds in the Plan.

- The USAA International Fund restricts you from transferring funds from another fund into the USAA International Fund. (You may continue to make contributions and loan repayments into the USAA International Fund.)

- You are not permitted to make a direct exchange from the Fixed Fund to or from the Fidelity Asset Manager: Income Fund.

- You are not permitted to make a direct exchange from the Fixed Fund to or from the Fidelity Retirement Government Money Market Portfolio.

- If you exchange out of the Coors Stock Fund, you must wait 14 calendar days before you can exchange back into the Coors Stock Fund.

- The Fidelity Diversified International Fund has a short-term trading fee of 1% for sale of shares held less than 30 days.

- The Fidelity Low-Priced Stock Fund has a short-term trading fee of 1.5% for sale of shares held less than 90 days.

- There may also be restrictions on the ability to buy or sell in the other funds under the Plan during certain periods, including restrictions caused by market conditions. In addition, your account will be charged a fee if you sell certain funds before you have been in the fund a certain period of time. Refer to specific fund prospectuses to learn more information.

**Additional Information Available Upon Request** -- Upon your request, the Coors Benefits Service Center will provide the following information, if available:

(1) a description of the annual operating expenses (for example, investment management fees, administrative fees or transaction costs) of each investment option that reduces the rate of your return and the aggregate amount of these expenses, expressed as a percentage of the average net assets in the investment alternative;

(2) copies of any materials relating to the available investment options to the extent such materials are provided to the Plan (such as prospectuses, financial statements and reports);

(3) a list of the Plan assets comprising the portfolio of each investment option, the value of each such asset, and for those assets which are fixed rate investment contracts issued by financial institutions, the name of the issuer and the term and rate of return under the contract;

(4) information on the value of shares or units in investment options available under the Plan, as well as information on the past and current investment performance of these investment options; and

(5) information on the value of shares or units in designated investment options held in your accounts.

**Contacting the Coors Benefits Service Center** -- You may call the Coors Benefits Service Center directly for inquiries on your accounts and to transfer any portion of the balances in each of your fund accounts at your convenience, virtually 24 hours a day, 7 days a week. You can use the automated telephone service or you can access NetBenefits at https://netbenefits.fidelity.com to obtain account information and to execute transactions, such as exchanges (transfers) and investment election changes. If you prefer, you can also speak to a Participant Services Representative by calling the toll-free number at the Coors Benefits Service Center (1-888-881-7123) between 6:30 a.m. and 10:00 p.m. Mountain Time on any Business Day (usually Monday through Friday, excluding New York Stock Exchange holidays) for anyone calling from within the United States.

For your protection, telephone instructions will be accepted by the Coors Benefits Service Center only in accordance with security measures established by the Coors Benefits Service Center and Coors. To access your accounts via either the automated telephone service or the Internet, you will need your social security number and your personal identification number (PIN).

If you are unable to use a telephone, you should contact the Coors Benefits Department to establish an alternative procedure for making investment elections and obtaining account balance information.

How you choose to invest your Plan accounts is an important decision that you should consider carefully. Neither the Plan Administrator nor any of its employees can advise you concerning how to invest your accounts, nor can they take responsibility for the performance of any investment option you choose.

**The value of an investment in any of the funds available under the Plan can be expected to increase or decrease as a result of market conditions and other factors affecting the financial marketplace. Historical payments of dividends and increases in share prices do not necessarily indicate what future performance will be. Coors and the Coors Benefits Service Center cannot and do not guarantee the performance of any fund and have no obligation to make up any losses suffered by a participant should any such losses occur.**

**Please refer to the most recent Performance Results included with your quarterly statements for the most recent descriptions and performance records of the funds.**

## CHANGING YOUR CONTRIBUTIONS OR INVESTMENTS

You may change how your accounts are invested by calling the Coors Benefits Service Center on the toll-free number (1-888-881-7123) or by accessing Net Benefits at https://netbenefits.fidelity.com.

**401(k) Contribution Amount** -- You may increase or decrease your 401(k) contributions every payroll period. The Plan Administrator may impose limits on the number of permitted changes. If you take out a hardship withdrawal, your 401(k) contributions must stop, and you must wait 6 months after the hardship withdrawal before re-starting your contributions.

**Fund Investment Percentages** -- You may change the percentage of contributions being invested in each investment fund by calling the Coors Benefits Service Center on the toll-free number (1-888-881-7123) or by accessing Net Benefits at https://netbenefits.fidelity.com. The Plan Administrator may limit the number of times you can change your investment election. However, you will always be able to change your investment election at least once every calendar quarter.

**Fund Balances** -- You may transfer any whole percentage or a specified dollar amount of your balances between the funds offered. You may accomplish this by calling the Coors Benefits Service Center at 1-888-881-7123 or by accessing Net Benefits at https://netbenefits.fidelity.com on any business day between 6:30 a.m. and 10:00 p.m. Mountain Time. You must call before 2:00 p.m. (Mountain Time) to receive that day's closing price. Calls received at or after 2:00 p.m. will be processed at the next day's closing price. Read the appropriate prospectus before you request a change. There may be restrictions on transferring your fund balances. See above in the section entitled, "Other Trading Restrictions on Funds," under "Investment of Your Accounts."

