# EXHIBIT 5
# Part 1 of 3

Trust Agreement
Between

Adolph Coors Company

And

Fidelity Management Trust Company

---

## COORS SAVINGS & INVESTMENT MASTER TRUST

---

Dated as of May 31, 1992

## TABLE OF CONTENTS

**Section**

**Page**

1  Trust . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

2  Exclusive Benefit and Reversion of
   Sponsor Contributions . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

3  Disbursements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
   (a) Directions from Administrator . . . . . . . . . . . . . . . .   3
   (b) Limitations

4  Investment of Trust . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
   (a) Selection of Investment Options . . . . . . . . . . . . . .   3
   (b) Available Investment Options
   (c) Participant Direction
   (d) Mutual Funds
   (e) Sponsor Stock
   (f) Notes
   (g) Guaranteed Investment Contracts
   (h) Reliance of Trustee Directions
   (i) Trustee Powers

5  Recordkeeping and Administrative Services to Be Performed  . . .
   (a) General                                                    18
   (b) Accounts
   (c) Inspection and Audit
   (d) Effect of Plan Amendment
   (e) Returns, Reports and Information

6  Compensation and Expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . .
                                                                   19

7  Directions and Indemnification . . . . . . . . . . . . . . . . . . . . . . . . . . .
   (a) Identity of Administrator and Named Fiduciary            20
   (b) Directions from Administrator
   (c) Directions from Named Fiduciary
   (d) Co-Fiduciary Liability
   (e) Indemnification
   (f) Survival

8  Resignation or Removal of Trustee . . . . . . . . . . . . . . . . . . . . . . .
   (a) Resignation                                                21
   (b) Removal

9  Successor Trustee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
   (a) Appointment                                                22
   (b) Acceptance
   (c) Corporate Action

10  Termination . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
                                                                   22

-i-

## TABLE OF CONTENTS
### (Continued)

**Section**                                                                                   **Page**

11    Resignation, Removal, and Termination Notices . . . . . . . . . . . . . . .        23

12    Duration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .        23

13    Amendment or Modification . . . . . . . . . . . . . . . . . . . . . . . . . . . . .        23

14    General . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .        23
        (a) Performance by Trustee, its Agents or Affiliates
        (b) Entire Agreement
        (c) Waiver
        (d) Successors and Assigns
        (e) Partial Invalidity
        (f) Section Headings

15    Governing Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .        24
        (a) Massachusetts Law Controls
        (b) Trust Agreement Controls

### Schedules

A.    Recordkeeping and Administrative Services
B.    Fee Schedule
C.    Investment Options
D.    Sponsor's Authorization Letter
E.    Named Fiduciary's Authorization Letter
F.    IRS Determination Letter or Opinion of Counsel
G.    Existing GICs
H.    Telephone Exchange Procedures
I.    Investment Guidelines for GIC Management

3TRUST A    EEMENT, dated as of the thirty-first day of May, 1992, between Adolph Coors

Company, a Colorado corporation, having an office at 1819 Denver West Drive, Building

26, Golden, CO 80401-3112 and Coors Porcelain Company, a wholly-owned subsidiary of the

Adolph Coors Company (collectively and individually, the "Sponsor"), and FIDELITY

MANAGEMENT TRUST COMPANY, a Massachusetts trust company, having an office at 82

Devonshire Street, Boston, Massachusetts 02109 (the "Trustee").

WITNESSETH:

WHEREAS, Adolph Coors Company is the sponsor of the Coors Savings & Investment Plan

and Coors Porcelain Company is the sponsor of the Coors Porcelain Company Savings &

Investment Plan (collectively and individually, the "Plan"); and

WHEREAS, the Sponsor wishes to establish a master trust to hold and invest plan

assets under the Plan for the exclusive benefit of participants in the Plan and their

beneficiaries; and

WHEREAS, the Plan Investment and Administration Committee (the "Named Fiduciary") is

the named fiduciary of the Plan (within the meaning of section 402(a) of the Employee

Retirement Income Security Act of 1974, as amended ("ERISA")); and

WHEREAS, the Trustee is willing to hold and invest the aforesaid plan assets in

trust among several investment options selected by the Named Fiduciary; and

WHEREAS, the Sponsor wishes to have the Trustee perform certain ministerial

recordkeeping and administrative functions under the Plan; and

WHEREAS, the Plan Investment and Administration Committee (the "Administrator") or

its designee is the administrator of the Plan (within the meaning of section 3(16)(A) of

ERISA); and

WHEREAS, the Trustee is willing to perform recordkeeping and administrative services for the Plan if the services are purely ministerial in nature and are provided within a framework of plan provisions, guidelines and interpretations conveyed in writing to the Trustee by the Administrator.

NOW, THEREFORE, in consideration of the foregoing premises and the mutual covenants and agreements set forth below, the Sponsor and the Trustee agree as follows:

Section 1. <u>Trust</u>. The Sponsor hereby establishes the Coors Savings & Investment Master Trust (the "<u>Trust</u>"), with the Trustee. The Trust shall consist of an initial contribution of money or other property acceptable to the Trustee in its sole discretion, made by the Sponsor or transferred from a previous trustee under the Plan, such additional sums of money and Sponsor Stock (hereinafter defined) as shall from time to time be delivered to the Trustee under the Plan, all investments made therewith and proceeds thereof, and all earnings and profits thereon, less the payments that are made by the Trustee as provided herein, without distinction between principal and income. The Trustee hereby accepts the Trust on the terms and conditions set forth in this Agreement. In accepting this Trust, the Trustee shall be accountable for the assets received by it, subject to the terms and conditions of this Agreement.

Section 2. <u>Exclusive Benefit and Reversion of Sponsor Contributions</u>.
Except as provided under applicable law, no part of the Trust may be used for, or diverted to, purposes other than the exclusive benefit of the participants in the Plan or their beneficiaries prior to the satisfaction of all liabilities with respect to the participants and their beneficiaries.

2

Section 3. Disbursements.

(a)  Directions from Administrator. The Trustee shall make disbursements in the amounts and in the manner that the Administrator directs from time to time in writing. The Trustee shall have no responsibility to ascertain any direction's compliance with the terms of the Plan or of any applicable law or the direction's effect for tax purposes or otherwise; nor shall the Trustee have any responsibility to see to the application of any disbursement.

(b)  Limitations. The Trustee shall not be required to make any disbursement in excess of the net realizable value of the assets of the Trust at the time of the disbursement. The Trustee shall not be required to make any disbursement in cash unless the Administrator has provided a written direction as to the assets to be converted to cash for the purpose of making the disbursement.

Section 4. Investment of Trust.

(a)  Selection of Investment Options. The Trustee shall have no responsibility for the selection of investment options under the Trust and shall not render investment advice to any person in connection with the selection of such options.

(b)  Available Investment Options. The Named Fiduciary shall direct the Trustee as to what investment options Plan participants may invest in, subject to the following limitations. The Named Fiduciary may determine to offer as investment options only (i) securities issued by the investment companies advised by Fidelity Management & Research Company ("Mutual Funds"), (ii) equity securities issued by the Sponsor or an affiliate which are publicly-traded and which are "qualifying employer securities" within the meaning of section 407(d)(5) of ERISA ("Sponsor Stock"), (iii) notes evidencing loans to Plan participants in accordance with the terms of the Plan, (iv) guaranteed investment contracts or similar investments chosen by the Trustee, (v) guaranteed annuity contracts heretofore entered into by the Sponsor or predecessor trustee and specifically identified

3

on Schedule "C" attached hereto ("Existing GICs"), and (vi) collective investment funds maintained by the Trustee for qualified plans; provided, however, that the Named Fiduciary hereby directs the Trustee to continue to hold such Existing GICs until the Named Fiduciary directs otherwise, it being expressly understood that such direction is given in accordance with Section 403(a) of ERISA; and provided, further, that the Trustee shall be considered a fiduciary with investment discretion only with respect to Plan assets that are invested in guaranteed investment contracts or similar investments chosen by the Trustee or in collective investment funds maintained by the Trustee for qualified plans. The investment options initially selected by the Named Fiduciary are identified on Schedules "A" and "C" attached hereto. The Named Fiduciary may add additional investment options with the consent of the Trustee and upon mutual amendment of this Trust Agreement and the Schedules thereto to reflect such additions.

