# EXHIBIT 5
# Part 3 of 3

14th

AMENDMENT TO TRUST AGREEMENT BETWEEN
FIDELITY MANAGEMENT TRUST COMPANY AND
ADOLPH COORS COMPANY

**THIS AMENDMENT**, effective as of the date first signed below, by and between Fidelity Management Trust Company (the "Trustee") and Adolph Coors Company and Coors Brewing Company (collectively and individually, the "Sponsor");

WITNESSETH:

WHEREAS, the Trustee and the Sponsor heretofore entered into a Master Trust Agreement dated May 31, 1992 with regard to the Coors Savings and Investment Plan and the 401(k) Savings Plan for Hourly Employees at the Memphis, Tennessee Brewery (collectively and individually, the "Plan"); and

WHEREAS, the Trustee and the Sponsor now desire to amend said Trust Agreement as provided for in Section 13 thereof;

NOW THEREFORE, in consideration of the above premises, the Trustee and the Sponsor hereby amend the Trust Agreement by:

(1)     Restating Section 4 (e) in its entirety, as follows:

(e)     Sponsor Stock.  Trust investments in Adolph Coors Company Class B Common Stock ("Sponsor Stock") shall be made via the Coors Stock Fund (the "Stock Fund").  Investments in the Stock Fund shall consist primarily of shares of Sponsor Stock. The Stock Fund shall also include cash or short-term liquid investments, in accordance with this paragraph, in amounts designed to satisfy daily participant exchange or withdrawal requests. Such holdings will include Colchester Street Trust: Money Market Portfolio: Class I or such other Mutual Fund or commingled money market pool as agreed to in writing by the Sponsor and Trustee.  The Named Fiduciary shall, after consultation with the Trustee, establish and communicate to the Trustee in writing a target percentage and drift allowance for such short-term liquid investments.   Subject to its ability to execute open-market trades in Sponsor Stock or to otherwise trade with the Sponsor, the Trustee shall be responsible for ensuring that the short-term investments held in the Stock Fund falls within the agreed-upon range over time. Each participant's proportional interest in the Stock Fund shall be measured in units of participation, rather than shares of Sponsor Stock.  Such units shall represent a proportionate interest in all of the assets of the Stock Fund, which includes shares of Sponsor Stock, short-term investments and at times, receivables and payables (such as receivables and payables

Adolph Coors Company
Unitized Stock Amendment
Core/Trust

arising out of unsettled stock trades). The Trustee shall determine a daily net asset value ("NAV") for each unit outstanding of the Stock Fund. Valuation of the Stock Fund shall be based upon: (a) the closing price of the stock on the principal national securities exchange on which the Sponsor Stock is traded or, in the case of stocks traded over the counter, the last sale price of the day; (b) if unavailable, the latest available price as reported by the principal national securities exchange on which the Sponsor Stock is traded or for an over the counter stock, the last bid price prior to the close of the New York Stock Exchange (generally 4:00 p.m. Eastern time) (the "Closing Price"); or (c) if neither is available, the price determined in good faith by the Trustee. The NAV shall be adjusted for gains or losses realized on sales of Sponsor Stock, appreciation or depreciation in the value of those shares owned, dividends paid on Sponsor Stock to the extent not used to purchase additional units of the Stock Fund for affected participants, and interest on the short-term investments held by the Stock Fund, payables and receivables for pending stock trades, receivables for dividends not yet distributed, and payables for other expenses of the Stock Fund, including principal obligations, if any, and expenses that, pursuant to Sponsor direction, the Trustee accrues or pays from the Stock Fund.

(i)    Acquisition Limit.  Pursuant to the Plan, the Trust may be invested in Sponsor Stock to the extent necessary to comply with investment directions in accordance with this Agreement.  The Sponsor shall be responsible for providing specific direction on any acquisition limits required by the Plan or applicable law.

(ii)    Fiduciary Duty.

(A)    The Named Fiduciary shall continually monitor the suitability under the fiduciary duty rules of section 404(a)(1) of ERISA (as modified by section 404(a)(2) of ERISA) of acquiring and holding Sponsor Stock.  The Trustee shall not be liable for any loss or expense which arises from the directions of the Named Fiduciary with respect to the acquisition and holding of Sponsor Stock, unless it is clear on their face that the actions to be taken under those directions would be prohibited by the foregoing fiduciary duty rules or would be contrary to the terms of this Agreement.

2

(B)    Each participant with an interest in Sponsor Stock (or, in the event of the participant's death, his beneficiary) is, for purposes of this Section 4(e)(ii), hereby designated as a "named fiduciary" (within the meaning of Section 403(a)(1) of ERISA), with respect to the shares allocated to his or her account that were not purchased at his or her direction, and shall have the right to direct the Trustee as to the manner in which the Trustee is to vote or tender such shares, including the right to direct the Trustee's conduct, in accordance with disclosed rules, by his or her failure to respond within the required time frame.

(iii)    Purchases and Sales of Sponsor Stock.  Unless otherwise directed by the Named Fiduciary in writing pursuant to directions that the Trustee can administratively implement, the following provisions shall govern purchases and sales of Sponsor Stock.

(A)    Open Market Purchases and Sales.  Purchase and sales of Sponsor Stock shall be made on the open market in accordance with the Trustee's standard trading guidelines, as they may be amended by the Trustee from time to time, as necessary to honor exchange and withdrawal activity and to maintain the target cash percentage and drift allowance for the Stock Fund, provided that:

(1)    If the Trustee is unable to purchase or sell the total number of shares required to be purchased or sold on such day as a result of market conditions; or

(2)    If the Trustee is prohibited by the Securities and Exchange Commission, the New York Stock Exchange or principal exchange on which the Sponsor Stock is traded, or any other judicial or regulatory body from purchasing or selling any or all of the shares required to be purchased or sold on such day, then the Trustee shall purchase or sell such shares as soon thereafter as administratively feasible.

