# EXHIBIT 8



# FORM DEF 14A

## MOLSON COORS BREWING CO – TAP

**Filed: August 29, 2003 (period: October 03, 2003)**

Official notification to shareholders of matters to be brought to a vote (Proxy)

Use these links to rapidly review the document
Table of Contents

## SCHEDULE 14A INFORMATION

Proxy Statement Pursuant to Section 14(a) of
the Securities Exchange Act of 1934 (Amendment No.          )

Filed by the Registrant    ☒

Filed by a Party other than the Registrant    ☐

Check the appropriate box:

☐     Preliminary Proxy Statement

☐     **Confidential, for Use of the Commission Only (as permitted by Rule 14a−6(e)(2))**

☒     Definitive Proxy Statement

☐     Definitive Additional Materials

☐     Soliciting Material Pursuant to §240.14a−12

## ADOLPH COORS COMPANY

(Name of Registrant as Specified In Its Charter)

### N/A

(Name of Person(s) Filing Proxy Statement, if other than the Registrant)

Payment of Filing Fee (Check the appropriate box):

☒     No fee required

☐     Fee computed on table below per Exchange Act Rules 14a−6(i)(1) and 0−11
    (1)     Title of each class of securities to which transaction applies:

    (2)     Aggregate number of securities to which transaction applies:

    (3)     Per unit price or other underlying value of transaction computed pursuant to Exchange Act Rule 0−11 (set forth the amount on which the filing fee is calculated and state how it was determined):

    (4)     Proposed maximum aggregate value of transaction:

    (5)     Total fee paid:

☐     Fee paid previously with preliminary materials.

☐     Check box if any part of the fee is offset as provided by Exchange Act Rule 0−11(a)(2) and identify the filing for which the offsetting fee was paid previously. Identify the previous filing by registration statement number, or the Form or Schedule and the date of its filing.

    (1)     Amount Previously Paid:

    (2)     Form, Schedule or Registration Statement No.:

    (3)     Filing Party:

    (4)     Date Filed:

**ADOLPH COORS COMPANY**
**311 10TH STREET**
**GOLDEN, COLORADO 80401**

August 29, 2003

Dear Shareholders:

You are cordially invited to attend a special meeting of the shareholders of Adolph Coors Company, which will be held at 12:00 noon, local time, on Friday, October 3, 2003, at the 6th Floor Auditorium in the Brewery Complex, 12th and Ford Streets, Golden, Colorado 80401.

At the special meeting, we will ask you to consider and vote on a proposal to change the state of incorporation of the Company from Colorado to Delaware.

The reincorporation will not result in any change in the Company's name, headquarters, business, jobs, management, location of any of our offices or facilities, number of employees, taxes payable to the State of Colorado, assets, liabilities or net worth. However, we believe it will be beneficial to the Company and its shareholders in the long run to obtain the benefits of Delaware's comprehensive, widely used and extensively interpreted corporate law. We believe the benefits are supported by the fact that more than half of the Fortune 500 publicly traded companies are incorporated in Delaware, and seven of the top ten Colorado-based companies (based on sales and number of employees) are incorporated in Delaware. Coors Brewing Company will continue to be incorporated in Colorado and none of our other subsidiaries will be changing their respective states or jurisdictions of incorporation in connection with the reincorporation. Because of differences between the laws of Colorado and Delaware, the reincorporation will effect some changes in your rights as shareholders of the Company. The most significant of these changes are discussed in detail in the accompanying proxy statement under "Comparison of Shareholder Rights Before and After the Reincorporation" beginning on page 5. We expect that the reincorporation will be tax-free to you for U.S. federal income tax purposes. Upon completion of the reincorporation, your shares of Class B common stock will continue to trade on the New York Stock Exchange under the symbol "RKY."

The board of directors of the Company has unanimously approved the reincorporation proposal. Approval of the proposal by shareholders will require the affirmative vote of the holders of a majority of all the votes entitled to be cast by each of Class A common stock and Class B common stock, voting as separate classes.

**Your board of directors recommends that you vote "FOR" the reincorporation in Delaware.**

**Your vote is very important, regardless of the number of shares you own.**   Whether or not you intend to be present at the special meeting in person, please complete, date and sign the enclosed proxy card and return it in the envelope provided for that purpose. If your shares are held in an account at a brokerage firm or bank, you must instruct the brokerage firm or bank how to vote your shares. I look forward to your support.

Sincerely,

**Peter H. Coors**
**Chairman**

---

**ADOLPH COORS COMPANY**
**311 10th Street**
**Golden, Colorado 80401**
**(303) 279-6565**

**NOTICE OF SPECIAL MEETING OF SHAREHOLDERS**
**To be held on Friday, October 3, 2003**

To our Shareholders:

You are cordially invited to attend a special meeting of shareholders of Adolph Coors Company, a Colorado corporation.

When:    Friday, October 3, 2003 at 12:00 noon, local time.

Where:    The 6th Floor Auditorium in the Brewery Complex, 12th and Ford Streets, Golden, Colorado 80401.

Why:    1.   To consider and vote on a proposal to reincorporate Adolph Coors Company from the State of Colorado to the State of Delaware. The reincorporation is to be effected pursuant to an Agreement and Plan of Merger by and between Adolph Coors Company and a wholly owned subsidiary of Adolph Coors Company organized under the laws of Delaware, pursuant to which Adolph Coors Company will merge with and into the Delaware subsidiary, and the Delaware subsidiary, named Adolph Coors Company, will be the surviving corporation. Approval of the reincorporation proposal will constitute approval of the reincorporation merger and the Agreement and Plan of Merger.

2.   To transact such other business as may properly come before the meeting, including any postponement or adjournment thereof to solicit additional proxies in favor of proposal 1 above in the event that there are not sufficient votes for approval of proposal 1 at the meeting.

Shareholders of record of Adolph Coors Company at the close of business on August 25, 2003, are entitled to vote at the special meeting or any postponements or adjournments thereof.

Because the shares of our Class A common stock are not publicly traded, the holder of shares of our Class A common stock is entitled to assert dissenters' rights with respect to the reincorporation proposal under the Colorado Business Corporation Act. We do not expect the holder of our Class A common stock to exercise such rights.

Whether or not you intend to be present at the special meeting in person, we urge you to please complete, date and sign the enclosed proxy and return it in the envelope provided for that purpose, which does not require postage if mailed in the United States.

Peter H. Coors
*Chairman*

Golden, Colorado
August 29, 2003

**We urge you to complete, date and sign the enclosed proxy**
**and return it promptly in the enclosed envelope.**
**The proxy is revocable at any time prior to its use.**

---

## ADOLPH COORS COMPANY
**311 10th Street**
**Golden, Colorado 80401**
**(303) 279-6565**

---

### SPECIAL MEETING OF SHAREHOLDERS
### Friday, October 3, 2003

### PROXY STATEMENT

This proxy statement is being furnished to holders of Class A common stock, no par value per share ("Colorado Class A Stock"), and Class B common stock, no par value per share ("Colorado Class B Stock"), of Adolph Coors Company, a Colorado corporation (the "Company"), in connection with the solicitation of proxies by our board of directors for use at a special meeting of our shareholders, or any adjournment or postponement thereof, to be held at the 6th Floor Auditorium in the Brewery Complex, 12th and Ford Streets, Golden, Colorado 80401 on Friday, October 3, 2003 at 12:00 noon, local time. This proxy statement and the accompanying form of proxy are being first mailed to our shareholders on or about August 29, 2003.

The special meeting has been called for the following purposes:

1.
       To consider and vote on a proposal to reincorporate the Company from the State of Colorado to the State of Delaware. The reincorporation is to be effected pursuant to an Agreement and Plan of Merger by and between the Company and Adolph Coors Company, a Delaware corporation and a wholly owned subsidiary of the Company ("ACC Delaware"), pursuant to which the Company will merge with and into ACC Delaware, and ACC Delaware, named Adolph Coors Company, will be the surviving corporation. Approval of the reincorporation proposal will constitute approval of the reincorporation merger and the Agreement and Plan of Merger.

2.
       To transact such other business as may properly come before the meeting, including any postponement or adjournment thereof to solicit additional proxies in favor of proposal 1 above in the event that there are not sufficient votes for approval of proposal 1 at the meeting.

Only shareholders of record at the close of business on August 25, 2003 are entitled to vote at the special meeting or any adjournments or postponements thereof. At the close of business on the record date, we had 1,260,000 shares of Colorado Class A Stock and 35,108,072 shares of Colorado Class B Stock that were outstanding and entitled to vote at the special meeting. **The Colorado Class A Stock and the Colorado Class B Stock will vote as separate classes on the reincorporation proposal. Each share of Colorado Class A Stock and Colorado Class B Stock is entitled to one vote, and approval of the reincorporation proposal will require the affirmative vote of the holders of a majority of all of the votes entitled to be cast by each of the Colorado Class A Stock and the Colorado Class B Stock, voting as separate classes.**

As of the close of business on the record date, directors and officers of the Company beneficially owned 1,752,489 shares of Colorado Class B Stock, excluding 1,544,573 shares of Colorado Class B Stock that may be acquired upon the exercise of unvested options or pursuant to unvested stock grants.

This represents approximately 5% of the voting power of Colorado Class B Stock. As of the close of business on the record date, the Adolph Coors, Jr. Trust beneficially owned 1,260,000 shares of Colorado Class A Stock, representing 100% of the shares and voting power of Colorado Class A Stock, and the Adolph Coors, Jr. Trust, Keystone Financing LLC, a Delaware limited liability company whose members consist of various Coors family trusts and family members ("Keystone"), and Coors family members individually owned approximately 13,000,000 shares of Colorado Class B Stock, representing approximately 37% of the voting power of Colorado Class B Stock. These parties have informed us that they intend to vote all of the shares of Colorado Class A Stock and Colorado Class B Stock beneficially owned by them in favor of the reincorporation proposal.

Our executive offices are located at 311 10th Street, Golden, Colorado 80401, telephone (303) 279-6565. The shares represented by each valid proxy received in a timely manner will be voted in accordance with the choices you indicate on the proxy. A valid proxy will be voted "FOR" the proposals listed on the proxy card unless otherwise indicated on such proxy card. Shareholders who hold their shares in street name must provide their broker with instructions on how to vote the "street name" shares. A broker will not be permitted to vote on the reincorporation proposal without instructions. If you abstain from voting or you fail to vote, or to instruct your broker how to vote any shares held for you in your broker's name, it will have the same effect as a vote against the reincorporation proposal.

# SUMMARY TERM SHEET

*The following is only a summary of certain material information contained in this document. You should carefully review this entire document along with the annexes attached hereto to understand the proposal fully.*

- **Time and Place of Special Meeting (See cover page, Notice of Special Meeting of Shareholders):** Friday, October 3, 2003 at 12:00 noon, local time, at the 6th Floor Auditorium in the Brewery Complex, 12th and Ford Streets, Golden, Colorado 80401.

- **Record Date (See page 1):** You can vote at the special meeting if you owned common stock of Adolph Coors Company at the close of business on August 25, 2003.

- **Proposal to be Voted on (See page 2):** We are proposing to change the state of incorporation of Adolph Coors Company from Colorado to Delaware by merging into a wholly owned subsidiary of Adolph Coors Company of the same name, incorporated in Delaware. We sometimes refer to this proposal as the reincorporation proposal.

- **Our Reasons for the Reincorporation Proposal (See page 3):** The primary reason for the reincorporation from Colorado to Delaware is to obtain the benefits of Delaware's comprehensive, widely used and extensively interpreted corporation law.

