# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

|  |  |
|---|---|
| WALTER PHILLIPS, On Behalf of Himself and All Others Similarly Situated, | : **Civil Action No.: 05-cv-604 KAJ** |
| Plaintiff, | : |
| v. | : |
| MOLSON COORS BREWING COMPANY, BARBARA ALBANESI, DAVID BARNES, CHAT CHATTERJEE, JAMES FREDERICKS, MICHAEL J. GANNON, ROBERT KLUGMAN, MICHAEL KRUTECK, VONDA MILLS, MICHAEL RUMLEY, BEN SCHWARTZ, KATHERINE L. MACWILLIAMS, HAROLD R. SMETHHILLS, JEFF MORGAN, ROB WITWER, TIMOTHY WOLF, W. LEO KIELY III, PETER H. COORS, CHARLES M. HERINGTON, FRANKLIN W. HOBBS, RANDALL OLIPHANT, PAMELA PATSLEY, WAYNE SANDERS, and ALBERT C. YATES, | : |
| Defendants. | : |

---

## PLAINTIFF'S BRIEF IN OPPOSITION
## TO DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

**CHIMICLES & TIKELLIS LLP**
Pamela S. Tikellis (#2172)
Robert J. Kriner, Jr. (#2546)
A. Zachary Naylor (#4439)
One Rodney Square
P.O. Box 1035
Wilmington, DE 19899
Tel: (302) 656-2500

**GAINEY & MCKENNA**
Thomas J. McKenna
295 Madison Avenue, 4th Floor
New York, New York 10017
Tel: (212) 983-1300

**VIANALE & VIANALE LLP**
Kenneth J. Vianale, Esq.
2499 Glades Road, Suite 112
Boca Raton, FL 33431
Tel: (561) 392-4750

Dated: August 7, 2006                                     *Attorneys for Plaintiff*

# TABLE OF CONTENTS

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

NATURE AND STAGE OF PROCEEDINGS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STATEMENTS OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

    The Plans . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    The Merger of Molson and Coors . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    Molson Announces An Earnings Shortfall . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

    Coors Falsely Announces "Improving Trends" . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    The Negative Reaction to the Merger . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    The Dividend "Bribe" Paid to Quell Shareholder Opposition to the Merger . . . . . . . . . . 8

    The Truth Begins to be Revealed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    The Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

LEGAL STANDARDS ON THIS MOTION TO DISMISS . . . . . . . . . . . . . . . . . . . . . . . . . 10

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    I.      PLAINTIFF HAS STANDING TO SUE UNDER ERISA . . . . . . . . . . . . . . . . . .11

    II.     PLAINTIFF NEED NOT BE A MEMBER OF EVERY
           PLAN TO ASSERT CLASS CLAIMS ON BEHALF OF
           ALL PARTICIPANTS IN THE PLANS . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    III.    PLAINTIFF STATES A CLAIM FOR DEFENDANTS'
           FAILURE TO PRUDENTLY MANAGE PLAN ASSETS . . . . . . . . . . . . . . . . 16

           A.     Defendants Incorrectly Argue that the
                    Complaint Alleges a Failure to Diversify . . . . . . . . . . . . . . . . . . . . . . 16

i

B.      This Action is not Premature . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

C.      If the *Moench* Presumption Applies, Plaintiff
        Has Alleged Sufficient Facts to Overcome It . . . . . . . . . . . . . . . . . . . . . .20

D.      Defendants' Argument that they Could not Have
        Prevented the Loss is Untrue and has been Rejected . . . . . . . . . . . . . . . . 23

IV.     THE COMPLAINT STATES A CLAIM FOR FAILING
        TO PROVIDE COMPLETE AND ACCURATE
        INFORMATION TO PLAN PARTICIPANTS. . . . . . . . . . . . . . . . . . . . . . . . . 24

V.      PLAINTIFF STATES A CLAIM FOR FAILURE TO MONITOR . . . . . . . . . . 26

VI.     THE CLAIMS AGAINST THE DIRECTOR
        DEFENDANTS SHOULD NOT BE DISMISSED . . . . . . . . . . . . . . . . . . . . . . 27

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .28

## TABLE OF AUTHORITIES

<u>**CASES**</u>

*Acosta v. Pacific Enterprises,*
    950 F.2d 611 (9th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Adams v. Bain,*
    697 F.2d 1213 (4th Cir. 1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Artway v. Attorney Gen'l of State of N.J.,*
    81 F.3d 1235 (3d Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 14

*Basic v. Levinson,*
    485 U.S. 224 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 26

*Conley v. Gibson,*
    355 U.S. 41 (1957). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Crotty v. Cook,*
    121 F.3d 541 (9th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Doe I v. Guardian Life Ins. Co. Of Am.,*
    145 F.R.D. 466 (N.D. Ill. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Donovan v. Cunningham,*
    716 F.2d 1455 (5th Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

*Edgar v. Avaya, Inc.,*
    2006 U.S. Dist. LEXIS 23151(D.N.J. April 24, 2006). . . . . . . . . . . . . . . . . . . . . . . 24

*Ericson v. Greenberg & Co., P.C.*
    118 Fed. Appx. 608 (3d Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 11

*Evans v. B.F. Perkins, Co.,*
    166 F.3d 642 (4th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Fallick v. Nationwide Mutual Inc. Co.,*
    162 F.3d 410 (6th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*Fischer v. The Philadelphia Elec. Co.,*
      994 F.2d 130 (3d Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 25

*Forbush v. J.C. Penney Co., Inc.,*
      994 F.2d 1101 (5th Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Hill v. Bellsouth Corp.,*
      313 F. Supp. 2d 1361 (N.D. Ga. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 10, 18

*Houston v. Building Trades Welfare Fund for Ohio Valley,*
      No. 03-2078, 2004 WL 1737864 (4th Cir. Aug. 4, 2004). . . . . . . . . . . . . . . . . . . . . . .11

*In re Enron Sec. Deriv. & ERISA Litig.,*
      284 F. Supp.2d 511 (S.D. Tex. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3, 10, 18

*In re Ferro Corp. ERISA Litig.,*
      422 f. Supp. 2d 850 (N.D. Ohio 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*In re Honeywell Int'l ERISA Litig.,*
      2004 U.S. Dist. LEXIS 21585 (D.N.J. Sept. 14, 2004). . . . . . . . . . . . . . . . . . . . . . . *passim*

*In re JDS Uniphase Corp. ERISA Litig.,*
      No. C 03-04743 CW (WWS) 2005 WL 1662131 (N.D. Cal. July 14, 2001). . . . . . . . 2, 18

*In re Mutual Funds Investment Litig.,*
      403 F. Supp. 2d 434 (D. Md. Dec. 6, 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 12, 13

*In re WorldCom, Inc.,*
      263 F. Supp. 2d 745 (S.D.N.Y. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*In re Xcel Energy Inc.,  Sec., Deriv. & ERISA Litig,*
      312 F. Supp. 2d 1165, 1183 (D. Minn. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Lalonde v. Textron, Inc.*
      369 F.3d 1  (1st Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 10, 18, 22

iv

*McBride v. PLM Int'l Inc.*,
179 F.3d 737 (9th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

*Misch v. Community Mut. Ins. Co.*,
1995 U.S. Dist. LEXIS 5059 (S.D. Ohio Feb. 15, 1995). . . . . . . . . . . . . . . . . . . . . . 15

