# Exhibit C

Westlaw.

Not Reported in F.Supp.2d                                                                    Page 1
Not Reported in F.Supp.2d, 2005 WL 1662131 (N.D.Cal.), 36 Employee Benefits Cas. 1140
**(Cite as: Not Reported in F.Supp.2d)**

▷
Briefs and Other Related Documents

United States District Court,N.D. California.
In re JDS UNIPHASE CORP. ERISA LITIGATION
**No. C 03-04743 CW (WWS).**

July 14, 2005.

Alan R. Plutzik, Kathryn Schofield, Bramson, Baskin, Plutzik & Birkhaeuser Llp, Walnut Creek, CA, Andrew M. Schatz, Barbara F. Wolf, Robert A. Izard, Todd A. Higgins, Wayne T. Boulton, Schatz & Nobel, P.C., Hartford, CT, Joseph H. Meltzer, Edward Chang, Edward W. Ciolko, Richard S. Schiffrin, Schiffrin & Barroway, Llp, Bala Cynwyd, PA, Robert S. Green, Robert A. Jigarjian, Green Welling Llp, San Francisco, CA, for Plaintiffs.
Raymond M. Hasu, Morrison & Foerster Llp, San Francisco, CA, Defendants.

MEMORANDUM OF OPINION AND ORDER
SCHWARZER, Senior J.
***1** THIS DOCUMENT RELATES TO: ALL ACTIONS

This is a class action brought by and on behalf of employees and former employees of JDS UNIPHASE Corp. ("JDSU") who participated in JDSU's 401(k) Plan between February 4, 2000, and the filing of this action. The class also includes certain former employees of Optical Coating Laboratories, Inc. ("OCLI") who participated in OCLI's 401(k) Plan between the date JDSU acquired OCLI (February 4, 2000) and the date on which the OCLI Plan was merged with the JDSU Plan (July 1, 2001) (collectively, the "Plans"). JDSU manufactures products for fiber optic communications and for industrial, commercial and consumer applications.

The consolidated complaint names forty-six defendants, in four categories: JDSU, fourteen current and former directors of JDSU ("Director Defendants"), eight current and former members of the JDSU Benefits Committee ("Committee Defendants"),[FN1] and twenty-three individual defendants who engaged in some Plan-related activities ("Individual Defendants"). It alleges that the defendants were fiduciaries and violated their fiduciary duties under the Employee Retirement

Income Security Act, 29 U.S.C. § § 1001-1461 ("ERISA"), by having the Plans make imprudent investments in JDSU stock and by negligently misrepresenting and failing to disclose material information to participants. As a result, the Plans suffered losses when the stock fell from $145 to $5 per share. ¶ ¶ 4-7.

> FN1. The complaint names as members of the Benefits Committee Michael Burkhard, Danny Karst, Angela Kupps, Joe Passarello, Andrew Pollack, Dena Regan, Garry Ronco, and Steve Sapers. None is alleged to have been a director of JDSU.

All defendants have jointly moved to dismiss under Rule 12(b)(6).

## I. STANDARD OF REVIEW

A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Pleadings are construed liberally in favor of the pleader, and in challenging the sufficiency of a complaint all of the material allegations are taken as true. *Jenkins v. McKeithen,* 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969). The standard under Federal Rule of Civil Procedure 8 contains a powerful presumption against rejecting pleadings for failure to state a claim. *Gilligan v. Jamco Dev. Corp.,* 108 F.3d 246, 249 (9th Cir.1997). "The Supreme Court has explained that it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test." *Id.* at 249 (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (internal citation and quotation marks omitted)). However, "conclusory allegations without more are insufficient to defeat a motion to dismiss." *McGlinchy v. Shell Chem. Co.,* 845 F.2d 802, 810 (9th Cir.1988).

## II. DEFENDANTS' FIDUCIARY STATUS UNDER ERISA

The defendants do not contest the sufficiency of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 2
Not Reported in F.Supp.2d, 2005 WL 1662131 (N.D.Cal.), 36 Employee Benefits Cas. 1140
**(Cite as: Not Reported in F.Supp.2d)**

plaintiffs' allegations with regard to the ERISA fiduciary status of JDSU or the Committee Defendants. [FN2] However, the defendants argue that the complaint fails to set forth nonconclusory allegations that the Director Defendants and the Individual Defendants are ERISA fiduciaries with regard to the counts alleged in the complaint.

> FN2. The complaint alleges that JDSU and the Benefits Committee have responsibility for administering the Plans, determining the investment options available under the Plans, and that these defendants are ERISA fiduciaries with respect to the alleged fiduciary breaches.

**\*2** Plaintiffs set forth four counts alleging various fiduciary breaches against the various defendants. Count I alleges failure to prudently and loyally manage the Plans' assets against all defendants; Count II alleges failure to monitor against JDSU and the Director Defendants; Count III alleges failure to provide complete and accurate information to Plan participants and beneficiaries against all defendants; Count IV alleges breach of duty to avoid conflicts against all defendants, with certain allegations directed toward specific defendants.

### A. ERISA Fiduciary Status

To establish personal liability under ERISA § 409, 29 U.S.C. § 1109(a), "an individual or entity must be a fiduciary." _Wright v. Oregon Metallurgical Corp.,_ 360 F.3d 1090, 1093-94 (9th Cir.2004). Section 3(21)(A) provides in pertinent part that "a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or ... (iii) has any discretionary authority or discretionary control responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A)(i) and (iii). Fiduciary status under ERISA is defined "in _functional_ terms of control and authority over the plan." _Mertens v. Hewitt Assocs.,_ 508 U.S. 248, 262, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993); _Arizona State Carpenters Pension Trust Fund v. Citibank,_ 125 F.3d 715, 720 (9th Cir.1997); _In re Enron Corp. Sec. Derivative & "ERISA" Litig.,_ 284 F.Supp.2d 511, 544 (S.D.Tex.2003). Fiduciary status under ERISA is not an "all-or-nothing concept," and "a court must ask whether a person is a fiduciary _with respect to the particular activity at issue." Cotton v. Massachusetts Mut. Life Ins. Co.,_ 402 F.3d 1267, 2005 WL 604905 \*1, \*5 (11th Cir.2005) (emphasis added) (citing _Coleman v. Nationwide Ins. Co.,_ 969 F.2d 54, 61 (4th Cir.1992)); _see also Maniace v. Commerce Bank,_ 40 F.3d 263, 267 (8th Cir.1994) (same). "[F]iduciary status is to be determined by looking at the _actual_ authority or power demonstrated, as well as the formal title and duties of the party at issue." _Landry v. Airline Pilots Ass'n Int'l AFL-CIO,_ 901 F.2d 404, 418 (5th Cir.), _cert. denied_ 408 U.S. 895 (1990).

### B. Sufficiency of the Pleadings

Throughout the complaint, the allegations of fiduciary status against the Director Defendants and the Individual Defendants are cast in the statutory language that they "exercis[ed] discretionary authority with respect to management and administration of the Plans and/or management and disposition of the Plans' assets." Lacking any facts, such conclusory allegations are insufficient to afford defendants adequate notice of the grounds underlying the claims against them. _See Cotton,_ 402 F.3d 1267, 2005 WL 604905 at \*6 (holding that simple allegations that a defendant falls within the statutory definition of fiduciary are conclusory assertions, not well-pleaded factual allegations); _Conley,_ 355 U.S. at 47 (stating that Federal Rule of Civil Procedure 8 requires a plaintiff to provide a short and plain statement of the claim so that the opposing party receives "fair notice of what the plaintiff's claim is and the ground upon which it rests"). Plaintiffs' boilerplate statutory allegations are therefore meaningless. To determine whether plaintiffs have sufficiently alleged defendants' status as ERISA fiduciaries, the court must discern from other portions of the complaint the functions that the various defendants allegedly performed, _see Custer v. Sweeney,_ 89 F.3d 1156, 1162 (4th Cir.1996), and decide whether performance of those functions caused the defendants to become fiduciaries as to the claims asserted, _see Coleman,_ 969 F.2d at 61.

### 1. Allegations regarding the Director and Individual Defendants

**\*3** As stated, the defendants do not dispute the fiduciary status of JDSU and the Committee Defendants. Regarding the liability of the Director Defendants and the Individual Defendants, the complaint alleges: (1) that the Board of Directors acted as the "primary executive arm" of JDSU, wielded the company's ultimate power to modify the Plans, possessed authority for deciding whether to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                 Page 3
Not Reported in F.Supp.2d, 2005 WL 1662131 (N.D.Cal.), 36 Employee Benefits Cas. 1140
**(Cite as: Not Reported in F.Supp.2d)**

make matching contributions under the Plans, and reviewed and evaluated information received on the status of the Plans from Compensation Committee reports, ¶ ¶ 79-81; and (2) that the Individual Defendants were named as fiduciaries and/or signed certain documents or were otherwise involved in the administration of the Plans, thus making them fiduciaries. ¶¶ 45-46.

### 2. Count I

Plaintiffs allege that the Director Defendants and the Individual Defendants are ERISA fiduciaries regarding the failure to prudently and loyally manage the Plans' assets. However, the allegations indicate that only the Benefits Committee is responsible for the actual management of the stock fund. It states that the Benefits Committee "shall be *solely* responsible for directing the Trustee as to the investment and disposition of the Trust Fund and shall have responsibility for the overall diversification of the Trust Fund." ¶ 88 (emphasis added). The Benefits Committee is also charged with selecting and monitoring all investment options available to participants under the Plans. The allegations regarding the Director Defendants' general oversight or the Individual Defendants' ministerial actions regarding the Plans fail to show that these groups of defendants had any discretionary control over the managing of the Plans' assets. *See Cotton,* 402 F.3d 1267, 2005 WL 604905 at *5 ("[A] court must ask whether a person is a fiduciary with respect to the particular activity at issue.").

### a. Director Defendants

Although a company may act *through* its directors, the Director Defendants are only fiduciaries to the extent that they exercise discretionary authority with respect to the particular activity at issue. *Coleman,* 969 F.2d at 61; *Cotton,* 402 F.3d 1267, 2005 WL 604905 at *5; *see also* 29 C.F.R. § 2509.75-8, D-4 (1993) (Department of Labor) (stating that directors' liability and responsibility as fiduciaries is limited to the extent of the functions they perform). The Director Defendants are not fiduciaries merely because the corporation is a fiduciary. *See In re Calpine Corp. ERISA Litig.,* C-03-1685 (N.D.Cal.2005), slip op. at 5. Here, plaintiffs allege breaches of fiduciary duty involving the JDSU stock fund, but allege no facts that show how the Director Defendants had any discretionary authority over the management of the stock fund.

### b. Individual Defendants

Plaintiffs allege that the Individual Defendants were identified as fiduciaries in a letter to plaintiffs from counsel for JDSU. ¶ 46. This letter, identifying generic Plan fiduciaries, was provided pursuant to a stipulation and order consolidating the ERISA actions in this case. However, the definition of fiduciary under ERISA is a functional one that looks to the actual authority and control performed by a defendant. *Mertens,* 508 U.S. at 262. A person or entity may be a fiduciary for one function but not for another. *Hansen v. North Trident Reg. Hosp.,* 60 F.Supp.2d 523, 526 (D.S.C.1999). Fiduciary status under ERISA is not an all-or-nothing concept, and the important inquiry is whether the person is a fiduciary with respect to the activity at issue. *Coleman,* 969 F.2d at 61. Here, the allegations fail to set forth any facts demonstrating authority or control over the stock fund by the Individual Defendants. Plaintiffs' only specific allegation is that the Individual Defendants signed certain documents under certain titles, but this does not make an individual an ERISA fiduciary. *See In re WorldCom, Inc. ERISA Litig.,* 263 F.Supp.2d 745, 766 (S.D.N.Y.2003) ("Those who prepare and sign SEC filings do not become ERISA fiduciaries through those acts."); *Kayes v. Pac. Lumber Co.,* 51 F.3d 1449, 1460 (9th Cir.1995) (holding that ERISA fiduciary status depends on an individual's functional role rather than title). The preparation of government reports required by government agencies is a ministerial function, and those performing such functions are not fiduciaries. 29 C.F.R. § 2509.78-5 at D-2. Absent any specific allegations that the Individual Defendants exercised discretionary control or authority regarding the management of the stock fund, there is no basis for finding ERISA fiduciary status. *IT Corp. v. Gen. Am. Life Ins. Co.,* 107 F.3d 1415, 1420 (9th Cir.1997) (" 'Persons who have no power to make any decisions as to plan policy, interpretation, practices or procedures' are not fiduciaries.") (citing 29 C.F.R. § 2509.75-8 at D-2).[FN3]

> FN3. Plaintiffs argue that "it is likely" that some of the Individual Defendants were members of the Administrative Committee, but that this cannot be verified without further discovery. However, the plaintiffs fail to allege that the Administrative Committee had any discretionary control or

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 1662131 (N.D.Cal.), 36 Employee Benefits Cas. 1140
**(Cite as: Not Reported in F.Supp.2d)**

authority over the management of the stock fund. The allegations state that the Administrative Committee had the power to construe and interpret Plan documents, appoint advisors, provide Plan participants with financial reports, and appoint other persons to carry out certain duties under the Plan. The fact that some Individual Defendants may have been members of such a committee falls short of providing specific nonconclusory allegations that such individuals exercised discretionary control or authority over the management of the stock fund.

