## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| WALTER PHILLIPS, On Behalf of Himself and All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) C.A. No. 05-604-KAJ ) |
| MOLSON COORS BREWING COMPANY, et al. | ) ) ) |
| Defendants. | ) ) |

## DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF
## THEIR MOTION TO DISMISS THE AMENDED COMPLAINT

Of Counsel:

Brian T. Ortelere
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, Pennsylvania 19103-2921
(215) 963-5150/5201

Donald L. Havermann
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 739-5072

Tamsin J. Newman
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178-0600
(212) 309-6367

Attorneys for Defendants Peter H. Coors, W. Leo Kiely III,
Charles M. Herington, Franklin W. Hobbs, Randall
Oliphant, Pamela Patsley, Wayne Sanders, Albert C. Yates,
Barbara Albanesi, David Barnes, Chat Chatterjee, James
Fredericks, Michael J. Gannon, Robert Klugman, Michael
Kruteck, Vonda Mills, Jeff Morgan, Michael Rumley, Ben
Schwartz, Rob Witwer, Timothy Wolf, Katherine
MacWilliams, and Harold R. Smethhills

Michael R. Young
Antonio Yanez
WILLKIE FARR & GALLAGHER
787 Seventh Avenue
New York, NY 10019-6099
(212) 728-8000

Attorneys for Molson Coors Brewing Company

Charles F. Richards, Jr. (#701)
richards@rlf.com
Jeffrey L. Moyer (#3309)
moyer@rlf.com
Elizabeth C. Tucker (#4468)
tucker@rlf.com
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square, P.O. Box 551
Wilmington, Delaware 19899-0551
(302) 651-7700

Attorneys for Defendants

Dated:  September 1, 2006

# TABLE OF CONTENTS

Page

INTRODUCTION .............................................................................................. 1

ARGUMENT ..................................................................................................... 2

I.    THIS ACTION SHOULD BE DISMISSED BECAUSE PLAINTIFF LACKS
      STANDING TO SUE UNDER ERISA............................................................. 2

      A.    *Bauer v. Summit Bancorp* and *Acosta v. Pacific Enterprises* Compel
            Dismissal Of Plaintiff's Claims Purportedly Asserted On Behalf Of The
            Participants In The S&I Plan ............................................................ 2

      B.    Because Plaintiff Relinquished His Participant Status, He Lacks Standing
            To Pursue The Claims In The Amended Complaint On Behalf Of
            Participants In Either The S&I Plan Or The Memphis Plan ................... 3

            1.    *Crawford v. Lamantia* compels dismissal................................ 3

            2.    The Amended Complaint supersedes the original Complaint for
                  purposes of asserting subject matter jurisdiction........................ 5

            3.    The specific relevant provision considered next to other
                  statutory sections further compels dismissal............................. 6

            4.    Because Plaintiff brings derivative claims, his withdrawal of
                  this investments requires immediate dismissal.......................... 7

II.   EVEN IF PLAINTIFF HAD STANDING TO SUE UNDER ERISA, THE
      COURT MUST DISMISS PLAINTIFF'S AMENDED COMPLAINT FOR
      FAILURE TO STATE A CLAIM ................................................................... 9

      A.    Plaintiff's "Inflation" Claim Finds No Support In ERISA And Is Entirely
            Incompatible With Circuit Law Addressing Investments in Employer
            Stock ................................................................................................ 10

            1.    Phillips ignores the Coors Stock Fund's stated goals.................. 10

            2.    Where the Fund furthers legitimate, non-economic objectives,
                  there can be no "artificial inflation" claim as a matter
                  of law........................................................................................ 13

            3.    The Plan's "artificial inflation" claim is pending in the
                  securities suits, further compelling dismissal of the
                  ERISA action ............................................................................ 15

            4.    ERISA's definitional provisions support Defendants'
                  Motion ...................................................................................... 16

            5.    The securities law predicate to the "artificial inflation"
                  claim is flawed ......................................................................... 17

      B.    There Has Been No Material Omission Or Misrepresentation ............... 18

CONCLUSION .................................................................................................. 20

i

**TABLE OF AUTHORITIES**

Acosta v. Pac. Enter.,
950 F.2d 611 (9th Cir. 1991) .......................................................................................... 3

Anweiler v. America Elec. Power Serv. Corp.,
3 F.3d 986 (7th Cir. 1993) ............................................................................................. 8

Arizonans for Official English v. Arizona,
520 U.S. 43 (1997) ........................................................................................................ 7

Artway v. Attorney Gen. of N.J.,
81 F.3d 1235 (3d Cir. 1996) .......................................................................................... 4

Atwell v. Lavan,
No. 03-1728, 2005 WL 2234646 (M.D. Pa. Sept. 14, 2005) ........................................ 5

Baker v. Kingsley,
387 F.3d 649 (7th Cir. 2004) ....................................................................................... 17

Barnhart v. Sigmon Coal Co., Inc.,
534 U.S. 438 (2002) ...................................................................................................... 6

Basic Inc. v. Levinson,
485 U.S. 224 (1988) ................................................................................................ 15, 18

Bauer v. Summit Bancorp,
325 F.3d 155 (3d Cir. 2003) .................................................................................. 1, 2, 3

Bennett v. Matched Savings Plan Admin. Comm.,
168 F.3d 671 (3d Cir. 1999) ....................................................................................... 17

Board of Sch. Comm'rs v. Jacobs,
420 U.S. 128 (1975) ...................................................................................................... 7

Boelens v. Redman Homes, Inc.,
759 F.2d 504 (5th Cir. 1985) ........................................................................................ 5

California v. Sierra Club,
451 U.S. 287 (1981) ...................................................................................................... 7

Great-West Life & Annuity Ins. Co. v. Knudson,
534 U.S. 204 (2002) .................................................................................................... 17

Crawford v. Lamantia,
34 F.3d 28 (1st Cir. 1994) .......................................................................................... 3, 4

Crotty v. Cook,
121 F.3d 541 (9th Cir. 1997) ........................................................................................ 4

Daniels v. Thomas & Betts,
263 F.3d 66 (3d Cir. 2001) ........................................................................................ 20

Dickerson v. Feldman,
426 F. Supp. 2d 130 (S.D.N.Y. 2006) .................................................................... 7, 9

Empire Healthchoice Assurance, Inc. v. McVeigh,
No. 05-200, U.S. -- 2006 WL 1639763 (U.S. June 15, 2006) ..................................... 6

Fallick v. Nationwide Mutual Ins.,
162 F.3d 410 (6th Cir. 1998) ....................................................................................... 3

Hemispherx Biopharma, Inc. v. Asensio,
Civ. No. 98-5204, 2000 WL. 807012 (E.D. Pa. June 7, 2000) ................................... 5

In re Honeywell Int'l ERISA Litig.,
No. 03-1214 (DRD), 2004 WL. 3245931 (D.N.J. June 14, 2004) ............................ 11

Hussey v. Chase Manhattan Bank,
418 F. Supp. 2d 702 (E.D. Pa. 2005) ...................................................................... 20

Johnson v. United States,
317 F.3d 1331 (Fed. Cir. 2003) ................................................................................... 8

Kaliszewski v. Sheet Metal Workers' Nat'l Pension,
No. 03-216E, 2005 WL. 2297309 (W.D. Pa. July 19, 2005) ....................................... 8

Kokkonen v. Guardian Life Ins. Co. of America,
511 U.S. 375 (1994) .................................................................................................... 2

Kuper v. Iovenko,
66 F.3d 1447 (6th Cir. 1995) ..................................................................................... 14

Lewis v. Chiles,
719 F.2d 1044 (9th Cir. 1983) ..................................................................................... 8

