# EXHIBIT A

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CARROLL SMITH, Individually and On Behalf of All Others Similarly Situated, | ) ) | |
| | ) | Lead Case No. 04 C 6875 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Honorable Charles R. Norgle |
| | ) | |
| AON CORPORATION, et al. | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

CHARLES R. NORGLE, District Judge

Before the court is Plaintiffs' Motion for Class Certification and for Appointment of

Class Representatives and Class Counsel, brought pursuant to Federal Rules of Civil Procedure

23(a), 23(b)(1), and 23(b)(2). Plaintiffs move the court for an Order (1) allowing this action to

proceed as a class action, (2) certifying a Plaintiff Class, (3) designating twelve individual

Plaintiffs as Class Representatives, and (4) designating Wolf Haldenstein Adler Freeman & Herz

("Wolf") as Class Counsel. For the following reasons, the Motion is granted.

## I. BACKGROUND

### A. Facts

Members of the proposed Class in this case are persons who were participants in or

beneficiaries of the Aon Corporation ("Aon") 401(k) Savings Plan (the "Plan") from October 19,

1998 through October 19, 2004 (the "Class Period"), and whose accounts included investments

in Aon common stock. Defendants include Aon, members of Aon's Administrative Committee,

1

members of Aon's Investment Committee, members of Aon's Board of Directors, Aon's former

Chief Executive Officer and current Executive Chairman Patrick G. Ryan ("Ryan"), unnamed

managers of Aon, and certain "Unknown Fiduciaries."

Plaintiffs either participated in, or were beneficiaries of, the Plan, which was designed to

enable Aon's employees to obtain financial security for their retirement. The Plan was an

"employee pension benefit plan," as defined by sections 3(2)(A) and 3(3) of the Employee

Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1002(2)(A) and 1002(3). The Plan

also purported to be an Employee Stock Ownership Plan ("ESOP"). An ESOP is an ERISA plan

that invests primarily in "qualifying employer securities." 29 U.S.C. § 1107(d)(6)(A). The Plan

had two separate components: contributions made by Plan participants, and matching

contributions made by Aon. Through both Plan participant contributions and Aon's matching

contributions (which were frequently made in the form of Aon stock), Plan participants

accumulated significant amounts of Aon stock. In fact, Plaintiffs allege, more than 40% of the

Plan's assets were invested in Aon during the Class Period.

Plaintiffs further allege that, during the Class Period, Aon engaged in business practices

harmful to its clients and ultimately to Plan participants and beneficiaries. These alleged

schemes can be described as "contingent commissions," "client steering," and "clawback

arrangements." Aon ultimately publicly revealed these allegedly unethical and illegal schemes

on October 14, 2004. By October 19, 2004, Aon's stock price had fallen more than 30%. As a

result of this drop in Aon's overvalued stock price, Plaintiffs allege, the Plan and Plan

participants and beneficiaries lost tens of millions of dollars.

2

Plaintiffs bring this action pursuant to section 502 of ERISA, 29 U.S.C. § 1132.  The Consolidated Complaint alleges, *inter alia*, that Defendants breached their fiduciary duties to Plan participants and beneficiaries, in violation of sections 404 and 405 of ERISA, 29 U.S.C. §§ 1104 and 1105.  Plaintiffs allege, *inter alia*, that Defendants overconcentrated Plan purchases of Aon stock, imprudently permitted the Plan to hold Aon stock, provided employer matching contributions in knowingly overvalued Aon stock, failed to provide Plan participants with complete and accurate information regarding risks associated with investing in the Plan, and failed to properly monitor the Plan and its fiduciaries.  Consolidated Compl., ¶ 7.

## B. Procedural History

Beginning on October 26, 2004, twelve class action suits were filed against Aon and various directors, officers and/or employees of Aon who were fiduciaries of the Plan, as defined by ERISA.  On May 3, 2005, the court consolidated these actions and appointed Wolf as Interim Class Counsel.  Plaintiffs filed their Consolidated Amended Class Action Complaint on August 22, 2005.  On October 11, 2005, Defendants moved the court to dismiss this Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6).  The court denied this motion on April 12, 2006.  On May 12, 2006, Plaintiffs filed their Motion for Class Certification.  Defendants filed their Opposition to this Motion on July 31, 2006, and Plaintiffs filed their Reply on September 11, 2006.  Plaintiffs' Motion for Class Certification is fully briefed and before the court.[1]

---

[1] The court recently certified a Class in the companion case of <u>Roth v. Aon</u>, 04 C 6835.

## II. DISCUSSION

### A. Standard of Decision

The court first notes that class actions are an efficient and appropriate means of dealing with cases in which plan participants and/or beneficiaries bring action against plan fiduciaries pursuant to ERISA. Class action suits are the preferred method of dealing with these cases because plan participants or beneficiaries may only bring action to remedy a breach of fiduciary duty in a representative capacity, on behalf of the plan itself. "ERISA grants no private right of action by a beneficiary *qua* beneficiary; rather, it accords beneficiaries the right to sue on behalf of the entire plan if a fiduciary breaches the plan's terms." Sokol v. Bernstein, 803 F.2d 532, 536 (9th Cir. 1986). In other words, where plan fiduciaries have not acted in the best interests of the plan,

> the recovery under § 502(a)(2) [of ERISA] inures to the benefit of the plan as a whole: 'A fair contextual reading of the statute makes it abundantly clear that its draftsmen were primarily concerned with the possible misuse of plan assets, and with remedies that would protect the entire plan, rather than with the rights of an individual beneficiary.'

Kayes v. Pacific Lumber Co., 51 F.3d 1449, 1462 (9th Cir. 1995) (quoting Mass. Mutual Life Ins. Co. v. Russell, 473 U.S. 134, 142 (1985)). A breach of fiduciary duty claim brought by plan participants or beneficiaries is therefore properly pursued as a class action. See Banyai v. Mazur, 205 F.R.D. 160, 165 (S.D. N.Y. 2002) ("Class actions are generally well-suited to litigation brought pursuant to ERISA.").

When considering a motion for class certification, the court must not address the merits of the case. "We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether

4

it may be maintained as a class action." <u>Eisen v. Carlisle & Jacquelin</u>, 417 U.S. 156, 177 (1974).

"'In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.'" <u>Id.</u> at 178 (quoting <u>Miller v. Mackey International</u>, 452 F.2d 424 (5th Cir. 1971)).

In order to demonstrate that class certification is appropriate in this case, Plaintiffs must satisfy all four requirements of Federal Rule of Civil Procedure 23(a). <u>Williams v. Chartwell Fin. Servs.</u>, 204 F.3d 748, 760 (7th Cir. 2000); <u>Johnson v. Mercury Fin Co.</u>, 189 F.R.D. 363, 367 (N.D. Ill 1999). These requirements are:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a); <u>Williams</u>, 204 F.3d at 760; <u>Scholes v. Stone, McGuire & Benjamin</u>, 143 F.R.D. 181, 183 (N.D. Ill. 1992). Plaintiffs must also demonstrate that one of the requirements of Rule 23(b) is satisfied. <u>Williams</u>, 204 F.3d at 760; <u>Scholes</u>, 143 F.R.D. at 183. In this case, Plaintiffs assert that the requirements of Rules 23(b)(1) and 23(b)(2) are satisfied. Under Rule 23(b)(1), a class may be certified if

> the prosecution of separate actions by or against individual members of the class would create a risk of (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

FED. R. CIV. P. 23(b)(1). Under Rule 23(b)(2), a class may be certified if "the party opposing the

class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." FED. R. CIV. P. 23(b)(2).

### 1. 23(a)(1): Numerosity

Plaintiffs need not "state with certainty the exact number of class members, [but] they are required to base their estimate on more than mere speculation." Fry v. UAL Corp., 136 F.R.D. 626, 630 (N.D. Ill. 1991) (citing Marcial v. Coronet Ins. Co., 880 F.2d 954 (7th Cir. 1989)). In cases involving nationally trades shares of stock, an estimate of the number of shares traded can satisfy the numerosity requirement. Fry, 136 F.R.D. at 630 (citing Zeidman v. J. Ray McDermott & Co., Inc., 651 F.2d 1030 (5th Cir. 1981)). Classes of twenty-five to fifty persons are sufficiently numerous to warrant certification. See Riordan, 113 F.R.D at 62 (indicating that a class of twenty-nine persons was sufficient); Helfand, 80 F.R.D. at 5 (a class of twenty-five to fifty persons was sufficient).

### 2. 23(a)(2)-(3): Commonality and Typicality

The commonality requirement is not difficult to meet. In fact, this requirement "has been characterized as a low hurdle, easily surmounted." Scholes, 143 F.R.D. at 185. The Seventh Circuit has indicated that "[t]he fact that there is some factual variation among the class grievances will not defeat a class action. A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." Rosario v. Livaditis, 963 F.2d 1013, 1017-18 (7th Cir. 1992) (internal citations omitted). In other words, this requirement is satisfied if there is a "common question which is at the heart of [the] case." Id. at 1018.

The typicality requirement is "closely related" to the issue of commonality. Id. "We have previously stated that a 'plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory.'" Id. (quoting De La Fuente v. Stokely-Van Camp, Inc., 713 F.2d 225, 232 (7th Cir. 1983)). Courts are directed to "liberally construe" the typicality requirement. Hochschuler v. G.D. Searle & Co., 82 F.R.D. 339, 344 (N.D. Ill. 1978). The class members' claims therefore need not be identical to meet this requirement. Scholes, 143 F.R.D. at 185.

### 3. 23(a)(4): Fairness and Adequacy of Representation

To satisfy the final requirement of Rule 23(a), "the representative parties [must] fairly and adequately represent the class." Rosario, 963 F.2d at 1018. This requirement breaks down into the following two components. First, "the class representative [should] not have interests antagonistic to those of the class." Scholes, 143 F.R.D. at 186; Rosario, 963 F.2d at 1018 ("A class is not fairly and adequately represented if class members have antagonistic or conflicting claims."). Second, the class representatives must be willing and able to "vigorously pursue the litigation on behalf of the class," and the attorneys they have chosen to represent the class must be "qualified, experienced and able to conduct the litigation." Scholes, 143 F.R.D. at 186.

### 4. 23(b)(1) and (2): ERISA Claims and "Plan-Wide Relief"

Claims in which plan participants or beneficiaries seek to recover on behalf of the plan itself are "particularly well-suited for Rule 23(b)(1) certification by virtue of the substantive law of ERISA." In re Williams Cos. ERISA Litigation, 231 F.R.D. 416, 424 (N.D. Okla. 2005).

7

> [G]iven the nature of an ERISA claim which authorizes plan-wide relief, there is a risk that failure to certify the class would leave future plaintiffs without relief . . . . There is also risk of inconsistent dispositions that would prejudice the defendants: contradictory rulings as to whether [defendant] had itself acted as a fiduciary, whether the individual defendants had, in this context, acted as fiduciaries, or whether the alleged misrepresentations were material would create difficulties in implementing such decisions.

In re Ikon Office Solutions, Inc., 191 F.R.D. 457, 466 (E.D. Pa. 2000) (citation omitted). Where plaintiffs bring claims "based on conduct by Defendants that is generally applicable on a class-wide basis," certification of a class pursuant to Rule 23(b)(2) is proper. In re Williams Cos., 231 F.R.D. at 425. This is so even where the relief sought by plaintiffs is primarily monetary in nature. See id.

**B. Plaintiffs' Motion for Class Certification**

### 1. Defendants' objections to Plaintiffs' Motion for Class Certification

Defendants generally concede that the court should certify a Class pursuant to Rule 23(b)(1). Defendants assert, however, that because the proposed Class definition and the proposed list of Class Representatives includes individuals who are no longer Plan participants, all of these individuals lack standing to bring a claim on behalf of the Plan, and the proposed Class Representatives cannot meet the adequacy and typicality requirements of Rule 23(a). Defendants also argue that a Class should not be certified as to Count II of the Complaint (Breach of Fiduciary Duty to Provide Complete and Accurate Information), because each potential Class Member would have to demonstrate individualized proof of detrimental reliance on allegedly misleading communications from Defendants. Finally, Defendants assert that one proposed Class Representative has given false testimony under oath in this case, which renders him unsuitable to serve as a Class Representative.

8

The court will first address Defendants' assertion that certain proposed Class Members and Class Representatives lack standing to bring these claims. Defendants argue that because five of the proposed Class Representatives are no longer Plan participants, and because these individuals have taken final distributions from the Plan, these individuals no longer have standing to sue on behalf of the Plan. In addition, Defendants assert that former Plan participants who have taken final distributions from the Plan should not be a part of the Class at all.

Both of these arguments fail. The essence of Plaintiffs' Complaint is that Defendants' fiduciary breaches during the Class Period caused losses to the Plan. Assuming *arguendo* that Defendants have committed breaches of their fiduciary duty, and that these breaches indeed caused losses to the Plan, the amount of benefits former Plan participants and beneficiaries would have received when they accepted their final distributions from the Plan would have been diminished by the Defendants' breaches. If the Plaintiffs are ultimately successful in this suit, former Plan participants will be entitled to recover these lost funds. To hold that former Plan participants who have received final Plan distributions have no standing in this case would be to hold that these individuals have no right to sue, and therefore no right to this recovery. The court finds that such a holding would be contrary to the intent of ERISA. See 29 U.S.C. § 1001(b) (in enacting ERISA, Congress sought "to protect . . . the interests of participants in employee benefit plans and their beneficiaries . . . by establishing standards of conduct, responsibility, and obligation for fiduciaries of [such] plans," and by "providing for appropriate remedies, sanctions, and ready access to the Federal courts."). Moreover, to accept Defendants' argument would lead to the unsettling implication that Defendants could "exclude potential class members by simply paying them their vested benefits." See Rankin v. Rots, 220 F.R.D. 511, 519-20 (E.D. Mich.

9

2004). The court therefore determines that those potential Class Members and Class Representatives who have taken a final distribution from the Plan have standing in this case. See In re Williams Cos., 231 F.R.D. at 422 ("[s]ince any recovery from the Plan should be allocated to the accounts of the affected participants, including those . . . who have taken a distribution under the Plan, these Plaintiffs and others similarly situated retain a colorable claim to benefits sufficient to confer on them standing to sue under 502(a)(2) and (3) as participants.").

Defendants also assert that, as to Count II of the Complaint, which Defendants characterize as a "misrepresentation" count, a Class should not be certified because each Class Member would have to establish detrimental reliance on any allegedly misleading statements or omissions. This assertion is misguided. Plaintiffs appropriately bring this action in a representative capacity, seeking Plan-wide relief on behalf of the Plan itself. No issues relative to any individual Plaintiff are presented, and individual Plaintiffs are not required to establish detrimental reliance. Count II of the Complaint alleges that Defendants' failure to provide complete and accurate information regarding the financial condition of Aon damaged the Plan as a whole, and that this damage occurred notwithstanding the extent of any specific individual's reliance on or knowledge of any alleged misstatements or omissions by Defendants. See Sokol, 803 F.2d at 536.

Defendants also argue that one proposed Class Representative, James Fagan ("Fagan"), is an inappropriate Class Representative because he allegedly perjured himself while responding to Aon's First Set of Interrogatories. Defendants assert that Fagan deliberately failed to list his December 1998 personal bankruptcy filing when asked to catalogue any prior litigation in which he had been involved. However, Plaintiffs' counsel assert that this failure was a mere oversight

10

on Fagan's part, and have provided the court with deposition testimony in which Fagan

supplemented his prior written discovery with a full and frank discussion of his bankruptcy case.

There is therefore not enough evidence in the record for the court to find that Fagan gave

willfully false answers to interrogatories. The court thus determines that Fagan is an appropriate

Class Representative.

### 2. *Rule 23(a) and 23(b) factors*

It is undisputed that Plaintiffs satisfy the numerosity requirement of Rule 23(a). During

the Class Period, thousands of current and former Aon employees were participants in or

beneficiaries of the Plan. According to Aon's 2004 Form 5500, filed with the Internal Revenue

Service, as of January 1, 2004, there were 32,445 Plan participants. It is also undisputed that

Plaintiffs satisfy the commonality requirement of Rule 23(a). Plaintiffs have sufficiently alleged

the following questions of law and fact that are common to the Class: (1) whether Defendants

owed fiduciary duties to the Plan and members of the Class; (2) whether Defendants breached

their fiduciary duties to the Plan and members of the Class by failing to act prudently and solely

in the interests of the Plan's participants and beneficiaries; (3) whether Defendants violated

ERISA; (4) whether Defendants provided Plan participants with complete and accurate

information concerning the risks of investing in Aon stock; (5) whether Defendants adequately

investigated and monitored the investment options offered by the Plan; (6) whether the Plan and

members of the Class have suffered damages and, if so, the proper measure of those damages.

