# EXHIBIT A
NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF
PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

LEXSEE 2007 U.S. APP. LEXIS 18179

HOWARD GRADEN, individually and on behalf of all others similarly situated, Appellant v. CONEXANT SYSTEMS INC.; DWIGHT W. DECKER; ARMANDO GEDAY; ROBERT MCMULLAN; MICHAEL VISHNY; PLAN COMMITTEE MEMBERS; JOHN DOES 1-10 fictitious names; J. SCOTT BLOUIN; BALAKRISHNAN S. IYER; DENNIS E. O'REILLY; KERRY K. PETRY; BRADLEY W. YATES

No. 06-2337

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

2007 U.S. App. LEXIS 18179

April 19, 2007, Argued
July 31, 2007, Opinion Filed

**PRIOR HISTORY:** [*1]
Appeal from the United States District Court for the District of New Jersey. (D.C. Civil Action No. 05-cv-00695). District Judge: Honorable Stanley R. Chesler. *Graden v. Conexant Sys.*, 2006 U.S. Dist. LEXIS 16176 (D.N.J., Mar. 31, 2006)

**COUNSEL:** Robert Harwood, Esquire, Jeffrey M. Norton, Esquire (Argued), Wechsler Harwood, New York, NY; Lisa J. Rodriguez, Esquire, Trujillo Rodriguez & Richards LC, Haddonfield, NJ, Counsel for Appellant.

Richard A. Rosen, Equire, Robyn F. Tarnofsky, Esquire (Argued), Kerry L. Quinn, Esquire, Paul, Weiss, Rifkind, Wharton & Garrison LLP, New York, NY; Gregory B. Reilly, Esquire, Deborah A. Silodor, Esquire, Lowenstein Sandler, Roseland, NJ, Counsel for Appellees.

Jay E. Shushelsky, Esquire, Melvin R. Radowitz, Esquire, American Association of Retired Persons, Washington, DC, Howard M. Radzely, Solicitor of Labor, Timothy D. Hauser, Associate Solicitor, Karen Handorf, Esquire, Appellate and Special Litigation, Elizabeth Goldberg, Esquire (Argued), United States Department of Labor, Washington, DC, Counsel for Amicus-Appellant.

Jan S. Amundson, Esquire, National Association of Manufacturers, Washington, DC, Counsel for Amicus-Appellee.

**JUDGES:** Before: McKEE, AMBRO and MICHEL *, Circuit Judges.

* Honorable Paul R. Michel, Chief Judge, United States [*2] Court of Appeals for the Federal Circuit, sitting by designation.

**OPINION BY:** AMBRO

**OPINION**

OPINION OF THE COURT

AMBRO, Circuit Judge

We decide whether the Employee Retirement Income Security Act of 1974 ("ERISA"), *29 U.S.C. §§ 1001-1461*, gives an ostensibly cashed-out former employee the right to sue the administrator of his former employer's 401(k) plan for allegedly mismanaging plan assets and thus reducing his share of benefits. Because ERISA includes such a plaintiff in its definition of "participant," he has statutory standing to assert his claim.

**I. Facts and Procedural History**

Howard Graden was a Conexant employee until September 2002 and a participant in the Conexant Retirement Saving Plan until October 2004. Like most 401(k) plans, Conexant's is a "defined contribution" one in which participants and the employer contribute money into the participants' individual accounts. Participants elect to invest their money in various predetermined investment packages. Here, Graden directed his money into Conexant Stock Fund B, a package composed entirely of Conexant common stock.

Conexant develops semiconductor devices for broadband communications equipment, and its common stock trades on the NASDAQ. Graden's [*3] claim centers on the period between March and October 2004. On

March 5, 2004, Conexant's common stock closed at a 52-week high of $ 7.42 per share. By October 4, 2004 (when Graden voluntarily cashed out), it had plummeted to $ 1.70 per share. According to Graden, the March-to-October drop was the result of a risky and ultimately failed merger. Conexant, [1] he alleges, breached its fiduciary duties to him and other plan participants by (1) offering the stock fund as an investment option despite the fact that it was not (and was known not to be) a prudent investment, and (2) making false and misleading statements about the merger that caused him to invest in the fund.

