# EXHIBIT A

1 of 1 DOCUMENT

BYRON WARD, Plaintiff, v. AVAYA, INC., et al, Defendants.

Civil Action No. 06-1721 (JAP)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

487 F. Supp. 2d 467; 2007 U.S. Dist. LEXIS 27568

April 12, 2007, Decided

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Motions to Dismiss*
[HN1] On a motion to dismiss, the court generally does not consider documents extraneous to the pleadings, but the court may consider a document integral or explicitly relied upon in the complaint without converting the motion to dismiss into one for summary judgment.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims*
[HN2] Fed. R. Civ. P. 12(b)(6) permits a court to dismiss a complaint that fails to state a claim upon which relief can be granted. In deciding a Rule 12(b)(6) motion to dismiss, the court must reasonably read the complaint and decide whether the plaintiff has pled a cognizable cause of action entitling him to relief. In making this determination, a court accepts as true all of the well-pleaded factual allegations within the complaint and any reasonable inferences drawn therefrom. The court may also consider exhibits attached to the complaint, matters of public record, and documents that form a basis of the plaintiff's claim. However, the court need not consider a plaintiff's bald assertions or legal conclusions.

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > Statutes of Limitations*
[HN3] See 29 U.S.C.S. § 1113.

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > Statutes of Limitations*
[HN4] The United States Court of Appeals for the Third Circuit has adopted a two-part test to determine when a plaintiff has acquired actual knowledge to trigger the three-year statute of limitations under 29 U.S.C.S. § 1113(2). First, the plaintiff must have actually known of the events that occurred which constitute the breach or violation. Second, the plaintiff must have actually known that those events supported a claim of breach of fiduciary duty or violation under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C.S. § 1001 et seq. These requirements are rigorous. That is, 29 U.S.C.S. § 1113(2) sets a high standard for barring claims against fiduciaries prior to the expiration of the statute's six-year limitations period.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > Statutes of Limitations*
[HN5] It is well-established that an affirmative defense such as the expiration of the statute of limitations under 29 U.S.C.S. § 1113 may provide a basis for dismissal on a Fed. R. Civ. P. 12(b)(6) motion in those situations where the defense is apparent on the face of the complaint.

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > Statutes of Limitations*
[HN6] Constructive knowledge is not sufficient to trigger the three-year statute of limitations under 29 U.S.C.S. § 1113(2).

Case 1:05-cv-00604-GMS   Document 55-2   Filed 09/11/2007   Page 3 of 14

Page 2

487 F. Supp. 2d 467, \*; 2007 U.S. Dist. LEXIS 27568, \*\*

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Prohibited Transactions > Exemptions*
[HN7] See 29 U.S.C.S. § 1108(e)(1).

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Prohibited Transactions > General Overview*
[HN8] See 29 U.S.C.S. § 1106(a).

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Prohibited Transactions > Exemptions*
[HN9] For purposes of 29 U.S.C.S. § 1108(e)(1), 29 U.S.C.S. § 1002(18)(A), defines the term "adequate consideration" with respect to a security as follows: (A) in the case of a security for which there is a generally recognized market, either (i) the price of the security prevailing on a national securities exchange which is registered under 15 U.S.C.S. § 78f, or (ii) if the security is not traded on such a national securities exchange, a price not less favorable to the plan than the offering price for the security as established by the current bid and asked prices quoted by persons independent of the issuer and of any party in interest.

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Fiduciaries > General Overview*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Fiduciaries > Fiduciary Responsibilities > General Overview*
[HN10] When Congress passed the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C.S. § 1001 et seq., in 1974, its goal, in part, was to establish minimum standards of fiduciary conduct for Trustees, Administrators and others dealing with retirement plans and to improve the equitable character and soundness of private pension plans. ERISA defines a fiduciary as follows: A person is a fiduciary with respect to a plan to the extent he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets or he has any discretionary authority or discretionary responsibility in the administration of such plan. 29 U.S.C.S. § 1002(21)(A). The prudent man standard of care, to which fiduciaries are held, includes four duties: (1) to act solely in the interest of the participants and beneficiaries; (2) to exercise care, skill, prudence, and diligence; (3) to diversify the investments of the plan to minimize risk of loss unless imprudent to do so under the circumstances; and (4) to deal in accordance with the documents and instruments governing the plan unless to do so would violate ERISA. 29 U.S.C.S. § 1104(a)(1).

*Pensions & Benefits Law > Employee Benefit Plans > Eligible Individual Account Plans*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Fiduciaries > Fiduciary Responsibilities > General Overview*
[HN11] The statutory scheme under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C.S. § 1001 et seq., contains particular provisions for eligible individual account plans (EIAPs) that are designed to hold employer stock. For example, these plans are exempt from ERISA's general prohibition against a plan acquiring or holding such securities in an amount greater than ten percent of the fair market value of the assets in the plan. 29 U.S.C.S. § 1104(a)(2). Furthermore, EIAP fiduciaries do not have a duty to diversify and do not act imprudently by not diversifying the assets of an EIAP holding qualifying employer securities. ERISA explicitly states that the diversification requirement and the prudence requirement (only to the extent that it requires diversification) is not violated by acquisition or holding of qualifying employer securities. 29 U.S.C.S. § 1104(a)(2). This treatment of these plans furthers a recognized goal of Congress in supporting employee ownership of their employer's stock.

*Pensions & Benefits Law > Employee Benefit Plans > Employee Stock Ownership Plans*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Fiduciaries > Fiduciary Responsibilities > General Overview*
[HN12] The United States Court of Appeals for the Third Circuit accords a deferential standard of review to fiduciaries of a type of eligible individual account plan (EIAP) known as an Employee Stock Ownership Plan (ESOP) with respect to those fiduciaries' decisions to invest plan assets in the stock of a sponsoring employer. An ESOP fiduciary who invests the assets in employer stock is entitled to a presumption that it acted consistently with the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C.S. § 1001 et seq. However, the plaintiff may overcome that presumption by establishing

Case 1:05-cv-00604-GMS  Document 55-2  Filed 09/11/2007  Page 4 of 14

Page 3

487 F. Supp. 2d 467, *; 2007 U.S. Dist. LEXIS 27568, **

that the fiduciary abused its discretion by investing in employer securities. In reviewing the fiduciary's actions, the court must be governed by the intent behind the trust--in other words, the plaintiff must show that the ERISA fiduciary could not have believed reasonably that continued adherence to the ESOP's direction was in keeping with the settlor's expectations of how a prudent trustee would operate. The presumption can be overcome by a showing of precipitous decline in the price of employer stock, combined with the fiduciary's knowledge of the company's impending collapse and his or her own conflicted status. Also, a factor weighing against the presumption is the presence of fraud involving the leadership of the company.

