# EXHIBIT E

No. 06-856

In The

# Supreme Court of the United States

———

James LaRue,

*Petitioner,*

v.

DeWolff, Boberg & Associates, Inc.; DeWolff,
Boberg & Associates, Inc., Employees' Savings Plan,
*Respondents.*

———

**On Appeal from the United States Court of Appeals
for the Fourth Circuit**

———

**MOTION TO DISMISS THE WRIT**

———

|  |  |
|---|---|
|  | Thomas P. Gies * |
|  | Crowell & Moring LLP |
|  | 1001 Pennsylvania Ave, NW |
|  | Washington, DC 20004 |
| * Counsel of Record | (202) 624-2500 |

Wilson-Epes Printing Co., Inc.  –  (202) 789-0096  –  Washington, D. C. 20002

TABLE OF CONTENTS

|                                                                                         | Page |
| --------------------------------------------------------------------------------------- | ---- |
| TABLE OF AUTHORITIES                                                                     | ii   |
| INTRODUCTION                                                                             | 1    |
| ARGUMENT                                                                                 | 3    |
| I.   PETITIONER'S ACTIONS RENDER HIS CLAIMS MOOT                                         | 3    |
| A.  Petitioner's § 502(a)(2) claim is moot                                              | 3    |
| B.  Petitioner's § 502(a)(3) claim is also moot                                         | 4    |
| II.  THIS CASE NOW RAISES LEGAL ISSUES NOT PRESENTED TO THE COURT WHEN THE PETITION WAS FILED | 6    |
| CONCLUSION                                                                               | 8    |
| APPENDIX                                                                                 |      |
| APPENDIX A, Declaration of Morgan Buffington                                            | 1a   |
| Exhibit 1                                                                                | 3a   |
| Exhibit 2                                                                                | 7a   |

ii

## TABLE OF AUTHORITIES

CASES                                                           Page

*Amalgamated Clothing & Textile Workers Union*
*AFL-CIO v. Murdock*, 861 F.2d 1406 (9th Cir.
1988).................................................................... 7

*Arizonans for Official English v. Arizona*, 520
U.S. 43, 67 (1997) ............................................. 2, 4

*Board of License Comm'rs of Tiverton v.*
*Pastore*, 469 U.S. 238 (1985) (*per curiam*)....... 2

*Bunting v. Mellen*, 541 U.S. 1019 (2004).............. 5

*Champagnie v. Kaufman*, 2007 WL 1613491
(D.Conn. June 1, 2007)...................................... 6

*City News & Novelty, Inc. v. City of Waukesha*,
531 U.S. 278 (2001) .......................................... 3, 5, 7

*Coan v. Kaufman*, 457 F.3d 250 (2d Cir. 2006).... 7

*Craig v. Boren*, 429 U.S. 190 (1976)..................... 5

*Crawford v. Lamantia*, 34 F.3d 28 (1st Cir. 1994).. 3, 6-7

*Firestone Tire & Rubber Co. v. Bruch*, 489 U.S.
101 (1989)............................................................. 6

*Great-West Life & Annuity In.s Co. v. Knudson*,
534 U.S. 204 (2002) .......................................... 5

*Harris Trust & Say. Bank v. Salomon Smith*
*Barney, Inc.*, 530 U.S. 238, 247 (2000)............. 4-5

*Harzewski v. Guidant Light*, -- F.3d --, 2007 WL
1598907 (7th Cir. June 5, 2007)........................ 7

*In re AEP ERISA Litigation*, 437 F.Supp. 2d 750
(S.D.Ohio 2006) ................................................. 3

*Joseph v. New Orleans Elec. Pension & Retire-*
*ment Plan*, 754 F.2d 628 (5th Cir. 1985)........... 7

*Karcher v. May*, 484 U.S. 72 (1987) ..................... 5

*Kuntz v. Reese*, 785 F.2d 1410 (9th Cir. 1986) (*per*
*curiam*) *cert. denied*, 479 U.S. 916 (1986).......... 3, 6

*Loren v. Blue Cross and Blue Shield of Mich.*,
2006 WL 2228978 (E.D.Mich. Aug. 3, 2006)... 7

*Massachusetts Mutual Life Ins. Co. v. Russell*,
473 U.S. 134 (1985) .......................................... 4

iii

TABLE OF AUTHORITIES—Continued

Page

*Mertens v. Hewitt Associates*, 508 U.S. 248 (1993)................................................................    5

*Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100-01 (2d Cir. 2005) ......................................    4

*Sommers Drug Stores, Co. Employee Profit Sharing Trust v. Corrigan*, 883 F.2d 345 (5th Cir. 1989)..........................................................    3

STATUTES

29 U.S.C. § 1132(a)(2) ........................................... *passim*
29 U.S.C. § 1132(a)(3) ........................................... *passim*

IN THE

# 𝔖upreme 𝔠ourt of the 𝔘nited 𝔖tates

———

No. 06-856

———

JAMES LARUE,

*Petitioner,*

v.