## VALUATION

Your interest in each of the funds will be measured and allocated in terms of units. The value of a unit is determined by the net asset value of the fund. The net asset value per unit of a fund is calculated each business day by adding that day's closing value of each security or other asset held by a fund, subtracting the liabilities of such fund, and dividing that total by the number of units that such fund has outstanding to Plan participants at that time. Investment gains and net income increase the net asset value, and losses cause the net asset value to decrease. When assets are distributed or transferred out of a fund, they are

valued at the next determined net asset value per unit. When assets are contributed to or transferred into a fund, the value of the assets is converted to units based on the next determined net asset value per unit. The earnings and gains or losses attributable to your unit holdings in the funds are calculated each business day and maintained separately with respect to each fund.

The values of the investments under the Fidelity Funds are calculated by the trustees of these funds. Valuation of the Coors Stock Fund is based on the closing price of Coors stock on the New York Stock Exchange, adjusted for gains or losses realized on sales of Coors stock, appreciation or depreciation in the value of those shares owned, dividends paid on Coors stock to the extent not used to purchase additional units of the Coors Stock Fund for affected participants, interest on the short-term investments held by the Coors Stock Fund, payables and receivables for pending stock trades, receivables for dividends not yet distributed, and payables for other expenses of the Coors Stock Fund.

You may call the Coors Benefits Service Center's toll-free telephone number (1-888-881-7123) or access Net Benefits at https://netbenefits.fidelity.com at any time to obtain the value of your investments in any of the funds maintained under the Plan. Such value will be based on the previous business day's closing fund net asset values. You also will receive statements at least quarterly, including a statement of the value of your investments in each of the funds maintained under the Plan. The value reflected on the statements will be determined as of the last day of the period covered by the statement and be based on the last business day's closing fund net asset values. The value of your investments held in the Plan will move up and down as the values of the investments in the funds fluctuate.

## VESTING

You are immediately 100% vested in (entitled to) your entire account balance in this Plan, including your contributions, all amounts rolled over or transferred to this Plan, and all investment earnings on those funds.

## TERMINATION, RETIREMENT, DEATH, OR DISABILITY

**Account Balances of $5,000 or Less** — If your account balance (excluding any balance in your Rollover Contribution Account) totals $5,000 or less when you terminate employment, then you will receive a lump sum distribution of your entire interest in the Plan shortly after you terminate employment and after you make your election concerning the rollover option described in the section "Rolling Over Plan Distributions."

The tax laws require that you receive the lump sum no later than your "required beginning date." Your required beginning date is April 1 following the later of the calendar year in which you retire or the calendar year in which you attain age 70½.

**Account Balances of More than $5,000** — If you are under age 55 when your employment with the Employer ends, and your account balance (excluding any balance in your Rollover Contribution Account) totals more than $5,000 you will receive your entire interest in a lump sum. You may choose when you would like to receive the lump sum. However, you must receive the lump sum no later than your required beginning date.

If you are age 55 or older when you terminate employment and your account balance (excluding any balance in your Rollover Contribution Account) totals more than $5,000, you may elect to receive the entire amount in your Plan account in a lump sum or in a series of payments (made monthly, quarterly,

semi-annually, or annually). You may also choose when to receive the payment(s). The minimum monthly installment payment is $25; the minimum partial lump sum payment is $100. In addition, certain minimum payments must be made after your required beginning date. If you are an Alternate Payee under a qualified domestic relations order, you are not entitled to receive installment payments.

**Payments Upon Your Death --** If you die before you receive your entire benefit, your primary beneficiary will receive your benefits unless you and your primary beneficiary die within 120 hours of each other or your primary beneficiary dies before you (in which case your secondary beneficiary will be paid). If your account balances (excluding any balance in your Rollover Contribution Account) total $5,000 or less at the time of your death, then your beneficiary must receive a lump sum payment.

If your account balances (excluding any balance in your Rollover Contribution Account) total more than $5,000 at the time of your death, and you die before your required beginning date, then your beneficiary may elect to receive payment by installments payable over the beneficiary's life expectancy (or a shorter period) or in one or more lump sum payments. The life expectancy method for distributions will automatically apply unless your beneficiary notifies the Coors Benefits Service Center otherwise. If the life expectancy method applies, installment payments must begin to the beneficiary no later than the year following your death. If your beneficiary instead elects to receive distributions under the lump sum method, the entire account balance must be paid by the end of the fifth year after your death (unless the beneficiary is your spouse, in which case he or she may wait until you would have attained your required beginning date to receive the lump sum or to begin to receive the installments).

If your account balances (excluding any balance in your Rollover Contribution Account) total more than $5,000 at the time of your death, and you die on or after your required beginning date, your beneficiary must continue to receive payments. Beginning with the year after your death, the minimum amount of the payments to the beneficiary is based on the beneficiary's life expectancy (or your life expectancy, if longer). Distributions in subsequent years are based on that life expectancy factor, less one for each distribution year that has passed (or, if your beneficiary is your spouse, the spouse's life expectancy is recalculated each year until the spouse's death). Your beneficiary may elect to receive distributions greater than the minimum distribution amount in any year.

**Rolling Over Plan Distributions --** Many distributions from the Plan may be rolled over to an IRA or to another employer's retirement plan. You may direct the trustee for this Plan to transfer any rollover-eligible distributions directly to an IRA or to your new employer's plan. **If you choose to have your rollover-eligible distribution paid directly to you, 20% will be withheld for federal income taxes.** (See the section "About Taxes".) You will receive a notice explaining the rollover option and the withholding requirements shortly before you receive a distribution from the Plan.

**Form of Payment --** Your election of a form of payment must be made in accordance with the procedures prescribed by the Coors Benefits Service Center.