(c)  Participant Direction. Each Plan participant shall direct the Trustee in which investment option(s) to invest the assets in the participant's individual accounts. Such directions may be made by Plan participants by use of the telephone exchange system maintained for such purposes by the Trustee or its agent, in accordance with written Telephone Exchange Guidelines attached hereto as Schedule "H". Any directions made by a Participant using the telephone exchange system shall be treated as a direction made in writing by the Named Fiduciary for purposes of Section 7 hereafter. In the event that the Trustee fails to receive a proper direction, the assets shall be invested in the securities of the Fixed Fund set forth for such purpose on Schedule "C", until the Trustee receives a proper direction.

(d)  Mutual Funds. The Sponsor hereby acknowledges that it has received from the Trustee a copy of the prospectus for each Mutual Fund selected by the Named Fiduciary as a Plan investment option. Trust investments in Mutual Funds shall be subject to the following limitations:

4

(i)    Execution of Purchases and Sales. Purchases and sales of Mutual Funds (other than for Exchanges) shall be made on the date on which the Trustee receives from the Sponsor in good order all information and documentation necessary to accurately effect such purchases and sales (or in the case of a purchase, the subsequent date on which the Trustee has received a wire transfer of funds necessary to make such purchase). Exchanges of Mutual Funds shall be made in accordance with the Telephone Exchange Guidelines attached hereto as Schedule "H".

(ii)    Voting. At the time of mailing of notice of each annual or special stockholders' meeting of any Mutual Fund, the Trustee shall send a copy of the notice and all proxy solicitation materials to each Plan participant who has shares of the Mutual Fund credited to the participant's accounts, together with a voting direction form for return to the Trustee or its designee. The participant shall have the right to direct the Trustee as to the manner in which the Trustee is to vote the shares credited to the participant's accounts (both vested and unvested). The Trustee shall vote the shares as directed by the participant. The Trustee shall not vote shares for which it has received no directions from the participant. With respect to all rights other than the right to vote, the Trustee shall follow the directions of the participant and if no such directions are received, the directions of the Named Fiduciary. The Trustee shall have no duty to solicit directions from participants.

(e)    Sponsor Stock. Trust investments in Adolph Coors Company Class B Common Stock ("Sponsor Stock") shall be made via the Coors Stock Fund which shall consist of shares of Sponsor Stock and short-term liquid investments, including a commingled money market fund ("Fidelity Employee Benefit U.S. Government Reserves Portfolio") maintained by the Trustee, necessary to satisfy the Fund's cash needs for transfers and payments. A cash target range shall be determined in conjunction with the Sponsor for the cash portion of the Coors Stock Fund. The Trustee is responsible for ensuring that the actual cash held in the Coors Stock Fund falls within the agreed upon range over time. Each participant's

5

proportional interest in the Coors Stock Fund shall be measured in units of participation, rather than shares of Sponsor Stock. Such units shall represent a proportionate interest in all of the assets of the Coors Stock Fund, which includes shares of Sponsor Stock, short-term investments and at times, receivables for dividends and/or Sponsor Stock sold and payables for Sponsor Stock purchased. A Net Asset Value ("NAV") per unit will be determined daily for each unit outstanding of the Coors Stock Fund. The return earned by the Coors Stock Fund will represent a combination of the dividends paid on the shares of Sponsor Stock held by the Coors Stock Fund, gains or losses realized on sales of Sponsor Stock, appreciation or depreciation in the market price of those shares owned, and interest on the short-term investments held by the Coors Stock Fund. Dividends received by the Coors Stock Fund are reinvested in additional shares of Sponsor Stock. Investments in Sponsor Stock shall be subject to the following limitations:

(i)  Acquisition Limit. Pursuant to the Plan, the Trust may be invested in Sponsor Stock to the extent necessary to comply with investment directions under Section 4(c) of this Agreement.

(ii)  Fiduciary Duty of Named Fiduciary. The Named Fiduciary shall continually monitor the suitability under the fiduciary duty rules of section 404(a)(1) of ERISA (as modified by section 404(a)(2) of ERISA) of acquiring and holding Sponsor Stock. The Trustee shall not be liable for any loss, or by reason of any breach, which arises from the directions of the Named Fiduciary with respect to the acquisition and holding of Sponsor Stock, unless it is clear on their face that the actions to be taken under those directions would be prohibited by the foregoing fiduciary duty rules or would be contrary to the terms of the Plan or this Agreement.

6

(iii) <u>Execution of Purchases and Sales</u>. (A) Purchases and sales of Sponsor Stock (other than for exchanges) shall be made on the open market on the date on which the Trustee receives from the Sponsor in good order all information and documentation necessary to accurately effect such purchases and sales (or, in the case of purchases, the subsequent date on which the Trustee has received a wire transfer of the funds necessary to make such purchases). Exchanges of Sponsor Stock shall be made in accordance with the Telephone Exchange Guidelines attached hereto as Schedule "H". Such general rules shall not apply in the following circumstances:

(1)    If the Trustee is unable to determine the number of shares required to be purchased or sold on such day; or

(2)    If the Trustee is unable to purchase or sell the total number of shares required to be purchased or sold on such day as a result of market conditions; or

(3)    If the Trustee is prohibited by the Securities and Exchange Commission, the New York Stock Exchange, or any other regulatory body from purchasing or selling any or all of the shares required to be purchased or sold on such day.

In the event of the occurrence of the circumstances described in (1), (2), or (3) above, the Trustee shall purchase or sell such shares as soon as possible thereafter and shall determine the price of such purchases or sales to be the average purchase or sales price of all such shares purchased or sold, respectively. The Trustee may follow directions from the Named Fiduciary to deviate from the above purchase and sale procedures provided that such direction is made in writing by the Named Fiduciary.

7

(B) <u>Use of an Affiliated Broker</u>. The Sponsor hereby authorizes the Trustee to use Fidelity Brokerage Services, Inc. ("FBSI") to provide brokerage services in connection with any purchase or sale of Sponsor Stock in accordance with directions from Plan participants. FBSI shall execute such directions directly or through its affiliate, National Financial Services Company ("NFSC"). The provision of brokerage services shall be subject to the following:

(i)      As consideration for such brokerage services, the Sponsor agrees that FBSI shall be entitled to remuneration under this authorization provision in the amount of three and one-half cents ($.035) commission on each share of Sponsor Stock. Any change in such remuneration may be made only by a signed agreement between Sponsor and Trustee.

(ii)     Following the procedures set forth in Department of Labor Prohibited Transaction Class Exemption 86-128, the Trustee will provide the Sponsor with the following documents: (1) a description of FBSI's brokerage placement practices; (2) a copy of PTCE 86-128; and (3) a form by which the Sponsor may terminate this authorization to use a broker affiliated with the Trustee. The Trustee will provide the Sponsor with this termination form annually, as well as an annual report which summarizes all securities transaction-related charges incurred by the Plan, and the Plan's annualized turnover rate.

(iii)    Any successor organization of FBSI, through reorganization, consolidation, merger or similar transactions, shall, upon consummation of such transaction, become the successor broker in accordance with the terms of this authorization provision.

8

(iv)   The Trustee and FBSI shall continue to rely on this authorization provision until notified to the contrary. The Sponsor reserves the right to terminate this authorization upon sixty (60) days written notice to FBSI (or its successor) and the Trustee, in accordance with Section 11 of this Agreement.

(iv) <u>Securities Law Reports</u>.  The Named Fiduciary shall be responsible for filing all reports required under Federal or state securities laws with respect to the Trust's ownership of Sponsor Stock, including, without limitation, any reports required under section 13 or 16 of the Securities Exchange Act of 1934, and shall immediately notify the Trustee in writing of any requirement to stop purchases or sales of Sponsor Stock pending the filing of any report. The Trustee shall provide to the Named Fiduciary such information on the Trust's ownership of Sponsor Stock as the Named Fiduciary may reasonably request in order to comply with Federal or state securities laws.

(v)  <u>Voting and Tender Offers</u>.  Notwithstanding any other provision of this Agreement the provisions of this Section shall govern the voting and tendering of Sponsor Stock. The Sponsor, after consultation with the Trustee, shall provide and pay for all printing, mailing, tabulation and other costs associated with the voting and tendering of Sponsor Stock.

(A) <u>Voting</u>.