(B)    Purchases and Sales from or to Sponsor.  If directed by the Sponsor in writing prior to the trading date, the Trustee may purchase or sell Sponsor Stock from or to the Sponsor if the purchase or sale is for adequate consideration (within the

meaning of section 3(18) of ERISA) and no commission is charged. If Sponsor contributions (employer) or contributions made by the Sponsor on behalf of the participants (employee) under the Plan are to be invested in Sponsor Stock, the Sponsor may transfer Sponsor Stock in lieu of cash to the Trust. In either case, the number of shares to be transferred will be determined by dividing the total amount of Sponsor Stock to be purchased or sold by the Closing Price of the Sponsor Stock on the trading date.

(C)    <u>Use of an Affiliated Broker</u>. The Sponsor hereby directs the Trustee to use Fidelity Capital Markets, a division of National Financial Services LLC ("Capital Markets") to provide brokerage services in connection with any purchase or sale of Sponsor Stock on the open market, except in circumstances where the Trustee has determined, in accordance with its standard trading guidelines or pursuant to Sponsor direction, to seek expedited settlement of the trades. Capital Markets shall execute such directions directly or through its affiliates. The provision of brokerage services shall be subject to the following:

(1)    As consideration for such brokerage services, the Sponsor agrees that Capital Markets shall be entitled to remuneration under this direction provision in an amount of no more than three and one-fifth cents ($.032) commission on each share of Sponsor Stock. Any change in such remuneration may be made only by written agreement between Sponsor and Trustee.

(2)    The Trustee will provide the Sponsor with periodic reports which summarize all securities transaction-related charges incurred with respect to trades of Sponsor Stock for such Plan.

(3)    Any successor organization of Capital Markets, through reorganization, consolidation, merger or similar transactions, shall, upon consummation of such transaction, become the successor broker in accordance with the terms of this direction provision.

4

(4)    The Trustee and Capital Markets shall continue to rely on this direction provision until notified to the contrary.  The Sponsor reserves the right to terminate this direction upon written notice to Capital Markets (or its successor) and the Trustee, in accordance with Section 11 of this Agreement.

(iv)    Execution of Purchases and Sales of Units.  Unless otherwise directed in writing pursuant to directions that the Trustee can administratively implement, purchases and sales of units shall be made as follows:

(A)    Subject to subparagraphs (B) and (C) below, purchases and sales of units in the Stock Fund (other than for exchanges) shall be made on the date on which the Trustee receives from the Administrator in good order all information, documentation, and wire transfers of funds (if applicable), necessary to accurately effect such transactions. Exchanges of units in the Stock Fund shall be made in accordance with the Exchange Guidelines attached hereto as Schedule "H".

(B)    Aggregate sales of units in the Stock Fund on any day shall be limited to the Stock Fund's Available Liquidity for that day.  For these purposes, Available Liquidity shall mean the amount of short-term investments held in the fund decreased by any outgoing cash for expenses then due, payables for loan principal, and obligations for pending stock purchases, and increased by incoming cash (such as contributions, exchanges in, loan repayments) and to the extent credit is available and allocable to the Stock Fund, receivables for pending stock sales.  In the event that the requested sales exceed the Available Liquidity, then transactions shall be processed giving precedence to distributions, loans and withdrawals, and otherwise on a first-in first-out (FIFO) basis, as provided in Schedule "H-1" (the "Specified Hierarchy").  So long as the Stock Fund is open for such transactions, sales of units that are requested but not processed on a given day due to insufficient Available Liquidity shall be suspended until Available Liquidity is sufficient to honor such transactions in accordance with the Specified Hierarchy.

(C)    The Trustee shall close the Stock Fund to sales or purchases of units, as applicable, on any date on which trading in the Sponsor Stock has been suspended or substantial purchase or sale orders are outstanding and cannot be executed.

(v)    <u>Securities Law Reports</u>.  The Named Fiduciary shall be responsible for filing all reports required under Federal or state securities laws with respect to the Trust's ownership of Sponsor Stock, including, without limitation, any reports required under section 13 or 16 of the Securities Exchange Act of 1934, and shall immediately notify the Trustee in writing of any requirement to stop purchases or sales of Sponsor Stock pending the filing of any report.  The Trustee shall provide to the Named Fiduciary such information on the Trust's ownership of Sponsor Stock as the Named Fiduciary may reasonably request in order to comply with Federal or state securities laws.

(vi)    <u>Voting and Tender Offers</u>.  Notwithstanding any other provision of this Agreement, the provisions of this Section shall govern the voting and tendering of Sponsor Stock.  The Sponsor shall provide and pay for all printing, mailing, tabulation and other costs associated with the voting and tendering of Sponsor Stock.  The Trustee, after consultation with the Sponsor, shall prepare the necessary documents associated with the voting and tendering of Sponsor Stock.

(A)  .  <u>Voting</u>.

(1)    When the issuer of Sponsor Stock prepares for any annual or special meeting, the Sponsor shall notify the Trustee at least thirty (30) days in advance of the intended record date and shall cause a copy of all proxy solicitation materials to be sent to the Trustee.  If requested by the Trustee, the Sponsor shall certify to the Trustee that the aforementioned materials represent the same information that is distributed to shareholders of Sponsor Stock.  Based on these materials the Trustee shall prepare a voting instruction form and shall provide a copy of all proxy solicitation materials to be sent to each Plan participant with an interest in Sponsor Stock held in the Trust, together with the foregoing voting instruction form to be returned to the Trustee or its designee.  The form shall show the proportional interest in the number of full and fractional shares of Sponsor Stock credited to the participant's accounts held in the Stock Fund.