- **Our Name in Connection with the Reincorporation:** Our name will not change in connection with the reincorporation; we will continue to be named "Adolph Coors Company." To distinguish between the Company as incorporated in Colorado and the Company as incorporated in Delaware, we sometimes refer in this document to the Company after the reincorporation as "ACC Delaware."

- **Effect of Approving the Reincorporation Proposal (See page 5):** If the reincorporation proposal is approved, the reincorporation merger will be consummated and Adolph Coors Company will be incorporated in Delaware. The reincorporation will not change our name, headquarters, business, jobs, management, location of any of our offices or facilities, number of employees, taxes payable to the State of Colorado, assets, liabilities or net worth. Our current directors and officers will become the directors and officers of Adolph Coors Company incorporated in Delaware upon effectiveness of the reincorporation. None of our subsidiaries will be changing their respective states or jurisdictions of incorporation in connection with the reincorporation proposal.

- **Effect of Not Approving the Reincorporation Proposal (See page 5):** If the reincorporation proposal fails to obtain the vote required for approval, the reincorporation merger will not be consummated and Adolph Coors Company will continue to operate as a corporation incorporated in Colorado.

- **What You Will Receive in the Reincorporation Merger (See page 4):** You will not need to exchange your existing stock certificates for stock certificates of Adolph Coors Company incorporated in Delaware. Each of your shares of Colorado Class B Stock automatically will be converted into one share of Class B common stock of Adolph Coors Company incorporated in Delaware, and each of your shares of Colorado Class A Stock, with respect to which dissenters' rights are not validly perfected, automatically will be converted into one share of Class A common stock of Adolph Coors Company incorporated in Delaware.

iii

- **Effect of the Reincorporation on the Trading of Your Shares of Colorado Class B Stock (See page 3):** At the effective time of the reincorporation merger, your shares of Colorado Class B Stock will become an equivalent number of shares of Class B common stock of Adolph Coors Company incorporated in Delaware and will continue to be listed for trading on the New York Stock Exchange.

- **Recommendation of the Board of Directors of the Company (See page 16):** The board of directors of the Company recommends that you vote "For" the reincorporation proposal.

- **Vote Required (See page 1):** Approval of the reincorporation proposal will require the affirmative vote of the holders of a majority of all of the votes entitled to be cast by each of the Colorado Class A Stock and the Colorado Class B Stock, voting as separate classes. Approval of the reincorporation proposal will constitute approval of the reincorporation merger and the merger agreement.

- **How to Vote Your Shares (See pages 1–2):** Complete, date and sign the enclosed proxy card and mail it in the enclosed return envelope as soon as possible, so that your shares may be represented at the special meeting. In order to assure that your vote is obtained, please send us your completed, dated and signed proxy even if you currently plan to attend the special meeting in person.

- **How to Revoke Your Proxy (See page 2):** You may revoke your proxy either by delivering to the Secretary of Adolph Coors Company a signed notice of revocation or a later dated and properly executed proxy, or by attending the meeting and voting in person.

- **Dissenters' Rights (See pages 16–17):** Because the shares of our Colorado Class B Stock are publicly traded, the holders of such shares do not have dissenters' rights in connection with the reincorporation. Because the shares of our Class A common stock are not publicly

traded, the holder of such shares is entitled to dissenters' rights under Colorado law in connection with the reincorporation. We do not expect the holder of our Class A common stock to exercise such rights.

**Voting of Shares Held in "Street Name" (See page 1):** Your broker will not be permitted, without your instructions, to vote your shares held in street name on the reincorporation proposal. You should, therefore, be sure to provide your broker with instructions on how to vote your shares. Failure to vote, or to instruct your broker how to vote any shares held for you in your broker's name, will have the same effect as a vote against the reincorporation proposal.

**Tax Effects of the Reincorporation (See page 16):** We believe that the reincorporation will be tax–free to our shareholders and you will be entitled to the same aggregate basis in the shares of Adolph Coors Company incorporated in Delaware as the aggregate basis you have in our common stock. Everyone's tax situation is different and you should consult with your personal tax advisor regarding the tax effects of the reincorporation.

**Changes in Shareholder Rights (See pages 5–15):** After completion of the reincorporation merger, the rights of all shareholders will be governed by Delaware law and by Adolph Coors Company's Delaware certificate of incorporation and bylaws. The most significant changes in shareholders' rights before and after the reincorporation are discussed in detail in "Proposal 1—Reincorporation of Adolph Coors Company as a Delaware Corporation—Comparison of Shareholder Rights Before and After the Reincorporation" on pages 5–15.

**Whom You Should Call with Questions:** If you have further questions, you may contact our proxy solicitor, Georgeson Shareholder Communications Inc. at 1–888–897–6020.

iv

---

**PROXY STATEMENT**
**Table of Contents**

Voting Matters
Record Date; Shares Outstanding and Voting Rights
Quorum and Vote Required
Proxies and Voting Procedures
Proposal 1
General
No Change in Name, Business, Jobs, Physical Location, etc.
Reasons for the Reincorporation
ACC Delaware
The Merger Agreement
Effective Time
Effect of Not Obtaining the Required Vote for Approval
Comparison of Shareholder Rights Before and After the Reincorporation
Federal Income Tax Consequences of the Reincorporation Merger
Accounting Treatment of the Reincorporation Merger
Regulatory Approval
Dissenters' Rights for the Holder of Colorado Class A Stock
Security Ownership of Directors and Executive Officers and Certain Beneficial Owners
Solicitation Procedures
Other Business
    Annex A Agreement and Plan of Merger
    Annex B Certificate of Incorporation of Adolph Coors Company
    Annex C Bylaws of Adolph Coors Company
    Annex D Colorado Business Corporation Act

---

**VOTING MATTERS**

**RECORD DATE; SHARES OUTSTANDING AND VOTING RIGHTS**

Our board of directors has fixed the close of business on August 25, 2003 as the record date for the determination of holders of shares of Colorado Class A Stock and Colorado Class B Stock entitled to receive notice of and to vote at the special meeting or any adjournments or postponements thereof. At the close of business on the record date, the Company had 1,260,000 shares of Colorado Class A Stock and 35,108,072 shares of Colorado Class B Stock that were outstanding and entitled to vote at the special meeting. An additional 377,859 shares of Colorado Class B Stock were reserved for issuance under our employee and director stock option plans as of the close of business on the record date.

Each outstanding share of Colorado Class A Stock is entitled to one vote. Although the Colorado Class B Stock is typically non–voting, Section 7–117–101 of the Colorado Business Corporation Act (the "CBCA") grants the Colorado Class B Stock the right to vote on a plan of merger such as the merger agreement entered into in connection with the reincorporation proposal. For purposes of voting on the reincorporation proposal at the special meeting, each outstanding share of Colorado Class B Stock is entitled to one vote. Approval of the reincorporation proposal will constitute approval of the reincorporation merger and the merger agreement.

## QUORUM AND VOTE REQUIRED

Under Colorado law and the Articles of Incorporation of the Company, Colorado Class A Stock and Colorado Class B Stock will vote on the reincorporation proposal separately and not as a single class.

The presence, in person or by proxy, of the holders of a majority of the outstanding shares of each of the Colorado Class A Stock and Colorado Class B Stock is necessary to constitute a quorum for each of the Colorado Class A Stock and the Colorado Class B Stock, respectively. Abstentions and broker non–votes will be considered present at the special meeting for the purpose of calculating a quorum. If there are not sufficient votes in attendance at the meeting in person or by proxy to constitute a quorum for approval of any matters to be voted upon at the special meeting, the special meeting may be adjourned to permit further solicitation of proxies in order to achieve a quorum.

Approval of the reincorporation proposal will require the affirmative vote of the holders of a majority of all of the votes entitled to be cast by each of the Colorado Class A Stock and the Colorado Class B Stock, voting as separate classes.

You may vote in favor of, abstain, or vote against the reincorporation proposal. The reincorporation proposal will only be implemented if we obtain the required shareholder vote of each of Colorado Class A Stock and Colorado Class B Stock.

## PROXIES AND VOTING PROCEDURES

All shares of Colorado Class A Stock and Colorado Class B Stock represented by properly executed proxies received prior to or at the special meeting, and not revoked, will be voted in accordance with the instructions indicated in those proxies. If no specific instructions are given on the proxy card with respect to the matter(s) to be acted upon at the special meeting, shares of Colorado Class A Stock and Colorado Class B Stock represented by a properly executed proxy will be voted "FOR" the proposals set forth on the accompanying proxy card.

Shareholders who hold their shares through nominees such as a broker or a bank (i.e., in street name) must provide their broker with instructions on how to vote the street name shares. Under the rules of the New York Stock Exchange, Inc. (the "NYSE"), if your broker holds your shares in its name, your broker may not vote your shares on the reincorporation proposal absent instruction from you. Consequently, without your voting instruction on this item, a broker non–vote will occur. Failure to vote, or to instruct your broker how to vote any shares held for you in your broker's name, will have the same effect as a vote against the reincorporation proposal.

The election inspector appointed for the meeting will tabulate votes cast in person or by proxy at the special meeting. Our transfer agent, Equiserve Trust Company, will act as inspector of election for the special meeting.

Each proxy should be completed, dated, signed and returned in the envelope provided for that purpose. Proxies properly executed and returned in a timely manner will be voted at the special meeting in accordance with the directions noted in the proxy. Any shareholder giving a proxy has the power to revoke it any time before it is voted, either by delivering to the secretary of the Company a signed notice of revocation or a later dated and properly executed proxy or by attending the special meeting and voting in person. Attendance at the meeting will not in itself revoke a proxy. Any written notice of revocation or subsequent proxy should be sent so as to be delivered to our executive offices, Attention: Secretary, or hand delivered to the Secretary of the Company at the address of our executive offices, at or before the vote to be taken at the special meeting. In order to assure that your vote is obtained, please return your properly completed, dated and executed proxy to us even if you currently plan to attend the special meeting in person.

So far as the Company's board of directors is aware, the proposals set forth in the accompanying proxy card are the only matters to be acted upon at the special meeting. If any other matters are properly brought before the special meeting, including without limitation, a motion to adjourn the special meeting to another time and/or place for the purpose of, among other things, disseminating information regarding material developments relating to the reincorporation proposal, or soliciting additional proxies in favor of approval of the reincorporation proposal, the persons whose names appear on the accompanying proxy card will vote the shares represented by such proxy upon such matters in their discretion; provided, however, that if the Company proposes to adjourn the special meeting for the purpose of soliciting additional votes in favor of the reincorporation proposal, and seeks a vote of shareholders on such adjournment, no proxy that is voted against the last proposal set forth on the proxy card (or on which a shareholder elects to abstain on such matter) will be voted in favor of any adjournment for the purpose of soliciting additional proxies if such proposal to adjourn is made by the Company. Should the special meeting be reconvened, all proxies will be voted in the same manner as they would have been voted when the special meeting was originally convened, except for proxies effectively revoked or withdrawn prior to the time proxies are voted at the reconvened special meeting.

**PROPOSAL 1**
**REINCORPORATION OF ADOLPH COORS COMPANY**
**IN THE STATE OF DELAWARE**

## GENERAL

The Company is primarily engaged in the manufacture, marketing and sale of beer and other beverage products. Its products are available throughout the United States and in more than 30 international markets in North America, Latin America, the Caribbean, Europe and Asia. Its principal subsidiaries are Coors Brewing Company, a Colorado corporation, and Coors Brewers Limited, a company organized under the laws of England and Wales.