*Moench v. Robertson*,
62 F.3d 553 (3d Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 20, 21, 22

*Morrison v. Marsh & McLennan Cos., Inc.*,
439 F.3d 295, 303 (6th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Olson v. Chem-Trend Inc.*,
No. 94-CV-75201, 1995 WL 866221(E.D. Mich. May 30, 1995). . . . . . . . . . . . . . . . . 13

*Ortiz v. Fibreboard Corp.*,
119 S.Ct. 2295 (1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Rankin v. Rots*,
220 F.R.D. 511 (E.D. Mich. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan*,
883 F.2d 345 (5TH Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Steger v. Franco, Inc.*,
228 F.3d 889 (8th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

*Sutton v. Medical Serv. Assoc. Of Pennsylvania*,
1993 U.S. Dist. LEXIS 9763 (E.D. Pa. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*U.S. v. North Carolina*
180 F.3d 574 (4th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Varity Corp. V. Howe*,
516 U.S. 489 (1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . .3, 25

*Vartanian v. Monsanto Corp.*,
14 F.3d 697 (1st Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

*Woods v. Southern Co.*,
396 F. Supp. 2d 1351 (N.D. Ga. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3, 27

v

*Wright v. Oregon Metallurgical Corp.,*
     360 F.3d 1090 (9th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

**STATUTES**

29 U.S.C. § 1002(7) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

29 U.S.C. § 1002(18)(A)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

29 U.S.C. § 1104(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

29 U.S.C. § 1104(a)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**RULES**

Rule 8, Fed. R. Civ. P. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Rule 12(b)(6), Fed. R. Civ. P. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 9, 16

Rule 23, Fed. R. Civ. P. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

ERISA § 408(e)(1), 29 U.S.C. § 1108(e)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Plaintiff Walter Phillips respectfully submits this brief in opposition to defendants' motion to dismiss the amended complaint.

## NATURE AND STAGE OF PROCEEDINGS

Plaintiff brings this action under the Employee Retirement Income Security Act of 1974 ("ERISA"). Plaintiff sues on behalf of himself and the Coors Savings and Investment Plan (the "Coors Savings Plan") and the 401(k) Savings Plan for Hourly Employees at the Memphis, Tennessee Brewery (the "401(k) Hourly Savings Plan") (collectively, the "Plans"), and a class of similarly situated participants and beneficiaries of the Plans. This action is factually related to the securities fraud class action, *In re Molson Coors Brewing Company Sec. Litig.*, No. 05-294-KAJ.

Defendants' motion to dismiss (D.I. 43) Plaintiff's Amended Class Action Complaint for Violations of ERISA (the "Complaint," D.I. 25) should be denied. The Complaint states claims against Defendants for breach of their duties of prudence and loyalty (First Claim), by failing to eliminate the option to invest in Coors Stock (as defined below). On February 9, 2005, Molson, Inc. ("Molson") merged into the Adolph Coors Company ("Coors"). (¶1).[1]  The Complaint also alleges that Defendants breached their duties under ERISA by making misrepresentations to Plaintiff and other Plan Participants (Second Claim), and by failing to monitor the Plan Committee members (Third Claim). The action seeks to compel Defendants under ERISA to restore the losses to the Plans caused by these breaches of fiduciary duties. (¶¶137-140).

In connection with that merger, the top officers of defendant Molson Coors Brewing

---

[1] "¶" refers to a paragraph of the Complaint.

2

Company ("Molson Coors" or the "Company"), and its top officers W. Leo Kiley III ("Kiely"),

the CEO, and Peter H. Coors ("Peter Coors"), the Company's Chairman, made false and

misleading statements before the merger, in the Proxy Statement sent to employees and other

shareholders in connection with the merger, and after the merger was consummated in February

2005.   The Company and these defendants downplayed pre-merger problems that Molson was

having in Brazil (¶¶61-65, 81), made false statements about Coors' own pre-merger adherence to

its business plan (¶¶66-70, 75-77, 81, 92, 94-95), and made materially false statements in the

Proxy Statement, in the face of strong shareholder opposition to the merger (¶¶71-73, 80-88, 92,

94, 100).   As a result, the price of Coors Stock was artificially inflated from July 22, 2004 to

April 27, 2005.  On April 28, 2005, Molson Coors reported a net loss of $79 million, or $0.91

per share. (¶96).  The Company's stock fell almost $14.50 per share to $63.00 per share, nearly a

20% decline. (¶97).

   Defendants' principal arguments are that Plaintiff lacks standing to sue, and that in any

event, he cannot represent participants of plans of which he is not a member.  Both of these

arguments are incorrect. Under this Circuit's law, whether Plaintiff has standing is measured as

of the date he commenced the action. *Ericson v. Greenberg & Co., P.C.*, 118 Fed. Appx. 608,

608, 611 (3d Cir. 2004). Defendants do not dispute that Plaintiff had standing on the day he

commenced this action. (Def. Mem. at 8, D.I. 44).  Moreover, numerous courts have held that

even if an employee leaves the company and accepts payment for vested shares after

commencing an action, that fact is insufficient to defeat standing or continuation of the lawsuit.

*In re Mutual Funds Investment Litig.*, 403 F. Supp. 2d 434, 401-445 (D. Md. Dec. 6, 2005)

(collecting cases).  At best, Defendants are complaining about *mootness,* by arguing that

3

Plaintiff accepted payment for his vested shares *after* commencing this action. But as discussed below, the standard for showing an action is not moot is lower than the standing requirement. The Third Circuit also recognizes several exceptions to mootness, including that the action at issue is a class action. *Artway v. Attorney Gen'l of State of New Jersey*, 81 F.3d 1235, 1246 (3d Cir. 1996).

Defendants' other arguments, based on Rule 12(b)(6), Fed. R. Civ. P., are also meritless. Many of these arguments either misconstrue the Complaint as one challenging a failure to diversify assets, when in fact the Complaint alleges no such thing, or ask the Court to resolve questions of fact in Defendants' favor, such as whether the Complaint should be dismissed based on a presumption of prudence to which Defendants claim entitlement. As discussed below, Defendants' arguments on the sufficiency of the allegations are all meritless, and in any event should not be resolved at the pleading stage.

## SUMMARY OF THE ARGUMENT

1.   Plaintiff has standing to sue under ERISA because standing is measured at the time the action is commenced and Defendants do not dispute Plaintiff had standing when the action was commenced. *Ericson v. Greenberg & Co., P.C.*, 118 Fed. Appx. 608, 608, 611 (3d Cir. 2004); *In re Mutual Funds Investment Litig.*, 403 F. Supp.2d 434, 441-444 (D. Md. 2005).

2.   Plaintiff may represent all plan participants, not just those in his own plan. *Fallick v. Nationwide Mutual Ins. Co.*, 162 F.3d 410, 424 (6th Cir. 1998).

3.   The Complaint states a claim against Defendants for breach of their duty to act prudently and loyally in the management of the Plans' assets because this is not a failure to diversify assets case and Defendants enjoy no presumption of prudence. *In re JDS Uniphase*

*Corp. ERISA Litig.*, 2005 WL 1662131 (N.D. Cal. July 14, 2001); *Lalonde v. Textron, Inc.*, 369 F.3d 1, 61 (1st Cir. 2004); *Hill v. Bellsouth Corp.*, 313 F. Supp.2d 1361, 1367-68 (N.D. Ga. 2004); *In re Enron Sec. Deriv. & ERISA Litig.*, 284 F. Supp.2d 511, 534 n.3 (S.D. Tex. 2003).