### 3. Count II

**\*4** Plaintiffs allege that the Director Defendants are ERISA fiduciaries with regard to failing to monitor the Benefits Committee, the Administrative Committee, and the Individual Defendants, and provide them with accurate information.

### a. OCLI Plan

Plaintiffs allege that OCLI was acquired by JDSU on February 4, 2000, that JDSU maintained the OCLI Plan from February 4, 2000, through July 21, 2001, and that JDSU was the direct successor of the former entity which administered the OCLI Plan. Plaintiffs allege that JDSU, as that successor, was given explicit responsibility under the OCLI Plan to appoint and monitor the Administrative Committee, the Plan administrator, and set the parameters of their responsibilities under the Plan. The issue of whether and when JDSU became the successor to OCLI by acquiring OCLI, and whether the Board of Directors therefore had discretionary authority to appoint fiduciaries under the OCLI Plan, as it did under the JDSU Plan, requires factual development that makes the issue inappropriate for dismissal at this stage.

### b. Fiduciary status of the Director Defendants

As to both Plans, plaintiffs allege that "JDSU, through its Board of Directors or otherwise, had the authority and discretion to hire and terminate [its] officers and employees" and "to appoint, monitor, and remove officers and employees from their individual fiduciary roles with respect to the Plans." ¶ 17. Accepting as true plaintiffs' allegation that JDSU had the discretionary control and authority to appoint fiduciaries under the Plans, there arises a duty to

monitor such fiduciaries. Where the discretionary authority to select or appoint fiduciaries exists, a director's duty to monitor those appointees also exists. 29 C.F.R. § 2509.75-8, DR-4 ("[T]he board of directors may be responsible for the selection and retention of plan fiduciaries. In such a case, members of the board of directors exercise 'discretionary authority or discretionary control respecting management of such plan.' "); *see also Batchelor v. Oak Hill Med. Group,* 870 F.2d 1446, 1448-49 (9th Cir.1989) (citing 29 C.F.R. § 2509.75-8, DR-4); *Leigh v. Engle,* 727 F.2d 113, 133-34 (7th Cir.1984) (same); *Calpine,* C-03-1685 at 10.[FN4] Plaintiffs have sufficiently alleged fiduciary status of the Director Defendants with regard to a duty to monitor their appointees.

> FN4. Defendants argue that plaintiffs must specifically allege not only that defendants had authority to appoint or select fiduciaries, but that they retained control of monitoring those fiduciaries. This is not supported by the case law or federal regulations as explained by the Department of Labor. *Coyne & Delaney Co. v. Selman,* 98 F.3d 1457, 1465-66 (4th Cir.1996) (citing 29 C.F.R. § 2509.75-8 at FR-17, and stating that "the *power* ... to appoint, retain, and remove plan fiduciaries constitutes 'discretionary authority' over the management or administration of a plan") (emphasis added).

### 4. Count III

Plaintiffs allege that the Director Defendants and the Individual Defendants are ERISA fiduciaries with respect to the failure to provide complete and accurate information to Plan participants and beneficiaries. ¶ 179. Again, fiduciary status under ERISA is not an all-or-nothing concept, and the defendants are only liable to the extent that they have discretionary authority or control over the activity at issue. *Coleman,* 969 F.2d at 61. For the same reasons that plaintiffs have failed to allege facts showing that the Director Defendants or the Individual Defendants exercised any authority or control over the management of the trust fund, they have also failed to allege that either group of defendants possessed any responsibility for providing information to the Plan participants.

**\*5** In fact, the complaint specifically alleges that the Benefits Committee and the Administrative

Not Reported in F.Supp.2d                                                                                    Page 5
Not Reported in F.Supp.2d, 2005 WL 1662131 (N.D.Cal.), 36 Employee Benefits Cas. 1140
**(Cite as: Not Reported in F.Supp.2d)**

Committee-not the Director Defendants or the Individual Defendants-had the responsibility to provide prospectuses and other information to the Plan participants. ¶ ¶ 92, 95. Such allegations are noticeably absent from any statement describing the duties of the Director Defendants and the Individual Defendants. Alleging that the Director Defendants exercised a general "executive" oversight over all things regarding the Plan is insufficient to allege their status as ERISA fiduciaries with regard to this claim for the reasons discussed previously.

### 5. Count IV

Count IV alleges breach of the duty to avoid conflicts of interest against all defendants and contains a disorganized grab bag of charges unsupported by factual allegations from which it cannot be determined against what defendants the charges are directed or their factual basis.

Counts I and III will be dismissed, with leave to amend, as to the Director Defendants and the Individual Defendants, for failure to sufficiently allege fiduciary status under ERISA, and Count IV will be dismissed, with leave to amend, as to all defendants.

### III. COUNT I-FAILURE TO PRUDENTLY MANAGE THE PLANS' ASSETS

#### A. Sufficiency of the Pleadings

Defendants contend that plaintiffs' claim for breach of the ERISA duty of prudence fails as a matter of law because the complaint does not plead facts that if proven would establish that any defendant had actual or imputed knowledge of the alleged slowdown in demand or of accounting entries that plaintiffs contend made JDSU an imprudent investment. Defendants rely on two cases. In *Haber v. Brown,* 774 F.Supp. 877 (S.D.N.Y.1991), the court granted a motion to dismiss a fiduciary claim against the defendant Washington National Life Insurance Company because the complaint consisted only of recitals of the statutory language and alleged "no facts to prove grounds for the claim that Washington National knowingly participated in Brown's fiduciary breaches." *Id.* at 878. The case is not apposite in view of the detailed factual allegations of the instant complaint. In *Crowlev v. Corning, Inc.,* 234 F.Supp.2d 222 (W.D.N.Y.2002), the court found the

allegations of the complaint deficient in various respects, including the allegations that the members of the Committee "should have known that the Plan should not have invested in Company stock." *Id.* at 230. The case is not persuasive for the proposition urged by defendants, that the instant complaint should be dismissed because it alleges that the fiduciary defendants "should have known that the [JDSU] Fund was not a prudent investment." ¶ ¶ 124, 125. Allegations that defendants should have known that investing in company stock was imprudent were held sufficient in *Kelley v. Household International, Inc.,* 2004 WL 723843 (N.D.Ill.2004), and in *Enron,* 284 F.Supp.2d at 656-57. The allegation simply defines the defendants' fiduciary duty to determine whether the Fund was a prudent investment. It is sufficient to give defendants notice of the breach of fiduciary duty claim, based on the factual allegations of the complaint. Dismissal is inappropriate because it does not appear beyond doubt that plaintiffs can prove no set of facts in support of their claim which would entitle them to relief. *Conley,* 355 U.S. at 45-46.

#### B. Application of the Section 404(a)(2) Exemption

**\*6** Plaintiffs contend that defendants breached their fiduciary duties by offering the JDSU Stock Fund as an investment option under the Plans, by permitting the Plans to purchase and hold shares in the Fund when it was imprudent to do so, and by continuing to make available company matching contributions in JDSU stock. ¶ 166. Defendants contend that this claim fails under *Wright v. Oregon Metallurgical Corp.,* 360 F.3d 1090 (9th Cir.2004).

Section 404(a)(1)(B) provides that "a fiduciary shall discharge his duties ... with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B).

The Plans at issue here were so-called Eligible Individual Account Plans ('EIAP'). 29 U.S.C. § 1002(34); ¶ 48. The investments available to participants included numerous mutual funds with differing investment policies and risk profiles, in addition to the JDSU common stock fund. ¶¶ 53, 61. The Plans provided for employer matching contributions to participants who made elective contributions. ¶ 54.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                          Page 6
Not Reported in F.Supp.2d, 2005 WL 1662131 (N.D.Cal.), 36 Employee Benefits Cas. 1140
**(Cite as: Not Reported in F.Supp.2d)**

Section 404(a)(2) provides:
In the case of an eligible individual account plan ... the diversification requirement of paragraph (1)(C) and prudence requirement (only to the extent it requires diversification) of paragraph 1(B) is not violated by acquisition or holding of qualifying employer ... securities.

Citing *Wright,* defendants argue that plaintiffs' prudence claim is barred as falling squarely within the duty to diversify. In *Wright,* plaintiffs alleged a violation of ERISA's prudence requirement under section 404(a)(1)(B) based on an ESOP's failure to sell the company's stock when a substantial premium could have been realized as the result of a merger and later to investigate whether to sell the stock when its value declined. *Id.* at 1097. The court affirmed the dismissal of the complaint under Rule 12(b)(6).

*Wright* does not hold that section 404(a)(2) bars a claim against an EIAP fiduciary based on that fiduciary's investment decisions respecting the company's stock. It acknowledged that despite the section 404(a)(2) exemption, other courts have held that ERISA's prudence requirement continues to apply to EIAP fiduciaries. *Id.* at 1097 (citing *Moench v. Robertson,* 62 F.3d 553 (3d Cir.1985)); *see also Kuper v. Iovenko,* 66 F.3d 1447 (6th Cir.1995) (adopting a standard under which investment in the company's stock is presumptively prudent unless fiduciary abused its discretion). At the same time, it recognized that "[i]nterpreting ERISA's prudence requirement to subject EIAPs to an albeit tempered duty to diversify arguably threatens to eviscerate congressional intent and the guiding rationale behind EIAPs themselves." *Wright,* 360 F.3d at 1097.

Because the facts of the case made it unnecessary, the court declined to "decide whether the duty to diversify survives the statutory text of § 1104(a)(2)." *Id.* at 1097-98. The court found that even if the *Moench* standard applied, plaintiff loses, stating, "[u]nlike *Moench,* this case does not present a situation where a company's financial situation is seriously deteriorating and there is a genuine risk of insider self-dealing." *Id.* at 1098. It observed that published accounts showed the company to be profitable and paying substantial dividends during the period. *Id.* at 1098-99.

*7 The instant complaint presents a different case. Plaintiffs allege that defendants breached their fiduciary duties because JDSU stock was itself an imprudent investment, not because defendants

breached a duty to diversify. ¶¶ 108-41. Although an EIAP fiduciary may be exempt from the duty to diversify and the duty of prudence *to the extent that it requires diversification,* the duty of prudence otherwise applies to EIAP fiduciaries. *Id.* at 1097; 29 U.S.C. § 1104(a)(2). Defendants argue that plaintiffs' claim of imprudence is, in reality, a claim for failure to diversify, yet plaintiffs make no such diversification claim. Contrary to what defendants appear to argue, plaintiffs' claim is not transformed into a diversification claim merely because plaintiffs argue that investment in JDSU was imprudent and that it logically follows from such an argument that defendants therefore should have invested in other stocks.

The purpose of the duty to diversify is to minimize the risk of large losses. 29 U.S.C. § 1104(a)(1)(C). Normally this duty requires investment of plan assets in such a manner that the assets are not invested predominantly in a single stock, such as company stock. 29 U.S.C. § 1107(a)(2) (prohibiting investment of over ten percent of plan assets in employer stock). Because of the section 404(a)(2) exemption from the duty to diversify, defendants did not breach any fiduciary duty merely by investing a large portion of Plan assets in JDSU stock. 29 U.S.C. § 1104(a)(2). But plaintiffs do not claim that defendants breached their duty by putting a certain percentage of the funds in JDSU stock, or that defendants should have invested certain percentages of Plan assets in various alternative investments. Rather, plaintiffs allege that *any* investment in JDSU stock was imprudent in light of what the defendants knew about JDSU and the risk of investing in JDSU stock. ¶¶ 108-41. Plaintiffs' claim is therefore not a diversification claim, and the section 404(a)(2) exemption and *Wright* do not resolve this issue.

Even if plaintiffs' claim could be construed as a diversification claim, the court in *Wright* expressly declined to decide whether any duty to diversify survives the statutory text of section 404(a)(2), and held that the plaintiffs' claim in that case failed under the *Moench* standard. *Wright,* 360 F.3d at 1098. Under the *Moench* standard, a fiduciary's presumption of reasonableness may be overcome where a company's financial situation is seriously deteriorating and there is a genuine risk of insider self-dealing. 62 F.3d at 572; *Wright,* 260 F.3d at 1098. In this case, plaintiffs have alleged sufficient facts to overcome such a presumption.