Mass. Mut. Life Ins. Co. v. Russell,
473 U.S. 134 (1985) ........................................................................................ 8, 16, 17

In re McKesson HBOC, Inc. ERISA Litig.,
391 F. Supp. 2d 812 (N.D. Cal. 2005) ...................................................................... 16

Mertens v. Hewitt Assocs,
508 U.S. 248 (1993) ................................................................................................. 7, 9

Moench v. Robertson,
62 F.3d 335 (3d Cir. 2003) ................................................................................. passim

Morrison v. Marsh & McLennan Cos., Inc.,
439 F.3d 295 (6th Cir. 2006) ....................................................................................... 4

New Rock Asset Partners v. Preferred Entity Advancements, Inc.,
101 F.3d 1492 (3d Cir. 1996) ........................................................................... 5

Northeast Dep't ILGWV Health and Welfare Fund v. Teamsters Local Union No. 229,
764 F.2d 147 (3d Cir. 1985) ............................................................................. 2

Overberger v. BT Financial Corp.,
106 F.R.D. 438 (W.D.Pa. 1985) ....................................................................... 8

Portnoy v. Kawecki Berylco Indus., Inc.,
607 F.2d 765 (7th Cir. 1979) ........................................................................... 8

Rankin v. Rots,
220 F.R.D. 511 (E.D. Mich. 2004) ................................................................. 4

Raymond v. Mobil Oil Co.,
983 F.2d 1528 (10th Cir. 1993) ....................................................................... 7

Rispler v. Sol Spitz Co., Inc.,
418 F. Supp. 2d 82 (E.D.N.Y. 2005) ............................................................... 8

Schilling v. Belcher,
582 F.2d 995 (5th Cir. 1978) ........................................................................... 8

Snyder v. Pascack Valley Hosp.,
303 F.3d 271 (3d Cir. 2002) ............................................................................ 5

Steger v. Franco, Inc.,
228 F.3d 889 (8th Cir. 2000) ........................................................................... 4

Summers v. State Street Bank & Trust,
453 F.3d 404 (7th Cir. 2006) ................................................................... 13, 15

In re Unisys Sav. Plan Litig.,
173 F.3d 145 (3d Cir. 1999) ........................................................................... 18

Thomas v. Aris Corp. of Am.,
No. 4: 2003 WL. 23096038 (M.D. Pa. Nov. 17, 2003) ................................. 18

Vartanian v. Monsanto Co.,
14 F.3d 697 (1st Cir. 1994) .............................................................................. 4

Wellness Community-National v. Wellness House,
70 F.3d 46,

Wiseman v. First Citizens Bank & Trust Co.,
215 F.R.D. 507 (W.D.N.C. 2003) ................................................................. 18

Wright v. Oregon Metallurgical,
360 F.3d 1090 (9th Cir. 2004) .................................................................. 14, 19

Wynder v. McMahon,
360 F.3d 73 (2d Cir. 2004) ............................................................................ 2

## FEDERAL STATUTES

29 U.S.C. §1002(7) .................................................................................... 7

29 U.S.C. §1108(e) .................................................................................... 16

29 U.S.C. §1108(18) .................................................................................. 16

29 U.S.C. §1132(a)(2) ................................................................................. 6

29 U.S.C. §1132(a)(9) ................................................................................. 6

29 U.S.C. §1132(e) ..................................................................................... 7

## RULES AND STATUTES

Tax Reform Act of 1976, Pub. L. No. 94-455, § 803(h), 90 Stat. 1590 (1976) ................. 11

## OTHER PUBLICATIONS

EMPLOYEE BENEFITS LAW (Stephen J. Sacher et al. eds., 2000) ......................... 13

## INTRODUCTION

Defendants respectfully submit this Reply to Plaintiff Walter Phillips' ("Plaintiff" or "Phillips") Brief in Opposition ("Opp. Br.") to Defendants' Motion to Dismiss.

Plaintiff has failed to explain why and how Third Circuit precedent does not require the immediate dismissal of the lawsuit. Phillips completely ignores, for example, <u>Bauer v. Summit Bancorp</u>, 325 F. 3d 155 (3d Cir. 2003), holding squarely that an individual must satisfy the plan's eligibility provisions to have statutory standing to sue in the Third Circuit. <u>Bauer</u> deprives Phillips of the claimed right to sue on behalf of the larger Coors plan in which he never participated. Plaintiff also ignores the lessons of <u>Moench v. Robertson</u>, 62 F. 3d 335 (3d Cir. 2003) – that employer stock, and fiduciary conduct with respect to employer stock, must be treated differently under ERISA than other retirement plan investments, because employer stock serves Congressionally-endorsed purposes other than the accumulation of capital for retirement. According to <u>Moench</u>, plan fiduciaries must jettison employer stock investments only when the purposes and objectives of the plan settlors can no longer be satisfied by remaining invested in that stock. Where, as here, the purposes and objectives of the settlors of the Molson-Coors stock fund include, at the very least, the provision of pass-through voting rights to employee-participants, a single blip in the company's stock price, or the allegation that the stock price was artificially inflated, cannot give rise to a cause of action.

This brings us to Phillips' third significant omission. Plaintiff fails to recognize that the so-called "prudent" course of conduct he claims Defendants should have followed in this case – "refrain[ing] from offering employer stock as an option, removing employer stock as an option, halting additional investments into employer stock" (Opp. Br. at 18) – would have deprived plan participants of the right to vote their shares on perhaps the most critical issue that will ever confront them as employees, the identity of their future employer. Phillips' suggestion that ERISA fiduciaries have a duty to jettison

employer stock investments every time a transitory business event has a negative impact on the stock

price is not the law in this Circuit. Plaintiff's claims should be dismissed.[1]

## ARGUMENT

I.    **THIS ACTION SHOULD BE DISMISSED BECAUSE PLAINTIFF LACKS STANDING TO SUE UNDER ERISA**

    A.    ***Bauer v. Summit Bancorp*** **and** ***Acosta v. Pacific Enterprises*** **Compel Dismissal Of Plaintiff's Claims Purportedly Asserted On Behalf Of The Participants In The S&I Plan.**

        Glaringly absent from Plaintiff's brief is any reference to the Third Circuit's decision in <u>Bauer</u>

<u>v. Summit Bancorp</u>, 325 F.3d 155, 160 (3d Cir. 2003). In all likelihood, this is no mere oversight on

Plaintiff's part given the impact of the ruling on the lawsuit. Simply put, <u>Bauer</u> held that to qualify as a

"participant" under ERISA with standing to sue under the statute, an individual must be, "<u>according to</u>

<u>the language of the plan itself, eligible to receive a benefit under the plan</u>." 325 F.3d at 160 (emphasis

added). An individual who cannot satisfy the plan's eligibility provisions "lacks standing to sue." <u>Id.</u>

See also <u>Northeast Dep't ILGWU Health and Welfare Fund v. Teamsters Local Union No. 229</u>, 764

F.2d 147, 154 (3d Cir. 1985) ("Indeed, this interpretation is also compelled by the fact that <u>one's status</u>

<u>as fiduciary under ERISA is dependent upon one's relationship to a particular plan . . . . Jurisdiction</u>

<u>cannot be predicated on the mere coincidence that Hoffman is a fiduciary of a benefit plan unrelated to</u>

<u>the one which he seeks to enforce</u>.") (emphasis added). Proper recognition of the limited nature of this

Court's jurisdiction further precludes relaxation of the governing rules. <u>Kokkonen v. Guardian Life Ins.</u>

<u>Co. of Am.</u>, 511 U.S. 375, 377 (1994) ("Federal courts are courts of limited jurisdiction. They possess

only that power authorized by Constitution and statute, <u>which is not to be expanded by judicial decree</u>. It

is to be presumed that a cause lies outside this limited jurisdiction.") (emphasis added).