The court finds that Plaintiffs also satisfy the typicality requirement of Rule 23(a). The

court has already determined that proposed Class Members and Class Representatives who were

Plan participants during the Class Period, but have since taken final distributions of their Plan

11

assets, have standing in this case. These individuals, as well as all potential Class Members, are

pursuing the same legal theory against Defendants: that Defendants breached their fiduciary

duties with regard to investments of Plan assets in Aon stock during the Class Period, thereby

causing the Plan as a whole to lose value. There is therefore no question as to whether the

proposed Class Representatives' claims are typical of those of the Class Members. See De La

Fuente, 713 F.2d at 232 ("a plaintiff's claim is typical if it arises from the same event or practice

or course of conduct that gives rise to the claims of other class members and his or her claims are

based on the same legal theory.").

Plaintiffs also satisfy the fairness and adequacy of representation requirements of Rule

23(a). There is no dispute as to whether (1) the potential Class Representatives have interests

antagonistic to potential Class Members, (2) whether the potential Class Representatives are

willing and able to pursue this litigation on behalf of the Class, and (3) whether Wolf is qualified

to conduct this litigation. See Scholes, 143 F.R.D. at 186.

In addition, Plaintiffs satisfy the requirements of Rule 23(b). First, under Rule

23(b)(1)(A), if the court were not to certify a class, the prosecution of separate actions by various

Plaintiffs would create a risk of "inconsistent or varying adjudications with respect to individual

members of the class . . . ." See FED. R. CIV. P. 23(b)(1); Ikon Office Solutions, 191 F.R.D. at

466; In re Williams Cos., 231 F.R.D at 425 ("we see a likelihood of similar lawsuits against

defendants should this class be denied . . . . Inconsistent judgments concerning how the Plans

should have been interpreted or applied would result in prejudice."). Second, under Rule

23(b)(1)(B), because Plaintiffs properly bring this action in a representative capacity on behalf of

the Plan itself, "adjudications with respect to individual members of the class . . . would as a

12

practical matter be dispositive of the interests of other members not parties to the adjudications or [would] substantially impair or impede their ability to protect their interests." See FED. R. CIV. P. 23(b)(1)(B); Ikon Office Solutions, 191 F.R.D. at 466 ("given the nature of an ERISA claim which authorizes plan-wide relief, there is a risk that failure to certify the class would leave future plaintiffs without relief . . . .").

Since the court has determined that Plaintiffs have satisfied all of the requirements of Rule 23(a) and the requirements of Rule 23(b)(1), Plaintiffs' Motion for Class Certification is granted. See Williams, 204 F.3d at 760 (in order to grant a motion for class certification, a court must determine that all of the requirements of Rule 23(a) are satisfied, and that one of the requirements of Rule 23(b) is satisfied.). With an abundance of caution, however, the court also determines that Plaintiffs have satisfied the requirements of Rule 23(b)(2). The alleged breaches of fiduciary duty in this case have affected all of the Plan's participants and beneficiaries. Under Rule 23(b)(2), a class may be certified if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2); see also In re Williams Cos., 231 F.R.D. at 425. The court notes that Defendants' argument that a class should not be certified pursuant to Rule 23(b)(2) because Plaintiffs primarily seek monetary relief is unavailing. Monetary relief in a plan-wide action brought under ERISA section 502 is incidental, and flows from relief to the plan. See id. ("If Plaintiffs prevail and the Plan recoups its losses through the declaratory and injunctive relief sought by Plaintiffs, any consequential financial benefit to individual participants and beneficiaries would flow directly

13

and incidentally from the Plan's recovery."). The Class in this case shall therefore be certified

under Rules 23(a), 23(b)(1), and 23(b)(2).

## C. Notice to the Class

Pursuant to Rule 23 (c)(2)(A), "[f]or any class certified under Rule 23(b)(1) or (2), the

court may direct appropriate notice to the class." FED R. CIV. P. 23 (c)(2)(A). This case will

adjudicate Plan participants' and beneficiaries' rights with respect to their retirement assets.

These assets in all probability comprise a large percentage of these individuals' overall savings.

The court can think of no reason to deprive these individuals of notice that they are now Class

Members in this suit. Plaintiffs are therefore directed to provide Class Members with appropriate

notice of the status of this suit, and of their membership in the Class.

## III. CONCLUSION

The court therefore determines that this action may proceed as a class action, and certifies

the following Class in this case:

> all persons who were participants in or beneficiaries of the Aon Corporation 401(k)
> Savings Plan from October 19, 1998 through October 19, 2004, inclusive (the "Class
> Period"), and whose accounts included investments in Aon Corporation common
> stock. Excluded from the Class are the Defendants named in this action, Aon's
> Board of Directors throughout the Class Period, members of their immediate
> families, and their legal representatives, heirs, successors, or assigns, and any entity
> in which any Defendants have or had a controlling interest.

The court designates Mary A. Brewton, Akhil Chopra, James P. Fagan, Yassin Hamwi, Sheryl

Kahn, James T. Kayfes, Jr., Alan Lubeck, Gil McDonald, Angela Shymko, Fred Stevens, Julie

Urban, and Monica Young as Class Representatives. The court designates Wolf Haldenstein

Adler Freeman & Herz as Class Counsel.

14

Pursuant to Rule 23(c)(2)(A), the court directs Plaintiffs to file a draft of their proposed

notice form on or before December 20, 2006. Defendants may file any objections to this

proposed notice form on or before January 17, 2007.

IT IS SO ORDERED.

ENTER:

CHARLES RONALD NORGLE, Judge
United States District Court

Dated: November 29, 2006

15

# EXHIBIT B

Slip Copy                                                                 Page 1
Slip Copy, 2006 WL 2943160 (E.D.Cal.)
(Cite as: Slip Copy)

Briefs and Other Related Documents

Johnson v. CouturierE.D.Cal.,2006.Only the Westlaw citation is currently available.

United States District Court,E.D. California.

Gregory JOHNSON, William Rodwell, and Edward Rangel, Plaintiffs,

v.

Clair R. COUTURIER, Jr., David R. Johanson, Robert E. Eddy, and the Noll Manufacturing Company Employee Stock Ownership Plan and Trust, Defendants.

No. 2:05CV02046 RRBKJM.

Oct. 13, 2006.

Gary D. Greenwald, Anne Marie La Bue, Shayne and Greenwald Company, LPA, Columbus, OH, for Plaintiffs.

M. Michael Cole, D. Ward Kallstrom, Donald Patrick Sullivan, Morgan, Lewis & Bockius, LLP, San Francisco, CA, M. Taylor Florence, John E. Spomer, III, Bullivant Houser Bailey PC, Sacramento, CA, for Defendants.

Matthew Righetti, Righetti Law Firm PC, San Francisco, CA.

ORDER

BEISTLINE, J.

[Re: Motions at Docket No. 41 and Docket No. 74]

I. MOTION PRESENTED

*1 At Docket No. 41 Defendants Clair R. Couturier, Jr. ("Couturier"), David R. Johanson ("Johanson"), and Robert E. Eddy ("Eddy") (collectively the "Individual Defendants") have moved for summary judgment, or in the alternative summary adjudication, in their favor as against plaintiff Gregory Johnson ("Johnson"). At Docket No. 74 the Individual Defendants have moved for the imposition of sanctions under Fed. R. Civ. P. 11. At Docket No. 77 Johnson has opposed the motion for summary judgment and at Docket No. 79 opposed the motion for sanctions. At Docket No. 81 the Individual Defendants have replied to both oppositions. No party has requested oral argument and the court, after reviewing the moving papers and oppositions, has

determined that oral argument would not assist the Court in deciding the motions.

II. BACKGROUND

The complaint alleges numerous acts by the Individual Defendants contended to be in violation of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § § 1001, et seq ["ERISA"]. Plaintiffs, including Johnson, seek to recoup from the Individual Defendants profit and gains that the Individual Defendants allegedly received as a result of the violations of their fiduciary obligations to the Noll Manufacturing Company Employee Stock Ownership Trust ("Noll ESOT"), and to impose a constructive trust on those profits.[FN1]

FN1. ERISA § 502(a) [29 U.S.C. § 1132(a)] is the civil enforcement provision that establishes who may bring a civil action under the Act. One clause of § 502 is relevant to this case. Section 502(a)(2) states that "[a] civil action may be brought by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title." 29 U.S.C. § 1132(a)(2). This section authorizes suits to obtain remedies for breach of fiduciary duty available under ERISA § 409 [29 U.S.C. § 1109]. Here, plaintiffs invoke ERISA § 502(a)(2) to seek the imposition of a constructive trust under the catchall relief provision of ERISA § 409(a) [29 U.S.C. § 1109(a) ].

Approximately three years prior to the initiation of this lawsuit, Johnson brought suit against the Noll Manufacturing Company ("Noll") for allegedly unpaid vacation time and wages. Represented by the same attorney who has brought the present lawsuit, Johnson entered into a Settlement Agreement and General Release with Noll, N & NW Manufacturing Company, and Northwest Metal Products Co. (collectively the "Company"), and the Noll Manufacturing Company Employee Stock Ownership Trust ("Noll ESOT"),[FN2] settling his claims for $291,693.52. As part of the transaction Johnson received a distribution from the Noll ESOT of all Noll shares in which he was vested.[FN3] The release

agreement was mutual, with the Company releasing all claims against Johnson arising prior to the execution of the release. Johnson, in exchange, in addition to dismissing his lawsuit, agreed: [FN4]

> FN2. Settlement Agreement and General Release, p. 1. [A copy is attached as Exhibit B to the Declaration of Gregory Johnson, Docket No. 77-2 at 28; and Exhibit B to the Declaration of David R. Johanson, Docket 45 at 11.]

> FN3. Id. (Allocated $65,000 to the unpaid vacation time/severance pay and the balance, $226,693.52, allocated to the purchase of the shares distributed to Johnson by the Noll ESOT.)

> FN4. Id., pp. 3-4; Docket 77-2 at 30-31; Docket 45 at 13-14.

4. Johnson Release. In consideration of the execution of this Agreement by the Parties and the receipt by Mr. Johnson of the Settlement Proceeds, Mr. Johnson, on behalf of his heirs, agents, executors, successors, administrators, attorneys and assigns, and any and all persons claiming by or through him, does hereby release, quit and forever discharge Noll and the Noll ESOT, their respective predecessors, successors, assigns, parents, affiliated companies, including but not limited to Northwest Metal Products Co., Noll Manufacturing Company and N & NW Manufacturing Holding Company, Inc., subsidiaries and divisions, insurers, present and former directors, officers, shareholders, agents, representatives, employees, attorneys, accountants and all others acting for or in concert with Noll past or present (hereinafter collectively, the " 'Releasees'") from any and liabilities, damages, actions, causes of action, claims, demands or suits of any nature, kind or description whatsoever, whether accrued or to accrue, whether presently known or unknown, whether specifically alleged in the Lawsuit or which could have been alleged in the Lawsuit, that Mr. Johnson ever bad, now has or hereafter may have against any of the Releasees arising out of any act, omission, or matter occurring before execution of this Agreement, including, without limitation, all claims related to Mr. Johnson's employment with the Company, such as, but not limited to, any claims that may be the basis of any wage and hour claim or any employment discrimination complaint, charge, or proceeding in any federal, state or local court or administrative proceeding of any kind, including, but

not limited to, claims under Title VII of the Civil Rights Act of 1964 (and all of its amendments); The Americans With Disabilities Act, as amended; the Fair Labor Standards Act (the "FLSA"); the Older Workers Benefits Protection Act (the "OWPA"); the Age Discrimination in Employment Act (the "ADEA"); the California Equal Employment for Persons with Disabilities Act; the Lawsuit; the Employee Retirement Income Security Act of 1974, as amended, or any other statute or regulation or any independent tort claim or any claim for breach of contract, promissory estoppel, or any other common law claim. Mr. Johnson also releases any right to bring an administrative claim or charge against Releasees. Mr. Johnson further covenants not to sue the Releasees in their individual, corporate or other capacities with respect to the claims described herein. Mr. Johnson expressly waives all rights under Section 1542 of the California Civil Code. That section reads as follows:
*2 "SECTION 1542. A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE WHICH IF KNOWN TO HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR"

## III. ISSUES

The motions present three issues. First, did the release Johnson executed in October 2003 operate as a release of the claim he asserts in this lawsuit? Second, does Johnson, as a terminated employee who has been "cashed out," have **standing** to bring a claim under **ERISA**? Third, assuming that the release did operate to release the claims asserted in this lawsuit, did the bringing of this lawsuit constitute a violation of Fed. R. Civ. P. 11 and, if so, to what extent should sanctions be imposed?

## IV. STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate if, when viewing the evidence in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment in its favor as a matter of law.[FN5] Support and opposition to a motion for summary judgment is made by affidavit made on personal knowledge of the affiant, depositions, answers to interrogatories,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

setting forth such facts as may be admissible in evidence. [FN6] In response to a properly supported motion for summary judgment, the opposing party must set forth specific facts showing that there is a genuine issue for trial. [FN7] The issue of material fact required to be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial. In order to show that a genuine issue of material fact exists a nonmoving plaintiff must introduce probative evidence that establishes the elements of the complaint. [FN8] Moreover, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he is ruling on a motion for summary judgment." [FN9] There is no genuine issue of fact if, on the record taken as a whole, a rational trier of fact could not find in favor of the party opposing the motion. [FN10]

FN5. Fed. R. Civ. P. 56(c); *Lopez v. Smith,* 203 F.3d 1122, 1131 (9th Cir.2000) (en banc ); *Taylor v. List,* 880 F.2d 1040, 1044 (9th Cir.1989).

FN6. Fed. R. Civ. P. 56(e)

FN7. *Id; Henderson v. City of Simi Valley,* 305 F.3d 1052, 1055-56 (9th Cir.2002).

FN8. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

FN9. *Id* at 255.

FN10. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## V. DISCUSSION [FN11]

FN11. The Court notes that the Individual Defendants' Motion for Summary Judgment was filed after Plaintiffs moved to file an amended complaint, which motion the Court is granting, in part, concurrently by separate order. It, therefore, addresses a pleading that will be superseded and of no further effect

in this case. 6 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Fed. Prac. & Proc. Civ., § 1476 (2d ed.); *see also Ferdik v. Bonzelet,* 963 F.2d 1258, 1262 (9th Cir.1992); *Loux v. Ray,* 375 F.2d 55, 57 (9th Cir .1967). Generally, the filing of an amended pleading renders moot any pending motions addressed to the superceded pleading. See *Norman v. United States,* 63 Fed.Cl. 231, 242 (Fed.Cl.2004); *National City Mortgage Co. v. Navarro,* 220 F.R.D. 102, 106 (D.D.C.2004). The Court has compared the proposed Amended Complaint to its predecessor and determined that the amendment, which seeks to add a new party plaintiff and defendant and eliminate a current defendant, does not materially affect the issues to be decided by the Court. Accordingly, in the Interests of the parties and judicial efficiency, the Court will rule on this motion on the merits.

Turning first the issue of the release. The Individual Defendants argue that the general release signed by Johnson in 2003 released any and all claims against not only Noll but also these individuals who fall within the scope of the Releasees. While the Court agrees that the Individual Defendants are Releasees covered by the General release and the release encompassed all individual claims he could assert against them under ERISA, the Individual Defendants are not entitled to dismissal.

The relief sought by the complaint is the return of the ill-gotten gains realized by the trustees to the Noll ESOT. It does not seek individual relief. While Johnson could waive his *individual* claims against the Individual Defendants, he could not waive the claims brought under § 502(a)92) for the benefit of the ESOT without the consent of the ESOT. [FN12] Without the consent of the Plan (or Plan administrator/fiduciary), Johnson had no authority or power to release the § 502(a)(2) claims. There is no evidence that the Noll ESOT consented to a release of the non-individual claims. In fact, a careful reading of the Settlement Agreement and General Release indicates it did not. The preamble identifies the parties, in addition to Johnson as "N & NW Manufacturing Company, Inc., a California corporation, Noll Manufacturing Company, a California corporation, Northwest Metal Products Co. (collectively 'Noll' or 'Company') and the Noll Manufacturing Company Stock Ownership Trust (the 'Noll ESOT')." In ¶ 3 of the agreement entitled "Company Release," the only named relator is Noll;

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the Noll ESOT is not a releasor and has not, apparently, released any claims it may have against Johnson. Although the Noll ESOT is a signatory to the Settlement Agreement and General Release, the only indication of the necessity of its joinder was to transfer to Johnson the shares in which he had a vested interest. Moreover, the Settlement Agreement and General Release was signed on behalf of the Noll ESOT by Couturier, as the trustee. This fact itself begs the question, which the Court need not address, as to the validity of a consent to a release of claims for the benefit of the Noll ESOT against the very trustee who is alleged to have committed the defalcations.

FN12. Bowles v. Reade, 198 F.3d 752, 759-760 (9th Cir.1999).