> 1  The defendants include Conexant, its officers, and the individual members of the committee that administered the Conexant Plan. For ease of use, we refer to them collectively as "Conexant."

The District Court dismissed Graden's action for lack of statutory standing, ruling that he was not a "participant" for purposes of ERISA because he had already cashed out of the plan. Because statutory standing is an issue of subject matter jurisdiction, the Court stopped after concluding that it had none and did not consider Conexant's [*4] alternative argument that Graden failed to state a claim on which relief could be granted.

Graden appeals to us. [2] With him are two *amici curiae*: the Secretary of Labor and AARP. [3] Filing an *amicus* brief on Conexant's side is the National Association of Manufacturers.

> 2  We have appellate jurisdiction under *28 U.S.C. § 1291*. We review dismissals for lack of standing *de novo*, taking the facts alleged in the complaint as true. *Pa. Mines Corp. v. Holland, 197 F.3d 114, 119 n.2 (3d Cir. 1999)*.

> 3  Formerly known as the American Association of Retired Persons, AARP adopted its popular four-letter acronym as its official name in 1999. It thereby took the reference to retirement out of its name in recognition of the fact that nearly half of its members are still working.

## II. Statutory Standing

As noted, the question presented is one of statutory standing. There is no dispute about Article III or prudential standing. Though all are termed "standing," the differences between statutory, constitutional, and prudential standing are important. Constitutional and prudential standing are about, respectively, the constitutional power of a federal court to resolve a dispute and the wisdom of so doing. *See* [*5] *Presbytery of N.J. of the Orthodox Presbyterian Church v. Florio, 40 F.3d 1454, 1462 (3d Cir. 1994); Amato v. Wilentz, 952 F.2d 742, 748 (3d Cir. 1991)*. Statutory standing is simply statutory interpretation: the question it asks is whether Congress has accorded *this* injured plaintiff the right to sue the defendant to redress his injury. To answer the question, we employ the usual tools of statutory interpretation. We look first at the text of statute and then, if ambiguous, to other indicia of congressional intent such as the legislative history. *See In re Mehta, 310 F.3d 308, 311 (3d Cir. 2002)*.

Graden alleges that Conexant's mismanagement of plan assets caused a loss to the plan that ultimately harmed him and other plan participants. At the pleadings stage (where we accept Graden's allegations as true), this allegation clearly qualifies as a concrete injury traceable to Conexant and redressable by a court. *See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)*. Moreover, we see no prudential concerns that would prevent us from exercising jurisdiction.

It is undisputed that the Conexant plan is an employee benefit plan governed by ERISA. In addition, we assume for purposes [*6] of this appeal that the defendants are fiduciaries of the Conexant plan. Graden brought this action under *29 U.S.C. § 1132(a)(2)*, which accords various parties the right to sue ERISA plan fiduciaries for breaches of their fiduciary duties. *Section 1109(a)* provides the following remedies for such breaches:

> [(1)] mak[ing] good to such plan any losses to the plan resulting from each such breach, . . . [(2)] . . . restor[ing] to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and [(3)] . . . such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

As *§ 1132(a)(2)* addresses losses to ERISA plans resulting from fiduciary misconduct, the Supreme Court has held that suits under it are derivative in nature -- that is, while various parties are entitled to bring suit (participants, beneficiaries, [4] fiduciaries, and the Secretary of Labor), they do so on behalf of the plan itself. *Mass. Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 144, 105 S. Ct. 3085, 87 L. Ed. 2d 96 (1985); see also In re Schering-Plough Corp. ERISA Litigation, 420 F.3d 231, 241 (3d Cir. 2005)*. Consequently, the plan takes legal title to any [*7] recovery, which then inures to the benefit of its participants and beneficiaries.

> 4  In ERISA, "participant" and "beneficiary" are distinct terms of art. The former refers to an em-

ployee or former employee who takes part in his employer's plan. *29 U.S.C. § 1002(7)*. The latter is a person designated by a participant to recover benefits in the event of the participant's death. *29 U.S.C. § 1002(8)*. The terms can be confusing because, while ERISA is widely analogous to the common law of trusts, the terminology differs. At common law, everyone entitled to a beneficial interest in the principal or income of a trust is termed a "beneficiary." BLACK'S LAW DICTIONARY 165 (8th ed. 2004).