*Pensions & Benefits Law > Employee Benefit Plans > Employee Stock Ownership Plans*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Fiduciaries > Fiduciary Responsibilities > General Overview*

[HN13] For purposes of overcoming the presumption that an Employee Stock Ownership Plan (ESOP) fiduciary who invests assets in employer stock acted consistently with the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C.S. § 1001 et seq., a decline in the price of a company's stock, even a significant decline, is not sufficient absent allegations of other circumstances such as fraudulent conduct or knowledge of the company's impending collapse.

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Fiduciaries > Fiduciary Responsibilities > General Overview*

[HN14] Under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C.S. § 1001 et seq., a duty to monitor other fiduciaries, generally, is imposed as an implicit duty upon those who have the power to appoint and remove other fiduciaries.

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > Causes of Action > Breach of Fiduciary Duty*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > Class Actions*

[HN15] While it is true that a plaintiff, individually, does not have standing to commence an action pursuant to 29 U.S.C.S. § 1132(a)(2) and (3) unless he is a participant, beneficiary or fiduciary of a plan, it is a totally different issue whether that plaintiff has standing to assert claims on behalf of certain plans as part of a class action.

**COUNSEL:** [**1] For BYRON WARD, Plaintiff: MARK A. AMADEO, LEAD ATTORNEY, SPRENGER & LANG, PLLC, WASHINGTON, DC.

For AVAYA, INC., PENSION AND EMPLOYEE BENEFITS INVESTMENT COMMITTEE, THE, Defendants: KERRI E. CHEWNING, ARCHER & GREINER, PC, HADDONFIELD, NJ.

**JUDGES:** JOEL A. PISANO, United States District Judge.

**OPINION BY:** JOEL A. PISANO

**OPINION**

[*470] **OPINION**

PISANO, District Judge.

Plaintiff brings this purported class action against Ayaya, Inc. ("Avaya") and the Pension and Employee Benefits Investment Committee (the "Committee," collectively with Avaya, "Defendants") alleging that Defendants breached various duties under the Employee Retirement Income Security Act of 1974 ("ERISA") in connection with three Avaya retirement plans. Defendants have moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons expressed below, Defendants motion is granted in part and denied in part.

**I. Factual Background** [1]

> 1 Unless otherwise indicated, the facts set forth herein are taken from the allegations contained in Plaintiff's complaint.

[**2] Defendant Avaya, which is in the business of communications and technology, was established on September 30, 2000, through a spin-off from Lucent Technologies, Inc. ("Lucent"). Avaya established and maintained three "employee pension benefits plans" as defined in 29 U.S.C. § 1002(2)(A): the Avaya Inc. Savings Plan for Salaried Employees (the "Salaried

Case 1:05-cv-00604-GMS   Document 55-2   Filed 09/11/2007   Page 5 of 14

Page 4

487 F. Supp. 2d 467, *470; 2007 U.S. Dist. LEXIS 27568, **2

Plan"), the Avaya Inc. Savings Plan (the "Savings Plan"), and the Avaya Inc. Savings Plan for the Variable Workforce (the "Variable Plan") (collectively referred to herein as "Plans"). Avaya was the plan administrator for each of the Plans, and the Committee, among other things, had authority to provide for the investment of the Plans' assets, as well as the authority to select and monitor investment options under the Plans.

Plaintiff was an employee of Lucent until Avaya was spun off from Lucent, at which time Plaintiff then became an employee of Avaya. From the time of the spin-off, Plaintiff has been a "participant and/or beneficiary" in the Salaried Plan and has held assets in his account that included Avaya and Lucent securities. Compl. P 11. Plaintiff purports to bring this action on behalf of persons who [**3] were "participants and beneficiaries in the Plans at anytime between September 29, 2000 and April 23, 2003, whose accounts in the Plans included investments in Avaya securities," as well as persons who were "participants and beneficiaries in the Plans at anytime between September 29, 2000 and October 30, 2003, whose accounts in the Plans included investments in Lucent securities." *Id.* PP 29-30.

Employees participating in the Plans had the option to contribute a percentage of their pay into the Plans, subject to certain limitations. Avaya also provided matching contributions under the Plans. [2] All funds from all three Plans were held in a master trust. Participants could direct the trustee to invest their contributions and Avaya's matching funds [3] into a variety [*471] of investment options available under the Plans. The Plan documents required "a broad range of investment alternatives" be available to participants. Compl. P 21. One available fund was the Lucent Stock Fund, which was a fund that invested primarily in Lucent stock. Another was the Avaya Stock Fund, which invested primarily in shares of Avaya common stock. In fact, as set forth in the relevant governing documents, it [**4] was an express requirement for each of the Plans that the investment options include the Avaya Stock fund. Certification of Kerri Chewning ("Chewning Cert.") at Ex. 2 at § 5.3, Ex. 3 at § 5.3, Ex. 4 at § 5.3. [4]

> 2   With respect to the Salaried Plans, up until January 1, 2004, Avaya's matching contribution consisted of a fixed match of 50% of the participant's eligible compensation up to a maximum of $ 2,500 and an uncapped variable match. Beginning on January 1, 2004, Avaya made contributions of 2% of each participant's eligible compensation, whether or not the participant made any contribution. Additionally, Avaya matched 100% of the participant's contributions up to the first 2% of a participant's eligible compensation, and then 50% of the contributions in excess of 2% of a participant's eligible compensation. For participants in the Savings Plan, Avaya made matching contributions of 66 2/3 cents for every dollar contributed, up to the first 6% of eligible compensation. For participants in the Variable Plan, Avaya matched 50% of each participant's contributions up to 6% of eligible contributions.
>
> [**5]
> 3   Before July 1, 2002, all Avaya matching contributions in the Savings Plan were made as Avaya stock contributions to a fund called the Employer Shares Fund and Savings Plan participants could not transfer those funds into any other investment options Effective July 1, 2002, participants could direct Avaya's matching contributions as well as existing assets in the Employer Shares Fund to investment options other than the Employer Shares Fund.
>
> 4   [HN1] On a motion to dismiss, the Court generally does not consider documents extraneous to the pleadings, but the Court may consider a "document integral or explicitly relied upon in the complaint . . . without converting the motion to dismiss into one for summary judgment." *In re Burlington Coat Factory Sec. Litig.* 114 F.3d 1410, 1426 (3d Cir.1997). In this case, Plaintiff's claims center entirely on the benefit plans detailed in the complaint. Accordingly, this Court will consider the Plan documents, which Defendants have included in their motion, without converting this motion to one for summary judgment.