DEWOLFF, BOBERG & ASSOCIATES, INC.; DEWOLFF,
BOBERG & ASSOCIATES, INC., EMPLOYEES' SAVINGS PLAN,
*Respondents.*

———

**On Appeal from the United States Court of Appeals
for the Fourth Circuit**

———

## MOTION TO DISMISS THE WRIT

———

### INTRODUCTION

On November 6, 2006, Petitioner filed a Petition for a writ for *certiorari* asking the Court to decide whether a participant in a defined contribution plan may recover alleged lost profits in his individual plan account. Petition at 6. Petitioner claims such losses resulted from Respondents' failure to timely process his request to change his investment allocations in certain mutual funds available to plan participants. Petition at 5-6. In addition to raising the question litigated in the district court whether such relief is available under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), the Petition invoked

2

ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), which was added to the case on motion for rehearing before the Fourth Circuit panel. The petition (as had the complaint) asserted that "Petitioner is a participant in the DeWolff, Boberg & Associates, Incorporated, Employees' Savings Plan," and that "Petitioner in this case is a participant in a 401(k) plan." Petition at 5, 8. The Solicitor General filed a brief recommending that the Court grant the petition, asserting that "Petitioner James LaRue is a participant in an ERISA-covered 401(k) pension plan." U.S. brief at 2. This Court then granted *certiorari* with regard to both questions.

In reviewing and assembling materials in preparation for briefing on the merits, Respondents discovered that on July 22, 2006, while the case was still pending before the Fourth Circuit, Petitioner withdrew all of his funds from his account in the Dewolff, Boberg & Associates, Inc., Employees' Savings Plan (the "Plan"). Petitioner thereby ceased to be a participant in the Plan. See Declaration of Morgan Buffington, Exh. A. Accordingly, at the time the Petition was filed, Petitioner was not then, and is not now, a participant in the Plan.

The newly discovered fact that Petitioner is no longer a participant in the Plan moots this case. *Board of License Comm'rs of Tiverton v. Pastore*, 469 U.S. 238 (1985) *(per curiam)*. Petitioner's new status leaves him with no legally cognizable interest in the outcome of the case. *Arizonans for Official English v. Arizona,* 520 U.S. 43, 67 (1997) (plaintiff below "lacked a still vital claim for prospective relief" as a result of voluntary decision to leave employment by the State of Arizona). Moreover, in order to decide the legal issues now presented by virtue of the Petitioner's new status as a former participant in the Plan, this Court would have to rule on issues on which it did not grant *certiorari.* For these reasons, the Petition should be dismissed.

3

## ARGUMENT

### I.   PETITIONER'S ACTIONS RENDER HIS CLAIMS MOOT

As a result of Petitioner's withdrawal from the Plan, there is no actual case or controversy and the case is moot. A controversy ceases to exist when the issues presented are no longer "live," or when the parties no longer have a "legally cognizable interest in the outcome." *City News & Novelty, Inc. v. City of Waukesha,* 531 U.S. 278 (2001). Neither of the two claims asserted in the Petition involve live controversies.

### A.   Petitioner's § 502(a)(2) claim is moot.

Petitioner's § 502(a)(2) claim is moot because, under the legal theory supporting this claim, there is no type of relief in which Petitioner would have any legally cognizable interest. Section 502(a)(2) provides that a civil action may be brought "by a participant, beneficiary, or fiduciary." Many lower courts have held that *former* plan participants may not bring suit under § 502(a)(2). *See, e.g., Kuntz v. Reese,* 785 F.2d 1410 (9th Cir. 1986) *(per curiam) cert. denied,* 479 U.S. 916 (1986); *Crawford v. Lamantia,* 34 F.3d 28 (1st Cir. 1994); *In re AEP ERISA Litigation,* 437 F.Supp. 2d 750 (S.D.Ohio 2006). Other courts have ruled that former participants can pursue a § 502(a)(2) claim for additional benefits under the terms of the plan. *See, e.g., Sommers Drug Stores, Co. Employee Profit Sharing Trust v. Corrigan,* 883 F.2d 345 (5th Cir. 1989) (plaintiffs who had accepted lump sum payments still had "colorable claims for vested benefits"). Respondents are unaware of any authority holding that a former participant in a defined contribution plan can bring a claim under § 502(a)(2) to recover damages measured by lost profits following an alleged failure to process a request to change investments in an individual plan account. This Court has not addressed this issue.

4

Recoveries under § 502(a)(2) must "inure to the benefit of the plan as a whole." *Massachusetts Mutual Lift Ins. Co. v. Russell*, 473 U.S. 134 (1985). In the briefing on the Petition for writ of *certiorari*, Petitioner and the Solicitor General suggested that Petitioner's § 502(a)(2) claim satisfies *Russell* because, in seeking to recover lost profits caused by Respondents' alleged failure to timely follow his investment instructions, Petitioner was actually seeking relief under § 502(a)(2) in the form of "payment by respondents (i.e., the breaching fiduciaries) *to the plan*." Petition at 14 (emphasis in original). But because Petitioner is no longer a Plan participant, he has no personal stake in whether or not the Plan receives a benefit. Accordingly, Petitioner has no legally cognizable interest in this claim, which seeks to benefit only the Plan. Moreover, because Petitioner is no longer a Plan participant, he lacks "a still vital claim for prospective relief" under this theory. *Arizonans for Official English*, 520 U.S. at 67. Now that Petitioner is no longer a Plan participant, any recovery achieved by the Plan would not benefit the Petitioner, because it could only go to the Plan. Conversely, the only way the recovery sought under this theory would reach Petitioner is through a payment directly to Petitioner. Such a recovery, of course, would not go to the Plan.