## WITHDRAWALS

While you are employed by Coors, your access to the money in your Plan accounts is limited. Unless you roll over your withdrawal, it will generally be subject to federal income tax and may be subject to a 10% penalty tax if you are under age 59½. See the paragraph entitled "Penalty Tax" in the section "About Taxes," below, for a description of exceptions to the penalty tax. Typically, federal income tax will be withheld from a withdrawal. Consult your tax advisor for more specific tax information.

If you need to withdraw funds, call the Coors Benefits Service Center's toll-free number 1-888-881-7123 to make your request. The following describes the specific withdrawal rules that apply to each type of account you may have under the Plan.

**Rollover Contribution Account** -- You may withdraw all or part of your contributions to this account at any time after you attain age 59½.

**401(k) Contribution Account** -- You may withdraw all or part of your contributions to this account at any time after you attain age 59½.

**Hardship Withdrawals** -- You may also make a hardship withdrawal from your 401(k) Contribution Account, whenever you have a "financial hardship", and the withdrawal is needed to satisfy the hardship. The IRS has ruled that a financial hardship only exists if you have the following expenses:

- medical expenses (as defined in the Code) for you, your spouse, or your dependents (if the medical expenses are neither covered by insurance nor reimbursable from your flexible spending account);

- tuition and educational fees for post-high-school education for the next year for you, your spouse, or your dependents;

- costs associated with purchasing your principal residence; and

- payments to prevent you from being evicted from your principal residence or to prevent the mortgage on your principal residence from being foreclosed.

You must borrow as much as possible from the Plan and make all the in-service withdrawals you are entitled to make before obtaining a hardship withdrawal. You may only withdraw as much as is necessary to meet these expenses, including the taxes you expect to pay on the amount withdrawn. If you are under age 59½, the amount withdrawn will be subject to income tax and will probably be subject to a 10% early withdrawal penalty. You should take these taxes and penalties into consideration when you determine the amount that you need.

You may only withdraw <u>contributions</u> to your 401(k) Contribution Account. You may not withdraw any earnings on the contributions.

You cannot make any contributions to this Plan or exercise any Coors stock options for 6 months after the hardship withdrawal.

In most cases, you will receive your withdrawal check within 10 business days after the date the hardship withdrawal is approved.

## LOANS

You may borrow money from your accounts in the Plan. Only one outstanding loan is permitted at any time. Once you obtain a loan, you may not refinance the loan to increase the loan amount, change the interest rate, or for any other reason. All loans are subject to very strict rules as to the maximum amount that can be borrowed, the interest rates that must be charged, and the maximum repayment period. All loans must be treated as investments of the borrowing participant's account. Accordingly, all loans must bring a reasonable investment yield, be fully secured, and be collectible when due.

**Eligibility** -- Generally, any active employee with an account in the Plan is eligible for a loan from the Plan. However, you must have sufficient income to make the required loan payments after tax withholding and payroll deductions. Also, you are not eligible for a loan from the Plan if you have a loan in default from this Plan, the Coors Puerto Rico Savings and Investment Plan, or the Coors Savings and Investment Plan.

**Fees** -- The trustee charges you the fees for each Plan loan. The fees are as follows:

| | |
|---|---|
| Loan Origination Fee: | $10.00 |
| Loan Maintenance Fee: | $3.75 per quarter |

The loan fees will be deducted from your account.

**Amount of Loan** -- You may borrow up to 50% of the total value of your 401(k) Contribution Account and Rollover Contributions Account. The minimum loan amount is $1,000 and the maximum is $50,000 (minus the highest outstanding loan balance in the preceding 12 months). Loans must be requested in whole dollar amounts.

**Term of Loan** -- Your loan will be amortized over 12, 24, 36, 48, or 60 months, as you choose. The maximum term for all loans is 60 months (5 years).

**Interest Rate** -- The interest rate is established at the prime rate plus 1%. This rate is set on the first business day of each month and is based upon the prime rate as listed on http://www.bloomberg.com. Your interest rate is determined by the interest rate in effect when you submit your loan request. The interest rate remains fixed for the term of the loan. The interest you pay is credited back to your Plan accounts.

**Loan Application** -- Call the Coors Benefits Service Center's toll-free number (1-888-881-7123) to apply for your loan. You cannot withdraw your loan application after the close of the business day on which the call occurs. By endorsing your loan check, you agree to repay the loan, you agree to the other terms of the promissory note, you agree to have repayments made through payroll withholding, and you pledge your Plan accounts as security for your loan. A loan will not be processed on the same day as a withdrawal.

**Loan Approval** -- Loans are approved by the Coors Benefits Service Center in accordance with the terms of the Plan and your existing Plan account balances.

**Loan Security** -- Loans are secured by your Plan accounts.

**Receipt of Loan Funds** -- You can expect to receive your loan check within approximately 10 business days after the date you requested the loan. The total amount of your loan is made payable directly to you. No amount is paid to any account or to others on your behalf.

**Loan Payments** -- Your loan payments, both principal and interest, are credited back to your Plan accounts and invested according to the most current investment election on file. Your loan payments are withheld from your paycheck automatically. The monthly loan payments will be withheld in one payroll deduction. Generally, for salaried employees, the payment will be withheld from the first paycheck after the loan has been approved. For biweekly paid employees, the deduction will be withheld from the second paycheck of each month. **If payroll deductions are not made for any reason, you must make the payment immediately. To make your payment, contact the Coors Benefits Service Center.**

**Payment Due Date** -- If you are making a monthly payment other than by payroll deduction (if, for example, you are on an unpaid leave of absence and are making loan payments), loan payments are due on the first day of the month. You are encouraged to submit your payment to the Coors Benefits Service Center prior to the due date to facilitate timely loan payment administration. Payment must be made by certified or cashier's check payable to FIIOC (Fidelity Investments Institutional Operations Company) and delivered to the Coors Benefits Service Center at the following address: Fidelity Investments, Core Market Operations, P.O. Box 770001, Cincinnati, OH 45277 (or for overnight mail: Fidelity Investments, Core Market Operations, 2300 Litton Lane, Hebron, KY 41048).