(1)   When the issuer of the Sponsor Stock files preliminary proxy solicitation materials with the Securities and Exchange Commission, the Sponsor shall cause a copy of all materials to be simultaneously sent to the Trustee. Based on these materials the Trustee shall prepare a voting instruction form. At the time of mailing of notice of each annual or special stockholders' meeting of the issuer of the Sponsor Stock, the Sponsor shall cause a copy of the notice and all proxy

9

solicitation materials to be sent to each Plan participant with an interest in Sponsor Stock held in the Trust, together with the foregoing voting instruction form to be returned to the Trustee or its designee. The form shall show the proportional interest in the number of full and fractional shares of Sponsor Stock credited to the participant's accounts held in the Coors Stock Fund. The Sponsor shall provide the Trustee with a copy of any materials provided to the participants and shall certify to the Trustee that the materials have been mailed or otherwise sent to participants.

(2)  Each participant with an interest in the Coors Stock Fund shall have the right, acting in the capacity of a named fiduciary within the meaning of section 402 of ERISA, to direct the Trustee as to the manner in which the Trustee is to vote (including not to vote) that number of shares of Sponsor Stock reflecting such participant's proportional interest in the Coors Stock Fund. Directions from a participant to the Trustee concerning the voting of Sponsor Stock shall be communicated in writing, or by mailgram or similar means. These directions shall be held in confidence by the Trustee and shall not be divulged to the Sponsor, or any officer or employee thereof, or any other person. Upon its receipt of the directions, the Trustee shall vote the shares of Sponsor Stock reflecting the participant's proportional interest in the Coors Stock Fund as directed by the participant. The Trustee shall not vote shares of Sponsor Stock reflecting a participant's proportional interest in the Coors Stock Fund for which it has received no direction from the participant.

(3)  The Trustee shall vote that number of shares of Sponsor Stock not credited to participants' accounts which is determined by multiplying the total number of shares not credited to participants' accounts by a fraction of which the numerator is the number of shares of Sponsor Stock reflecting such participants' proportional interest in the Coors Stock Fund credited to participants' accounts for

10

which the Trustee received voting directions from participants and of which the denominator is the total number of shares of Sponsor Stock reflected in the proportional interests of all participants under the Plan. The Trustee shall vote those shares of Sponsor Stock not credited to participants' accounts which are to be voted by the Trustee pursuant to the foregoing formula in the same proportion on each issue as it votes those shares reflecting participants' proportional interest in the Coors Stock Fund for which it received voting directions from participants. The Trustee shall not vote the remaining shares of Sponsor Stock not credited to participants' accounts.

(B) <u>Tender Offers</u>.

(1) Upon commencement of a tender offer for any securities held in the Trust that are Sponsor Stock, the Sponsor shall notify each Plan participant with an interest in such Sponsor Stock of the tender offer and utilize its best efforts to timely distribute or cause to be distributed to the participant the same information that is distributed to shareholders of the issuer of Sponsor Stock in connection with the tender offer, and, after consulting with the Trustee, shall provide and pay for a means by which the participant may direct the Trustee whether or not to tender the Sponsor Stock reflecting such participant's proportional interest in the Coors Stock Fund. The Sponsor shall provide the Trustee with a copy of any material provided to the participants and shall certify to the Trustee that the materials have been mailed or otherwise sent to participants.

(2) Each participant shall have the right to direct the Trustee to tender or not to tender some or all of the shares of Sponsor Stock reflecting such participant's proportional interest in the Coors Stock Fund (both vested and unvested). Directions from a participant to the Trustee concerning the tender of Sponsor Stock shall be communicated in writing, or by mailgram or such similar means

11

as is agreed upon by the Trustee and the Sponsor under the preceding paragraph. These directions shall be held in confidence by the Trustee and shall not be divulged to the Sponsor, or any officer or employee thereof, or any other person except to the extent that the consequences of such directions are reflected in reports regularly communicated to any such persons in the ordinary course of the performance of the Trustee's services hereunder. The Trustee shall tender or not tender shares of Sponsor Stock as directed by the participant. The Trustee shall not tender shares of Sponsor Stock reflecting a participant's proportional interest in the Coors Stock Fund for which it has received no direction from the participant.

(3) The Trustee shall tender that number of shares of Sponsor Stock not credited to participants' accounts which is determined by multiplying the total number of shares of Sponsor Stock not credited to participants' accounts by a fraction of which the numerator is the number of shares of Sponsor Stock reflecting participants' proportional interests in the Coors Stock Fund for which the Trustee has received directions from participants to tender (which directions have not been withdrawn as of the date of this determination) and of which the denominator is the total number of shares of Sponsor Stock reflected in the proportional interests of all participants under the Plan.

(4) A participant who has directed the Trustee to tender some or all of the shares of Sponsor Stock reflecting the participant's proportional interest in the Coors Stock Fund may, at any time prior to the tender offer withdrawal date, direct the Trustee to withdraw some or all of the tendered shares reflecting the participant's proportional interest, and the Trustee shall withdraw the directed number of shares from the tender offer prior to the tender offer withdrawal deadline. Prior to the withdrawal deadline, if any shares of Sponsor Stock not credited to participants' accounts have been tendered, the Trustee shall redetermine the number of shares of Sponsor Stock that would be tendered under

12

Section 4(e)(v)(B)(3) if the date of the foregoing withdrawal were the date of determination, and withdraw from the tender offer the number of shares of Sponsor Stock not credited to participants' accounts necessary to reduce the amount of tendered Sponsor Stock not credited to participants' accounts to the amount so redetermined.  A participant shall not be limited as to the number of directions to tender or withdraw that the participant may give to the Trustee.

(5) A direction by a participant to the Trustee to tender shares of Sponsor Stock reflecting the participant's proportional interest in the Coors Stock Fund shall not be considered a written election under the Plan by the participant to withdraw, or have distributed, any or all of his withdrawable shares. The Trustee shall credit to each proportional interest of the participant from which the tendered shares were taken the proceeds received by the Trustee in exchange for the shares of Sponsor Stock tendered from that interest.  Pending receipt of directions (through the Administrator) from the participant or the Named Fiduciary, as provided in the Plan, as to which of the remaining investment options the proceeds should be invested in, the Trustee shall invest the proceeds in the Mutual Fund described in Schedule "C".

(vi)  <u>Shares Credited</u>.  For all purposes of this Section, the number of shares of Sponsor Stock deemed "credited" or "reflected" to a participant's proportional interest shall be determined as of the last preceding valuation date. The trade date is the date the transaction is valued.

(vii) <u>General</u>.  With respect to all rights other than the right to vote, the right to tender, and the right to withdraw shares previously tendered, in the case of Sponsor Stock credited to a participant's proportional interest in the Coors Stock Fund, the Trustee shall follow the directions of the participant and if no such directions are received, the directions of the Named Fiduciary.  The Trustee

13

shall have no duty to solicit directions from participants. With respect to all rights other than the right to vote and the right to tender, in the case of Sponsor Stock not credited to participants' accounts, the Trustee shall follow the directions of the Named Fiduciary.

(viii) <u>Conversion</u>. All provisions in this Section 4(e) shall also apply to any securities received as a result of a conversion of Sponsor Stock.

(ix) <u>Paysop</u>. All shares currently in the Coors Paysop shall be held in the Coors Stock Fund as frozen assets until the Internal Revenue Service has approved participants' ability to convert these shares into another investment option under the terms of the Coors Savings and Investment Plan and the Coors Porcelain Company Savings and Investment Plan.

(f) <u>Notes</u>. The Administrator shall act as the Trustee's agent for the purpose of holding all trust investments in participant loan notes and related documentation and as such shall (i) hold physical custody of and keep safe the notes and other loan documents, (ii) collect and remit all principal and interest payments to the Trustee, (iii) keep the proceeds of such loans separate from the other assets of the Administrator and clearly identify such assets as Plan assets and (iv) cancel and surrender the notes and other loan documentation when a loan has been paid in full. To originate a participant loan, the Plan participant shall notify the Trustee of the request by use of the Telephone Exchange System. The Trustee shall determine, based on the current value of the Plan participant's account and the provisions of the Plan, the amount available for the loan. The Plan participant shall then direct the Trustee regarding the amount to be borrowed and the term or period for repayment pursuant to the loan procedures set forth in the Plan. Based on the most recent interest rate supplied by the Sponsor in accordance with the terms of the Plan, the Trustee shall advise the Plan participant of such interest rate, as well as the installment payment amounts. The Trustee shall forward the loan document to the

Plan participant for execution and submission for approval to the Administrator. The Administrator shall have the responsibility for approving the loan, via remote access, and instructing the Trustee of such approval. The Trustee shall send the loan proceeds to the Administrator or to the Plan participant in accordance with the directions from the Administrator. In all cases, such instruction by the Administrator shall be made within fifteen (15) days of the Plan participant's initial request (the origination date).