(2)    Each participant with an interest in the Stock Fund shall have the right to direct the Trustee as to the manner in which the Trustee is to vote (including not to vote) that number of shares of Sponsor Stock reflecting such participant's proportional interest in the Stock Fund (both vested and unvested). Directions from a participant to the Trustee concerning the voting of Sponsor Stock shall be communicated in writing, or by such other means as is agreed upon by the Trustee and the Sponsor. These directions shall be held in confidence by the Trustee and shall not be divulged to the Sponsor, or any officer or employee thereof, or any other person except to the extent that the consequences of such directions are reflected in reports regularly communicated to any such persons in the ordinary course of the performance of the Trustee's services hereunder. Upon its receipt of the directions, the Trustee shall vote the shares of Sponsor Stock reflecting the participant's proportional interest in the Stock Fund as directed by the participant. Except as otherwise required by law, the Trustee shall not vote shares of Sponsor Stock reflecting a participant's proportional interest in the Stock Fund for which it has received no direction from the participant.

(3)    Except as otherwise required by law, the Trustee shall vote that number of shares of Sponsor Stock not credited to participants' accounts in the same proportion on each issue as it votes those shares credited to participants' accounts for which it received voting directions from participants.

(B)    Tender Offers.

(1)    Upon commencement of a tender offer for any securities held in the Trust that are Sponsor Stock, the Sponsor shall timely notify the Trustee in advance of the intended tender date and shall cause a copy of all materials to be sent to the Trustee. The Sponsor shall certify to the Trustee that the aforementioned materials represent the same information distributed to shareholders of Sponsor Stock. Based on these materials and after consultation with the Sponsor the Trustee shall prepare a tender instruction form and shall provide a copy of all tender materials to be sent to each plan participant with an interest in the Stock Fund, together with the foregoing tender instruction form, to be returned to the Trustee or its designee. The tender instruction form shall show the number of

7

full and fractional shares of Sponsor Stock that reflect the participants proportional interest in the Stock Fund (both vested and unvested).

(2)    Each participant with an interest in the Stock Fund shall have the right to direct the Trustee to tender or not to tender some or all of the shares of Sponsor Stock reflecting such participant's proportional interest in the Stock Fund (both vested and unvested). Directions from a participant to the Trustee concerning the tender of Sponsor Stock shall be communicated in writing, or by such other means as is agreed upon by the Trustee and the Sponsor. These directions shall be held in confidence by the Trustee and shall not be divulged to the Sponsor, or any officer or employee thereof, or any other person except to the extent that the consequences of such directions are reflected in reports regularly communicated to any such persons in the ordinary course of the performance of the Trustee's services hereunder. The Trustee shall tender or not tender shares of Sponsor Stock as directed by the participant. Except as otherwise required by law, the Trustee shall not tender shares of Sponsor Stock reflecting a participant's proportional interest in the Stock Fund for which it has received no direction from the participant.

(3)    Except as otherwise required by law, the Trustee shall tender that number of shares of Sponsor Stock not credited to participants' accounts in the same proportion as the total number of shares of Sponsor Stock credited to participants' accounts for which it has received instructions from Participants.

(4)    A participant who has directed the Trustee to tender some or all of the shares of Sponsor Stock reflecting the participant's proportional interest in the Stock Fund may, at any time prior to the tender offer withdrawal date, direct the Trustee to withdraw some or all of the tendered shares reflecting the participant's proportional interest, and the Trustee shall withdraw the directed number of shares from the tender offer prior to the tender offer withdrawal deadline. Prior to the withdrawal deadline, if any shares of Sponsor Stock not credited to participants' accounts have been tendered, the Trustee shall redetermine the number of shares of Sponsor Stock that would be tendered under Section 4(e)(vi)(B)(3) if the date of the foregoing withdrawal were the date of determination, and withdraw from the tender offer the number of shares of Sponsor Stock not credited to

participants' accounts necessary to reduce the amount of tendered Sponsor Stock not credited to participants' accounts to the amount so redetermined. A participant shall not be limited as to the number of directions to tender or withdraw that the participant may give to the Trustee.

(5)    A direction by a participant to the Trustee to tender shares of Sponsor Stock reflecting the participant's proportional interest in the Stock Fund shall not be considered a written election under the Plan by the participant to withdraw, or have distributed, any or all of his withdrawable shares. The Trustee shall credit to each proportional interest of the participant from which the tendered shares were taken the proceeds received by the Trustee in exchange for the shares of Sponsor Stock tendered from that interest. Pending receipt of directions (through the Administrator) from the participant or the Named Fiduciary, as provided in the Plan, as to which of the remaining investment options the proceeds should be invested in, the Trustee shall invest the proceeds in the investment option described in Schedule "C".

(vii)    General. With respect to all rights other than the right to vote, the right to tender, and the right to withdraw shares previously tendered, in the case of Sponsor Stock credited to a participant's proportional interest in the Stock Fund, the Trustee shall follow the directions of the participant and if no such directions are received, the directions of the Named Fiduciary. The Trustee shall have no duty to solicit directions from participants. With respect to all rights other than the right to vote and the right to tender, in the case of Sponsor Stock not credited to participants' accounts, the Trustee shall follow the directions of the Named Fiduciary.

(viii)    Conversion. All provisions in this Section 4(e) shall also apply to any securities received as a result of a conversion of Sponsor Stock.

(2)    Restating Schedule "H" in its entirety as attached hereto.

(3)    Adding Schedule "H-1" as attached hereto.

IN WITNESS WHEREOF, the Trustee and the Sponsor have caused this Amendment to be executed by their duly authorized officers effective as of the day and year first signed below.

ADOLPH COORS COMPANY

By: _____ _____
                        Date

FIDELITY MANAGEMENT TRUST COMPANY

By _____ _____
Vice President          Date

COORS BREWING COMPANY

By: _____ _____
                        Date

10

SCHEDULE "H"

EXCHANGE GUIDELINES

The following exchange guidelines are currently employed by Fidelity Investments Institutional Operations Company, Inc. (FIIOC).

Exchange hours, via a Fidelity participant service representative, are 8:30 a.m. (ET) to 8:00 p.m. (ET) on each business day. A "business day" is any day on which the New York Stock Exchange (NYSE) is open.

Exchanges via Voice Response System ("VRS") and the internet (Netbenefits) may be made virtually 24 hours a day.

FIIOC reserves the right to change these exchange guidelines at its discretion.