At the special meeting shareholders of the Company will be asked to vote upon the reincorporation of the Company from the State of Colorado to the State of Delaware. The reincorporation will be effected pursuant to an Agreement and Plan of Merger, dated as of August 14, 2003 (the "merger agreement"), by and between the Company and Adolph Coors Company, a Delaware corporation of the same name and a wholly owned subsidiary of the Company. On August 14, 2003, the boards of directors of each of the companies unanimously approved the merger agreement, and subsequently the Company, as the sole stockholder of ACC Delaware, adopted the merger agreement. The merger agreement is attached as Annex A to this proxy statement.

2

## NO CHANGE IN NAME, BUSINESS, JOBS, PHYSICAL LOCATION, ETC.

The reincorporation merger will effect a change in the legal domicile of the Company and other changes of a legal nature, the most significant of which are described below under the heading "Comparison of Shareholder Rights Before and After the Reincorporation." However, the reincorporation merger will not result in any change in name, headquarters, business, jobs, management, location of any of our offices or facilities, number of employees, taxes payable to the State of Colorado, assets, liabilities or net worth (other than as a result of the costs incident to the reincorporation merger, which are immaterial). Our management, including all directors and officers, will remain the same in connection with the reincorporation merger and will assume identical positions with ACC Delaware. None of our subsidiaries will be changing their respective states or jurisdictions of incorporation in connection with the reincorporation merger. There will be no new employment agreements for executive officers or other direct or indirect interest of the current directors or executive officers of the Company in the reincorporation merger as a result of the reincorporation. Upon the effective time of the reincorporation merger, your shares of Colorado Class B Stock will be converted into an equivalent number of shares of Class B common stock of ACC Delaware and such shares will trade on the NYSE under the symbol "RKY."

## REASONS FOR THE REINCORPORATION

Delaware is a nationally recognized leader in adopting and implementing comprehensive and flexible corporate laws. The General Corporation Law of the State of Delaware (the "DGCL") is frequently revised and updated to accommodate changing legal and business needs. Almost 60% of the Fortune 500 corporations are incorporated in Delaware, and with the recent acquisition of the Carling business (subsequently named Coors Brewers Limited) in 2002, the Company became a Fortune 500 company. In addition, according to an October 2002 report in the Denver Business Journal, seven of the top ten Colorado–based companies (based on sales and number of employees) are incorporated in Delaware. With the growth of the Company and changes in the composition of our management and board of directors in recent years, we think it will be beneficial to the Company and its shareholders to obtain the benefits of Delaware corporate law.

In addition, Delaware has established a specialized court, the Court of Chancery, having exclusive jurisdiction over matters relating to the DGCL. The Chancery Court has no jurisdiction over criminal and tort cases, and corporate cases are heard by judges, without juries, who have many years of experience with corporate issues. Traditionally, this has meant that the Delaware courts are able in most cases to process corporate litigation relatively quickly and effectively. By comparison, many states, including Colorado, do not have a specialized judiciary over matters relating to corporate issues.

Delaware courts have developed considerable expertise in dealing with corporate legal issues and produced a substantial body of case law construing Delaware corporate laws, with multiple cases concerning areas that no Colorado court has considered. Because our judicial system is based largely on legal precedents, the abundance of Delaware case law should serve to enhance the relative clarity and predictability of many areas of corporate law, which should offer added advantages to the Company by allowing our board of directors and management to make corporate decisions and take corporate actions with greater assurance as to the validity and consequences of those decisions and actions.

Reincorporation from Colorado to Delaware also may make it easier to attract future candidates willing to serve on our board of directors, because many of such candidates already will be familiar with Delaware corporate law, including provisions relating to director indemnification, from their past business experience.

3

**ACC DELAWARE**

ACC Delaware, our wholly owned subsidiary, was incorporated under the DGCL on August 14, 2003 under the name "Adolph Coors Company," exclusively for the purpose of merging with the Company. The address and phone number of ACC Delaware's principal office are the same as those of the Company. Prior to the reincorporation merger, ACC Delaware will have no material assets or liabilities and will not have carried on any business.

Upon completion of the reincorporation merger, the rights of the stockholders of ACC Delaware will be governed by the DGCL and the certificate of incorporation and the bylaws of ACC Delaware (the "Delaware Certificate of Incorporation" and the "Delaware Bylaws," respectively). The Delaware Certificate of Incorporation and the Delaware Bylaws are attached to this proxy statement as Annexes B and C, respectively.

**THE MERGER AGREEMENT**

The merger agreement provides that the Company will merge with and into ACC Delaware, with ACC Delaware being the surviving corporation. Pursuant to the merger agreement, ACC Delaware will assume all assets and liabilities of the Company, including obligations under our outstanding indebtedness and contracts. Our existing board of directors and officers will become the board of directors and officers of ACC Delaware for identical terms of office. Our existing subsidiaries will become the subsidiaries of ACC Delaware.

At the effective time of the reincorporation merger, each outstanding share of Colorado Class A Stock, with respect to which dissenters' rights are not validly perfected, automatically will be converted into one share of Class A stock, par value $0.01, of ACC Delaware ("Delaware Class A Stock"), and each outstanding share of Colorado Class B Stock automatically will be converted into one share of Class B stock, par value $0.01, of ACC Delaware ("Delaware Class B Stock"). You will not have to exchange your existing stock certificates of the Company for stock certificates of ACC Delaware. However, after consummation of the reincorporation merger, any stockholder desiring a new form of stock certificate may submit the existing stock certificate to ACC Delaware's transfer agent for cancellation, and obtain a new Delaware form of certificate.

At the effective time of the merger, Delaware Class B Stock will be listed for trading on the NYSE and the Colorado Class B Stock will cease to be listed on the NYSE.

Pursuant to the reincorporation merger, ACC Delaware will assume all of the Company's obligations under the Company's 1990 Equity Incentive Plan, The Coors Stock Unit Plan, the Coors Equity Compensation Plan for Non-Employee Directors, the Deferred Compensation Plan, the Coors Savings and Investment Plan and the Coors 401(k) Savings Plan, each as amended to date (collectively, the "Company stock plans"). Each award of shares of Colorado Class B Stock under the Company stock plans will be converted into an award of shares of Delaware Class B Stock on the same terms and conditions as in effect immediately prior to the reincorporation, and each option to purchase shares of Colorado Class B Stock under the Company stock plans will be converted into an option to purchase the same number of shares of Delaware Class B Stock on the same terms and conditions as in effect immediately prior to the reincorporation. Options and rights granted under the Company stock plans in the future will be for shares of Delaware Class B Stock.

The merger agreement was unanimously approved by the board of directors of the Company and the board of directors of ACC Delaware and subsequently was adopted by the Company, as the sole stockholder of ACC Delaware. Approval of the reincorporation proposal (which constitutes approval of the merger agreement) requires the affirmative vote of the holders of a majority of all of the votes entitled to be cast by each of the Colorado Class A Stock and the Colorado Class B Stock, voting as separate classes.

4

**EFFECTIVE TIME**

If approved by the requisite vote of the holders of shares of each of Colorado Class A Stock and Colorado Class B Stock, it is anticipated that the reincorporation merger, and consequently the reincorporation, will become effective at the time set forth in each of the Articles of Merger to be filed with the Secretary of State of Colorado (together with the merger agreement) in accordance with Article 7–111–105 of the CBCA and the Certificate of Merger to be filed with the Secretary of State of Delaware in accordance with §252 of the DGCL. However, the merger agreement may be terminated and abandoned by action of the board of directors of the Company at any time prior to the effective time of the reincorporation merger, whether before or after the approval by holders of shares of Colorado Class A Stock and Colorado Class B Stock, if the board of directors of the Company determines for any reason, in its sole judgment and discretion, that the consummation of the reincorporation merger would be inadvisable or not in the best interests of the Company and its shareholders.

**EFFECT OF NOT OBTAINING THE REQUIRED VOTE FOR APPROVAL**

If the reincorporation proposal fails to obtain the requisite vote for approval, the reincorporation merger will not be consummated and the Company will continue to be incorporated in Colorado.

**COMPARISON OF SHAREHOLDER RIGHTS BEFORE AND AFTER THE REINCORPORATION**

Because of differences between the CBCA and the DGCL, as well as differences between the Company's charter and bylaws before and after the reincorporation, the reincorporation will effect some changes in the rights of the Company's shareholders. Summarized below are the most significant differences between the rights of the shareholders of the Company before and after the reincorporation, as a result of the differences among the CBCA and the DGCL, the Articles of Incorporation of the Company (the "Colorado Articles of Incorporation") and the Bylaws of the Company (the "Colorado Bylaws") and the Delaware Certificate of Incorporation and the Delaware Bylaws. In addition to the changes described below, certain technical changes have been made to the Delaware Certificate of Incorporation and Delaware Bylaws in comparison to the Colorado Articles of Incorporation and Colorado Bylaws to reflect non-material differences between the DGCL and the CBCA. The summary below is not intended to be relied upon as an exhaustive list of all differences or a complete description of the differences, and is qualified in its entirety by reference to the CBCA, the Colorado Articles of Incorporation, the Colorado Bylaws, the DGCL, the Delaware Certificate of Incorporation and the Delaware Bylaws.

| THE COMPANY | ACC DELAWARE |
|---|---|

### PAR VALUE OF CAPITAL STOCK; SURPLUS; CAPITAL

The concepts of par value, surplus and capital do not exist under the CBCA. Accordingly, none of the shares of capital stock of the Company has a par value.

Delaware law recognizes the concepts of par value, surplus and capital and all shares of the capital stock of ACC Delaware have a par value of $0.01.

### VOTING RIGHTS OF 'NON-VOTING' STOCK ON EXTRAORDINARY TRANSACTIONS

Under the CBCA, the holders of Colorado Class B Stock have the right to vote, as a separate class on, among other things, the following two extraordinary transactions: (i) a plan of merger or a plan of share exchange and (ii) a proposal to dissolve the corporation or a proposal to revoke the dissolution of the corporation. In addition, under the Colorado Articles of Incorporation, the holders of Colorado Class B Stock are entitled to vote, as a separate class, on any sale, lease, exchange or other disposition of all or substantially all of the property and assets of the Company on which the CBCA requires approval by the holders of Colorado Class A Stock, which would include a sale, lease, exchange or other disposition of all or substantially all of the property and assets of the Company to any subsidiary of the Company that is not a direct or indirect wholly owned Colorado corporation.

Under the Delaware Certificate of Incorporation, the holders of Delaware Class B Stock retain the same class voting rights that such holders have under the CBCA, except as follows: (i) the right to vote on a "share exchange" was modified to reflect that Delaware does not currently have an equivalent to the Colorado statutory "share exchange" and that to the extent that the DGCL is amended in the future to contain the concept of a statutory share exchange, the holders of Delaware Class B Stock will have a right to vote on a share exchange, (ii) the right to vote on "any sale, lease, exchange or other disposition of all or substantially all of the property and assets" has been modified to delete the words "or other disposition" to conform to the statutory language of the DGCL and (iii) holders of Class B Stock would not have the right to vote on any sale, lease or exchange of all or substantially all of the property and assets of ACC Delaware to an entity wholly owned by ACC Delaware.

As permitted by the CBCA, the Company previously adopted an amendment to the Colorado Articles of Incorporation in May 2001 changing the vote otherwise required by the CBCA in connection with the above actions from two-thirds of the votes entitled to be cast on the matter by each voting group entitled to vote to a majority of the voting power of the votes of each voting group entitled to be cast on the matter.