4.     If the *Moench* presumption applies, Plaintiff has alleged sufficient facts to overcome the presumption. *In re Honeywell Int'l Corp.*, 2004 U.S. Dist. LEXIS 21585 at *39-*40 (D. N. J. Sept. 14, 2004).

5.     The Complaint states a claim for failing to provide complete and accurate information to Plan Participants.   *Varity Corp. v. Howe*, 516 U.S. 489, 506 (1996); *In re Ferro Corp. ERISA Litig.*, 422 F. Supp.2d 850, 865 (N.D. Ohio 2006).

6.     Materiality is a mixed question of law and fact that the Court should not dispose of on a motion to dismiss. *Fischer v. The Philadelphia Elec. Co.*, 994 F.2d 130, 135 (3d Cir. 1993).

7.     The Complaint states a claim for failure to monitor. *Woods v. Southern Co.*, 396 F. Supp.2d 1351, 1373 (N.D. Ga. 2005).

8.     The claims against the Director Defendants should not be dismissed.  ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

## STATEMENT OF FACTS

Plaintiff, Walter Phillips, is a former employee of the Adoph Coors Company ("Coors"). He worked in Memphis, Tennessee (¶20), and brought this action on behalf of himself and the Plans.   Plaintiff's retirement accounts included the common stock of Coors and Molson Coors after the merger of Molson into Coors on February 9, 2005 (the "Merger").   (The common stock of Coors and Molson Coors after the Merger will be referred to throughout as Coors Stock, unless otherwise noted.) (¶1).

**The Plans**

The Company sponsors the Plans, which are defined contribution retirement plans that are intended to qualify under Section 401(a) of the Internal Revenue Code of 1986 and are subject to ERISA. (¶¶4, 38-39). The Plans' stated purpose was to permit employees to save for retirement. The Coors Savings Plan offered participants the option of investing in the Coors Stock Fund. (¶40). During the Class Period, plaintiff participated in the Plans and his retirement account held shares of Coors Stock. (¶¶5, 38). According to the Coors Savings Plan's Summary Plan Description ("SPD"), the Coors Stock Fund is a fund "that pools [the Plan Participants] money with that of other employees to buy shares in [the Plan Participants'] employer or its affiliates and an amount of short-term investments ....." (¶40). The 401(k) Hourly Savings Plan's stated purpose is "to encourage employees of the Memphis, Tennessee brewery of the former Adolph Coors Company and subsidiaries ... to accumulate savings systematically in order to provide an additional source of income upon retirement, disability or death." (¶42) (*quoting* Company's Form 11-K filing).

Participants in the Plans voluntarily contributed to the Plans through regular payroll deductions subject to certain limits. (¶43). Participants directed the Plans to buy investments for them from among various options that the Plan Committee selected, including the Coors Stock Fund. (¶44).

**The Merger of Molson and Coors**

On July 22, 2004, Coors and Molson announced that the boards of both companies had entered into a definitive Merger Agreement. (¶69).

Before the Merger, Molson was Canada's largest beer brewer and Coors was the U.S.'s

6

third-largest beer brewer. (¶¶59-60).   The two companies had a reciprocal licensing agreement:
Molson was licensed to sell Coors' beer brands in Canada, including the profitable *Coors Light*
brand (¶59), and Coors was licensed to sell the Molson family of brands in the U.S. (¶60).
Accordingly, many financial analysts reported that there were few synergies the two companies
could achieve by combining, since they already were cross-marketing each others' products.
(¶71).  Analysts believed that the proposed merger was simply a "marriage of convenience,"
concocted to prevent a takeover of either company that would oust family control of these
companies.  (*Id.*)

### Molson Announces An Earnings Shortfall

On July 22, 2004, the day the Merger was announced,  Molson also issued a press release
announcing its first quarter 2005 earnings, noting that sales of its beers in the U.S. for the three
months ended June 30, 2004, were down compared to the prior year's sales. (¶61).  Later in the
period, Molson again disclosed that it did not and would not in the foreseeable future, achieve
10% growth before interest and taxes.  (¶62).  Finally, on September 30, 2004, Molson issued a
press release stating that it was making an "early announcement ... to inform shareholders of [an]
earnings shortfall." (¶63).  Molson warned that it expected below-plan sales in Canada and
weakening profits in Brazil.  (*Id.*) Newspapers reported that Molson was considering a $200
million write down on its Brazilian assets.  (¶65).    Despite these warnings, Coors stated
publicly that the bad Molson news did not affect Coors' position on the proposed Merger. (¶65).

### Coors Falsely Announces "Improving Trends"

Coors also issued a press release on July 22, 2004 to announce its financial results for its
2004 second quarter. (¶66).  Unlike Molson, Coors announced positive results.  (*Id.*) Defendant

7

Kiely, Coors' CEO, stated that "Overall, second quarter results for Coors Brewing Company showed improving trends in several key areas of the business." (*Id.*). Kiely repeated this message of "improving trends" in a conference call with analysts the same day. (¶67)

On July 22, 2004, Coors filed an Additional Definitive Proxy Statement with the SEC. (¶68). Kiely continued to state in the document that Coors was operating according to plan and that no material adverse changes in Coors' business had occurred. (*Id.*) Coors falsely represented that it would provide the combined company – Molson Coors – with a strong financial base and greater earnings per share, and that the combined company would realize at least $175 million in cost savings and synergies. (¶¶69-70).

### The Negative Reaction to the Merger

Financial analysts reacted negatively to the Merger, because the cost savings and synergies were questionable: "Given that Coors and Molson are already a combined entity since they operate two joint ventures, one in Canada and one in the U.S., we question 'where is the value and/or cost savings/synergies?'" (¶71) (*quoting* Citigroup/Smith Barney) (July 19, 2004). Several other financial analysts mirrored this sentiment, including **CIBC World Markets** ("both companies are struggling in their home market"); **National Bank Financial** ("Proposed merger increases scale but doesn't solve strategic problems"); **Bear Stearns** ("We do not think that a merger of these two companies resolves any of the problems they face or provided them a better platform for surviving in the current landscape of the industry."), **Prudential Equity Group** ("Coors becomes bigger in troubled markets and smaller in good markets"); **J.P. Morgan Securities** ("we don't think [the merger] provides substantial benefit to either company's existing operations"); **RBC Capital Markets** ("[Merger] fails to resolve either company's

8

underlying performance issues").  (¶71).

Despite these warning signs from the investment community, Coors continued to make highly positive statements about the combined entity and the synergies to be obtained. These statements appeared in Coors' Preliminary Proxy Statement filed with the SEC on September 167, 2004 (¶79), and in the final Proxy/Prospectus that was mailed to shareholders in December 2004 soliciting their approval of the Merger.  (¶¶83-84).  In truth, however, Coors management hid Coors' pre-merger financial problems and operational difficulties from investors; falsely stated that the combined companies would enjoy $175 million in cost saving synergies by 2007 (*Id.*); and misrepresented Molson's losses in Brazil and the adverse effect these losses would have on Molson Coors' prospects for success.  (¶81) (incorporating by reference paragraphs 63 to 93 from the related Securities Class Action Complaint).