Plaintiffs allege, among other things, that at the beginning of the class period in early 2000 demand

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 1662131 (N.D.Cal.), 36 Employee Benefits Cas. 1140
**(Cite as: Not Reported in F.Supp.2d)**

for the company's product fell off and orders were cancelled. ¶ 111. The company prematurely recorded revenues, ¶ 112; shipped products not ordered or for which orders had been cancelled, ¶ 113; accelerated revenue, ¶ ¶ 115-16; accumulated excessive inventories, ¶ ¶ 117-18; overstated goodwill in the E-TEK acquisition, which it had to write off the next year in the amount of $13 billion, ¶ ¶ 119-22; and failed to disclose material information to participants and the public, ¶ ¶ 123-32, and the magnitude of JDSU's problems, ¶ ¶ 135-37. In July 2001 the company announced that sales had collapsed, that it had lost $51 billion in the past 12 months and written off $44.8 billion, and that it had laid off 9000 people and would cut 7000 more. ¶ ¶ 138-39. Its stock price had fallen from $100 in 2000 to $3 in August 2004. ¶ 140.

**\*8** In addition, the complaint alleges conflicts of interest affecting at least some of the defendants and corporate insiders. It alleges, among other things, that at the start of the class period when the stock was at an all time high, insiders possessing inside information concerning the downturn of the company's business, sold over $500 million of stock, ¶ ¶ 148-49; and that the compensation of high-ranking officers of the company was tied to the price of the stock, ¶ ¶ 144-45.

_Lalonde v. Textron, Inc.,_ 369 F.3d 1 (1st Cir.2004), is the most recent appellate decision on the issue presented here. Plaintiffs, participants in Textron's ESOP plan, claimed that Textron and the Textron executives who administered the plan, breached their fiduciary duty under ERISA by continuing to direct 50% of employee contributions and 100% of employer matching contributions in Textron stock when they knew or had reason to know that Textron faced troubles that were certain to cause a decline in the value of its stock. The complaint alleged, among other things, that Textron artificially inflated the price of its stock by concealing internal problems that led to lost earnings and a securities action brought by shareholders. "Despite this bleak scenario and in dereliction of their duties, plaintiffs say, defendants continued to fund the Textron stock fund and prohibited the class from diversifying its retirement accounts." _Id._ at 3. The district court granted the motion to dismiss and the court of appeals reversed. The court held that the allegations that Textron artificially inflated its stock price by concealing Textron's problems and their adverse effect on Textron which are the subject of a securities act lawsuit by shareholders against Textron and its officers and directors satisfied Federal Rule of Civil

Procedure 8(a) and the notice requirement under _Conley,_ 335 U.S. at 47. With respect to the application of the _Moench/Kuper/Wright_ line of cases, the court said:

Because the important and complex area of law implicated by plaintiffs' claims is neither mature nor uniform ... we believe that we would run a very high risk of error were we to lay down a hard-and-fast rule ... based only on the statute's text and history, the sparse pleadings and the few and discordant judicial decisions discussing the issue we face. Under the circumstances, further record development-and particularly input from those with expertise in the arcane area of the law where ERISA's ESOP provisions intersect with its fiduciary duty requirements-seems to us essential to a reasoned elaboration of that which constitutes a breach of fiduciary duty in this context.

_Id._ at 6.

The court's reasoning is persuasive. Whether on a full development of the record the evidence will sustain plaintiffs' allegations remains to be seen, but on this motion to dismiss we must accept the well-pleaded allegations of the complaint as true. Those allegations are sufficient to state a claim for violation of the prudence requirement.[FN5]

> FN5. Compare _Calpine,_ where the record before the court disclosed that Calpine had steady revenue and profit, showing that it was a viable concern and not in the sort of deteriorating financial circumstances that must be pled to rebut the presumption of prudence.

### C. Violation of Insider Trading Rules & Loss Causation

**\*9** Defendants contend that plaintiffs are unable to show loss causation because their losses were unavoidable. They argue that had defendants forced participants to divest JDSU stock, JDSU would first have had to disclose that the Plan was selling its JDSU stock and the reason for doing so. The value of the stock would immediately have declined in response to that disclosure. Plaintiffs' pleading leaves much to be desired in terms of clarity and organization. However, their claim appears not to be limited to failure to divest but extends to the making of imprudent investments in the Fund in JDSU stock, as well as failing to eliminate JDSU as an investment vehicle. ¶ 196. _In re McKesson HBOC, Inc. ERISA_

Not Reported in F.Supp.2d    Page 8
Not Reported in F.Supp.2d, 2005 WL 1662131 (N.D.Cal.), 36 Employee Benefits Cas. 1140
**(Cite as: Not Reported in F.Supp.2d)**

_Litigation,_ 2002 WL 31431588 (N.D.Cal.), on which defendants rely, supports their position only to the extent that plaintiffs assert a divestment claim. _Id._ at *6. But it specifically recognizes a potentially valid claim of breach of fiduciary duties based on allegations that the continued contribution in the form of company stock after the fiduciaries became aware the stock was an imprudent investment. _Id._ at *8.

Moreover, courts generally have rejected the notion that the securities laws immunize ERISA fiduciaries against liability for imprudent investments, including failing to disclose information to participants. _See, e.g., Enron,_ 284 F.Supp.2d at 565 (stating that "the statutes should be construed to require, as they do, disclosure by ... plan fiduciaries of [the company's] concealed, material financial status to the investing public generally, including plan participants, whether 'impractical' or not, because continued silence and deceit would only encourage the alleged fraud and increase the extent of injury"); _WorldCom,_ 263 F.Supp.2d at 765-67 (same).

Finally the argument that plaintiffs' losses were unavoidable will not support dismissal. It would be premature to determine the measure of damages on a motion to dismiss the complaint, but presumptively, it would be determined with reference to what the value of the Plan would have been had its assets been prudently invested. _See Harris Trust and Sav. Bank v. John Hancock Mut.,_ 302 F.3d 18, 34 (2d Cir.2002).

## II. COUNT II-BREACH OF DUTY TO MONITOR

Plaintiffs allege that JDSU and the Director Defendants failed to monitor the Benefits Committee, the Administrative Committee, and the Individual Defendants, and provide them with accurate information. ¶¶ 173-74.

### A. OCLI Plan

With respect to the OCLI Plan, defendants contend that JDSU was not the employer under the OCLI plan and therefore owed no duty to monitor. However, plaintiffs allege that the OCLI plan was sponsored and administered by JDSU from February 4, 2001, until the plans were formally merged on July 1, 2001, and that JDSU exercised fiduciary oversight of the plan during that period. ¶ 16, 41. Moreover, under the OCLI plan, JDSU became the employer with the sole responsibility to appoint and monitor the Administrative Committee, the plan administrator,

and set the parameters of their responsibilities under the plan. ¶ 76. These allegations are sufficient to state a claim.

### B. Duty to Monitor

*10 With respect to both Plans, defendants contend that the claim fails because, first, under the Plan, the fiduciary duties of JDSU and the Director Defendants were limited to appointment of the Benefits Committee and, second, the complaint contains only conclusory allegations which are insufficient.

Plaintiffs allege that JDSU, through its Board of Directors, had the authority and discretion to appoint, monitor, and remove officers and employees from their individual fiduciary roles with respect to the Plans. ¶ 17. Where, as here, the Directors are alleged to have the power to select and appoint plan fiduciaries, they exercise discretionary authority or discretionary control respecting management of such a plan. 29 C.F.R. § 2509.75-8, D-4; _Batchelor v. Oak Hill Med. Group,_ 870 F.2d 1446, 1448-49 (9th Cir.1989); _Leigh v. Engle,_ 727 F.2d 113, 135 (7th Cir.1984). This duty is, however, limited to the selection and retention of such fiduciaries. 29 C.F.R. § 2509.75-8; _Leigh,_ 727 F.2d 113, 135 (holding that those responsible for appointing fiduciaries "were not obliged to examine every action taken by [the administrators] but ... [they] were obliged to take prudent and reasonable action to determine whether the administrators were fulfilling their fiduciary obligations"); _Coyne,_ 98 F.3d 1457, 1465-66 (quoting Department of Labor Bulletin, 29 C.F.R. § 2509.75-8 at FR-17, which defines the ongoing responsibility of an appointing fiduciary to review the performance of such fiduciaries at reasonable intervals to ensure compliance with the terms of the plan and statutory standards).

Count II alleges in substance that Defendants breached their fiduciary duty by failing to provide the Benefits and Administrative Committees with information about JDSU's business problems and ensure that the Committees appreciated the risk of investment by employees in the stock fund. Courts have held that whether a defendant's duty to monitor included the duty to provide information to his appointees requires a fact intensive analysis that is inappropriate at this stage of the proceeding. _In re Syncor Litig.,_ 351 F.Supp.2d 970, 986 (C.D.Cal.2004); _In re Electronic Data Sys. Corp. ERISA Litig.,_ 305 F.Supp.2d 658, 671 (E.D.Tex.2004); _In re Sprint Corp. ERISA Litig.,_

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 1662131 (N.D.Cal.), 36 Employee Benefits Cas. 1140
**(Cite as: Not Reported in F.Supp.2d)**

Page 9

2004 WL 1179371 (D.Kan.2004) (unpublished) (citing 29 C.F.R. § 2509.75-8 at FR-17, and stating that the procedure for monitoring appointees may vary in accordance with the nature of the plan and other facts and circumstances).

The allegations, which identify the Directors' power to appoint fiduciaries, suffice to invoke the duty to monitor those appointees and, thus, provide defendants with adequate notice. *See Electronic Data,* 305 F.Supp.2d at 671 (citing *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512-14, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (discussing the simplified notice pleading standard under Fed. R. Civ. Proc. 8)). The precise scope of the duty to monitor, including which Directors appointed which fiduciaries, what the resulting duty to monitor entailed, and whether plaintiffs are entitled to relief on this claim, require factual determinations that make the issue inappropriate for dismissal on this motion.

### III. COUNT III-BREACH OF DUTY TO DISCLOSE

#### A. Disclosure Claim

**\*11** In Count III, plaintiffs allege in substance that defendants breached their fiduciary duty by failing to provide complete and accurate information regarding investment in JDSU stock and by conveying inaccurate information regarding the soundness of JDSU stock and the prudence of investing retirement contributions in it, thus, fundamentally deceiving plaintiffs about the prudence of making and maintaining investments in JDSU stock. ¶ ¶ 179-83. Defendants, by narrowly interpreting the allegations, contend that the claim fails. However, at this stage, the allegations are sufficient to implicate ERISA fiduciary duties.

In *Bins v. Exxon Co. USA,* 220 F.3d 1042, 1053 (9th Cir.2000), the Ninth Circuit held that, absent employee inquiry, an ERISA fiduciary does not have an affirmative duty to volunteer information regarding plan changes or amendments. However, the court in *Bins* also stated that "we do not question the existence of other 'affirmative' disclosure duties of an employer-fiduciary under circumstances not present here." 220 F.3d 1042, 1053 n. 10 (citing *Acosta v. Pacific Enter.,* 950 F.2d 611, 619 (9th Cir.1991)). In *Acosta* the Ninth Circuit held that:
[A]n ERISA fiduciary's duty to disclose information to beneficiaries is not limited to the dissemination of

the documents and notices specified in [the Act] but may in some circumstances extend to additional disclosures where the interests of the beneficiaries so require.... Thus, an ERISA fiduciary has an affirmative duty to inform beneficiaries of circumstances that threaten the funding of benefits.

950 F.2d at 618-19. Circumstances that give rise to such an affirmative duty to disclose information to plan participants, as indicated by the cases cited in *Acosta,* include an employer's failure to contribute to a fund as required, or when an ineligible person contributes to a fund and the employer knows that person is ineligible. *Eddy v. Colonia Life Ins. Co. of Am.,* 919 F.2d 747, 750-51 (D.C.Cir.1990); *Rosen v. Hotel & Rest. Employees Union,* 637 F.2d 592, 599-600 (3d Cir.), *cert. denied,* 454 U.S. 898, 102 S.Ct. 398, 70 L.Ed.2d 213 (1981); *Aitken v. IP & GCU-Employer Retirement Fund,* 604 F.2d 1261, 1270 (9th Cir.1979). The allegations in this case-that the defendants should have known that investing in JDSU stock was imprudent and that the defendants' failed to inform plan beneficiaries of such imprudent investments-are more similar to the instances of employer prejudice that "threaten the funding of benefits" cited in *Acosta,* than to a business decision to make changes to a plan, as was at issue in *Bins.* While factual development and further briefing may establish that no affirmative duty to disclose information existed in this case, the Court cannot say at this stage that plaintiffs can prove no set of facts in support of their claim which would entitle them to relief. *Conley v. Gibson,* 355 U.S. at 45-46. The allegations that the fiduciary defendants failed to give complete and accurate information regarding the investment of plaintiffs' retirement contributions state a claim.