---

[1]    As a preliminary matter, Plaintiff states that he "need only satisfy the basic notice pleading standards of Rule 8" to survive Defendants' Motion to Dismiss. (Opp. Br. at 11). To the contrary, the pleading standards of Rule 8 do not excuse Plaintiff from his obligation to state a viable claim. <u>See, e.g.</u>, <u>Wynder v. McMahon</u>, 360 F.3d 73, 80 (2d Cir. 2004) ("[T]here is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted.").

Plaintiff's silence on this point speaks volumes. Phillips cannot prove, under any set of facts, that he was a participant in, or eligible for benefits under, the S&I Plan. (Defendants' Opening Brief ("Def. Br.") at 10-11). He therefore lacks standing to sue on behalf of the S&I Plan. Bauer, 325 F.3d at 160. The Ninth Circuit addressed this precise situation in Acosta v. Pac. Enters., 950 F.2d 611 (9th Cir. 1991), and held that the plaintiff "lack[ed] standing to sue regarding the administration of the remaining plans, in which he [did] not participate." Id. at 617 [2] Phillips' claims on behalf of participants in the larger S&I Plan must be dismissed for lack of standing and subject matter jurisdiction [3]

**B.** **Because Plaintiff Relinquished His Participant Status, He Lacks Standing To Pursue The Claims In The Amended Complaint On Behalf Of Participants In Either The S&I Plan Or The Memphis Plan.**

Phillips points to his participant status in the Memphis Plan "at the time he commenced this action" and asks this Court to find that he presently enjoys standing even though he requested and received a full distribution of his account before the filing of his Amended Complaint. (Opp. Br. at 12). This argument has been rejected by the First Circuit addressing indistinguishable claims, runs counter to Third Circuit caselaw on the impact of the filing of an amended complaint, and ignores both the proper construction given the operative ERISA provisions and the derivative nature of the breach of fiduciary duty claims alleged.

**1.** *Crawford v. Lamantia* **compels dismissal.**

The First Circuit's opinion in Crawford v. Lamantia, 34 F.3d 28 (1st Cir. 1994), supplies the governing rule regarding when a plaintiff has standing to assert claims pursuant to ERISA. In Crawford,

---

[2]    It is worth noting the Third Circuit's citation to Acosta with approval in Moench. Moench, 62 F.3d at 565.

[3]    Plaintiff's attempt to distinguish Acosta on the grounds that it is not a class action erroneously conflates Rule 23 with ERISA statutory standing. At issue here is statutory standing. Either a plaintiff has standing to sue under ERISA or he does not; he cannot weave statutory standing out of whole cloth by purporting to assert class, rather than individual, claims. For this reason, the Sixth Circuit's decision in Fallick v. Nationwide Mut. Ins., 162 F.3d 410 (6th Cir. 1998), is similarly inapposite. Fallick involved a class certification motion and the Court did not address statutory standing under ERISA. Id. at 422. See also Def. Br. at 11 n. 16 (Rules Enabling Act specifically precludes reliance upon a procedural rule to create substantive rights).

plaintiff filed a complaint alleging breach of fiduciary duty claims on behalf of an ESOP. Id. at 31.

Approximately one year later, the employee voluntarily took a full distribution of his benefits. Id. at 30-

31. Shortly thereafter, the employee filed an amended complaint. Id. at 31. The district court dismissed

the case for lack of standing, and the First Circuit affirmed. Id. at 33. In so holding, the First Circuit

specifically rejected plaintiff's argument that he had standing because he was a current employee, and

had not yet taken a full distribution, when the lawsuit began:

> [W]e note that the basis for standing, since it goes to the very power of the court
> to act, must exist at all stages of the proceeding, and not merely when the action
> is initiated or during an initial appeal. . . . . Therefore, although plaintiff may
> have had standing as a current employee when he brought this action, <u>by the
> time he filed his amended complaint</u>, he lost this standing on account of having
> terminated his employment with ADL and having collected all vested benefits
> then due him from the ESOP

Id. at 32 (emphasis added). The Court accordingly found that plaintiff was not a participant and lacked

standing to sue under ERISA, a result consistent with Third Circuit authority establishing that the date of

the filing of the Amended Complaint is the proper temporal discriminant for the determination of subject

matter jurisdiction, as next explained. Id. at 32-33.[4]

---

[4]     The opinions cited by Plaintiff do not advance his cause. First, Phillips ignores the fact that
he freely elected to take a lump-sum distribution of his benefits after he commenced this lawsuit
alleging fiduciary breaches, negating any contention that the supposed fiduciary misconduct caused
his loss of participant status. Thus, opinions like <u>Vartanian v. Monsanto Co.</u>, 14 F.3d 697 (1st Cir.
1994) (in which plaintiff retired early in reliance upon employer's alleged misrepresentation of its
intent to increase early retirement benefits), and <u>Rankin v. Rots</u>, 220 F.R.D. 511 (E.D. Mich. 2004) (in
which the plan sponsor paid out benefits upon closure of store where plaintiff worked), are
distinguishable. Second, cases that did not involve ERISA statutory standing, like <u>Steger v. Franco,
Inc.</u>, 228 F.3d 889 (8th Cir. 2000) (addressing Article III standing in disability discrimination case),
and <u>Artway v. Attorney Gen'l of New Jersey</u>, 81 F.3d 1235 (3d Cir. 1996) (addressing Article III
standing in sex offender case), have no application here. Finally, opinions like <u>Morrison v. Marsh &
McLennan Cos., Inc.</u>, 439 F.3d 295 (6th Cir. 2006), did not involve the filing of an amended
complaint and therefore did not reach the issue of whether participant status must be maintained
throughout the lawsuit. The only opinion cited by Plaintiff involving the filing of an amended
complaint is <u>Crotty v. Cook</u>, 121 F.3d 541, 546 (9th Cir. 1997), an opinion which has not been cited
by a single court in this Circuit and which focused upon the possibility, not at issue here, that "[a] plan
fiduciary who did not want to comply with ERISA disclosure and reporting requirements could
simply ignore the requirements and pay participants their vested benefits late, or not at all." Phillips
has not alleged a violation of ERISA's reporting and disclosure requirements.

2.    **The Amended Complaint supersedes the original Complaint for
purposes of assessing subject matter jurisdiction.**

Third Circuit authority construing the impact of the filing of an amended complaint holds that

the amended pleading negates the original complaint and, as such, a jurisdictional challenge like the one

before this Court must be determined as of the time of the filing of the Amended Complaint. Because

Phillips took a full distribution prior to his filing of the Amended Complaint, he lacks standing to sue. In

New Rock Asset Partners v. Preferred Entity Advancements, Inc., 101 F.3d 1492 (3d Cir. 1996), the

Third Circuit flatly rejected the rule that federal subject matter jurisdiction is conclusively determined as

of the time of filing of the original Complaint. Id. at 1503.

In that case, the Court initially had federal question jurisdiction under the Financial Institutions

Reform, Recovery and Enforcement Act pursuant to a provision granting federal courts original

jurisdiction over any case in which the Resolution Trust Corporation ("RTC") is a party. Id. at 1499.