*3 This leaves the issue of whether Johnson has **standing** to bring the action under § 502(a)(2). It is undisputed that Johnson received a distribution of all shares of stock held by the Noll ESOT in which he was vested at the time of his termination. Section 502(a)(2) permits a participant to bring an action for relief under § 409, the very relief sought in this case. **ERISA** § 3 [29 U.S.C. § 1002] defines participant as:

(7) The term "participant" means any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.

The Individual Defendants argue that Johnson lacks **standing** because he is not a participant, relying on the Ninth Circuit decision in *Kuntz v. Reese* holding that former pension plan participants and beneficiaries who had received all of the vested benefits owed to them under the plan no longer had **standing** to sue for damages.[FN13] The Individual Defendants' reliance on *Kuntz* is misplaced. As the Ninth Circuit later held in *Amalgamated Textile Workers v. Murdock,* a case granting **standing** to former employees who had received a full distribution under an **ERISA** Plan:[FN14]

FN13. 785 F.2d 1410, 1411 (9th Cir.1986) *(per curium ), abrogated on other grounds, Kayes v. Pacific Lumber Co.,* 51 F.3d 1449

(9th Cir.1995) (based on the amendment to § 502(a)(9) by the Pension Annuitants Protection Act of 1994). Neither party argues that either *Kayes* or § 502(a)(9) are applicable to this case and they clearly are not.

FN14. 861 F.2d 1406, 1419 (9th Cir.1988).

We therefore hold that, for the limited purpose of granting plan participants and beneficiaries **standing** to sue in cases such as this one, ill-gotten profits held in a constructive trust for plan participants and beneficiaries may be construed as equitably vested benefits under an **ERISA** plan.
*Murdock* acknowledged that under *Kuntz* the former employees, who had received their benefits from the plan, could not bring an action for damages.[FN15] Therefore, to the extent that Johnson is seeking damages, he lacks **standing** to bring the action.[FN16]

FN15. *Id.,* 861 F.2d at 1410 n. 7.

FN16. This may be the case with respect to Johanson and Eddy but is clearly not the case with respect to Couturier.

The case at bar clearly falls outside the scope of *Kuntz* (it does not seek damages but seeks to impose a constructive trust for the benefit of the plan). While this case does not fit cleanly within *Murdock* (in *Murdock* the plan had been terminated and there were no current participants, while in this case there are current participants), the Court can find no principled reason not to apply its express holding to this case. The complaint in this case seeks only equitable relief, *i.e.,* the imposition of a constructive trust, it does not seek monetary damages. Under the holding in *Murdock* Johnson has an equitably vested interest in that constructive trust held for the benefit of the Noll ESOT. Although plaintiff Gregory Johnson lacks standing to seek monetary damages,[FN17] he does have standing to seek the equitable relief sought in this case: the imposition of a constructive trust on ill-gotten profits or gains.

FN17. The Court notes that this has no practical impact on this lawsuit inasmuch that, at least under the proposed amended complaint, there is at least one other plaintiff that does have the requisite standing to seek monetary damages on behalf of the plan.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## VI. CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment, or in the Alternative, Summary Adjudication, at Docket No. 41 and Motion for Rule 11 Sanctions at Docket No. 74 filed by Defendants Clair R. Couturier, Jr., David R. Johanson, and Robert E. Eddy are DENIED.

E.D.Cal.,2006.
Johnson v. Couturier
Slip Copy, 2006 WL 2943160 (E.D.Cal.)

Briefs and Other Related Documents (Back to top)

• 2005 WL 3630658 (Trial Pleading) Complaint for Violation of Erisa (29 U.S.C. || 1001 et seq.) (Oct. 11, 2005) Original Image of this Document (PDF)
• 2:05cv02046 (Docket) (Oct. 11, 2005)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT C

---- F.Supp.2d ----                                                                                                                    Page 1
---- F.Supp.2d ----, 2006 WL 2792202 (S.D.N.Y.)
**(Cite as: --- F.Supp.2d ----)**

**H**

Briefs and Other Related Documents
In re Polaroid Erisa LitigationS.D.N.Y.,2006.Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
In re POLAROID ERISA LITIGATION.
This Document Relates to: All Actions.
No. 03 Civ. 8335(WHP).

Sept. 29, 2006.

**Background:** Former employees and participants in retirement plans covered by Employee Retirement Income Security Act (**ERISA**) sued officers and directors of employer, who were plan administrators and fund managers, alleging breach of **ERISA** fiduciary duties arising out of their continued purchase of corporation's stock on behalf of plan, and their encouragement that employees invest in stock when corporation was experiencing severe financial problems ultimately leading to bankruptcy. The District Court, 362 F.Supp.2d 461, granted in part and denied in part defendants' motion to dismiss. Participants moved for class certification.

**Holdings:** The District Court, William H. Pauley III, J., held that:

(1) former plan participants whose accounts had been liquidated had **standing** to sue under **ERISA** as plan "participants" even though they had no reasonable expectation of returning as employees;

(2) plaintiffs did not fail to bring claim in "representative capacity" on behalf of plan even if plan no longer existed at time action was filed or because putative class consisted only of plan participants whose accounts were invested in employer's stock;

(3) heightened pleading requirements of civil rule governing derivative actions by shareholders were inapplicable;

(4) numerosity requirement for certification was met by proposed class of approximately 8,000;

(5) commonality requirement was met;

(6) typicality requirement was met even though

portion of class signed releases purportedly barring claims and participants had the ability to make individualized investment decisions with respect to accounts;

(7) adequacy of representation requirement was satisfied; and

(8) action was maintainable as class action on basis that prosecution of separate actions would create risk of inconsistent or varying adjudications.

Motion granted.

**[1] Labor and Employment 231H ☞647**

231H Labor and Employment
    231HVII Pension and Benefit Plans
        231HVII(K) Actions
            231HVII(K)3 Actions to Enforce Statutory or Fiduciary Duties
                231Hk647 k. Action on Behalf of Plan or as Individual. Most Cited Cases
ERISA claims for breach of fiduciary duty may not be made for individual relief, but instead are brought in a representative capacity on behalf of the plan; to determine whether plaintiffs have statutory **standing**, court must determine (1) whether they are participants or beneficiaries of plan, and (2) whether plaintiffs are truly suing in a representative capacity on behalf of the plan. Employee Retirement Income Security Act of 1974, § § 409, 502(a)(2), 29 U.S.C.A. § § 1109, 1132(a)(2).

**[2] Labor and Employment 231H ☞646**

231H Labor and Employment
    231HVII Pension and Benefit Plans
        231HVII(K) Actions
            231HVII(K)3 Actions to Enforce Statutory or Fiduciary Duties
                231Hk646 k. Parties in General; **Standing.** Most Cited Cases
Former retirement plan participants whose accounts had been liquidated had **standing** to sue under **ERISA** as plan "participants" despite their status as former employees and even though they did not allege that they would still be plan participants but for defendants' misconduct; former employees

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

alleged that distributions they received under defined contribution plan were reduced because of defendants' breaches of fiduciary duty and that defendants engaged in numerous misrepresentations and nondisclosures prior to liquidation of their accounts and were thus within the zone of interests **ERISA** was intended to protect. Employee Retirement Income Security Act of 1974, § § 3(7), 502(a)(2), 29 U.S.C.A. § § 1002(7), 1132(a)(2).

**[3] Labor and Employment 231H ⬚478**

231H Labor and Employment
   231HVII Pension and Benefit Plans
      231HVII(C) Fiduciaries and Trustees
         231Hk478 k. Amendment or Termination of Plan as Breach of Duty. Most Cited Cases
Dissolution of retirement plan, whether it occurred before or after filing of action, could not insulate defendants from potential liability for past breaches of their fiduciary duties. Employee Retirement Income Security Act of 1974, § 502(a)(2), 29 U.S.C.A. § 1132(a)(2).

**[4] Labor and Employment 231H ⬚647**

231H Labor and Employment
   231HVII Pension and Benefit Plans
      231HVII(K) Actions
         231HVII(K)3 Actions to Enforce Statutory or Fiduciary Duties
            231Hk647 k. Action on Behalf of Plan or as Individual. Most Cited Cases
Former retirement plan participants did not fail to bring ERISA breach of fiduciary duty claim in "representative capacity" on behalf of plan on theory that, because putative class consisted only of plan participants whose accounts were invested in employer's stock, any benefits would not accrue to plan as whole, but rather to those individuals who owned employer's stock during class period; claims were asserted on behalf of broad class of participants in plan and damages were sought for injuries suffered by plan. Employee Retirement Income Security Act of 1974, § 502(a)(2), 29 U.S.C.A. § 1132(a)(2).

**[5] Labor and Employment 231H ⬚649**

231H Labor and Employment
   231HVII Pension and Benefit Plans
      231HVII(K) Actions
         231HVII(K)3 Actions to Enforce Statutory or Fiduciary Duties
            231Hk649 k. Pleading. Most Cited Cases

Heightened pleading requirements of federal civil rule governing derivative actions by shareholders did not apply to ERISA suit for breach of fiduciary duty. Fed.Rules Civ.Proc.Rule 23.1, 28 U.S.C.A.; Employee Retirement Income Security Act of 1974, § 502(a)(2), 29 U.S.C.A. § 1132(a)(2).

**[6] Federal Civil Procedure 170A ⬚161.1**

170A Federal Civil Procedure
   170AII Parties
      170AII(D) Class Actions
         170AII(D)1 In General
            170Ak161.1 k. Factors, Grounds, Objections, and Considerations in General. Most Cited Cases
Party seeking class certification must demonstrate that proposed class meets numerosity, commonality, typicality, and adequacy of representation requirements and that proposed class action falls within one of the types maintainable. Fed.Rules Civ.Proc.Rule 23(a, b), 28 U.S.C.A.

**[7] Federal Civil Procedure 170A ⬚172**

170A Federal Civil Procedure
   170AII Parties
      170AII(D) Class Actions
         170AII(D)2 Proceedings
            170Ak172 k. Evidence; Pleadings and Supplementary Material. Most Cited Cases
In considering motion for class certification, courts must accept allegations in complaint as true. Fed.Rules Civ.Proc.Rule 23, 28 U.S.C.A.

**[8] Federal Civil Procedure 170A ⬚163**

170A Federal Civil Procedure
   170AII Parties
      170AII(D) Class Actions
         170AII(D)1 In General
            170Ak163 k. Impracticability of Joining All Members of Class; Numerosity. Most Cited Cases
When a class consists of forty or more members, numerosity is presumed. Fed.Rules Civ.Proc.Rule 23(a)(1), 28 U.S.C.A.

**[9] Federal Civil Procedure 170A ⬚184.5**

170A Federal Civil Procedure
   170AII Parties
      170AII(D) Class Actions
         170AII(D)3 Particular Classes Represented

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

170Ak184 Employees
170Ak184.5 k. In General. Most
Cited Cases
Numerosity requirement for class certification was
met in ERISA breach of fiduciary duty suit by former
employees and retirement plan participants where
proposed class numbered approximately 8,000.
Fed.Rules Civ.Proc.Rule 23(a)(1), 28 U.S.C.A.;
Employee Retirement Income Security Act of 1974,
§ § 409, 502(a)(2), 29 U.S.C.A. § § 1109,
1132(a)(2).

**[10] Federal Civil Procedure 170A ☞184.5**

170A Federal Civil Procedure
170AII Parties
170AII(D) Class Actions
170AII(D)3 Particular Classes Represented
170Ak184 Employees
170Ak184.5 k. In General. Most
Cited Cases
Commonality requirement for class certification was
met in ERISA breach of fiduciary duty suit by former
employees and retirement plan participants; common
issues included whether defendants acted as
fiduciaries, what communications they made to
members of class, truth of those communications,
state of defendants' knowledge regarding employer's
stock, and actions, if any, defendants took to protect
plan. Fed.Rules Civ.Proc.Rule 23(a)(2), 28 U.S.C.A.;
Employee Retirement Income Security Act of 1974,
§ § 409, 502(a)(2), 29 U.S.C.A. § § 1109,
1132(a)(2).

**[11] Federal Civil Procedure 170A ☞164**

170A Federal Civil Procedure
170AII Parties
170AII(D) Class Actions
170AII(D)1 In General
170Ak164 k. Representation of Class;
Typicality. Most Cited Cases
For class certification purposes, "typicality" exists
where claims of representative plaintiffs arise from
the same course of conduct that gives rise to claims
of the other class members, where claims are based
on the same legal theory, and where class members
have allegedly been injured by the same course of
conduct as that which allegedly injured the proposed
representatives. Fed.Rules Civ.Proc.Rule 23(a)(3), 28
U.S.C.A.

**[12] Federal Civil Procedure 170A ☞164**

170A Federal Civil Procedure
170AII Parties
170AII(D) Class Actions
170AII(D)1 In General
170Ak164 k. Representation of Class;
Typicality. Most Cited Cases
When the same alleged unlawful conduct was
directed at or affected both the named plaintiff and
the class sought to be represented, the typicality
requirement for class certification is usually met
irrespective of minor variations in the fact patterns
underlying individual claims. Fed.Rules
Civ.Proc.Rule 23(a)(3), 28 U.S.C.A.

**[13] Federal Civil Procedure 170A ☞184.5**

170A Federal Civil Procedure
170AII Parties
170AII(D) Class Actions
170AII(D)3 Particular Classes Represented
170Ak184 Employees
170Ak184.5 k. In General. Most
Cited Cases
Typicality requirement for class certification was met
in ERISA breach of fiduciary duty suit by former
employees and retirement plan participants, even
though portion of class signed releases purportedly
barring claims; claims were asserted on behalf of
plan, releases at issue appeared to contain
substantially similar language, and no reason was
pointed to why their validity was unlikely to be
subject to treatment on classwide basis. Fed.Rules
Civ.Proc.Rule 23(a)(3), 28 U.S.C.A.; Employee
Retirement Income Security Act of 1974, § § 409,
502(a)(2), 29 U.S.C.A. § § 1109, 1132(a)(2).

**[14] Federal Civil Procedure 170A ☞184.5**

170A Federal Civil Procedure
170AII Parties
170AII(D) Class Actions
170AII(D)3 Particular Classes Represented
170Ak184 Employees
170Ak184.5 k. In General. Most
Cited Cases
Typicality requirement for class certification was met
in ERISA breach of fiduciary duty suit by former
employees and retirement plan participants even
though they had the ability to make individualized
investment decisions with respect to accounts;
whether degree of individual control present in plan
was sufficient to implicate ERISA subsection
relieving fiduciaries of liability when investment
losses resulted from acts or omissions of plan

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                                                        Page 4
--- F.Supp.2d ----, 2006 WL 2792202 (S.D.N.Y.)
(Cite as: --- F.Supp.2d ----)

participants was determined by administration and structure of plan as whole and thus was question common to class, subsection did not apply to central claims that defendants invested employee stock ownership plan (ESOP) contributions in company stock and continued to offer that stock as investment option for 401(k) plan after it was prudent to do so, and if claims of misrepresentation and nondisclosure were substantiated, then subsection would not apply at all. Fed.Rules Civ.Proc.Rule 23(a)(3), 28 U.S.C.A.; Employee Retirement Income Security Act of 1974, § 404(c), 29 U.S.C.A. § 1104(c).

[15] Federal Civil Procedure 170A ⟨key⟩184.5

170A Federal Civil Procedure
    170AII Parties
        170AII(D) Class Actions
            170AII(D)3 Particular Classes Represented
                170Ak184 Employees
                    170Ak184.5 k. In General. Most Cited Cases
In ERISA breach of fiduciary duty suit by former employees and retirement plan participants, defendants' argument that claims for misrepresentation and nondisclosure inherently required individualized analysis was insufficient to defeat typicality required for class certification; complaint contained allegations of planwide misrepresentations and nondisclosures which by definition were not individualized, and class sought recovery for plan as whole on basis of same, so claims were accordingly typical of those of class as whole. Fed.Rules Civ.Proc.Rule 23(a)(3), 28 U.S.C.A.

[16] Federal Civil Procedure 170A ⟨key⟩164

170A Federal Civil Procedure
    170AII Parties
        170AII(D) Class Actions
            170AII(D)1 In General
                170Ak164 k. Representation of Class; Typicality. Most Cited Cases
The "adequacy of representation" requirement for class certification is measured by two standards: first, class counsel must be qualified, experienced and generally able to conduct litigation, and second, class members must not have interests that are antagonistic to one another. Fed.Rules Civ.Proc.Rule 23(a)(4), 28 U.S.C.A.

[17] Federal Civil Procedure 170A ⟨key⟩164

170A Federal Civil Procedure
    170AII Parties
        170AII(D) Class Actions
            170AII(D)1 In General
                170Ak164 k. Representation of Class; Typicality. Most Cited Cases
For purposes of determining whether adequacy of representation requirement for class certification has been met, where plaintiffs and class members share common goal of maximizing recovery, there is no conflict of interest between class representatives and other class members. Fed.Rules Civ.Proc.Rule 23(a)(4), 28 U.S.C.A.