The analogy that comes to mind quickest is to shareholder derivative litigation, but the trust-law roots of *§ 1132(a)(2)* run far deeper. [5] When a common-law trustee commits a breach of trust that results in a loss, any beneficiary whose beneficial interests were affected may sue to compel the trustee to make good on the loss. *RESTATEMENT (SECOND) OF TRUSTS § 214 & cmt. b* (1959). When the trustee does so, he restores money to the trust for the benefit of the plaintiff/beneficiary. *See* AUSTIN W. SCOTT & WILLIAM [*8] F. FRATCHER, THE LAW OF TRUSTS § 214 (4th ed. 1988); P.V. BAKER & P. ST. J. LANGAN, SNELL'S EQUITY 284 (29th ed. 1990) (citing *Bartlett & Others v. Barcaly's Bank Tr. Co. Ltd.*, [1980] Ch. 514, 543); *cf.* UNIF. TR. CODE § 1002(a)(1) (measuring trustee liability by "the amount required to restore the value of the trust property and trust distributions to what they would have been had the breach not occurred"). Thus, *§ 1132(a)(2)* merely codifies for ERISA participants and beneficiaries a classic trust-law process for recovering trust losses through a suit on behalf of the trust. [6]

> 5  This is not surprising. As the Supreme Court noted in *Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 110, 109 S. Ct. 948, 103 L. Ed. 2d 80 (1989)*, "ERISA abounds with the language and terminology of trust law." Thus, we believe that the close analogy to suits on behalf of a common law trust is hardly accidental.

> 6  Conexant urges that we analogize *§ 1132(a)(2)* actions to shareholder derivative suits, where the contemporaneous ownership rule would prevent someone like Graden from having standing. The analogy is inapt. Corporate shareholders own an equity interest in the corporation; they do not own a right to any particular asset or stream [*9] of payments. Any benefit they receive from successfully prosecuting the corporation's suit is necessarily indirect, as any damages go into the coffers of the corporation. Those damages do not necessarily (or even typically) come back out to the shareholders as a direct payment. In the ERISA context, however, participants have a right to receive certain monetary benefits. Unlike in the corporate context, the loss to participants is direct, as any recovery made "on behalf of the plan" must be paid out to the injured participant in the form of augmented benefit payments.

Graden claims that he may bring suit as a current "participant" in the Conexant plan. [7] ERISA defines a participant as "any employee or former employee . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan." *29 U.S.C. § 1002(7)*. Applying this definition, the Supreme Court has held that the term covers a former employee with a colorable claim for "vested benefits." *Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 118, 109 S. Ct. 948, 103 L. Ed. 2d 80 (1989)* (quoting *Saladino v. I.L.G.W.U. Nat'l Ret. Fund, 754 F.2d 473, 476 (2d Cir. 1985))*. Graden's argument is that because Conexant's breaches improperly reduced [*10] the value of plan assets allocable to him, he is entitled to additional benefits that will become available once Conexant makes good the loss to the plan.

> 7  There is an open question in our Court as to when statutory standing must attach. *Leuthner v. Blue Cross & Blue Shield of Ne. Pa., 454 F.3d 120, 127 (3d Cir. 2006)* (declining to decide the issue with regard to a *§ 1132(a)(3)* claim for equitable relief). In *Daniels v. Thomas & Betts Corp., 263 F.3d 66, 78 (3d Cir. 2001)*, we held that, in the context of a *§ 1132(a)(1)(A)* suit (for failure to provide information), a person need only be a participant at the time of breach to have statutory standing. We expressly did not require that a person be a participant at the time of suit. *Id.* Because the relevant language of *§ 1132(a)(1)(A)* and *(a)(2)* are the same, one would expect the *Daniels* holding to apply here. Graden, however, did not make the argument in his brief; rather, his sole contention is that he is a participant now. Absent compelling circumstances not present here, failing to raise an argument in one's opening brief waives it. *Laborers' Int'l Union of N. Am. v. Foster Wheeler Corp., 26 F.3d 375, 398 (3d Cir. 1994)*. We therefore [*11] leave for another day the question of whether the *Daniels* holding applies to *§ 1132(a)(2)* actions.