In the present case, Plaintiff [**6] alleges that the financial conditions of both Lucent and Avaya made their stock unsuitable as retirement plan investments for the Avaya Plans. Several months prior to the spin-off of Avaya, on January 6, 2000, Lucent issued a press release stating that its financial results for the first quarter of 2000 would fall short of analysts' expectations. On that day, the price of Lucent's shares dropped substantially, from $ 72.32 to $ 51.96 per share. Lucent's stock continued a downward trend that year, and it was trading

Case 1:05-cv-00604-GMS   Document 55-2   Filed 09/11/2007   Page 6 of 14

Page 5

487 F. Supp. 2d 467, *471; 2007 U.S. Dist. LEXIS 27568, **6

at $ 30.50 per share on September 29, 2000, the last day before the Lucent spin-off. Further, during this same period of time, sales attributable to Avaya's businesses within Lucent had declined 3.5% from the year before. By the time of the spin-off, Avaya projected that its revenue would grow only "incrementally" over the following three years. Compl. at P 72.

On October 10, 2000, Lucent announced that excepted financial results for the fourth quarter would be less than previously announced, and the price of Lucent shares suffered a two-day drop in price from $ 31.21 to $ 21.25 per share. With further news of revenue reductions, by December 31, 2000, the price for a share [**7] of Lucent stock had fallen to $ 13.50. Lucent's revenues and earnings continued to decline in 2001, and by year end a share of Lucent stock was trading at $ 6.30. With the announcement of continued losses in 2002, Lucent's stock dropped to $ 0.76 per share by October 2002. It was not until one year later, in October 2003, that Lucent recorded its first quarterly profit since March 2000.

After being spun off, Avaya suffered financial difficulties as well. In the final quarter of 2000, Avaya's net income was down substantially from the prior year, and Avaya recorded an annual net loss of $ 352 million for the fiscal year ending September 30, 2001. By the end of its second fiscal year, Avaya's net losses reached $ 666 million. Not surprisingly, Avaya stock suffered declines in share price during this time. On October 2, 2000, the stock's first day of trading on the New York Stock Exchange, the stock opened at $ 22.88 per share. Three days later the price of the stock had fallen to $ 14.38 per [*472] share. By December 31, 2000, the price was $ 10.31 per share. Despite substantial fluctuations in share price during 2001, by August 2, 2002, Avaya's stock closed at $ 1.15 per share. Things finally [**8] began to turn around for Avaya several months later in April of 2003, when the company's ongoing restructuring efforts resulted in a second quarter financial performance that was above analysts' expectations.

Plaintiff alleges that on September 29, 2000, the day before the Avaya spin-off, Defendants caused the Salaried Plan and the Savings Plan to invest hundreds of millions of dollars in the both the Lucent Stock Fund and the Avaya Stock Fund. Defendants permitted the Salaried Plan and the Saving Plan to be invested in the Lucent Stock Fund until October 30, 2003, at which time Defendants required the assets invested in the Lucent Stock Fund to be invested in other investment options. The Salaried and the Savings Plan continued to invest assets in the Avaya Stock Fund, and on March 1, 2001, the Defendants permitted the Variable Plan participants to invest in the Avaya Stock Fund.

Plaintiff alleges that Defendants breached their fiduciary duties and engaged in prohibited transactions as follows:

**Count I:** Plaintiff alleges in Count I that Defendants "failed to conduct an adequate and independent investigation of the fair market value of Avaya securities before or after [**9] September 29, 2000," thereby causing the Salaried and Savings Plans "to acquire Avaya securities at inflated prices that exceeded their market value." Compl. P 134. As a result, the "Salaried and Savings Plans' acquisition of Avaya stock are *per se* prohibited transactions, in violation of ERISA § 408(a)(1), 29 U.S.C. § 1108(a)(1), that are not exempt under the provisions of ERISA § 408(e)(1), 29 U.S.C. § 1108(e)(1)." *Id.*

**Count II:** Plaintiff alleges in Count II that Defendants breached their fiduciary duties by failing to "conduct an adequate investigation of Avaya securities or the Avaya Stock fund" before including the investments as an option under the Plans and "failing to adequately monitor the Plans' investment options," thereby permitting the Plans' assets, including employee contributions and company matching contributions, to remain invested in Avaya securities when it was imprudent to do so. Compl. P 155.

**Count III:** Plaintiff's allegations in Count III are similar to those in Count II, except Count III relates to Lucent stock. Plaintiff claims that Defendants breach their fiduciary duties by failing [**10] to "conduct an adequate investigation of the Lucent Stock Fund . . . before including the Lucent Stock Fund as an investment option under the Plans," and by failing to "take any actions to prevent the Plans from investing in the Lucent Stock Fund." Compl. P 162. Further, once Lucent securities were included as an investment option in the Plans, Plaintiff alleges that Defendants failed to conduct an "adequate investigation" that would have "concluded that the Plans' continued investments in the Lucent Stock Fund was imprudent." Compl. P 169.

**Count IV:** In Count IV, Plaintiff alleges that Defendants "failed to adequately monitor the activities of

Case 1:05-cv-00604-GMS   Document 55-2   Filed 09/11/2007   Page 7 of 14

Page 6

487 F. Supp. 2d 467, *472; 2007 U.S. Dist. LEXIS 27568, **10

other fiduciaries and failed to replace them with fiduciaries willing and able to make prudent investment decisions." Compl. P 180. Plaintiff also alleges that Defendants are liable as co-fiduciaries under 29 U.S.C. § 1105 for breaches by other fiduciaries.

Plaintiff seeks (1) damages in the form of reimbursement to the Plans of "all losses resulting from" Defendants' breaches and restoration to the Plans of "any profits made through [Defendants'] use of the assets [*473] of the Plans; (2) certain declaratory, injunctive [**11] and other equitable relief; (3) attorneys' fees, costs and expenses of this litigation. Compl. at 43-44.