### B. Petitioner's § 502(a)(3) claim is also moot.

Petitioner's § 502(a)(3) claim likewise does not present a live controversy. Petitioner's decision to take a final distribution of his interest in the Plan means he is no longer a participant entitled to maintain a claim under this provision. *See Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100-01 (2d Cir. 2005) (in finding that plaintiff was no longer a participant when she filed the complaint and therefore could not maintain her § 502(a)(3) claim, the court stated, "The [Supreme Court] has also held that § 502(a)(3) strictly limits the 'universe of plaintiffs who may bring civil actions'" (*quoting*

5

*Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 247 (2000)).

In the district court, Petitioner argued explicitly that his § 502(a)(3) claim sought a recovery to his individual account in the Plan, rather than a payment of money damages to him, claiming that he did "not wish for the court to award him any money, but . . . simply wants the plan to properly reflect that which would be his interest in the plan." Petition App. 21a. Petitioner's newly discovered status as a former Plan participant moots the § 502(a)(3) claim for the same reasons the § 502(a)(2) claim no longer presents a live controversy. According to Petitioner's own theory, he has no legally cognizable interest in a recovery by the Plan, even if the recovery could be properly characterized (which it cannot) as appropriate equitable relief within the meaning of *Mertens v. Hewitt Associates*, 508 U.S. 248 (1993) and *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002).

This Court has recognized that when a petitioner voluntarily changes his status (for example, from participant to nonparticipant) while litigation is pending, that change may render the matter moot by eliminating the petitioner's legally cognizable interest in his claim. *See City News*, 531 U.S. 278, (dismissing claims as moot because petitioner, who had unsuccessfully applied for a license to operate an adult-oriented retail shop, voluntarily withdrew his application for the license after petitioning for review); *Karcher v. May*, 484 U.S. 72 (1987) (dismissing an appeal as moot when state legislators were not re-elected during the litigation); *Craig v. Boren*, 429 U.S. 190 (1976) (finding moot one plaintiff's challenge to an under-age drinking statute because that plaintiff came of age during the course of the litigation); *Bunting v. Mellen*, 541 U.S. 1019 (2004) (finding challenge to a school prayer policy moot, in part, because plaintiffs graduated, differentiating between plaintiff's graduation and a defendant's temporary cessation of challenged conduct).

6

Petitioner's conduct here—his voluntary withdrawal of his entire account balance in the Plan—has stripped him of the necessary status to bring a § 502(a)(3) claim as a participant. As in *City News*, it is the conduct of Petitioner, "not its adversary, whose conduct saps the controversy of vitality." 531 U.S. at 284 n.1.

## II.  THIS CASE NOW RAISES LEGAL ISSUES NOT PRESENTED TO THE COURT WHEN THE PETITION WAS FILED

Dismissal of the Petition is appropriate for the additional reason that Petitioner's changed status presents additional legal issues beyond the scope of the questions presented by the Petition.

As suggested above, the lower courts have reached arguably inconsistent outcomes with respect to the right of a former plan participant to maintain a claim for benefits under the terms of an ERISA plan. Many courts have held that a former plan participant cannot maintain such an action. But other courts, applying *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989), have held that former plan participants may continue to maintain claims under both § 502(a)(2) and § 502(a)(3) seeking additional vested benefits under the terms of the plan. *See, e.g., Champagnie v. Kaufman*, 2007 WL 1613491 (D.Conn. June 1, 2007) (finding former employee could bring both § 502(a)(2) and § 502(a)(3) claims because she had "colorable claim for vested benefits"). Many of these cases take different approaches to "statutory standing," and do not address the mootness issue now presented in this case. *Compare Kuntz v. Reese*, 785 F.2d 1410 (9th Cir. 1986) (*per curiam*) (former employees lacked standing to pursue § 502(a)(2) claims because they had received lump sum payments and therefore they were not seeking vested benefits) *cert. denied*, 479 U.S. 916 (1986); *Crawford v. Lamantia*, 34 F.3d 28 (1st Cir. 1994) (terminated employee who filed his

7

initial complaint while he was a participant and then collected
all vested benefits due to him under the plan could not pursue
§ 502(a)(2) claim as a result of the divestment); *Joseph
v. New Orleans Elec. Pension & Retirement Plan*, 754 F.2d
628 (5th Cir. 1985) (retirees who accepted lump sum pay-
ments from their Plans did not have standing to bring ERISA
claims) *cert. denied*, 474 U.S. 1006 (1985); *Loren v. Blue
Cross and Blue Shield of Mich.*, 2006 WL 2228978
(E.D.Mich. Aug. 3, 2006) (actions of plaintiff who ceased to
be a member of the plan after commencing litigation mooted
her § 502(a)(2) and § 502(a)(3) claims), *with Harzewski v.
Guidant Light*, -- F.3d --, 2007 WL 1598907 (7th Cir. June 5,
2007); *Amalgamated Clothing & Textile Workers Union
AFL-CIO v. Murdock*, 861 F.2d 1406 (9th Cir. 1988) (both
finding that former employees had standing under ERISA to
bring claims for benefits). *See also Coan v. Kaufman*, 457
F.3d 250 (2d Cir. 2006).