**Loan Prepayment** -- You can prepay your loan in full anytime after one loan payment has been made without penalty. If you wish to prepay your loan, you can get your payoff balance by calling the Coors Benefits Service Center's toll-free number (1-888-881-7123). Payment must be made by certified or cashier's check payable to FIIOC (Fidelity Investments Institutional Operations Company) and delivered to the Coors Benefits Service Center at the following address: Fidelity Investments, Core Market Operations, P.O. Box 770001, Cincinnati, OH 45277 (or for overnight mail: Fidelity Investments, Core Market Operations, 2300 Litton Lane, Hebron, KY 41048).

**New Loan After Loan Payoff** -- The earliest you can apply for a new loan is the 2nd day following the day your account has been credited with your payoff. If you have had a Plan loan within the past year, the amount you may borrow may be restricted. (See the paragraph "Amount of Loan.") If you already have a loan outstanding, you are not allowed to refinance it through the Plan.

**Default Upon Death** -- If you die with an outstanding loan balance, you (your estate) will be treated as having a taxable distribution from the Plan equal to the unpaid balance of your loan and your account balance will be offset for the loan balance.

**Repayment at Termination or Retirement** -- If you retire or otherwise terminate your employment, the outstanding loan balance is immediately due and payable. Payment must be made by certified or cashier's check payable to Fidelity. If you terminate employment, you need to notify the Coors Benefits Service Center of your desire to pay off the loan; otherwise you will be treated as having a taxable distribution from the Plan equal to the unpaid balance of your loan and your account balance will be offset for the loan balance. You have up to the end of the calendar quarter following the calendar quarter in which the default occurred (your termination date) to repay your loan before the entire amount of the outstanding loan is treated as a taxable distribution. For example, if you terminate employment on March 3, 2004, you have until June 30, 2004 (the end of the following calendar quarter) to repay your full loan balance, or you will be treated as having a taxable distribution from the Plan and your account balance will be offset for the loan balance.

**Repayments During Unpaid Leave of Absence** -- If you are on an unpaid leave of absence, your loan payments will be suspended for 12 months following the date your unpaid leave of absence begins, or up until the date you return to active employment status, if earlier. If you return to active status, payroll deductions for loan payments are reactivated. Interest will continue to accrue during the period that your payments are suspended. At the end of the suspension period, your loan payments will be reamortized over a period of up to 60 months from the original date of the loan. If you have not yet returned to active status when your suspension period expires, you must submit monthly payments. Payment must be made by certified or cashier's check payable to Fidelity and delivered to the Coors Benefits Service Center. If you do not return to employment with Coors after your leave of absence, your loan will be in default.

If your leave of absence is due to military leave that is protected by the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), your loan payments will be suspended for the

entire period of your military leave. Interest will continue to accrue during the period that payments are suspended, but the interest rate cannot exceed 6% annually during your period of military service. When you return, your loan payments will be reamortized over a period of up to 60 months from the original date of the loan plus the period of your military service, and loan payments will resume by payroll withholding. If you do not return to employment with Coors after your leave of absence, your loan will be in default.

**Late Payment** – If a payment is not made on its due date, that payment is in default. However, late payments are accepted after the due date. You have up to the end of the calendar quarter following the calendar quarter in which the default occurred (the due date) to repay your loan before the entire amount of the payment is treated as a taxable distribution. If your payment is late, you will be notified of the negative consequences that result from the late payment.

**Loan Default** -- If your loan goes into default, you will be treated as having received a taxable distribution from the Plan equal to your entire outstanding loan balance. If you terminate employment, you have up to the end of the calendar quarter following the calendar quarter in which the default occurred (the termination date) to repay your loan before the entire amount of the payment is treated as a taxable distribution.

**Loan Tax Status** -- The interest that you pay on a Plan loan is not deductible from your federal income tax. In the event of loan default, you are treated for income tax purposes as if you received a taxable distribution from the Plan. Distributions from the Plan (other than any amount attributable to your after-tax contributions made to your Savings and Investment Account) are generally subject to ordinary income tax and, if you are less than age 59½, a 10% excise (penalty) tax usually applies. You are advised to seek individual tax counseling if you receive a distribution from the Plan.

## ABOUT TAXES

To help you save for retirement, special federal income tax rules apply to savings plans such as ours. The following summary is based on the pertinent provisions of the Code, the applicable Treasury Regulations ("Regulations"), and judicial and administrative interpretations of the Code and Regulations. You should be aware that these rules are subject to change and may be applied retroactively. The discussion does not cover foreign, state, local or other tax consequences of participation in the Plan. The tax effects of participation in the Plan may vary depending on the facts and circumstances pertaining to each participant. You should consult your own tax advisor regarding the tax consequences of participation in the Plan.

**401(k) Contributions** -- Your contributions to your 401(k) Contribution Account are made before federal income taxes are applied -- however, your contributions are subject to Social Security tax in the year of your contribution. In addition, in most states (but not all states) your contributions to the Plan are made before state income taxes are applied.