(g)    <u>Guaranteed Investment Contracts</u>.    Trust investments in guaranteed investment contracts ("GICs") shall be subject to the following limitations:

(i)    <u>Individually-Managed Investments</u>.  To the extent that the Named Fiduciary selects GIC's chosen by the Trustee as an investment option available to Plan participants, the Sponsor hereby directs the Trustee to choose such GIC's or similar investments in accordance with the Investment Guidelines for the Fixed Fund attached hereto as Schedule "I".

(ii)    In order to provide the necessary monies for exchanges or redemptions from the Fixed Fund, if any, under the Plan, the Sponsor agrees that the Plan shall maintain a liquidity reserve allocated to the Plan Fixed Fund option in a commingled money market fund ("Fidelity Employee Benefit U.S. Government Reserves Portfolio") maintained by the Trustee.  The Sponsor hereby (i) agrees to the Plan's participation in the Fidelity Group Trust for Employee Benefit Plans (the "Group Trust"), a group trust maintained by the Trustee for qualified plans, for purposes of liquidity under the Plan's Fixed Fund option and (ii) acknowledges that it has received from the Trustee a copy of the terms of the group Trust and the terms of the Declaration of Separate Fund for the Fidelity Employee Benefit U.S. Government Reserves Portfolio of the Group Trust.

15

(h) <u>Reliance of Trustee on Directions</u>. (i) The Trustee shall not be liable for any loss, or by reason of any breach, which arises from any participant's exercise or non-exercise of rights under this Section 4 over the assets in the participant's accounts.

(ii)   The Trustee shall not be liable for any loss, or by reason of any breach, which arises from the Named Fiduciary's exercise or non-exercise of rights under this Section 4, unless it was clear on their face that the actions to be taken under the Named Fiduciary's directions were prohibited by the fiduciary duty rules of section 404(a) of ERISA or were contrary to the terms of the Plan or this Agreement.

(i)   <u>Trustee Powers</u>. The Trustee shall have the following powers and authority:

(i) Subject to paragraphs (b), (c), (d) and (e) of this Section 4, to sell, exchange, convey, transfer, or otherwise dispose of any property held in the Trust, by private contract or at public auction. No person dealing with the Trustee shall be bound to see to the application of the purchase money or other property delivered to the Trustee or to inquire into the validity, expediency, or propriety of any such sale or other disposition.

(ii) Subject to paragraphs (b) and (c) of this Section 4, to invest in guaranteed investment contracts and short term investments (including interest bearing accounts with the Trustee or money market mutual funds advised by affiliates of the Trustee) and in collective investment funds maintained by the Trustee for qualified plans, in which case the provisions of each collective investment fund in which the Trust is invested shall be deemed adopted by the Sponsor and the provisions thereof incorporated as a part of this Trust as long as the fund remains exempt from taxation under Sections 401(a) and 501(a) of the Internal Revenue Code of 1986, as amended.

16

(iii)  To cause any securities or other property held as part of the Trust to be registered in the Trustee's own name, in the name of one or more of its nominees, or in the Trustee's account with the Depository Trust Company of New York and to hold any investments in bearer form, but the books and records of the Trustee shall at all times show that all such investments are part of the Trust.

(iv)  To keep that portion of the Trust in cash or cash balances as the Named Fiduciary or Administrator may, from time to time, deem to be in the best interest of the Trust.

(v)  To make, execute, acknowledge, and deliver any and all documents of transfer or conveyance and to carry out the powers herein granted.

(vi)  To settle, compromise, or submit to arbitration any claims, debts, or damages due to or arising from the Trust; to commence or defend suits or legal or administrative proceedings; to represent the Trust in all suits and legal and administrative hearings; and to pay all reasonable expenses arising from any such action, from the Trust if not paid by the Sponsor.

(vii)  To employ legal, accounting, clerical, and other assistance as may be required in carrying out the provisions of this Agreement and to pay their reasonable expenses and compensation from the Trust if not paid by the Sponsor.

(viii)  To do all other acts although not specifically mentioned herein, as the Trustee may deem necessary to carry out any of the foregoing powers and the purposes of the Trust.

17

Section 5.  <u>Recordkeeping and Administrative Services to Be Performed.</u>

(a)    <u>General.</u>  The Trustee shall perform those recordkeeping and administrative functions described in  Schedule "A" attached hereto.  These recordkeeping and administrative functions shall be performed within the framework of the Administrator's written directions regarding the Plan's provisions, guidelines and interpretations.

(b)    <u>Accounts.</u>  The Trustee shall keep accurate accounts of all investments, receipts, disbursements, and other transactions hereunder, and shall report the value of the assets held in the Trust as of the last day of each fiscal quarter of the Plan and, if not on the last day of a fiscal quarter, the date on which the Trustee resigns or is removed as provided in Section 8 of this Agreement or is terminated as provided in Section 10 (the "Reporting Date").  Within thirty (30) days following each Reporting Date or within sixty (60) days in the case of a Reporting Date caused by the resignation or removal of the Trustee, or the termination of this Agreement, the Trustee shall file with the Administrator a written account setting forth all investments, receipts, disbursements, and other transactions effected by the Trustee between the Reporting Date and the prior Reporting Date, and setting forth the value of the Trust as of the Reporting Date.  Except as otherwise required under ERISA, upon the expiration of six (6) months from the date of filing such account with the Administrator, the Trustee shall have no liability or further accountability to anyone with respect to the propriety of its acts or transactions shown in such account, except with respect to such acts or transactions as to which the Sponsor shall within such six (6) month period file with the Trustee written objections.

(c)    <u>Inspection and Audit.</u>  All records generated by the Trustee in accordance with paragraphs (a) and (b) shall be open to inspection and audit, during the Trustee's regular business hours prior to the termination of this Agreement, by the Administrator or any person designated by the Administrator.  Upon the resignation or removal of the Trustee or the termination of this Agreement, the Trustee shall provide to the Administrator, at no expense to the Sponsor, in the format regularly provided to the

18

Administrator, a statement of each participant's accounts as of the resignation, removal, or termination, and the Trustee shall provide to the Administrator or the Plan's new recordkeeper such further records as are reasonable, at the Sponsor's expense.

(d)  <u>Effect of Plan Amendment</u>.  A confirmation of the current qualified status of the Plan is attached hereto as Schedule "F".  The Trustee's provision of the recordkeeping and administrative services set forth in this Section 5 shall be conditioned on the Sponsor delivering to the Trustee a copy of any amendment to the Plan as soon as administratively feasible following the amendment's adoption, with, if requested, an IRS determination letter or an opinion of counsel substantially in the form of Schedule "F" covering such amendment, and on the Administrator providing the Trustee on a timely basis with all the information the Administrator deems necessary for the Trustee to perform the recordkeeping and administrative services and such other information as the Trustee may reasonably request.

(e)  <u>Returns, Reports and Information</u>.  The Administrator shall be responsible for the preparation and filing of all returns, reports, and information required of the Trust or Plan by law.  The Trustee shall provide the Administrator with such information as the Administrator may reasonably request to make these filings.  The Administrator shall also be responsible for making any disclosures to Participants required by law including, without limitation, such disclosures as may be required under federal or state truth-in-lending laws with regard to Participant loans.

Section 6.  <u>Compensation and Expenses</u>.  Within thirty (30) days of receipt of the Trustee's bill, which shall be computed and billed in accordance with Schedule "B" attached hereto and made a part hereof, as amended from time to time, the Sponsor shall send to the Trustee a payment in such amount.  All expenses of the Trustee relating directly to the acquisition and disposition of investments constituting part of the Trust, and all taxes of any kind whatsoever that may be levied or assessed under existing

19

or future laws upon or in respect of the Trust or the income thereof, shall be a charge against and paid from the appropriate Plan participants' accounts.

Section 7.  Directions and Indemnification.