Note: The NYSE's normal closing time is 4:00 p.m. (ET); in the event the NYSE alters its closing time, all references below to 4:00 p.m. (ET) shall mean the NYSE closing time as altered.

## Investment Options (other than Sponsor Stock)

### Exchanges Between Investment Options (other than Sponsor Stock)

Participants may contact Fidelity on any business day to exchange between investment options (other than Sponsor Stock). If the request is confirmed before the close of the market (generally, 4:00 p.m. ET) on a business day, it will receive that day's trade date. Requests confirmed after the close of the market on a business day (or on any day other than a business day) will be processed on a next business day basis.

### Exchange Restrictions

Participants will not be permitted to make direct transfers from the Fixed Fund into a competing fund. Participants who wish to exchange from the Fixed Fund into a competing fund must first exchange into a non-competing fund for a period of 90 days.

## Sponsor Stock Fund

Provided that the Sponsor Stock Fund is open for purchases and sales of units, the following rules will govern exchanges:

### Exchanges From all other Investment Options to Sponsor Stock Fund

Participants may contact Fidelity on any business day to exchange from all other investment options into the Sponsor Stock Fund. If the request is confirmed before the close of the market (generally, 4:00 p.m. ET) on a business day, it will receive that day's trade date.

11

## SCHEDULE "H-1"

## AVAILABLE LIQUIDITY PROCEDURES FOR UNITIZED SPONSOR STOCK FUND

The following procedures shall govern sales of the Sponsor Stock Fund requested for a day on which Available Liquidity is insufficient:

1. Loans, withdrawals and distributions will be aggregated and placed first in the hierarchy. If Available Liquidity is sufficient for the aggregate of such transactions, all such loans, withdrawals and distributions will be honored. If Available Liquidity is not sufficient for the aggregate of such transactions, then such transactions will be suspended, and no transactions requiring a sale of Sponsor Stock Fund units shall be honored for that day.

2. If Available Liquidity has not been exhausted by the aggregate of loans, withdrawals and distributions, then all remaining transactions involving a sale of units in the Sponsor Stock Fund (exchanges out) shall be grouped on the basis of when such requests were received, in accordance with standard procedures maintained by the Trustee for such grouping as they may be amended from time to time. To the extent of Available Liquidity, groups of exchanges out of the Sponsor Stock Fund shall be honored, by group, on a "first in, first out" basis. If Available Liquidity is insufficient to honor all exchanges out within a group, then none of the exchanges out in such group shall be honored, and no exchanges out in a later group shall be honored.

3. Transactions not honored on a particular day due to insufficient Available Liquidity shall be honored, using the hierarchy specified above, on the next business day on which there is Available Liquidity.

## ~~FOURTEENTH~~ FIFTEENTH AMENDMENT TO TRUST AGREEMENT BETWEEN
### FIDELITY MANAGEMENT TRUST COMPANY AND
### ADOLPH COORS COMPANY

THIS FOURTEENTH AMENDMENT, dated as of the 22nd day of March, 2002, by and between Fidelity Management Trust Company (the "Trustee") Adolph Coors Company and Coors Brewing Company (individually and collectively, the "Sponsor");

### WITNESSETH:

WHEREAS, the Trustee and the Sponsor heretofore entered into a Trust Agreement dated May 31, 1992, amended January 1, 1998 to become a Master Trust, with regard to the Coors Savings and Investment Plan and the 401(k) Savings Plan for Hourly Employees at the Memphis, Tennessee Brewery (collectively and individually, the "Plan"); and

WHEREAS, the Trustee and the Sponsor now desire to amend said Trust Agreement as provided for in Section 13 thereof;

NOW THEREFORE, in consideration of the above premises, the Trustee and the Sponsor hereby amend the Trust Agreement by:

(1)     Amending the "**Other**" section of Schedule "A", to add the following:

Minimum Required Distributions: Monitor and process minimum required distribution ("MRD") amounts as follows: the Trustee shall notify the MRD Participant and, upon notification from the MRD Participant, shall use the MRD Participant's information to process their distribution. If the MRD Participant has terminated employment and does not respond to the Trustee's notification, the Sponsor hereby directs the Trustee to automatically begin the required distribution for the Participant. In the case of any other MRD Participant who does not respond to the Trustee's notification, the Trustee shall not proceed with the MRD.

(2)     Amending Schedule "B", to add the following:

Minimum Required Distribution:     Fee Waived.

(3)     Amending and restating the "Non-Fidelity Mutual Funds" section of Schedule "B", as follows:

Non-Fidelity Mutual Funds:     Non-Fidelity Mutual Fund vendors shall pay fees directly to Fidelity Investments Institutional Operations Company, Inc. (FIIOC) or its affiliates equal to such percentage (generally 25 to 50 basis points) of plan assets invested in such Non-Fidelity Mutual Funds as may be disclosed periodically, or, in the case of

the following investment options, in the amounts listed below:

Janus Worldwide Fund: 29 basis points: increasing to 30 basis points as of 1/1/03.

USAA International Fund: 35 basis points.

Unless otherwise noted, disclosure shall be posted and updated quarterly on Plan Sponsor Webstation at https://psw.fidelity.com or a successor site.

IN WITNESS WHEREOF, the Trustee and the Sponsor have caused this Fourteenth Amendment to be executed by their duly authorized officers effective as of the day and year first above written.