Under the Delaware Certificate of Incorporation, the vote required for actions on which both the Delaware Class A Stock and the Delaware Class B Stock have the right to vote is the affirmative vote of the holders of a majority of the shares of each class entitled to vote thereon, voting as a separate class and not jointly.

### VOTE REQUIRED FOR ELECTION OF DIRECTORS

The Colorado Bylaws provide that a majority of the shares entitled to vote for directors is required in order to elect a director.

The Delaware Bylaws provide that a plurality of the votes of the shares present in person or represented by proxy at a meeting and entitled to vote for directors is required in order to elect a director.

6

### ACTION BY SHAREHOLDERS WITHOUT A MEETING

As required by the CBCA, the Colorado Bylaws provide that (i) any action required or permitted to be taken at a shareholders' meeting may be taken without a meeting if all of the shareholders entitled to vote thereon consent to such action in writing and (ii) action by written consent is to be effective as of the date the last writing necessary to effect the action is received by the secretary of the Company, unless all of the written consents necessary to effect the action specify a later date as the effective date of the action.

Consistent with the DGCL which, unlike the CBCA, permits stockholder action to be taken by less than unanimous written consent, the Delaware Bylaws provide that any action that could be taken at an annual or special meeting of stockholders may be taken without a meeting, without prior notice and without a vote if written consents are signed by the holders of outstanding stock having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all shares entitled to vote thereon were present and voted. In addition, consistent with DGCL requirements, the Delaware Bylaws contain the following two provisions which are not provided for by the Colorado Bylaws: (i) in order to be effective, all written consents must be delivered to ACC Delaware within 60 days of the earliest dated consent delivered to ACC Delaware, and (ii) prompt notice of the action by written consent must be given to those stockholders who have not consented in writing and who, if the action had been taken at a meeting, would have been entitled to notice of the meeting if the record date for such meeting had been the date that written consents signed by a sufficient number of stockholders to take the action were delivered to ACC Delaware.

### REMOVAL OF DIRECTORS

As required by the CBCA, the Colorado Articles of Incorporation and Colorado Bylaws provide that any director may be removed, with or without cause, only by the holders of Colorado Class A Stock and only if the votes cast in favor of removal exceed the votes cast against removal.

The Delaware Certificate of Incorporation and Delaware Bylaws provide the same right of removal of directors as the Colorado Articles of Incorporation and Colorado Bylaws except that the vote required of the holders of Delaware Class A Stock for removal was modified, as required by the DGCL, to a majority vote of the shares of Delaware Class A Stock then entitled to vote at an election of directors.

7

INDEMNIFICATION

The Colorado Bylaws require that the Company indemnify the following persons, only if such persons acted in good faith and in a manner such persons reasonably believed to be in or not opposed to the best interests of the Company, and with respect to any criminal proceeding, had no reasonable cause to believe the person's conduct was unlawful: (i) directors, except with respect to a personal benefit improperly received by such directors and (ii) officers and employees, except with respect to matters in which such officers and employees are adjudged to be liable for their own gross negligence or willful misconduct and except with respect to a personal benefit improperly received by such officers and employees. In addition, as required by the CBCA, the Company is required to give shareholders, with or before the notice for the next shareholders' meeting, a notice of all indemnification of, or advancement of expenses to, directors of the Company in connection with a proceeding by or in the right of the corporation.

The Delaware Bylaws provide that the officers and directors of ACC Delaware are to be indemnified to the fullest extent permitted by Delaware law. The Delaware Bylaws do not contain the following provisions that were expressly required by Colorado law (but not by Delaware law): (i) limiting indemnification of a director or officer with respect to a personal benefit improperly received or (ii) the requirement of a notice to stockholders in the event of indemnification of, or advancement of expenses to, directors of the corporation in connection with a proceeding by or in the right of the corporation. In addition, the Delaware Bylaws do not expressly prohibit indemnification of an officer or employee if the officer or employee is adjudged to be liable for gross negligence or willful misconduct or require that ACC Delaware indemnify employees of ACC Delaware, but instead permit ACC Delaware to indemnify employees when and as authorized by appropriate corporate action using applicable Delaware standards. It should be noted, however, that the Delaware Bylaws are otherwise similar to the Colorado Bylaws with respect to mandatory indemnification by ACC Delaware of directors and officers, and that all such persons must act in good faith and in a manner such persons reasonably believed to be in or not opposed to the best interests of ACC Delaware, and with respect to any criminal proceeding, had no reasonable cause to believe the person's conduct was unlawful.

8

In addition, the Delaware Bylaws contain the following provisions not currently contained in the Colorado Bylaws: (i) mandatory reimbursement of expenses of directors and officers, upon receipt of an undertaking by such director and officer to repay all amounts advanced if such director and officer is ultimately determined not to be entitled to indemnification by ACC Delaware, (ii) a clarification that any repeal or amendment of the indemnification provisions contained in the Delaware Bylaws will not adversely affect any right or protection in respect of any act or omission occurring prior to the time of such repeal or modification, and (iii) ACC Delaware will provide indemnification to directors and officers with respect to proceedings commenced by the director or officer only if commencement of such proceeding has been authorized by the board of directors of ACC Delaware.

## NOTICE OF ADJOURNMENTS AND OTHER ACTIONS

Consistent with the CBCA, the Colorado Bylaws require that (i) if the authorized shares of the Company are to be increased, at least 30 days' notice shall be given to the shareholders of record and (ii) if a shareholder meeting is adjourned for more than 120 days (in which case a new record date is to be fixed by the board of directors of the Company), notice shall be given to record holders as of the new record date.

The Delaware Bylaws provide for the same notice requirements as the Colorado Bylaws, except that the set notice period for an increase in the authorized shares was eliminated because Delaware does not require a set notice period notice and the 120−day notice in the case of adjournments was changed to a 30−day notice to reflect Delaware law.

9

## RECORD DATE

Consistent with the CBCA, the Colorado Bylaws provide that with respect to all actions requiring the fixing of a record date (including distributions) other than a shareholder action by written consent, the record date is not to be more than 70 days before the meeting or action requiring a determination of shareholders. With respect to a shareholder action by written consent, the record date is the date on which a writing upon which the action is taken is first received by the Company.

Consistent with the DGCL, the Delaware Bylaws differ with respect to the Colorado Bylaws in the following ways: (i) the Delaware Bylaws provide that the record date is not to precede the date upon which the resolution fixing the record date is adopted by the board of directors, (ii) when applicable, the record date is not to be more than 60 days before the meeting or action requiring determination of stockholders, except in the case of an action by written consent, the record date for which must not be more than 10 days after the date upon which the resolution fixing the record date is adopted by the board of directors, and (iii) in the case of a stockholder meeting, in addition to the maximum limit of the record date being not more than 60 days before the meeting, a minimum limit applies to the record date of not less than 10 days before the meeting.

## AMENDMENT TO THE ARTICLES (CERTIFICATE) OF INCORPORATION

Under the CBCA, amendments to the Colorado Articles of Incorporation, other than ministerial amendments authorized by the directors without shareholder action, may be proposed by the board of directors of the Company or by the holders of shares representing at least 10% of all of the votes entitled to be cast on the amendment. The board of directors of the Company must recommend the amendment to the shareholders, unless the amendment is being proposed by the shareholders, or unless the board of directors determines that because of a conflict of interest or other special circumstances it should make no recommendation and communicates the basis for its determination to the shareholders with the amendment.

Under the DGCL, stockholders are not entitled to enact, without any action taken by the board of directors, an amendment to the Delaware Certificate of Incorporation. Amendments to the Delaware Certificate of Incorporation generally require that the board of directors adopt a resolution setting forth the amendment, declaring its advisability and submitting it to a vote of the stockholders.

## AMENDMENT TO THE BYLAWS

The Colorado Bylaws provide that the board of directors may amend, restate or repeal the bylaws of the Company by the affirmative vote of two-thirds of the full board.

The Delaware Bylaws provide that the board of directors of ACC Delaware may amend, restate or repeal the bylaws of ACC Delaware at any meeting by a majority of the directors present at a meeting at which a quorum is present.

10

PREFERRED STOCK

The Colorado Articles of Incorporation authorize the board of directors of the Company to issue shares of preferred stock in one or more series, and to fix for each series the number, dividend rights, conditions of redemption, rights on dissolution, voting rights (but only to the limited extent the preferred stock is granted the right to vote by the CBCA), conversion privileges and other rights and limitations to the extent permitted by the CBCA. No shares of preferred stock are currently issued or outstanding.

The Delaware Certificate of Incorporation contains a similar authorization for the board of directors with respect to preferred stock; however, the rights and limitations of the preferred stock are to the fullest extent permitted by Delaware law. Accordingly, the Board is permitted to fix whether or not the holders of shares of a series of preferred stock will have voting rights and the terms of those voting rights, in addition to the voting rights provided by Delaware law. No shares of preferred stock will be issued in connection with the reincorporation.

The authorized shares of preferred stock for both the Company today, and for ACC Delaware after the reincorporation, may be used for any proper corporate purpose approved by the board of directors. Their availability enables the board of directors to act with flexibility and dispatch when favorable capital raising or acquisition opportunities arise which permit the use of equity securities other than common stock. Under certain circumstances, the preferred stock could have anti–takeover effects. The terms of the preferred stock, and in the case of ACC Delaware, the ability of the board of directors to give the preferred stock a wider array of voting rights, could discourage or thwart persons seeking to effect a takeover or otherwise gain control of the Company or ACC Delaware. The use of the preferred stock for such a purpose, however, is unlikely and unnecessary as long as Adolph Coors, Jr. Trust continues to own all of the shares of Class A common stock.

11

## DISSOLUTION

Under the CBCA, the board of directors of the Company may submit a proposal of voluntary dissolution of the Company to the shareholders of the Company entitled to vote thereon. The board of directors of the Company must recommend such dissolution to the shareholders as part of the dissolution proposal, unless the board of directors of the Company determines that because of a conflict of interest or other special circumstances it should make no recommendation and communicates the basis for its determination to the shareholders.

ACC Delaware will be subject to the same voting requirement with respect to a dissolution of ACC Delaware as is the Company but only if the board of directors of ACC Delaware initially approves the dissolution of ACC Delaware. If the board of directors does not approve such dissolution, the stockholder vote required for approving a dissolution of ACC Delaware is a unanimous written consent of all stockholders entitled to vote thereon.

## DIVIDENDS

The Colorado Articles of Incorporation permit the board of directors of the Company to declare dividends from funds legally available for that purpose. This provision is subject to the CBCA requirement that the payment of distributions is generally permissible unless after giving effect to the dividend or distribution, the corporation would be unable to pay its debts as they become due in the usual course of business, or if the total assets of the corporation would be less than the sum of its total liabilities plus the amount that would be needed, if the corporation were dissolved at the time the dividend was paid, to satisfy the preferential rights of shareholders whose preferential rights upon dissolution of the corporation are greater than those of the shareholders receiving the dividend. Because Colorado law dispenses with the concepts of par value of shares as well as statutory definitions of capital and surplus, the above limitation is the only limitation with respect to the declaration of dividends by the board of directors of the Company.

The Delaware Certificate of Incorporation contains the same provision with respect to declaration of dividends as the Colorado Articles of Incorporation. However, unlike in Colorado, the concepts of par value, capital and surplus are retained in Delaware. The DGCL defines surplus as the excess of the net assets of the corporation over the capital of the corporation. Unless the corporation's board of directors determines otherwise, the capital of the corporation is equal to the aggregate par value of the shares of stock having par value. Therefore, the provision with respect to dividends in the Delaware Certificate of Incorporation is subject to the DGCL requirement that permits a corporation to declare and pay dividends out of surplus or, if there is no surplus, out of the net profits for the fiscal year in which the dividend is declared and/or for the preceding fiscal year.