### The Dividend "Bribe" Paid to Quell Shareholder Opposition to the Merger

To quell shareholder opposition to the Merger, Coors announced that it would pay Molson shareholders a special dividend of Canadian $3.26 per share, for a total of Canadian $381 million (U.S. $316 million). (¶85). Coors increased the dividend on January 13, 2005 to Canadian $5.44 per share (U.S. $4.53). (¶87). The "bribe-effect" of this special dividend worked: Molson shareholder opposition waned in the face of the special cash dividend (¶87), though shareholders did not suspect what losses they would later suffer as a result. (¶88).  Without the benefit of knowing the true financial condition of these companies, the shareholders approved the Merger in late January 2005.

On February 9, 2005, the Merger was consummated. The combined company issued a press release that day announcing shareholder approval and reiterating the projected $175 million

9

in synergies. (¶89). Molson Coors repeated this message in a conference call with analysts that day. (¶92). On March 1 and 2, 2005, the Company made presentations in New York and Toronto, continuing to paint a rosy financial picture, even though internally Coors was not operating according to plan. (¶93) (quoting from Company's slide presentations on synergies and cost savings). On the contrary, however, when the Merger closed on February 9, 2005, Coors was not operating to plan and had suffered material adverse changes. The Company nevertheless continued to make false statements, including the Form 10-K filed with the SEC on March 11, 2005 and an Investors' Prospectus filed with the SEC on February 11, 2005. CEO Kiely's interview on March 2, 2005 with Bloomberg analyst Mike McKee regarding Kiely's supposed confidence about projected synergies was also false and misleading. (¶95(a)-(c) (incorporating Securities Class Action Complaint, paragraphs 98-102).

**The Truth Begins to be Revealed**

On April 28, 2005, before the opening of trading, the Company announced disappointing results for the first quarter of 2005. (¶96). The Company reported a consolidated net loss of $79 million, or $0.91 per share. (*Id.*). Kiely attributed the loss to "the lack of volume growth in each of our major markets." The Company's stock fell almost $14.50 per share, to $63.00 per share, nearly a 20% decline. (¶97). Kiely said that though the loss was "disappointing," it "reinforces the importance of integrating the .. combined company, so we can capitalize on our new strengths ...." (*Id.*). That same day, however, Daniel J. O'Neill, the Former CEO of Molson, announced that he would abandon the Chair of Office of Synergies and Integration and leave the Company with his approximately $4.8 million in severance related payments. (¶99). Analysts reacted negatively saying that Molson Coors was "more of a mystery than an investment right now."

10

(¶100) (incorporating paragraphs 115-117 of Securities Class Action Complaint).

After this bad news, the SEC requested Molson Coors to produce documents regarding the Company's first quarter earnings report and its operations in Brazil. Molson Coors later announced a restatement of its financial results for the first quarter of 2005, during which Molson Coors' profits declined by 45%. (¶100) (incorporating paragraphs 122-123 of Securities Class Action Complaint).

### The Defendants

The Complaint names the following defendants: (1) the Plans' sponsor, Molson Coors; (2) the members of the Plan Committee who administered the Plans and are named as fiduciaries under the Plans and the Coors Savings & Investment Master Trust (the "Master Trust"), including Barbara Albanesi, David Barnes, Chat Chatterjee, James Fredericks, Michael J. Gannon, Robert Klugman, Michael Kruteck, Vonda Mills, Michael Rumley, Ben Schwartz, Katherine L. MacWilliams, Jeff Morgan, Rob Witwer and Timothy Wolf; and (3) the Director Defendants, namely Kiely, Coors, Charles M. Herrington, Franklin W. Hobbs, Randall Oliphant, Pamela Patsley, Wayne Sanders, and Albert C. Yates. (¶¶21-35).

### LEGAL STANDARDS ON THIS MOTION TO DISMISS

In a breach of fiduciary duty case under ERISA, plaintiff need only satisfy the basic notice pleading standards of Rule 8, Fed. R. Civ. P. *In re Mutual Funds Investment Litig.*, 403 F. Supp. 434, 440-441 (D. Md. 2005) (citing cases). A court should only grant a Rule 12(b)(1) motion for lack of subject matter jurisdiction "if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Evans v. B.F. Perkins, Co.*, 166 F.3d 642, 647 (4th Cir. 1999). When jurisdictional facts are intertwined with questions of

11

law, the entire factual dispute should be decided at a later proceeding on the merits. *U.S. v. North Carolina*, 180 F.3d 574, 580-81 (4th Cir. 1999); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).   With respect to motions for failure to state a claim under Rule 12(b)(6), Fed. R. Civ. P., the court should not dismiss the complaint unless it finds "beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).   The court must accept all allegations as true and draw all reasonable inferences in plaintiff's favor. *In re Honeywell Int'l ERISA Litig.*, 2004 U.S. Dist. LEXIS 21585 (D.N.J. Sept. 14, 2004).

## ARGUMENT

### I.    PLAINTIFF HAS STANDING TO SUE UNDER ERISA

Defendants argue that Plaintiff lacks standing to sue under ERISA because he is a former employee and cashed out his investment after this action was filed.  (Def. Mem. at 11-12). Defendants are incorrect.

Plaintiff easily meets the test for standing because defendants do not dispute Plaintiff had standing at the time he commenced this action. Plaintiff's standing to sue must be evaluated at the time he filed the lawsuit. *Ericson v. Greenberg & Co.*, P.C., 118 Fed. Appx. 608, 611 (3d Cir. 2004) (judging whether plaintiff had a colorable claim to benefits under ERISA "at the time she filed her complaint"); *Steger v. Franco, Inc.*, 228 F.3d 889, 893 (8th Cir. 2000) ("[s]tanding is based on the facts as they existed at the time the lawsuit was filed"), a principle that courts have applied in ERISA cases. *See, e.g., Morrison v. Marsh & McLennan Cos., Inc.*, 439 F.3d 295, 303 (6th Cir. 2006); *Houston v. Building Trades Welfare Fund for Ohio Valley*, No. 03-2078, 2004 WL 1737864, at *3 (4th Cir. Aug. 4, 2004) ("Whether someone is a participant must be

determined as of the time the lawsuit is filed"); *McBride v. PLM Int'l Inc.*, 179 F.3d 737 (9th Cir.

1999) (same).  Defendants do not dispute that Plaintiff participated in the 401(k) Hourly Savings

Plan at the time he commenced this action.  (Def.. Mem. at 8) ("About two months *after*

*commencing this action*, on October 12, 2005, Phillips took all of his investments out of the

Memphis Plan ...") (emphasis added).

When Plaintiff commenced this action on August 17, 2005, he qualified as a "participant"

under 29 U.S.C. § 1002(7), and thus had standing to challenge Defendants' breaches of fiduciary

duties under ERISA.  A plan "participant is defined by ERISA as: "Any employee or former

employee of an employer ... who is or may become eligible to receive a benefit of any type from

an employee benefit plan which covers employees of such employer ...."  29 U.S.C. §1002(7).

Because Plaintiff was entitled to benefits under a plan at the time he filed suit, he has standing

under ERISA.  *See Crotty v. Cook,* 121 F.3d 541, 547 (9th Cir. 1997).