**\*12** Plaintiffs further allege that the defendants breached their duty to inform by misrepresentations in JDSU's SEC filings incorporated by reference in the Plan Prospectus. ¶ 180. Courts have held that dismissal at this stage is inappropriate where SEC filings are incorporated by reference into documents provided to plan participants. *In re AEP Litig.,* 327 F.Supp.2d 812, 825 (S.D.Ohio 2004) (citing *Vivien v. Worldcom, Inc.,* 2002 WL 31640557 *1, *7 (N.D.Cal.)); *Dynegy,* 309 F.Supp.2d at 888. Defendants argue that plaintiffs failed to sufficiently allege that SEC filings were incorporated into plan communications. However, the federal securities laws require corporations that sponsor a 401(k) plan offering an employer's securities to file a Form S-8 registration statement with the SEC, and Part I of the Form S-8 is the Section 10(a) prospectus that must be

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                           Page 10
Not Reported in F.Supp.2d, 2005 WL 1662131 (N.D.Cal.), 36 Employee Benefits Cas. 1140
**(Cite as: Not Reported in F.Supp.2d)**

disseminated to employees under the Securities Act. *See In re Worldcom, Inc., ERISA Litig.*, 263 F.Supp.2d 745, 766 n. 14 (citing Securities Act, Rule 428, 15 U.S.C § 77i; 17 C.F.R. § 230.428). The securities laws require other SEC filings to be attached to a Section 10(a) prospectus. *Id.* The plaintiffs allege that the Committee Defendants and JDSU are liable for providing prospectuses and other financial information to the plan participants. Therefore, these defendants are fiduciaries in that regard and have a duty to convey truthful information and not to make material misrepresentations. *See Mathews v. Chevron Corp.*, 362 F.3d 1172, 1180 (9th Cir.2004). Plaintiffs have sufficiently pleaded this count.[FN6]

> FN6. Plaintiffs also allege that statements in the media also included misrepresentations or omitted material information. Defendants argue that such statements are not actionable because they were not made by fiduciaries in their fiduciary capacity to plan participants. The defendants' argument has merit. The statements made in press releases were made in the context of discussing JDSU's long-term prospects. The Supreme Court has rejected the idea that a defendant acts as a fiduciary merely because it makes statements about its expected financial condition. *Varity Corp. v. Howe*, 516 U.S. 489, 505, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996).

### B. Plan-wide Relief

Defendants argue further that this claim fails because ERISA § 502(a)(2) limits standing to recover money damages to the plan. 29 U.S.C. § 1132(a)(2). This claim, they contend, seeks recovery for individual losses and thus requires proof of individual reliance which has not been alleged.

The complaint seeks relief under § § 502(a)(2) and 409. 29 U.S.C. § § 1132(a)(2), 1109. ¶ 185. It asks to have defendants "restore the losses to the Plan caused by their breaches of fiduciary duties alleged in this Count." *See also* Prayer for Relief, ¶ C, seeking an order "to make good to the Plans all losses to the Plans resulting from the Defendants' breaches of their fiduciary duties." Plaintiffs also seek to have the losses to the Plans allocated among participants' individual accounts in proportion to their accounts' losses, ¶ G, but this is an accounting adjustment that does not alter the fact that the relief sought is plan-wide.

Defendants insist that the claims, rather than being for plan-wide relief, are for recovery of individual losses. They rely principally on *Schering-Plough Corp. ERISA Litigation*, 2004 WL 1774760 (D.N.J.), in which the court dismissed a complaint in many respects similar to plaintiffs' here. However, the court found a "critical distinction" between the pleading before it and other cases finding such pleadings sufficient based on the fact that Schering-Plough did not make contributions to the plan in the form of company stock, stating that "the only contributions were those made by employees, which remained in individual accounts and never become assets of the ... Plan." Id. at *7. Here, plaintiffs allege that matching employer contributions to the Plan, in addition to employee contributions, were invested in JDSU stock.[FN7] Therefore, all Plan participants were affected, and the relief sought is plan-wide. *See In re Syncor ERISA Litig.*, 351 F.Supp.2d 970, 990 (C.D.Cal.2004) (holding that plaintiffs sought relief for entire plan, not just individual losses, stating "[h]ere, the company did invest in company stock in the form of matching contributions. Therefore, all plan participants were impacted by Syncor stock").[FN8]

> FN7. Plaintiffs allege that, during the relevant time period, they all held JDSU stock. They further allege that the plan provided for employer matching contributions, and that those matching contributions were invested in the same manner as the participants directed their own contributions to be invested. The SPD indicates that as of September 1, 2001, only employer matching contributions could be invested in company stock.

> FN8. Additionally, according to Department of Labor regulations, contributions to an ERISA plan are assets of the plan, not assets of the employer or the individual participants. 29 C.F.R. 2510.3-102(a).

**\*13** Defendants' further argument that reliance is an essential element of the claim rests on confusion between individual claims under § 502(a)(1)(B) for benefits due a participant and claims under § 502(a)(2) for relief under § 409 (i.e., for losses to the plan). *See Roth v. Sawyer-Cleator Lumber Co.*, 16 F.3d 915, 920 n. 4 (8th Cir.1994) (stating that "a breach of fiduciary duty claim puts money back in

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 11
Not Reported in F.Supp.2d, 2005 WL 1662131 (N.D.Cal.), 36 Employee Benefits Cas. 1140
(Cite as: Not Reported in F.Supp.2d)

the plan"). The cases cited by defendants are not on point because they do not involve claims under § 502(a)(2). Rather, the cited cases involve claims seeking individual benefits or injunctive relief under § 502(a)(1) or § 502(a)(3), or turn on class certification issues. *See, e.g., Burstein v. Ret. Account Plan for Employees of Allegheny Health Educ. & Research Found., 334 F.3d 365 (3d Cir.2003); In re Unisys Corp. Retiree Med. Benefits Litig., 2003 WL 252106 *1 (E.D.Pa. Feb.4, 2003).* Plaintiffs argue that they need not show detrimental reliance or, if they do, that it is presumed in this case because once plaintiffs have established a breach of fiduciary duty and a loss to the plan, the burden shifts to the defendants to prove that the loss was not caused by the breach of duty. *See Roth,* 16 F.3d at 917.

Defendants argue that because each individual plaintiff exercised authority over whether to invest in JDSU stock, individual reliance must be shown. However, given that all plaintiffs are alleged to have held JDSU stock and that defendants owed the same fiduciary duty to all plan participants-and allegedly breached that duty through plan-wide communications-the court declines to dismiss this claim at this stage. Plaintiffs allege that where a breach of duty includes misrepresentations and omissions material to a decision by plan participants, which results in harm to the participants, the participants are presumed to have relied on such misrepresentations or omissions to their detriment. ¶ 182. Other courts, have found such allegations adequate to prevent dismissal at this stage. *See, e.g., AEP,* 327 F.Supp.2d at 833 (noting that other courts have found such allegations sufficient to prevent dismissal even under heightened pleading requirements). Again, whether factual development of the claim and further briefing will support plaintiffs' claim remains to be seen, but Plaintiffs' allegations are sufficient to state a claim.

## IV. CO-FIDUCIARY LIABILITY

In Counts I, II and III, plaintiffs allege co-fiduciary liability against all the defendants. ERISA § 405(a) provides the statutory basis for co-fiduciary liability as follows:
In addition to any liability which he [or she] may have under any other provisions of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:
(1) if he [or she] participates knowingly in, or

knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;
*14 (2) if, by his [or her] failure to comply with section 1104(a)(1) of this title in the administration of his [or her] specific responsibilities which give rise to his [or her] status as a fiduciary, he [or she] has enabled such other fiduciary to commit a breach; or
(3) if he [or she] has knowledge of a breach by such other fiduciary, unless he [or she] makes reasonable efforts under the circumstances to remedy the breach.

29 U.S.C. § 1105(a).

Because ERISA fiduciary status is a prerequisite to a finding of co-fiduciary liability, *see id.,* plaintiffs' failure to sufficiently allege the fiduciary status of the Director Defendants and the Individual Defendants causes the claims against those defendants based on co-fiduciary liability to fail as well. *See Calpine,* at 12. However, as to Counts I and III, plaintiffs have successfully stated a claim for breach of fiduciary duty under ERISA against JDSU and the Committee Defendants; and as to Count II, plaintiffs have successfully stated a claim against JDSU and the Director Defendants. Therefore, because the court declines to dismiss the claims against these defendants on these counts, the court also declines to dismiss the accompanying co-fiduciary claims at this juncture. *In re AEP,* 327 F.Supp.2d at 833; *CMS Energy,* 312 F.Supp.2d at 916-17.

## V. COUNT IV-BREACH OF DUTY TO AVOID CONFLICTS

As discussed, Count IV alleges breach of the duty to avoid conflicts. Count IV appears to allege a general breach of duty against all defendants for failure to notify participants and agencies that JDSU was an unsuitable investment. However, the caption and much of the text indicates that the count alleges a specific breach of duty against "certain defendants" by failing to act in the best interest of participants when the defendants sold their shares. While plaintiffs do not identify these defendants in Count IV, they assert in their brief that the individuals are identified in ¶ ¶ 148-49 of the complaint. Only one of the fourteen individuals mentioned in those paragraphs-Jozef Straus-is named as a defendant in this case. This count is not well pleaded and must be dismissed for failing to give adequate notice regarding what duties were allegedly breached and which defendants allegedly breached those duties. *Conley,* 355 U.S. at 47.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                          Page 12
Not Reported in F.Supp.2d, 2005 WL 1662131 (N.D.Cal.), 36 Employee Benefits Cas. 1140
**(Cite as: Not Reported in F.Supp.2d)**

### VI. MOTION FOR STAY

Defendants have moved for a stay of this action pending resolution of the JDSU securities litigation. The motion is not well taken. The respective plaintiffs' classes are disparate, both in terms of membership and the class periods. Moreover, the issues raised by the two actions are distinctly different. Although there is some overlap in the corporate fraud allegations, the dispositive issues in this action turn on alleged breaches of fiduciary duties under ERISA while the issues in the securities litigation turn on alleged violations of the securities acts.

### CONCLUSION

For the reasons stated, the Court:

**\*15** 1. GRANTS defendants' motion to dismiss Count I as to the Director Defendants and the Individual Defendants, but not as to JDSU or the Committee Defendants;

2. DENIES defendants' motion to dismiss Count II;

3. GRANTS defendants' motion to dismiss Count III as to the Director Defendants and the Individual Defendants, but not as to JDSU or the Committee Defendants;

4. GRANTS defendants' motion to dismiss Count IV;

5. GRANTS defendants' motion to dismiss the co-fiduciary claims in Counts I and III as to the Director Defendants and the Individual Defendants, but not the claims in Counts I and III as to JDSU and the Committee Defendants, or the claim in Count II as to JDSU and the Director Defendants; and

6. DENIES the motion to stay.

Defendants shall have twenty days to file an amended complaint.

Counsel are advised that this ruling is on the sufficiency of the pleadings and is not to be taken as a determination of the merits of any of the claims.

SO ORDERED.

N.D.Cal.,2005.

In re JDS Uniphase Corp. Erisa Litigation
Not Reported in F.Supp.2d, 2005 WL 1662131 (N.D.Cal.), 36 Employee Benefits Cas. 1140

Briefs and Other Related Documents (Back to top)

• 2006 WL 709386 (Trial Motion, Memorandum and Affidavit) Defendant Kevin Kalkhoven's Motion to Dismiss First Amended Consolidated Complaint for Violations of Erisa; Memorandum of Points and Authorities in Support (Feb. 24, 2006) Original Image of this Document (PDF)
• 2005 WL 3142977 (Trial Pleading) First Amended Consolidated Complaint for Violations of Erisa (Oct. 31, 2005) Original Image of this Document (PDF)
• 2004 WL 2160753 (Trial Pleading) Consolidated Complaint for Violations of Erisa (Sep. 2, 2004) Original Image of this Document (PDF)
• 4:03cv04743 (Docket) (Oct. 22, 2003)
• 3:03cv04743 (Docket) (Oct. 22, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exhibit D

LEXSEE 1995 U.S. DIST. LEXIS 5059

**MARLENE MISCH, Plaintiff, v. THE COMMUNITY MUTUAL INSURANCE CO., Defendant.**

**C–1–94–428**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO, WESTERN DIVISION**

*1995 U.S. Dist. LEXIS 5059*

**February 15, 1995, FILED**

**COUNSEL:**

For MARLENE MISCH, plaintiff: Richard Stuart Wayne, Strauss & Troy – 1, Cincinnati, OH. Robert Armand Peter, Cincinnati, OH.