Plaintiff subsequently filed an amended complaint naming itself as the sole plaintiff. Id. The Court

rejected the plaintiff's argument that federal question jurisdiction continued to exist even though the

RTC was no longer a party:

> Our rejection of an absolute time of filing requirement breaks no new ground.
> Courts that have considered the rule more carefully have not hesitated to
> abandon it where appropriate. In Boelens v. Redman Homes, Inc., 759 F.2d
> 504 (5th Cir. 1985), the Fifth Circuit discussed the policies behind the time of
> filing rule and held that in a federal question case, where plaintiff's amended
> complaint omitted federal counts included in the original complaint on which
> jurisdiction could be based, the court would look to the amended complaint and
> decline jurisdiction. Id. at 508. The Fifth Circuit interpreted this rule as
> consistent with the general principle that the amended complaint "supersedes
> the original and renders it of no legal effect, unless the amended complaint
> specifically refers to or adopts the earlier pleading." Id. at 508.

New Rock, 101 F.3d at 1504 (emphasis added).[5]

---

[5]    See also Snyder v. Pascack Valley Hosp., 303 F.3d 271, 276 (3d Cir. 2002) ("An amended
complaint supercedes the original version in providing the blueprint for the future course of a
lawsuit."); Wellness Community-National v. Wellness House, 70 F.3d 46, 49 (7th Cir. 1995) ("Once
an amended pleading is interposed, the original pleading no longer performs any function in the case
. . . . [T]he original pleading, once superseded, cannot be utilized to cure defects in the amended
pleading, unless the relevant portion is specifically incorporated in the new pleading . . . . Thus, our
*(continued)*

The Amended Complaint is the operative pleading. Because Plaintiff did not hold assets in the Memphis Plan as of the date of the filing of the Amended Complaint (or in the S&I Plan at any time), he lacks standing to sue under ERISA. Nothing could be simpler.

### 3. The specific relevant provision considered next to other statutory sections further compels dismissal.

Moreover, the First Circuit's holding in Crawford and the Third Circuit's New Rock opinion, requiring Plaintiff to remain invested in the Memphis Plan to enjoy standing to sue, are consistent with ERISA's reference to participant status in the present tense, not in the past tense. Section 502(a)(2) allows an action to be brought "by the Secretary, or by a participant, beneficiary or fiduciary." 29 U.S.C. §1132(a)(2). By contrast, ERISA Section 502(a)(9) specifically authorizes former participants, receiving annuity payments from insurance companies obligated to make good on benefits obligations after the termination of a pension plan, to press fiduciary breach claims. In other words, 502(a)(9) permits claims to be brought "by any individual who was a participant or beneficiary at the time of the alleged violation." 29 U.S.C. §1132(a)(9) (emphasis added). Section 502(a)(9) specifically authorizes a former participant, i.e., one who "was a participant" to pursue fiduciary breach claims and the specific language there employed precludes Plaintiff's suggested construction of the companion provision at issue here.

Section 502(a)(2), on the other hand, is worded differently, i.e., the provision does not permit claims by an individual who "was" a participant. This distinction by Congress was deliberate,[6] and the

---

jurisdictional inquiry must proceed on the basis of the First Amended Complaint, not the original one.") (quotations and citations omitted); Atwell v. Lavan, No. 03-1728, 2005 WL 2234646, at *1-2 (M.D. Pa. Sept. 14, 2005) (observing "The amended pleading is a complete substitute and the former pleading no longer performs any function" and accordingly dismissing claims against 14 defendants not named in amended complaint); Hemispherx Biopharma, Inc. v. Asensio, Civ. No. 98-5204, 2000 WL 807012, at *3 (E.D. Pa. June 7, 2000) (dismissing case for lack of subject matter jurisdiction based upon amended complaint, not original complaint) (quotations citations and omitted).

[6]    See Barnhart v. Sigmon Coal Co., Inc., 534 U.S. 438, 452 (2002) ("[I]t is a general principle of statutory construction that when Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (internal quotations omitted); cf. Empire Healthchoice Assurance, Inc. v. McVeigh, No. 05-200, 547 U.S. ---, 2006 WL 1639763, at
*(continued)*

Court cannot presume that Congress "simply forgot" to include this language in Section 502(a)(2).
Mertens v. Hewitt Assocs., 508 U.S. 248, 255 (1993) (ERISA's "carefully crafted and detailed
enforcement scheme provides strong evidence that Congress did not intend to authorize other remedies
that it simply forgot to incorporate expressly"); see also 29 U.S.C. §1002(7) (defining participant to
include an individual "who is or may become eligible to receive a benefit," not "who was eligible"); 29
U.S.C. §1132(e) (conferring "exclusive jurisdiction of civil actions under this subchapter brought . . . by
a participant," not an individual who "was" a participant).[7]  In short, unlike Section 502(a)(9), 502(a)(2)
does not bestow standing upon former Plan participants like Plaintiff.  Quite simply, "[t]he federal
judiciary will not engraft a remedy on a statute, no matter how salutary, that Congress did not intend to
provide."  California v. Sierra Club, 451 U.S. 287, 297 (1981)[8]

### 4.    Because Plaintiff brings derivative claims, his withdrawal of his investments requires immediate dismissal.

Lastly, Plaintiff ignores the fact that he cannot seek individual remedies on his own behalf and
the cashing out of his Plan investments terminates his right to sue in a derivative capacity.  The claims in
the Amended Complaint are brought in a derivative capacity on behalf of the Plans for losses allegedly
suffered by the Plans.  (E.g., Am. Compl. ¶¶3, 119, 127).  Congress gave only current plan participants
the right to protect the interests of a plan in which they participate by pursuing a derivative claim on

---

*13 (U.S. June 15, 2006) ("Had Congress found it necessary or proper to extend federal jurisdiction
further, . . . it would have been easy enough for Congress to say so.")

[7]    See also Raymond v. Mobil Oil Co., 983 F.2d 1528, 1535 (10th Cir. 1993) ("The statute by
its terms does not permit a civil action by someone who was a participant at the time of the alleged
ERISA violation. . .  Rather, it is written in the present tense, indicating that current participant status
is the relevant test.") (emphasis in original; citations omitted)

[8]    For the same reasons that Plaintiff lacks ERISA statutory standing (i.e., he had no personal
stake in the lawsuit), this case is moot under Article III of the Constitution.  "Mootness has been
described as the doctrine of standing set in a time frame:  The requisite personal interest that must
exist at the commencement of the litigation (standing) must continue throughout its existence
(mootness)."  Arizonans for Official English v. Arizona, 520 U.S. 43, 68 n.22 (1997) (quotations and
citations omitted).  Dismissal on mootness grounds is especially appropriate where, as here, "a
plaintiff's stake in the controversy disappears before there has been an effort to certify the class
action."  Dickerson v. Feldman, 426 F. Supp.2d 130, 134 (S.D.N.Y. 2006) (citing Bd. of Sch.
Comm'rs v. Jacobs, 420 U.S. 128, 129-30 (1975)).

behalf of the Plan. See, e.g., Anweiler v. Am. Elec. Power Serv. Corp., 3 F.3d 986, 992 (7th Cir. 1993)

("[A]ny recovery from an action for breach of fiduciary duty must be to the plan itself.") (interpreting

Mass. Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 140 (1985)). See also Kaliszewski v. Sheet Metal

Workers' Nat. Pension, No. 03-216E, 2005 WL 2297309, at *2 n.11 (W.D. Pa. July 19, 2005) ("§502(a)

enables a participant, beneficiary or fiduciary to bring a derivative action to obtain plan-wide relief for a

breach of fiduciary duty.") (emphasis added).[9]

       In that regard, these claims are analogous to derivative claims belonging to a corporation, but

that are brought by a shareholder on the corporation's behalf, alleging that the officers or directors of the

corporation breached their fiduciary duties to the corporation. In derivative cases, a shareholder who

sells or otherwise loses his shares no longer has a connection to the entity on whose behalf he is suing,

and therefore is immediately divested of standing. E.g., Johnson v. United States, 317 F.3d 1331, 1333-

34 (Fed. Cir. 2003) ("[W]hen a plaintiff bringing an action on behalf of the corporation is the legal

owner of the stock at the time of filing but does not maintain shareholder status throughout the course of

the litigation, the plaintiff no longer has standing to bring the action.").[10]

---

[9]      The Supreme Court described the 502(a)(2) cause of action and the limitations on its remedies as follows: "A fair contextual reading of the statute makes it abundantly clear that its draftsmen were primarily concerned with the possible misuse of plan assets, and with remedies that would protect the entire plan, rather than with the rights of an individual beneficiary." Russell, 473 U.S. at 141. See also Rispler v. Sol Spitz Co., Inc., 418 F. Supp. 2d 82, 86 (E.D.N.Y. 2005) ("Under §502(a)(2), the only available relief is plan-wide relief; there is no private right of action. Thus, in the Second Circuit, plaintiffs asserting §502(a)(2) claims on behalf of the plan must do so via a derivative action.") (emphasis added).