[18] Federal Civil Procedure 170A ⟨key⟩184.5

170A Federal Civil Procedure
    170AII Parties
        170AII(D) Class Actions
            170AII(D)3 Particular Classes Represented
                170Ak184 Employees
                    170Ak184.5 k. In General. Most Cited Cases
Adequacy of representation requirement for class certification was met in ERISA action for breach of fiduciary duty, despite allegations that class representative made offensive statements about minorities, women and Jews in internet chat room and destroyed relevant documents several days before his deposition. Fed.Rules Civ.Proc.Rule 23(a)(4), 28 U.S.C.A.; Employee Retirement Income Security Act of 1974, § § 409, 502(a)(2), 29 U.S.C.A. § § 1109, 1132(a)(2).

[19] Federal Civil Procedure 170A ⟨key⟩184.5

170A Federal Civil Procedure
    170AII Parties
        170AII(D) Class Actions
            170AII(D)3 Particular Classes Represented
                170Ak184 Employees
                    170Ak184.5 k. In General. Most Cited Cases
ERISA action for breach of fiduciary duty was maintainable as class action on basis that prosecution of separate actions would create risk of inconsistent or varying adjudications; because allegations in complaint implicated misconduct in management of plan as whole, disparate lawsuits by individual participants would raise specter of varying adjudications, and allowing multiple actions, each of which would seek the same relief from defendants on behalf of plan, would potentially prejudice individual class members and would threaten to create

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

incompatible standards of conduct for defendants. Fed.Rules Civ.Proc.Rule 23(b)(1), 28 U.S.C.A.; Employee Retirement Income Security Act of 1974, § § 409, 502(a)(2), 29 U.S.C.A. § § 1109, 1132(a)(2).

Amy C. Williams-Derry, Derek W. Loeser, Lynn Lincoln Sarko, Tobias Jacob Kammer, Keller RohrbackL.L.P., Seattle, WA, Joseph H. Meltzer, Schiffrin & Barroway, LLP, Radnor, PA, Ron Kilgard, Keller RohrbackP.L.C, Phoenix, AZ, Curtis Victor Trinko, Law Offices of Curtis V. Trinko, LLP, New York, NY, for Plaintiff.

Arlo Devlin-Brown, U.S. Attorney's Office, David P. Donovan, Eric J. Mogilnicki, Matthew Phineas Previn, Melanie Diana Coates, Ryan Michael Pierce, Wilmer Cutler Pickering LLP, Emily Frug Klineman, New York, NY, Bradley J. Miller, Steven Franklin Cherry, Wilmer, Cutler, Pickering, Hale & Dorr L.L.P, McLean, VA, for Defendant.

### MEMORANDUM AND ORDER

WILLIAM H. PAULEY III, District Judge.

**\*1** Plaintiffs Robert Correia ("Correia"), Bradford Pires ("Pires") and Otis Powers ("Powers") (collectively, "Plaintiffs") bring this putative class action pursuant to the Employee Retirement and Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § § 1001, et seq., alleging various breaches of fiduciary duty concerning the Polaroid Retirement Savings Plan (the "Plan"). On March 31, 2005, this Court issued a Memorandum and Order denying Defendants' motion to dismiss except with respect to Plaintiffs' claim that Defendants breached their fiduciary duties by failing to avoid conflicts of interest (the "March 31 Order").[FN1] In re Polaroid ERISA Litigation, 362 F.Supp.2d 461 (S.D.N.Y.2005). Plaintiffs now move to certify a class pursuant to Fed.R.Civ.P. 23. For the reasons set forth below, Plaintiffs' motion is granted.

### BACKGROUND

#### I. Summary of Plan Terms

Familiarity with the March 31 Order is assumed. The Plan comprised various components, of which only the 401(k) and Employee Stock Ownership Plan ("ESOP") are relevant for purposes of this motion. (Declaration of Ryan Pierce, dated Oct. 24, 2005 ("Pierce Decl.") Ex. B: Plan.) Participants in the 401(k) portion of the Plan could direct a portion of

their compensation into any of 38 investment funds, including the Polaroid Stock Fund, which consisted of Polaroid stock. (Declaration of William Hubert, dated Oct. 19, 2005 ("Hubert Decl.") ¶ ¶ 2-3, Ex. A: Plan Booklet.) Participants in the 401(k) had no obligation to invest in the Polaroid Stock Fund. (Pierce Decl. Exs. A, B.) The Employee Stock Ownership Plan ("ESOP") portion of the Plan was funded entirely by Polaroid and was to invest "primarily" in Polaroid common stock. (Pierce Decl. Ex. B.) Nonetheless, three categories of ESOP participants could fully diversify and/or liquidate their ESOP accounts: (1) participants who had left the company; (2) participants on disability; and (3) participants over 59.5 years old. (Pierce Decl. Ex. B; Hubert Decl. ¶ 2.)

#### II. The Parties' Relationships

Plaintiffs are former Polaroid employees and former Plan participants. (Declaration of Amy Williams-Derry, dated Nov. 28, 2005 ("Derry Decl.") Exs. 9-11: Transcripts of Depositions of Correia, Pires and Powers.) Plaintiff Correia, along with thousands of other employees, left Polaroid in the period between 1999 and 2001. (Declaration of Harvey Greenberg, dated Oct. 18, 2005 ("Greenberg Decl.") ¶ ¶ 2-3.) Many of the departing employees were provided with severance packages, and a majority signed release forms which purported to release all claims against Polaroid except for claims "for vested accrued benefits" under the Plan. (Pierce Decl. Ex. U: Correia Termination Letter; Greenberg Decl. ¶ ¶ 4-7, Ex A: Termination Letter, Release and Acknowledgement.) Correia was among those who executed a release, which provided, in relevant part:

[Y]ou agree to release all claims you may have against [Polaroid], [the Plan] ... and their directors, trustees, officers, shareholders, employees, agents, administrators, successors and assigns, including, but not limited to, any claims arising out of or in connection with your employment by [Polaroid] or the termination of your employment.... This release will not preclude claims ... for vested accrued benefits under the ... [Plan] or benefits of this Program as determined by the plan administrators of such Plan[ ]."

**\*2** (Pierce Decl. Ex. U.)

#### III. The Deterioration of Polaroid's Stock Price

At the beginning of the Class Period, Polaroid stock

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

traded at $25.88 per share.[FN2] (Amended Consolidated Complaint, dated Sept. 15, 2004 ("Compl." or "Complaint") ¶ 120.) However, throughout the Class Period, Polaroid's financial position deteriorated and its stock price declined. By November 2001, Polaroid stock traded at $0.24 per share. (Compl.¶ 206.) In December 2001, State Street divested the ESOP of Polaroid stock for an average price per share of $.0946. (Compl.¶ 206.) The Polaroid Stock Fund was liquidated in December 2002 for an average price per share of approximately $.01. (Compl.¶ 206.) The scale of these losses was massive-at the end of 1999, the Plan held over seven million shares of Polaroid common stock, valued at $138,346,897. By the end of 2000, the number of Polaroid shares held by the Plan had increased slightly, but the total value of those shares had plummeted to $45,745,761. (Compl.¶ 82.)

On August 15, 2002, Polaroid's Board of Directors passed a resolution to terminate the Plan and all Plan assets were distributed. (Declaration of Kevin R. Pond, dated Oct. 19, 2005 ("Pond Decl.") ¶ 4; Ex. C: Minutes of Aug. 15, 2002 Board Meeting.) The parties dispute whether the Plan has since been terminated. (Declaration of Derek W. Loeser, dated Nov. 7, 2005, Ex. 3: Letter from Internal Revenue Service, dated Oct. 9, 2003.)

## DISCUSSION

Plaintiffs' basic allegation is that Defendants breached their fiduciary duties by maintaining the Plan's investments in Polaroid common stock despite (1) their knowledge of certain accounting irregularities; and (2) the precipitous decline in price that the stock had taken. Plaintiffs also claim that DiCamillo failed to monitor other Plan fiduciaries, that Defendants made misleading statements to Plan participants and failed to keep them adequately informed, and that all Defendants are liable for the actions of their co-fiduciaries. Plaintiffs move to certify the following class:
All persons who were participants in or beneficiaries of the Plan at any time between October 1, 1999 and January 15, 2003 (the "Class Period") and whose accounts included investments in Polaroid Stock.

Defendants argue that Plaintiffs lack **standing** to sue under ERISA and, in any event, cannot satisfy the requirements of Fed.R.Civ.P. 23. This Court considers each of these issues in turn.

## I. Statutory Standing Under ERISA

[1] **ERISA** actions seeking damages for breach of fiduciary duty can be brought only by certain parties under specified conditions. 29 U.S.C. § 1132(a) (titled "Persons empowered to bring a civil action") provides, in relevant part: "A civil action [for breach of fiduciary duty] may be brought ... (2) by the Secretary, or by a participant, beneficiary, or fiduciary for appropriate relief under Section 1109 of this title." 29 U.S.C. § 1109 provides, in relevant part:

*3 Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed ... by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary....

In *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985), the Supreme Court stated that claims brought under § § 1132(a)(2) and 1109 may not be made for individual relief, but instead are "brought in a representative capacity on behalf of the plan." *Russell*, 473 U.S. at 142 n. 9; *see also Lee v. Burkhart*, 991 F.2d 1004, 1009 (2d Cir.1993) (concluding that *Russell* bars claims under § 1 132(a)(2) where plaintiffs seek damages on their own behalf and not on behalf of the plan). Thus, to determine whether Plaintiffs have statutory **standing** under § 1132(a)(2), this Court must determine: first, whether Plaintiffs are "participant[s][or] beneficiar[ies]" of the Plan for purposes of § 1132(a)(2); and second, whether Plaintiffs are truly suing "in a representative capacity on behalf of the plan." *Russell*, 473 U.S. at 142 n. 9.

### A. Plaintiffs' Status as Plan Participants

29 U.S.C. § 1002(7) defines a "participant" as "any employee or former employee of an employer ... who is or may become eligible to receive a benefit of any type from an employee benefit plan...." In *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court expanded on the statutory definition: "[T]he term 'participant' is naturally read to mean either employees in, or reasonably expected to be in, currently covered employment ... or former employees who have ... a reasonable expectation of returning to covered employment or who have a colorable claim to vested benefits."

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Plaintiffs admit that they have no reasonable expectation of returning to Polaroid as employees. Thus, Defendants argue that former Plan participants whose accounts have been liquidated by definition cannot have "a colorable claim to vested benefits" and thus may not bring suit under § 1132(a)(2). *Firestone*, 489 U.S. at 117.

The Second Circuit has declined to apply the *Firestone* standard rigidly in the context of defining a "participant." See *Mullins v. Pfizer, Inc.*, 23 F.3d 663 (2d Cir.1994). While acknowledging a circuit split on the issue of whether former employees qualify as "participants," *Mullins* suggested that "the basic **standing** issue is whether the plaintiff is '*within the zone of interests* ERISA was intended to protect.' " *Mullins*, 23 F.3d at 668 (emphasis in original) (quoting *Vartanian v. Monsanto Co.*, 14 F.3d 697, 701 (1st Cir.1994)). Applying the "zone of interests" standard, the Court of Appeals concluded that a former employee had **standing** as a plan participant because he alleged that "but for the fact that [the defendant] misled him, he would have been a participant." *Mullins*, 23 F.3d at 667 (internal quotation marks omitted). The court reasoned that it would reap an "anomalous effect" to "allow[ ] a fiduciary through its own malfeasance to defeat the employee's **standing**." *Mullins*, 23 F.3d at 668 (internal quotation omitted); see also *Christopher v. Mobil Oil Corp.*, 950 F.2d 1209, 1221 (5th Cir.1992) (allowing former employee to maintain a claim where he alleged that but for defendant's misconduct, he would still be an employee); *but see Raymond v. Mobil Oil Corp.*, 983 F.2d 1528, 1536-37 (10th Cir.1993) (rejecting "but for" standard as inconsistent with *Firestone*); *Stanton v. Gulf Oil Corp.*, 792 F.2d 432, 435 (4th Cir.1986) (same).

*4 The issue in *Mullins* was whether a defendant could take advantage of its own wrong to avoid suit under **ERISA** where it had fraudulently induced a plaintiff to liquidate his plan account in order to deprive him of benefits to which he would otherwise have been entitled. However, where the alleged misconduct is less directly linked to plaintiff's decision to terminate his involvement with the plan, the weight of authority in this circuit still allows former employee claims to proceed. See *Gray v. Briggs*, No. 97 Civ. 6252(DLC), 1998 WL 386177, at *4-6 (S.D.N.Y. July 7, 1998) (concluding in the context of a claim under § 1132(a)(1) that a former employee who alleged that distributions received under a defined contribution plan were reduced because of defendants' breach of fiduciary duty was a

"participant" for purposes of **ERISA**, and noting approvingly the breadth of the Second Circuit's holding in *Mullins*); *Richards v. FleetBoston Fin. Corp.*, 235 F.R.D. 165 (D.Conn.2006) (finding that former employees who had liquidated their plan accounts but who sought benefits to which they would have been entitled prior to retirement were "participants"); *O'Connell v. Kenney*, No. 03 Civ. 0845(DJS), 2003 WL 22991732, at *3-4 (D.Conn. Dec.15, 2003) (holding that the beneficiary of a former account-holder had **standing** where the account-holder had received a lump sum payment but alleged that the amount of the payment had been miscalculated); *cf. Dickerson v. Feldman*, 426 F.Supp.2d 130, 135 (S.D.N.Y.2006) (dismissing putative class action brought under § 1132(a)(2) by a lone former employee who accepted a final distribution of a plan account prior to filing suit and who alleged misconduct that was already publicly disclosed at the time of the account's liquidation).

Moreover, although the Second Circuit recently declined to address the issue of whether former employees have **standing** to sue under § 1132(a)(2), see *Coan v. Kaufman*, 457 F.3d 250, 255 (2d Cir.2006), in doing so it noted in dicta that a former employee's claim that a lump sum distribution of a defined contribution account balance would have been greater absent the defendants' breach of fiduciary duty is "[a]rguably ... [a claim] for benefits-which, if colorable, means that she may become eligible for benefits and thus qualif[y] as a participant under **ERISA**." *Coan*, 457 F.3d at 255-256 (internal citations and quotation marks omitted); see also *Gray*, 1998 WL 386177, at *4-6.

[2] In this action, Plaintiffs do not allege that they would still be Plan participants but for defendants' misconduct. However, they do allege that the distributions they received under a defined contribution plan were reduced because of defendants' breaches of fiduciary duty and that the defendants engaged in numerous misrepresentations and non-disclosures prior to the liquidation of their accounts. See, e.g., Complaint ¶ ¶ 4-6, 82-83, 121-126, 143-157, 163-180, 192-208. Plaintiffs are also within the zone of interests **ERISA** was intended to protect. See *Gray*, 1998 WL 386177, at *4-6 (applying zone of interests test to encompass a former employee); *Burke v. Gregory*, 356 F.Supp.2d 179 (N.D.N.Y.2005) (same). Accordingly, this Court finds that Plaintiffs have **standing** to sue as Plan "participants" under § 1132(a)(2) despite their status as former employees.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

B. *Bringing Suit in a "Representative Capacity"*

**\*5** Defendants argue that Plaintiffs fail to bring their claims "in a representative capacity on behalf of the plan" because (1) the Plan no longer exists, and thus cannot realize any benefits from the suit; and (2) the putative class consists only of those Plan participants whose accounts were invested in Polaroid stock. Moreover, Defendants argue that even if Plaintiffs' claims are brought on behalf of the Plan, the Complaint does not satisfy the pleading requirements of Fed.R.Civ.P. 23.1 and accordingly must be dismissed. These arguments are without merit.

### 1. *Existence of the Plan*

**[3]** *Russell* requires suits under § 1132(a)(2) to be brought "in a representative capacity on behalf of the plan." 473 U.S. at 142 n. 9. There is a factual dispute regarding the date on which the Plan was finally dissolved, and in particular whether that occurred before or after the filing of this action. (*See* Letter from Steven F. Cherry, dated Nov. 18, 2005; Letter from Lynn L. Sarko, dated Nov. 28, 2005.) In any event, as noted, the Second Circuit has stated that it would be "anomalous" to "allow[ ] a fiduciary through its own malfeasance to defeat the employee's standing." *Mullins*, 23 F.3d at 668. And indeed, other courts that have considered this issue since the Supreme Court's decision in *Russell* have determined that the dissolution of a plan should not bar subsequent suits by participants. *See, e.g., Kling v. Fid. Mgmt. Trust Co.*, 270 F.Supp.2d 121, 127 (D.Mass.2003) ("The fact that the Plan itself no longer exists does not bar recovery."); *Jackson v. Truck Drivers' Union Local 42 Health and Welfare Fund*, 933 F.Supp. 1124, 1136 (D.Mass.1996) (same); *Gruber v. Hubbard*, 675 F.Supp. 281, 284 (W.D.Pa.1987) ("To deny plaintiffs relief [on the basis of an argument that the plan no longer existed] would reward defendants for the thoroughness of their alleged mismanagement ... In the absence of a functioning plan, it is the class of beneficiaries and their rights under this plan which represent the interests of the plan for the purposes of [§ 1109]."). In light of these authorities, this Court finds as a matter of law that the dissolution of the Plan-whether it occurred before or after the filing of this action-cannot insulate Defendants from potential liability for past breaches of their fiduciary duties.