To evaluate Graden's argument, we begin with the definition of "benefit." The term is not expressly defined in ERISA, so we look to its ordinary meaning. A relevant definition is a "payment or service provided for under an annuity, pension plan, or insurance policy." MERRIAM-WEBSTER'S ONLINE DICTIONARY, http://www.m-w.com/dictionary/benefit. Essentially, "benefits" are

simply the money to which a person is entitled under an ERISA plan. In this context, is what Graden seeks a benefit?

The Conexant plan is an "individual account plan." [8] See 29 U.S.C. § 1002(34). This means that a participant's vested benefits are the contents of his account: contributions (from both the participant and employer) plus investment gains minus investment losses and any allocable expenses. 29 U.S.C. § 1002(34). In addition, ERISA imposes fiduciary duties on plan administrators, 29 U.S.C. § 1104, so part of a participant's entitlement is the value of his account unencumbered by any fiduciary impropriety. In other words, ERISA entitles individual-account-plan participants not only to what *is* in their accounts, [*12] but also to what *should be* there given the terms of the plan and ERISA's fiduciary obligations.

> 8  The term "defined contribution plan" is interchangeable. 29 U.S.C. § 1002(34).

From this, it is not difficult to conclude that Graden has standing as a plan participant. As an account-holder in the Conexant plan, he was entitled to the net value of his account as it should have been in the absence of any fiduciary mismanagement. Because he colorably contends that he has yet to receive that amount, he presses a claim for the remainder of his monetary entitlement under his plan and ERISA -- a claim for benefits. That he presses it through § 1132(a)(2) is of no moment (and, indeed, is sensible here). Rather than suing the plan itself under § 1132(a)(1)(B), [9] which would likely be fruitless, as the very premise of the suit is that the plan itself improperly lost money, he sued the person liable to make good on the loss. If successful, this suit will restore assets to the plan that are allocable to Graden's account, and he will then get a distribution from that restored account. Far from creating problems, this is exactly the process that § 1132(a)(2) -- borrowing from trust law -- contemplates. [*13]

> 9  Section 1132(a)(1)(B) allows participants to sue ERISA plans for benefits due them.

Our holding accords with the reasoning of our sister courts of appeals on this issue. In *Harzewski v. Guidant Corp.*, F.3d, 2007 U.S. App. LEXIS 13011, 2007 WL 1598097 (7th Cir. 2007) (Posner, J.), the Court of Appeals for the Seventh Circuit decided this very issue the same way. Explaining whether stock losses like Graden's are "benefits," it stated:

> Benefits are benefits; in a defined-contribution plan they are the value of the retirement account when the employee retires, and a breach of fiduciary duty that diminishes that value gives rise to a claim for benefits measured by the difference between what the retirement account was worth when the employee retired and cashed it out and what it would have been worth then had it not been for the breach of fiduciary duty.

2007 U.S. App. LEXIS 13011, at *6.

In *Coan v. Kaufman*, 457 F.3d 250, 255-56 (2d Cir. 2006), the Second Circuit Court of Appeals noted that various courts have held that former employees who accept lump-sum distributions surrender their participant status and the right to sue for breaches of fiduciary duty. The Court recognized, however, that these holdings, while sensible in the context of [*14] defined benefit plans, [10] are more of a problem in defined contribution plans:

> [W]hether acceptance of a lump-sum payment terminates a person's status as a participant may depend on whether the plan is a "defined benefits" or a "defined contribution" plan. Coan, unlike the plaintiffs discussed in other circuits' case law, participated in a 401(k) plan, which is an "individual account" or "defined contribution" plan under ERISA. See 29 U.S.C. § 1002(34). According to ERISA, an individual's "accrued benefit[s]" under such a plan are simply "the balance of the individual's account." Id. § 1002(23)(B). Arguably, therefore, Coan's claim that the lump-sum distribution of her account balance would have been greater absent the defendants' breach of fiduciary duty is a claim "for benefits" which, if "colorable," means that she "may become eligible for benefits" and thus qualifies as a "participant" under ERISA.