## II. Discussion

A. Standard on a Motion to Dismiss

[HN2] Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint that fails "to state a claim upon which relief can be granted." In deciding a Rule 12(b)(6) motion to dismiss, the Court must reasonably read the complaint and decide whether the plaintiff has pled a cognizable cause of action entitling him to relief. *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996). In making this determination, a court accepts as true all of the well-pleaded factual allegations within the complaint and any reasonable inferences drawn therefrom. *Hayes v. Gross*, 982 F.2d 104, 105-06 (3d Cir. 1992). The court may also consider exhibits attached to the complaint, matters of public record, and documents that form a basis of plaintiff's claim. *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004). However, the court need not consider plaintiff's bald assertions or legal conclusions. *Morse v. Lower Merion School Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). [**12]

B. Statute of Limitations

Defendants argue that Plaintiff's claims under ERISA are time-barred pursuant to 29 U.S.C. § 1113. This section provides that

> [HN3] No action may be commenced under this title with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part [29 USCS §§ 1101 et seq.], or with respect to a violation of this part [29 USCS §§ 1101 et seq.], after the earlier of--
>
> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or
>
> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation; except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

29 U.S.C. § 1113. Specifically, Defendants point to subsection (2) and assert that Plaintiff's claims are out of time because Plaintiff had actual knowledge [**13] of the facts that allegedly established his claims more than three years prior to the filing of this suit on April 10, 2006.

[HN4] The Third Circuit has adopted a two-part test to determine when a plaintiff has acquired "actual knowledge" to trigger the three-year statute of limitations. First, the plaintiff must have actually known of "the events that occurred which constitute the breach or violation." *Richard B. Roush, Inc. Profit Sharing Plan v. New Eng. Mut. Life Ins. Co.*, 311 F.3d 581, 586 (3d Cir. 2002). Second, plaintiff must have actually known that "those events supported a claim of breach of fiduciary duty or violation under ERISA." *Id. See also Montrose Med. Group Participating Sav. Plan v. Bulger*, 243 F.3d 773 (3d Cir. 2001), *Gluck v. Unisys Corp.*, 960 F.2d 1168 (3d Cir. 1992). The Third Circuit has described these requirements as "rigorous" and has noted that "Section 1113 sets a high standard for barring claims against fiduciaries prior to the expiration of the section's six-year limitations period." *Gluck*, 960 F.2d at 1176.

[HN5] It is well-established that an affirmative defense such as the expiration of the [**14] statute of limitations may provide a basis for dismissal on a Rule 12(b)(6) motion in [*474] those situations where the defense is "apparent on the face of the complaint." *Benak v. Alliance Capital Mgmt. L.P.*, 435 F.3d 396, 400 n.14 (3d Cir. 2006) ("[A] statute of limitations defense is an affirmative one, and in order to undergird a dismissal, must appear on the face of the complaint."); *Robinson v.*

Case 1:05-cv-00604-GMS   Document 55-2   Filed 09/11/2007   Page 8 of 14

Page 7

487 F. Supp. 2d 467, *474; 2007 U.S. Dist. LEXIS 27568, **14

*Johnson,* 313 F.3d 128, 135 (3rd Cir. 2002) (limitations defense may be raised on a motion under Rule 12(b)(6) "only if the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations") (internal citations and quotations omitted); *Rycoline Prods. v. C & W Unlimited,* 109 F.3d 883, 886 (3d Cir. 1997) ("[I]f a statute of limitations bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6).") (internal quotations omitted). Therefore, the Court's inquiry on this motion is whether it is apparent from the face of the complaint that prior to April 10, 2003, (three years prior to the filing of his complaint) [**15] Plaintiff knew of the events that form the basis of his present claims and knew that those events supported a claim under ERISA.

In support of their argument that Plaintiff had such "actual knowledge" with respect to the facts supporting the fiduciary duty claims asserted in Counts II, III and IV, Defendants point out that "virtually all" of the facts alleged in those counts occurred between 2000 and 2002 and are "based solely on . . . press releases, publicly filed financial statements and media articles." Def. Brf. at 12. Defendants further point to the fact that there are no allegations in the complaint of any fraud or concealment of such information from Plaintiff. Nevertheless, this does not establish that Plaintiff had the requisite "actual knowledge" of the relevant facts prior to April 10, 2003. At most, the complaint alleges that prior to April 10, 2003, such information was available to Plaintiff, but this is not sufficient to trigger the three-year limitations period under § 1113. *See Gluck,* 960 F.2d at 1176 (noting that [HN6] "constructive knowledge" is not sufficient and stating that "Congress knew how to require constructive knowledge . . . [w]e do not [**16] think that Congress' failure to call for it in section 1113 was accidental.").

With respect to Court I, Defendants assert that Plaintiff had knowledge of all facts relevant to this claim no later than September 29, 2000, and point to the following two paragraphs in the complaint as establishing such knowledge:

> 87. The price of units in the Avaya Stock Fund fell as steeply as Avaya's stock price during this same period. On September 29, 2000, the Salaried and Savings Plans acquired units in the Avaya Stock Fund for $ 15.57 per unit. By October 20, 2000, less than three weeks after the Salaried and Savings Plans first acquired the Avaya securities, the units were priced at only $ 11.89 per unit.
>
> * * *
>
> 134. By failing to conduct an adequate and independent investigation of the fair market value of Avaya securities before or after September 29, 2000, Defendants caused the Salaried and Savings Plans to acquire Avaya securities for more than adequate consideration. In fact, the Salaried and Savings Plans acquired the Avaya securities at inflated prices that far exceeded their market value. Therefore, the Salaried and Savings Plans' acquisitions of Avaya stock are per se prohibited [**17] transactions, in violation ERISA § 406(a)(1), 29 U.S.C. § 1108(e)(1), that are were not exempt under the provisions of ERISA § 408(e)(1), 29 USC § 1108(e)(1).

[*475] While these paragraphs allege that certain events and occurred on or about September 29, 2000, the complaint does not establish when Plaintiff actually knew of these events. The mere allegation by Plaintiff that an event took place on a certain date does not establish that Plaintiff had knowledge of the event on that same date. Consequently, the Court shall not dismiss Plaintiff's claims as time-barred at the pleading stage.