It is, at a minimum, clear that the question whether Peti-
tioner can continue to pursue his claims for damages meas-
ured by lost profits now that he is no longer a participant in
the Plan was not presented in the Petition. Petitioner's change
of status would thus seem to require the Court to decide a
legal issue raised here for the first time. *See City News*, at
745 (dismissing as moot, in part, because "Full briefing and
argument have revealed that the question City News tendered,
and which we took up for review, is not now and never was
accurately reflective of City News's grievance"). The new
question whether the change in Petitioner's status precludes
his theories, or gives rise to mootness, appears logically ante-
cedent to the issues on which the Court granted *certiorari*.
Therefore, this Court may wish to consider whether this new
question should now be decided.

8

## CONCLUSION

The writ of *certiorari* should be dismissed.

Respectfully submitted,

THOMAS P. GIES *
CROWELL & MORING LLP
1001 Pennsylvania Ave, NW
Washington, DC 20004
* Counsel of Record                    (202) 624-2500

No. 06-856

IN THE

## Supreme Court of the United States

———

JAMES LARUE, *Petitioner*,

v.

DEWOLFF, BOBERG & ASSOCIATES, INC.; DEWOLFF, BOBERG & ASSOCIATES, INC., EMPLOYEES' SAVINGS PLAN, *Respondents*.

## DECLARATION OF MORGAN BUFFINGTON

My name is Morgan Buffington.  I have prepared this Declaration in support of Respondents' motion to dismiss the petition for *certiorari* filed in the above-referenced case. The facts and information contained herein are based on my personal knowledge and are true and correct to the best of my knowledge.

1. I am the Vice President of Finance & Administration for DeWolff, Boberg & Associates, Inc. ("DBA").  DBA is the plan sponsor of the Dewolff Boberg Employees' Savings Plan ("the Plan").

2. On Wednesday, July 11, 2007 I learned that, in July, 2006, Petitioner James LaRue elected to withdraw all of his funds from the Plan and ceased to be a participant in the Plan.  I conveyed this information to our counsel later that same day.

3. A firm known as The Pension Service Inc. ("TPSI") is the third party administrator of the Plan.  I requested the documents described in this declaration from TPSI to verify the accuracy of the facts described herein.

4.  Mr. Larue completed and signed an "Election of Payment Method Form" on July 22, 2006, and selected the option to receive "ALL of my Plan distribution." (Ex. 1). That form was processed by TPSI within a few days. Once that happened, Mr. LaRue ceased being a participant in the Plan, an event which took place no later than July 27, 2006. (Ex. 1).

5.  In October, 2006, Mr. LaRue received his last quarterly statement from TPSI. The statement shows a balance of $0.00 and a withdrawal of $119,009.13 during the third quarter of 2006. (Ex. 2). Mr. LaRue did not receive any subsequent quarterly statements from TPSI.

6.  Mr. LaRue terminated his employment with DBA in 2001. Because he was no longer employed by DBA in July 2006 and received no other income from DBA, he could not make any additional contributions to the Plan following his decision to close out his account.

7.  Mr. LaRue did not complete forms to take a hardship withdrawal or submit any documentation necessary to make a hardship withdrawal. Mr. LaRue did not withdraw his account balance as a loan.

<p style="text-align:center">*          *          *          *</p>

Pursuant to 28 U.S.C. Section 1746, I declare, under penalty of perjury under the laws of the United States, that the foregoing is true and correct. Executed this 18th day of July, 2007, at Easley South Carolina.

Dated: ___July 18___, 2007        _____Morgan Buffington_____

                                         Morgan Buffington

2a

5188399713          TPSI                                                    01:29:42 p.m.     07-11-2007        1/4

Pensions Administrative Services                                                            Page 1 of 1

3a

## Participant Information

### DEWOLFF-BOBERG & ASSOCIATES, INC., 743-███

### JAMES LARUE, ███-██-████

| General | ██████████ | Allocation | Trans History | Trading Policies |

**Sort By:**      ◉ Source then Fund          ○ Fund Only          ○ Fund then Source

**As Of 07/10/2007:**

**Grand Total for Participant:**        $0.00

                                                                    Page 1 of 1

        **Source #**                    **Source Code**            **Source Description**
                                                                    Page 1 of 1

*\*\* Unit and unit values are rounded to six (6) decimal places. All accounting is actually
calculated at eight (8) decimal places.*

*\*\*\*\* Your actual balance may be different if you are not fully vested.*

Return to Top

©1998, 1999 Nationwide Financial Services, Inc. All rights reserved. Additional legal terms. Unless otherwise noted, annuity
and life insurance products are underwritten by Nationwide Life Insurance Company or the Nationwide Life and Annuity
Insurance Company and trust programs and services are provided by Nationwide Trust Company, FSB, members of the
Nationwide Insurance Enterprise.