**Investment Earnings** -- Your investment earnings are not taxable to you until withdrawn or distributed.

You pay federal income taxes (and usually also state income taxes) on your contributions and any investment earnings when you receive them as a distribution (unless you roll them over into an IRA or another employer's plan). Federal income tax will be withheld from your distribution, at the rate of 20% of your taxable distribution, unless you have us pay your distribution directly to an IRA or another employer's plan. A few exceptions apply to this withholding requirement. You will receive a notice describing the direct transfer option and the tax effects shortly before you receive a distribution. A

1099-R form will be mailed to you by January 31 showing you the taxable amount (if any) of any distribution in the prior year.

You may be entitled to roll over your distribution into an IRA or another employer's plan. The Plan will pay your eligible rollover distribution directly into an IRA or another employer's plan if you ask us to do so.

Special tax rules apply if you have Coors Stock distributed. **To be sure you get the best tax treatment, consult the IRS or a qualified tax advisor before you elect to receive any distribution from your Plan accounts.**

**Penalty Tax** -- If you are younger than 59½ when you receive a taxable distribution, the taxable portion of the distribution will be subject to a 10% penalty tax unless one of the following exceptions applies to you: (1) you terminate employment at age 55 or older; (2) the payment is required by a qualified domestic relations order (see the paragraph entitled "Assignment; QDROs" in the section "Other Important Facts"); (3) the payment does not exceed your out-of-pocket medical expenses that are not covered by insurance and that are greater than 7½% of your adjusted gross income; (4) you become disabled; (5) you die; or (6) you roll over your distribution into an IRA or another employer's plan. If you elect to "roll over" all or any part of a distribution that qualifies for rollover treatment, the additional 10% tax will not apply to the portion rolled over.

**Coors Stock** -- As a general rule, you must include in your gross income the fair market value of the shares of Coors Stock received. The amount included in your gross income will be taxed as ordinary income. If you have not attained age 59½ when you receive the Coors Stock, you may also be subject to a 10% penalty tax.

Your basis in the Coors Stock is equal to the amount included in your gross income that is attributable to the Coors Stock. The basis of any shares of Coors Stock for purposes of determining gain or loss on a later taxable disposition of the shares, is equal to the fair market value of the shares distributed (divided by the number of shares distributed to determine the per share basis). Your holding period in the Coors Stock will begin on the day following the date the trustee gives the transfer agent irrevocable instructions to reissue the shares in your name.

However, if you take a "lump sum distribution," you may include only the Plan's basis in the shares of Coors Stock distributed (generally the amount the Plan paid to purchase the shares), thus deferring taxes on the difference between the fair market value of the Coors Stock and the Plan's cost when it purchased the Coors Stock. Alternatively, you may elect to include the fair market value of the Coors Stock distributed instead of the Plan's basis in the Coors Stock and be subject to the rules described in the previous two paragraphs.

A "lump sum distribution" is a distribution within one taxable year to the recipient of the balance to the credit of the participant that becomes payable on account of death, retirement, other termination of employment or after the participant attains age 59½.

If you include in your gross income only the Plan's basis in the shares of Coors Stock distributed, your basis in the Coors Stock received is equal to the Plan's basis. The holding period begins on the day after the date the trustee delivers irrevocable instructions to the transfer agent to reissue the shares in the name of the participant.

**Special Ten-Year Averaging Election** -- The Tax Reform Act of 1986 repealed special ten-year forward averaging treatment and capital gains treatment for "lump sum distributions." However, it provided that

if a participant had attained age 50 before January 1, 1986, the participant, upon receipt of a "lump sum distribution," may elect to have the distribution taxed using ten-year averaging (computed at the 1986 income tax rates). You may only make one ten-year averaging election.

**Rollovers and Income Tax Withholding** -- You can postpone paying income tax on a distribution by making a "rollover" to an individual retirement account ("IRA") or another employer plan that accepts rollovers if the distribution is eligible to be rolled over. If you wish to make a direct rollover you must provide the Trustee with the name of the IRA trustee or custodian (or the name of the employer plan and the trustee for the employer plan) and other information the Trustee will need to make the direct rollover. The trustee will either transfer the funds to the IRA or employer plan or will give you a check payable to the IRA trustee or custodian or the trustee for the employer plan. If all or any part of a distribution is directly rolled over, you will not pay tax on the part of the distribution that was rolled over until the amount is paid from the IRA or employer plan.

If the amount is paid directly to you, the Trustee is required by federal law to withhold federal income tax at the rate of 20% from any amount that is not directly rolled over. You may roll over the amount paid to you to an IRA or employer plan within 60 days after receipt. The amount rolled over will not be subject to tax until it is paid from the IRA or the employer plan. You can also roll over an amount equal to the 20% that was withheld. If an amount equal to the 20% withheld is not rolled over, that amount will be subject to income tax and, if you are under 59½ at the time of the distribution, it may be subject to the 10% penalty tax.

**Distributions Eligible for Rollover** -- Most distributions from the Plan may be rolled over. However, a few distributions may not be rolled over, including the following:

- installments paid over a life or lives or over a single life expectancy or joint life expectancies;

- installments paid over a period of 10 years or longer;

- the amount that the plan must distribute to you after you reach age 70½; and

- hardship distributions.

You will receive more information about direct rollovers and withholding when you become eligible to receive a distribution.

For taxable distributions from qualified plans that are not eligible to be rolled over, the Code requires that federal income tax be withheld unless the participant elects otherwise. Each recipient of a distribution must be given notice of the withholding requirement and the opportunity to have the Plan transfer the rollover-eligible part of the distribution to an IRA or other employer plan and to elect out of withholding for the non-rollover-eligible portion of the distribution.