(a)  Identity of Administrator and Named Fiduciary.  The Trustee shall be fully protected in relying on the fact that the Named Fiduciary and the Administrator under the Plan are the individuals or persons named as such above or such other individuals or persons as the Sponsor may notify the Trustee in writing.

(b)  Directions from Administrator.  Whenever the Administrator provides a direction to the Trustee concerning the recordkeeping and administrative functions described in Schedule "A" attached hereto, the Trustee shall not be liable for any loss, or by reason of any breach, arising from the direction if the direction is contained in a writing (or is oral and immediately confirmed in a writing) signed by any individual whose name and signature have been submitted (and not withdrawn) in writing to the Trustee by the Administrator in the form attached hereto as Schedule "D", provided the Trustee reasonably believes the signature of the individual to be genuine.  Such direction may also be made via EDT in accordance with procedures agreed to by the Administrator and the Trustee; provided, however, that the Trustee shall be fully protected in relying on such direction as if it were a direction made in writing by the Administrator.  The Trustee shall have no responsibility to ascertain any direction's (i) accuracy, (ii) compliance with the terms of the Plan or any applicable law, or (iii) effect for tax purposes or otherwise.

(c)  Directions from Named Fiduciary.  Whenever the Named Fiduciary or Sponsor provides a direction to the Trustee, the Trustee shall not be liable for any loss, or by reason of any breach, arising from the direction (i) if the direction is contained in a writing (or is oral and immediately confirmed in a writing) signed by any individual whose name and signature have been submitted (and not withdrawn) in writing to the Trustee by the Named Fiduciary in the form attached hereto as Schedule "E" and (ii) if

20

the Trustee reasonably believes the signature of the individual to be genuine, unless it is clear on the direction's face that the actions to be taken under the direction would be prohibited by the fiduciary duty rules of section 404(a) of ERISA or would be contrary to the terms of the Plan or this Agreement. Such direction may also be made via EDT; provided, however, that the Trustee shall be fully protected in relying on such direction as if it were a direction made in writing by the Named Fiduciary.

(d)    Co-Fiduciary Liability. In any other case, the Trustee shall not be liable for any loss, or by reason of any breach, arising from any act or omission of another fiduciary under the Plan except as provided in section 405(a) of ERISA.

(e)    Indemnification. The Sponsor shall indemnify the Trustee against, and hold the Trustee harmless from, any and all loss, damage, penalty, liability, cost, and expense, including without limitation, reasonable attorneys' fees and disbursements, that may be incurred by, imposed upon, or asserted against the Trustee by reason of any claim, regulatory proceeding, or litigation arising from any act done or omitted to be done by any individual or person with respect to the Plan or Trust, excepting only any and all loss, etc., arising from the Trustee's negligence or bad faith.

(f)    Survival. The provisions of this Section 7 shall survive the termination of this Agreement.

Section 8.    Resignation or Removal of Trustee.

(a)    Resignation. The Trustee may resign at any time upon sixty (60) days' notice in writing to the Sponsor, unless a shorter period of notice is agreed upon by the Sponsor.

(b)    Removal. The Sponsor may remove the Trustee at any time upon sixty (60) days' notice in writing to the Trustee, unless a shorter period of notice is agreed upon by the Trustee.

21

Section 9. <u>Successor Trustee</u>.

(a)    <u>Appointment</u>. If the office of Trustee becomes vacant for any reason, the sponsor may in writing appoint a successor trustee under this Agreement. The successor trustee shall have all of the rights, powers, privileges, obligations, duties, liabilities, and immunities granted to the Trustee under this Agreement. The successor trustee and predecessor trustee shall not be liable for the acts or omissions of the other with respect to the Trust.

(b)    <u>Acceptance</u>. When the successor trustee accepts its appointment under this Agreement, title to and possession of the Trust assets shall immediately vest in the successor trustee without any further action on the part of the predecessor trustee. The predecessor trustee shall execute all instruments and do all acts that reasonably may be necessary or reasonably may be requested in writing by the Sponsor or the successor trustee to vest title to all Trust assets in the successor trustee or to deliver all Trust assets to the successor trustee.

(c)    <u>Corporate Action</u>. Any successor of the Trustee or successor trustee, through sale or transfer of the business or trust department of the Trustee or successor trustee, or through reorganization, consolidation, or merger, or any similar transaction, shall, upon consummation of the transaction, become the successor trustee under this Agreement.

Section 10. <u>Termination</u>. This Agreement may be terminated at any time by the Sponsor upon sixty (60) days' notice in writing to the Trustee. On the date of the termination of this Agreement, the Trustee shall forthwith transfer and deliver to such individual or entity as the Sponsor shall designate, all cash and assets then constituting the Trust. If, by the termination date, the Sponsor has not notified the Trustee in writing as to whom the assets and cash are to be transferred and delivered, the Trustee may bring an appropriate action or proceeding for leave to deposit the assets and cash in a court of

22

competent jurisdiction. The Trustee shall be reimbursed by the Sponsor for all costs and expenses of the action or proceeding including, without limitation, reasonable attorneys' fees and disbursements.

Section 11. <u>Resignation, Removal, and Termination Notices</u>. All notices of resignation, removal, or termination under this Agreement must be in writing and mailed to the party to which the notice is being given by certified or registered mail, return receipt requested, to the Sponsor c/o Robert Smith, Adolph Coors Company, 1819 Denver West Drive, Building 26, Golden, CO 80401-3112, and to the Trustee c/o John M. Kimpel, Fidelity Investments, 82 Devonshire Street, Boston, Massachusetts 02109, or to such other addresses as the parties have notified each other of in the foregoing manner. Notice shall be given at least sixty (60) days in advance of the effective date of the change.

Section 12. <u>Duration</u>. This Trust shall continue in effect without limit as to time, subject, however, to the provisions of this Agreement relating to amendment, modification, and termination thereof.

Section 13. <u>Amendment or Modification</u>. This Agreement may be amended or modified at any time and from time to time only by an instrument executed by both the Sponsor and the Trustee. Notwithstanding the foregoing, to reflect increased operating costs the Trustee may once each calendar year amend Schedule "B" without the Sponsor's consent upon seventy-five (75) days advance written notice to the Sponsor.

Section 14. <u>General</u>.

(a) <u>Performance by Trustee, its Agents or Affiliates</u>. The Sponsor acknowledges and authorizes that the services to be provided under this Agreement shall be provided by the Trustee, its agents or affiliates, including Fidelity Investments Institutional Operations Company or its successor, and that certain of such services may be provided pursuant to one or more other contractual agreements or relationships.

23

(b)    Entire Agreement. This Agreement contains all of the terms agreed upon between the parties with respect to the subject matter hereof.

(c)    Waiver. No waiver by either party of any failure or refusal to comply with an obligation hereunder shall be deemed a waiver of any other or subsequent failure or refusal to so comply.

(d)    Successors and Assigns. The stipulations in this Agreement shall inure to the benefit of, and shall bind, the successors and assigns of the respective parties.

(e)    Partial Invalidity. If any term or provision of this Agreement or the application thereof to any person or circumstances shall, to any extent, be invalid or unenforceable, the remainder of this Agreement, or the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and each term and provision of this Agreement shall be valid and enforceable to the fullest extent permitted by law.

(f)    Section Headings. The headings of the various sections and subsections of this Agreement have been inserted only for the purposes of convenience and are not part of this Agreement and shall not be deemed in any manner to modify, explain, expand or restrict any of the provisions of this Agreement.

Section 15. Governing Law.

(a)    Massachusetts Law Controls. This Agreement is being made in the Commonwealth of Massachusetts, and the Trust shall be administered as a Massachusetts trust. The validity, construction, effect, and administration of this Agreement shall be governed by

24

and interpreted in accordance with the laws of the Commonwealth of Massachusetts, except to the extent those laws are superseded under section 514 of ERISA.

(b)    <u>Trust Agreement Controls</u>.  The Trustee is not a party to the Plan, and in the event of any conflict between the provisions of the Plan and the provisions of this Agreement, the provisions of this Agreement shall control.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their duly authorized officers as of the day and year first above written.

Attest: _____
Asst. Secretary

ADOLPH COORS COMPANY

By _____
Vice President

Attest: _____
Assistant Clerk

FIDELITY MANAGEMENT TRUST COMPANY

By _____
Senior Vice President

25

Schedule "A"
## RECORDKEEPING & ADMINISTRATIVE SERVICES

### Administration

* Establishment and maintenance of participant account and election percentages.