**ADOLPH COORS COMPANY**

By: _Barbara Albanesi_ 3/15/02
                          Date

**COORS BREWING COMPANY**

By: _Barbara Albanesi_ 3/15/02
                          Date

**FIDELITY MANAGEMENT TRUST COMPANY**

By: _Sarah Mullins_ 5.9.02
FMTC Authorized Signatory         Date

*SIXTEENTH*

## ~~FIFTEENTH~~ AMENDMENT TO TRUST AGREEMENT BETWEEN FIDELITY MANAGEMENT TRUST COMPANY AND ADOLPH COORS COMPANY

THIS FIFTEENTH AMENDMENT, dated as of the first day of June, 2002, and effective on that date unless otherwise noted below, by and between Fidelity Management Trust Company (the "Trustee") and Adolph Coors Company and Coors Brewing Company (individually and collectively, the "Sponsor");

WITNESSETH:

WHEREAS, the Trustee and the Sponsor heretofore entered into a Trust Agreement dated May 31, 1992, amended January 1, 1998 to become a Master Trust, with regard to the Coors Savings and Investment Plan and the 401(k) Savings Plan for Hourly Employees at the Memphis, Tennessee Brewery (collectively and individually, the "Plan"); and

WHEREAS, the Trustee and the Sponsor now desire to amend said Trust Agreement as provided for in Section 13 thereof;

NOW THEREFORE, in consideration of the above premises, the Trustee and the Sponsor hereby amend the Trust Agreement by:

(1)     Amending the "Other" section of Schedule "A" by adding the following:

Provide Fidelity Portfolio Planner$^{SM}$ an internet-based educational service for Participants that generates target asset allocations and model portfolios customized to investment options in your Plan(s) based upon methodology provided by Strategic Advisers, Inc., an affiliate of the Trustee. The Sponsor acknowledges that it has received the ADV Part II for Strategic Advisers, Inc. more than 48 hours prior to executing this amendment.

(2)     *As of April 5, 2002*, amending Schedule "H" to add the following under **Exchange Restrictions**:

Participants who wish to exchange out of the USAA International Fund may not exchange back into the USAA International Fund for a period of 90 days.

IN WITNESS WHEREOF, the Trustee and the Sponsor have caused this Fifteenth Amendment to be executed by their duly authorized officers effective as of the day and year first above written.

**ADOLPH COORS COMPANY**                     **FIDELITY MANAGEMENT TRUST COMPANY**

By: *Barbara Albanesi*  5/15/02            By: _____
                           Date                 FMTC Authorized Signatory          Date

**COORS BREWING COMPANY**

By: *Barbara Albanesi*  5/15/02
                           Date

Adolph Coors Company and Coors Brewing Company- CORE
Fifteenth Amendment
Trust Agreement



**Coors Brewing Company**
Golden, Colorado 80401-0030

Schedule "D"

Ms. Sarah Mullins
Fidelity Investments
300 Puritan Way, MM3H
Marlborough, MA 01752-3078

RE: Coors Savings and Investment Plan

Dear Ms. Mullins:

This letter is sent to you in accordance with Section 7(b) and Section 7(c) of the Trust Agreement, dated as of May 31, 1992, between Adolph Coors Company and Fidelity Management Trust Company. I hereby designate the persons listed below, as the individuals who may provide directions upon which Fidelity Management Trust Company shall be fully protected in relying. Only one such individual need provide any direction. The signature of each designated individual is set forth and certified to be such.

You may rely upon each designation and certification set forth in this letter until I deliver to you in written notice of the termination of authority of a designated individual.

Very truly yours,
Adolph Coors Company


David Barnes
Vice President, Treasurer
On behalf of the Plan Investment
And Administration Committee


I.      For Administration / Recordkeeping


Barbara L. Albanesi                                    Susan Poletti


James Walker


II.     For Investments


David Barnes                                           Richard H. Harris





**Coors Brewing Company**
Golden, Colorado 80401-0030

Schedule "E-1"

Ms. Ann Marcus
Fidelity Investments
300 Puritan Way, MM3H
Marlborough, MA 01752-3078

RE: Coors 401(k) Savings Plan for Hourly Employees at the Memphis, Tennessee Brewery

Dear Ms. Marcus:

This letter is sent to you in accordance with Section 7(b) and Section 7(c) of the Trust Agreement, dated as of May 31, 1992, between Adolph Coors Company and Fidelity Management Trust Company. I hereby designate the persons listed below, as the individuals who may provide directions upon which Fidelity Management Trust Company shall be fully protected in relying. Only one such individual need provide any direction. The signature of each designated individual is set forth and certified to be such.

You may rely upon each designation and certification set forth in this letter until I deliver to you in written notice of the termination of authority of a designated individual.

Very truly yours,
Adolph Coors Company


David Barnes
Vice President, Treasurer
On behalf of the Plan Investment
And Administration Committee


I.    For Administration / Recordkeeping


Barbara L. Albanesi                          Susan Poletti


James Walker


II.    For Investments


David Barnes                          Richard H. Harris



DRINK SAFELY

# DECLARATION OF SEPARATE FUND

## FIDELITY US EQUITY INDEX COMMINGLED POOL

Dated September 19, 1991
As Amended and Restated as of September 29, 2003

Fidelity Management Trust Company (the "Trustee") hereby establishes a separate fund (the "Separate Fund") pursuant to Section 3.4 of Article III of the Declaration of Trust for Employee Benefit Plans (the "Trust") established by the Trustee on April 23, 1981 and as amended from time to time thereafter.

The Trustee declares and agrees that this instrument incorporates the terms of the Trust and shall upon its execution constitute a part thereof.

The Separate Fund shall to be known as Fidelity US Equity index Commingled Pool (the "Portfolio"). The Portfolio is a commingled pool, dedicated exclusively to the active management of the assets of employee benefit plans (the "Participating Plans"). The Portfolio has the following investment objective and guidelines:

## I.    INVESTMENT OBJECTIVE

The Portfolio seeks to provide investment results that correspond to the total return performance of common stocks publicly traded in the United States.

## II.    INVESTMENT APPROACH

The Portfolio's investment approach is to approximate the composition and total return of the S&P 500 Stock Price Index (the "Index") while striving to keep transaction costs and other expenses low. The Index is a widely recognized, unmanaged index of common stock prices and represents a significant percentage of the market value of all common stocks that are publicly traded in the United States. Total returns for the Index assume reinvestment of dividends but do not include the effect of taxes, brokerage commissions or other fees. The Portfolio will attempt to duplicate the capital performance and dividend income of the Index.