## CORPORATE RECORDS (FORM OF RECORDS)

Under the CBCA, the Company is required to keep as permanent records minutes of all meetings of the shareholders and the board of directors of the Company, a record of all actions taken by the shareholders or the board of directors of the Company without a meeting, a record of all actions taken by a committee of the board of directors of the Company, and a record of all waivers of notices of meetings of shareholders and of the board of directors of the Company or any committee of the board of directors. In addition, the CBCA requires the Company to keep specific records at its principal office, including the Colorado Articles of Incorporation, the Colorado Bylaws and the minutes of all shareholders' meetings, and records of all action taken by shareholders without a meeting, for the past three years.

Consistent with the DGCL, the Delaware Certificate of Incorporation provides that any records maintained by ACC Delaware in the regular course of its business, including its stock ledger, books of account and minute books, may be kept on, or by means of, or be in the form of, any information storage device or method, provided that the records so kept can be converted into clearly legible paper form within a reasonable time. The DGCL does not require that ACC Delaware keep any specific records at any particular place or for a specific period of time.

## EXAMINATION OF BOOKS AND RECORDS

Under the CBCA and the Colorado Bylaws, any record or beneficial shareholder of the Company may, upon 5 days' written demand, inspect certain records, including shareholder actions, minutes of shareholder meetings, communications with shareholders and recent financial statements. In addition, upon 5 days' written demand, any such shareholder may inspect the list of shareholders and certain other corporate records, including minutes of the meetings of board of directors of the Company, if the shareholder either (i) has been a shareholder for at least 3 months or (ii) is a shareholder of at least 5% of all outstanding shares of any class of shares when the demand is made, provided that the demand is made in good faith for a proper purpose reasonably related to such person's interests as a shareholder.

Under the DGCL, the inspection rights of the stockholders of ACC Delaware are the same as under Colorado law, except: (i) there is no requirement that a stockholder has been a stockholder for at least 3 months or is a stockholder of at least 5% of all outstanding shares of any class of shares when the demand is made, and (ii) if ACC Delaware refuses to permit inspection or does not reply to the demand within 5 business days after the demand has been made, the stockholder may apply to the Court of Chancery for an order to compel such inspection.

13

## BUSINESS COMBINATION STATUTE

The CBCA does not contain any business combination provisions.

Section 203 of the DGCL provides for a three-year moratorium on certain business combinations with "interested stockholders" (generally, persons who own, individually or with or through other persons, 15% or more of the corporation's outstanding voting stock). However, the DGCL permits a corporation to opt out of the restrictions imposed by Section 203 and ACC Delaware has opted out of Section 203 of the DGCL in its Delaware Certificate of Incorporation.

## DISSENTERS' (APPRAISAL) RIGHTS

Under the CBCA, shareholders are entitled to exercise dissenters' rights in the event of certain mergers, share exchanges, sales, leases, exchanges or other dispositions of all or substantially all of the property of the corporation. Shareholders also may dissent in the case of a reverse stock split that reduces the number of shares owned to a fraction of a share or to scrip if such scrip is to be acquired for cash or voided.

The DGCL provides appraisal rights only in the case of a stockholder objecting to certain mergers or consolidations. Thus, under the DGCL, stockholders have no appraisal rights in a sale, lease or exchange of all or substantially all of a corporation's assets.

Dissenters' rights in Colorado are available to both record holders and beneficial holders. Only the Adolph Coors, Jr. Trust will be able to exercise dissenters' rights in connection with the reincorporation merger, and the Company does not expect Adolph Coors, Jr. Trust to exercise such rights.

Appraisal rights in Delaware are available to record holders only.

14

## DERIVATIVE ACTIONS

Under the CBCA, if a court finds that a derivative action was brought without reasonable cause, the court may require the plaintiff to pay the defendants' reasonable expenses attributable to the defense of such action, exclusive of attorney's fees. In addition, the Company may, at any time before final judgment, require the plaintiff to give a security for the costs and reasonable expenses which may be incurred by the Company or other parties named as defendants in the defense of such action, but not including attorney's fees, if the shareholder instituting the action holds less than 5% of the outstanding shares of any class of the Company, unless the shares so held have a market value in excess of $25,000. If the court then finds that the action was instituted without cause, the corporation may have recourse to such security in the amount determined by the court.

The DGCL's requirements for bringing derivative actions are substantially similar to those contained in the CBCA, except that the DGCL does not impose (i) the reasonable cause requirement and (ii) the security requirement imposed by the CBCA.

## REACQUISITION OF STOCK BY THE CORPORATION

Under the CBCA, the Company may acquire its own shares, subject to certain limitations, and except in certain circumstances, such shares will constitute authorized but unissued shares.

The DGCL requires that (i) all repurchases of shares by ACC Delaware be made out of surplus and (ii) a purchase of shares redeemable at the option of ACC Delaware not be made for more than the price at which the shares may then be redeemed.

Under the DGCL, shares of stock issued by ACC Delaware as fully paid and afterwards reacquired by ACC Delaware without applying "capital" in connection with such reacquisition have the status of "treasury shares" if the board of directors does not by resolution retire the shares reacquired. Treasury shares differ from stock that is authorized and unissued in that treasury shares that have a par value are freed from the requirement that they must be sold at not less than par.

## FRANCHISE TAX

There is no franchise tax in Colorado.

The DGCL requires corporations to pay franchise tax annually (current maximum is $165,000 a year).

15

## FEDERAL INCOME TAX CONSEQUENCES OF THE REINCORPORATION MERGER

The following discussion addresses the material federal income tax consequences of the reincorporation merger that are applicable to holders of shares of Colorado Class A Stock and Colorado Class B Stock. The discussion does not deal with all federal income tax consequences that may be relevant to a particular holder of shares of Colorado Class A Stock or Colorado Class B Stock, or any foreign, state or local tax considerations. **Accordingly, holders of Colorado Class A Stock and Colorado Class B Stock are urged to consult their own tax advisors as to the specific federal, foreign, state and local tax consequences to them as a result of the reincorporation merger.**

The following discussion is based upon the Internal Revenue Code of 1986, as amended (the "Code"), applicable Treasury Regulations, judicial authority and administrative rulings and practice, all as of the date hereof. The Company has not and will not request a ruling from the Internal Revenue Service regarding the tax consequences of the reincorporation merger.

The Company believes that the reincorporation merger and the resulting reincorporation of the Company from Colorado to Delaware will constitute a tax–free reorganization within the meaning of Section 368(a) of the Code. Accordingly, for federal income tax purposes: (i) no gain or loss will be recognized by the holders of shares of Colorado Class A Stock and Colorado Class B Stock upon consummation of the reincorporation merger; (ii) the aggregate tax basis of shares of Delaware Class A Stock and Delaware Class B Stock received in the reincorporation merger will be the same as the aggregate tax basis of shares of Colorado Class A Stock and Colorado Class B Stock exchanged in the reincorporation merger; and (iii) the holding period of the shares of Delaware Class A Stock and Delaware Class B Stock received in the reincorporation merger will include the period for which shares of Colorado Class A Stock and Colorado Class B Stock were held.

## ACCOUNTING TREATMENT OF THE REINCORPORATION MERGER

The reincorporation merger will be accounted for as a reverse merger whereby, for accounting purposes, the Company will be considered the accounting acquiror and ACC Delaware will be treated as the successor to the historical operations of the Company. Accordingly, the historical financial statements of the Company, which previously have been reported to the Commission on forms 10–K and 10–Q, among others, as of and for all periods through the date of this proxy statement, will be treated as the financial statements of ACC Delaware.

## REGULATORY APPROVAL

To the Company's knowledge, the only required regulatory or governmental approval or filing necessary in connection with the consummation of the reincorporation merger will be the filing of the Articles of Merger (including the merger agreement) with the Secretary of State of Colorado and the filing of the Certificate of Merger with the Secretary of State of Delaware.

**YOUR BOARD OF DIRECTORS RECOMMENDS THAT YOU
VOTE "FOR" THE REINCORPORATION PROPOSAL (PROPOSAL 1).**

## DISSENTERS' RIGHTS FOR THE HOLDER OF COLORADO CLASS A STOCK

Because shares of Colorado Class B Stock are listed on the NYSE and are held of record by more than 2,000 shareholders, Colorado law does not provide for dissenters' rights of appraisal for holders of Colorado Class B Stock in connection with the reincorporation merger. Adolph Coors, Jr. Trust as the record holder (and for purposes of Colorado law, beneficial holder) of all of the issued and outstanding shares of Colorado Class A Stock is entitled to dissenters' rights of appraisal under Colorado law in connection with the reincorporation merger. Summarized below are the dissenters' rights of the holder of Colorado Class A Stock and the statutory procedures required to be followed in order to perfect

such rights. A copy of Article 113 of the CBCA, which is the provision governing dissenters' rights under the CBCA, is attached to this proxy statement as Annex D. The following summary is qualified in its entirety by reference to Article 113 of the CBCA, and such Article should be reviewed carefully by the holder of Colorado Class A Stock. Failure to comply strictly with all conditions for asserting rights as a dissenting shareholder, including the time limits, will result in loss of such dissenters' rights by the dissenting shareholder.

A record holder of Colorado Class A Stock may assert dissenters' rights as to fewer than all of the shares of Colorado Class A Stock registered in such record holder's name only if the record holder dissents and does not vote in favor of the reincorporation proposal with respect to all shares of Colorado Class A Stock beneficially owned by any one person and causes the Company to receive written notice which states such dissent and the name, address and federal taxpayer identification number, if any, of each beneficial holder on whose behalf the record holder asserts dissenters' rights.

A beneficial holder of Colorado Class A Stock may assert dissenters' rights as to the shares held on such beneficial shareholder's behalf only if the beneficial holder causes the Company to receive the record holder's written consent to the dissent not later than the time the beneficial holder asserts dissenters' rights and the beneficial holder dissents and causes the record holder to refrain from voting in favor of the reincorporation proposal with respect to all shares of Colorado Class A Stock owned by the beneficial holder.

If the holder of Colorado Class A Stock wishes to dissent, it must send to the Company, before the vote on the reincorporation merger is taken, written notice of its intention to demand payment for its shares of Colorado Class A Stock if the reincorporation merger is effectuated. Neither a vote against the reincorporation proposal nor any proxy directing such vote, nor abstention from voting on the reincorporation proposal will satisfy the requirement for a written notice to the Company. All such notices should be mailed to Adolph Coors Company, 311 10th Street, Golden, Colorado 80401, Attention: Corporate Secretary.

If the reincorporation merger is authorized at the special meeting, then, within ten days thereafter, we will provide to the holder of Colorado Class A Stock, if still entitled to demand payment, a written notice containing all information required by Colorado law. The dissenting holder entitled to demand payment must, in accordance with the provisions of Article 113 of the CBCA, demand payment and deposit share certificates representing such dissenting holder's shares of Colorado Class A Stock.

We will pay to the holder of Colorado Class A Stock, if eligible, and if it has validly exercised its dissenters' rights under Article 113 of the CBCA, the amount we estimate is the fair value of the dissenting holder's shares plus interest at the rate provided in Article 113 of the CBCA from the effective date of the reincorporation until the payment date. We also will provide the information required by Article 113 of the CBCA to the dissenting owner of Colorado Class A Stock entitled to receive payment.