Moreover, several courts have held that even if a participant accepts payment of vested

benefits after commencing an ERISA action, that fact will not defeat standing or the continuation

of the lawsuit.  This issue was recently before the District of Maryland in *In re Mutual Funds*

*Investment Litig.*, 403 F. Supp. 2d 434 (D. Md. 2005). In that case, the plaintiff, Brian Flynn, was

a former employee of Strong Capital Management, Inc., who had accepted a lump-sum payout of

his vested benefits.  *Id.* at 438.   The court examined the relevant case law at length, concluding

that the Fourth Circuit had not accepted any "categorical rule" prohibiting such former

employees from suing as participants under ERISA. *Id.* at 441. The court noted that the Court in

*Rankin v. Rots*, 220 F.R.D. 511 (E.D. Mich. 2004), held that precluding former employees from

suing "would permit Kmart to exclude potential class members by simply paying them their

13

vested benefits. ERISA should not be interpreted to circumvent a plaintiff's recovery in this manner." *Rankin v. Rots*, 220 F.R.D. at 514.

Numerous other courts have recognized that employees should not forfeit a cause of action under ERISA to recover what may be rightfully theirs because they take a payout of a lump sum, thinking that is all that is owned to them at the time. *In re Mutual Funds*, 403 F. Supp. 2d 434 (D. Md. 2005). *See Crotty v. Cook,* 121 F.3d at 545 ("an ERISA plaintiff who has standing a the time an ERISA lawsuit was filed" does not lose standing "by accepting payment of vested benefits during the litigation," because this would give employers the power to escape ERISA liability by simply paying out vested benefits); *Vartanian v. Monsanto Corp.*, 14 F.3d 697, 702 (1st Cir. 1994) (to hold otherwise would give employers the ability "to defeat the employee's right to sue for a breach of fiduciary duty by keeping his breach a well guarded secret until the employee receives his benefits or by terminating benefits before the employee can file suit."); *Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan,* 883 F.2D 345, 350 (5th Cir. 1989), (all recipients of lump sum distributions are not foreclosed from pursuing ERISA claim); *Olson v. Chem-Trend Inc.*, No. 94-CV-75201, 1995 WL 866221 at *4 (E.D. Mich. May 30, 1995) (plaintiff still had standing to sue despite redeeming his vested shares and thus technically terminating his right to belong to the plan).

The Third Circuit, like the Fourth, also has no "categorical rule" excluding former employees from pursuing their ERISA claims.   In fact, the Third Circuit recognizes that in cases of *mootness* – which is really what defendants appear to be complaining about, given their concession that Phillips was still a plan participant when he sued -- the legal standard is distinct from, and more liberal than, the rule for standing. *Artway v. Attorney Gen'l of State of N.J.*, 81

14

F.3d 1235, 1246 (3d Cir. 1996). The Third Circuit in *Artway* noted that the mootness inquiry "asks whether a party who has established standing has now lost it because the facts of her case have changed over time." *Id.* The question is whether the changes in circumstances "have forestalled any occasion for meaningful relief." *Id.* (citing cases). The burden for satisfying the prohibition against mootness is "somewhat lower than that for standing." *Id.* Significantly, the Third Circuit listed the four <u>exceptions</u> to the mootness doctrine: "(1) wrongs that have collateral consequences ...; (2) wrongs that are capable of repetition yet evading review ...; (3) wrongs that are voluntarily ceased but could resume ...; (4) *wrongs to a class that continue though those to the named plaintiffs do not ....*" *Id.* Clearly, the last exception, for class actions, applies here.

## II.  PLAINTIFF NEED NOT BE A MEMBER OF EVERY PLAN TO ASSERT CLASS CLAIMS ON BEHALF OF ALL PARTICIPANTS IN THE PLANS

Defendants mistakenly argue that Plaintiff cannot assert the rights of the participants in the Coors Savings Plan because he was only a participant in the 401(k) Hourly Savings Plan. (Def. Mem. at 10). Defendants are incorrect. Their argument confuses standing, which is governed by Art. III of the Constitution, and suitability to act as a class representative, which is governed by Rule 23, Fed. R. Civ. P.

Defendants fail to raise any standing issue with regard to Plaintiff's allegation that he is proceeding on behalf of both the Coors Savings Plan and the 401(k) Hourly Savings Plan. The law is plain that "once a potential ERISA class representative establishes his own standing to sue his own ERISA-governed plan, there is no additional constitutional standing requirement related to his suitability to represent the putative class of members of other plans to which he does not belong." *Fallick v. Nationwide Mutual Ins. Co.*, 162 F.3d 410, 424 (6th Cir. 1998). The *Fallick*

Court analyzed the same argument Defendants raise here, and rejected it. The Sixth Circuit reversed the trial court's ruling that a plaintiff class representative lacked standing to represent members in other plans. *Id.* at 424. The Court analyzed the case law from numerous courts – including one from this Circuit – and held that "an individual in one ERISA benefit plan can represent a class of participants in numerous plans other than his own, if the gravamen of the plaintiff's challenge is to the general practices which affect all of the plans." *Id.* at 422 (*citing Forbush v. J.C. Penney Co., Inc.*, 994 F.2d 1101 (5th Cir. 1993); *Misch v. Community Mut. Ins. Co.*, 1995 U.S. Dist. LEXIS 5059 (S.D. Ohio Feb. 15, 1995); *Sutton v. Medical Serv. Assoc. of Pennsylvania*, 1993 U.S. Dist. LEXIS 9763 (E.D. Pa. 1993); *Doe I v. Guardian Life Ins. Co. of Am.*, 145 F.R.D. 466 (N.D. Ill. 1992)).

The *Fallick* Court also distinguished the decision from the Ninth Circuit that Defendants also rely upon here, *Acosta v. Pacific Enterprises*, 950 F.2d 611 (9th Cir. 1991), Def. Mem. at 10-11. *See Fallick*, 62 F.3d at 422 n.9. The Sixth Circuit pointed out that *Acosta* is inapplicable to an analysis whether a participant in one plan could represent the claims of participants in other plans for the simple reason that "Acosta brought suit only in his individual capacity; he did not seek to represent a class of plaintiffs similarly situated with respect to the two pension plans in question." *Id.* After confusing standing with suitability, Defendants cryptically quote from *Ortiz v. Fibreboard Corp.*, 119 S.Ct. 2295, 2314 (1999) in a footnote 16 of their brief. *See* Def. Mem. at 11, n. 16. Their quote from *Ortiz* has nothing to do with the issue Defendants raise. *Ortiz* analyzes Rule 23(b)(1) in "limited fund" class actions. *Ortiz* says nothing about whether a plaintiff in one plan can represent participants in other plans, as even a cursory review of that decision shows.

16

Here, the gravamen of Plaintiff's challenge is "to the general practices which affect all of the plans." *Fallick* 162 F.3d at 422. Plaintiff alleges that Defendants' wrongful conduct affected both the Coors Savings Plan and the 401(k) Hourly Savings Plan in exactly the same way. Defendants' course of conduct was adverse to both plans. Plaintiff alleges common questions of law and fact as to all participants in the Plans (¶103), and Plaintiff's claims are typical of those of all other plan participants. (¶104).

## III.  PLAINTIFF STATES A CLAIM FOR DEFENDANTS' FAILURE TO PRUDENTLY MANAGE PLAN ASSETS

Defendants argue that Plaintiff's First Claim for Relief must be dismissed under Rule 12(b)(6), Fed. R. Civ. P., because Defendants were not obligated under ERISA to diversify plan assets. (Def. Mem. at 15-16). Defendants also argue that *Moench v. Robertson,* 62 F.3d 553 (3d Cir. 1995) requires dismissal because it affords them a presumption of prudence in managing plan assets. Defendants are incorrect.