For COMMUNITY MUTUAL INSURANCE COMPANY, defendant: Michael Joseph Canter, Vorys Sater Seymour & Pease – 2, Columbus, OH. Daniel Jerome Buckley, Vorys, Sater, Seymour & Pease – 1, Cincinnati, OH.

**JUDGES:** [*1] Carl B. Rubin, Judge, United States District Court

**OPINIONBY:** Carl B. Rubin

**OPINION:**

ORDER CERTIFYING CLASS

This matter is before the Court for consideration of the certification of this case as a class action pursuant to *Fed. R. Civ. P. 23(b)(3)*. Plaintiff seeks to represent a class consisting of all persons who since June 24, 1979 have been participants in employer–sponsored plans underwritten and/or administered by Defendant providing for shared payments for medical and hospital charges and for which charges Defendant paid to providers less than the percentage designated in such contracts because of Defendant's agreements with such providers.

*Fed. R. Civ. P. 23* imposes specific obligations upon a district court where class action status is sought. The court must make a determination "as soon as practicable whether it is to be so maintained." *Fed. R. Civ. P. 23(c)(1)*; See also *Senter v. General Motors, 532 F.2d 511 (6th Cir. 1976)*, cert. denied, *429 U.S. 870, 50 L. Ed. 2d 150, 97 S. Ct. 182 (1977)*.

Rule 23(c)(1)–(4) permits a member of a class to sue as a representative party of: (1) a class so numerous that joinder of all members is impractical (numerosity); (2) with common [*2] questions of law or fact (commonality); (3) where the claims of the representatives are typical of the claims of the class (typicality); and (4) where such representative party will fairly and adequately protect the interests of the class (fair representation).

If the foregoing are satisfied, there must be in addition the existence of a fact situation described in *Fed. R. Civ. P. 23(b)(3)*. That is, the court must find that questions of law or fact common to the members of the proposed class predominate over any questions affecting only individual members, and that a class action is "superior to other available methods for the fair and efficient adjudication of the controversy." *Fed. R. Civ. P. 23(b)(3)*.

I

PREREQUISITES TO A CLASS ACTION

"Numerosity" – 23(a)(1)

It is asserted that the class to be certified consists of several thousand persons (Transcript of hearing on December 16, 1994, p. 4, Doc. 20). The United States Court of Appeals for the Sixth Circuit has previously held that a class of 35 was sufficient to meet the numerosity requirement. See *Afro–American Patrolmens League v. Duck, 503 F.2d 294 (6th Cir. 1974)*. Therefore, the numerosity prong is satisfied.

[*3] "Commonality" – 23(a)(2)

The members of the class appear to share common questions of fact and law that would make a class action appropriate.

"Typicality" – 23(a)(3)

The proposed representatives of the class asserts claims that are typical of the class in that Plaintiff alleges violations of ERISA (Employee Retirement Income

Security Act of 1974). These claims are similar enough to those of the class that the representative will adequately represent such class. *General Telephone v. Falcon, 457 U.S. 147, 157, 72 L. Ed. 2d 740, 102 S. Ct. 2364 (1982).*

Therefore, for purposes of the determination of liability at least, the claims of the representative are the claims of the class.

"Adequate Representation" – 23(a)(4)

This Court has further considered the qualifications of Plaintiff's counsel and considers that they have sufficient experience and ability to fairly and adequately protect the interests of the class. See *Senter v. General Motors, 532 F.2d 511 (6th Cir. 1976).*

In view of the foregoing, the Court finds that each of the prerequisites of *Fed. R. Civ. P. 23(a)* have been met.

II.

CLASS ACTIONS MAINTAINABLE

The requirements of Fed. R. Civ. [*4] P. 23(b) appear likewise to have been met. *Fed. R. Civ. P. 23(b)* provides for a class action when "the Court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available means for the fair and efficient adjudication of the controversy."

There is an assertion here that there are over 2000 persons who are in the same position as Plaintiff. Plaintiff has asserted causes of action based on federal legislative and regulatory provisions. Without determining the merits of Plaintiff's claims, it is clear that a class action is far superior to numerous individual determinations of the same rights.

Accordingly, the Court does find that pursuant to Rule 23(b)(3), this litigation may proceed as a class action. The Court does define the class as:

All persons who since June 24, 1979 have been participants in employer-sponsored plans underwritten and/or administered by Defendant providing for shared payments of medical and hospital charges and for which charges Defendant paid to providers less than the percentage designated in such contracts because of Defendant's [*5] agreements with such providers.

Pursuant to Rule 23(c)(2), Plaintiff is directed to give notice to the members of the class by first class mail addressed to the last known place of address of all persons included in the class. Defendant shall forthwith provide Plaintiff with such names and addresses. Such notice shall be as set forth in Attachment A hereto.

The foregoing certification of class shall be deemed conditional only and may be altered, amended or set aside at any time before a decision on the merits.

IT IS SO ORDERED.

Carl B. Rubin, Judge

United States District Court

Attachment A

IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO, WESTERN DIVISION

MARLENE MISCH, Plaintiff, v. THE COMMUNITY MUTUAL INSURANCE CO., Defendant.

C-1-94-428

NOTICE OF CLASS ACTION

To:

All persons who since June 24, 1979 have been participants in employer-sponsored plans underwritten and/or administered by Defendant providing for shared payments of medical and hospital charges and for which charges Defendant paid to providers less than the percentage designated in such contracts because of Defendant's agreements with such providers.

THIS LITIGATION [*6] HAS BEEN DESIGNATED AS A CLASS ACTION PURSUANT TO ORDERS DATED JANUARY 6, 1995 AND FEBRUARY 14, 1995.

The Nature of this Lawsuit:

Plaintiff seeks recovery on behalf of herself and all other persons who have participated in employer-sponsored plans underwritten and/or administered by Defendant that provide for a specific percentage of shared payments for medical and hospital charges and for which charges Defendant paid less than the designated percentages because of other agreements with such providers.

The Parties

Plaintiff Marlene Misch is a participant in a Community Mutual health plan sponsored by her employer, the Third Federal Savings and Loan Association

1995 U.S. Dist. LEXIS 5059, *6

of Cleveland, Ohio. Defendant Community Mutual is an Ohio corporation which provides medical, hospital, major medical, comprehensive and other coverage to policyholders in the State of Ohio.

The Class:

The class has been defined by the Court as follows:

All persons who since June 24, 1979 have been participants in employer-sponsored plans underwritten and/or administered by Defendant providing for shared payments of medical and hospital charges and for which charges Defendant paid to providers [*7] less than the percentage designated in such contracts because of Defendant's agreements with such providers.

Defendant's Answers:

Defendant has responded and has denied any liability to members of the class.

Further Information Available:

For details concerning this case, reference should be made to the files of the Clerk of the United States District Court for the Southern District of Ohio, 324 United States Courthouse, 100 East Fifth Street, Cincinnati, Ohio 45202.

THE JUDGMENT, WHETHER FAVORABLE OR NOT, WILL INCLUDE ALL MEMBERS OF THE CLASS.

Counsel:

The name, address and telephone number of counsel for the Plaintiffs is listed below:

Richard S. Wayne, Esq.
Strauss & Troy Co., L.P.A.
2100 PNC Center
201 East Fifth Street
Cincinnati, Ohio 45202
(513) 621-2120

You may employ private counsel in addition to the class representative. Only the class representative may represent you before the Court in issues involving liability. A determination will be made at a later date as to whether or not your private counsel may represent you before the Court on the issue of damages.

Participation:

If you do not wish to participate [*8] in this case,

you can be excluded by signing the attached postcard and mailing it to the address indicated. TO BE EXCLUDED FROM THE CASE, YOUR POSTCARD MUST BE RECEIVED BY MARCH 31, 1995.

Further Proceedings:

The Order of this Court establishing a class is conditional only and may be altered prior to a decision on the merits.

THE COURT HAS NOT EXPRESSED ANY OPINION ON THE MERITS OF THE ACTION OR ON WHETHER ANY MEMBER OF THE PURPORTED CLASS HAS A MERITORIOUS CLAIM. THIS NOTICE IS SENT TO YOU FOR THE SOLE PURPOSE OF INFORMING YOU OF THE PENDENCY OF THE LITIGATION SO THAT YOU MAY MAKE APPROPRIATE DECISIONS AS TO STEPS YOU MAY WISH TO TAKE IN RELATION TO THIS LITIGATION.

By Order of the Honorable Carl B. Rubin, Judge of the United States District Court for the Southern District of Ohio

By:
Kenneth J. Murphy, Clerk
United States District Court

Attachment B

Postcard

Clerk, U.S. District Court
328 U.S. Post Office & Courthouse
100 East Fifth Street
Cincinnati, Ohio 45202

AttN: MARLENE MISCH v. THE COMMUNITY MUTUAL INSURANCE CO..
Civil No. C-1-94-428

I have read the Notice of Proposed Class Action Settlements. I wish [*9] to be

[] EXCLUDED from the class.

_____
(Signature)

_____
(Address)

1995 U.S. Dist. LEXIS 5059, *9

_____                    (Telephone No.)

_____

Exhibit E

Westlaw.

Not Reported in F.Supp.                                                                 Page 1
Not Reported in F.Supp., 1995 WL 866221 (E.D.Mich.)
**(Cite as: Not Reported in F.Supp.)**

Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, E.D. Michigan.
Peter L. OLSON, Plaintiff,
v.
CHEM-TREND INC., Defendant.
**No. 94-CV-75201.**

May 30, 1995.

Richard N. LaFlamme, LaFlamme & Mauldin,
Jackson, MI, for plaintiff.
Richard N. LaFlamme, LaFlamme & Mauldin,
Jackson, MI, Bruce T. Wallace, Hooper, Hathaway,
Ann Arbor, MI, for defendant.

*MEMORANDUM OPINION AND ORDER
GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT*
O'MEARA, District Judge.

*BACKGROUND FACTS*

**\*1** Plaintiff, Peter Olson, was employed as a
salesman by defendant Chem-Trend Inc. from
October 1, 1973 until March 17, 1988 when his
employment was terminated. Because of his length
of service, Plaintiff was fully vested in Defendant's
Employee Stock Option Plan ("ESOP" or "plan") and
entitled to distribution of 744 shares of company
stock when he was discharged. It is uncontested that
the Defendant's ESOP is a benefit plan within the
meaning of the Employee Retirement Income
Security Act, 29 U.S.C. § § 1001 *et seq.* ("ERISA")
and that Defendant, a closely held corporation, is the
administrator of the plan. It is also uncontested that
a complete copy of the plan was available to
employees in Defendant's offices, and that each
participant received a "Summary Plan Description."

At Plaintiff's request, and in compliance with the
plan, three weeks after Mr. Olson was discharged
Defendant distributed Plaintiff's ESOP shares to him.
Mr. Olson promptly redeemed his stock for $126.58
per share, its fair market value as determined by
audit, as of December 31, 1987. In October 1988,
seven months after Mr. Olson's employment with
Defendant was terminated, Chem-Trend was sold;
the buyer purchased all of the ESOP shares for $270

per share. [FN1]

> **FN1.** Exhibits filed with Plaintiff's response
> brief, exhibit 14.

Plaintiff filed this lawsuit in December 1993, almost
six years after he redeemed his stock, alleging that in
the course of distributing his benefits and redeeming
the stock Defendant breached its fiduciary duty to
him. [FN2] As a result, he claims he is entitled to the
difference between the pre- and post-sale price of the
ESOP stock plus interest, costs and attorney fees.
Plaintiff alleges that the price paid to him for the
stock was "substantially less" than its fair market
value, a fact known to the Defendant, but unknown to
Plaintiff, as the stock was not publicly traded. In
support of this allegation, Plaintiff asserts that the
information provided to the accounting firm for the
purposes of the appraisal was incorrect, or "rendered
inaccurate" by subsequent events. [FN3]

> **FN2.** Actions challenging benefit denials
> under § 502 of ERISA may be subject to the
> state's statute of limitations for contract.
> *See e.g. DiMarco v. Mich. Conference of
> Teamsters Welfare Fund,* 861 F.Supp. 599,
> 606 (E.D.Mich.1994).

> **FN3.** Plaintiff's response brief at 13.