[10]     See also Lewis v. Chiles, 719 F.2d 1044, 1047 (9th Cir. 1983) (holding that "as a practical matter, the continuous ownership requirement stems from the equitable nature of derivative litigation which allows a shareholder to step into the corporation's shoes."); Overberger v. BT Financial Corp., 106 F.R.D. 438, 442 (W.D.Pa. 1985) ("Rule 23.1 requires that the plaintiff remain a shareholder throughout the pendency of the derivative action."); Portnoy v. Kawecki Berylco Indus., Inc., 607 F.2d 765, 767 (7th Cir. 1979) ("Accordingly, a plaintiff in a derivative action must maintain his shareholder status throughout the pendency of the lawsuit, and an action will abate if the plaintiff loses his shareholder status before the litigation ends."); Schilling v. Belcher, 582 F.2d 995, 996 (5th Cir. 1978) (holding that shareholder whose shares were sold during pendency of derivative suit no longer had standing to continue bringing the action).

As a former participant in the Memphis Plan, Plaintiff does not have a <u>current</u> relationship with the Plan allowing him to bring claims on behalf of that Plan and to seek damages for losses allegedly suffered by that Plan [11] The same logic certainly applies to the S&I Plan, in which Plaintiff was <u>never</u> a participant. Plaintiff therefore lacks standing to sue under ERISA, and the Court's inquiry may properly stop here. Cf. <u>Mertens</u>, 508 U.S. at 262 (ERISA is "an enormously complex and detailed statute that resolve[s] innumerable disputes between powerful competing interests – not all in favor of potential plaintiffs").

## II.  EVEN IF PLAINTIFF HAD STANDING TO SUE UNDER ERISA, THE COURT MUST DISMISS PLAINTIFF'S AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM

Even if Plaintiff enjoys standing to bring this action, his Amended Complaint fails for a number of separate and independent reasons, more fully explained in Defendants' opening brief. Simply stated Phillips':

- "prudence" claim – that Plan fiduciaries had a duty to divest Molson-Coors stock from the Plan – is inconsistent with ERISA Section 404(a)(2), 29 U.S.C. §1104(a)(2), which expressly relieves plan fiduciaries from a duty to diversify to the extent prudence requires diversification;

- prudence claim fails because it is inconsistent with trust law principles articulated in <u>Moench</u>;

- prudence claim fails because the Plan fiduciaries could not have prevented the loss;

- "misrepresentation" claim fails because: (1) he does not challenge fiduciary conduct, (2) the misrepresentations alleged were not material, (3) the Complaint fails to allege detrimental reliance, and (4) it is neither the purpose nor the domain of ERISA to regulate corporate behavior that is fully regulated by federal securities laws;

- derivative "duty to monitor" claim fails for the same reasons that his prudence claim fails; and,

- claims against the director defendants fail because the Complaint does not properly allege fiduciary status.

---

[11]      See <u>Dickerson</u>, 426 F. Supp. 2d at 136 ("If this action were to go forward, the Court would be powerless to craft a remedy in which [plaintiff], a non-participant in the Plan, would have any stake. Stated colloquially (and mixing metaphors), <u>while Plaintiff may have an axe to grind, he no longer has a dog in this fight</u>") (emphasis added).

In his opposition to Defendants' Motion, Phillips advances two principal arguments: (1) that his allegations of "inflation" in the price of Molson-Coors securities are sufficient to withstand a motion to dismiss the ERISA claims; and, (2) the Amended Complaint adequately alleges that the Defendants provided Plan participants with incomplete and inaccurate information. This section of the reply brief responds to these two arguments.

### A.    Plaintiff's "Inflation" Claim Finds No Support In ERISA And Is Entirely Incompatible With Circuit Law Addressing Investments in Employer Stock.

Hoping to avoid <u>Moench</u>'s requirement that he plead and prove a "precipitous drop" in the employer stock price and that Molson Coors faces "impending collapse," <u>see</u> Def. Br. at 25, Phillips argues that the Amended Complaint states a viable cause of action because Defendants "breached their fiduciary duties to act prudently and loyally by offering Coors Stock as an option when the price of the stock was artificially inflated as a result of false statements and material omissions." (Opp. Br. at 18). He says also that his lawsuit should go forward because he makes allegations of "underlying securities fraud, a false proxy statement and artificial price inflation." <u>Id.</u> at 20. Aside from the fact that Plaintiff's theory relies upon federal securities laws principles (an adequate and independent basis for dismissal particularly mindful of the pending companion securities actions, as later explained), the claim finds no support in <u>Moench</u> nor, for that matter, in ERISA.

### 1.    Phillips ignores the Coors Stock Fund's stated goals.

Before returning to <u>Moench</u>, it is necessary to revisit a handful of points made in Defendants' Opening Memorandum which, upon scrutiny of Phillips' briefing, stand unchallenged. As noted in Defendants' first brief, the Summary Plan Description states that the goal of the Coors Stock Fund "is to provide Participants with an opportunity to participate in the future <u>growth</u> of Coors through the ownership of common stock." <u>See</u> Def. Br. at 5-6 (emphasis added).[12] Maximizing investment returns

---

[12]    The Court may properly consider the Summary Plan Description ("SPD") when determining the purpose of the Coors Stock Fund. <u>Moench</u>, 62 F.3d at 570 ("the summary plan description provides that '[e]ach individual Employee's account will experience gains or losses according to the performance of the investments held by the Plan.'")

is <u>not</u> the goal of the Coors Stock Fund; rather, the stated objective (completely ignored in Plaintiff's brief) is to afford employees intangible attributes of ownership, the availability of which underpins the deferential standard of judicial review set forth in <u>Moench</u>. <u>Moench</u>, 62 F.3d at 570 (assailing plaintiffs' and Department of Labor's arguments because they fail to properly acknowledge that there is "some nontangible loyalty interest served by retaining ESOP investments in employer stock"). The literal goal of the Plan would be frustrated if, during the so-called Class Period and prior to the consummation of the Molson and Coors merger, the fiduciaries unilaterally stripped the Plan of its investments in Coors stock. Also completely ignored in Plaintiff's brief is the related indisputable fact that the employees' ownership of Coors stock afforded them the opportunity to vote on the Coors-Molson merger and, in so doing, have a say in their individual futures (the quintessential intangible benefit of employee stock ownership). (Def. Br. at 6-7).