### 2. *Limitation of the Class to Polaroid Stockholders*

**[4]** Defendants also contend that Plaintiffs are not suing on behalf of the Plan "as a whole" and that their claims are accordingly barred by *Russell*. In particular, Defendants argue that because Plaintiffs sue only on behalf of those Plan participants whose accounts were invested in Polaroid stock, any benefits would not accrue to the Plan as a whole, but rather to those individuals who owned Polaroid stock during the Class Period.

Although the Second Circuit has not yet spoken to this issue, Defendants' argument runs against the prevailing grain of authority. *See, e.g., In re Schering-Plough Corp. ERISA Litig.*, 420 F.3d 231, 234-35 (3d Cir.2005) (holding that where plaintiffs alleged that "the Plan suffered significant losses" and requested that fiduciaries "make good to the Plan the losses to the Plan," they need not "seek[ ] to recover for all plan participants allegedly injured by the fiduciary breach"); *Kuper v. Iovenko*, 66 F.3d 1447, 1453 (6th Cir.1995) (holding that a subclass of plan participants could sue where the remedy sought by plaintiffs "would benefit the plan as a whole and ... cure any harm that the plan suffered"); *Milofsky v. Am. Airlines, Inc.*, 442 F.3d 311, 313 (5th Cir.2006) (per curiam) (declining to dismiss claims by a subset of plan participants who sought to recover losses to a plan); *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 458 F.3d 359, 363 (4th Cir.2006) ("[L]iability under [§ 1132(a)(2) ] is not limited to losses that accrue to *all* plan participants-it is, however, limited to plan losses" (emphasis in original).).

**\*6** In permitting Plaintiffs to proceed, this Court is mindful that the Second Circuit has declined to allow lone plaintiffs or small groups of individuals to sue under § 1132(a)(2). *See, e.g., Strom v. Goldman, Sachs & Co.*, 202 F.3d 138, 149 (2d Cir.1999) (holding that an individual plaintiff could not proceed under § 1132(a)(2) because it affords no remedies to individual beneficiaries); *Lee v. Burkhart*, 991 F.2d 1004, 1009 (2d Cir.1993) (noting that "*Russell* ... bars [individual] plaintiffs from suing under [§ 1132(a)(2) ] because they are seeking damages on their own behalf, not on behalf of the Plan."). However, because Plaintiffs assert claims on behalf of a broad class of participants in the Plan, seek damages for injuries suffered by the Plan, and rely on significant weight of authority from outside this Circuit, the Court believes that this case presents distinguishable circumstances.

Defendants' reliance on *Fisher v. J.P. Morgan Chase & Co.*, 230 F.R.D. 370 (S.D.N.Y.2005) is misplaced.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*Fisher* involved a putative class action in which the court determined that the named plaintiffs lacked **standing** under § 1132(a)(2) to sue for violations of § 1109 because they asserted claims only on behalf of participants who held shares of the employer's stock and not on behalf of the plan as a whole. However, *Fisher* was based largely on *Strom*, Lee and other cases that barred claims by individuals or small groups of plan participants. *Fisher* also relied heavily on *Milofsky v. Am. Airlines, Inc.*, 404 F.3d 338 (5th Cir.2005) and *In re Schering-Plough Corp. ERISA Litig.*, 387 F.Supp.2d 392 (D.N.J.2004)-both of which were subsequently overturned (*Schering-Plough* reversed on appeal and *Milofsky* vacated in a per curiam opinion after a rehearing *en banc* ). *See Schering-Plough*, 420 F.3d 231; *Milofsky*, 442 F.3d 311. Therefore, this Court declines to follow *Fisher.*

### 3. *Rule 23.1*

[5] The Second Circuit has recently held that the heightened pleading requirements of Rule 23.1 do not apply to plaintiffs in ERISA claims brought under § 1132(a)(2). *Coan*, 457 F.3d at 257-58 (finding that Rule 23.1 "[b]y its terms ... does not apply to [§ 1132(a)(2) ] suits"). Accordingly, Plaintiffs were under no obligation to comply with Rule 23.1 in this action.

### II. *Class Certification Standard*

Fed.R.Civ.P. 23 governs class actions. *Parker v. Time Warner Entm't Co.*, 331 F.3d 13, 18 (2d Cir.2003); *accord Benner v. Becton Dickinson & Co.*, 214 F.R.D. 157, 162 (S.D.N.Y.2003). The Supreme Court has instructed that district courts are to conduct a "rigorous analysis" to ascertain whether the requirements of Rule 23 have been satisfied. *See Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982); *accord Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283, 291 (2d Cir.1999). Although Rule 23 must be liberally construed, *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir.1997), the party seeking to certify a class bears the burden of establishing the prerequisites of Rule 23. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); *Caridad*, 191 F.3d at 291.

*7 [6] Rule 23 imposes two prerequisites for a class action. First, the party seeking certification must demonstrate that the proposed class meets the four requirements of Rule 23(a): (1) the class is so

numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a); *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 132-33 (2d Cir.2001); *Caridad*, 191 F.3d at 291; *Benner*, 214 F.R.D. at 162. Second, the party seeking certification must show that the proposed class action falls within one of the types maintainable under Rule 23(b) because: (1) prosecution of separate actions by individual parties would create a risk of either inconsistent adjudications or would be dispositive of the interests of those members not parties to the adjudication; (2) defendants have acted or refused to act on grounds generally applicable to the class; or (3) questions of law or fact common to members of the class predominate, and a class action is superior to other available methods for adjudication. Fed.R.Civ.P. 23(b); *Visa*, 280 F.3d at 133; *Caridad*, 191 F.3d at 292; *Benner*, 214 F.R.D. at 163.

[7] In considering a motion for class certification, courts must accept the allegations in the complaint as true. *See Shelter Realty Corp. v. Allied Maint. Corp.*, 574 F.2d 656, 661 n. 15 (2d Cir.1978) ("[I]t is proper to accept the complaint allegations as true in a class certification motion."); *accord Benner*, 214 F.R.D. at 163. A court may not examine the merits of the case in a motion for class certification. *Visa*, 280 F.3d at 133 (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974)); *Caridad*, 191 F.3d at 291; *Bakalar v. Vavra*, 237 F.R.D. 59, 63 (S.D.N.Y.2006). However, a court may consider material outside the pleadings in determining whether class certification is appropriate. *Fox v. Cheminova, Inc.*, 213 F.R.D. 113, 121-22 (E.D.N.Y.2003); *Kaczmarek v. Int'l Bus. Mach. Corp.*, 186 F.R.D. 307, 311 (S.D.N.Y.1999) (citing *Sirota v. Solitron Devices, Inc.*, 673 F.2d 566, 571 (2d Cir.1982)). Notwithstanding a court's ability to look beyond the pleadings, its resolution of a class certification motion may not become "a preliminary inquiry into the merits of the case." *Eisen*, 417 U.S. at 177. "In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen*, 417 U.S. at 178 (internal quotation omitted).

### A. *Rule 23(a) Requirements*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## 1. Numerosity

[8][9] Defendants do not contest that the putative class is numerous. When a class consists of forty or more members, numerosity is presumed. *Consol. Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir.1995). The proposed class in this action numbers approximately 8,000-a number sufficiently high to render joinder of all parties impracticable. (Declaration of Lynn L. Sarko, dated Sept. 22, 2005 ("Sarko Decl.") ¶ ¶ 10-11; Exs. 3 & 4: Form 5500 Annual Return/Report of Employee Benefit Plan for 1999 and 2000.) Thus, the putative class is sufficiently numerous to satisfy the requirements of Rule 23(a). *See Koch v. Dwyer,* No. 98 Civ. 5519(RPP), 2001 WL 289972, at *3 (S.D.N.Y. Mar.23, 2001) (finding putative class of 3,400 members sufficiently numerous in the ERISA context).

## 2. Commonality

*8 [10] "In general, the question of defendants' liability for ERISA violations is common to all class members because a breach of a fiduciary duty affects all participants and beneficiaries." *Banyai v. Mazur,* 205 F.R.D. 160, 163 (S.D.N.Y.2002). Defendants do not contest that the proposed class action raises "questions of law [and] fact common to the class" as required by Rule 23(a). These issues include whether the Defendants acted as fiduciaries for purposes of § 1109, what communications they made to members of the class, the truth of those communications, the state of Defendants' knowledge regarding Polaroid stock, and the actions (if any) Defendants took to protect the Plan. Accordingly, there are sufficient issues of law and fact common to the class to justify certification pursuant to Rule 23(a). *See Marisol A., 126 F.3d at 376; In re Global Crossing Sec. and ERISA Litig.,* 225 F.R.D. 436, 452 (S.D.N.Y.2004) (finding allegations that ERISA defendants breached their fiduciary duties in connection with the administration of an employee benefits plan sufficient to establish common questions of law and fact).

## 3. Typicality

[11][12] Typicality exists where the "claims of [the] representative plaintiffs arise from [the] same course of conduct that gives rise to claims of the other class

members, where the claims are based on the same legal theory, and where the class members have allegedly been injured by the same course of conduct as that which allegedly injured the proposed representatives." *In re Oxford Health Plans,* 191 F.R.D. 369, 375 (S.D.N.Y.2000) (citing *In re Drexel Burnham Lambert Group, Inc.,* 960 F.2d 285, 291 (2d Cir.1992)). When "the same [alleged] unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux v. Celani,* 987 F.2d 931, 936-37 (2d Cir.1993); *Global Crossing,* 225 F.R.D. at 452. However, "class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.,* 222 F.3d 52, 59 (2d Cir.2000) (quoting *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 903 F.2d 176, 180 (2d Cir.1990) (internal citation omitted)).

Plaintiffs argue that their claims are typical of the class because they stem from Defendants' alleged breaches of duty as Plan fiduciaries, because all members of the proposed class can assert the same legal arguments to establish Defendants' liability, and because suits under § 1132(a) are brought for plan-wide relief as opposed to individual relief. *See, e.g.,* 29 U.S.C. § § 1109, 1132(a) (liability for breach of fiduciary duty is "to the plan"); *LaRue,* 458 F.3d at 363 ("[L]iability under [§ 1132(a)(2) ] is ... limited to plan losses."). Defendants counter that the requirements for typicality are not met because a portion of the class signed releases that bar Plaintiffs' claims and because Plaintiffs had the ability to make individualized investment decisions with respect to their accounts.

### a. Effect of Releases

*9 Although the Second Circuit has never addressed the issue, numerous courts have held that under ERISA, individuals do not have the authority to release a defined contribution 15 plan's right to recover for breaches of fiduciary duty. *See, e.g., Bowles v. Reade,* 198 F.3d 752, 759-61 (9th Cir.1999) (finding that a plaintiff could not release claims brought on behalf of a plan without the consent of the plan); *Nelson v. IPALCO Enters.,* No. IP02-477 (CHK), 2003 WL 23101792, at *6 (S.D.Ind. Sept.30, 2003) (finding typicality in the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

context of an ERISA class action brought on behalf of a plan despite the fact that certain plaintiffs had signed releases); *In re Williams Cos. ERISA Litig.,* 213 F.R.D. 416 (N.D.Okla.2005) (finding as a matter of law that individuals could not release claims brought on behalf of a plan); *In re Qwest Sav. & Inv. Plan ERISA Litig.,* No. 02-RB-464 (CBS), 2004 U.S. Dist. LEXIS 24647, at *14 (D.Colo. Sept. 27, 2004) (same).[FN3]

[13] As discussed above, Plaintiffs assert claims on behalf of the Plan. Moreover, the releases at issue in this action appear to contain substantially similar language, and Defendants do not point to any reason why their validity is unlikely to be subject to treatment on a class-wide basis.[FN4] Accordingly, while this Court is mindful that a motion for class certification is not the time to address the merits of the case, *Caridad,* 191 F.3d at 291, Defendants may not invoke the releases executed by certain class members to defeat typicality. *See Nelson,* 2003 WL 23101792, at *6 (noting that "[t]ypicality ... should be determined with reference to the company's actions, not with respect to particularized defenses it may have against certain class members" (internal quotation omitted)).

### b. Individualized Investment Decisions

Defendants argue that Plaintiffs' claims are not typical because 401(k) participants in the Plan, and certain categories of participants in the ESOP, were responsible for their own account management decisions. Defendants claim that these facts implicate 29 U.S.C. § 1104(c), which relieves fiduciaries of liability when the investment losses resulted from acts or omissions of plan participants. In addition, Defendants argue that a class cannot be certified with respect to Plaintiffs' claims for misrepresentation or failure to disclose because ERISA does not recognize a "fraud on the market" theory. These arguments are unpersuasive.

[14] First, whether the degree of individual control present in the Polaroid Plan is sufficient to implicate § 1104(c) is determined by the administration and structure of the Plan as a whole, and is thus a question common to the class. *See In re Enron Corp. Sec. Derivatives & ERISA Litig.,* 284 F.Supp.2d 511, 578 (S.D.Tex.2003). Second, § 1104(c) does not apply to the central claims against Defendants- namely, that they invested ESOP contributions in Polaroid stock and continued to offer Polaroid stock as an investment option for the 401(k) Plan after it

was prudent to do so. *See In re Enron Corp. Sec. Derivative & ERISA Litig.,* 284 F.Supp.2d 511, 576-79 (S.D.Tex.2003) (finding that even when § 1004(c) applies, fiduciaries are liable for losses that are not attributable to the acts or omissions of plan participants). Third, if Plaintiffs' claims of misrepresentation and nondisclosure are substantiated, § 1104(c) will not apply at all. *See In re Unisys Sav. Plan Litig.,* 74 F.3d 420, 446 (3d Cir.1996) (noting that for § 1004(c) to apply, fiduciaries must provide plan participants with "complete and accurate information" concerning investment alternatives in order to facilitate individualized control). Thus, accepting all allegations in the Complaint as true as this Court is required to do on a motion for class certification, *Shelter,* 574 F.2d at 661 n. 15, § 1104(c) does not provide a basis to defeat typicality. *See Rankin v. Rots,* 220 F.R.D. 511, 519 (E.D.Mich.2004) (finding that a plaintiff seeking to avoid class certification by invoking individualized defenses "ignores the fact that the appropriate focus in a breach of fiduciary duty claim is the conduct of the defendants, not the plaintiffs" (internal quotation omitted)); *In re Ikon Office Solutions, Inc. Sec. Litig.,* 191 F.R.D. 457, 465 (E.D.Pa.2000) ("The focus of [the typicality] inquiry is whether the named representatives rely on a similar legal theory as will the putative class, not whether the parties behaved identically in response to the alleged breaches of fiduciary duty.").

*10 [15] Defendants' argument that Plaintiffs' claims for misrepresentation and nondisclosure inherently require an individualized analysis is also insufficient to defeat typicality. The Complaint contains allegations of plan-wide misrepresentations and nondisclosures which, by definition, were not individualized. *See, e.g.,* Complaint ¶ ¶ 249, 252. The class seeks recovery for the Plan as a whole on the basis of these plan-wide misrepresentations and non-disclosures. Plaintiffs' claims are accordingly typical of those of the class as a whole. *See Rankin,* 220 F.R.D. at 522-23 (finding typicality where, "[a]lthough there may be factual differences as to whether, in the case of voluntary employee contributions, a class member relied on any alleged misrepresentations, the ... misrepresentations are alleged to have been made to the entire class of participants"); *IPALCO,* 2003 WL 23101792, at *5 (rejecting argument similar to the one advanced by Defendants here where "relevant representations were distributed or made available on a class-wide basis"); *Ikon,* 191 F.R.D. at 464; *In re Qwest Sav. & Inv. Plan ERISA Litig.,* No. 02-RB-464 (CBS), 2004 U.S. Dist. LEXIS 24693, at *14-16 (D.Colo. Sept.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

27, 2004).

For these reasons, the Court finds that Plaintiffs satisfy the typicality requirement of Rule 23(a).

### 4. *Adequacy*

[16][17] Under Rule 23, adequacy of representation is measured by two standards. First, class counsel must be qualified, experienced and generally able to conduct the litigation. Second, the class members must not have interests that are antagonistic to one another. *Drexel,* 960 F.2d at 291. Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members. *Drexel,* 960 F.2d at 291.

[18] Defendants do not contest the adequacy of Plaintiffs' counsel, but assert that the representative Plaintiffs would not "adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). In particular, Defendants complain that Powers made offensive statements about minorities, women, and Jews in an internet chat room (and thus cannot adequately represent members of those groups) and that he destroyed documents several days before his deposition. Defendants also argue that none of the Plaintiffs invested in Polaroid stock through their 401(k) accounts, and that accordingly they lack a personal interest in vigorously litigating those claims on behalf of the class. Finally, Defendants argue that Correia and Pires have been little more than spectators in this action, because they have been uninvolved in discovery and lack all but a rudimentary understanding of the nature of this action.