Id. at 255-56. The Court ultimately did not decide the question, but its analysis is compelling.

> 10  In a defined benefit plan, the amount of a participant's benefits are typically determined by a formula in the plan instrument. See *Chait v. Bernstein*, 835 F.2d 1017, 1019 n.1 (3d Cir. 1987). [*15] Thus, once a participant takes a lump sum distribution of the correct amount, he has all of his vested benefits and may no longer sue for any alleged fiduciary breaches. See *Kuntz v. Reese*, 785 F.2d 1410, 1411 (9th Cir. 1986) (per curiam). If, however, the lump sum were

improperly calculated or otherwise deficient, then the participant would retain a claim for benefits and thus have standing to sue. *See Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan, 883 F.2d 345, 349-50 (5th Cir. 1989)*.

Similarly, in *Crawford v. Lamantia, 34 F.3d 28, 33 (1st Cir. 1994)*, the First Circuit Court of Appeals adopted the general rule that former employees with claims for additional benefits have standing, but ruled that the particular plaintiff in that case lacked standing because he "failed to show that defendants' alleged breach of fiduciary duty had a direct and inevitable effect on *his* benefits." In our case, on the other hand, it is clear that the alleged breach had an effect on Graden's benefits because their value dropped with the value of Conexant's common stock.

### III. Additional Arguments

While we believe that our reasoning in Part II is sufficient to resolve this case, we continue [*16] to respond more fully to Conexant's and its *amicus*'s arguments. Specifically, Conexant contends that Graden's claim is better characterized as one for damages rather than benefits. Along those same lines, it argues that because Graden cannot assert a *§ 1132(a)(1)(B)* claim, he cannot make a claim for benefits. In addition, Graden's alleged loss is, it claims, too speculative or difficult to ascertain to be characterized as benefits. Finally, it argues that public policy considerations counsel in favor of its interpretation. We respond to each argument in turn.

The Fifth and Ninth Circuit Courts of Appeals decided the first important cases in this area, and they both drew a line between claims for "benefits" and claims for "damages." *Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan, 883 F.2d 345, 349-50 (5th Cir. 1989); Kuntz v. Reese, 785 F.2d 1410, 1411 (9th Cir. 1986) (per curiam)*. Having a colorable claim for vested benefits gives a person participant standing, even if his employer has ostensibly cashed him out of the plan. *Sommers, 883 F.2d at 350*. In those cases, the dispute is over whether the employee was properly accorded all of the benefits due him; hence, for [*17] standing purposes all the employee needs is a colorable claim that he is entitled to additional benefits under the plan. The *Sommers* Court, relying on its decision in *Yancy v. Am. Petrofina, Inc., 768 F.2d 707 (5th Cir. 1985)*, contrasted having a claim for benefits with a claim for damages. *Sommers, 883 F.2d at 349-50*.

However, relying on a benefits/damages dichotomy is unsatisfying:

> The distinction between "benefits" and "damages" is [*18] not clear. This is in part attributable to use of words with overlapping meaning to describe mutually exclusive categories. The statute simply grants rights of recovery only to a distinct and limited type of claim which itself is no more than a suit for damages, albeit personally suffered because participants should have been paid under the plan but were not. Clearly, a plaintiff alleging that his benefits were wrongly computed has a claim for vested benefits. Payment of the sum sought by such a plaintiff will not increase payments due him. On the other hand, a plaintiff who seeks the recovery for the trust of an unascertainable amount, with no demonstration that the recovery will directly effect payment to him, would state a claim for damages, not benefits.

*Id*. In *Sommers*, the plaintiffs were former employees cashed out of an ERISA plan when the trustees sold the assets of the plan (shares of the employer's common stock) for cash in a transaction incident to a merger. The plaintiffs sued under *§ 1132(a)(2)*, alleging that the trustees breached their fiduciary duties by agreeing to sell the shares for less than fair market value. Like Graden, they sued to compel the trustees to make [*19] good on the loss caused by their breach. The Court concluded that the employees were participants with standing because they "ha[d] a claim for an ascertainable amount allegedly owed them at the time they received their lump sum." *Id. at 350*.