C. Prohibited Transaction Claim in Count I

Plaintiff alleges in Count I that Defendants caused the Salaried and Savings Plan to acquire Avaya securities 5 for "inflated prices that far exceeded their market value," and, therefore, such transactions are *"per se* prohibited transactions" in violation of 29 U.S.C. § 1106(a)(1). 6 Compl. P 134. The complaint also alleges that these transactions are not exempt from this prohibition by § 1108(e)(1). Section 1108(e)(1) provides in the relevant part:

> [HN7] (e) Acquisition [**18] or sale by plan of qualifying employer securities; acquisition, sale, or lease by plan of qualifying employer real property

Case 1:05-cv-00604-GMS   Document 55-2   Filed 09/11/2007   Page 9 of 14

Page 8

487 F. Supp. 2d 467, *475; 2007 U.S. Dist. LEXIS 27568, **18

Sections 1106 and 1107 of this title shall not apply to the acquisition or sale by a plan of qualifying employer securities (as defined in section 1107(d)(5) of this title) or acquisition, sale or lease by a plan of qualifying employer real property (as defined in section 1107(d)(4) of this title)--

(1) if such acquisition, sale, or lease is for adequate consideration . . . ,

5   Plaintiff appears to raise an argument in his brief that his claim in Count I relates to the Plans' acquisitions of "units" in the Avaya Stock Fund rather than (or in addition to) the Plans' acquisition of Avaya securities. However, the complaint does not allege a violation of ERISA based on the purchase of "units," but rather the complaint repeatedly refers to investment in Avaya "securities." Moreover, the complaint describes that, with respect to the Avaya Stock Fund, Plan assets are pooled to purchase shares of Avaya stock, and each individual's ownership interest in the Avaya Stock Fund is measured in "units." Consequently, "units" appear to be merely a measurement of an individual participant's ownership interest rather than investments to be acquired by the Plan.

[**19]

6   Section 1106(a) provides in the relevant part as follows:

[HN8] (a) Transactions between plan and party in interest

Except as provided in section 1108 of this title:
(1) A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect--

* * *

(E) acquisition, on behalf of the plan, of any employer security or employer real property in violation of section 1107(a) of this title.

ERISA, [HN9] 29 U.S.C. § 1002(18)(A), defines the term "adequate consideration" with respect to a security as follows:

(A) in the case of a security for which there is a generally recognized market, either (i) the price of the security prevailing on a national securities exchange which is registered under section 78f of Title 15, or (ii) if the security is not traded on such a national securities exchange, a price not less favorable to the plan than the offering price for the security as established by the current bid and asked prices quoted by persons independent [**20] of the issuer and of any party in interest.

As Defendants note, Plaintiff's prohibited transaction claim can be broken down into two time periods, namely, before and after the initial public offering ("IPO") of Avaya's stock on October 2, 2000. [*476] First, with respect to any shares acquired by the Plans after the IPO, Plaintiff fails to state a claim. Plaintiff alleges in the complaint that Avaya stock began publicly trading on the New York Stock Exchange on October 2, 2000. Compl. P 81. However, the complaint is devoid of any allegations that shares of Avaya stock acquired by the Plans after that date were acquired at a price in excess of the prevailing price on the exchange. See In re Honeywell Int'l ERISA Litig., 2004 U.S. Dist. LEXIS 21585, 2004 WL 3245931, *14 (D.N.J. September 14, 2004) ("Plaintiffs have no prohibited transaction claim: it is not alleged that the Plan paid more for Honeywell securities than the price prevailing on a national exchange."). Consequently, as it relates to any Avaya securities acquired by the Plans on or after October 2, 2000, Plaintiff's prohibited transaction claim is dismissed.

Second, with respect to any shares acquired by the Plans prior to the IPO, Defendants' [**21] motion must be denied. Defendants argue that dismissal is appropriate because no compensation was paid for the Avaya stock that went into the Plans prior to the IPO. In support of their argument, Defendants point to public filings relating

Case 1:05-cv-00604-GMS    Document 55-2    Filed 09/11/2007    Page 10 of 14

Page 9

487 F. Supp. 2d 467, *476; 2007 U.S. Dist. LEXIS 27568, **21

to the IPO that describe the distribution of a dividend in the form of Avaya stock to Lucent shareholders in connection with the spin-off of Avaya. Chewning Cert., Ex. 1 at 39 [7] (stating that on September 30, 2000, all holders of Lucent common stock were to receive a dividend of one share of Avaya stock for every 12 shares of Lucent stock held). As described by Defendants in their brief, the Lucent savings/401(k) plans that were predecessors to the Avaya Plans were shareholders of record on the record date, and those Lucent plans acquired the Avaya stock through the dividend distribution. Def. Reply at 3. Subsequently, the balances of those Lucent plans, including the distributed Avaya shares, were transferred into the new Avaya Plans. *Id.* However, nothing in the complaint or the documents properly before the Court establishes these facts. Additionally, they contradict the allegations in the complaint, which alleges that the Avaya Plans acquired [**22] Avaya stock on September 29, 2000. The issue, therefore, is not one that is appropriately resolved on a motion under Rule 12(b)(6). Defendants' motion, to the extent it seeks dismissal of claims in Count I that relate to Avaya stock acquired prior to October 2, 2000, is denied.

> 7   Given the confusing pagination of this exhibit, the Court here cites to the page number assigned to the document by the Court's electronic filing system.

D. Breach of Fiduciary Duty Claims in Count II (Avaya Stock)

Pursuant to the documents governing each of the Plans, the Plans were required to include the Avaya Stock Fund as an investment option for participants. Chewing Cert. at Ex. 2 at § 5.3, Ex. 3 at § 5.3, Ex. 4 at § 5.3. According to these documents, the Avaya Stock Fund was to be "invested primarily in shares of Avaya Common Stock with a small portion in cash or other liquid investments." *Id.* In Count II of his complaint, Plaintiff alleges that Defendants "breached their fiduciary duties under ERISA . . . [by] [**23] select[ing] Avaya securities and the Avaya Stock Fund as investment options for retirement plan savings" without conducting an adequate investigation and "allow[ing] Avaya securities and the Avaya Stock Fund to remain an investment option" despite the "poor performance and extreme volatility" of the Avaya securities. Compl. P 144, 149.

[HN10] When Congress passed ERISA in 1974, its goal, in part, was "to establish minimum standards of fiduciary conduct for [*477] Trustees, Administrators and others dealing with retirement plans . . . and to improve the equitable character and soundness of private pension plans." *Smith v. Delta Air Lines, Inc.*, 422 F. Supp. 2d 1310, 1325 (N.D. Ga. 2006) (citing H.R. Rep. No. 93-533 (1974), as reprinted in 1974 U.S.C.C.A.N. 4639, 4655). As relevant to the present matter, ERISA defines a fiduciary as follows:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets . . . or (iii) he has any discretionary authority or discretionary responsibility [**24] in the administration of such plan.