JULY 27, 2006


DENOLFF-BOBERG & ASSOCIATES,            THE PENSION SERVICE INC.
INC.                                    3685 HARLEM ROAD
102 PROFESSIONAL BUILDING               SUITE 2B
HILTON HEAD ISLAND, SC  29928-1717      CHEEKTOWAGA, NY  14215-2046


RE:  Case:   743-█████              CONTRACT #:  GAP-C4-HF44
     Name:   JAMES LARUE
     SSN:    XXX-XX-████

Below is a tax confirmation of the recently processed WITHDRAWAL:

-----------------------------------------------------------------------------------------

Tax Form Recipient Address       JAMES LARUE
                                 ███ █████████ ████.
                                 ███ ███, ███ ███.
                                 SOUTHLAKE, TX  76092-6164

SSN                              XXX-XX-████
State Tax Code                   TX
Form Type                        TOTAL
Distribution Code        :       1


Tax Gross                          119,009.13

Federal Taxable                    119,009.13
Federal Taxes Withheld              33,278.07
Additional Federal Taxes Withheld        0.00
TOTAL Federal Taxes Withheld        33,278.07

State Taxable                            0.00
State Taxes Withheld                     0.00
Additional State Taxes Withheld          0.00
TOTAL State Taxes Withheld               0.00

Outstanding Loan                    47,381.22
Employee Contribution                    0.00
Subject to Capital Gains                 0.00

4a

5a

JULY 27, 2006

DEWOLFF-BOBERG & ASSOCIATES,              THE PENSION SERVICE INC.
INC.                                      3685 HARLEM ROAD
102 PROFESSIONAL BUILDING                 SUITE 2B
HILTON HEAD ISLAND, SC 29928-1717         CHEEKTOWAGA, NY 14215-2046

RE: Case:   743-█████.                    CONTRACT #: GAP-C4-HF44
    Name:   JAMES LARUE
    SSN:    XXX-XX-████

Below is a tax confirmation of the recently processed WITHDRAWAL:

-------------------------------------------------------------------------------

Tax Form Recipient Address          JAMES LARUE
                                    ███ ███████ ████
                                    ███ ███, ███-██.
                                    SOUTHLAKE, TX 76092-6164

SSN                                 XXX-XX-████
State Tax Code                      TX
Form Type                           TOTAL
Distribution Code                   1L


Tax Gross                                0.00

Federal Taxable                          0.00
Federal Taxes Withheld                   0.00
Additional Federal Taxes Withheld        0.00
TOTAL Federal Taxes Withheld             0.00

State Taxable                            0.00
State Taxes Withheld                     0.00
Additional State Taxes Withheld          0.00
TOTAL State Taxes Withheld               0.00

Outstanding Loan                     47,381.22
Employee Contribution                    0.00
Subject to Capital Gains                 0.00

5188399713        TPSI                                    01:30:18 p.m.    07-11-2007        4/4

Jul 24 06 10:59a      de La Rue                    817-7420703        p.1

**T P S I**

3685 Harlem Road, Suite 2B
Cheektowaga, NY 14215
Phone: (716) 839-9405
Fax: (716) 839-9713

## DeWolff-Boberg Employees' Savings Plan

**ELECTION OF PAYMENT METHOD FORM** (Please Print Clearly)

PARTICIPANT NAME: _____James LaRue_____    DATE OF BIRTH:▓▓▓▓

DATE OF HIRE: 10/82 DATE OF TERMINATION: 8/01 SSN: ▓▓▓▓▓▓

I understand that I have an outstanding loan balance and if I elect to withdraw my account balance and not pay the loan balance back, my outstanding loan balance will be defaulted and will become a taxable distribution (includable as taxable income on x form 1099).

I hereby elect the following method(s) of payment for my distribution from the Plan:

( )    **DIRECT ROLLOVER** of (select one):
    ( )    ALL of my Plan distribution
    ( )    $_____ of my Plan distribution ($500 or more)
    ( )    The portion of my Plan distribution not paid directly to me ($500 or more)

Name of Funding Company: _____

Your Account #: _____

Name of Plan (if applicable) and Address of IRA or Plan: _____

I represent that the above-named eligible retirement Plan is an individual retirement account or individual annuity established in my name, or a qualified defined contribution retirement Plan or annuity Plan which accepts direct rollovers.

(✓)    **PAYMENT TO ME** of (select one):
    (✓)    ALL of my Plan distribution
    ( )    $_____ of my Plan distribution
    ( )    The portion of my Plan distribution not paid in a direct rollover

*[handwritten:]* Wire to bank acct. #    Chase Bank
ABA Rtg. # ▓▓▓▓
Chase Bank
4500 Colleyville Blvd.
Colleyville, TX 76034
817/427-5861

The amounts distributed are in accordance with the terms and provisions of the Plan, and represent a total lump sum distribution of 100% of my account balance.