Shares of Coors Stock that are distributed from the Plan will not be withheld, but any cash distributed is subject to withholding. All of the cash you would otherwise receive could be withheld to satisfy the withholding obligation with respect to the entire distribution.

**Sale of Coors Stock Distributed From the Plan** – Upon a subsequent taxable disposition of the shares, long-term capital gain will be recognized to the extent that the gain actually realized does not exceed any net unrealized appreciation that was excluded from income when the shares were distributed. Any gain

realized in excess of the net unrealized appreciation will be taxed as long-term or short-term capital gain depending upon the participant's holding period for the shares.

## REPORTS TO PARTICIPANTS

At the end of each quarter, you will receive a statement showing the status of your accounts during the quarter and the fair market value of the securities in those accounts computed as of the close of the quarter, in accordance with a method consistently followed and uniformly applied. This statement will be prepared and furnished by the Trustee.

## OTHER IMPORTANT FACTS

**Failure to Provide Current Address** -- If you (or anyone entitled to a payment from your account) fail to provide the Plan Administrator with a current address and five years have elapsed since the Plan Administrator notified that person that he or she was entitled to a distribution, the missing individual's interest in your Plan account will be forfeited. If the missing individual later makes a claim for the benefit, the Plan will pay the missing individual the amount of the forfeited benefit.

**Termination or Amendment of Plan** -- Coors Brewing Company reserves the right to amend, suspend, or terminate the Plan and trust for any reason. If the Plan is terminated, or if contributions are permanently suspended, all accounts will be updated and you will generally be able to choose to receive your accounts or have them transferred to another of Coors' plans. You will be advised of your options at that time.

**Payments to Minors and Incompetent Persons** -- A benefit payable to a minor, an incompetent person or other person incapable of receiving it may be paid to the person's guardian or to the party providing or reasonably appearing to provide for the care of such person.

**Controlling Law** -- The Plan will be enforced according to the Employee Retirement Income Security Act of 1974, as amended (ERISA) and the Code. The laws of the state of Colorado will generally be used to determine any questions not answered by the federal laws. The determination of whether you are married is based on the state law of the state where you live.

**Employer Records** -- Service, age, employee status, and other matters related to the Plan are determined from Employer records. These records and the Plan itself are kept on a calendar-year basis. Contact your human resources representative to correct any mistakes in those records.

**Loss of Benefits** -- Benefits may be reduced to the extent that you contribute more than the law permits or to the extent adjustments are required if contributions for highly compensated employees exceed the limits prescribed by law. Benefits may be lost if you fail to repay a loan from the Plan when the loan is due because your account will generally be reduced by the outstanding unpaid loan obligation (including unpaid interest and costs). Benefits may also be lost to the extent that they are required to be paid to another payee such as your spouse, former spouse, child, or other dependent pursuant to a judgment, decree, or order made pursuant to a qualified domestic relations order (QDRO). Benefits may also be reduced by adverse investment experience of the investments, by any taxes assessed against or payable by the trust, and by administrative costs. Finally, benefits may be lost if the Plan receives an order allowing your accounts to be offset by any amounts you are ordered or required to pay the Plan due to a judgment of conviction of a crime involving the Plan, or under a civil judgment or settlement with the Department of Labor in connection with a violation of ERISA's fiduciary responsibility requirements.

The Plan has been created and operated on the assumptions that it is a qualified plan under the Code, that the trust will be exempt from income tax and that no amounts will be contributed or allocated by error. If any of these assumptions prove unfounded, there will probably be an adverse effect on benefits.

**Terms and Conditions of Employment** -- Neither the establishment of the Plan nor your participation in the Plan is a contract of employment. Every employee, whether or not a participant, is subject to discharge just as though the Plan had never been adopted.

**Assignment; QDROs** -- Your accounts under the Plan are solely for you (or your beneficiary) and cannot be assigned or pledged to anyone else. Some portion (or all) of your benefit may be payable to your spouse, your ex-spouse, your child, or your dependent if a "qualified domestic relations order" ("QDRO") is issued. Usually, these are issued in divorce proceedings. You will be notified if the Plan Administrator receives an order purporting to be a QDRO related to your accounts. You may contact the Plan Administrator for a copy of the QDRO procedures relating to the Plan or find more information about the QDRO process by accessing Net Benefits at https://netbenefits.fidelity.com. A fee may be charged to your account for the review and administration of the QDRO; please see the QDRO procedures for more information.

**Applying for Benefits** -- When an event occurs which entitles you to a distribution of your benefits under the Plan, you must call the Coors Benefits Service Center and a representative of the Coors Benefits Service Center will provide you with the forms, and tell you what information is needed to show your eligibility. If you disagree with a decision of the Coors Benefits Department concerning your interest in the Plan, follow the claims procedure.

## CLAIMS PROCEDURE

If you disagree with the Plan Administrator's determination of the amount of your benefits under the Plan or with respect to any other decision the Plan Administrator may make regarding your interest in the Plan, the Plan contains the appeal procedure you should follow. To the extent the Plan Administrator is ruling on a claim for disability benefits, the Plan will follow, with respect to that claim, claims procedures required by law for plans providing disability benefits.