* Maintenance of five plan investment options:

    - Fixed Fund (A Separately Managed Account)
    - Fidelity Growth & Income Portfolio
    - Fidelity U.S. Equity Index Portfolio
    - Fidelity Magellan Fund
    - Coors Stock Fund

* Maintenance of seven money classifications:

    - Savings & Investment
    - TERA Basic
    - TERA Additional
    - Employer pre-1987
    - Employer Post-1986
    - Employer PAYSOP
    - Rollover Contribution

* Processing of mutual fund trades.

. The Trustee will provide only the recordkeeping and administrative services set forth on this Schedule "A" and no others.

### Processing

* Weekly processing of contribution data.
* Daily processing of transfers and changes of future allocations and deferral contribution percentages.
* Weekly processing of withdrawals and loans.
* Calculation of minimum distributions for age 70 1/2 participants.

### Other

* Monthly trial balance
* Quarterly administrative reports
* Quarterly participant statements
* 1099-Rs
* Participant Loans
* Performance of section 401(k) limitation testing upon request. In order to obtain this service, the client shall be required to provide the information identified in the Fidelity Discrimination Testing Package Guidelines.
* Employee communications describing available investment options, including multimedia informational materials and group presentations.
* Quarterly 941E Reporting
* Additional monthly reports as agreed to by the Sponsor and the Trustee

PLAN INVESTMENT AND                    FIDELITY MANAGEMENT TRUST COMPANY
 ADMINISTRATION COMMITTEE
ADOLPH COORS COMPANY

By _____  5/22/92     By _____  6/16/92
                      Date                 Senior Vice President            Date

26

Schedule "B"
## FEE SCHEDULE

| | |
|---|---|
| Annual Participant Recordkeeping Fee | $10.00 per participant*, billed and payable quarterly. |
| Loan Fee | Establishment fee of $10.00 per loan account; annual fee of $15.00 per loan account. |
| Return of Excess Fee | $25.00 per participant, a one-time charge per calculation and check generation. |

- Other Fees: separate charges for optional use of remote access, ADP testing, extraordinary expenses resulting from large numbers of simultaneous manual transactions or from errors not caused by Fidelity, or for reports not contemplated in this Agreement. The Administrator may withdraw funds from the Trust by written direction to the Trustee to pay fees for services which are reasonable and necessary to administer the Plan under the provisions of ERISA.

* This fee will be imposed pro rata for each calendar quarter, or any part thereof, that it remains necessary to maintain a participant's account(s) as part of the Plan's records, e.g., vested, deferred, forfeiture, top-heavy and terminated participants who must remain on file through calendar year-end for 1099-R reporting purposes.

### Fixed Fund Management Fees

- On the aggregate amount of assets represented by GICs or similar investments purchased by Fidelity on behalf of the Trust, 0.10% per year of such individually managed GIC assets in the Trust to the extent such assets are less than $100 million, 0.07% to the extent such assets are equal to or greater than $100 million but less than $200 million, and 0.05% to the extent such assets are equal to or greater than $200 million; these fees are payable pro rata quarterly on the basis of such assets as of the calendar quarter's last valuation date.

### Trustee Fees

- To the extent that assets are invested in Mutual Funds, 0.02% per year payable pro rata quarterly on the basis of such assets in the Trust as of the calendar quarter's last valuation date, but no less than $2,500.00 nor more than $5,000.00 per year.

- To the extent that assets are invested in Sponsor Stock, 0.10% of such assets in the Trust payable pro rata quarterly on the basis of such assets as of the calendar quarter's last valuation date.

- Trustee fees will be subject to a $10,000 total annual minimum.

PLAN INVESTMENT AND
ADMINISTRATION COMMITTEE
ADOLPH COORS COMPANY

FIDELITY MANAGEMENT TRUST COMPANY

By _____  5/25/92
                        Date

By _____  6/16/92
Senior Vice President        Date

27

Schedule "C"

## INVESTMENT OPTIONS

In accordance with Section 4(b), the Named Fiduciary hereby directs the Trustee that participants' individual accounts may be invested in the following investment options:

- Fixed Fund (A Separately Managed Account)
- Fidelity Growth & Income Portfolio
- Fidelity U.S. Equity Index Portfolio
- Fidelity Magellan Fund
- Coors Stock Fund

The investment option referred to in Section 4(c) shall be the Fixed Fund.


PLAN INVESTMENT AND
 ADMINISTRATION COMMITTEE
ADOLPH COORS COMPANY

By _____
                              Date



**ADOLPH COORS COMPANY**

SCHEDULE "D"

Ms. Jacqueline W. McCarthy
Fidelity Investments Institutional Operations Company
82 Devonshire Street
Boston, Massachusetts  02109

Coors Savings and Investment Plan
and Coors Porcelain Savings and Investment Plan

Dear Ms. McCarthy:

This letter is sent to you in accordance with Section 7(b) of the Trust Agreement, dated as of May 31, 1992, between Adolph Coors Company and Fidelity Management Trust Company.  I hereby designate the persons listed below, as the individuals who may provide directions upon which Fidelity Management Trust Company shall be fully protected in relying.  Only one such individual need provide any direction.  The signature of each designated individual is set forth below and certified to be such.

Your may rely upon each designation and certification set forth in this letter until I deliver to you written notice of the termination of authority of a designated individual.

Very truly yours,
Adolph Coors Company

Richard D. Zillmann
Vice President
On behalf of the Plan Investment
and Administration Committee

I. For Administration/Recordkeeping

Roger L. Bowman

Rex R. Gooch

Peggy Crawley

Susan Poletti

II. For Investments

Donald D. Breen

Richard D. Zillmann

Robert C. Smith



**ADOLPH COORS COMPANY**

SCHEDULE "E"

Ms. Jacqueline W. McCarthy
Fidelity Investments Institutional Operations Company
82 Devonshire Street
Boston, Massachusetts  02109

Coors Savings and Investment Plan
and Coors Porcelain Savings and Investment Plan

Dear Ms. McCarthy:

This letter is sent to you in accordance with Section 7(c) of the Trust Agreement, dated as of May 31, 1992, between Adolph Coors Company and Fidelity Management Trust Company.  I hereby designate the persons listed below, as the individuals who may provide directions upon which Fidelity Management Trust Company shall be fully protected in relying.  Only one such individual need provide any direction.  The signature of each designated individual is set forth below and certified to be such.

You may rely upon each designation and certification set forth in this letter until I deliver to you written notice of the termination of authority of a designated individual.

Very truly yours,

Adolph Coors Company

By _____

Harold R. Smethills
Chairman, Plan Investment
and Administration Committee

_____
Gerry L. Kaveny

_____
Harold R. Smethills

_____
Joe G. Warren, Jr.

_____
Richard D. Zillmann

1819 DENVER WEST DRIVE
BLDG. 26, SUITE 400
GOLDEN, COLORADO 80401-3112

# Holme Roberts & Owen

Attorneys at Law

Suite 4100
1700 Lincoln

Denver, Colorado 80203

Telephone (303) 861-7000
Telecopier 866-0200
Telex 45-4460

Suite 400
10. .th Cascade Avenue
Colorado Springs, Colorado 80903

Suite 900
50 South Main Street
Salt Lake City, Utah 84144

Denver Technological Center
Suite 908
8400 East Prentice Avenue
Englewood, Colorado 80111

Suite 400
1401 Pearl Street
Boulder, Colorado 80302

May 19, 1992

Ms. Jacqueline W. McCarthy
Fidelity Institutional Retirement Services Company
82 Devonshire Street - ZR9
Boston, MA  02109

Re: <u>Adolph Coors Company Savings and Investment
Plan.</u>

Dear Ms. McCarthy:

In accordance with your request, this letter sets
forth our opinion with respect to the qualified status under
Section 401(a) of the Internal Revenue Code of 1986, (the
"Code"), of the form of the Adolph Coors Savings and
Investment Plan as amended to the date of this letter (the
"Plan").

We have not been engaged by the Company to prepare
the Plan document nor have we been engaged to amend the Plan
from time to time.  Our engagement has been limited to
responding to discrete questions concerning the Plan when
presented to us from time to time by the Adolph Coors Company
(the "Company").