## III.    PORTFOLIO GUIDELINES

### A.    Universe

1.    Under normal conditions, 90% of the Portfolio's investments will be invested in securities of companies that compose the Index.

2. The Portfolio may also invest in:

    (a) Stock index futures and options.

    (b) Collective investment vehicles or shares of investment companies that are managed by the Trustee or its affiliates; provided, however, that any such investments shall be made in accordance with the Employee Retirement Income Security Act of 1974, as amended ("ERISA").

In no event will the Portfolio invest in securities issued by the Trustee or its affiliates.

The Trustee may lend securities of the Portfolio; provided, however, that any such lending shall be made in accordance with ERISA.

**B.**   <u>Investment Restrictions</u>

Under normal circumstances, the Portfolio will generally follow the restrictions listed below:

1. At the time of purchase, the maximum investment in the equity of a single issuer, other than obligations of the U.S. government, will be 10% of the Portfolio's market value.

2. At the time of purchase, the holdings of any issuer will be limited so that no more than 10% of any class of securities of such issuer is held in the Portfolio.

3. Investments in any one industry will be limited to 25% of the Portfolio's market value.

**C.**   <u>CHANGES IN PORTFOLIO INVESTMENT OBJECTIVES AND GUIDELINES</u>

The Trustee in its discretion may make changes from time to time in the Portfolio's investment objectives and guidelines. Sixty (60) days prior notice of any such change must be provided to the Plan trustee of each Participating Plan having an interest in the Portfolio.

IN WITNESS WHEREOF, this instrument has been executed at Boston, Massachusetts as of September 29, 2003, by Fidelity Management Trust Company as trustee of the Fidelity Group Trust for Employee Benefit Plans and its seal affixed and attested, by its duly authorized officers:

FIDELITY MANAGEMENT TRUST COMPANY

by _____
                     Officer/Director

Attest: _____
             Assistant Clerk

**Fidelity Investments - Confidential**

**Q1.  What is the securities lending program?**

**A1.**   The Fidelity US Equity Index Commingled Pool (the, "Pool") will lend a portion of its securities with the intent to earn additional income for the Pool.  Mellon Bank, the Pool's custodian, will operate as the securities lending agent.  The Pool will receive collateral consisting of, cash, US Treasury Obligations, and/or letters of credit issued by banks that are approved by Mellon and Fidelity, against the loaned securities.  Collateral will be maintained in an amount greater than 100% of the market value of the loaned securities.  The collateral will be adjusted for market value fluctuations during the entire period of the loan. Cash collateral will be invested in Mellon's institutional short term investment fund; a Mellon sponsored commingled pool, at no expense to the Pool.

The Pool will be compensated by Mellon as the securities lending agent.  Such compensation will be net of a lending agent fee paid to Mellon, and will be in the form of additional income to the Pool.

**Q2.  What are the risks associated with a securities lending program?**

**A2.**   The primary risks of securities lending are:
- The borrower defaults on its obligation to return securities on loan. There are several controls in place to reduce this risk. The first is that securities on loan are collateralized at 102% for US denominated securities and at 105% for all foreign denominated securities. Secondly, Mellon Bank has indemnified the pool against losses arising from a borrower default.
- A loss is incurred in the investment of the cash collateral. To reduce a potential investment loss, cash collateral portfolio investment restrictions are in effect to limit duration, issuer exposure, and credit quality among other factors.

**Q3.  Will the Plan incur any additional costs as a result of a implementing a securities lending program?**

**A3.**   No, there will be no additional costs to the plan sponsor or participants.  On the contrary, it is anticipated the Pool will earn additional income to be applied to the NAV of the Pool.

Fidelity Investments - Confidential

**Q4. Do we have to communicate to participants that the Pool is implementing a securities lending program?**
A4. No, there is no disclosure requirement to participants for implementing a securities lending program. The Pool's legal documents already contain language allowing lending for all of the FMTC pools.

**Q5. What are the benefits of participating in a securities lending program?**
A5. The Pool should receive an ongoing income stream by participating in a securities lending program. The Pool will receive a share of the earnings associated with the loaned securities. This income will be applied to the NAV of the Pool.

*SEVENTEENTH*

## ~~SIXTEENTH~~ AMENDMENT TO TRUST AGREEMENT BY AND BETWEEN FIDELITY MANAGEMENT TRUST COMPANY, ADOLPH COORS COMPANY AND COORS BREWING COMPANY

THIS SIXTEENTH AMENDMENT, dated as of the thirtieth day of September, 2003, by and between Fidelity Management Trust Company (the "Trustee") Adolph Coors Company and Coors Brewing Company (individually and collectively the "Sponsor");

### WITNESSETH:

WHEREAS, the Trustee and the Sponsor heretofore entered into a Trust Agreement dated May 31, 1992, amended January 1, 1998 to become a Master Trust, with regard to the Coors Savings and Investment Plan and the 401(k) Savings Plan for Hourly Employees at the Memphis, Tennessee Brewery (collectively and individually, the "Plan"); and

WHEREAS, the Sponsor hereby directs the Trustee, in accordance with Section 7(c), of the Master Trust Agreement, as follows: (i) on September 30, 2003, to liquidate all participant balances held in the Fidelity Overseas Fund and the Janus Worldwide Fund, at their net asset values on such day, and to invest the proceeds in the Fidelity Diversified International Fund and American Funds New Perspective Fund – Class R4 respectively at their net asset values on such day; (ii) to redirect all participant contributions directed to the Fidelity Overseas Fund and the Janus Worldwide Fund after September 30, 2003 to be invested in the Fidelity Diversified International Fund and American Funds New Perspective Fund – Class R4 respectively; and (iii) to permit no further investments in the Fidelity Overseas Fund and the Janus Worldwide Funds as investment option for the Plan effective at the close of market (4:00 pm ET) on September 30, 2003. The parties hereto agree that the Trustee shall have no discretionary authority with respect to this sale and transfer directed by the Sponsor. Any variation from the procedure described herein may be instituted only at the express written direction of the Sponsor; and

WHEREAS, the Trustee and the Sponsor now desire to amend said Trust Agreement as provided for in Section 13 thereof.