If the holder of shares of Colorado Class A Stock has validly exercised dissenters' rights under Article 113 of the CBCA and believes that (i) the amount offered or paid is less than the fair value of such holder's shares or that the interest was incorrectly calculated, (ii) we have failed to make the payment within sixty days of the deadline for receiving payment demand, or (iii) we do not return deposited certificates when required to do so, the dissenting holder may give notice to us of such holder's estimate of the fair market value of such holder's shares and the amount of interest due and demand payment of such estimate, less any payment previously made by us, or the dissenting holder may reject our offer and demand payment of the fair value of the shares and interest due. If a dissenting holder's demand for payment remains unresolved, then we may, within sixty days of receipt thereof, commence a proceeding and petition the court to determine the fair value of such dissenting holder's shares and interest due thereon. If we do not timely make such a request, we must pay the dissenting holder the amount set forth in such holder's demand for payment.

17

## SECURITY OWNERSHIP OF DIRECTORS AND EXECUTIVE OFFICERS AND CERTAIN BENEFICIAL OWNERS

The following table sets forth information as of August 1, 2003, as to the beneficial ownership of Colorado Class A Stock and Colorado Class B Stock by (i) beneficial owners of more than 5% of each of Colorado Class A Stock and Colorado Class B Stock, (ii) each director, our named executive officers and (iii) all directors and executive officers as a group. Unless otherwise indicated, the person named below has sole voting and investment power and that person's address is c/o Adolph Coors Company, 311 10th Street, P.O. Box 4030, Golden, Colorado 80401. Shares of Colorado Class B Stock subject to options currently exercisable or exercisable within 60 days following the date of the table are deemed outstanding for computing the share ownership and percentage of the person holding such options, but are not deemed outstanding for computing the percentage of any other person.

| NAME OF BENEFICIAL OWNER | AMOUNT AND NATURE OF BENEFICIAL OWNERSHIP(1) | | | |
| | NUMBER OF COLORADO CLASS A SHARES(2) | PERCENT OF CLASS(1) | NUMBER OF COLORADO CLASS B SHARES(2) | PERCENT OF CLASS(1) |
|---|---|---|---|---|
| Adolph Coors, Jr. Trust, William K. Coors, Jeffrey H. Coors, Peter H. Coors, J. Bradford Coors and Melissa E. Coors, trustees | 1,260,000(3) | 100% | 1,470,000(3) | 4.2% |
| Keystone Financing LLC | 0 | 0.0% | 9,252,994(4) | 26.4% |
| Peter H. Coors | 0(5) | 0.0% | 574,446(5) | 1.6% |
| W. Leo Kiely III | 0 | 0.0% | 409,946(6) | 1.2% |
| Charles M. Herington | 0 | 0.0% | 670 | * |
| Franklin W. Hobbs | 0 | 0.0% | 1,278(7) | * |
| Pamela H. Patsley | 0 | 0.0% | 3,372(7) | * |
| Wayne R. Sanders | 0 | 0.0% | 7,106(7) | * |
| Albert C. Yates | 0 | 0.0% | 2,345(7) | * |
| Ronald G. Askew | 0 | 0.0% | 23,332(8) | * |
| Carl L. Barnhill | 0 | 0.0% | 120,697(9) | * |
| Peter M.R. Kendall | 0 | 0.0% | 91,703(10) | * |
| Timothy V. Wolf | 0 | 0.0% | 106,666(11) | * |
| All directors and executive officers as a group, including persons named above (22 persons) | 0 | 0.0% | 1,752,489 | 4.8% |

\*    Less than 1%.

(1)    Except as set forth above and based solely upon reports of beneficial ownership required to be filed with the Securities and Exchange Commission (the "Commission") pursuant to Rule 13d-1 under the Securities Exchange Act of 1934, as amended (the "Exchange Act"), we do not believe that any other person beneficially owned, as of August 1, 2003, greater than 5% of the outstanding Colorado Class A Stock or Colorado Class B Stock.

(2)    Unless otherwise noted, the indicated owner has sole voting power and sole investment power.

(3)    Peter H. Coors disclaims beneficial ownership of the shares held by the Adolph Coors, Jr. Trust.

(4)    Keystone is a Delaware limited liability company whose members consist of various Coors family trusts and family members, including the Adolph Coors, Jr. Trust. Keystone is a manager-managed company, of which William Coors and Jeffrey Coors are the sole managers.

(5)    This number does not include 1,260,000 shares of Colorado Class A Stock or 1,470,000 shares of Colorado Class B Stock owned by the Adolph Coors, Jr. Trust, as to all of which Peter H. Coors

18

disclaims beneficial ownership. This number does not include an additional aggregate of 487,100 shares held by a number of other trusts that hold the shares for the benefit of certain Coors family members, as to all of which Peter H. Coors disclaims beneficial ownership. Peter H. Coors is a trustee or beneficiary of certain of these trusts. The Commission does not require disclosure of these shares. This number does include 5,680 shares held in the names of Peter H. Coors' wife and some of his children, as to which he disclaims beneficial ownership. This number includes options to purchase 430,128 shares of Colorado Class B Stock. If Peter H. Coors were to be attributed beneficial ownership of the shares held by these trusts, he would beneficially own 100% of Colorado Class A Stock and 2,531,546 shares of Colorado Class B Stock, or 1.6%.

(6)    This number included options currently exercisable or exercisable within 60 days to purchase 397,005 shares of Colorado Class B Stock.

(7)    This number includes options to purchase 1,000 shares of Colorado Class B Stock. These options were issued under our 1991 Equity Compensation Plan for Non-Employee directors. Vesting in the options occurs at the end of the one-year term for outside directors.

(8)

(9)    This number includes currently exercisable options to purchase 13,334 shares of Colorado Class B Stock.

(10)   This number includes currently exercisable options to purchase 115,821 shares of Colorado Class B Stock.

(11)   This number includes options to purchase 91,664 shares of Colorado Class B Stock currently exercisable.

This number includes options to purchase 104,226 shares of Colorado Class B Stock currently exercisable.

## SOLICITATION PROCEDURES

In addition to solicitation by mail, we may solicit proxies by telephone, facsimile, or by personal interviews. The cost of soliciting proxies will be paid by the Company. Georgeson Shareholder Communications Inc. has been retained by the Company to assist in the solicitation of proxies in exchange for a fee of $15,000 plus reimbursement of reasonable expenses. Our directors, officers and employees engaged in such solicitation will receive no separate compensation for these services. Brokerage houses, nominees, fiduciaries and other custodians will be requested to forward soliciting materials to the beneficial owners of shares held of record by them and will be reimbursed for their reasonable expenses in doing so.

## OTHER BUSINESS

We do not anticipate that any other matters will be brought before the special meeting. However, if any additional matters shall properly come before the meeting, it is intended that the persons authorized under proxies may, in the absence of instructions to the contrary, vote or act on those matters in accordance with their best judgment.

BY THE BOARD OF DIRECTORS

**ANNITA M. MENOGAN**
**Secretary**

Golden, Colorado
August 29, 2003

19

## AGREEMENT AND PLAN OF MERGER

This AGREEMENT AND PLAN OF MERGER (hereinafter called this "*Agreement*"), dated as of August 14, 2003, is entered into between Adolph Coors Company, a public company incorporated in the State of Colorado (the "*Company*") and Adolph Coors Company, a Delaware corporation and a wholly owned subsidiary of the Company ("*ACC Delaware*").

### RECITALS

WHEREAS, the board of directors of each of the Company and ACC Delaware deems it advisable, upon the terms and subject to the conditions herein stated, that the Company be merged with and into ACC Delaware, and that ACC Delaware be the surviving corporation (the "*Reincorporation Merger*"); and

WHEREAS, the Company will submit this Agreement for approval by separate class vote of (a) the holders of shares of Class A common stock, without par value, of the Company ("*Colorado Class A Stock*") and (b) the holders of shares of Class B common stock, without par value, of the Company ("*Colorado Class B Stock*").

NOW, THEREFORE, in consideration of the premises and of the agreements of the parties hereto contained herein, the parties hereto agrees as follows:

### ARTICLE 1

### THE REINCORPORATION MERGER; EFFECTIVE TIME

1.1.   *The Reincorporation Merger.*   Upon the terms and subject to the conditions set forth in this Agreement, at the Effective Time (as defined in Section 1.2), the Company shall be merged with and into ACC Delaware whereupon the separate existence of the Company shall cease. ACC Delaware shall be the surviving corporation (sometimes hereinafter referred to as the "*Surviving Corporation*") in the Reincorporation Merger and shall continue to be governed by the laws of the State of Delaware. The Reincorporation Merger shall have the effects specified in the General Corporation Law of the State of Delaware, as amended (the "*DGCL*") and in the Colorado Business Corporation Act, as amended (the "*CBCA*") and the Surviving Corporation shall succeed, without other transfer, to all of the assets and property (whether real, personal or mixed), rights, privileges, franchises, immunities and powers of the Company, and shall assume and be subject to all of the duties, liabilities, obligations and restrictions of every kind and description of the Company, including, without limitation, all outstanding indebtedness of the Company.

1.2.   *Effective Time.*   Provided that the condition set forth in Section 5.1 has been fulfilled or waived in accordance with this Agreement and that this Agreement has not been terminated or abandoned pursuant to Section 6.1, on the date of the closing of the Reincorporation Merger, the Company and ACC Delaware shall cause Articles of Merger to be executed and filed with the Secretary of State of Colorado (the "*Colorado Articles of Merger*") and a Certificate of Merger to be executed and filed with the Secretary of State of Delaware (the "*Delaware Certificate of Merger*"). The Reincorporation Merger shall become effective upon the date and time specified in the Colorado Articles of Merger and the Delaware Certificate of Merger (the "*Effective Time*").

A–1

ARTICLE II

CHARTER AND BYLAWS OF THE SURVIVING CORPORATION

2.1.    *The Certificate of Incorporation.*    The certificate of incorporation of ACC Delaware in effect at the Effective Time shall be the certificate of incorporation of the Surviving Corporation, until amended in accordance with the provisions provided therein or applicable law.

2.2.    *The Bylaws.*    The bylaws of ACC Delaware in effect at the Effective Time shall be the bylaws of the Surviving Corporation, until amended in accordance with the provisions provided therein or applicable law.

ARTICLE III

OFFICERS AND DIRECTORS OF THE SURVIVING CORPORATION

3.1.    *Officers.*    The officers of the Company at the Effective Time shall, from and after the Effective Time, be the officers of the Surviving Corporation, until their successors have been duly elected or appointed and qualified or until their earlier death, resignation or removal.

3.2.    *Directors.*    The directors and the members of the various committees of the board of directors of the Company at the Effective Time shall, from and after the Effective Time, be the directors and members of such committees of the Surviving Corporation, until their successors have been duly elected or appointed and qualified or until their earlier death, resignation or removal.

ARTICLE IV

EFFECT OF MERGER ON CAPITAL STOCK

4.1.    *Effect of Merger on Capital Stock.*    At the Effective Time, as a result of the Reincorporation Merger and without any action on the part of the Company, ACC Delaware or the shareholders of the Company:

(a)    Each share of Colorado Class A Stock (other than shares ("*Dissenting Shares*") that are owned by shareholders ("*Dissenting Shareholders*") exercising dissenters' rights pursuant to Article 113 of the Colorado Business Corporation Act, as amended (the "*CBCA*")), issued and outstanding immediately prior to the Effective Time shall be converted (without the surrender of stock certificates or any other action) into one fully paid and non-assessable share of Class A common stock, par value $0.01, of ACC Delaware ("*Delaware Class A Stock*"), with the same rights, powers and privileges as the shares so converted and all shares of Colorado Class A Stock shall be cancelled and retired and shall cease to exist.