### A.  Defendants Incorrectly Argue that the Complaint Alleges a Failure to Diversify

Defendants argue that because the Plans are "eligible individual account plans" or EIAPs, defendants were statutorily exempt from diversifying the Plans' assets. (Def. Mem. at 16). According to Defendants, this means that Plaintiff's First Claim for Relief must be dismissed. This argument is flawed on several grounds.

To begin with, the statute – 29 U.S.C. § 1104(a)(1) – only exempts Defendants from diversification of plan assets. But the statutory exemption does not relieve Defendants from acting "in accordance with the duties of loyalty and care." *Moench,* 62 F.3d at 569 (discussing exemption from diversification as it relates to ESOPs). The plain wording of the statute

17

Defendants rely upon shows that the general prudence requirement of 28 U.S.C. § 1104 does not apply only with respect to diversification. In all other respects, the statute still requires a fiduciary to adhere to ERISA's general prudence requirement: "In the case of an eligible individual account plan ..., the diversification requirement of paragraph (1)(C) and the prudence requirement **(only to the extent that it requires diversification)** of paragraph (1)(B) is not violated by the acquisition or holding of ... qualifying employer securities ...." 29 U.S.C. § 1104(a)(2) (emphasis added).

Defendants incorrectly characterize Plaintiff's First Claim for Relief as one challenging a failure by Defendants to diversify plan assets. This is plainly wrong. The Complaint alleges that Defendants breached their fiduciary duties to act prudently and loyally by offering Coors Stock as an option when the price of the stock was artificially inflated as a result of false statements and material omissions. (¶¶7-8, 12, 14, 69, 81, 89, 94-95, 97, 100, 107-119). As a result, investment in Coors Stock was not prudent and plan assets should not have been invested in it. (¶114).

Defendants conveniently seek to invoke the statutory exemption by trying to convert Plaintiff's allegations into a claim that Defendants should have diversified the EIAP. Defendants cite to ¶¶109, 110, 114 to 116 of the Complaint. (Def. Mem. At 15). But none of those paragraphs seek to impose liability on Defendants for failing to diversify.

Even though Defendants may not be held liable under the statutory exemption for failing to diversify, a prudent fiduciary may still be required under the circumstances alleged here to refrain from offering employer stock as an option, removing employer stock as an option, halting additional investments into employer stock, or informing participants that employer stock is artificially inflated. None of these prudent acts require selling or diversifying employer stock.

18

For example, in *In re JDS Uniphase Corp. ERISA Litig.*, No. C 03-04743 CW (WWS), 2005 WL

1662131 (N.D. Cal. July 14, 2001), the Court explained the difference between suits for

imprudent investment in artificially inflated stock and failing to diversify plan assets:

> [P]laintiffs allege that any investment in JDSU stock was imprudent in light of
> what defendants knew about JDSU and the risk of investing in JDSU stock.
> Plaintiffs' claim is therefore not a diversification claim, and the section 404(a)(2)
> exemption and *Wright* [*v. Oregon Metal. Corp.*, 360 F.3d 1090 (9th Cir. 2004)], do
> not resolve this issue. [*Id.* at *7].

Here, given Plaintiff's allegation of artificial inflation of Coors Stock, the applicable

standard is supplied by ERISA § 408(e)(1), 29 U.S.C. § 1108(e)(1).  *See Donovan v.*

*Cunningham,* 716 F.2d 1455, 1467-68 (5th Cir. 1993).  That statute states that plan purchases

must be for adequate consideration.  "Adequate consideration" is "the price of the security

prevailing on a national securities exchange."  29 U.S.C. § 1002(18)(A)(1).   But because

Defendants withheld material information from the market, the price of Coors Stock on the

national securities exchange cannot be relied upon.  *See Basic v. Levinson*, 485 U.S. 224, 241-42

(1988) ("in an open and developed securities market, the price of a company's stock is

determined by the available material information regarding the company ... [and m]isleading

statements will therefore defraud purchasers of stock even if purchasers do not directly rely on

the misstatements").  Many courts have recognized claims for imprudent investment in publicly

traded stocks whose price was artificially inflated.  *See, e.g., Lalonde v. Textron, Inc.*, 369 F.3d 1,

61 (1st Cir. 2004); *Hill v. Bellsouth Corp.*, 313 F. Supp.2d 1361, 1367-68 (N.D. Ga. 2004); *In re*

*Enron Sec. Deriv. & ERISA Litig.*, 284 F. Supp.2d 511, 534 n.3, 672-74 (S.D. Tex. 2003)

(plaintiffs are "not alleging that Defendants failed to diversify the ESOP assets, but that in breach

of their fiduciary duties to plan participants and beneficiaries, they permitted an imprudent

investment in Enron stock when they knew or should have known it was very risky").

### B.    **This Action is not Premature**

Defendants claim that Plaintiff's action should be dismissed because "only a year has elapsed since the merger was consummated." (Def. Mem. at 20).   Defendants argue that Coors Stock price rose to $73.49 on April 28, 2006, and thus as a matter of law, "any claim that there was some actionable merger-related misstatement has long ago been rejected by the market." (Def. Mem. at 21).   Based on these "facts," Defendants ask the Court to rule as a matter of law that the Proxy Statement and other Company public filings were devoid of material misstatements or omissions under the federal securities laws.  The argument is meritless.

Defendants rely heavily on the Ninth Circuit's decision in *Wright* in arguing that Defendants cannot be held liable for breaching their duty to act prudently because the Company's stock price rebounded slightly on one day in over a year after the collapse of the stock after the merger.[2]  The decision in *Wright* has no application here.  Plaintiffs in that case made no allegation of underlying securities fraud, a false proxy statement and artificial price inflation, as exist in this case.  On the contrary, the plaintiffs in *Wright* wanted the employer's plan to allow them to sell more of their company stock held in an EIAP so they could "capture the 'premium' generated by the [company's recent] merger" with another company.  *Wright v. Oregon*

---

[2]  The Company's stock price has plunged since Defendants filed their brief in May 2006.  It's closing price on August 4, 2006 was $66.93, only slightly higher than the $63 it sank to on April 28, 2005.  (¶97).  The stock has been generally depressed since it fell sharply in April 2005, the close of the class period.

*Metallurgical Corp.*, 360 F.3d 1090, 1091 (9th Cir. 2004).

Here, there is no reason why Plaintiff must wait to see how the merger turns out. Plaintiff alleges that Coors Stock was artificially inflated during the Class Period as a result of Defendant's fraud; that the stock was an imprudent investment; that the stock price declined substantially on the revelation of the bad news (¶97); that the Company announced a restatement of its financials for the first quarter of 2005 and a decline in profits by 46% for the first quarter of 2005; and that the Company incurred a $500 million tax liability resulting from Molson's failed pre-merger Brazilian operations (¶100). The issue in *Wright* was whether defendants committed a breach of fiduciary duty by not allowing employees to sell their employer stock. There was no allegation in *Wright* of securities fraud or that the employer's stock was an imprudent investment as a result of artificial inflation caused by Defendants' own fraudulent statements and material omissions. Defendants also recently disclosed in the Company's public filings that both the SEC and the New York Stock Exchange are investigating allegations related to those alleged by plaintiffs in this case and the related securities fraud class action. There is nothing premature about this lawsuit.