Plaintiff also believes that at the time he redeemed
his stock Defendant was seriously considering selling
the company, a "material fact" which Plaintiff claims
Defendant had a duty to disclose to him. In support
of this allegation, Plaintiff offers an informational
memorandum from Chem-Trend's president, dated
May 6, 1988, in which the president disclosed his
intention to retire and several options he was
considering for the company. [FN4] This Plaintiff
asserts, was sufficient to "significantly" alter the
value of the stock, as demonstrated by the final sale
price, in October 1988, of $270 per ESOP share.

> **FN4.** Exhibits to Plaintiff's response brief,
> exhibit 9.

This lawsuit was filed in Livingston County Circuit
Court in December 1993. On March 24, 1994

Not Reported in F.Supp.                                                         Page 2
Not Reported in F.Supp., 1995 WL 866221 (E.D.Mich.)
(Cite as: Not Reported in F.Supp.)

Plaintiff amended his complaint, which was subsequently removed by Defendant on April 6, 1994.

On December 14, 1994 two of the original three counts contained in the complaint (alleging breach of employment contract and legitimate expectation of just cause employment), were remanded by the court as state law claims. The court retained jurisdiction over the third count, alleging common law securities fraud, as pre-empted by ERISA. In addition, the court granted Plaintiff's motion to amend his complaint to state a cause of action under ERISA. The amended complaint was filed on January 9, 1995.

**2** On January 26, 1995 Defendant filed a motion for summary judgment, including a request for attorney fees. Plaintiff's response was filed on February 21, 1995; the reply brief on March 2, 1995.

Oral argument on the motion for summary judgment and attorney fees was held on April 20, 1995 and the motion taken under advisement. The court now grants the defendant's motion for summary judgment and denies the defendant's request for attorney fees for the reasons stated below.

*APPLICABLE LAW*

A. Standard of Review

As interpreted by the United States Court of Appeals for the Sixth Circuit, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." *Pitts v. Miller Car Rental,* 942 F.2d 1067, 1069 (6th Cir.1991) (internal citations omitted). Citing the trio of cases which defined the standards and burdens to be met by the parties in a motion for summary judgment,[FN5] the Court of Appeals posits the test for the grant of a motion for summary judgment as follows:

> FN5. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986), *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986) and *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986).

The substantive law will identify which facts are material ... only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Thus, factual disputes which are irrelevant or unnecessary will not be considered. To meet this standard, the moving party need not support its motion with affidavits or other similar materials "negating" the opponents claim. The burden on the moving party may be discharged by demonstrating that there is an absence of evidence to support the nonmoving party's case. Once the moving party meets this burden, the burden passes to the nonmoving party to establish, after an adequate opportunity for discovery, the existence of a disputed factual element essential to his or her case with respect to which he or she bears the burden of proof. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, the motion for summary judgment should be granted. *Id.* at 1069-70.

B. The Employee Retirement Income Security Act

The Employment Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.,* was enacted "to promote the interest of employees and their beneficiaries in employee benefit plans, and to protect contractually defined benefits." *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 948, 956 (1989) (citations omitted). The statute accomplishes its purpose, in part, by "establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans." *Drennan v. General Motors Corp.,* 977 F.2d 246, 250 (6th Cir.1991). The statute contains extensive disclosure provisions, including $100 per day fines, to insure that "the individual participant knows exactly where he stands with respect to the plan." *Firestone,* 489 U.S. at 958.

**3** Section 502 of ERISA, 29 U.S.C. § 1132, explicitly provides for civil enforcement of its provisions by specific classes of "persons," including participants and beneficiaries of the plan "to recover benefits due ... under the terms of the plan;"[FN6] for breach of fiduciary duty;[FN7] and "to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or to obtain other appropriate equitable relief...."[FN8]

> FN6. ERISA § 502(a)(1)(B).

> FN7. *Id.* at § 502(a)(2).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                          Page 3
Not Reported in F.Supp., 1995 WL 866221 (E.D.Mich.)
(Cite as: Not Reported in F.Supp.)

FN8. *Id.* at § 502(a)(3)(A) & (B).

In a civil action asserting an ERISA claim, the plaintiff's standing, as either a participant or beneficiary under the plan, is a threshold issue to be resolved by the court before considering the merits of the claim.[FN9] *Kuper v. Quantum Chemical Corp.,* 829 F.Supp. 918, 920 (S.D.Ohio 1993). The statute defines "participant" as "any employee or former employee ... who is or may become eligible to receive a benefit ... from an employee benefit plan ... or whose beneficiaries may be eligible to receive any such benefit." 29 U.S.C. § 1002(7).[FN10] The Supreme Court has interpreted the term participant to include former employees "who have a reasonable expectation of returning to covered employment or who have a colorable claim to vested benefits." *Firestone,* 489 U.S. at 117. Unless the former employee reasonably expects to return to covered employment, or has a colorable claim to vested benefits, he is not a participant, and is therefore denied standing to bring a civil action for ERISA claims. *Id.* at 118.

> FN9. This issue was not briefed by either party.

> FN10. A "beneficiary" is "a person designated by a participant, or by the terms of [the] ... plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8). "The rights of beneficiaries are derivative from the rights of participants." *Teagardener v. Republic-Franklin Inc. Pension Plan,* 909 F.2d 947, 954 (6th Cir.1990).

Because Mr. Olson's employment was terminated by Chem-Trend seven years ago, it seems unlikely that he has a reasonable expectation of returning to "covered employment." Therefore, if Plaintiff has standing, it is because he has a "colorable claim to vested benefits." As litigated in the Sixth Circuit since the *Firestone* decision, the acceptance of a lump sum distribution of vested benefits does not "automatically divest a plan participant of ERISA standing." *Kuper,* 829 F.Supp. at 922. The *Kuper* court cited with approval *Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan,* 883 F.2d 345 (5th Cir.1989) and *Amalgamated Clothing & Textile Workers v. Murdock,* 861 F.2d 1406 (9th Cir.1988) for the proposition that all recipients of lump sum distributions are not foreclosed from pursuing an ERISA claim. Reconciling *Sommers* and *Amalgamated* with an earlier Sixth Circuit case,[FN11] the court in *Kuper* held that plaintiffs were properly before the court as "participants," as they retained a "colorable claim to a benefit of some type" under an ESOP plan "given that the very basis of ... [the] complaint is that the distribution of their ESOP shares did not represent everything due them under the plan when their participation terminated." *Kuper,* 829 F.Supp. at 923.

> FN11. *Teagardener,* 909 F.2d 947 (6th Cir.1990).

Having reached the decision that former employees had standing as "participants," the court was explicit that it "specifically refrain[ed] from making any determination regarding the merits" of the ERISA claims. *Id.*[FN12]

> FN12. A determination that state law claims are pre-empted by ERISA "does not in any way imply a finding" that a plaintiff is a "participant" for the purposes of the statute. *Martin v. General Motors Corp.,* 753 F.Supp. 1347, 1358 (E.D.Mich.1991).

*4 Since *Kuper,* the Court of Appeals for the Sixth Circuit has re-stated the exception to the general rule that a "person who terminates his right to belong to a plan cannot be a 'participant' in the plan." As articulated by the court of appeals, "if the employer's breach of fiduciary duty causes the employee to either give up his right to benefits or to fail to participate in a plan, then the employee has standing to challenge that fiduciary breach." *Swinney v. General Motors Corp.,* 46 F.3d 512, 518 (1995).

Like the plaintiffs in *Kuper,* Mr. Olson alleges that "everything due to him" was not distributed when he redeemed his ESOP shares. Mr. Olson asserts that because of Defendant's breach of fiduciary duty, the fair market value of the stock distributed to him was higher than the amount paid to him,[FN13] and concludes that the difference is still due to him from the plan. Although by redeeming his shares, Plaintiff has "terminated his right to belong" to the plan, because he alleges Defendant's breach of fiduciary duty caused him to give up rights to benefits still due to him, Mr. Olson comes within the exception to the general rule. Because he has a "colorable claim to vested benefits," Mr. Olson has standing to pursue his ERISA claims.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                              Page 4
Not Reported in F.Supp., 1995 WL 866221 (E.D.Mich.)
**(Cite as: Not Reported in F.Supp.)**

FN13. One of Plaintiff's allegations is that the information provided by Defendant for the year end appraisal was incorrect, resulting in an inaccurate, and lower, value assigned to the stock. Plaintiff's response brief at 10-11.

Unfortunately, Mr. Olson's complaint alleges a cause of action under 29 U.S.C. § 1132 of ERISA, without specifying particular enforcement provisions. The court has interpreted the complaint to invoke the civil enforcement provision of three of the six enforcement provisions most likely to pertain to Plaintiff:

§ 502(a)(1)(B), which authorizes a participant to recover benefits due under the plan;

§ 502(a)(2), which authorizes a participant to state a cause of action for breach of fiduciary duty; and

§ 502(a)(3)(B) which allows equitable relief to redress violations of the statute or the plan.

The differences between these enforcement provisions are critical to Plaintiff's case; an individual can recover benefits due under the plan, however the plan, not the participant, is the entity which recovers for a breach of fiduciary duty under § 502(a)(2).[FN14] The district courts in the Sixth Circuit differ as to whether an individual can recover for breach of fiduciary duty under § 502(a)(3). *Richards v. General Motors Corp.,* 850 F.Supp. 1325 (E.D.Mich.1994) (no recovery); *Carter v. AT & T,* 870 F.Supp. 1438 (S.D.Ohio 1994) (allowing equitable recovery by an individual).

FN14. "Any recovery under § 1109 [breach of fiduciary duty] will inure to the benefit of the plan as a whole rather than to the participants as individuals." *Tregoning v. Am. Community Mut. Ins. Co.,* 12 F.3d 79, 83 (6th Cir.1993).

Each of the civil enforcement provisions available to Plaintiff is considered in turn.

### (1) ERISA § 502(a)(1)(B)

While § 502(a)(1)(B) allows an individual to recover benefits under a plan, the claim may not be premised on plaintiff's claim of breach of fiduciary duty.

*Anweiler v. American Elec. Power Serv. Corp.,* 3 F.3d 986, 992 (7th Cir.1992) and *Richards v. General Motors Corp.,* 850 F.Supp. 1325, 1331 (E.D.Mich.1994). Because Mr. Olson's complaint states no reason other than breach of fiduciary duty for his claim to recover benefits, he is precluded from recovery under this section of the statute.

### (2) ERISA § 502(a)(2) & 502(a)(3): Breach of Fiduciary Duty

**\*5** The fiduciary duty imposed by ERISA has been interpreted as having three components: the duty of loyalty; the duty of care which incorporates the prudent man standard, and the requirement that the fiduciary act "for the exclusive purpose of providing benefits to plan beneficiaries." *Berlin v. Mich. Bell Tel. Co.,* 858 F.2d 1154, 1162 (6th Cir.1988) (citations omitted). *See also, Mass. Mut. Life Ins. Co., v. Russell,* 473 U.S. 134, 154 n. 10 (1985). According to the Court of Appeals for the Sixth Circuit:

the prudent man standard, combined with the duty of loyalty imposes an unwavering duty on an ERISA trustee to make decisions with single-minded devotion to a plan's participants and beneficiaries and, in so doing, to act as a prudent person would act in a similar situation.

*Id.* The statute assumes that employers will function in the dual roles of conducting business and administering an employee benefit plan, and while the fiduciary duties imposed by ERISA do not extend to purely business decisions, "a fiduciary may not materially mislead those to whom the duties of loyalty and prudence described in 29 U.S.C. § 1104 are owed." *Id.* Stated more strongly, "misrepresentations and omissions are breaches of fiduciary obligations. Lying is inconsistent with the duty of loyalty owed by all fiduciaries and codified in section 404(a)(1) of ERISA." *Howe v. Varity Corp.,* 36 F.3d 746, 753 (8th Cir.1994) (citing *Peoria Union Stockyards Co. v. Penn. Mut. Life Ins. Co.,* 698 F.2d 320, 326 (7th Cir.1983)).[FN15]

FN15. "The legislative history demonstrates that Congress intended by § 404(a) to incorporate the fiduciary standards of trust law into ERISA, and it is black-letter trust law that fiduciaries owe strict duties running directly to beneficiaries in the administration and payment of trust benefits." *Russell,* 473 U.S. at 152-53 (Brennan, J. concurring).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                    Page 5
Not Reported in F.Supp., 1995 WL 866221 (E.D.Mich.)
(Cite as: Not Reported in F.Supp.)

Mr. Olson alleges Chem-Trend breached its fiduciary duty to him when it did not advise him that a change in corporate ownership was being considered by the company's chief executive and because it failed to advise him of his options under the ESOP plan.