There can be no doubt that the Coors Stock Fund serves goals other than amassing retirement savings and, not surprisingly, Phillips made no effort to address these points. The consequences of that omission demonstrate the fallacy of Plaintiff's contention that his lawsuit should continue. Simply stated, the sort of allegations needed to rebut the presumption of prudence is determined by cataloging the objectives of the Coors Stock Fund. Once those goals are set forth, it is certain that Plaintiff's contentions are wildly off the mark and, as such, he has alleged not a single fact even remotely speaking to the presumption of prudence (let alone rebutting it).[13] Moreover, consideration of the Fund's goals

---

[13]     In this regard, the best Plaintiff can muster is citation to the district court's opinion in <u>In re Honeywell Int'l ERISA Litig.</u>, No. 03-1214 (DRD), 2004 WL 3245931 (D.N.J. June 14, 2004). Not surprisingly, <u>Honeywell</u> does not speak to the unique attributes of the Coors Stock Fund, particularly the participants' right to vote on the Molson-Coors merger and, as such, the opinion does not properly apply <u>Moench</u> to facts analogous to those presented in this dispute. Moreover, the court in <u>Honeywell</u> was not presented with a situation where the supposed misstatements proved to be true, negating entirely the possibility of any finding of causation. <u>See infra</u> Section D. Lastly, the district court in <u>Honeywell</u> did not properly consider the deference owed to EIAP fiduciaries mindful of the Congressional goal of employee ownership and this Court's concomitant duty to reduce the cost and administrative burden on EIAP fiduciaries and plan sponsors, by aggressively winnowing claims like those brought here. <u>Cf.</u> Tax Reform Act of 1976, Pub. L. No. 94-455, § 803(h), 90 Stat. 1590 (1976) ("<u>The Congress is deeply concerned that the objectives sought by this series of laws [encouraging</u>

*(continued)*

next to Moench reveals that Plaintiff's "artificial inflation" claim cannot survive for the simple reason

that a presumptively prudent investment made in furtherance of non-financial goals cannot support a

claim to damages, i.e., that Phillips paid too much for Coors stock investment during the period the price

was supposedly artificially inflated and, as such, was harmed.

More specifically, the Court in Moench rejected strict judicial scrutiny of investments in

employer stock, where, as here, the governing documents reflect the settlor's intent that the investments

are made in furtherance of non-remunerative goals:

> Basic principles of trust law require that the interpretation of the terms of the trust be
> controlled by the settlor's intent. That principle is not well served in the long run by
> ignoring the general intent behind such plans in favor of giving beneficiaries the
> maximum opportunities to recover their losses.

Moench, 62 F.3d at 570 (emphasis added); see also id. ("by subjecting an ERISA fiduciary's decision to

invest in employer stock to strict judicial scrutiny, we essentially would render meaningless the ERISA

provision excepting ESOPs from the duty to diversify").[14] As Moench further explains, to rebut the

presumption of prudence, Phillips must allege and prove facts suggesting that continued investment in

Coors Stock would substantially frustrate or defeat entirely the Fund's objectives:

> In attempting to rebut the presumption, the plaintiff may introduce evidence that
> "owing to circumstances not known to the settlor and not anticipated by him [the
> making of such investment] would defeat or substantially impair the accomplishment
> of the purposes of the trust."

Id. at 571 (quoting Restatement of Trusts (Second) §227 comment g).[15]

---

employee ownership] will be made unattainable by regulations and rulings which treat employee stock
ownership plans as conventional retirement plans . . .") (emphasis added)

[14]     Parenthetically, it is this passage from Moench which conclusively establishes that the
elimination of the diversification requirement for investments in employer stock warrants deferential
review of the fiduciaries' actions here, even if some residual, and as later demonstrated quite minimal,
prudence requirement remains. (Def. Br. at 17-18).

[15]     As noted in Defendants' Opening Brief, this passage from Moench dovetails precisely
ERISA's statutory prudence requirement, measuring a fiduciary's conduct against the "character and
. aims" of the enterprise, i.e., the purpose of the Coors Stock Fund. (Def. Br. at 24 citing 29 U.S.C.
§1104(a)(1)(B))

Nowhere does Plaintiff allege any facts suggesting that the purpose of the Coors Stock Fund has been impaired. Indeed, it cannot be gainsaid that employees like Phillips who held Coors stock during the so-called Class Period shared in the tremendous "growth" of the firm occasioned by the merger, as set forth in the Amended Complaint. See Am. Compl. at ¶¶59, 60 (itemizing separately gross sales for Molson and Coors prior to merger). Moreover, there are no allegations (nor could there be) suggesting circumstances that impaired the right to vote the merger proxies. In fact, the importance of this non-economic right reached its apex as employees like Phillips cast their votes on the merger. That being said, to have sold off the Coors stock prior to the vote on the merger would have impaired the purpose of the Coors Stock Fund and certainly spawned litigation as the participants decried the abrogation of their intangible interest in the larger merged entity, and the impairment of their voting rights. Cf. Moench, 62 F.3d at 572 ("the courts must recognize that if the fiduciary, in what it regards as an exercise of caution, does not maintain the investment in the employer's securities, it may face liability for that caution")

### 2. Where the Fund furthers legitimate, non-economic objectives, there can be no "artificial inflation" claim as a matter of law.

Further scrutiny of the Moench ruling guts Plaintiff's contention that the lawsuit should proceed because the price of the employer stock was inflated during the Class Period. At bottom, Moench insulates EIAP fiduciaries from claims alleging inadequate or disappointing investment returns where, as here, the goal of the investment is something other than the maximizing of returns.[16] In other words, the Defendant fiduciaries were duty-bound to give employee-participants the opportunity to pass on the Molson-Coors merger. See, e.g., EMPLOYEE BENEFITS LAW, (Stephen J. Sacher et al. eds., 2000) at 691 ("[EIAP] trustees always must permit participants to vote publicly traded shares allocated to their accounts") (emphasis added). Although Moench recognizes that a firm's deteriorating financial circumstances may eventually impair the accomplishment of the purposes of the trust, and will possibly

---

[16]    As Judge Posner recognized earlier this year, maximizing investment returns is not the goal of an EIAP. Summers v. State Street Bank & Trust, 453 F.3d 404, 410 (7th Cir. 2006) ("one of the goals not sought to be achieved by the ESOP form is the funding of pension benefits") (emphasis added and in original).

trigger a residual fiduciary duty to override a plan's terms and divest it of the employer's stock, that point was certainly not reached here and Plaintiff, despite his bluster, makes no such allegations.

In that regard, the Third Circuit further held in <u>Moench</u> that a "precipitous decline" in the plan sponsor's stock price coupled with the "impending collapse" of the enterprise may trigger a fiduciary duty to deviate from the terms of the trust and to require the sale of the employer stock.[17]  Absent any such allegations of meltdown, the investment remains presumptively prudent and, because that finding is necessarily based upon the determination that the Coors Stock Fund's purpose is to facilitate employee ownership and the tangible and intangible benefits flowing from such ownership, and <u>not</u> to maximize investment returns, Plaintiff's "artificial inflation" claim cannot go forward.[18]

The decisions of other Courts of Appeals mandate a similar conclusion.  The Ninth Circuit in <u>Wright v. Oregon Metallurgical</u>, 360 F.3d 1090 (9th Cir. 2004) focused on the employer's "earnings and financial fundamentals," <u>not its share price</u>, to determine when, if ever, a Plan fiduciary could ignore a Plan's non-economic objectives and sell off the investment.  <u>Wright</u>, 360 F.3d at 1098; <u>see also</u> <u>infra</u> Section A.1.  More recently, the Seventh Circuit adopted a similarly deferential test.  Specifically, and again after recognizing that the purpose of such investments is not to amass retirement income (<u>see</u> <u>supra</u> n. 16), Judge Posner held that an ESOP fiduciary cannot be required to dump investments in employer stock unless:

> the riskiness of the assets, had it been foreseen, would have induced the creators of the ESOP either to have not created it at all or to have required at least partial diversification.  Or, as <u>Kuper v. Iovenko</u> 66 F.3d 1447 (6th Cir. 1995) puts it, "<u>the plaintiff must show that the ERISA fiduciary could not have reasonably believed that the plan's drafters would have intended under the circumstances</u>

---

[17]     More specifically, and according to <u>Moench</u>:  "the precipitous decline in the price of [employer plan sponsor's stock], as well as the Committee's knowledge of its impending collapse and its members' own conflicted status, changed circumstances to such an extent that the Committee properly could effectuate the purposes of the trust only by deviating from the trust's direction . . . ." <u>Moench</u>, 62 F.3d at 572 (emphasis added).