While Powers' bigoted remarks are repugnant to this Court, there is no evidence that he has ever discriminated against minorities, women or Jews in the course of his employment or business affairs, and his interests are aligned with the other members of the class in seeking to maximize recovery on behalf of the Plan. *Drexel,* 960 F.2d at 291. Similarly, as discussed above, the central claims in this action do not hinge on whether a particular individual chose to invest in a 401(k) plan-rather, they focus on the nature of Defendants' conduct. *See Rankin,* 220 F.R.D. at 518 ("The fact that [plaintiff] did not voluntarily invest in ... stock is a minor distinction in relation to the overarching question of whether defendants violated their fiduciary duties under ERISA."). Further, the relative lack of involvement

of Correia and Pires does not rise to the high degree of neglect that would be required to render them inadequate class representatives. *See Koch,* 2001 WL 289972, at *4 ("[T]he Supreme Court has expressly disapproved of attacks on the adequacy of a class representative based on the representative's ignorance" (citing *Surowitz v. Hilton Hotels Corp.,* 383 U.S. 363, 372-74, 86 S.Ct. 845, 15 L.Ed.2d 807 (1966).).

**\*11** The only issue of genuine importance to adequacy focuses on Powers' destruction of documents relevant to this action, which could give rise to unique defenses. *See Baffa,* 222 F.3d at 61 (noting that a witness who acts in a manner that may give rise to unique defenses may not adequately represent a class). However, based on a review of Powers' deposition transcript, it appears that the need for document retention during litigation has been clarified for him and that he understands his need to comply. (Pierce Decl. Ex. T.) Thus, this Court finds that Plaintiffs satisfy the adequacy requirement of Rule 23(a).

### B. *Rule 23(b) Requirements*

[19] Fed.R.Civ.P. 23(b) provides, in relevant part: An action may be maintained as a class action if ... (1) the prosecution of separate actions by or against individual members of the class would create a risk of (A) inconvenient or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

As noted, this is an action for breach of fiduciary duty brought under § 1132(a)(2) on behalf of the Plan. Because the allegations in the Complaint implicate misconduct in the management of the Plan as a whole, disparate lawsuits by individual participants would raise the specter of "varying adjudications." Similarly, allowing multiple actions, each of which would seek the same relief from the Defendants on behalf of the Plan, would potentially prejudice individual class members and would threaten to create "incompatible standards of conduct" for the Defendants. These are precisely the problems Rule 23(b)(1) was intended to avoid. Indeed, "ERISA litigation of this nature presents a

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

paradigmatic example of a [Rule 23](b)(1) class." *Kolar v. Rite Aid Corp.,* No. Civ.A. 01-1229, 2003 WL 1257272, at *3 (E.D.Pa. Mar.11, 2003). Accordingly, this Court finds that certification of the class under Rule 23(b)(1) is appropriate. *See Global Crossing,* 225 F.R.D. at 453 (certifying class under Rule 23(b)(1) in § 1132(a)(2) action similar to this one); *Rankin,* 220 F.R.D. at 521-23 (same); *Ikon,* 191 F.R.D. at 466 (same).

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for class certification is granted. The Court appoints Correia, Pires and Powers as class representatives. Schiffrin & Barroway, LLP and Keller Rohrback L.L.P. are appointed class counsel. Curtis V. Trinko is appointed liason counsel.

SO ORDERED:

FN1. The Defendants are former Polaroid Plan fiduciaries Andra Bolotin, Judith G. Boynton, Benjamin C. Byrd III, Janet B. Cramer, Gary DiCamillo ("DiCamillo"), Deirdre J. Evens, William L. Flaherty, Neal D. Goldman, Harvey Greenberg, Donald M. Halsted III, William Hubert, John Jenkins, Warren Kantrowitz, Carl L. Lueders, Jeffrey S. Miller, Ralph Norwood, Philip Ruddick, and Patricia R. Weller (all of these individuals collectively the "Individual Defendants") and Plan trustee State Street Bank and Trust Company ("State Street"). On July 11, 2006 Plaintiffs filed a Motion for Preliminary Approval of a partial settlement reached with the Individual Defendants. That motion is currently before this Court *sub judice,* and does not affect the decision of Plaintiffs' previously filed motion for class certification.

FN2. The "Class Period" is the period between October 1, 1999 and January 15, 2003. (Compl.¶ 84.)

FN3. Defendants rely on *Spann v. AOL Time Warner,* 219 F.R.D. 307, 319 (S.D.N.Y.2003) and *Walker v. Asea Brown Boveri, Inc.,* 214 F.R.D. 58 (D.Conn.2003). However, those cases are inapposite as they did not involve claims brought on behalf of a plan.

FN4. Defendants point to the Second Circuit's fact specific, totality of the circumstances test for the enforceability of releases executed in the ERISA context to support their argument that the releases undermine typicality. *See Laniok v. Advisory Comm.,* 935 F.2d 1360, 1368 (2d Cir.1995). This is a *non sequitur.* To undermine typicality, any waiver would have to encompass claims brought *on behalf of the Plan* and, as noted, individual class members did not have the legal right to execute such releases.

S.D.N.Y.,2006.
In re Polaroid Erisa Litigation
--- F.Supp.2d ----, 2006 WL 2792202 (S.D.N.Y.)

Briefs and Other Related Documents (Back to top)

• 1:03cv08335 (Docket) (Oct. 22, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT D

Slip Copy                                                                                          Page 1
Slip Copy, 2006 WL 2691534 (M.D.Fla.)
**(Cite as: Slip Copy)**

Briefs and Other Related Documents
Preite v. Charles of the Ritz Group, Ltd. Pension
PlanM.D.Fla.,2006.Only the Westlaw citation is
currently available.

United States District Court, M.D. Florida,
Jacksonville Division.
Robert N. PREITE, Plaintiff,
v.
CHARLES OF THE RITZ GROUP, LTD. PENSION
PLAN and YSL Beaute, Inc., Defendants.
**No. 3:05-cv-106-J-32MMH.**

Sept. 19, 2006.

Robert J. Winicki, Winicki Law Firm, P.A.,
Jacksonville, FL, for Plaintiff.
Robert C. Graham, Marshall, Dennehey, Warner,
Coleman & Goggin, Jacksonville, FL, for
Defendants.

*ORDER* <sup>FN1</sup>

> FN1. Under the E-Government Act of 2002,
> this is a written opinion and therefore is
> available electronically. However, it is
> intended to decide the motion addressed
> herein and is not intended for official
> publication or to serve as
> precedent.TIMOTHY J. CORRIGAN,
> District Judge.

*1 This case involves a claim for retirement benefits
brought pursuant to the Employment Retirement
Income Security Act ("ERISA"). Before the Court
are cross motions for summary judgment: Plaintiff
Robert N. Preite's ("Preite") Second Amended
Motion for Summary Judgment Against Defendant,
YSL Beaute, Inc. (Doc. 39), and Defendant YSL
Beaute, Inc.'s ("YSL Beaute") Motion for Summary
Final Judgment. (Doc. 43.) <sup>FN2</sup> The parties filed
responses in opposition to the cross motions,
(Docs.44, 45), and record evidence in the form of
answers to interrogatories, affidavits, depositions,
and exhibits thereto. (Docs.11-2, 11-3, 11-4, 11-5,
11-6, 11-7, 14, 18.) The Court heard argument on
June 28, 2006.

> FN2. Preite has been unable to effectuate

service of process on named defendant
Charles of the Ritz Group, Ltd. Pension Plan
("Plan"). (Doc. 39 at 1-2.) YSL Beaute is
the sole remaining defendant in this
litigation. (Doc. 43 at 1.)

**I. *FACTS***

**A. *The Underlying Facts***

This case is unusual inasmuch as the Court is not
presented with an administrative record or with a
decision of an ERISA plan administrator. The record
evidence is sparse indeed.

Preite, who is currently age 67 (Doc. 11-3 at 15), was
employed by Charles of the Ritz Group, Ltd., a
cosmetics company, from November 1958 through
November 1979, for a total of twenty-one (21) years.
(Docs. 11-2 at 1, ¶ 3; 11-3 at 9, 18; 11-4 at 21.)
Preite started with the company working in
computers and ultimately was promoted to the
position of customer services director. (Doc. 11-3 at
6.) He was terminated from his job when the
company "down-sized." (Doc. 11-3 at 6.) Preite was
a participant in the Charles of the Ritz Group, Ltd.
Pension Plan ("Plan"). (Doc. 11-2 at 1, ¶ 4.)

After he left Charles of the Ritz Group, Ltd., Preite
received two documents (Doc. 11-3 at 17-19): a letter
dated September 3, 1980 from Charles of the Ritz
Group, Ltd. Benefits Administrator Danielle A.
Gaherty (Docs. 11-3 at 19; 11-4 at 21), and a letter
dated October 19, 1983, from Charles of the Ritz
Group, Ltd. Benefits Specialist Allison Nadler. (Doc.
11-4 at 20.)

The September 1980 letter from the Plan benefits
administrator stated that based on to Preite's
termination from Charles of the Ritz Group, Ltd.
effective November 15, 1979, "the following
represents an estimate of your future vested benefit
entitlement from the Squibb Corporation Pension
Plan" <sup>FN3</sup> payable each month following Preite's 65th
birthday, effective June 1, 2004, in the amount of
$505.70 a month. (Doc. 11-4 at 21.) Similarly, the
October 19, 1980 letter from the Charles of the Ritz
Group, Ltd. benefits specialist stated:

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

FN3. "Squibb" is referred to in the record in several forms: "Squibb" (Docs. 11-3 at 9, 20, 23, 30, 32; 11-5 at 9); "Squibb Corporation" (Doc. 43 at 2, ¶ 5); "Bristol-Myers Squibb Company" (Docs.1, 4); "Squibb Corporation Pension Plan" (Doc. 11-4 at 20, 21); and Bristol-Myers Squibb Company Retirement Income Plan." (Doc 11-4 at 30.) The Court will at times refer to "Squibb ."

Pursuant to your termination from Charles of the Ritz Group, effective November 15, 1979, you are entitled to a future vested benefit. This future vested benefit entitlement from the Squibb Corporation Pension Plan is $505.70, which is payable on the first month following your 65th birthday (June 1, 2004).
(Doc. 11-2 at 6.) Ms. Nadler included her phone number where Preite could call if he had any questions. (*Id.*)

On August 9, 1988, Yves Saint Laurent Parfum Corporation, the Plan Sponsor at that time, terminated the Plan. (Doc. 11-2 at 8, 11.) In connection with that termination, Preite received an "Election Form" giving him the option of receiving either a lump sum distribution in full settlement of his rights with respect to the Plan, or a deferred annuity contract with monthly payments beginning at age 65 (or reduced benefits at age 55). The deadline for making this election was October 15, 1988. The form did not show any amount of benefits due to Preite, or how they were calculated. Preite elected the lump sum distribution, and he and his wife both signed the form on October 13, 1988, and sent it back, according to Preite, either "to Charles of the Ritz or Squibb." (Docs. 11-3 at 19-22; 11-4 at 22.)

*2 While he has no specific recollection, Preite acknowledged that the Election Form may have come to him with a cover letter. (Doc. 11-3 at 20-21, 29; *see also* 11-5 at 10.) The purported undated cover letter,[FN4] written on Yves Saint Laurent Parfums Corp. stationary and from the "Corporate Benefits Committee," was addressed to "All Former Employees of Yves Saint Laurent Parfums Corp. with a Deferred Vested Pension Benefit under the Charles of the Ritz Group, Ltd. Pension Plan," regarding "Your Retirement Benefits." (Doc. 11-4 at 23.) The cover letter stated that "The Charles of the Ritz Group, Ltd. Pension Plan has been terminated by Yves Saint Laurent Parfums Corp .... on August 9, 1988." Noting that the letter recipients were fully vested, the cover letter said:

FN4. The purported cover letter was attached as an exhibit to Preite's deposition. (Doc. 11-4 at 23.)

The Plan trustee will be directed to purchase an insurance annuity for you to provide the full amount of your accrued benefit under the Plan through August 9, 1988, or you may elect to receive a lump-sum payment.
(Doc. 11-4 at 23.) The annuity purchase was not to occur "until at least next November." (*Id.*) According to the cover letter, attached was a "notice of benefit commitments which the Company is required by law to give you" with an estimated dollar amount of benefits.[FN5] Also attached to the exhibit was a blank Election Form, similar to the Election Form signed by Preite and his wife, to be completed and returned to Yves Saint Laurant Parfums Corp. by October 15, 1988. (Doc. 11-4 at 25.) Questions were directed to the vice president of human resources for Yves Saint Laurent Parfums Corp. with a phone number provided. (Doc. 11-4 at 23.)

FN5. Exhibit 4 to Preite's deposition, the purported cover letter, includes "Attachment 1," an uncompleted form entitled "Notice of Benefit Commitments." Spaces for specific participant data are left blank. A blank Election Form is also attached. (Doc. 11-4 at 24-25.)

Preite testified in his deposition that he never heard anything back from any company or pension plan after submitting his signed Election Form in October 1988. His wife, who in 1988 was employed by Yves Saint Laurant Parfum Corp. (which had purchased Charles of the Ritz, (Doc. 11-5 at 12-13)), and was a partially vested participant in the Plan who had elected the lump-sum payment, did receive her check. (Docs. 11-3 at 24-27; 11-4 at 28; 11-5 at 10.) Preite said that this prompted him to call "Squibb, Charles of the Ritz" and that a woman on the line told him that because of his status of having left the company, he was not entitled to make an election and "[y]ou will get your pension when you reach 65." (Doc. 11-3 at 23.) Preite said he was told that because he was already vested in the Plan, "it could not be changed. It was already sealed. I guess, locked in and sealed." Preite said the woman told him "when you reach 65 call Squibb and you can claim your pension." (Doc. 11-3 at 25, 30.)

Preite testified that a year later, in 1989 or early

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1990, having heard and received nothing regarding his pension, he called the Human Resources department at Squibb. Again, Preite said he was told by a woman he would be receiving the $505 exact amount upon turning age 65, and that the amount was "locked in." (Doc. 11-3 at 30-32.)

*3 Preite said that the 1989-90 phone calls were the last communications he received concerning his pension, and that the only proof he has that he was entitled to a pension is the two letters he received in 1980 and 1983. (Docs. 11-3 at 26, 31; 11-4 at 20, 21.) Preite testified that he has never been paid any pension benefits, either as a lump-sum settlement, a monthly benefit, or an annuity contract from the Plan. (Doc. 11-2 at 3, ¶ 10.) Preite's testimony is corroborated by his wife, who testified that Preite never received a lump sum payment from the Plan or any other benefits, and by the couple's tax return which reflects Preite's wife's lump sum pension payment, but not his. (Docs. 11-3 at 27-29; 11-4 at 28; 11-5 at 12, 19, 21; 11-6 at 1.)

Preite seeks a $505.70 monthly pension benefit, commencing on June 1, 2004, the day after his 65th birthday.

### B. *Corporate Transactions*

According to YSL Beaute and related entities, a number of corporate transactions took place since 1988 which affected the Plan, and have resulted in the loss of Plan documents. (Doc. 11-4 at 31.) Though these subsequent corporate transactions are not documented in the record, counsel for defendant YSL Beaute through counsel conceded at oral argument that YSL Beaute is indeed the corporate successor to Yves Saint Laurent Parfums Corporation, the Plan administrator and sponsor at the time of termination of the Plan on August 9, 1988. (*See also* Docs. 11-2 at 8, 11; 18-2 at 2, ¶ ¶ 2,4; 43 at 3, ¶ 8; 45 at 2.) [FN6]

> FN6. The following is a rough account of the subsequent corporate transactions gleaned from the record, including the deposition testimony by plaintiff and his wife; unsworn letters; and pleadings.
> Prior to Preite's termination from employment in November 1979, Charles of the Ritz Group, Ltd. was acquired by "Squibb." Charles of the Ritz kept its name and functioned "like a subsidiary." (Doc. 11-

3 at 9; 11-5 at 9 (plaintiff and plaintiff's wife deposition testimony); *but see* Doc. 43 at 2, ¶ 5 ("[s]ometime after November 1979, Charles of the Ritz was acquired by Squibb Corporation")(YSL Beaute's "undisputed facts").") At the time of his termination in 1979, Preite was a participant in the Charles of the Ritz Group, Ltd. Pension Plan, also called the Squibb Corporation Pension Plan. (*See* Doc. 11-4 at 20, 21 (letters identified and attached as deposition exhibits).)