The Ninth Circuit Court has also clarified that former employees are participants with standing when they sue for disgorgement of a plan fiduciary's ill-gotten profits. *Amalgamated Clothing & Textile Workers Union v. Murdock, 861 F.2d 1406, 1411 (9th Cir. 1988)*. The Court held that such profits are vested benefits because under ERISA (and the common law of trusts) the plan has a legal interest in them. Thus, ERISA allows a district court to order disgorging those profits and placing a constructive trust on them for the ultimate benefit of the plan participants. As the Court noted, disgorgement and the imposition of a constructive trust are both classic equitable remedies, *id*.; hence, they fit easily in ERISA's remedial scheme.

While we believe that *Sommers* was rightly decided, we cannot endorse the distinction it makes between benefits and damages." Per *Sommers*, suits for miscalculated benefits seek monetary, compensatory relief which is, in common [*20] legal parlance, "damages." *883 F.2d at 349*. Yet it is beyond dispute that such relief is at the same time properly characterized as "benefits" be-

cause it merely gives the participant what he is entitled to receive under the plan. With this confusing overlap, the dichotomy breaks down. Moreover, the dichotomy appears nowhere in the statute, nor is it necessary to explain the outcomes reached by this line of jurisprudence. In *Yancy*, for example, the plaintiff sought to recover benefits that he argued would have vested had he not retired early. *768 F.2d at 708-09*. Yancy claimed that he retired early because the plan administrator intended illegally to reduce future benefits. *Id. at 708*. The Court denied Yancy standing, but its reasoning, which implied that he was not seeking "benefits," needs clarification because what Yancy sought were in fact plan payments. The problem with Yancy's claim was that he sought benefits for which he could never become eligible because his voluntary retirement occurred before those benefits came into existence. [12]

> 11  The Court of Appeals for the Seventh Circuit has also noted that though *Sommers* reached the correct result, its benefit/damages distinction [*21] is unpersuasive. *Harzewski, 2007 U.S. App. LEXIS 13011, 2007 WL 1598097, at *6*.
>
> 12  A fuller analysis of a similar situation appears in our opinion in *Miller v. Rite Aid Corp., 334 F.3d 335 (3d Cir. 2003)*. There we held that if a plaintiff seeks plan payments for which he did not qualify under the terms of the plan, then his claim, though for benefits, is not colorable, and so he lacks standing. *Id. at 343*.

In reaching its decision, the *Sommers* Court did emphasize what the plaintiff was entitled on the day of his retirement. That, we believe, is the question that properly governs these cases. If the plaintiff colorably claims that under the plan and ERISA he was entitled to more than he received on the day he cashed out, then he presses a claim for vested benefits and must be accorded participant standing. If, on the other hand, he claims that his benefits were all he was entitled to under the plan the day they were paid but that he should yet recover something more, then he presses a claim for something other than vested benefits and is not entitled to standing. [13]

> 13  Of use might be a dichotomy between suits for benefits and suits for *extracontractual* damages. This distinction was prominent in the Supreme Court's [*22] *Massachusetts Mutual* analysis because it is a sensible way of separating what the plan and ERISA actually entitle the participant and claims for compensatory or punitive relief that, though possibly cognizable under some provision of ERISA or state law, are not actually part of the ERISA entitlement. *See 473 U.S. at 138, 144*.