29 U.S.C. § 1002(21)(A). The prudent man standard of care, to which fiduciaries are held, includes four duties: (1) to act solely in the interest of the participants and beneficiaries; (2) to exercise care, skill, prudence, and diligence; (3) to diversify the investments of the plan to minimize risk of loss unless imprudent to do so under the circumstances; and (4) to deal in accordance with the documents and instruments governing the plan unless to do so would violate ERISA. 29 U.S.C. § 1104(a)(1).

[HN11] ERISA's statutory scheme contains particular provisions for eligible individual account plans ("EIAPs") that are designed to hold employer stock, such as the Avaya Plans. *See Edgar v. Avaya, Inc.*, 2006 U.S. Dist. LEXIS 23151, 2006 WL 1084087 at *5 (D.N.J. April 25, 2006) (finding that the Avaya Plans were EIAPs). For example, these plans are exempt from ERISA's general prohibition against a plan acquiring or holding such securities in an amount greater than ten percent of the fair market value of the assets in the plan. 29 U.S.C. § 1104(a)(2). Furthermore, EIAP fiduciaries do not have [**25] a duty to diversify and do not act imprudently by not diversifying the assets of an EIAP holding qualifying employer securities. ERISA explicitly states that "the diversification requirement . . . and the prudence requirement (only to the extent that it requires diversification) . . . is not violated by acquisition or holding of . . . qualifying employer securities." 29 U.S.C. § 1104(a)(2). This treatment of these plans furthers a

Case 1:05-cv-00604-GMS   Document 55-2   Filed 09/11/2007   Page 11 of 14

Page 10

487 F. Supp. 2d 467, *477; 2007 U.S. Dist. LEXIS 27568, **25

recognized goal of Congress in supporting employee ownership of their employer's stock. *See, e.g., Moench v. Robertson,* 62 F.3d 553, 568 (3d Cir. 1995) ("[T]he concept of employee ownership constituted a goal in and of itself. To accomplish this end, Congress enacted a number of laws designed to encourage employers to set up such plans.") (internal quotations and alterations omitted).

Although Plaintiff argues that his claims of imprudence center on Defendants' alleged failure to conduct an "adequate investigation" relating to the Plans' investments in Avaya securities, Plaintiff "essentially alleges that Defendants acted imprudently by not diversifying" the Plans. *Smith v. Delta Air Lines,* 422 F. Supp. 2d 1310, 1326 (N.D. Ga. 2006) [**26] ("Plaintiff attempts to argue around ERISA's diversification exemption by alleging that the Savings Plan's heavy investment in Delta securities was imprudent irrespective of the lack of diversification. At its core, however, Count I just amounts to another form of diversification argument."). Consequently, Plaintiff's claim that Defendants acted imprudently implicates the exceptions in 29 U.S.C. § 1104(a)(2).

[HN12] In this circuit, a deferential standard of review is accorded to fiduciaries of a type of EIAP known as an Employee Stock Ownership Plan ("ESOP") with respect to those fiduciaries' decisions to invest [*478] plan assets in stock of sponsoring employer. *See Moench v. Robertson,* 62 F.3d 553, 568 (3d Cir. 1995). ESOPs are designed to invest primarily in qualifying employer securities. *Id.* In *Moench,* the Court held that

> an ESOP fiduciary who invests the assets in employer stock is entitled to a presumption that it acted consistently with ERISA by virtue of that decision. However, the plaintiff may overcome that presumption by establishing that the fiduciary abused its discretion by investing in employer securities.

*Id.* at 571. [**27] The *Moench* court further noted that

> [I]n reviewing the fiduciary's actions, the court must be governed by the intent behind the trust--in other words, the plaintiff must show that the ERISA fiduciary could not have believed reasonably that continued adherence to the ESOP's direction was in keeping with the settlor's expectations of how a prudent trustee would operate. In determining whether the plaintiff has overcome the presumption, the courts must recognize that if the fiduciary, in what it regards as an exercise of caution, does not maintain the investment in the employer's securities, it may face liability for that caution, particularly if the employer's securities thrive. *See Kuper v. Quantum Chems. Corp.,* 852 F. Supp. 1389, 1395 (S.D. Ohio 1994)("defendants who attempted to diversify its ESOP assets conceivably could confront liability for failure to comply with plan documents").

*Id.*

Defendants argue that the deferential *Moench* standard is applicable here because, although not strictly ESOPs, each of the Plans at issue *required* that the Avaya Stock Fund be included as an investment option. Indeed, this was the approach taken [**28] by the court in *Edgar v. Avaya, Inc.,* 2006 U.S. Dist. LEXIS 23151, 2006 WL 1084087 (D.N.J. April 25, 2006) (applying the *Moench* standard to the Avaya Plans). Plaintiff, citing *In re Schering-Plough Corp. ERISA Litig.,* 420 F.3d 231 (3d Cir. 2005), argues that *Moench* should not apply in the present case because the Plans are not ESOPs. In *Schering-Plough Corp.,* the Third Circuit held that the *Moench* decision was "inapposite" with regard to the savings plan at issue in that case because the plan was "simply permitted" to invest in "employer securities." 420 F.3d at 238 n.5.

The Court agrees with the approach taken in *Edgar* and finds that *Moench* is relevant to the present case. It was an express requirement of the Plans that the Avaya Stock Fund be offered as one of the investment options. The fiduciaries of the Savings and Salaried Plans were required to administer the Plans in accordance with the governing documents, but the fiduciaries were also bound by ERISA's "stringent fiduciary duties." *Moench,* 62 F.3d at 569. The balance between these two sometimes conflicting requirements is exactly what the *Moench* standard is intended [**29] to address.