I acknowledge that all amounts paid directly to me from the Plan are subject to the Mandatory 20% Federal withholding for Income Tax.

_____        _____
PARTICIPANT SIGNATURE            SPOUSAL SIGNATURE (if applicable)

▓▓▓▓▓▓▓▓▓, Box 750    Southlake, TX 76092
STREET                            CITY, STATE, ZIP

7/22/06
DATE

6a

7a



THE PENSION SERVICE INC.
3685 HARLEM ROAD
SUITE 2B
CHEEKTOWAGA , NY 14215-2046

JAMES LARUE

SOUTHLAKE TX 76092-6164

SSN:            XXX-XX-

DEWOLFF-BOBERG & ASSOCIATES, INC.

743 -

**YOUR TOTAL ACCOUNT VALUE IS:**
**$0.00 AS OF 09/30/2006**

## YOUR RETIREMENT PORTFOLIO FROM 07/01/2006 TO 09/30/2006

Your Account At A Glance

| | |
|---|---|
| **Opening Value on 07/01/2006** | **$118,670.24** |
| Contributions | $0.00 |
| Investment Gain/(Loss) | $338.89 |
| Withdrawals | ($119,009.13 ) |
| **Total Account Value on 09/30/2006** | **$0.00** |

*02010*



Your Recent Retirement Account History*

$143,329

$0

| $142,050 | $143,329 | $118,670 | $0 |
| Dec 31, 2005 | Mar 31, 2006 | Jun 30, 2006 | Sep 30, 2006 |

*Corrections made after the close of past periods are not reflected in this representation.

Investment Volatility Year

| | % of Total | Period End Balance | Unit Value |
|---|---|---|---|
| **Stable Value**<br>Gartmore Money Mkt Fd lo | 0.00 % | $0.00 | 1.066690 |
| **Total Account Value** | 0 % | $0.00 | |

Due to rounding, Total Account Value percentage may not equal 100%. Your actual balance may be different if you are not yet fully vested with your employer. Please contact your employer for details.



Stable Value

8a

## YOUR CURRENT INVESTMENT PORTFOLIO BY FUND OPTION AND SOURCE

### YOUR EMPLOYEE PRE-TAX DEFERRALS

| Fund Option | Beginning Balance | Contributions | Withdrawals | Transfers | Earnings | Ending Balance | Unit |
|---|---|---|---|---|---|---|---|
| **Stable Value** | | | | | | | |
| Gartmore Money Mkt Fd Ic | $118,670.24 | $0.00 | $0.00 | ($119,009.13) | $338.89 | $0.00 | 0.0000 |
| **Total** | | | | | | | |

## COMMENTS

A review of the 401k Plan's investment choices was completed recently. As a result of this analysis, the following current funds will be replaced by the corresponding new funds effective 6/30/03:

| CURRENT FUNDS | NEW FUNDS |
|---|---|
| Janus Worldwide | American Funds Euro Pacific Growth |
| Van Kampen Real Est. | AIM Real Estate Fund – A |
| Invesco Energy Fund | Prudential Natural Resources – A |

No action is required on your part if you want to have your investment funds automatically replaced with the new funds. The new funds will also be changed within your deposit allocation so that new deposits will be allocated appropriately.

## YOUR INVESTMENT PERFORMANCE SUMMARY FROM 07/01/2006 TO 09/30/2006

Your personal performance during this reporting period is 1.12 %.
This performance is for the period beginning 07/01/2006 and ending 09/30/2006. It is for your entire portfolio and takes into account your beginning balance, and the amount and timing of any deposits or withdrawals.

Your personal performance for this year-to-date is 3.00 %.
This performance is for the period beginning 01/01/2006 and ending 09/30/2006. It is for your entire portfolio and takes into account your beginning balance, and the amount and timing of any deposits or withdrawals.

9a



Below is the past investment performance for each of the fund alternatives selected by your Plan Representative. Past performance may be of help for future planning. Please note that past performance is not a guarantee of future performance.