**Notification of Your Benefits** -- If the Plan Administrator of the Plan determines that it should deny benefits to you or to your beneficiary making a claim for benefits, the Plan Administrator must provide you or your beneficiary written notice of the denial that sets forth the reasons for the denial and refers you or your beneficiary to the provisions of the Plan that supports the Plan Administrator's decision. The notification must contain (i) the specific reason or reasons for the adverse determination; (ii) reference to the specific plan provisions on which the determination is based; (iii) a description of any additional material or information necessary for you or your beneficiary to perfect the claim and an explanation of why the information is necessary; (iv) a description of the Plan's review procedures and the time limits applicable to such procedures, including a statement of your right to bring a civil action under ERISA § 502 following an adverse benefit determination on review.

**Timing of Adverse Benefit Determination** -- The Plan Administrator must provide the denial notice within a reasonable period of time from its receipt of the claim, but not later than 90 days from receipt of the claim. This 90 day period may be extended if special circumstances require an extension, provided that the extension cannot exceed a total of 180 days from the Plan's receipt of your claim (i.e., two consecutive 90 day periods). If an extension is required, the Plan Administrator must provide you with written notice of the extension that contains the expiration date of the initial 90 day period, the special

circumstances that require an extension, and the date by which the Plan expects to render its benefit determination.

**Appealing an Adverse Benefit Determination** -- If you or your beneficiary disagrees with the Plan Administrator, you or your beneficiary, or a duly authorized representative, must appeal the adverse determination in writing to the Plan Administrator within 60 days after the receipt of the notice of denial of benefits. If you or your beneficiary fails to appeal a denial within the 60-day period, the Plan Administrator's determination will be final and binding. All reviews of denied claims will be conducted by the Appeals Committee, which consists of five members (not including the Chairman). The Plan Administrator will forward all requests for review of a denied claim together with all associated documents to the Chairman of the Appeals Committee promptly after receipt. The Appeals Committee acts by majority vote. If you or your beneficiary appeals to the Appeals Committee, you, your beneficiary or your duly authorized representative must submit the issues and comments you feel are pertinent to permit the Appeals Committee to re-examine all facts and make a final determination with respect to the denial. In most cases, a decision will be made within 60 days of a request on appeal unless special circumstances would make the rendering of a decision within the 60-day period unfeasible. In any event, the Appeals Committee must render a decision within 120 days after its receipt of a request for review. If the Appeals Committee determines that it should deny benefits to you or to your beneficiary making a claim for benefits, the Appeals Committee will give you or your beneficiary adequate notice in writing setting forth specific reasons for the denial, referring you or your beneficiary to the pertinent provisions of the Plan supporting the Appeals Committee's decision, stating that you or your beneficiary are entitled to receive, upon request and free of charge, reasonable access to and copies of all documents, records, and other information relevant to the claim, and a statement regarding your right to sue under ERISA § 502.

**Statute of Limitations for Bringing Suit** -- If the Appeals Committee denies your claim, you may bring a claim under ERISA § 502. You cannot bring suit until you first follow all of the Plan's claims procedures. **If you wish to bring suit on your claim, you must do so within 365 days after the date you receive the Appeals Committee's final determination of the appeal of your claim, or your claim will be forever barred and the Appeals Committee's determination will be final and permanent.**

**Discretion of the Plan Administrator and Appeals Committee** -- The Plan Administrator, the Appeals Committee, and any of their representatives have the maximum discretionary authority permitted by law to interpret, construe, and administer the Plan; to make determinations regarding Plan participation, enrollment, eligibility for benefits, and amount of benefits; to evaluate and determine the validity of benefit claims; and to resolve any and all claims and disputes regarding the rights and entitlement of individuals to participate in the Plan and receive benefits and payments pursuant to the Plan. The decisions by the Plan Administrator, the Appeals Committee, and their representatives will be given the maximum deference permitted by law.

## STATEMENT OF ERISA RIGHTS

As a participant in the Plan, you are entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974 ("ERISA"). ERISA provides that all Plan participants shall be entitled to:

**Receive Information About Your Plan and Benefits**

- Examine, without charge, at the Plan Administrator's office and at other specified locations, such as worksites and union halls, all documents governing the Plan, including insurance contracts and collective bargaining agreements, and a copy

of the latest annual report (Form 5500 series) filed by the Plan with the U.S. Department of Labor and available at the Public Disclosure Room of the Employee Benefits Security Administration.

- Obtain, upon written request to the Plan Administrator, copies of documents governing the operation of the Plan, including collective bargaining agreements, and copies of the latest annual report (Form 5500 series) and updated summary plan description. The Plan Administrator may make a reasonable charge for the copies (currently, the charge is $.10 per page).

- Receive a summary of the Plan's annual financial report. The Plan Administrator is required by law to furnish each participant with a copy of this summary annual report.

- Obtain a statement telling you whether you have a right to receive a benefit at the Plan's normal retirement age and if so, what your benefits would be at normal retirement age if you stop working under the Plan now. If you do not have a right to a pension, the statement will tell you how many more years you have to work to get a right to a pension. This statement must be requested in writing and is not required to be given more than once every twelve months. The Plan must provide the statement free of charge.

**Prudent Actions by Plan Fiduciaries** — In addition to creating rights for Plan participants, ERISA imposes duties upon the people who are responsible for the operation of the Plan. The people who operate your Plan, called "fiduciaries," have a duty to do so prudently and in the interest of you and other Plan participants and beneficiaries. No one, including your employer, your union, or any other person, may fire you or otherwise discriminate against you in any way to prevent you from obtaining a pension benefit or exercising your rights under ERISA.