Our opinion set forth in this letter is based solely
on copies of the Plan and amendments to the Plan that have
been furnished to us by the Company and that the Company has
represented to us are the operative plan documents.  Our
opinion is based on current provisions of the Code, applicable
Treasury Regulations and judicial and administrative
interpretations of the Code and regulations, all of which are
subject to change, which change may be applied retroactively.

The material facts regarding the plan as they have
been represented to us by the Company are as follows.  The
most recent favorable determination letter as to the Plan's
qualified status under Section 401(a) of the Code was issued
by the Dallas, Texas District Director of the Internal Revenue
Service and was dated September 22, 1988.  A copy of the

Ms. Jacqueline W. McCarthy
May 19, 1992
Page 2

letter is enclosed.  The version of the Plan submitted by the
Company for the District Director's review in connection with
this determination letter did not contain amendments made
effective as of January 1, 1989 and thereafter.  The Plan was
amended and restated, effective generally as of January 1,
1991 but with certain provisions effective as of the dates
required by law, to comply with those requirements of the Code
that became effective on or after January 1, 1989 and to
provide that alternate payees who are entitled to payments
from the Plan pursuant to a qualified domestic relations order
may receive payment only in the form of a lump sum and are
entitled to receive payment as soon as administratively
practicable after the domestic relations order has been
determined to be qualified.  The Plan was amended as of
January 1, 1992 to provide for differing contribution rates
for several of the Company's subsidiaries and, as of June 1,
1992, to provide that participants may invest in Company
common stock.

        The Company submitted the Plan on March 20, 1992 to
the Dallas, Texas District Director to request a favorable
determination letter as to the Plan's qualified status under
Section 401(a) of the Code.  The Company may have to make some
modifications to the Plan at the request of the Internal
Revenue Service in order to obtain this favorable
determination letter, but we do not expect any of these
modifications to be material.  The Company has informed us
that it will make these modifications.

        Based on the foregoing statements of the Company and
a review of the provisions of the Plan as embodied in
documents furnished to us by the Company, it is our opinion
that the Internal Revenue Service will issue a favorable
determination letter as to the qualified status of the Plan in
form, as modified at the request of the Internal Revenue
Service, under Section 401(a) of the Code, subject to the
customary condition that continued qualification of the Plan,
as modified, will depend upon its effect in operation.

        Furthermore, to the extent that the assets are in
part invested in common stock issued by the Company or
affiliate, it is our opinion that the Plan is an "eligible
individual account plan" (as defined under Section 407(d)(3)
of ERISA), and that the shares of common stock of the Company
held and to be purchased under the Plan are "qualifying
employer securities" as defined under Section 407(d)(5) of
ERISA.

Ms. Jacqueline W. McCarthy
May 19, 1992
Page 3

     Finally, we have advised the Company that interests in the Plan and certain transactions under the Plan involving the issuance of Company stock are required to be registered under the Securities Act of 1933, as amended, on Form S-8.

       Sincerely,

       Holme Roberts & Owen

Internal Revenue Service
District Director

Department of the Treasury

1100 COMMERCE STREET
DALLAS, TX  75242

Date:  SEP 2 2 1988

ADOLPH COORS CO
C/O CINDY S BIRLEY
1700 LINCOLN STREET STE 3300
DENVER, CO  80203

Employer Identification Number:
    84-0178360
File Folder Number:
    840000871
Person to Contact:
    EP TECHNICAL ASSISTOR - 16
Contact Telephone Number:
    (214) 767-1204
Plan Name:
    ADOLPH COORS COMPANY
    SAVINGS AND INVESTMENT PLAN
Plan Number: 004

Dear Applicant:

    Based on the information supplied, we have made a favorable determination
on your application identified above.  Please keep this letter in your perma-
nent records.

    Continued qualification of the plan will depend on its effect in operation
under its present form.  (See section 1.401-1(b)(3) of the Income Tax Regula-
tions.)  The status of the plan in operation will be reviewed periodically.

    The enclosed document describes the impact of Notice 86-13 and some events
that could occur after you receive this letter that would automatically nullify
it without specific notice from us.  The document also explains how operation
of the plan may affect a favorable determination letter, and contains informa-
tion about filing requirements.

    This letter relates only to the status of your plan under the Internal
Revenue Code.  It is not a determination regarding the effect of other Federal
or local statutes.

    The information on the enclosed addendum is an integral part of this
determination.  Please be sure to read and keep it with this letter.

    We have sent a copy of this letter to your representative as indicated in
the power of attorney.

    This determination letter is applicable for the amendment(s) adopted on
Jan. 13, 1988.

Letter 835(DO/CG)

-2-

ADOLPH COORS CO


   If you have any questions concerning this matter, please contact the
person whose name and telephone number are shown above.

                              Sincerely yours,

                              *Gary O. Booth*

                              Gary O. Booth
                              District Director

Enclosures:
Publication 794
OPWBP 515
Addendum


Letter 835(DO/CG)

-3-

ADOLPH COORS CO

This determination letter is applicable for the amendments adopted on August 23, 1988 and, September 15, 1988.

Schedule "G"

## EXISTING GICs

In accordance with Section 4(b), the Named Fiduciary hereby directs the Trustee to continue to hold the following Existing GICs until such time as the Named Fiduciary directs otherwise:

- Contract Issuer:        Allstate
  Maturity Date:       12/31/93
  Contract #:          GA-4742

- Contract Issuer:        Equitable
  Maturity Date:       9/1/94
  Contract #:          GAC-6568

- Contract Issuer:        Equitable
  Maturity Date:       12/31/92
  Contract #:          AC-3024-85

- Contract Issuer:        John Hancock
  Maturity Date:       12/31/92
  Contract #:          GAC-5170

- Contract Issuer:        Metropolitan Life
  Maturity Date:       12/31/92
  Contract #:          9576

- Contract Issuer:        Metropolitan Life
  Maturity Date:       6/30/96
  Contract #:          11990

PLAN INVESTMENT AND
 ADMINISTRATION COMMITTEE
ADOLPH COORS COMPANY

By _____ 5/22/92
                              Date

33

Schedule "H"

## TELEPHONE EXCHANGE PROCEDURES

The following telephone exchange procedures are currently employed by Fidelity Investments Retirement Services Company (FIRSCO).

Telephone exchange hours are 8:30 a.m. (EST) to 8:00 p.m. (EST) on each business day. A "business day" is any day on which the New York Stock Exchange is open.

FIRSCO reserves the right to change these telephone exchange procedures at its discretion.

### Mutual Funds

#### Exchanges Between Mutual Funds

Participants may call on any business day to exchange between the mutual funds. If the request is received before 4:00 p.m. (EST), it will receive that day's trade date. Calls received after 4:00 p.m. (EST) will be processed on a next day basis.

### Individually Managed GIC

#### Exchanges Between Mutual Funds and Fixed Fund

Participants who wish to exchange between a mutual fund and the Fixed Fund managed by Fidelity may call on any business day. If the request is received before 4:00 p.m. (EST), it will receive that day's trade date. Calls received after 4:00 p.m. (EST) will be processed on a next day basis.

#### Exchange Restrictions

Participants will not be permitted to make direct transfers between the Fixed Fund and a money market fund should one become available as an investment option under the Plan. Participants who wish to exchange between the Fixed Fund and a money market fund, must first exchange into a non-money market fund for a period of 180 days.

### Coors Stock Fund

#### Exchanges Between Mutual Funds and Coors Stock Fund

Participants may call on any business day to exchange between the mutual funds and the Coors Stock Fund. If the request is received before 4:00 p.m. (EST), it will receive that day's trade date. Calls received after 4:00 p.m. (EST) will be processed on a next day basis.

#### Exchanges Between Coors Stock Fund and Fixed Fund

Participants may call on any business day to exchange between the Fixed Fund and the Coors Stock Fund. If the request is received before 4:00 p.m. (EST), it will receive that day's trade date. Calls received after 4:00 p.m. (EST) will be processed on a next day basis.

34

**Exchange Restrictions**

It is the intention of the Trustee to maintain a sufficient liquidity reserve in the Coors Stock Fund to meet exchange, redemption or withdrawal requests. However, if there is insufficient liquidity in the Coors Stock Fund to allow for same day exchanges, the Trustee will be required to sell shares of Sponsor Stock to meet the exchange requests. If this occurs, the subsequent exchange into other Plan investment options will take place five (5) business days later. This allows for settlement of the stock trade at the custodian and the corresponding transfer to Fidelity.