NOW THEREFORE, in consideration of the above premises, the Trustee and the Sponsor hereby amend the Trust Agreement by:

(1)    Amending subsection (i) of Section 4, <u>Investment of Trust</u>, by inserting the following as subsection (viii) and renumbering all subsequent subsections within subsection (i) accordingly:

(viii) to borrow funds from a bank not affiliated with the Trustee in order to provide sufficient liquidity to process Plan transactions in a timely fashion; provided that the cost of such borrowing shall be allocated in a reasonable fashion to the investment fund(s) in need of liquidity;

(2)    Amending the "investment options" section of Schedules "A" and "C" to delete the following:

- Fidelity Overseas Fund
- Janus Worldwide Fund

(3)  Amending the "investment options" section of Schedules "A" and "C" to add the following:

- Fidelity Diversified International Fund
- American Funds New Perspective Fund – Class R4

(4)  Amending and restating the "Non-Fidelity Mutual Funds" section of Schedule "B", as follows:

Non-Fidelity Mutual Funds:    Fees paid directly to Fidelity Investments Institutional Operations Company, Inc. (FIIOC) or its affiliates by Non-Fidelity Mutual Fund vendors shall be posted and updated quarterly on Plan Sponsor Webstation at http://psw.fidelity.com or a successor site

IN WITNESS WHEREOF, the Trustee and the Sponsor have caused this Sixteenth Amendment to be executed by their duly authorized officers effective as of the day and year first above written.

**ADOLPH COORS COMPANY**                    **FIDELITY MANAGEMENT TRUST**

**COORS BREWING COMPANY**

By: _____ 10/02/03          By: _____ 11/26/03
    Peter Coors         Date                  FMTC Authorized Signatory    Date
    Chairman

By: _____
    William Leo Kiely III    Date
    President & CEO

By: _____ 9-23-03
    Mara Swan           Date
    Chief People Officer

By: _____ 10-8-03
    Coors Plan Investment    Date
    and Administrative Committee

### EIGHTEENTH AMENDMENT TO TRUST AGREEMENT BY AND BETWEEN FIDELITY MANAGEMENT TRUST COMPANY, ADOLPH COORS COMPANY AND COORS BREWING COMPANY

THIS EIGHTEENTH AMENDMENT, dated as of the first day of November, 2003, by and between Fidelity Management Trust Company (the "Trustee") Adolph Coors Company and Coors Brewing Company (individually and collectively, the "Sponsor");

WITNESSETH:

WHEREAS, the Trustee and the Sponsor heretofore entered into a Trust Agreement dated May 31, 1992, and amended January 1, 1998 to become a Master Trust, with regard to the Coors Savings and Investment Plan and the 401(k) Savings Plan for Hourly Employees at the Memphis, Tennessee Brewery (collectively and individually, the "Plan"); and

WHEREAS, the Trustee and the Sponsor now desire to amend said Trust Agreement as provided for in Section 13 thereof.

NOW THEREFORE, in consideration of the above premises, the Trustee and the Sponsor hereby amend the Trust Agreement by:

(1)    Restating Schedule "H", Exchange Guidelines, in its entirety, as attached hereto.

IN WITNESS WHEREOF, the Trustee and the Sponsor have caused this Eighteenth Amendment to be executed by their duly authorized officers effective as of the day and year first above written.

ADOLPH COORS COMPANY
COORS BREWING COMPANY

FIDELITY MANAGEMENT TRUST COMPANY

By: _____  2/23/04
       Timothy Wolf          Date
       Chief Financial Officer

By: _____  3/29/04
       FMTC Authorized Signatory   Date

By: _____  2/23/04
       William Leo Kiely III   Date
       President & CEO

By: _____  2/4/04
       Mara Swan              Date
       Chief People Officer

By: _____  2-12-04
                              Date

## SCHEDULE "H"

## EXCHANGE GUIDELINES

The following exchange guidelines are currently employed by Fidelity Investments Institutional Operations Company, Inc. (FIIOC).

Exchange hours, via a Fidelity participant service representative, are 8:30 a.m. (ET) to 12:00 a.m. (ET) on each business day. A "business day" is any day on which the New York Stock Exchange (NYSE) is open.

Exchanges via Fidelity's Voice Response System ("VRS") and the internet (Netbenefits) may be made virtually 24 hours a day.

FIIOC reserves the right to change these exchange guidelines at its discretion.

<u>Note</u>: The NYSE's normal closing time is 4:00 p.m. (ET); in the event the NYSE alters its closing time, all references below to 4:00 p.m. (ET) shall mean the NYSE closing time as altered.

### Investment Options (other than Sponsor Stock)

### Exchanges Between Investment Options (other than Sponsor Stock)

Participants may contact Fidelity on any business day to exchange between investment options (other than Sponsor Stock). If the request is confirmed before the close of the market (generally, 4:00 p.m. ET) on a business day, it will receive that day's trade date. Requests confirmed after the close of the market on a business day (or on any day other than a business day) will be processed on a next business day basis.



### Exchange Restrictions

Participants will not be permitted to make direct transfers from the Fixed Fund into a competing fund. Participants who wish to exchange from the Fixed Fund into a competing fund must first exchange into a non-competing fund for a period of 90 days.

Effective November 10, 2003, Participants will not be permitted to exchange into the USAA International Fund ("USAA Fund"), although Participants may continue to exchange out of the USAA Fund and direct contributions and loan repayments into the USAA Fund.

### Sponsor Stock Fund

Provided that the Sponsor Stock Fund is open for purchases and sales of units, the following rules will govern exchanges:

### Exchanges From all other Investment Options to Sponsor Stock Fund

Participants may contact Fidelity on any business day to exchange from all other investment options into the Sponsor Stock Fund. If the request is confirmed before the close of the market (generally, 4:00 p.m. ET) on a business day, it will receive that day's trade date. Requests confirmed after the close of the market on a business day (or on any day other than a business day) will be processed on a next business day basis.