(b)    Each share of Colorado Class B Stock, issued and outstanding immediately prior to the Effective Time shall be converted (without the surrender of stock certificates or any other action) into one fully paid and non-assessable share of Class B common stock, par value $0.01, of ACC Delaware ("*Delaware Class B Stock*"), with the same rights, powers and privileges as the shares so converted and all shares of Colorado Class B Stock shall be cancelled and retired and shall cease to exist.

(c)    Each option, warrant, purchase right, unit or other security of the Company issued and outstanding immediately prior to the Effective Time shall be (i) converted into and shall be an identical security of ACC Delaware, and (ii) in the case of securities to acquire Colorado Class B Stock, converted into the right to acquire the same number of shares of Delaware Class B Stock as the number of shares of Colorado Class B Stock that were acquirable pursuant to such option, warrant, purchase right, unit or other security. The same number of shares of Delaware Class B

A-2

Stock shall be reserved for purposes of the exercise of such options, warrants, purchase rights, units or other securities as is equal to the number of shares of the Colorado Class B Stock so reserved as of the Effective Time.

(d)  Each share of Delaware Class B Stock owned by the Company shall no longer be outstanding and shall be cancelled and retired and shall cease to exist.

4.2.  *Certificates.*  At and after the Effective Time, all of the outstanding certificates which immediately prior thereto represented shares of Colorado Class A Stock (other than Dissenting Shares), Colorado Class B Stock, or options, warrants, purchase rights, units or other securities of the Company shall be deemed for all purposes to evidence ownership of and to represent the shares of the respective Delaware Class A Stock, Delaware Class B Stock, or options, warrants, purchase rights, units or other securities of ACC Delaware, as the case may be, into which the shares of Colorado Class A Stock, Colorado Class B Stock, or options, warrants, purchase rights, units or other securities of the Company represented by such certificates have been converted as herein provided and shall be so registered on the books and records of the Surviving Corporation or its transfer agent. The registered owner of any such outstanding certificate shall, until such certificate shall have been surrendered for transfer or otherwise accounted for to the Surviving Corporation or its transfer agent, have and be entitled to exercise any voting and other rights with respect to, and to receive any dividends and other distributions upon, the shares of Delaware Class A Stock, Delaware Class B Stock or options, warrants, purchase rights, units or other securities of ACC Delaware, as the case may be, evidenced by such outstanding certificate, as above provided.

4.3  *Dissenters' Rights.*  No Dissenting Shareholder shall be entitled to shares of Delaware Class A Stock under this Article IV unless and until the holder thereof shall have failed to perfect or shall have effectively withdrawn or lost such holder's right to dissent from the Reincorporation Merger under the CBCA, and any Dissenting Shareholder shall be entitled to receive only the payment provided by Article 113 of the CBCA with respect to Dissenting Shares owned by such Dissenting Shareholder. If any person or entity who otherwise would be deemed a Dissenting Shareholder shall have failed to properly perfect or shall have effectively withdrawn or lost the right to dissent with respect to any shares which would be Dissenting Shares but for that failure to perfect or withdrawal or loss of the right to dissent, such Dissenting Shares shall thereupon be treated as though such Dissenting Shares had been converted into shares of Delaware Class A Stock pursuant to Section 4.1 hereof.

ARTICLE V

CONDITION

5.1.  *Condition to Each Party's Obligation to Effect the Reincorporation Merger.*  The respective obligation of each party hereto to effect the Reincorporation Merger is subject to receipt prior to the Effective Time of the requisite approval of this Agreement and the transactions contemplated hereby by each of the holders of Colorado Class A Stock and Colorado Class B Stock pursuant to the CBCA and the Articles of Incorporation of the Company.

ARTICLE VI

TERMINATION

6.1.  *Termination.*  This Agreement may be terminated, and the Reincorporation Merger may be abandoned, at any time prior to the Effective Time, whether before or after approval of this Agreement by the shareholders of the Company, if the board of directors of the Company determines for any reason, in its sole judgment and discretion, that the consummation of the Reincorporation Merger would be inadvisable or not in the best interests of the Company and its shareholders. In the

A-3

event of the termination and abandonment of this Agreement, this Agreement shall become null and void and have no effect, without any liability on the part of either the Company or ACC Delaware, or any of their respective shareholders, directors or officers.

ARTICLE VII

MISCELLANEOUS AND GENERAL

7.1. *Modification or Amendment.* Subject to the provisions of applicable law, at any time prior to the Effective Time, the parties hereto may modify or amend this Agreement; provided, however, that an amendment made subsequent to the approval of this Agreement by the holders of Colorado Class A Stock and Colorado Class B Stock shall not (i) alter or change the amount or kind of shares and/or rights to be received in exchange for or on conversion of all or any of the shares or any class or series thereof of such corporation, (ii) alter or change any provision of the certificate of incorporation of the Surviving Corporation to be effected by the Reincorporation Merger, or (iii) alter or change any of the terms or conditions of this Agreement it such alteration or change would adversely affect the holders of any class or series of capital stock of any of the parties hereto.

7.2. *Counterparts.* This Agreement may be executed in any number of counterparts, each such counterpart being deemed to be an original instrument, and all such counterparts shall together constitute the same agreement.

7.3. *GOVERNING LAW.* THIS AGREEMENT SHALL BE DEEMED TO BE MADE IN AND IN ALL RESPECTS SHALL BE INTERPRETED, CONSTRUED AND GOVERNED BY AND IN ACCORDANCE WITH THE LAW OF THE STATE OF DELAWARE WITHOUT REGARD TO THE CONFLICT OF LAW PRINCIPLES THEREOF.

7.4. *Entire Agreement.* This Agreement constitutes the entire agreement and supercedes all other prior agreements, understandings, representations and warranties both written and oral, among the parties, with respect to the subject matter hereof.

7.5. *No Third Party Beneficiaries.* This Agreement is not intended to confer upon any person other than the parties hereto any rights or remedies hereunder.

7.6. *Severability.* The provisions of this Agreement shall be deemed severable and the invalidity or unenforceability of any provision shall not affect the validity or enforceability of the other provisions hereof. If any provision of this Agreement, or the application thereof to any person or any circumstance, is determined by any court or other authority of competent jurisdiction to be invalid or unenforceable, (a) a suitable and equitable provision shall be substituted therefor in order to carry out, so far as may be valid and enforceable, the intent and purpose of such invalid or unenforceable provision and (b) the remainder of this Agreement and the application of such provision to other persons or circumstances shall not be affected by such invalidity or unenforceability, nor shall such invalidity or unenforceability affect the validity or enforceability of such provision, or the application thereof, in any other jurisdiction.

7.7. *Headings.* The headings therein are for convenience of reference only, do not constitute part of this Agreement and shall not be deemed to limit or otherwise affect any of the provisions hereof.

[SIGNATURE PAGE FOLLOWS]

A–4

IN WITNESS WHEREOF, this Agreement has been duly executed and delivered by the duly authorized officers of the parties hereto as of the date first written above.

ADOLPH COORS COMPANY
a Colorado corporation

By     /s/ W. Leo Kiely

Name: W. Leo Kiely
Title: President and Chief
Executive Officer

ADOLPH COORS COMPANY
a Delaware corporation

By     /s/ Robert Reese

Name: Robert Reese
Title: Vice President and Chief
Legal Officer

A-5

**ANNEX B**

**CERTIFICATE OF INCORPORATION**
**OF**
**ADOLPH COORS COMPANY**

**(A Delaware Corporation)**

I, the undersigned, for the purposes of incorporating and organizing a corporation under the General Corporation Law of the State of Delaware (the "DGCL"), do execute this Certificate of Incorporation and do hereby certify as follows:

**FIRST.**          The name of the corporation is Adolph Coors Company (the "Corporation").

**SECOND.**          The address of the Corporation's registered office in the State of Delaware is 2711 Centerville Road, Suite 400, Wilmington, New Castle County, Delaware, 19808. The name of its registered agent at such address is Corporation Service Company.

**THIRD.**          The purpose of the Corporation is to engage in any lawful act or activity for which corporations may be organized under the DGCL.

**FOURTH.**

(a)  The total number of shares of all classes of stock which the Corporation shall have authority to issue is 226,260,000, of which 1,260,000 shares, par value of $0.01 (voting) shall be designated as Class A Common Stock ("Class A Stock"), 200,000,000 shares, par value of $0.01 (non–voting) shall be designated as Class B Common Stock ("Class B Stock"), and 25,000,000 shares, par value of $0.01, shall be designated as Preferred Stock ("Preferred Stock").

(b)  The relative rights, privileges and limitations of the shares of each class of Common Stock are as follows:

(1)  The Class A Stock and Class B Stock shall be identical in all respects, share for share, except with respect to the right to vote. Except as otherwise specifically provided herein, the right to vote for the election of directors and for all other purposes shall be vested exclusively in the holders of Class A Stock. The holders of Class B Stock shall not have the right to vote for the election of directors or for any other purpose or receive any notice of meetings of stockholders except where applicable provisions of the DGCL or this Certificate of Incorporation entitle holders of Class B Stock to vote. The holders of Class A Stock and Class B Stock shall have the right to vote, as separate classes and not jointly, on (i) any agreement of merger that requires stockholder approval under the DGCL or a statutory share exchange (but only to the extent that the DGCL is hereafter amended to provide for such a statutory share exchange), (ii) any sale, lease or exchange of all or substantially all of the property and assets of the Corporation (other than to or with any entity that is directly or indirectly wholly owned by the Corporation) or any sale, lease or exchange of all or substantially all of the property and assets of any entity of which the Corporation is in possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such entity, whether through ownership of voting shares or interests, by contract or otherwise and whose shares or other interests held by the Corporation constitute all or substantially all of the property and assets of the Corporation, (iii) any proposal to dissolve the Corporation or any proposal to revoke the dissolution of the Corporation or (iv) any amendment to this Certificate of Incorporation that requires stockholder approval under this Certificate of Incorporation or the DGCL and that would (A) increase or decrease the aggregate number of the authorized shares of Class B Stock; (B) change the designations, preferences, limitations, or relative rights of any shares of

B–1

Class B Stock; (C) change the shares of all or part of Class B Stock into a different number of shares of the same class; (D) increase the rights, preferences or number of authorized shares of any other class that is equal or superior to Class B Stock with respect to distribution or dissolution rights (a "co-equal class"), (E) create any new co-equal class; (F) exchange or reclassify any shares of Class B Stock into shares of another class, or exchange, reclassify or create the right of exchange of any shares of another class into shares of Class B Stock; (G) limit or deny existing preemptive rights of, or cancel or otherwise affect rights to distributions or dividends that have accumulated but have not yet been declared on, any shares of Class B Stock. The vote required to approve the foregoing actions is the affirmative vote of the holders of a majority of the shares of each class entitled to vote thereon, voting as a separate class and not jointly. For the avoidance of doubt, for purposes of clause (iv) above, the creation or issuance of any series of preferred stock pursuant to section (c) of this Article Fourth shall not be deemed an amendment to this Certificate of Incorporation that requires stockholder approval.