## C.      If the *Moench* Presumption Applies, Plaintiff Has Alleged Sufficient Facts to Overcome It

Defendants argue that in any event, they are protected by a presumption of prudence articulated in *Moench*. (Def. Mem. at 25-27). Defendants argue they are entitled to dismissal as a matter of law because the Complaint does not sufficiently allege that the Plans' fiduciaries abused their discretion by continuing to offer Coors Stock as an investment option. (Def. Mem. at 26). Defendants are wrong.

21

Even if the presumption of prudence applied at this stage, Plaintiff alleges facts satisfying the presumption. The *Moench* Court explained that plaintiffs may rebut the presumption by showing "that the ERISA fiduciary could not have believed reasonably that continued adherence to the ESOP's direction was in keeping with the settlor's expectations of how a prudent trustee would operate." *Moench*, 62 F.3d at 571. *See In re Honeywell Int'l Corp.*, 2004 U.S. Dist. LEXIS 21585 at *39-*40 (D.N.J. Sept. 14, 2004).

Here, the Complaint alleges sufficient facts to establish that Coors Stock became an imprudent investment under ERISA. Plaintiff has alleged a deception regarding Molson's pre-merger business condition and financials (¶¶61-65, 81); a deception regarding Coors pre-merger adherence to its business plan, (¶¶ 66-70, 75-77, 81, 92, 94, 95); knowledge on the part of Defendants of the inflated values of both companies before the merger (¶¶81, 94, 95); materially false statements and omissions in the Proxy Statement sent to all shareholders that enabled management to secure shareholder approval in the face of rising opposition (¶¶71-73, 80-88, 92, 94, 100); a strong motive on the part of management of both Molson and Coors because the families controlling these companies viewed the merger as a means to forestall an unwanted takeover of either company (¶71); a price drop on disclosure of the fraud (¶97); a subsequently announced restatement of Molson Coors' financial results for the first quarter of 2005 and profit decline of 45% for the second quarter of 2005 (¶100); and losses as a result of the Plan's offering of, and investment in, Company stock. (¶¶16, 97). These allegations are sufficient at this stage of the proceeding.

Defendants' argument that because Molson Coors was not on the brink of financial collapse, Plaintiff's cannot overcome the presumption of prudence in *Moench*. This is incorrect.

To begin with, *Moench* was decided on summary judgment, on a full record. *Moench*, 62 F.3d at 573. Deciding whether a presumption has been overcome is plainly an *evidentiary question* that should not be decided on a motion to dismiss. Second, Plaintiff alleges that the Company suffered a precipitous stock price decline (¶97), and that the Defendants were conflicted – both Coors and Molson desired the merger, not for a proper business purpose, but as a hedge against a hostile takeover of either company. (¶71).

In this regard, the District Court's decision in *Honeywell* is on all fours with this case. In *Honeywell*, the defendants also sought dismissal based on the application of the *Moench* presumption of prudence, arguing that Honeywell was not in a state of financial deterioration. *Honeywell*, 2004 U.S. Dist. LEXIS 21585 at *39. The District Court denied the motion because there was no developed factual record and plaintiffs had alleged the "presence of fraud involving the leadership of the company," a factor many courts have held will defeat the *Moench* presumption:

> Given the facts and circumstances alleged in the Complaint, it would be inappropriate to dismiss Plaintiffs' claims of imprudent management on the basis of the *Moench* presumption. *Moench* suggests that the presumption of prudence can be overcome by a showing of precipitous decline in the price of employer stock, combined with the fiduciary's knowledge of the company's impending collapse and his or her own conflicted status. **Other cases indicate that a factor weighing against the presumption is the presence of fraud involving the leadership of the company.** *See Lalonde v. Textron, Inc.*, 369 F.3d 1 (1st Cir. 2004); *Canale v. Yegen,* 782 F. Supp. 963, 967-68 (D.N.J. 1992); *In re Sprint Corporation ERISA Litigation,* [388 F. Supp. 1207], 2004 U.S. Dist. LEXIS 9622, 2004 WL 1179371, at *12-*13. Defendants contend that the *Moench* presumption can be overcome only where the employer is on the brink of financial collapse, and they note that Honeywell was never, and is not alleged to have been, in such a position. **Nevertheless, Plaintiffs allege that Honeywell Plan fiduciaries were privy to a fraud that vastly inflated the price of its stock; and those allegations may describe circumstances in which "the ERISA fiduciary could not have believed reasonably that continued adherence to the ESOP's**

23

> **direction was in keeping with the settlor's expectations of how a prudent trustee would operate."** *Moench*, 62 F.3d at 571.

*Honeywell*, 2004 U.S. Dist. LEXIS 21585 at *39 (footnote omitted) (emphasis added).

The *Honeywell* Court also refused to apply the presumption in the absence of a factual record: "the Court is properly reluctant to hold at this stage that Plaintiffs can prove no set of facts sufficient of overcome the presumption." *Id.* n. 16.

### D. Defendants' Argument that they Could not Have Prevented the Loss is Untrue and has been Rejected

Defendants seek to evade liability by arguing that the Complaint should be dismissed because they could not have divested the Plans of Company stock or disclosed the true facts to plan participants. (Def. Mem. at 28). Effectively, Defendants argue that although the Company and its insiders created the fraud, they were powerless under the law to do anything about it that would avoid the Plan Participants' losses. This argument is meritless.

In *Honeywell*, the District Court properly rejected these same arguments, namely that assuming material information was not disclosed, defendants could not reveal it. The Court noted that there may be instances when an ERISA fiduciary is prevented from disclosing information to plan participants "because he or she obtained the information in confidence (for example in his or her capacity as a corporate officer or director of the employer – or for that matter of another company in which the Plan invests)." *Honeywell*, 2004 U.S. Dist. LEXIS 21585 at *44. But when the Plaintiff alleges that the Defendants have engaged in a scheme to defraud the market, Defendants *have no basis* to conceal the information. As the Court made clear: "Here, however, the allegations imply that Defendants *could have had no legitimate interest in concealing the information* at issue because their concealment of the true state of

24

Honeywell's affairs *violated securities laws*." *Id.* (emphasis added).

The only case Defendants rely on, *Edgar v. Avaya, Inc.*, 2006 U.S. Dist. LEXIS 23151 at *29 (D.N.J. April 24, 2006), stated that the employer plan could not <u>sell</u> employer stock based on non-public adverse information without going astray of the federal insider trading laws. *Id.* at *30.  Plaintiff here is not arguing that the Plans should have divested themselves of Molson Coors stock.  With regard to Defendants' argument that disclosure would have led to a stock price drop in any event, the Court in *Honeywell* properly held that this argument failed to provide a basis for dismissing any of plaintiffs' claims. *Honeywell*, 2004 U.S. Dist. LEXIS at *42-*43.  The Court rejected the argument because the "issues of causation and damages ... are essentially fact-based arguments inappropriate on a motion to dismiss." *Id.* at *42.  The Court also noted, as Defendants concede here (Def. Mem. at 28), that disclosure would have "prevented the Plan from acquiring (through Plaintiffs' uninformed investment decisions and through continued investment of matching contributions) additional shares of overpriced Honeywell stock: the longer the fraud continued, the more of the Plan's good money went into a bad investment." *Id.* at *42-*43.