In his response brief Plaintiff asserts that Defendant's failure to issue a "Put Option" and its failure to advise him that he could wait for up to 15 months before exercising the "Put Option" constitutes a "clear violation of its obligations under the plan." [FN16] Plaintiff is incorrect that Defendant's conduct violates its duties under the plan. As stated by the Court of Appeals for the Sixth Circuit:

> FN16. Plaintiff's response brief at 9-10. Defendant's reply brief explains that a "PUT option is a terminated employee's option to sell his shares back to the company." In redeeming his shares, Plaintiff exercised his PUT option. Defendant's reply brief at 1.

plan fiduciaries are required to provide employees with a comprehensive explanation of the contents of the plan.... In addition, ERISA imposes a duty upon fiduciaries to respond promptly and adequately to employee-initiated inquires regarding the plan or any of its terms. Absent a specific employee-initiated inquiry, however, a fiduciary is not obligated to seek out employees to ensure that they understand the plan's provisions...."
*Electro-Mechanical Corp. v. Ogan*, 9 F.3d 445, 451-52 (6th Cir.1993). The duty to eliminate any confusion regarding the terms of the plan belongs to the participants, who are obliged "to notify the employer of their confusion, and to enquire as to the intended meaning of the term and its impact upon their case." *Id. at 452.* A participant's failure to inquire "does not constitute a breach of [the employer's] fiduciary duties under ERISA." *Id.* Once inquiries are made, however, the employer, as fiduciary must give complete and accurate information in response to participants' questions. *Drennan v. General Motors Corp.*, 977 F.2d 246, 251 (1991).

*6 Chem-Trend met its fiduciary duty by maintaining a complete copy of the plan available for review and by distributing a "Summary Plan Description" to each participant. If Plaintiff did not understand the options available to him under the plan for timing the redemption of his ESOP shares, it was his obligation to ask questions to clear up his confusion, not the

defendant's.

Mr. Olson also contends that Chem-Trend breached its fiduciary duty by failing to disclose to him "material factors affecting the value of the stock" [FN17] prior to exercising his stock options. (The inference being that because some of Defendant's employees knew that the company president was considering selling the corporation prior to his retirement, they also knew that the stock price per share would be higher than the appraised value determined four months earlier.) Plaintiff's second assertion of Defendant's breach of fiduciary duty is also incorrect, as he fails to distinguish the differences between corporate fiduciary duty and that mandated by ERISA.

> FN17. Plaintiff's response brief at 12.

"The fiduciary duty imposed by ERISA generally relates to the management of plan assets.... The ERISA scheme envisions that employers will act in a dual capacity as both fiduciary to the plan and as employers. ERISA does not prohibit an employer from acting in accordance with its interest as employer *when not administering the plan or investing its assets.*" *Sweeney v. Kroger Co.*, 773 F.Supp. 1266, 1268 (E.D.Mo.1991) (citations omitted) (emphasis added). Like Mr. Olson, the plaintiff in *Sweeney* asserted that his employer had breached its fiduciary duty to him by allowing him to "cash out" of his ESOP plan without informing him of the possibility of a sale of the controlling interest in the company. The court found no breach, concluding that "plan administrators are not required to inform ... participants ... of every corporate event, especially contingent events, that might impact the value of the company's ... stock." *Id.* at 1269.

Chem-Trend did not have a fiduciary duty to inform Mr. Olson of its contingent corporate events, and therefore did not breach their statutory duty to him by failing to advise him that the company might be sold in at some time in the future when its president retired.

Mr. Olson has not produced evidence that Chem-Trend breached its fiduciary duty to him; either by failing to advise him of his options under the ESOP plan or by not advising him of a contingent corporate event. Therefore, as a matter of law the defendant is entitled to summary judgment.[FN18]

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                    Page 6
Not Reported in F.Supp., 1995 WL 866221 (E.D.Mich.)
**(Cite as: Not Reported in F.Supp.)**

FN18. Because summary judgment for the defendant is granted, the court need not reach the issue of individual equitable relief under § 502(a)(3) of the statute.

### (3) ERISA § 502(g): Attorney's Fees

Section 502(g) of the civil enforcement provisions of ERISA, 29 U.S.C. § 1132(g)(1) provides that in "an action under this subchapter by a participant ... the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." The Sixth Circuit has offered five criteria to be considered in awarding fees:

*7 (1) The degree of the opposing party's culpability or bad faith;

(2) The ability of the opposing party to satisfy an award of attorney's fees;

(3) Whether the award of fees against the opposing party would deter others from action in similar circumstances;

(4) Whether the party requesting fees sought to benefit all participants and beneficiaries of a multi-employer plan or to resolve a significant legal question; and

(5) The relative merits of the parties' position.

*Martin v. General Motors Corp.,* 753 F.Supp. 1347, 1359 (E.D.Mich.1991) (citations omitted).

While the court grants Defendant's motion for summary judgment, the court finds that Mr. Olson's lawsuit was not frivolous or brought in bad faith. Accordingly, the court will not grant Defendant's request for attorney fees.

### CONCLUSION

In considering a motion for summary judgment it is the court's duty to accept all of the nonmovant's allegations as true and make all reasonable favorable inferences from them. Having done so, the court concludes that the facts alleged by Mr. Olson in oral argument and in his complaint and response brief do not support a claim of breach of fiduciary duty against defendant. Therefore, Defendant's motion for summary judgment is granted; no attorney fees are awarded.

### ORDER

For the reasons stated above, it is ORDERED that the Defendant's motion for summary judgment is

GRANTED.

It is FURTHER ORDERED that defendant's request for attorney fees is DENIED.

E.D.Mich.,1995.
Olson v. Chem-Trend Inc.
Not Reported in F.Supp., 1995 WL 866221 (E.D.Mich.)

Briefs and Other Related Documents (Back to top)

• 2:94cv75201 (Docket) (Apr. 06, 1994)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exhibit F

LEXSEE 1993 U.S. DIST. LEXIS 9763

**THOMAS D. SUTTON, on behalf of himself and all others similarly situated, plaintiffs, v.
MEDICAL SERVICE ASSOCIATION OF PENNSYLVANIA, d/b/a PENNSYLVANIA
BLUE SHIELD, CAPITAL BLUE CROSS and INDEPENDENCE BLUE CROSS,
defendants.**

**CIVIL ACTION NO. 92–4787**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF
PENNSYLVANIA**

*1993 U.S. Dist. LEXIS 9763*

**July 20, 1993, Decided**
**July 20, 1993, Filed, Entered**

**COUNSEL:** **[*1]** For THOMAS D. SUTTON,
ON BEHALF OF HIMSELF AND ALL OTHERS
SIMILARLY SITUATED, PLAINTIFF: DAVID A.
KAHNE, RICHARD FEDER, FINE, KAPLAN &
BLACK, 1845 WALNUT STREET, STE. 2300, PHILA,
PA 19103, USA.

For MEDICAL SERVICE ASSOCIATION OF
PENNSYLVANIA d/b/a PENNSYLVANIA BLUE
SHIELD, DEFENDANT: JAMES A. YOUNG,
MARY ELLEN NEPPS, CHRISTIE, PABARUTE,
MORTENSEN AND YOUNG, 1880 J.F.K. BLVD.,
STE. 1000, 10TH FL., PHILA, PA 19103, USA. For
CAPITAL BLUE CROSS, DEFENDANT: DANIEL B.
HUYETT, STEVENS & LEE, 607 WASHINGTON
STREET, P.O. BOX 679, READING, PA 19603, USA.
For INDEPENDENCE BLUE CROSS, DEFENDANT:
J. GORDON COONEY, JR., ERIC KRAEUTLER,
THOMAS J. FULLAM, MORGAN, LEWIS &
BOCKIUS, 2000ONE LOGAN SQUARE, PHILA, PA
19103–6993, USA.

**JUDGES:** BRODERICK

**OPINIONBY:** RAYMOND J. BRODERICK

**OPINION:**

**MEMORANDUM**

BRODERICK, J. JULY 20, 1993

On March 5, 1993, this Court certified a class in this ac-
tion with the understanding that, pursuant to *Fed.R.Civ.P.
23*, the definition of the class may be altered or amended
by the Court at any time before a decision on the mer-
its is entered. Now before the Court is the motion of all

defendants for reconsideration of the class certification
or, in the alternative, for certification for immediate **[*2]**
appeal pursuant to *28 U.S.C. § 1292*(b) of this Court's
Order certifying the class. Having reconsidered the Order
of March 5, 1993, for the reasons set forth below, this
Court will order that its Order of March 5, 1993, shall
remain in full force and effect. Defendants' motion in the
alternative for certification for immediate appeal, for the
reasons set forth below, will be denied.

The background of this action is set out in this
Court's Memorandum of March 5, 1993, and is re-
peated herein only as necessary to defendants' mo-
tion for reconsideration. This action was instituted as a
class action by plaintiff Thomas Sutton on August 17,
1992, on behalf of himself and all others similarly sit-
uated, against defendants Medical Service Association
of Pennsylvania, d/b/a Pennsylvania Blue Shield (here-
inafter "Pennsylvania Blue Shield"), Capital Blue Cross
and Independence Blue Cross. At all times relevant to
this action, plaintiff Sutton has had medical insurance
through his employment as part of a group plan which is
protected by the Employee Retirement Income Security
Act ("ERISA"), *29 U.S.C. § 1001* et seq. Plaintiff's **[*3]**
medical insurance includes Major Medical coverage that
is provided by, and jointly underwritten by, Pennsylvania
Blue Shield and Capital Blue Cross. Pursuant to an agree-
ment between Pennsylvania Blue Shield, Capital Blue
Cross and Independence Blue Cross, the processor of the
Major Medical claims is Independence Blue Cross.

In his Complaint, plaintiff Sutton asserts that on or
before November 10, 1990, a claim was submitted to
Pennsylvania Blue Shield on his behalf for payment of
$440.00 for medical services. On November 19, 1990,
Pennsylvania Blue Shield sent a check to plaintiff in the
amount of $175.00 as total payment of the claim, together

with an "explanation of benefits" form. On the front of the "explanation of benefits" form was the following prominently printed computerized declaration:

> The Pennsylvania Blue Shield allowance is accepted by participating doctors as payment in full. Your doctor is non–participating.

Plaintiff Sutton asserts that this declaration was misleading to him because it completely failed to mention that additional benefits were available to him to pay the bill of his non-participating doctor under his Major Medical coverage, which coverage [*4] had been issued to him by Pennsylvania Blue Shield and Capital Blue Cross.

On the reverse side of the "explanation of benefits" form, the final three lines of 53 lines of small print stated:

> MAJOR MEDICAL COVERAGE: Services that are disallowed may be considered for payment under Major Medical or Federal Employee Supplemental coverage, if applicable. Refer to the subscriber's Major Medical Agreement or employee benefit booklet. Major Medical claims are to be submitted by the subscriber to his Major Medical insurer.

Plaintiff Sutton asserts that he did not understand, and a reasonable claimant would not have understood, from the "if applicable" language in small print on the reverse of the "explanation of benefits" form, combined with Pennsylvania Blue Shield's denial of most of his claim and the language of the computer print–out on the front of the form, that additional coverage was available for the payment of his non–participating physician's bill, and that he could receive the additional coverage by simply resubmitting his claim on a Major Medical form to a Major Medical address. He asserts that he was misled by Pennsylvania Blue Shield into believing that he did not have [*5] additional coverage, and that, as a result of the form of denial of most of his claim, he did not discover how to obtain full benefits nor did he receive the benefits to which he was entitled.

On behalf of himself and the class, plaintiff Sutton has brought this action, asserting that Pennsylvania Blue Shield has engaged in a Commonwealth–wide practice of denying claims that should have been paid under a claimant's Major Medical coverage through the issuing of "explanation of benefits" forms with misleading computer declarations combined with inadequate printed information. He has brought four claims against Pennsylvania Blue Shield which, summarized, are:

Count I: Pennsylvania Blue Shield has breached its duty under ERISA either to pay covered Major Medical claims or to forward such covered claims for processing and payment.

Count II: Pennsylvania Blue Shield has breached its duty under Erisa to clearly and intelligibly inform subscribers of their coverage rights and of the process for obtaining these rights.

Count III: Pennsylvania Blue Shield has breached its affirmative duty as stated in 29 U.S.C. § 1133 of ERISA:

> [to] provide adequate [*6] notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant. . . .

Count IV: Pennsylvania Blue Shield has breached its duty as fiduciary and/or co–fiduciary under ERISA, 29 U.S.C. § 1104(a)(1), to act solely in the interest of its insureds.

In addition, plaintiff asserts on behalf of himself and the class that Capital Blue Cross and Independence Blue Cross as providers with Pennsylvania Blue Shield of Major Medical coverage to the members of the class are jointly and severally liable with Pennsylvania Blue Shield to the class. Specifically, plaintiff on behalf of himself and the class has brought four counts against Capital Blue Cross and Independence Blue Cross which, summarized, are:

Count V: Capital Blue Cross and Independence Blue Cross are jointly and severally liable with Pennsylvania Blue Shield to the class for breach of the duty under ERISA to pay or to forward for payment the covered claims of plaintiff and the class members.