[18]     <u>Moench</u> precludes fiduciary breach claims for disappointing investment returns where, as here, the trust sought the accomplishment of goals other than maximizing investment returns, <u>e.g.</u>, <u>Moench</u>, 62 F.3d at 568 ("the concept of employee ownership constituted a goal in and of itself"), and there are no allegations that the employer plan sponsor was in cataclysm.

> that he continue to comply with the ESOP's direction that he invest exclusively
> in employer securities."

Summers, 453 F.3d at 410 (also citing Moench; emphasis added, parenthetical omitted)

Stated another way, a prudent EIAP fiduciary cannot jettison the investments in employer stock

unless the goals of employee ownership can no longer be achieved. See id. at 410-11. The Seventh

Circuit next identified the limited circumstances when the company's "financial fundamentals"

demonstrate that the participants are burdened with excessive risk compelling the fiduciaries to act:

> The source of the duty to diversify would not be the trustee's disagreement with
> the market valuation (their failure to predict the company's impending
> collapse), but the excessive risk imposed on employee-shareholders by the rise
> in the debt-equity ratio of the employer's stock as a result, in the example given
> in Steinman [v. Hicks, 352 F.3d 1101 (7th Cir. 2003)], of a merger and in our
> case of a plummeting stock price. How excessive would depend in the first
> instance on the amount and character of the employees' other assets, for, as we
> have already indicated, it is the riskiness of one's portfolio, not of a particular
> asset in the portfolio, that is important to the risk-averse investor.

Summers, 453 F.3d at 411 (emphasis added).

Aside from his inability to plead facts germane to the Moench construct, Phillips has not plead

anything in his Amended Complaint suggesting a breach of fiduciary duty under the tests set forth in

Wright, Kuper or Summers. More importantly, and fatal to Plaintiff's "artificial inflation" claim, all of

these Circuit opinions implicitly or expressly recognize that investments in employer stock are not

intended to maximize investment returns and, as such, the Circuit Courts will not recognize fiduciary

breach claims of this sort (particularly when the Plan is a putative class member in the companion

securities actions, where such claims may properly be brought, see infra Section A.3).

### 3.   The Plan's "artificial inflation" claim is pending in the securities suits, further compelling dismissal of the ERISA action.

As Phillips concedes, his "artificial inflation" claim is based upon the "fraud on the market"

theory set forth in Basic Inc. v. Levinson, 485 U.S. 224 (1988), an opinion construing SEC Rule 10b-5

and section 10(b) of the Securities Exchange Act of 1934. (Opp. Br. at 19.) Aside from the fact that the

Circuit Court authority construing the relevant fiduciary standards cannot accommodate such a claim for

the simple reason that the investments in Coors stock were not made with an eye towards maximizing

investment returns (the necessary predicate to any "artificial inflation" claim), the ERISA suit should be dismissed for the additional reason that the Plan is a putative class member in the companion securities actions and stands to share in any recovery in those litigations. The artificial inflation claim is being pressed on the Plan's behalf in the securities actions; hence, this lawsuit should be dismissed. In re McKesson HBOC, Inc. ERISA Litig., 391 F. Supp.2d 812, 842 (N.D. Cal. 2005) ("The Court is unwilling to create new law under ERISA when Plaintiffs may obtain the same relief elsewhere by conventional means.") (emphasis added). Plaintiff's invocation of an allegedly "false proxy statement," see supra Section A, only further proves the point, given the pendency of that claim in the securities suit.[19]

### 4.    ERISA's definitional provisions support Defendants' Motion.

Oddly enough, Plaintiff cites to the definitional provisions of ERISA and argues that the "artificial inflation" claim finds support in the text of the statute. (Opp. Br. at 19). Nothing could be further from the truth. ERISA states that "'adequate consideration'" when used in part 4 of subtitle B of this subchapter means . . . in the case of a security for which there is a generally recognized market . . . the price of the security prevailing on a national securities exchange." 29 U.S.C. §1002(18) (emphasis added)[20] Part 4 of Subtitle B of ERISA includes the statutory provisions speaking to "Fiduciary Responsibility" upon which Phillips relies in bringing this lawsuit. See Index to ERISA Chapter 18, attached hereto as Exhibit A[21] The statute specifically states that the singular measure for determining the appropriate amount paid for a publicly-traded security under ERISA's fiduciary standards is the price established by the market, and leaves no room for a claim based upon a theory that the market price has been manipulated. Bennett v. Matched Savings Plan Admin. Comm., 168 F.3d 671, 679 (3d Cir. 1999)

---

[19]    See Consolidated Amended Class Action Complaint for Violations of Federal Securities Law, In re: Molson Coors Brewing Co. Sec. Litig., Civil No. 05-294-KAJ, at ¶¶207-211.

[20]    See also 29 U.S.C. §1108(e) (authorizing plans to purchase or sell employer stock as long as "adequate consideration" is paid).

[21]    See also Mass. Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 143 (1985) (fiduciary duties "are described in Part 4 of Title 1 of the Act, which is entitled "FIDUCIARY RESPONSIBILITY").

(ERISA "should be supplemented by the common law only where [it] does not address an issue ").[22]

Indeed, the Supreme Court has repeatedly and emphatically held that ERISA cannot be construed to

permit the claim Phillips now advances and, once again, the fact that the Plan is free to prosecute that

theory in the securities actions only further compels rejection of the "artificial inflation" claim. Cf.

Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 209 (2002) (construing ERISA, courts

should be "especially 'reluctant to tamper with [the] enforcement scheme' embodied in the statute by

extending remedies not specifically authorized by its text") (emphasis added); Baker v. Kingsley, 387

F.3d 649, 662 (7th Cir. 2004) ("[I]f we were to create a new fiduciary duty, as plaintiffs request, we run

the risk of disturbing the carefully delineated corporate disclosure laws.").

### 5.      The securities law predicate to the "artificial inflation" claim is flawed.

Plaintiff's "artificial inflation" claim fails for the additional reason that the foundation to the

theory cannot support the claim given the unique factual circumstances animating this dispute. As noted,

Phillips quotes from the Supreme Court's opinion in Basic and argues that there has been a fraud on the

market; the market price of the Coors stock has been artificially inflated because of the fraud; and there

is no need to prove individual causation here because "misleading statements . . . defraud purchasers of

stock even if purchasers do not directly rely on the misstatements." (Opp. Br. at 19) (quoting Basic, 485

U.S. at 242). The Court in Basic crafted a rebuttable presumption that a securities purchaser/owner relies

on price information to make purchase/hold/sell decisions and that, given an efficient market, the price of

a security reflects all information about the security. Id. No such presumption of reliance properly arises

here at the threshold given the unique and indisputable factual backdrop to this dispute.