Prior to 1988, Charles of the Ritz Group, Ltd. became Yves Saint Laurant Parfums Corp. (*See* Docs. 11-4 at 29 (W-2 Form attached to tax returns); 11-5 at 12, 13 (Mrs. Preite was an employee of Yves Saint Laurant Parfums Corp. in 1988) (deposition of plaintiff's wife); 18-2 at 2, ¶ 2 (affidavit of Gucci America, Inc. human resources coordinator).) Prior to August 1, 1988, but subsequent to 1983, the Charles of the Ritz Group, Ltd. Pension Plan was maintained by Yves Saint Laurant Parfums Corp. (Doc. 18-2 at 2, ¶ 2 (affidavit of Gucci America, Inc. human resources coordinator); Doc. 43 at 3, ¶ 8 (YSL Beaute's "undisputed facts").) The Plan Sponsor at the time of termination of the Plan on August 9, 1988, was Yves Saint Laurent Parfums Corporation. (Doc. 11-2 at 8, 11 (unsubstantiated statements in letters identified and attached as deposition exhibits))

Effective August 1, 1988, participants of the former Charles of the Ritz Group, Ltd. Pension Plan, who were employed at the time by Yves Saint Laurant, were segregated into a separate plan which was amended and restated by Yves Saint Laurant Parfums Corp. As a result, the former Charles of the Ritz Group, Ltd. Pension Plan, consisted only of participants, such as Preite, who were no longer employed by Yves Saint Laurent Parfums Corp. The Plan was terminated by Plan Sponsor Yves Saint Laurant Parfums Corp. on August 9, 1988. (Doc. 18-2 at 2, ¶ ¶ 3, 4 (affidavit of Gucci America, Inc. human resources coordinator).) Those former employees were given the opportunity to elect either a monthly benefit payment at retirement or an immediate lump-sum settlement. (Doc. 18-2 at 2, ¶ 5 (affidavit of Gucci America, Inc. human resources coordinator) .)

At some undefined point in time, Sanofi Beaute, Inc. ("Sanofi") acquired "an entity

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

that had itself previously acquired a prior acquirer of the Plan Sponsor." (Doc. 11-2 at 11.) In February 2004, Bristol-Myers Squibb Company Savings and Pension Center stated by letter that Preite's "pension was payable from Sanofi," and that Preite should contact the Sanofi Pension Department, attention Charles of the Ritz Pension Plan. (Doc. 11-4 at 30 (letter identified and attached as deposition exhibits).) Gucci America, Inc. acquired Sanofi Beaute, Inc. in 1999. (Doc. 11-4 at 31 (unsworn letter by Gucci America, Inc. human resources coordinator).) "In December, 1999, Gucci Group, N.V., the parent company of Gucci America, Inc., acquired Yves Saint Laurant and YSL Beaute (ex-Sanofi Beaute)." (Doc. 18-2 at 2, ¶ 8 (affidavit of Gucci America, Inc. human resources coordinator).) "Further research by Preite's counsel revealed that the corporate successor to Yves Saint Laurent Parfums Corp., the plan sponsor at the time of the termination of the ... Charles of the Ritz Group, Ltd. Plan, may have been YSL Beaute, Inc., and not Gucci Group, N.V., the latter of which is a holding or parent company of both YSL Beaute, Inc. and Gucci America, Inc." (Doc. 39 at 3 (Preite's memorandum in support of motion for summary judgment).)

## C. Recent Events

On May 30, 2004, Preite turned 65 years of age. (Doc. 11-2 at 1, ¶ 5.) Preite testified that as he approached retirement age, he called the Squibb human resources department in Princeton, New Jersey, as the October 19, 1983 letter directed. (Docs. 11-3 at 32; 11-4 at 1, 20.) "[T]hey told me that the pension was sold to Sanofi and gave me the telephone number to call. I then called Sanofi and they told me to call-it was then sold again to Gucci. And then [when] I called Gucci, I got Michele Cordes." (Docs. 11-3 at 32; 11-4 at 30.)

On October 28, 2004, Cordes, with the Human Resources Department at Gucci America, Inc., wrote to Preite that he had elected on October 13, 1988, to take a lump sum settlement upon termination of the Plan, and that Gucci had "uncovered no evidence to indicate that the lump sum distribution which you elected has not already been satisfied in full accordance with your duly filed election." (Doc. 11-2 at 8.) Gucci America, Inc. ("Gucci"), through Cordes,

informed Preite that because of the passage of time, and the number of corporate transactions that had transpired, "we are unable to provide you with any additional information with respect to your Plan." (Doc. 11-2 at 8.)

On November 22, 2004, Preite's counsel wrote to Cordes at Gucci requesting the plan documents on the Plan, including the latest updated summary plan description, the latest annual report and other relevant documents. (Doc. 14 at 4.) Preite through his counsel also requested any information on administrative remedies or procedures, as are described in the Plan documents requested, and stated that this constituted an attempt to exhaust those administrative remedies. (Id.)

*4 On December 6, 2004, attorney Stephen H. Sherman, on behalf of Gucci, wrote to Preite's counsel that "[a]s is customary in the course of terminating a defined benefit pension plan," the Plan Sponsor calculated the accrued benefit for each Plan participant, and offered each person the opportunity to choose between a monthly pension benefit to be funded by an annuity insurance contract purchased for the person's benefit, or a lump sum distribution. (Doc. 11-2 at 11.) Sherman reiterated that Gucci "has uncovered no evidence to indicate that the lump sum distribution which [Preite] elected was not satisfied in full in 1988 ... in accordance with his duly filed election." (Doc. 11-2 at 11-12.)

Gucci disclosed that "there exists no governing plan document or summary plan description that would provide a mechanism for [Preite] to file a formal claim for benefits in 2004." (Doc. 11-2 at 12.)

Referring to the 1988 monthly benefit calculation of $505.70 a month, Gucci, through its counsel responded:
[S]uch monthly benefit would only have been payable had he elected upon Plan termination to receive it in the form of a monthly annuity. Further, as a consequence of the Plan's termination, such monthly benefit would have been payable commencing on June 1, 2004 by the insurance company from which the Plan Sponsor would have purchased an annuity contract on [Preite's] behalf. In light of [Preite's] election, as evidenced by the notarized form, to receive an immediate lump sum distribution in 1988, he has no right nor any substantiable claim to receive a monthly benefit at age 65, and consistent with that election, Gucci possesses no records to indicate that an annuity contract was purchased at that time on his behalf by

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the Plan Sponsor. Doc. 11-2 at 12.)

The "reasonable conclusion," according to Gucci's counsel, is that Preite was paid his single sum distribution in 1988. (Doc. 11-2 at 12.) Counsel for Gucci denied any relief for Preite, contending that the statute of limitations had run from 1988, and that Preite is not a "participant" in a the Plan since it was terminated in 1988. (*Id.*)

Neither party has located or submitted to the Court any Plan documents.

### D. *The Lawsuit*

Preite first filed his claim for retirement benefits, under 29 U.S.C. § 1132(a)(1)(B), on January 31, 2005. (Doc. 1.) In his Second Amended Complaint, [FN7] Preite alleges YSL Beaute's successor liability as follows:

> FN7. Preite originally brought this ERISA action for pension benefits pursuant to 29 U.S.C. ¶ 1132(a)(1)(B) against the Plan, Gucci America, Inc. and Bristol-Myers Squibb Company on January 31, 2005. (Doc. 1.) On March 31, 2005, Preite moved to dismiss without prejudice defendant Bristol-Myers Squibb Co. (Doc. 4) "after its counsel produced documentation that demonstrated that it could not have been the plan administrator during the relevant time period in 1988 when the Plan was purportedly terminated." (Doc. 10 at 2; *see also* Doc. 39 at 2.) The Court dismissed Squibb without prejudice on April 11, 2005. (Doc. 6.) The Plan and Gucci America, Inc. remained as defendants.
> On November 10, 2005, Preite filed an unopposed motion to amend his complaint to add Gucci Group, N.V. as a defendant, based upon an assertion in an affidavit submitted by Gucci America, Inc. that "[i]n December 1999, Gucci Group, N.V., the parent company of Gucci America, Inc., acquired Yves Saint Laurent and YSL Beaute (ex-Sanofi Beaute)." (Docs. 19-1 (citing Doc. 18-2 at 3, ¶ 8); 19-2.) The Court granted the amendment to the complaint and the amended complaint was filed. (Docs. 22, 23.) Whether Gucci N.V. was properly served remained at issue. (*See* Doc. 30.)

Then, on December 20, 2005, Preite moved again to amend his complaint to add YSL Beaute, Inc. as a defendant, and dismiss, without prejudice, Gucci America, Inc. and Gucci Group, N.V. Preite's counsel stated that he based the motion on "further research" which revealed that "the corporate successor to Yves Saint Laurent Parfums Corp., the plan sponsor at the time of the termination of the ... Charles of the Ritz Group, Ltd. Plan, may have been YSL Beaute, Inc.," which counsel asserted was confirmed by telephone by "in house New York counsel that represented YSL Beaute, Inc. and not Gucci Group, N.V., the latter of which is a holding or parent company of both YSL Beaute, Inc. and Gucci America, Inc." (Doc. 31-1 at 2.) The Court granted the motion to amend the complaint (Doc. 33) and Preite filed his second Amended Complaint on December 29, 2005. (Doc. 34.)

Defendant, YSL Beaute, Inc., a New York corporation, is the corporate successor to Yves Saint Laurent Parfums Corp., which was the successor in interest to the original fiduciary, Charles of the Ritz Group, Ltd., under the Charles of the Ritz Group, Ltd. Pension Plan that was charged with and controls administration of the Charles of the Ritz Group, Ltd. Pension Plan. In particular, on January 30, 1995, Yves Saint Laurent Parfums Corp., a Delaware corporation, was merged into Sanofi Beaute, Inc., a New York corporation. Subsequently by either name change or merger, Sanofi Beaute, Inc. became YSL Beaute, Inc., an active New York corporation. *5 (Doc. 34 at 2-3, ¶ 6.) YSL Beaute denied the allegation, and asserted as an affirmative defense that Preite "has failed to state a claim against YSL [Beaute] under ERISA because the Complaint states that the Plan was terminated in 1988, and therefor fails to state that YSL [Beaute] is a fiduciary or took any actions as a fiduciary under the Plan." (Doc. 36 at 2, ¶ 6, and at 3-4.)

In addition to retirement benefits, Preite also seeks recovery of his attorneys' fees, pursuant to 29 U.S.C. § 1132(g)(1). (Doc. 34 at 5, ¶ 15.)

### E. *Cross Motions For Summary Judgment* [FN8]

> FN8. Actions to recover benefits under Section 1132(a)(1)(B) are equitable in

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

nature, and not to be decided by a jury. *Hunt v. Hawthorne Assocs., Inc.,* 119 F.3d 888, 907 (11th Cir.1997). Inasmuch as both parties agreed at oral argument that the facts in the record are not in dispute, and that they are unable to present any additional evidence, this case is ripe for consideration on cross-motions for summary judgment.

Preite argues that he is entitled to summary judgment as a matter of law because "YSL Beaute, Inc., as successor to the administrator of the Plan and Plan sponsor at the relevant time of its purported termination, is the proper party defendant in an action for recovery of benefits and enforcement of rights for an ERISA defined benefit plan brought under section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B)." (Doc. 39 at 7.)

Defendant YSL Beaute counters that it is entitled to judgment as a matter of law because Preite has failed to advance any competent evidence to establish that he has sued the proper defendant and that YSL Beaute is a successor Plan sponsor or administrator of the Plan. (Doc. 45 at 2.) YSL Beaute's position is that after the assets of the terminated Plan were distributed in 1988, "the Plan ceased to exist" and there was no Plan sponsor or administrator for an entity to succeed. (Doc. 45 at 2.) "Therefore, YSL [Beaute] has no legal status with regard to the Plan and is not a proper defendant in this case." (Doc. 45 at 3.)

In addition, YSL Beaute argues that Preite is not a "participant" or "beneficiary" with standing entitled to bring a civil action pursuant to 29 U.S.C. § 1123(a)(1)(B) because he was either paid a lump sum distribution or guaranteed by the purchase of an annuity in 1988 when the Plan was terminated and is thus not eligible to receive any benefit from the Plan. (Docs. 43 at 4-7; 45 at 5-6.) "If, as Mr. Preite contends, he did not receive a lump-sum distribution, he has provided no evidence that the Plan did not purchase an annuity for him. Simply because YSL [Beaute] cannot find a record of such a purchase is not dispositive of whether or not such purchase was made." (Doc. 45 at 4.) Further, YSL Beaute contends that Preite's claim is barred by the applicable statute of limitations [FN9] and by the doctrine of laches because Preite's "claim for disbursement of benefits from the terminated Plan was denied in 1988, when he did not receive either a check or an annuity contract," and his "failure to take any meaningful action to secure his benefits, and his reliance on verbal assurances from anonymous personnel in the

Squibb human resources department, was unreasonable." (Doc. 43 at 8.) Finally, YSL Beaute contends that Preite should have pursued his administrative remedies in 1988 and 1989 "when his lump-sum distribution was not paid, nor when his request for some documentation of his future benefits was denied," and that his failure to do so bars his claim now. (Doc. 43 at 10; *see also* Doc. 45 at 6.)

FN9. Both parties agree that the applicable limitations period in this case is five years, borrowing on the Florida contract limitations period, which is most analogous limitations statute of the state in which the claim is being made. (Docs. 43 at 7; 44 at 8 .) *See Hoover v. Bank of America Corp.,* 286 F.Supp.2d 1326, 1333 (M.D.Fla.2003), aff'd, 127 Fed. Appx. 470, 2005 WL 80957 (11th Cir.2005).

## II. DISCUSSION

### A. *Summary Judgment Standard*

*6 Summary judgment is proper where "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The existence of some factual disputes between the parties will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there is no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) (emphasis in original). The substantive law applicable to the causes of action at issue will identify which facts are material. *Id.*

Normally, " '[i]n an ERISA benefit denial case ... in a very real sense, the district court sits more as an appellate tribunal than as a trial court. It does not take evidence, but, rather, evaluates the reasonableness of an administrative determination in light of the record compiled before the plan fiduciary.' " *Curran v. Kemper National Services, Inc.,* No. 04-14097, 2005 WL 894840, *7 (11th Cir.2005) (unpublished *per curiam* opinion) (quoting *Leahy v. Raytheon Co.,* 315 F.3d 11, 17-18 (1 st Cir.2002)); *accord Clark v. Hartford Life and Accident Ins. Co.,* No. 8:05-CV-67-T-23MAP, 2006 WL 890660, *2 (M.D. Fla. April 6, 2006) (unpublished opinion), aff'd, No. 06-12552, 2006 WL 2623327 (11th Cir. Sept. 14, 2006). This is not the typical ERISA case, however, and there is no administrative record.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

De novo review is the default standard for ERISA claims brought pursuant to 29 U.S.C. § 1132(a)(1)(B), "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Inasmuch as there is no evidence that the Plan, at any time, gave the plan administrator discretion to act, the Court will apply the *de novo* standard of review to the pending cross motions for summary judgment.

### B. *Proper Defendant*

Most contentious is the issue of whether YSL Beaute may be held liable for an obligation of a Plan that has been terminated and no longer exists. YSL Beaute, in essence, contends that Preite may only recover benefits under Section 1132(a)(1)(B) exclusively from the Plan itself, and that since the Plan is terminated, Preite has no source of recovery. While not so explicitly stated, this argument addresses whether YSL Beaute is the proper defendant to Preite's claim for benefits from the Plan.

Based upon YSL Beaute's counsel's concessions at oral argument, there is no dispute that 1) Yves Saint Laurent Parfums Corporation, successor to original Plan administrator Charles of the Ritz Group, Ltd., was the Plan sponsor and administrator at the time of termination of the Plan on August 9, 1988, *(see also* Docs.11-2 at 8; 18-2 at 2, ¶ ¶ 2,3; 45 at 2); and 2) YSL Beaute, Inc. is the corporate successor to Yves Saint Laurent Parfums Corporation.

Nevertheless, YSL Beaute argues that it is not liable because

*7 [a]fter the assets of the Plan had been distributed in 1988, the Plan ceased to exist-there was no Plan and no Plan sponsor or administrator. Therefore, any entity acquiring an interest in the former Plan sponsor, Yves Saint Laurent Parfums Corp., after 1988 could not be a successor Plan sponsor, because Yves Saint Laurent Parfums Corp., when it was acquired, was not the Plan sponsor."

(Doc. 45 at 2.)YSL [Beaute] never exercised any authority over the Charles of the Ritz Group Plan, and never made any determination as to payment of Plan benefits. YSL [Beaute] has never had custody or control over Plan funds, which were disbursed in 1988.

(Doc. 45 at 4.)