Perhaps a stronger reason not to rely on the benefits/damages dichotomy is the extent to which it causes confusion with the damages/equitable relief dichotomy that is of great import in § 1132(a)(3) claims. Unlike § 1132(a)(2), which specifically imposes personal, monetary liability on trustees for breaches of fiduciary duties, § 1132(a)(3) provides that courts may "enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or [grant] other appropriate equitable relief." *29 U.S.C. § 1132(a)(3)* (internal subparagraph divisions omitted). To determine what qualifies as "equitable" relief, the Supreme Court has drawn a bright-line distinction between traditional equitable relief (*e.g.*, injunction, equitable lien, constructive trust), which is available under § 1132(a)(3), and traditional legal relief (*e.g.*, money damages), [*23] which is not. *Mertens v. Hewitt Assocs., 508 U.S. 248, 256-57, 113 S. Ct. 2063, 124 L. Ed. 2d 161 (1993)*; accord *Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 215, 122 S. Ct. 708, 151 L. Ed. 2d 635 (2002)*. The argument to which the Court was responding contended that *any* relief that a court of equity would award in a breach of trust action should qualify as "equitable" for § 1132(a)(3) purposes. *Mertens, 508 U.S. at 255*. Because courts of equity had exclusive jurisdiction over breach of trust actions, all of the relief available -- even relief similar in kind to money damages -- was awarded in equity. The Court held that to construe the term "equitable" in that manner would render it superfluous. *Id. at 257*.

Much of Conexant's briefing tries to convince us that what Graden seeks are damages under the *Mertens / Great-West* formulation. The problem is that whether the relief Graden seeks is properly characterized as legal or equitable, which is the question to which *Mertens* and *Great-West* speak, is not relevant here. Unlike § 1132(a)(3), nothing in § 1132(a)(2) limits the relief available to equitable relief. Similarly, nothing in the definition of "participant" requires Graden to seek "equitable" relief.

Conexant also relies on the supposed [*24] unavailability of § 1132(a)(1)(B) relief. That subparagraph allows a participant "to recover benefits due to him under the terms of his plan." *29 U.S.C. § 1132(a)(1)(B)*. Conexant argues that Graden could not bring such a claim, and that he, therefore, lacks standing. We disagree. One of the key differences between § 1132(a)(1)(B) and (a)(2) is who is a proper defendant. In a § 1132(a)(1)(B) claim, the defendant is the plan itself (or plan administrators in their official capacities only). *See Chapman v. ChoiceCare Long Island Term Disability Plan, 288 F.3d 506, 509-10 (2d Cir. 2002)* (citations omitted). On the other hand, the defendant in a § 1132(a)(2) claim is a plan fiduciary in its individual capacity. *See In re Schering-Plough, 420 F.3d 235*. Under the Conexant plan,

Graden is entitled to the corpus and proceeds of his prudently invested contributions. We believe that he could demand a full benefit payment from the plan itself under § 1132(a)(1)(B). He, however, had good reason for not bringing such an action. In individual account plans, all of the plan's money is allocable to plan participants. *29 U.S.C. § 1002(34)*. Using a § 1132(a)(1)(B) suit to force the plan to use money [*25] already allocated to others' accounts to make good on Graden's loss would present a host of difficulties with which few sensible plaintiffs would want to contend. Indeed, it may be that ERISA's fiduciary obligations prevent plans from paying judgments out of funds allocable to other participants, in which case the plan, *though liable*, would be judgment proof. Thus, for most plaintiffs the sensible route is to use § 1132(a)(2) to get the money in the first instance from a solvent party liable to make good on the loss, not from the plan itself. This does not, however, change the underlying nature of Graden's claim as one for benefits; it merely changes his mechanism for recovery.

Relying on some language in *Sommers*, Conexant also argues that Graden's claim is too speculative or difficult to calculate to be a claim for benefits. Indeed, it is true that the *Sommers* Court opined that someone asserting a claim for an "unascertainable amount" would not state a claim for benefits. *883 F.2d at 350*. This portion of *Sommers*, however, is incorrect. As Judge Posner put it in *Harzewski*, "there is nothing in ERISA to suggest that a benefit must be a liquidated amount in order to be recoverable." 20077 [*26] WL 1598097, at *6.

Moreover, here the amount is hardly unascertainable. Rather, the measure of damages is the amount that affected accounts would have earned if prudently invested.

> In determining what the Plan would have earned had the funds been available for other Plan purposes, the district court should presume that the funds would have been treated like other funds being invested during the same period in proper transactions. Where several alternative investment strategies were equally plausible, the court should presume that the funds would have been used in the most profitable of these.