The *Moench* presumption that the fiduciaries acted in accordance with ERISA can be overcome by showing

Case 1:05-cv-00604-GMS   Document 55-2   Filed 09/11/2007   Page 12 of 14

Page 11

487 F. Supp. 2d 467, *478; 2007 U.S. Dist. LEXIS 27568, **29

that Defendants abused their discretion by continuing to offer Avaya securities as an investment option and continuing to invest Plan assets in Avaya securities. "*Moench* suggests that the presumption . . . can be overcome by a showing of precipitous decline in the price of employer stock, combined with the fiduciary's knowledge of the company's impending collapse and his or her own conflicted status . . .[and] [o]ther cases indicate that a factor weighing against the presumption is the presence of fraud involving the leadership of the company." *Honeywell*, 2004 U.S. Dist. LEXIS 21585, 2004 WL 3245931 at *11 (citing [*479] *Lalonde v. Textron, Inc.*, 369 F.3d 1 (1st Cir. 2004); *Canale v. Yegen*, 782 F. Supp. 963, 967-68 (D.N.J. 1992); *In re Sprint Corp. ERISA Litig.*, 388 F. Supp. 2d 1207, 2004 WL 1179371, at *12-*13 (D. Kan. 2004)).

In *Edgar*, the Court, applying the *Moench* standard in the context of a 12(b)(6) motion, [8] found that allegations that the price of Avaya's stock "underwent a precipitous fall of over 25%" in a single day [**30] following an announcement that the company would not meet certain financial goals was not sufficient to support a claim for breach of fiduciary duty. 2006 U.S. Dist. LEXIS 23151, 2006 WL 1084087 at * 6. Allegations of more severe circumstances, however, have been found to withstand challenge on a motion to dismiss under 12(b)(6) in spite of the presumption. In *In re Merck & Co.*, 2006 U.S. Dist. LEXIS 53729, 2006 WL 2050577, *7 (D.N.J 2006), the court found that, where plaintiffs asserted that (1) undisclosed risks regarding the Merck's drug Vioxx artificially inflated the price of the stock; (2) withdrawal of the drug from the market caused substantial declines in the value of Merck's stock; and (3) potential legal liability for injuries caused by the drug was estimated to be in the tens of billions of dollars, these facts "'present[ed] a situation where a company's financial situation is seriously deteriorating and there is a genuine risk of insider self-dealing' sufficient to call into question the fiduciary propriety of continued investment in the Company's securities by Plan fiduciaries." *Id.* The Court in *Honeywell* similarly found allegations sufficient [**31] to overcome the *Moench* presumption where plaintiffs asserted that "Plan fiduciaries were privy to a fraud that vastly inflated the price of its stock." 2004 U.S. Dist. LEXIS 21585, 2004 WL 3245931 at *11.

>   8  Some district courts have declined to apply the deferential *Moench* standard in evaluating the sufficiency of a complaint under Rule 12(b)(6). In this regard, Plaintiff points to *In re Ferro Corp. ERISA Litig.*, 422 F. Supp. 2d 850, 860 (N.D. Ohio 2006) (noting that "courts are split as to whether it is appropriate to evaluate the *Moench* presumption on a motion to dismiss" and expressing "serious doubts as to whether it is appropriate to evaluate the *Moench* presumption this early in the litigation"). This Court finds application of *Moench* at this stage appropriate to effectuate § 1104(a)(2)'s diversification and prudence exemptions. Additionally, there have been other decisions in this district that have applied *Moench* in deciding a motion to dismiss. See *Merck & Co.*, 2006 U.S. Dist. LEXIS 53729, 2006 WL 2050577 (D.N.J 2006); *Edgar v. Avaya, Inc.*, 2006 U.S. Dist. LEXIS 23151, 2006 WL 1084087 (D.N.J. 2006).

[**32] In the present case, Plaintiff alleges that Defendants' investment in Avaya securities was imprudent because of the financial difficulties experienced by the company over approximately a two and a half year period beginning late in 2000. Prior to the spin-off of Avaya, sales attributable to Avaya's businesses declined about 3.5% from the year before and, while the company projected revenue growth going forward, such projected growth was merely incremental. Avaya suffered substantial losses in its first two years of operation and undertook restructuring efforts during that time that included laying off a number of employees. During this time, the price of Avaya's stock fell significantly. By the end of the of the purported class period in this case, however, Avaya's restructuring efforts appeared to have achieved success and analysts "lauded the company's apparent turnaround, noting Avaya' stronger than expected product revenues and its return to operating profitability." Compl. P 121. In response, Avaya's stock price increased substantially. *Id.* P 122.

The Court finds that, weighed against the *Moench* standard, these allegations [*480] fail to support a claim for breach of fiduciary [**33] duty. First, [HN13] a decline in the price of a company's stock, even a significant decline, is not sufficient absent allegations of other circumstances such as fraudulent conduct or knowledge of the company's impending collapse. See *Honeywell*, 2004 U.S. Dist. LEXIS 21585, 2004 WL 3245931, at *11; see also *Edgar*, 2006 U.S. Dist. LEXIS 23151, 2006 WL 1084087 at * 6. As alleged by Plaintiff, Avaya's business did experience some significant

Case 1:05-cv-00604-GMS   Document 55-2   Filed 09/11/2007   Page 13 of 14

Page 12

487 F. Supp. 2d 467, *480; 2007 U.S. Dist. LEXIS 27568, **33

difficulties, but Plaintiff did not allege the type of extreme circumstances contemplated by *Moench*. Given the Avaya's improved financial condition by the end of the relevant time period, it is clear that Avaya's troubles had not put the company on the brink of financial collapse as was the situation in *Moench*. In that case, the price of the company's stock fell from over $ 18 per share to less than 25 cents per share in a two year period, federal regulators repeatedly expressed concerns to the company's directors about the company's financial condition, regulators took over one of the company's wholly-owned subsidiaries, and the company ultimately filed for bankruptcy under Chapter 11. See 62 F.3d at 557.

Additionally, there are no allegations in the present [**34] case of underlying fraud as was present in *Honeywell* and *Merck*. In *Honeywell*, plaintiffs alleged that the defendants were "privy to a fraud that vastly inflated the price of [the company's] stock." 2004 U.S. Dist. LEXIS 21585, 2004 WL 3245931, at * 11. Similarly, in *Merck*, plaintiffs alleged that the company intentionally withheld information regarding serious side effects of Vioxx and continued to market the drug with knowledge that contradicted the company's public statements regarding the drug's safety, thereby artificially inflating the price of Merck's stock. 2006 U.S. Dist. LEXIS 53729, 2006 WL 2050577, at *2, *16.

Plaintiff, therefore, cannot sustain his claim that Defendants breached their fiduciary duties by permitting the Avaya Stock Fund to remain an investment option for the Plans and permitting the Plans to remain invested in Avaya securities. Accordingly, Count II is dismissed.