**Performance as of 09/29/2006**

| | Actual | | Annualized | | | Annualized | |
|---|---|---|---|---|---|---|---|
| + Aim Real Estate Fund A | 23.80 % | 28.82 % | 28.34 % | 24.31 % | N/A | 14.17 % | 12/31/1998 |
| + Dreyfus Prem Tech Gr Fd A | 0.65 % | 6.17 % | 5.32 % | 6.05 % | N/A | 7.42 % | 10/13/1997 |
| + Oppnhmr Devl Markets Fd A | 6.50 % | 17.45 % | 34.49 % | 31.81 % | N/A | 17.27 % | 11/18/1996 |
| + Oppnhmr Global Oppor Fnd A | 7.91 % | 20.00 % | 23.70 % | 16.58 % | 15.41 % | 13.58 % | 10/22/1990 |
| + Jensn Nat Resources Fd A | 7.20 % | 10.51 % | 35.65 % | 32.22 % | 15.65 % | 12.83 % | 01/22/1990 |
| + Rydex Small Cap Valu Fd H | 7.25 % | 6.52 % | N/A | N/A | N/A | 10.13 % | 02/20/2004 |
| + Rydex Midcap Growth Fund H | (4.14 %) | 0.51 % | N/A | N/A | N/A | 5.52 % | 02/20/2004 |
| + Franklin Ss Bio Disc Fd A | (5.37 %) | (5.25 %) | 5.78 % | 1.86 % | N/A | 8.60 % | 09/15/1997 |
| + Vankamp Real Est Sec Fd A | 24.14 % | 29.31 % | 28.51 % | 22.56 % | 16.17 % | 15.43 % | 06/09/1994 |
| + Aim Energy Fund Ic | 2.12 % | 1.18 % | 34.70 % | 22.85 % | 15.93 % | 10.46 % | 01/19/1984 |
| + Aim Technology Fd Ic | 5.13 % | 8.92 % | 7.21 % | 2.52 % | 1.85 % | 10.63 % | 01/03/1984 |
| + Ivy Science And Tech Fnd Y | 4.35 % | 9.24 % | 16.97 % | 10.05 % | N/A | 13.84 % | 06/30/1998 |
| + –Europacific Grth Fund R3 | 11.69 % | 19.30 % | 22.05 % | 14.59 % | 10.25 % | 13.08 % | 04/16/1984 |
| + Am Cent Sm Cp Value Fd Ac | 7.11 % | 8.29 % | 16.99 % | 14.46 % | N/A | 14.66 % | 07/31/1998 |
| + Jpm Sm Cap Value Fd Cls A | 9.43 % | 10.67 % | 16.87 % | 15.53 % | 12.65 % | 10.03 % | 06/30/1972 |
| + Federated Midcap Gr Strt A | 1.41 % | 3.71 % | 13.87 % | 6.67 % | 8.17 % | 12.13 % | 06/23/1984 |
| + Janus Adv Gr & Inc S | 2.18 % | 3.95 % | 12.55 % | 5.99 % | N/A | 7.95 % | 05/01/1998 |
| P Janus Twenty Fnd | 2.09 % | 3.35 % | 14.71 % | 7.15 % | 8.98 % | 12.54 % | 04/30/1985 |
| + Neu Ber Genesis Fd Tc | 0.64 % | (0.07 %) | 15.98 % | 15.11 % | 13.77 % | 13.70 % | 09/26/1988 |
| + Neu Ber International Tr | 11.00 % | 14.53 % | 27.77 % | 18.66 % | 11.07 % | 10.65 % | 06/15/1994 |
| + Opp Global Fnd Cls A | 7.96 % | 12.79 % | 19.22 % | 13.27 % | 12.70 % | 12.61 % | 12/22/1969 |
| + Jennison Health Sciences A | 3.33 % | 5.54 % | 20.56 % | 11.91 % | N/A | 16.49 % | 06/30/1999 |
| + Rydex Mid Cap Value Fund H | 6.02 % | 6.25 % | N/A | N/A | N/A | 9.93 % | 02/20/2004 |
| + Rydex Large Cap Gr Fund H | 0.56 % | 1.90 % | N/A | N/A | N/A | 0.71 % | 02/20/2004 |
| + Rydex Large Cap Value Fd H | 8.41 % | 10.24 % | N/A | N/A | N/A | 8.09 % | 02/20/2004 |
| + Aim Financial Srvc Fd Ic | 8.12 % | 18.05 % | 11.16 % | 7.45 % | 10.80 % | 13.55 % | 05/30/1986 |
| + Aim Glbl Hlth Care Inv Cls | 2.26 % | 4.19 % | 9.84 % | 3.49 % | 9.99 % | 11.87 % | 08/07/1989 |
| + Aim Midcap Cor Equity Fd A | 4.39 % | 6.19 % | 11.62 % | 10.02 % | 9.50 % | 12.24 % | 06/09/1987 |
| + –Growth Fund Of America R3 | 3.77 % | 8.83 % | 13.84 % | 9.45 % | 12.34 % | 14.58 % | 11/30/1973 |
| + Crm Mdcp Valu Fd Invst Shr | 8.04 % | 10.23 % | 18.40 % | 16.04 % | N/A | 14.94 % | 09/20/2000 |
| + Davis Financial Fnd Cls A | 9.05 % | 18.60 % | 14.60 % | 9.96 % | 12.37 % | 15.94 % | 05/01/1991 |
| + Federated Cap Appr Fd A | 6.68 % | 8.50 % | 9.04 % | 4.85 % | 9.36 % | 12.20 % | 01/03/1977 |
| + Janus Adv Ww S | 5.25 % | 9.18 % | 9.36 % | 3.25 % | N/A | 5.62 % | 04/30/1997 |
| + Opp Cap App Fnd Cls A | 2.64 % | 6.32 % | 8.16 % | 4.29 % | 7.99 % | 13.62 % | 01/22/1981 |
| + Oppnhmr Intl Bond Fd A | 3.25 % | 2.93 % | 9.65 % | 14.16 % | 8.55 % | 9.66 % | 06/15/1995 |
| + Pioneer Midcap Value Fd A | 3.88 % | 5.61 % | 15.79 % | 12.72 % | 9.99 % | 12.69 % | 07/28/1990 |
| + Dws Dmnn Hi Rtn Eq A | 9.65 % | 11.65 % | 15.30 % | 8.47 % | 10.85 % | 13.83 % | 03/18/1988 |
| + Pimco Real Return Fd A | 1.27 % | 0.93 % | 4.23 % | 6.63 % | N/A | 7.03 % | 01/29/1997 |
| + Thornburg Value Fund Cls I | 12.74 % | 15.76 % | 13.87 % | 6.30 % | N/A | 8.51 % | 11/02/1998 |
| + Vankamp Comstock Fd A | 9.19 % | 13.30 % | 14.16 % | 8.37 % | 11.90 % | 11.81 % | 10/07/1968 |
| + Wfaf Gov Securities Inv Cl | 2.27 % | 2.58 % | 2.30 % | 3.93 % | 5.72 % | 7.08 % | 10/29/1988 |
| + Saibro Is Hi Yld Bond Fd A | 5.25 % | 6.01 % | 8.47 % | 11.08 % | 6.35 % | 8.20 % | 02/22/1995 |
| + Calvert Income Fd A | 3.02 % | 3.71 % | 4.66 % | 6.87 % | 7.86 % | N/A | 02/04/1982 |
| + Gdnmacs Ult Sht Dur Govt A | 3.10 % | 3.86 % | 2.20 % | 2.18 % | 3.68 % | 3.97 % | 05/15/1995 |
| + Oppnhmr Ltd Term Govt Fd A | 2.90 % | 3.47 % | 1.93 % | 2.51 % | 4.31 % | 6.02 % | 03/10/1986 |
| + Gartmore Money Mkt Fd Ic | 3.11 % | 3.95 % | 2.07 % | 1.57 % | 3.12 % | 5.70 % | 03/03/1980 |