**Enforce Your Rights** — If your claim for a pension benefit is denied or ignored, in whole or in part, you have a right to know why this was done, to obtain copies of documents relating to the decision without charge, and to appeal any denial, all within certain time schedules. Under ERISA, there are steps you can take to enforce the above rights. For instance, if you request a copy of Plan documents or the latest annual report from the Plan and do not receive them within 30 days, you may file suit in a federal court. In such a case, the court may require the Plan Administrator to provide the materials and pay you up to $110 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the Plan Administrator. If you have a claim for benefits which is denied or ignored, in whole or in part, you may file suit in a state or federal court. In addition, if you disagree with the Plan's decision or lack thereof concerning the qualified status of a domestic relations order, you may file suit in federal court. If it should happen that plan fiduciaries misuse the plan's money, or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor, or you may file suit in a federal court. The court will decide who should pay court costs and legal fees. If you are successful the court may order the person you have sued to pay these costs and fees. If you lose, the court may order you to pay these costs and fees, for example, if it finds your claim is frivolous.

**Assistance with Your Questions** — If you have any questions about your Plan, you should contact the Plan Administrator. If you have any questions about this statement or about your rights under ERISA, or if you need assistance in obtaining documents from the Plan Administrator, you should contact the nearest office of the Employee Benefits Security Administration, U.S. Department of Labor, listed in your telephone directory or the Division of Technical Assistance and Inquiries, Employee Benefits Security Administration, U.S. Department of Labor, 200 Constitution Avenue N.W., Washington, D.C. 20210.

You may also obtain certain publications about your rights and responsibilities under ERISA by calling the publications hotline of the Employee Benefits Security Administration.

## SALE OF COORS STOCK

All transfers of Coors Stock are subject to the federal and state securities laws and to the Adolph Coors Company's policy on insider trading, which is described under the section of this SPD entitled "Investment of Your Accounts."

Non-affiliates of Adolph Coors Company are generally free from securities law restrictions on the sale of Coors Stock. Affiliates of Adolph Coors Company (persons who, directly or indirectly through one or more intermediaries, control, are controlled by, or are under common control with Adolph Coors Company) are restricted in the resale of Coors Stock by the provisions of Rule 144 promulgated under the Securities Act of 1933. Restrictions include a limitation on the amount of Coors Stock which may be resold in any three-month period, a limitation on the manner of sale and an obligation to file a notice with the Securities and Exchange Commission. An affiliate may also sell Coors Stock pursuant to a separate, current registration statement. Any officer, director or beneficial owner of more than 10% of the common stock of Adolph Coors Company who acquires Coors Stock under the Plan should consider the applicability of Sections 16(a) and 16(b) of the Securities Exchange Act of 1934 in connection with the disposition of any Coors Stock so acquired.

## DOCUMENTS INCORPORATED BY REFERENCE

The following documents filed with the Securities and Exchange Commission are incorporated by reference into this Prospectus:

(1)    The description of the Class B Common Stock contained in the registration statement on Form 8-A (File No. 001-14829) filed by Adolph Coors Company on February 10, 1999.

(2)    The Plan's Annual Report on Form 11-K, filed July 1, 2003.

(3)    Adolph Coors Company's Annual Report on Form 10-K, filed March 12, 2004.

(4)    Adolph Coors Company's Quarterly Report on Form 10-Q, filed May 7, 2004.

All documents subsequently filed by the Adolph Coors Company and the Plan pursuant to Sections 13(a), 13(c), 14 and 15(d) of the Securities Exchange Act of 1934, prior to the filing of a post-effective amendment which indicates that all securities offered have been sold or which deregisters all securities then remaining unsold, shall be deemed to be incorporated by reference in this Prospectus and to be a part hereof from the date of filing of such documents.

Adolph Coors Company hereby undertakes to provide without charge to each person, including any beneficial owner of the company's securities, to whom this Prospectus is delivered, upon oral or written request of such person, a copy of any and all information incorporated by reference in this Prospectus, an annual report to stockholders of Adolph Coors Company and copies of all reports, proxy statements and other communications delivered to its security holders generally, except for exhibits to such information which is incorporated by reference (unless such exhibits are specifically incorporated by reference into the information that this Prospectus incorporates). Such requests may be made by contacting:

Director, Benefits
Coors Brewing Company
Mail No. NH212
P.O. Box 4030
Golden, Colorado  80401-0030
(303) 277-6273

## FOR MORE INFORMATION

If you have any questions about the Plan in general, your specific benefits for your survivors or if you would like to read a copy of the official Plan document, please contact the Coors Benefits Department or the Plan Administrator.

## PLAN ADMINISTRATION

| | |
|---|---|
| **Name of Plan:** | Coors 401(k) Savings Plan for Hourly Employees at the Memphis, Tennessee Brewery |
| **Type of Plan:** | 401(k) Plan |
| **Plan Number:** | 005 |
| **Plan Sponsor:** | Coors Brewing Company<br>12th and Ford Streets<br>Golden, CO 80401 |
| **Employer Identification Number:** | 84-1150943 |
| **Plan Year:** | January 1 - December 31 |
| **Plan Administrator:** | Director, Benefits<br>Coors Brewing Company<br>Mail No. NH212<br>P.O. Box 4030<br>Golden, CO 80401-0030<br>(303) 277-6273 |
| **Trustee:** | Fidelity Management Trust Company<br>82 Devonshire Street<br>Boston, Massachusetts 02109-3614<br>(888) 881-7123 |
| **Agent for Service of Legal Process:** | Chief Legal Officer<br>Coors Brewing Company<br>Mail No. NH312<br>P.O. Box 4030<br>Golden, CO 80401-0030 |

Legal process may also be served on the Trustee.