PLAN INVESTMENT AND
 ADMINISTRATION COMMITTEE
ADOLPH COORS COMPANY

By _____   _____
                                          Date

35

Schedule "I"

## INVESTMENT GUIDELINES
## FOR GIC MANAGEMENT

### Investment Objective

The investment objective for the portion of the Plan to be invested in Guaranteed Investment Contracts (GICs) or similar investments (the "Account") is to maximize the yield on the principal invested in the Account consistent with assuring a low risk of loss of any such principal, minimizing the fluctuation in the value of the assets in which the Account is invested, and assuring sufficient liquidity is maintained to meet the requirements of the Plan.

### Investment Guidelines

I.    Mitigate credit risks by diversifying the Account's investments among several types of assets and industry groups.

A. With respect to GICs issued by insurance companies, banks and other institutions that guarantee the payback of principal at full book value, this shall mean:

1. Investing in four different classes of GICs:

a. Standard GIC's: invested principal and earned interest guaranteed for the full term of investment.

b. Indexed GIC's: returns adjusted periodically according to a published index.

c. Participating GIC's: returns adjusted periodically to reflect the performance of an underlying portfolio of assets.

d. Synthetic GICs: contracts which simulate the structure of conventional GICs, but do so through the purchase of debt obligations, issued by entities other than insurance companies or banks, such as mortgage-backed and asset-backed obligations, corporate bonds, etc., and which may include a third party form of credit enhancement.

2. Purchasing GICs from only those companies which a) the Trustee has included on its GIC/BIC Approved List; and b) are rated Aa3/AA- or higher at the time of purchase by both Moody's Investor Service and Standard and Poors Corporation respectively.

3. Limiting aggregate dollar exposures and maximum maturities for investments with approved issuers based on that company's credit worthiness as described in the Trustee's Credit Diversification Guidelines for Guaranteed Investment Portfolios.

4. Limiting the dollar investment in GICs which rely on the general assets or accounts of insurance companies to no more than 75% of the total assets in the Account.

5. Changes to the GIC/BIC Approved List or the Credit Diversification Guidelines for Guaranteed Investment Portfolios which are made subsequent to the date of this Agreement shall be reviewed and approved by the Coors Plan Investment and Administration Committee (the "Committee") prior to their adoption for managing investment in the Account.

B. With regard to other assets acquired by the Account:

1. The credit worthiness of the assets shall be maintained by restricting investments to: a) those securities issued by the U.S. Government, U.S. Government Agencies, the principal and interest of which is backed by the U.S. Government; securities of U.S. corporations whose long-term debt at the time of purchase is rated A2/P2 or better at the time of purchase by said agencies; and asset backed securities rated AAA at the time of purchase; and b) units of pooled fixed income investment products which have a dollar-weighted average credit rating for the assets in which the pooled fund has invested which is acceptable to the Committee

2. The aggregate dollar exposure and maximum maturity for any investment in a security issued by a U.S. corporation shall be based on that company's credit worthiness.

II. Mitigate reinvestment risk by scheduling the maturities of future investments for the Account to occur throughout the calendar year.

III. Maintain funds in secure short-term liquid investments in amounts generally expected to accommodate normal cash flow out of the Account to pay distributions to participants or their beneficiaries, meet requests to transfer funds to other investment options available under the Plan, and to pay any reasonable expenses of administering the Plan as are allowable under applicable law.

IV. Investment activities by the Investment Manager of the Account will be monitored on an ongoing basis to assure that the credit quality of the overall Account is maintained and that performance is consistent with the stated Investment Objective. The Committee will review the results of this monitoring no less frequently than quarterly.

ADOLPH COORS COMPANY

By _____ 5/22/92
                              Date

FIDELITY MANAGEMENT TRUST COMPANY

By _____ 6/16/92
Senior Vice President              Date

## Contractual Obligations

The terms of each contract are based upon the information in the bidding specifications issued to potential bidders. Often detailed information about expected deposits and withdrawals is necessary to get the best rate from the issuing carrier.

If the Plan fails to fulfill its contractual obligations, there are potentially serious consequences for the Plan sponsor and/or Plan participants.

Normally, a contract issued by a selected carrier will obligate the Plan to make the designated lump sum and/or window period deposits with the carrier within a specified period of time.

GIC interest and principal guarantees are based in part on the carrier's assumption that the Plan will make the deposits as promised. The relative attractiveness of the insurer's rate guarantees, however, may change during the funding period. Should interest rates rise during the funding period, for example, a plan might consider seeking a new higher rate contract for the previously promised deposits during the remainder of the original window contract period.

The failure of a plan to satisfy its contractual funding obligations will generally result in the imposition of monetary damages which may be substantial in some cases. The carrier may reduce the rate of interest credited under the contract or assess a penalty against the amount actually deposited with the carrier. In extreme cases, the carrier may seek reimbursement from the Plan or Plan Sponsor for any financial loss incurred by the issuer due to the funding deficiency.

Assuming a GIC has been funded, it continues to be an ongoing contractual commitment by both the Plan and the carrier. Changing Plan rules in a manner which changes significantly "benefit-responsive" withdrawals from a GIC may result in a lowering of the contract interest rate or the assessment of a monetary penalty. Alternatively, a request by the Plan contract holder (Plan Sponsor or Trustee) to withdraw funds prior to the contract maturity date may result in the assessment of a market value adjustment on the amount withdrawn.

Obviously, situations actually leading to the assessment of contractual penalties are atypical. Due to the potential financial consequences to plan participants and plan sponsors in these types of situations, however, funding and withdrawal decisions regarding GICs (BICs) should be carefully weighed by plan sponsors and trustees alike.



**Coors Brewing Company**
Golden, Colorado 80401-0030

January 23, 2004

Ms. Linda L. Trent
Fidelity Investments
300 Puritan Way, MM3H
Marlborough, MA 01752-3078

RE:    Coors Savings and Investment Plan
       Coors 401(k) Savings Plan for Hourly Employees at the Memphis, Tennessee Brewery

Dear Ms. Trent:

This letter is sent to you in accordance with Section 7(c) of the Trust Agreement, dated as of May 31, 1992, between Adolph Coors Company, Coors Brewing Company and Fidelity Management Trust Company. I hereby designate the persons listed below, as the individuals who may amend the Trust Agreement for all issues, excluding administrative and record keeping issues, which Fidelity Management Trust Company shall be fully protected in relying. All three individuals set forth below, in addition to a fourth individual who shall be one of the individuals identified in the "For Investments" section of the letters attached hereto from Adolph Coors Company and Coors Brewing Company, must execute each amendment to the Trust Agreement, excluding amendments which relate to administrative and record keeping issues. The signature of each designated individual is set forth and certified to be such.

You may rely upon each designation and certification set forth in this letter until I deliver to you in written notice of the termination of authority of a designated individual.

Very truly yours,
Adolph Coors Company/Coors Brewing Company

James Fredericks
Vice President, Global Human
Resources & Rewards

William Leo Kiely III
President & CEO

Timothy Wolf
Chief Financial Officer

Mara Swan
Chief People Officer





**Coors Brewing Company**
Golden, Colorado 80401-0030

January 23, 2004

Diann Ball
Service Integration Manager
Fidelity Investments
One Spartan Way, TS3B
Merrimack, NH 03054

Re:     **Directing Parties:**
        **Coors Savings and Investment Plan 401(4)**
        **Coors 1165(e) Plan**
        **Coors 401(k) for Hourly Employees at the Memphis, Tennessee Brewery**
        **Coors Defined Benefit Plan**
        **Coors Health & Welfare Plan**

Dear Diann:

This letter is sent to you in accordance to the Record keeping and Administrative
Services Agreements for the above-mentioned plans. I hereby designate **Nancy Lasich,
Pam Horvat, and Angela Christenson** as individuals who may provide direction to
Fidelity for all plans administered by Fidelity. This direction is to include responding to
data request, error reports, and setting up or correcting amounts due to participants. Only
one such individual need provide direction on participant issues. The signature of each
designated individual is set forth below and certified to be such.

This designation and certification is in addition to any designations that have been
executed in each individual practice. You may rely upon each designation and
certification set forth in this letter until we deliver to you written notice of the termination
of authority of a designated individual.

Sincerely,

                                        Coors Brewing Company

                                        By _____
                                        Barbara Albanesi


_____                 _____
Nancy Lasich                             Pam Horvat


_____
Angela Christenson