**Exchanges From Sponsor Stock Fund to all other Investment Options**

Participants may contact Fidelity on any business day to exchange from the Sponsor Stock Fund to all other investment options. If Fidelity receives the request before the close of the market (generally 4:00 p.m. ET) on any business day and Available Liquidity is sufficient to honor the trade after Specified Hierarchy rules are applied, it will receive that day's trade date. Requests received by Fidelity after the close of the market on any business day (or on any day other than a business day) will be processed on a next business day basis, subject to Available Liquidity for such day after application of Specified Hierarchy rules. If Available Liquidity on any day is insufficient to honor the trade after application of Specified Hierarchy rules, it will be suspended until Available Liquidity is sufficient, after application of Specified Hierarchy rules, to honor such trade, and it will receive the trade date and Closing Price of the date on which it was processed.

**Exchange Restrictions**

Participants who exchange out of the Coors Stock Fund must wait a minimum of fourteen (14) days before exchanging back into the Stock Fund.

**ADOLPH COORS COMPANY**                    **FIDELITY MANAGEMENT TRUST** COMPANY

**COORS BREWING COMPANY**

By: _____ 2/23/04          By: _____ 3/29/04
    Timothy Wolf          Date                  FMTC Authorized Signatory     Date
    Chief Financial Officer

By: _____ 2/24/04
    William Leo Kiely III   Date
    President & CEO

By: _____ 2-14-04
    Mara Swan             Date
    Chief People Officer

By: _____ 2-12-04
                          Date

## NINETEENTH AMENDMENT TO TRUST AGREEMENT BY AND BETWEEN
## FIDELITY MANAGEMENT TRUST COMPANY AND
## MOLSON COORS BREWING COMPANY (as successor to Adolph Coors Company)

THIS NINETEENTH AMENDMENT, dated as of the ninth day of February, 2005, by and between Fidelity Management Trust Company (the "Trustee") and Molson Coors Brewing Company (as successor to Adolph Coors Company) (the "Sponsor");

WITNESSETH:

WHEREAS, the Trustee and the Sponsor heretofore entered into a Trust Agreement dated May 31, 1992, and amended January 1, 1998 to become a Master Trust, with regard to the Coors Savings and Investment Plan and the 401(k) Savings Plan for Hourly Employees at the Memphis, Tennessee Brewery (collectively and individually, the "Plan"); and

WHEREAS, *as of July 1, 2004,* the Sponsor of the 401(k) Savings Plan for Hourly Employees at the Memphis, Tennessee Brewery changed from Coors Brewing Company to Adolph Coors Company; and

WHEREAS, *as of February 9, 2005,* as a result of the merger between Adolph Coors Company and Molson Inc., "Molson Coors Brewing Company" (as successor to Adolph Coors Company) is now the Sponsor of the Plan; and

WHEREAS, as of February 9, 2005 as result of the merger between Adolph Coors Company and Molson Inc., Adolph Coors Company Class B Common Stock Class B will remain outstanding as shares of Molson Coors Brewing Company Stock; and

WHEREAS, the Trustee and the Sponsor now desire to amend said Trust Agreement as provided for in Section 13 thereof.

NOW THEREFORE, in consideration of the above premises, the Trustee and the Sponsor hereby amend the Trust Agreement by:

(1) *Effective July 1, 2004,* removing all references to "Coors Brewing Company" as the "Sponsor".

(2) *Effective February 9, 2005,* replacing all references to "Adolph Coors Brewing Company" as the "Sponsor" with "Molson Coors Brewing Company".

(3) *Effective February 9, 2005,* replacing all references to "Sponsor Stock" and the "Stock Fund" to be "Molson Coors Brewing Company Stock" and "Molson Coors Brewing Company Stock Fund" respectively.

(4) *Effective July 1, 2004,* restating the first WHEREAS clause, in its entirety, as follows:

WHEREAS, Adolph Coors Company is the Sponsor of the Coors Savings and Investment Plan and the 401(k) Savings Plan for Hourly Employees at the Memphis, Tennessee Brewery (collectively and individually, the "Plan"); and

(5)    *Effective February 9, 2005,* restating the first WHEREAS clause, in its entirety, as follows:

WHEREAS, Molson Coors Brewing Company is the Sponsor of the Coors Savings and Investment Plan and the 401(k) Savings Plan for Hourly Employees at the Memphis, Tennessee Brewery (collectively and individually, the "Plan"); and

(6)    *Effective February 9, 2005,* restating the first sentence of Section 4(e), in its entirety, as follows:

(e)    Sponsor Stock.  Trust Investments in Molson Coors Brewing Company Stock ("Sponsor Stock") shall be made via the Molson Coors Brewing Company Stock Fund (the "Stock Fund").

(7)    *Effective February 9, 2005,* amending the "investment options" sections of Schedules "A" and "C" to add the following:

–   Molson Coors Brewing Company Stock Fund

(8)    *Effective February 9, 2005,* amending the "investment options" sections of Schedules "A" and "C" to remove the following:

–   Coors Stock Fund

(9)    *Effective February 9, 2005,* restating the "Exchange Restrictions" section under the "Sponsor Stock Fund" section of Schedule "H" as follows:

**Exchange Restrictions**

Participants who exchange out of the Molson Coors Brewing Company Stock Fund must wait a minimum of fourteen (14) days before exchanging back into the Stock Fund.

IN WITNESS WHEREOF, the Trustee and the Sponsor have caused this Nineteenth Amendment to be executed by their duly authorized officers effective as of the day and year first above written.

**MOLSON COORS BREWING COMPANY**
**(as successor to Adolph Coors Company)**

**FIDELITY MANAGEMENT TRUST**
**COMPANY**

By: _Debara Albanesi_  3/8/05
                                    Date

By: _Melissa Neugetter_  3/8/05
FMTC Authorized Signatory                Date

Adolph Coors Company and Coors Brewing Company
Nineteenth Amendment
Core/Trust

2