(2)   Subject to the rights of the holders of any series of Preferred Stock, the holders of Class A Stock and the holders of Class B Stock shall be entitled to receive such dividends (whether payable in cash or otherwise) as shall be declared from time to time by the board of directors of the Corporation (the "Board of Directors") out of funds legally available therefor, except that so long as any shares of Class B Stock are outstanding, no dividends shall be declared or paid, in cash or otherwise, on any Class A Stock unless at the same time there shall be declared or paid, as the case may be, a dividend on Class B Stock in an amount per share equal to the amount per share of the dividend declared or paid on the Class A Stock.

(3)   Subject to the rights of the holders of any series of Preferred Stock, the Board of Directors may declare and distribute dividends to the holders of Class A Stock and the holders of Class B Stock in the form of shares of Common Stock of the Corporation. Dividends payable in Common Stock to the holders of Class A Stock may be made in authorized and unissued shares of Class A Stock or in authorized and unissued shares of Class B Stock as the Board of Directors determines. Dividends payable in Common Stock to the holders of Class B Stock may be made only in authorized and unissued shares of Class B Stock.

(4)   Notwithstanding subparagraph (b)(1) of this Article Fourth, at any time when, and only for so long as, the Corporation has no shares of Class A Stock outstanding, the Class B Stock shall have, without further action by the Board of Directors or stockholders, the right to vote for the election of directors and for all other purposes, and all references in this Certificate of Incorporation to required votes of the Class A Stock or to the right of holders of Class A Common Stock to vote shall be deemed to refer to the Class B Stock. At such time as the Corporation reissues one or more shares of Class A Stock, the voting rights of the Class B Stock shall be as set forth in subparagraph (b)(1) of this Article Fourth and not in this subparagraph (b)(4).

(c)   Shares of Preferred Stock may be issued in one or more series from time to time by the Board of Directors, and the Board of Directors is expressly authorized to fix by resolution or resolutions for the issuance of shares of Preferred Stock in one or more series and, by filing a certificate pursuant to the DGCL (a "Preferred Stock Designation"), setting forth such resolution, to establish by resolution from time to time the number of shares to be included in each such series, and to fix by resolution the designations and the powers, preferences and rights, and the qualifications, limitations and restrictions thereof, of the shares of each series of Preferred Stock.

B-2

The authority of the Board of Directors with respect to each series shall include, but not be limited to, determination of the following:

(1)  the distinctive serial designation of such series which shall distinguish it from other series;

(2)  the number of shares included in such series;

(3)  the dividend rate (or method of determining such rate) payable to the holders of the shares of such series, any conditions upon which such dividends shall be paid and the date or dates upon which such dividends shall be payable;

(4)  whether dividends on the shares of such series shall be cumulative and, in the case of shares of any series having cumulative dividend rights, the date or dates or method of determining the date or dates from which dividends on the shares of such series shall be cumulative;

(5)  the amount or amounts which shall be payable out of the assets of the Corporation to the holders of the shares of such series upon voluntary or involuntary liquidation, dissolution or winding up the Corporation, and the relative rights of priority, if any, of payment of the shares of such series;

(6)  the price or prices at which, the period or periods within which and the terms and conditions upon which the shares of such series may be redeemed, in whole or in part, at the option of the Corporation or at the option of the holder or holders thereof or upon the happening of a specified event or events;

(7)  the obligation, if any, of the Corporation to purchase or redeem shares of such series pursuant to a sinking fund or otherwise and the price or prices at which, the period or periods within which and the terms and conditions upon which the shares of such series shall be redeemed or purchased, in whole or in part, pursuant to such obligation;

(8)  whether or not the shares of such series shall be convertible or exchangeable, at any time or times at the option of the holder or holders thereof or at the option of the Corporation or upon the happening of a specified event or events, into shares of any other class or classes or any other series of the same or any other class or classes of stock of the Corporation, and the price or prices or rate or rates of exchange or conversion and any adjustments applicable thereto; and

(9)  whether or not the holders of the shares of such series shall have voting rights, in addition to the voting rights provided by law, and if so the terms of such voting rights.

The Board of Directors is expressly authorized to vary the provisions relating to the foregoing matters between the various series of Preferred Stock, but, unless otherwise specified in a Preferred Stock Designation, in all other respects the shares of each series shall be of equal rank with each other regardless of series. Notwithstanding the fixing of the number of shares constituting a particular series upon the issuance thereof, unless otherwise specified in the Preferred Stock Designation and subject to the rights of the holders of any series of Preferred Stock, the Board of Directors may at any time thereafter authorize the issuance of additional shares of the same series or may reduce (but not below the number of shares thereof then outstanding) the number of shares constituting such series.

**FIFTH.**          The name and mailing address of the incorporator is Robert Reese, 311 10th Street, Golden, Colorado 80401.

B-3

**SIXTH.**   The Board of Directors is authorized to adopt, amend or repeal bylaws of the Corporation ("Bylaws"), provided that the power of the Board of Directors to adopt, amend or repeal Bylaws may be limited by an amendment to the Bylaws adopted by the holders of Class A Stock that provides that a particular Bylaw or Bylaws may only be adopted, amended or repealed by the holders of Class A Stock. The Corporation may, in its Bylaws or otherwise, impose restrictions on the transfer of its shares.

**SEVENTH.**   Elections of directors need not be by written ballot except and to the extent provided in the Bylaws.

**EIGHTH.**

(a)   The number of directors of the Corporation shall be not less than three, the exact number of which and the method by which the directors shall be elected shall be as set forth in the Bylaws.

(b)   Any vacancies on the Board of Directors shall be filled by the holders of Class A Stock or by directors elected by the holders of Class A Stock in the manner provided for in the Bylaws.

(c)   Any director or the entire Board of Directors may be removed, with or without cause, by the holders of a majority of the voting power of the outstanding shares of the Class A Stock.

**NINTH.**   A director of the Corporation shall not be liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director, except to the extent that such exemption from liability or limitation thereof is not permitted under the DGCL as currently in effect or as the same may hereafter be amended. If the DGCL is hereafter amended to eliminate or limit further the liability of a director, then, in addition to the elimination and limitation of liability provided by the preceding sentence, the liability of each director shall be eliminated or limited to the fullest extent permitted by the DGCL as so amended. Any amendment, modification or repeal of this Article Ninth shall be prospective only and shall not adversely affect any right or protection of a director of the Corporation that exists at the time of such amendment, modification or repeal.

**TENTH.**   The Corporation shall indemnify and hold harmless, including the advancement of expenses, to the fullest extent permitted by applicable law as it presently exists or may hereafter be amended, and in accordance with the Bylaws, any person who was or is made or is threatened to be made a party or is otherwise involved in any action, suit or proceeding, whether civil, criminal, administrative or investigative, by reason of the fact that he or she, or a person for whom he or she is the legal representative, is or was a director or officer of the Corporation or, while a director or officer of the Corporation, is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation or of a partnership, joint venture, trust, enterprise or nonprofit entity, including service with respect to employee benefit plans maintained or sponsored by the Corporation (a "Covered Person") (including the heirs, executors, administrators and estate of such Covered Person), against all liability and loss suffered and expenses (including attorneys' fees) reasonably incurred by such Covered Person. The Corporation may, to the extent authorized from time to time by the Board, grant rights to indemnification and to the advancement of expenses to any employee or agent of the Corporation to the fullest extent of the provisions of this Article Tenth with respect to the indemnification and advancement of expenses of directors and officers of the Corporation. Without limiting the generality or the effect of the foregoing, the Corporation may enter into one or more agreements with any person that provide for indemnification greater or different than that provided in this Article Tenth. No amendment or repeal of this Article Tenth shall adversely affect any right or protection existing hereunder or pursuant hereto immediately prior to such amendment or repeal.

B-4

**ELEVENTH.**           The Corporation expressly elects not to be governed by Section 203 of the DGCL.

IN WITNESS WHEREOF, I have signed this Certificate of Incorporation this 14th day of August 2003.

/s/  ROBERT REESE

---

Robert Reese
*Incorporator*

B-5

**ADOLPH COORS COMPANY**

**311 10TH STREET**
**GOLDEN, COLORADO 80401**
**(303) 279−6565**

**Proxy for Special Meeting of Shareholders**
**to be Held on October 3, 2003**

### THIS PROXY IS SOLICITED ON BEHALF OF OUR BOARD OF DIRECTORS

The undersigned hereby appoints Peter H. Coors, W. Leo Kiely III and Annita M. Menogan, or each of them, with full power of substitution, as a proxy or proxies to represent the undersigned at a special meeting of shareholders to be held on October 3, 2003 or any adjournment or postponement thereof and to vote thereat, as designated below, all the shares of Class A common stock and Class B common stock of Adolph Coors Company, a Colorado corporation (the "Company"), held of record by the undersigned at the close of business on August 25, 2003, with all the power that the undersigned would possess if personally present, in accordance with the instructions noted hereon, as follows:

**THE BOARD OF DIRECTORS RECOMMENDS A VOTE "FOR" THE PROPOSALS LISTED BELOW. IF NOT OTHERWISE SPECIFIED, THIS PROXY WILL BE VOTED PURSUANT TO THE BOARD OF DIRECTORS' RECOMMENDATION.**

**PLEASE VOTE, DATE AND SIGN THIS PROXY ON THE OTHER SIDE AND RETURN PROMPTLY IN THE ENCLOSED ENVELOPE.**

Has your address changed?                                    Do you have any comments?

_____                    _____

_____                    _____

_____                    _____

---

**Detach here if you are returning your proxy card by mail**

**The Board of Directors recommends a vote "FOR" Proposal 1 and "FOR" Proposal 2. To vote in accordance with the Board of Directors' recommendation, merely sign below; no boxes need to be checked.**

   1.   To consider and vote on the reincorporation of the Company in the State of Delaware, to be effected pursuant to an Agreement and Plan of Merger, dated August 14, 2003, by and between the Company and Adolph Coors Company, a Delaware corporation and a wholly owned subsidiary of the Company ("ACC Delaware"), pursuant to which the Company will merge with and into ACC Delaware, and ACC Delaware will survive the reincorporation merger (approval of this reincorporation proposal will constitute approval of the reincorporation merger and the Agreement and Plan of Merger);

         ☐ FOR    ☐ AGAINST    ☐ ABSTAIN

   2.   To approve any proposal which may be submitted by the Company to adjourn the special meeting to a later date to solicit additional proxies in favor of Proposal 1 above in the event that there are not sufficient votes for approval of Proposal 1 at the special meeting.

         ☐ FOR    ☐ AGAINST    ☐ ABSTAIN

☒  Please mark
    votes as in
    this example.

The shares represented by this proxy will be voted as directed by the shareholder. In his or her discretion, any named proxy may vote on such other business as may properly come before the special meeting or any adjournments or postponements thereof.

This proxy revokes all prior proxies with respect to the special meeting and may be revoked prior to exercise. Receipt of the Notice of Special Meeting of Shareholders and the proxy statement relating to the special meeting is hereby acknowledged.

Mark box at right if you plan to attend the Special Meeting.    ☐

Mark box at right if an address change or comment
has been marked on the reverse side of this card.    ☐

**Please complete, sign, date and return the proxy card promptly, using the enclosed envelope.**

Please sign exactly as name appears hereon. When shares are held by joint tenants, both should sign. When signing as attorney, as executor, administrator, trustee or guardian, please give full title as such. If a corporation, please sign in full corporate name by president or other authorized officer. If a partnership, please sign in partnership name by authorized person.

Signature: _____ Date: _____ Signature: _____ Date: _____

Created by 10KWizard   www.10KWizard.com