## IV.     THE COMPLAINT STATES A CLAIM FOR FAILING TO PROVIDE COMPLETE AND ACCURATE INFORMATION TO PLAN PARTICIPANTS

Defendants argue that Plaintiff's Second Claim for Relief should be dismissed for failure to state a claim because the misrepresentations were not fiduciary in nature, and in any event, were immaterial as a matter of law.  (Def. Mem. at 29, 33). These arguments are incorrect.

Plaintiff alleges that Defendants breached their disclosure duties to Plan Participants by providing incomplete and inaccurate information regarding Molson Coors and concealing

material information regarding the Company and its stock. (¶¶122-126). There is no question that "[l]ying is inconsistent with the duty of loyalty owed by all [ERISA] fiduciaries." *Varity Corp. v. Howe,* 516 U.S. 489, 506 (1996).

The securities laws require an employer to disseminate certain portions of its SEC filings (Form S-8) to employees. *See In re WorldCom, Inc.*, 263 F. Supp.2d 745, 766 n.14 (S.D.N.Y. 2003). Accordingly, Molson Coors' false statements identified and quoted in the Complaint were as a matter of law fiduciary speech since these statements were distributed to Plan Participants. The Complaint also alleges that Molson Coors' false statements were specifically incorporated into the Plans material that Defendants, acting in their fiduciary capacity, distributed to participants. (¶53)[3] Thus, to the extent that Plaintiff alleges that Defendants "breached their fiduciary duties not to misinform by incorporating false SEC filings into plan documents, [Plaintiff] has alleged a cause of action upon which relief can be granted." *In re Ferro Corp. ERISA Litig.*, 422 F. Supp.2d 850, 865 (N.D. Ohio 2006).

---

[3] Paragraph 53 of the Complaint alleges: "Molson Coors' SEC filings, such as proxy statements and reports of Forms 10-K and 10-Q, were incorporated into and made a part of the Plans' communications to Participants to be used by Participants in managing the Plans' assets and benefits. Therefore, these SEC filings were 'Fiduciary Communications' under ERISA, as defined herein. Molson Coors was a fiduciary in that it exercised discretion in determining the information relating to the Company's financial condition to be included in the SEC filings disseminated to Participants as part of Molson Coors' Fiduciary Communications."

Defendants' other argument, that the false statements and omissions were immaterial as a matter of law, is wrong on two counts. First, the law in this Circuit is clear that materiality is a "mixed question of law and fact." *Fischer v. The Philadelphia Elec. Co.*, 994 F.2d 130, 135 (3d Cir. 1993) (reviewing materiality standard in ERISA context). *Summary judgment* on the question of materiality is proper only if reasonable minds cannot differ on the question. *Id.* (denying summary judgment on materiality question based on factual record before the court) (emphasis added). Here, dismissal at the motion to dismiss stage based solely on Defendants' argument that no reasonable employee would consider Defendants' alleged false statements and omissions to be material would be improper.

Defendants also contradict themselves on materiality in their own brief. On page 28 of their brief, Defendants argue that Plaintiff would have sustained losses had Defendants disclosed "**the <u>material</u> non-public information**" alleged in the Complaint. (Def. Mem. at 28) (emphasis added). Defendants argue that upon disclosure of this information, the Company's stock price would have dropped, causing losses to participants. Nevertheless, just a few pages later, on page 33 of their brief, Defendants argue that the non-disclosures are nevertheless immaterial as a matter of law. This inconsistency alone shows that the Court should not dispose of the question of materiality on this motion.[4]

---

[4]The Court should also reject Defendants' argument that Plaintiff "[cannot] depend on the presumption of reliance sometimes applicable under federal securities laws." Def. Mem. at fn. 50. The cases upon which defendants rely involve claims for misrepresentations or omissions in **ERISA plan documents**. No such claim is made here. Rather, the complaint in this case alleges that plan fiduciaries' failed to take appropriate action to prevent plan participant losses where the Company's stock had been artificially inflated as a result of fraud. Based on the allegation that fraud affected the Company's stock price during the class period, the Court should apply the presumption of reliance uniformly applied in securities fraud cases. *See Basic v. Levinson*, 485

## V.    PLAINTIFF STATES A CLAIM FOR FAILURE TO MONITOR

Plaintiff has adequately pled failure to monitor in his Third Claim for Relief.  It is well-settled that a fiduciary can be held liable for failing to adequately supervise its appointees, ensure that they prudently manage plan investments, and adequately provide them with critical information needed to perform those duties.  *See In Re Xcel Energy Inc. Sec., Deriv., and ERISA Litig,* , 312 F. Supp.2d 1165,  1183 (D. Minn. 2004); *Woods v. Southern Co.*, 396 F. Supp.2d 1351, 1373 (N. D. Ga. 2005). ("the duty to keep appointees informed has gained reasonably wide acceptance as an inherent facet of the more general 'duty to monitor.'").  Defendants do not challenge the facts regarding their appointment duties.

## VI.    THE CLAIMS AGAINST THE DIRECTOR
##          DEFENDANTS SHOULD NOT BE DISMISSED

Defendants argue that the claims against the Director Defendants should be dismissed because they never acted as ERISA fiduciaries.  (Def. Mem. at 37).

The Director Defendants named in the Complaint are Kiely, Coors, Herington, Oliphant, Patsley, Sanders and Yates.  (¶35).  Kiely as CEO and a Director signed amendments to the Master Trust as well as amendment to the 401(k) Savings Plan.  (¶27).  Defendant Coors was Chairman of the Board and was solely and exclusively responsible for appointing, removing and replacing the members of the Plan Committee. (¶28).   Coors also signed amendments to the Master Trust and to the 401(k) Savings Plan. (*Id.*).  All Director Defendants are all alleged to

---

U.S. 224 (1988).  On this basis, the Complaint's reliance allegations are sufficient to satisfy Rule 8's pleading standards.

28

have exercised discretionary authority, control or responsibility over the Plans' management or

administration or had authority or control over the management or disposition of the Plans'

assets. (¶¶27-35).   All of the Director Defendants were instrumental in ratifying the Proxy

Statement for the merger.  (Id.).  The Director Defendants exercised control over the Molson

Coors employees serving on the Plan Committee and were thus de facto fiduciaries within the

definition of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).  (¶52).  Plaintiff's claims against these

defendants should not be dismissed at this stage of the proceedings in the absence of a more

complete factual record.

**CONCLUSION**

For the foregoing reasons, defendants' motion to dismiss the amended complaint should

be denied.

Dated: August 7, 2006

CHIMICLES & TIKELLIS LLP

Pamela S. Tikellis (#2172)
Robert J. Krines (#2546)
A. Zachary Naylor (#4539)
One Rodney Square
P.O. Box 1035
Wilmington, DE  19899
Tel: (302) 656-2500

**GAINEY & MCKENNA**
Thomas J. McKenna, Esq.
485 Fifth Avenue, 3rd Floor
New York, NY 10017
Tel: (212) 983-1300

**VIANALE & VIANALE LLP**
Kenneth Vianale, Esq.
2499 Glades Road, Suite 112
Boca Raton, Florida  33431

29

Tel: (561) 392-4750

**Attorneys for Plaintiff**

30