Count VI: Capital Blue Cross and Independence [*7] Blue Cross are jointly and severally liable with Pennsylvania Blue Shield to the class for breach of the duty under ERISA to inform plaintiff and the class members of their rights and coverages.

Count VII: Capital Blue Cross and Independence Blue Cross are jointly and severally liable with Pennsylvania Blue Shield to the class for breach of statutory duties under ERISA, 29 U.S.C. § 1133, as quoted above.

Count VIII: Capital Blue Cross and Independence Blue Cross are jointly and severally liable with Pennsylvania Blue Shield to the class for breach of fiduciary duties under ERISA caused, inter alia, by Pennsylvania Blue Shield's refusal to pay or to forward for payment claims covered by Major Medical, by its failure

to intelligibly inform the class of additional benefits, and by its failure to advise the class to re–submit their claims on another form and/or to another address to obtain their Major Medical benefits.

Plaintiff Sutton sought class certification pursuant to *Fed.R.Civ.P. 23(a)*, (b)(2) and (b)(3). In this Court's Memorandum and Order dated March 5, 1993, the Court limited the class to those subscribers who, during the period pertinent [*8] to this action, had Major Medical coverage provided by Pennsylvania Blue Shield together with Capital Blue Cross and/or Independence Blue Cross. Capital and Independence are the two Blue Crosses which are before the Court as defendants.

Having found in its Memorandum and Order of March 5, 1993, that plaintiff had carried his burden of showing that this class met each of the requirements of Rule 23(a), (b)(2) and (b)(3), the Court certified the following class:

All persons

(1) who had Major Medical coverage provided by Pennsylvania Blue Shield together with Capital Blue Cross and/or Independence Blue Cross, which coverage is protected by the Employee Retirement Income Security Act ("ERISA"), *29 U.S.C. § 1001* et seq.; and

(2) who submitted a claim to Pennsylvania Blue Shield for payment for services covered by the person's Major Medical coverage, which claim was not paid to the full extent of the person's Major Medical coverage, based in whole or in part on the person's having filed such claim without using a Major Medical form, or based in whole or in part on such claim having been sent to a Pennsylvania Blue Shield address other [*9] than a Blue Cross/Blue Shield Major Medical address; and

(3) whose claims were submitted on or after August 17, 1986.

(4) Pursuant to *Fed.R.Civ.P. 23*, this Court may alter or amend the above definition of the class at any time before a decision on the merits is entered.

As stated heretofore, all defendants have filed a motion for reconsideration of the Court's certification of this class. As defendants themselves assert, plaintiff Sutton's claims fall within two types: (1) an alleged violation of a "duty

to inform," and (2) an alleged violation of a "duty to pay or forward." The one straight–forward issue in this suit is whether Pennsylvania Blue Shield has violated its duties under ERISA by its practice of issuing "explanation of benefits" forms with allegedly misleading computer declarations combined with allegedly inadequate printed information in response to claims submitted to it, with the result that reasonable claimants who were entitled to additional benefits failed to receive them. In short, it is Pennsylvania Blue Shield's implementation and use of a method of notification in response to claims submitted to it which is at issue in this case.

Nevertheless, [*10] defendants assert that certification of this class should be reconsidered based on their contentions that plaintiff Sutton lacks standing to represent participants and beneficiaries of any plan other than his own ERISA–protected plan, and that individual questions of reliance or prejudice, as well as undisputed facts, preclude certification. Defendants' contentions are meritless.

ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans by subjecting the plans to federal regulation. This regulation includes uniform standards for reporting, disclosure, and fiduciary responsibilities for both pension and welfare plans. *Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 90–91,103 S. Ct. 2890, 2896 (1983).*

The civil enforcement provision of ERISA, § 1132, states in pertinent part:

(a) Persons empowered to bring a civil action

A civil action may be brought—

(1) by a participant or beneficiary—

* * *

(B) to recover benefits due him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits [*11] under the terms of the plan;

* * *

(3) by a participant, beneficiary or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of

this subchapter or the terms of the plan;

* * *

Defendants do not contest plaintiff Sutton's standing to represent a class composed of members of his own ERISA–protected plan. Nonetheless, they assert that, under ERISA, he does not have "standing" to represent a class composed of members of plans of which he is not himself a member. Defendants would be correct if permitting this action to proceed as a class action were an expansion of the limited remedies Congress provided to private litigants under Section 1132. As the Supreme Court stated in *Pilot Life Insurance Company v. Dedeaux, 481 U.S. 41, 54, 107 S. Ct. 1549, 1556, 95 L. Ed. 2d 39 (1987)* (quoting *Massachusetts Mutual Life Insurance Company v. Russell, 473 U.S. 134, 146, 105 S. Ct. 3085, 3092, 87 L. Ed. 2d 96 (1985)* (emphasis original to Russell): **[*12]**

> The six carefully integrated civil enforcement provisions found in [Section 1132] of the statute as finally enacted . . . provide strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly.

The certification of a class in this action, however, is not an expansion of the remedies available to plaintiff Sutton or to any other class member. Under the definition of the class, each class member must have standing to bring a separate ERISA action based on his or her claim. That is, in response to a claim to Pennsylvania Blue Shield, each class member must have received less than that to which he or she was entitled under his or her total coverage, together with an "explanation of benefits" form from Pennsylvania Blue Shield, the wording of which the member reasonably did not understand as informing him or her that the member had only to resubmit the claim on another claim form and/or to another address to receive the full benefits to which he or she was entitled. If the class action is successful, each individual class member may be entitled to recover no more than that to which he or she would be individually entitled **[*13]** to recover if he or she had brought a separate action under Section 1132. Similarly, if the class is successful on the counts for injunctive relief, this relief, too, is no more than that to which each individual would be entitled if he or she had brought a separate action under Section 1132.

In this Court's Memorandum of March 5, 1993, this Court defined the class for this action and then found that plaintiff Sutton had carried his burden of proving that he would fairly and adequately protect the interests of the class, and that the class should be certified pursuant to

Rule, 23(a), (b)(2) and (b)(3). Perhaps this Court should have also explicated its reasons for its determination that the fact that this case is brought pursuant to ERISA, under the circumstances of this case, is not a bar to this case proceeding as a class action. Nevertheless, as set forth above, this Court determines once again that there is no merit in defendants' contention that, in this ERISA action, plaintiff Sutton lacks standing to represent participants and beneficiaries of any plan other than his own.

As set forth above, each class member in this action alleges the same injury, which injury each member **[*14]** of the class alleges arose from defendants' method of response to claims submitted to Pennsylvania Blue Shield. Although defendants assert that class certification should be reconsidered based on their contention that individual questions of reliance or prejudice require an examination of the terms of each individual's group plan and the "mix" of information any individual plaintiff may have received, the issue in this action concerns only the manner in which a claim was processed once it was received by Pennsylvania Blue Shield. The issue, thus, concerns whether defendants have violated their duties as fiduciaries under ERISA through the formulation and implementation of the claims procedure which they have admitted they have applied uniformly to the claims of the members of the class. At this stage of the proceedings, this action appears to concern neither the terms of plaintiff Sutton's plan nor the terms of any other class member's plan, provided that each member's Major Medical coverage was issued by Pennsylvania Blue Shield together with Capital Blue Cross and/or Independence Blue Cross.

Further, plaintiff Sutton has also asked for injunctive relief. The purpose of this lawsuit, **[*15]** thus, is not solely to determine the amount, if any, which members of the class may be entitled to recover. It is also for the determination whether the procedure used by defendants is misleading and/or inadequate, and therefore, under ERISA, must be enjoined. In connection with the claims for injunctive relief, this action does not appear to concern the terms of plaintiff Sutton's plan nor the terms of any other class member's plan, provided that each member's Major Medical coverage was issued by Pennsylvania Blue Shield together with Capital Blue Cross and/or Independence Blue Cross.

Finally, defendants assert that class certification must be reconsidered because of certain alleged facts of record which, according to defendants, demonstrate that there has been no denial of any Major Medical claims. Under the definition of the class, however, no claimant may be a member of the class if he or she filed a claim for Major Medical coverage which claim was considered and denied by Pennsylvania Blue Shield, Capital Blue Cross

1993 U.S. Dist. LEXIS 9763, *15

or Independence Blue Cross. The Court therefore determines that defendants' "facts" do not provide a basis for reconsideration of the class certification.

Defendants [*16] have moved, in the alternative, for certification for immediate appeal pursuant to *28 U.S.C. § 1292*(b) of this Court's Order of March 5, 1993, certifying the class. This motion will be denied.

*28 U.S.C. § 1292*(b) states in pertinent part:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. . . .

In *Katz v. Carte Blanche Corporation, 496 F.2d 747* (3rd Cir.) cert. denied. *419 U.S. 885, 95 S. Ct. 152, 42 L. Ed. 2d 125 (1974),* the Court of Appeals for the Third Circuit explained that Section 1292(b) requires that a district court evaluate three criteria in determining whether to certify an order for interlocutory appeal. As the Third Circuit stated in *Katz, 496 F.2d at 754* [*17] (quoting Section 1292(b):

> The order must (1) involve a "controlling question of law," (2) offer "substantial ground for difference of opinion" as to its correctness, and (3) if appealed immediately, "materially advance the ultimate termination of the litigation."

The Court's Order of March 5, 1993, granting class certification in this matter, satisfies none of the requirements for a Section 1292(b) interlocutory appeal. Although defendants assert that each of the bases for their motion for reconsideration—that is, standing, reliance and certain alleged facts of record—also present controlling questions of law for interlocutory appeal, this Court has determined, as set forth above, that none of defendants' contentions have merit. The Court therefore determines that the Order of March 5, 1993, does not involve a controlling question of law warranting interlocutory appeal, and further, that there is no substantial ground for difference of opinion as to the correctness of this Court's determination of any controlling question of law. Finally, this Court having determined that there is no substantial ground for difference of opinion as to any controlling question of law in [*18]

this matter, allowing interlocutory appeal would in no way materially advance the ultimate termination of this litigation, but instead, would only serve to further delay proceedings.

Further, it is noted that, as set forth above, the final paragraph of the definition of class certification in this matter states:

> (4) Pursuant to *Fed.R.Civ.P. 23*, this Court may alter or amend the above definition of the class at any time before a decision on the merits is entered.

As the Third Circuit stated in *Link v. Mercedes–Benz of North America, Inc., 550 F.2d 860, 863 (3rd Cir. 1977):*

> Because Rule 23(c) provides that the district court's determination to permit a class action "may be conditional, and may be altered or amended before the decision on the merits," that determination, in and of itself, does not present a "controlling question of law" to which this court should be hospitable under § 1292(b). . . . In affording immediate appellate review of "controlling questions of law," § 1292(b) was not designed to substitute wholesale appellate certainty for trial court uncertainty under circumstances where, as here, the Rule gives broad discretion to the [*19] district court to revise its class determination at any time prior to the decision on the merits.

Having found that the Court's Order of March 5, 1993, granting class certification in this matter, satisfies none of the requirements for interlocutory appeal under Section 1292(b), this Court will deny defendants' motion in the alternative for certification for immediate appeal under Section 1292(b).

Lastly, this Court notes that defendants, in their brief at 28, protest the lack of an opportunity for oral argument on the issue of class certification. This Court has determined that, after considering 136 pages of briefing in addition to exhibits submitted by the defendants on the issue of class certification alone, followed by 61 pages of briefing in addition to exhibits submitted by the defendants in support of their motion for reconsideration of this Court's Order certifying the class, defendants have had ample opportunity to present this Court with any material they consider relevant.

**ORDER**

1993 U.S. Dist. LEXIS 9763, *19

AND NOW, this 20th day of July, 1993; defendants having filed a motion for reconsideration of this Court's Order of March 5, 1993, certifying a class in this matter or, in the [*20] alternative, for certification for immediate appeal pursuant to 28 U.S.C. § 1292(b) of this Court's Order of March 5, 1993, certifying the class; this Court in its Memorandum of July 20, 1993, having reconsidered its Order of March 5, 1993, and, for the reasons set forth in this Court's Memorandum of July 20, 1993;

IT IS ORDERED: this Court's Order of March 5, 1993, certifying a class in this matter SHALL REMAIN IN FULL FORCE AND EFFECT.

IT IS FURTHER ORDERED: defendants' motion in the alternative for certification for immediate appeal pursuant to 28 U.S.C. § 1292(b) of this Court's Order of March 5, 1993, is DENIED.

RAYMOND J. BRODERICK, J.