---

[22]      See also Mass. Mut. Life Ins. Co., 473 U.S. at 146 ("The six carefully integrated civil
enforcement provisions found in [ERISA section] 502(a) [29 U.S.C. §1132(a)] of the statute as finally
enacted, however, provide strong evidence that Congress did not intend to authorize other remedies
that it simply forgot to incorporate expressly. The assumption of inadvertent omission is rendered
especially suspect upon close consideration of ERISA's interlocking, interrelated, and independent
remedial scheme, which is in turn part of a 'comprehensive and reticulated statute.'").

The goal of the Coors Stock Fund was not to maximize investment returns; hence, there can be no presumption that employees relied upon market price information to decide whether to allocate their Plan assets to the Coors Stock Fund. Refusing employment of such a causation substitute to give legs to Plaintiff's "artificial inflation" claim is consistent with, if not mandated by, Third Circuit caselaw specifically requiring, in the context of fiduciary breach claims challenging the administration of ERISA 401(k) savings plans, individual proof that an employee relied upon the supposed misstatements or omissions.[23] See, e.g., In re Unisys Sav. Plan Litig., 173 F.3d 145, 159 (3d Cir. 1999) (fiduciary misrepresentation and omission claims not actionable under ERISA where plaintiff could "not prove that any alleged failures to disclose caused the participants to suffer damages") (emphasis added); Thomas v. Aris Corp. of Am., No. 4:CV-02-1455, 2003 WL 23096038, at *4 (M.D. Pa. Nov. 17, 2003) (addressing misrepresentation claims based on investment in employer stock, holding that "in the context of an ERISA claim, a plan participant's detrimental reliance upon the representation or omission of a fiduciary may not be presumed") (emphasis added).[24] Plaintiff's "artificial inflation" claim finds support in neither Third Circuit caselaw nor ERISA.

**B.    There Has Been No Material Omission Or Misrepresentation.**

In his brief, Phillips reveals that the foundation to his claims in the Defendants' supposed failure to realize projected favorable merger synergies, which statements spoke to cost savings to be realized by 2007. According to Plaintiff, "Coors falsely represented that it would provide the combined company – Molson Coors – with a strong financial base and greater earnings per share, and that the combined

---

[23]    Even if the Court were to apply the presumption, it is immediately rebutted here where the causal chain between the price participants paid for the security and the decision to buy the securities is littered with variables, not the least of which is a participant's decision to hold the stock for intangible employee-ownership interests. Basic, 485 U.S. at 248 ("Any showing that severs the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff, or his decision to trade at a fair market price, will be sufficient to rebut the presumption of reliance.")

[24]    See also Wiseman v. First Citizens Bank & Trust Co., 215 F.R.D. 507, 510 (W.D.N.C. 2003) ("In order to prove detrimental reliance, the Plaintiffs would have to establish that each member of the proposed class relied on the Defendants' alleged misrepresentations in making his or her investment decisions. . . . Such proof requires an individualized analysis and cannot be presumed.").

company would realize at least $175 million in cost savings and synergies." (Opp. Br. 8)[25]  Phillips makes these statements while ignoring the indisputable assertion set forth in Defendants' opening brief – the Company is now well on its way to meeting and/or exceeding those targets, as recent public filings conclusively demonstrate. (Def. Br. at 19 n. 29).

As set forth in that brief, the Ninth Circuit adopted a special rule for examining fiduciary conduct related to employer stock in the context of a merger. Once again, the Circuit Court held that immediate stock price appreciation is not the objective of such investments; therefore, the Court set forth a prudence rule requiring only that the fiduciary focus on the company's business fundamentals (while recognizing that stock price advantages from a merger may not be realized for many years). Wright, 360 F.3d at 1098-99 ("Mere stock fluctuations, even those that trend downward significantly, are insufficient to establish the requisite imprudence to rebut the Moench presumption. . . . Stock price benefits accruing from the merger could likewise be generated years into the future.")  Once this Court properly recognizes the objectives of the Coors Stock Fund, as it should given Plaintiff's wholesale failure to even momentarily comment on the issue, the correctness of Wright's application to this dispute is certain. Consistent with the Ninth Circuit's opinion, the fiduciary breach claims should be dismissed because the advantages of the Molson-Coors merger protected by ERISA need not be realized immediately (although, as noted, it is indisputable that the combined entity is on track to exceed the projections made prior to the merger).

Perhaps more importantly, Plaintiff's failure to challenge the incontrovertible fact that Molson Coors will meet, and likely exceed, the synergies target further requires the immediate dismissal of the lawsuit for the simple reason that the supposed misconduct could not have caused harm. See, e.g.,

---

[25]    See also Opp. Br. at 9, 9-10, 10 ("Coors management hid Coors' pre-merger financial problems and operational difficulties from investors; falsely stated that the companies would enjoy $175 million in cost savings synergies by 2007;" "combined company issued a press release that day announcing shareholder approval and reiterating the projected $175 million in synergies;" "quoting from the Company's slide presentations on synergies and cost savings;" describing Bloomberg analyst interview – "supposed confidence about projected synergies was also false and misleading").

<u>Daniels v. Thomas & Betts</u>, 263 F.3d 66, 78-79 (3d Cir. 2001). Of course, "[a] statement that is true when made obviously cannot give rise to a breach of fiduciary duty claim." <u>Hussey v. Chase Manhattan Bank</u>, 418 F.Supp. 2d 702, 715 (E.D. Pa. 2005).[26] More recent SEC filings demonstrate that the projections related to merger synergies were, in fact, true. The claimed misstatements could not have caused harm, the lawsuit should be dismissed.

## CONCLUSION

For each and all of the foregoing reasons, Plaintiff's Amended Complaint should be dismissed.

*Elizabeth C. Tucker*

Charles F. Richards, Jr. (#701)
*richards@rlf.com*
Jeffrey L. Moyer (#3309)
*moyer@rlf.com*
Elizabeth C. Tucker (#4468)
*tucker@rlf.com*
Richards, Layton & Finger, P.A.
One Rodney Square, P.O. Box 551
Wilmington, Delaware 19899-0551
(302) 651-7700

Attorneys for Defendants

Dated: September 1, 2006

---

[26]     Plaintiff's fraud claims regarding the Brazil operations cannot resuscitate this lawsuit. None of those allegations even remotely relate to the peculiar goals furthered by the Coors Stock Fund. In any event, hoping to avoid dismissal of the ERISA suit, Plaintiff's brief points the Court to the securities complaint's allegations related to the Brazil issues. (Opp. Br. at 9) (alleged misconduct includes allegation that Defendants "misrepresented losses in Brazil and the adverse effect these losses would have on Molson Coors' prospects for success (¶81) (<u>incorporating by reference paragraphs 63 to 93 from the related Securities Class Action Complaint</u>)") (emphasis added). Once again, the claim, which supposedly contributed to the artificial inflation central to Plaintiff's theory of the case, should properly be litigated in the securities actions, as Phillips himself suggests. To the extent the Court believes it appropriate to consider the issue in this forum, Defendants respectfully request that the Court also consider the materials filed in support of the Motion to Dismiss in the securities suit. <u>See</u>, <u>e.g.</u>, www.clichesite.com/ content.asp? which=tip+1560 ("What goes around comes around").

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 1, 2006, copies of Defendants' Reply Brief in Further Support of Their Motion to Dismiss the Amended Complaint were served upon the following counsel of record in the manner indicated:

> **BY CM/ECF:**
>
> Pamela S. Tikellis
> Chimicles & Tikellis LLP
> One Rodney Square
> P.O. Box 1035
> Wilmington, Delaware 19899

Elizabeth C. Tucker (#4468)
*tucker@rlf.com*

RLF1-3019916-1