"[T]he relief provided in an action to recover benefits under ERISA is equitable, not legal[;] ... the relief consists of an order directing a person or entity having the necessary authority under the benefit plan to pay the participant the benefit that he seeks." *Hunt,* 119 F.3d at 906-07. Equitable relief includes recovery of policy benefits which a participant was wrongly denied. *Anderson v. Unum Life Ins. Co. of America,* 414 F.Supp.2d 1079, 1108 (M.D.Ala.2006) (citing *Hunt,* 119 F.3d at 907). Unless an entity has the authority under the plan to effect payment, it cannot provide the relief sought under Section 1132(a)(1)(B). *Hunt,* 119 F.2d at 908. "[A]n order enjoining the payment of benefits from an ERISA plan must issue against a party capable of providing the relief requested." *Id.* at 908.

Section 1132(a)(1)(B) confers the right to sue the plan administrator for recovery of benefits. *See Hamilton v. Allen-Bradley Co.,* 244 F.3d 819, 824 (11th Cir.2001). "The proper party defendant in an action for ERISA benefits is the party that controls the administration of the plan," which may include the employer or the plan sponsor. *Hoover v. Bank of America Corp.,* 286 F.Supp.2d 1326, 1337 (M.D.Fla.2003), aff'd, 127 Fed. Appx. 470, 2005 WL 80957 (11th Cir.2005) (citing *Garren v. John Hancock Mutual Life Ins. Co.,* 114 F.3d 186, 187 (11th Cir.1997(holding that employer was proper defendant in ERISA claim when it acted as plan administrator).[FN10]

> [FN10.](underline) The term "fiduciary" as used in the context of ERISA, is defined " 'in functional terms of control and authority over the plan.' " *Hunt v. Hawthorne Assocs., Inc.,* 119 F.3d 888, 892 n. 2 (11th Cir.1997).

In *Musmeci v. Schwegmann Giant Super Markets, Inc.,* 332 F.3d 339 (5th Cir.2003), the Fifth Circuit held that an employer, as plan *sponsor,* could be named as defendant and liable for benefits in a Section 1132(a)(1)(B) action for benefits. 332 F.2d at 349-50. Noting that while the language of 29 U.S.C. § 1132(d)(2) [FN11] suggests that the plan is the only proper party defendant, 332 F.3d at 349, courts have expanded the provisions of section 1132 to permit recovery against employers, when it was the employer's decision to deny benefits, and when the employer is the plan administrator or sponsor. *Musmeci,* 332 F.3d at 349-50. The court reasoned that the plan sponsor could be named as a defendant because under ERISA, the term "administrator"

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

means the " 'plan sponsor' " " 'if an administrator is not so designated,' " and " 'plan sponsor' " means " 'the employer in the case of an employee benefit plan established or maintained by a single employer.' " *Musmeci, 332 F.3d at 349 n. 6* (quoting 29 U.S.C. § § 1002(16)(A) and (B)(i)). Where there was no instrument designating a plan administrator, then the "plan sponsor" becomes the "plan administrator" under Section 1002(16)(A). *Musmeci, 332 F.3d at 349 n. 6.* Furthermore, in *Musmeci,* the employer named indisputably denied the benefits sought.

> FN11. 29 U.S.C. § 1132(d)(2) provides: Any money judgment under this subchapter against an employee benefit plan shall be enforceable only against the plan as an entity and shall not be enforceable against any other person unless liability against such person is established in his individual capacity under this subchapter.

*8 In the ERISA context, a successor corporation to an administrator of a plan "steps into the shoes" of its predecessor, acquiring all of the powers conferred by the plan, including the discretionary authority to make benefits decisions. See *Giannone v. Metropolitan Life Ins. Co., 311 F.Supp.2d 168, 175 (D.Mass.2004).* Thus, a participants' claims for retirement medical benefits under ERISA, against a subsequent employer, would be treated as a claim against the plan administrator or trustee and not dismissed for failure to name proper party, in light of employees' allegations that the subsequent business assumed obligations to contribute to retirement plan it took over from the predecessor, and is liable as successor. *Bish v. Aquarion Services Co., 289 F.Supp.2d 134, 146 (D.Conn.2003).* A subsequent business may be liable in an ERISA civil enforcement action under Section 1132(a)(1)(B) just as ERISA recognizes successor liability in related contexts. *Bish, 289 F.Supp.2d at 146.* Cf. *Risteen v. Youth For Understanding, Inc., 245 F.Supp.2d 1 (D.D.C.2002)* (successor employer obligated to extend health insurance benefits to employee under ERISA).

The Third Circuit in *Teamsters Pension Trust Fund v. Littlejohn, 155 F.3d 206 (3d Cir.1998),* in holding that a surviving post-merger union was liable for unpaid pension contributions, determined that successor liability under ERISA was governed by federal common law, "developed with ERISA's policy goals in mind ... to protect plan participants and their beneficiaries." 155 F.3d at 208 (citing 29

U.S.C. § 1001(b)). Transferring the debts and obligations of the predecessor to the surviving entity "will further ERISA's policy goal of protecting employee pension plan participants and their beneficiaries." *Littlejohn, 155 F.3d at 210.*

That the Plan is "terminated" does not terminate Plan obligations. For example, " 'even after plan participants and beneficiaries have received their actuarially vested benefits from the plan, the plan should be viewed as continuing to exist for the purpose of distributing the equitably vested benefits.' " *Waller v. Blue Cross of California, 32 F.3d 1337, 1339 (9th Cir.1994)* (citation omitted) (participants of terminated plan had standing to seek equitable remedy of constructive trust against terminated plan, as opposed to a legal remedy).[FN12]

> FN12. The Court was unable to locate any additional case law for the proposition that the termination of a Plan does not extinguish the right of a participant to bring a claim for benefits. The parties, even upon the Court's express invitation, did not provide the Court with any further assistance.

This is a case in equity. The ERISA statutory framework was created by Congress "to protect interstate commerce and the interests of the participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to Federal courts." 29 U.S.C. § 1001(b).

Given this statutory imperative and the cited case law, the obligation of the Plan sponsor to provide benefits which are due and owing survives the termination of the Plan. Put another way, if the Plan sponsor fails to properly distribute or account for all benefits owed before terminating the Plan, the Plan sponsor or administrator may be liable for the payment of those benefits. For this reason, contrary to YSL Beaute's assertion (Doc. 45 at 2), Yves Saint Laurant Parfums Corp., the Plan administrator and sponsor at the time the Plan was terminated, remains liable for unpaid benefits. Because YSL Beaute is indisputably the successor in interest to Yves Saint Laurant Parfums Corp., it now is liable to provide those benefits, upon proof that they are owing.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## C. YSL Beaute, Inc.'s Remaining Procedural Defenses

### 1. Standing

*9 YSL Beaute argues that Preite lacks standing to bring this claim for benefits "because he is not currently a participant or beneficiary of an employee welfare plan." (Doc. 36 at 3.) YSL Beaute does acknowledge, however, that Preite "was a participant in the employee pension plan while he was employed by Charles of the Ritz," (Doc. 43 at 2, ¶ 2), but based upon the "inference" that all funds were distributed from the Plan in 1988, including Preite's lump sum check, Preite is no longer a participant with standing. (Docs. 43 at 4; 45 at 5.)

ERISA's civil enforcement section permits two categories of individuals to sue for benefits under an ERISA plan-plan participants and plan beneficiaries. 29 U.S.C. § 1132(a). See *Engelhardt v. Paul Revere Life Ins. Co.*, 139 F.3d 1346, 1351 (11th Cir.1998). A "participant" includes any employee or former employee "who is or may become eligible to receive a benefit of any type from an employee benefit plan...." 29 U.S.C. § 1002(7). See *Firestone Tire and Rubber Co.*, 489 U.S. at 118 (" 'all employees in covered employment and former employees with a colorable claim to vested benefits "may become eligible ...").

There is no dispute that Preite was a "participant" under the Plan. Further, it is undisputed in the record evidence that Preite never received his pension benefits. Thus, he has a claim to vested benefits, and has **standing** to bring this **ERISA** claim.

### 2. Statute of Limitations [FN13]

> FN13. The doctrine of laches does not apply to ERISA actions. *Herman v. South Carolina National Bank*, 140 F.3d 1413, 1427 (11th Cir.1998) (district court erred extending laches exception to ERISA action); *Hoover*, 286 F.Supp.2d at 1333 n. 9 (no legal authority to support defendant's claim of laches). YSL Beaute, Inc. has abandoned its defense of laches.

Employee benefits claims accrue when participants become aware of the facts necessary to make their claims, such as when their application for benefits is denied. *Burks v. American Cast Iron Pipe Co.*, 212 F.2d 1333, 1336 (11th Cir.2000). "A cause of action accrues when the events upon which it is based occur, but in the context of an ERISA claim, a cause of action does not become an enforceable demand until a claim is denied." *Hoover*, 286 F.Supp.2d at 1333 (citing *Paris v. Profit Sharing Plan for Employees of Howard B. Wolf, Inc.*, 637 F.2d 357, 361 (5th Cir.1981)).[FN14]

> FN14. In *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir.1981), the Eleventh Circuit adopted as binding precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

YSL Beaute contends that Preite was "on notice in 1988 that he had not and would not receive a lump-sum distribution he requested," (Doc. 45 at 8), triggering the statute of limitations.

There is no evidence Preite filed a formal application for benefits in 1988 through 1990, as defendant suggests, see *Hoover*, 286 F.Supp.2d at 1334, and no evidence that the Plan clearly denied or repudiated any request. The letter from Gucci America, Inc. to Preite, dated October 28, 2004, was the first clear indication of an intent by any entity with responsibility to deny benefits vis a vis the Plan. (Doc. 11-2 at 8.) [FN15] Therefore, this suit, filed January 31, 2005, was well within the applicable limitations period.

> FN15. YSL Beaute formally denied Preite's claim on February 16, 2006, when it answered Preite's Second Amended Complaint. (Doc. 36.)

### 3. Exhaustion of Administrative Remedies

ERISA requires every employee benefit plan to "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133(2). "[P]laintiffs in ERISA actions must exhaust available administrative remedies before suing in federal court." *Counts v. American General Life & Accident Ins. Co.*, 111 F.3d 105, 108 (11th Cir.1997). However, the exhaustion requirement may be excused "when resort to administrative remedies

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

would be futile or the remedy inadequate," *Counts, 111 F.3d at 108,* or where a claimant is denied "meaningful access" to the administrative review scheme in place. *Perrino v. Southern Bell Telephone & Telegraph Co.,* 209 F.3d 1309, 1315-16 (11th Cir.2000).

*10 YSL Beaute argues that because Preite did not pursue any administrative remedy when he did not receive the lump-sum distribution he requested in 1988, he has failed to exhaust his administrative remedies. (Docs. 43 at 10; 45 at 6.)

This defense fails because there is no evidence that 1) Preite's claim for benefits was denied in 1988; 2) the Plan followed the proper procedures in denying Preite's claim in 1988; and 3) the Plan ever complied with the notification requirements by providing Preite with a description of the Plan's review procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of ERISA following an adverse benefit determination. *See Hall v. Tyco Int'l Ltd.,* 223 F.R.D. 219, 238 (M.D.N.C.2004); 29 C.F.R. § 2560.503-1(g)(1).[FN16]

> FN16. Nor does it appear the Plan administrator in 1988 complied with the notice of plan termination requirements. 29 U.S.C. § 1341(b)(2)(B). "This notice must specify the amount of such person's benefit commitments as well as the data used to determine the benefit, such as length of service, age, wages, assumptions used (including mortality and interest rate assumptions), and any other information required by the PBGC [Pension Benefit Guaranty Corp.]." *Aldridge v. Lily-Tulip, Inc. Salary Retirement Plan Benefits Comm.,* 40 F.3d 1202, 1209 (11th Cir.1994). This notification was required by statute in 1988. *See Payonk v. HMW Industries, Inc.,* 883 F.2d 221, 229-230 (3d Cir.1989).

YSL Beaute's remaining defenses, estoppel and venue (Doc. 36 at 4), appear to have been abandoned, and are without merit.

### D. *The Merits*

The following evidence is undisputed in the record: (1) Preite was entitled to receive a monthly retirement benefit of $505.70 from the Charles of the Ritz Group, Ltd. Pension Plan (also referred to as the

Squibb Corporation Pension Plan) commencing the month after his 65th birthday on May 30, 2004 (Docs. 11-2 at 6; 11-4 at 20, 21); (2) the Plan was terminated on August 9, 1988 (Docs. 11-2 at 8, 11; 11-4 at 22, 23); and 3) Preite has never been paid any pension benefits by the Charles of the Ritz Group, Ltd. Pension Plan, either as a lump sum payment, or as a monthly benefit, nor has he ever received an annuity contract. (Docs. 11-2 at 3, ¶ 10; 11-3 at 23.)

Also undisputed is that Yves Saint Laurent Parfums Corporation was the administrator and sponsor of the Charles of the Ritz Group, Ltd. Pension Plan when the Plan was terminated in 1988, and that YSL Beaute, Inc. is the corporate successor of the Yves Saint Laurent Parfums Corporation.

Acknowledging that it has no records and can find none,[FN17] YSL Beaute is left only to "infer" that the terminated Plan's assets were properly distributed in lump sum payments or used to purchase annuity contracts for all eligible participants and beneficiaries in 1988, including Preite, (*see* Doc. 45 at 4-6), and to speculate that "[i]f a lump sum check had been issued, as [Preite] had requested, it could have been misdirected in the mail and never cashed, or the check could have been lost or stolen." (Doc. 45 at 5-6.) Preite's uncontroverted and corroborated testimony that he has never received any retirement benefit from the Charles of the Ritz Group, Ltd. Pension Plan, coupled with the concessions of YSL Beaute, leave no issue of fact that YSL Beaute as successor to the Plan administrator and sponsor Yves Saint Laurent Parfums Corp., has the responsibility and authority to effect payment and is capable of providing the relief requested, which Preite is entitled to receive.

> FN17. The Court inquired at oral argument whether the government maintains pension records which might be relevant, but was told such records regarding this Plan are no longer available.

For the foregoing reasons, and upon due consideration, it is hereby

*11 ORDERED:

1. Plaintiff's Second Amended Motion For Summary Judgment Against Defendant, YSL Beaute, Inc. (Doc. 39) is **GRANTED.**

2. Defendant YSL Beaute, Inc.'s Motion For

Summary Final Judgment (Doc. 43) is **DENIED.**

3. All remaining pending motions (Docs.10, 12, 20, 32) are **DENIED AS MOOT.**

4. Plaintiff Robert N. Preite shall file with the Court any motion seeking attorneys' fees and costs, if so entitled, no later than **October 15, 2006.**

5. The Court will enter Judgment in favor of plaintiff Robert N. Preite, and against defendant YSL Beaute, Inc., enjoining YSL Beaute, Inc. to pay retirement benefits to Robert N. Preite which he is entitled to receive under the Charles of the Ritz Group, Ltd. Pension Plan, in the amount of $505.70 a month, commencing as of June 1, 2004 and going forward, along with prejudgment interest. Judgment will be withheld until the Court determines any remaining issues of fees and costs. Counsel for plaintiff should confer with counsel for defendant and submit a proposed judgment no later than **October 15, 2006.**

DONE AND ORDERED at Jacksonville, Florida, this 19th day of September, 2006.

M.D.Fla.,2006.
Preite v. Charles of the Ritz Group, Ltd. Pension Plan
Slip Copy, 2006 WL 2691534 (M.D.Fla.)

Briefs and Other Related Documents (Back to top)

• 2006 WL 1435377 (Trial Motion, Memorandum and Affidavit) Defendant YSL Beaute, Inc.'s Memorandum in Opposition to Plaintiff's Motion for Summary Final Judgment (Apr. 20, 2006) Original Image of this Document (PDF)
• 2006 WL 1435376 (Trial Motion, Memorandum and Affidavit) Plaintiff's Opposition to the Motion for Summary Judgment of Defendant, YSL Beaute, Inc. (Apr. 12, 2006) Original Image of this Document (PDF)
• 2006 WL 1047900 (Trial Motion, Memorandum and Affidavit) Defendant YSL Beaute, Inc.'s Motion for Summary Final Judgment (Mar. 28, 2006) Original Image of this Document (PDF)
• 2006 WL 707492 (Trial Motion, Memorandum and Affidavit) Plaintiff's Second Amended Motion for Summary Judgment against Defendant, YSL Beaute, Inc. (Feb. 28, 2006) Original Image of this Document (PDF)
• 2005 WL 3611976 (Trial Pleading) Amended Complaint (Nov. 15, 2005) Original Image of this Document (PDF)
• 2005 WL 3121738 () (Nov. 13, 2005)
• 2005 WL 3613618 (Trial Motion, Memorandum

and Affidavit) Defendant Gucci America, Inc.'s Memorandum in Opposition to Plaintiff's Motion for Summary Final Judgment (Nov. 3, 2005) Original Image of this Document (PDF)
• 2005 WL 2680509 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Motion for Summary Judgment against Defendant, Gucci America, Inc. (Sep. 30, 2005) Original Image of this Document (PDF)
• 3:05cv00106 (Docket) (Jan. 31, 2005)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.