*Donovan v. Bierwirth*, 754 F.2d 1049, 1056 (2d Cir. 1985). Thus, if Graden succeeds on the merits, the District Court will look to the prudent investment alternatives that the Conexant plan offered during this period to determine what the Conexant Stock Fund B investors would have earned but for Conexant's breach.

Following the analysis in Part II, Graden's status as a participant flows naturally from the text of ERISA. Still, policy concerns strengthen our conviction that we have properly interpreted the statute. It is worth considering the ramifications of holding that former employees in Graden's [*27] situation are not participants. Such a holding would allow an employer who had mismanaged individual account plan assets to avoid liability by cashing out the participants. By paying them the then-stated balance of their accounts when cashed out, the employer would, under Conexant's logic, pay out all of the participants' "benefits," thereby ensuring that none would have standing to sue for its breach of duty. Conexant's protestations notwithstanding, we find it hard to believe that Congress intended such a result. Indeed, we have held that ERISA's legislative history indicates that its standing requirements should be construed broadly to allow employees to enforce their rights. *Leuthner*, 454 F.3d at 128 (citing S. REP. NO. 93-127, at 3 (1974), *reprinted in* 1974 U.S.C.C.A.N. 4639, 4871).

We pose another hypothetical: assume that an active participant in the Conexant plan brings a § 1132(a)(2) action on behalf of the plan and successfully recovers the loss caused by Conexant's breach (again, assuming, without deciding, there is such a breach). The loss to the plan would necessarily include losses suffered by former employees who were invested in the Conexant Stock Fund, and the amount [*28] of recovery would have to make good on those losses. Otherwise, the plan would not recover the whole of its loss, which, according to plain text of § 1132(a)(2), is its right. Thus, the plan would recover money that could only properly be allocated to people no longer in the plan. This would be a serious problem for an individual account plan because all of the plan's money is allocated to individual accounts; thus if the plan recovers money allocable to individuals who no longer have accounts and cannot get standing for the imposition of a constructive trust in their favor, it is unclear what the plan would be entitled to do with the money. Perhaps the plan would try to allocate it to current account-holders *pro rata*, but if we are to take the trust-law analogy seriously, then the recovered funds must go to the people actually sustaining losses. [14] The sensible holding, therefore, is that former employees whose benefits would be made whole by a restoration of losses to the plan are participants with standing to sue on behalf of the plan -- and take part in any recovery.

---

14  As we explained in Part II, in trust-law derivative actions, only those whose beneficial interests were harmed [*29] may sue on behalf of the trust, for it is they who share in any recovery.

---

*Amicus* National Association of Manufacturers urges that we affirm because of the ramifications of labeling

someone like Graden a "participant." The specific concern is that it will require employers to make costly disclosures to people who, as far as the employer is concerned, are cashed out. This worry overstates, we believe, the concern. First, the inclusion of ostensibly cashed-out employees in the category of participants derives from the text of the definition and from *Firestone, 489 U.S. at 103*, not from our case. It was *Firestone* that held that anyone asserting a colorable claim for benefits is a participant. *Id.* In this case, we merely clarify that a benefit encompasses both miscalculations of a person's entitlement and reductions traceable to fiduciary malfeasance.

Second, we cannot imagine holding a plan fiduciary liable for failing to provide information to someone who, as far as the fiduciary knows, is cashed out. Informational obligations may reattach once the fiduciary is on notice that the person is asserting a claim for benefits, *see Daniels, 263 F.3d at 78-79*, but until then, it seems within [*30] the fiduciary's discretion to send reports only those participants known to the fiduciary to consider themselves as such.

### IV. Conclusion

In sum, we hold that, when determining participant standing under ERISA, the relevant inquiry is whether the plaintiff alleges that his benefit payment was deficient on the day it was paid under the terms of the plan and the statute. If so, he states a claim for benefits, which, if colorable, makes him a participant with standing to sue. If, on the other hand, he seeks extracontractual damages or benefits that never vested, then he is not a participant, and a federal court cannot entertain his suit. Here, because Graden merely seeks the full amount of benefits owed him given Conexant's alleged breach of its duty of prudent investment, he has standing to maintain this suit, and we therefore vacate the District Court's order dismissing Graden's complaint for lack of statutory standing and remand for further proceedings.