E. Breach of Fiduciary Duties in Count III (Lucent Stock)

Defendants argue that Plaintiff's claims in Count III of his complaint alleging that Defendants breached their fiduciary duties by permitting the Plans to invest in Lucent securities are barred by the final judgment of a previous class action, [**35] *Reinhart v. Lucent Techs., Inc. (In re Lucent Techs., Inc. Sec. Litig.)*, 327 F. Supp. 2d 426. *Reinhart*, a case similar to the present case, involved allegations that Lucent and the fiduciaries of certain Lucent retirement plans breached their fiduciary duties under ERISA by permitting the plans to invest in Lucent stock when it was allegedly imprudent to do so.

The parties in *Reinhart* reached a settlement, embodied in a Stipulation and Agreement of Settlement, which was approved by the Court and adopted as its final judgment [9] on December 12, 2003. Chewning Cert. at Ex. 10 (Order and Final Judgment). On that same date, the Court certified the following settlement class:

> All persons who were participants or beneficiaries of the Lucent Savings Plan and/or the Lucent Long-Term Savings and Security Plan during any portion of the Class Period (December 31, 1999 through March 27, 2003) and who had [*481] Lucent Technologies Inc. common stock allocated in their Plan at any time during the Class Period.

*Id.* Plaintiff has not disputed that he is a member of this class.

9   The Court may consider the judgment with respect to the instant 12(b)(6) motion without converting the motion to one for summary judgment. *See Beverly Enters. v. Trump*, 182 F.3d 183, 190 (3d Cir.1999) (noting that in deciding a motion to dismiss, courts may consider "matters of public record").

[**36] Pursuant to the terms of the Stipulation and Agreement of Settlement, the *Reinhart* class agreed to "waive, release, forever discharge and dismiss" any and all "claims, rights or causes of action or liabilities whatsoever . . . against the Released Parties which arise out of or relate in any way to the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth or referred to in any complaint filed in the ERISA Lawsuits." *Id.* Ex. 9 (Stipulation and Settlement Agreement) at 11. The "Released Parties" included, among others, Avaya Inc., . . ."any current or former fiduciaries to either or both Plans and their successors . . . or other individual or entity which is related or affiliated with Defendant or any of the parties listed above." *Id.* Ex. 9 at 10. Defendants in this case clearly fall within this definition.

Count III of the complaint in the instant matter claims that Defendants breached their fiduciary duties under ERISA by maintaining Lucent stock as an investment option in the Plans. A similar claim was asserted in *Reinhart* with respect to the Lucent plans at issue in that case, which plans were the predecessor plans [**37] to the Plans in the present case. *See* Compl. P 73.

Case 1:05-cv-00604-GMS    Document 55-2    Filed 09/11/2007    Page 14 of 14

Page 13

487 F. Supp. 2d 467, *481; 2007 U.S. Dist. LEXIS 27568, **37

Therefore, Plaintiff's argument that the prior judgment does not bar his claims because the *Reinhart* case dealt with "different" claims than those at issue in the present case brought on behalf of "different" plans is simply without merit. Pl. Brf. at 17-18. Additionally, Plaintiff's argument that any release of his claims effected by the class action was invalid because it was not "knowing and voluntary" and lacked consideration is merely an improper collateral attack on the Court's judgment in *Reinhart*. Consequently, the Court finds that the judgment in *Reinhart* bars Plaintiff's claims in Count III of the complaint. Count III is, therefore, dismissed.

F. Monitoring Claims in Count IV

In Count IV of the complaint, Plaintiff alleges that Defendants failed to monitor the activities of other fiduciaries thereby permitting those fiduciaries "to breach the duties under ERISA to act prudently and solely in the interest of participants and beneficiaries." Compl. P 180. [HN14] A duty to monitor other fiduciaries, generally, is imposed as an implicit duty upon those who have the power to appoint and remove other fiduciaries. [**38] *See In re RCN Litig.*, 2006 U.S. Dist. LEXIS 12930, 2006 WL 753149, *9 (D.N.J. 2006); *Edgar v. Avaya, Inc.*, 2006 U.S. Dist. LEXIS 23151, 2006 WL 1084087, *11 (D.N.J. 2006). As discussed above, Plaintiff's complaint has failed to state a claim for breach of fiduciary duty in Counts II and III as to any of the Plans' fiduciaries. Consequently, Plaintiff's claims for failing to adequately monitor these fiduciaries must also fail. Accordingly, Count IV is dismissed.

G. Standing

Because Plaintiff alleges that he is a participant and/or beneficiary in only the Salaried Plan, Defendants challenge Plaintiff's standing to bring this action on behalf of the Savings Plan and the Variable Plan. [HN15] While it is true that Plaintiff, individually, does not have standing to commence an action pursuant to 29 U.S.C. § 1132(a)(2) and (3) unless he is a "participant, beneficiary or fiduciary" of a Plan, "it is a totally different issue whether Plaintiff has standing to assert claims on behalf of the [Savings Plan and the Variable Plan] as part of a class action." *Pietrangelo v. NUI Corp.*, 2005 U.S. Dist. LEXIS 40832, 2005 WL 1703200, *14 (D.N.J. 2005). [*482] Therefore, with respect to the claim that remains [**39] in this case, the question of whether Plaintiff has standing to bring his claim as part of a class action is best resolved on a motion for class certification. The Court will accordingly defer consideration of the issue until such a motion is filed.

### III. Conclusion [10]

10 Given the Court's disposition of Defendants' motion with regard to Plaintiff's breach of fiduciary duty claims, it is not necessary for the Court to reach Defendants' argument that, to the extent Plaintiff's fiduciary duty claims challenge the structure of the Plans (namely, the requirement of the Plans that Avaya and Lucent stock be included as investment options), such claims should be dismissed. However, were the Court to reach that argument, the Court would dismiss such claims. *See, e.g.*, Compl P 144 (alleging that Defendants breached their fiduciary duties "when they selected Avaya securities and the Avaya Stock Fund as investment options under the Plan."). To the extent that Plaintiff challenges the decision of the sponsor of the Plans to require particular investment options, Plaintiff fails to state a claim for breach of fiduciary duty. *See, e.g., Akers v. Palmer*, 71 F.3d 226, 230 (6th Cir. 1995) ("[A] company is only subject to fiduciary restrictions when managing a plan according to its terms, but not when it decides what those terms are to be.").

[**40] For the reasons stated above, the Court grants in part and denies in part the Defendants' motion to dismiss. An appropriate order accompanies this Opinion.

/s/ JOEL A. PISANO

United States District Judge

Dated: April 12, 2007