"02020"

Fund performance is calculated by Nationwide Financial Services, Inc. This fund performance calculates changes in net assets assuming the reinvestment of capital gains and income dividends, and reflects the underlying fund expenses and the deduction of Nationwide's asset fee of 0.50% for primary(P), 0.30% for primary plus(+). Performance for the funds is based on the current charges being applied to all historical time periods and does not include any other fees or expenses including termination charges, plan or participant fees, or trust fees, if applicable. Any such fees and charges, if applicable and reflected, would lower the performance described above. PAST PERFORMANCE IS NOT A GUARANTEE OF FUTURE RESULTS. Investment returns and principal are not guaranteed and the value at the time of redemption may be worth more or less than its original cost. Nationwide is not making any recommendations regarding these funds. Although data is gathered from reliable sources, Nationwide cannot guarantee its completeness and accuracy. Performance results for the time periods this investment option has been offered in the program are reflected in the figures without "*" to the right of the number. Results that have an "*" to the right of the number are for the underlying fund prior to it being offered within this program. When there is market volatility, current returns may be less than the performance shown. **Before investing, understand that mutual funds, collective investment funds and annuities are not insured by the FDIC, NCUSIF, or any other Federal government agency and are not deposits or obligations of, guaranteed by, or insured by, the depository institution where offered or any of its affiliates. Mutual funds, collective investment funds and annuities involve investment risk and may lose value.** Investing involves market risk, including possible loss of principal, and there is no guarantee that investment objectives will be achieved. The use of an asset allocation model does not guarantee returns or insulate you from potential losses. For more complete information, including fees, charges and expenses, please refer to additional information, investment profiles and underlying fund prospectuses, if applicable, from your pension representative. Please note your plan may include Collective Investment Funds for which prospectuses are not applicable. Please read the information carefully before investing any money. Certain of the funds are only available as investment options in variable life insurance or variable annuity contracts issued by life insurance companies. They are NOT offered or made available to the general public directly. Trust programs and trust services are offered by Nationwide Trust Company, FSB. Nationwide Investment Services Corporation, member NASD. In MI only: Nationwide Investment Svcs. Corporation.

Nationwide Investment Services Corporation, Member NASD/SIPC. Nationwide Investment Svcs. Corporation, Member NASD/SIPC (in the State of Michigan).

## IMPORTANT INFORMATION

Your plan balances are reported using "Unit Values" and "Units". This valuation method allows your account to be valued on a daily basis. Your plan's assets are not part of a collective investment trust or common trust fund. The Unit Value reflects changes in the fund's Net Asset Value, any distributions received (Dividends, Capital Gains or Interest) and any asset fees assessed under the plan. The value of your account, or any transaction thereon, is determined by multiplying the number of Units times the Unit Value. If you have any questions regarding Units or Unit Values, please contact your pension representative.

**Your retirement account is always at your fingertips, 24 hours a day, seven days a week.**

**Call our INQUIRE line at 1-800-772-2182 or**

**visit our web site at www.nationwide.com**

10a