IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WALTER PHILLIPS, On Behalf of Himself and All Others Similarly Situated,<br><br>              Plaintiff,<br><br>   v.<br><br>MOLSON COORS BREWING COMPANY, et al.<br><br>              Defendants. | )<br>)<br>)<br>)<br>)   C.A. No. 05-604-GMS<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANTS' SUPPLEMENTAL OPENING BRIEF IN SUPPORT OF
THEIR MOTION TO DISMISS THE AMENDED COMPLAINT**

OF COUNSEL:

Brian T. Ortelere
Morgan Lewis & Bockius LLP
1701 Market Street
Philadelphia, Pennsylvania 19103-2921
(215) 963-5150/5201

Donald L. Havermann
Morgan Lewis & Bockius LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 739-5072

Attorneys for Defendants Peter H. Coors, W. Leo Kiely III, Charles M. Herington, Franklin W. Hobbs, Randall Oliphant, Pamela Patsley, Wayne Sanders, Albert C. Yates, Barbara Albanesi, David Barnes, Chat Chatterjee, James Fredericks, Michael J. Gannon, Robert Klugman, Michael Kruteck, Vonda Mills, Jeff Morgan, Michael Rumley, Ben Schwartz, Rob Witwer, Timothy Wolf, Katherine L. MacWilliams and Harold R. Smethhills

Dated: March 24, 2008

Charles F. Richards, Jr. (#701)
*richards@rlf.com*
Jeffrey L. Moyer (#3309)
*moyer@rlf.com*
Elizabeth Tucker Sudderth (#4468)
*sudderth@rlf.com*
Richards, Layton & Finger, P.A.
One Rodney Square, P.O. Box 551
Wilmington, Delaware 19899-0551
(302) 651-7700

Attorneys for Defendants

RLF1-3265242-1

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION .......................................................................................................................1

    I.    THE THIRD CIRCUIT'S DECISION IN *EDGAR V. AVAYA, INC.* ...........................1

        A.    Introduction. ..............................................................................................................1

        B.    The District Court's ruling. .......................................................................................2

        C.    The Third Circuit's ruling. ........................................................................................4

    II.   APPLICATION OF *EDGAR V. AVAYA* TO PLAINTIFF'S CLAIMS......................7

        A.    The Prudence Claim. ................................................................................................7

        B.    The Disclosure/Misrepresentation Claim. ................................................................9

CONCLUSION...........................................................................................................................10

# TABLE OF AUTHORITIES

## CASES

**Page**

*Edgar v. Avaya. Inc.*,
503 F.3d 340 (3d Cir. 2007).................................................................................*passim*

*Edgar v. Avaya. Inc.*,
2006 U.S. Dist. LEXIS 23151 (D.N.J. Apr. 24, 2006) ..................................................2, 3, 4

*Moench v. Robertson*,
62 F.3d 553 (3d Cir. 1995).................................................................................................3

## FEDERAL STATUTES

29 U.S.C. §1107(d)(3)(A).....................................................................................................2

**INTRODUCTION**

Pursuant to this Court's Order of March 5, 2008, Defendants hereby submit this supplemental memorandum to inform the Court of a recent decision further supporting the immediate dismissal of the Amended Complaint. In particular, the Third Circuit's recent opinion in *Edgar v. Avaya, Inc.*[1] establishes that this Court should employ a deferential "abuse of discretion" standard upon review of an "eligible individual account plan" ("EIAP") fiduciary's decision to offer and retain company stock as an investment option in the EIAP. More specifically, this standard governs this Court's review of Defendants' decisions related to the Coors stock in the "Memphis Plan" and the "S&I Plan"[2] (collectively the "Plans") and further necessitates the immediate dismissal of Plaintiff's[3] claims because he has not (and cannot) plead facts establishing an abuse of discretion.[4] *Avaya* also dispenses with Plaintiff's allegations that Defendants breached their ERISA disclosure duties.[5]

## I. THE THIRD CIRCUIT'S DECISION IN *EDGAR V. AVAYA, INC.*

### A. Introduction.

In *Avaya*, the Third Circuit affirmed the 12(b)(6) dismissal of plaintiff Jane Edgar's ("Edgar") complaint for failure to plead facts sufficient to establish that defendants breached their ERISA fiduciary duties by offering Avaya common stock as an investment option in three defined contribution plans, and by failing to disclose allegedly material information to plan

---

[1] 503 F.3d 340 (3d Cir. 2007).
[2] The full names of the plans are the 401(k) Savings Plan for Hourly Employees at the Memphis, TN Brewery (the "Memphis Plan") and the Coors Savings & Investment Plan (the "S&I Plan"). *See* D.I. 45, Exs. 1-4.
[3] Plaintiff will be referred to, at times, as "Mr. Phillips" or "Phillips."
[4] *See* D.I. 45 at 25-27.
[5] *See* D.I. 45 at 27-28.

1

RLF1-3265242-1

participants. 503 F.3d at 342. The three plans at issue were EIAPs[6] and gave participants discretion to allocate their contributions among a broad range of investment options. *Id.* at 343. The plans' terms also provided that investment options "shall include the Avaya Stock Fund, which shall be invested primarily in shares of Avaya common stock...." *Id.* Each plan's summary plan description ("SPD") also contained provisions relating to the Avaya Stock Fund and stated that the value of a participant's investment in the fund "will vary depending upon Avaya's performance, the overall stock market, the performance and amount of short-term investment held by the fund...[i]nvesting in a non-diversified single stock fund carries more risk than investing in a diversified fund." *Id.* at 344.

Avaya announced in an April 2005 quarterly earnings statement that it was unlikely to meet previously forecasted earnings goals. *Id.* Immediately following the announcement, the price of Avaya common stock fell from $10.69 to $8.01 per share. *Id.* In July 2005, Edgar filed a class action lawsuit on behalf of all plan participants invested in the Avaya Stock Fund between October 2004 and July 2005, alleging that: (a) defendants breached their fiduciary duties by imprudently offering Avaya stock as an investment option during the above-noted period; and (b) defendants breached a duty to notify plan participants of Avaya's "allegedly deteriorating financial condition" prior to the earnings announcement. *Id.*

### B. The District Court's ruling.

The New Jersey District Court held[7] that Avaya's decision to offer and retain company stock as an investment option was to be reviewed only under an "abuse of discretion" standard

---

[6] EIAPs are defined as "an individual account plan which is (i) a profit-sharing, stock bonus, thrift, or savings plan; (ii) an [ESOP]; or (iii) a money purchase plan which...[is] invested primarily in qualifying employer securities." 29 U.S.C. §1107(d)(3)(A). *See* D.I. 44 at 15-16 (explaining why the Coors Plans are EIAPs).
[7] 2006 U.S. Dist. LEXIS 23151 (D.N.J. Apr. 24, 2006).

first set forth in the Third Circuit's decision in *Moench v. Robertson*.[8] In *Moench*, the Court of Appeals held that a fiduciary of an employee stock ownership plan ("ESOP"), one type of EIAP, is entitled to "a presumption that it acted consistently with ERISA" when it decides to invest plan assets in the sponsoring company's stock. 62 F.3d at 571. This presumption may be overcome only "by establishing that the fiduciary abused its discretion by investing in employer securities" by pleading and proving that the fiduciary could not have reasonably believed that continued investment in the security was appropriate due to a "precipitous decline in the price of [the stock] ... knowledge of its impending collapse ... [or] changed circumstances to such an extent" that the fiduciary could only effectuate the trust's purposes "by deviating from the trust's direction" to invest in employer securities. *Id.* at 571-2.

Because the Avaya plans mandated that the Avaya Stock Fund be offered to participants as an investment option "just as required by an ESOP," the *Edgar* district court found that "it would seem appropriate to give the same [*Moench*] deference" to Avaya's decision to offer and maintain plan investments in Avaya stock throughout the stated class period. 2006 U.S. Dist. LEXIS 23151, at *16-17 (internal cites omitted). Using this standard, the district court found that Edgar failed to allege facts establishing Avaya's deteriorating financial condition and sufficient to show an abuse of discretion. Instead, the district court found that the "sole incident" offered by Edgar to support her claims was a twenty-five percent drop of the price of Avaya stock following the April 2005 announcement. The court found this stock decline insufficient to constitute a breach of fiduciary duty. "'Mere stock fluctuations, even those that trend downward significantly, are insufficient to establish the requisite imprudence to rebut the *Moench*

---

[8] 62 F.3d 553 (3d Cir. 1995)

presumption.'" *Id.* at *18 (quoting *Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1099 (9th Cir. 2004)).

The district court also held that Edgar failed to plead any facts supporting her allegations that defendants provided materially false information to plan participants during the class period. The court first held that to require Avaya to release any financial information it may have had prior to the April 2005 earnings announcement would have resulted in a "swift market adjustment" under the "efficient capital markets hypothesis." This market adjustment, the court reasoned, would have in turn led to plan participants "sustain[ing] the same losses they incurred when the Company publicly announced the quarterly results in April 2005" because they would not have been to sell their holdings at the "higher, pre-announcement price." *Id.* at **27-29. The court also found that to jettison company stock prior to the April 2005 announcement would have violated federal securities laws prohibiting insider trading. *Id.* **29-30. Accordingly, the district court granted the Avaya defendants' 12(b)(6) motion.

### C. The Third Circuit's ruling.

On appeal, the Third Circuit rejected Edgar's argument that the *Moench* standard should not apply to Avaya's plans because they were not ESOPs. *Avaya*, 503 F.3d at 347. Noting that an ESOP is one of several types of pension plans categorized under ERISA as an EIAP, the Court of Appeals further opined that "one of the purposes of EIAPs is to promote investment in employer securities," and that EIAPs are subject "to many of the same exceptions that apply to ESOPs" such as ERISA's duty to diversify. *Id.* From that starting point, the Court concluded that "the underlying rationale of *Moench* applies equally [to an EIAP]," and affirmed the district

court's application of the *Moench* standard to Avaya's decision to offer the Avaya Stock Fund as an investment option throughout the class period. *Id.* at 347-48.[9]

The Third Circuit then applied the *Moench* standard to affirm the district court's 12(b)(6) dismissal of Edgar's complaint for failure to make allegations sufficient to rebut the "presumption of prudence" accorded to the investment in Avaya stock. In so doing, the Court stated:

> Edgar's allegations, if true, indicate that during the Class Period, Avaya was undergoing corporate developments that were likely to have a negative effect on the company's earnings and, therefore, on the value of the company's stock. In fact, this is precisely what happened…We cannot agree, however, that these developments, or the corresponding drop in stock price, created the type of dire situation which would require defendants to disobey the terms of the Plans by not offering the Avaya Stock Fund as an investment option, or by divesting the Plans of Avaya securities.

*Id.* at 348.

Indeed, the Court noted that Avaya would have risked liability for failure to follow the plans' terms if it had divested the plans of Avaya stock, especially if the price of the securities rebounded (which is exactly what happened by late July 2005). *Id.* at 349 n.13. The Circuit Court also rejected Edgar's claims that the district court's application of *Moench* at the motion to dismiss stage was "inconsistent with the liberal pleading standards set forth in Rule 8 of the Federal Rules of Civil Procedure." *Id.* "Quite simply, if a plaintiff does not plead all of the essential elements of his or her legal claim, a district court is required to dismiss the complaint pursuant to Rule 12(b)(6)," especially when the plaintiff's allegations, even if proven true, "cannot establish that defendants abused their discretion." *Id.* at 349.

---

[9] As more fully discussed below, the Plans at issue in this litigation are EIAPs. *See* D.I. 44 at 15-16.

The Third Circuit also affirmed the dismissal of Edgar's disclosure and misrepresentation claims, rejecting Edgar's argument that defendants were required to disclose the adverse information to the plans' participants prior to the April 2005 earnings announcement. Instead, the Court found that the plans' SPDs "inform Plan participants that their investments are tied to the market performance of the funds; that each fund carried different risks and potential returns; [and] that participants are responsible for investigating the investment options." *Id.* at 350. The Court further held that the SPDs "explicitly" warned participants about the particular risks associated with investing in a non-diversified fund and contained no provisions guaranteeing a particular return on the investments. *Id.* As such, the Court concluded that "these disclosures were sufficient to satisfy defendants' obligation not to misinform participants about the risks associated with investment in the Avaya Stock Fund." *Id.* The Court also noted that plan fiduciaries did not have a duty "to 'give investment advice' or 'to opine on' the stock's condition". *Id.* (quoting *In re Unisys Sav. Plan Litig.*, 74 F.3d 420, 443 (3d Cir. 1996)).

Finally, the Third Circuit rejected Edgar's argument that the defendants should have disclosed the company's adverse financial circumstances sooner, or divested the plan's holdings in company stock before disclosing adverse information to the securities market. The court held:

> To the extent [plaintiff] argues that the adverse development disclosed in the April 19, 2005 earnings announcement should have been disclosed earlier, we agree with the District Court that had the Avaya defendants publicly released any adverse information they had prior to the April 2005 announcement, under the "efficient capital markets hypothesis," such a disclosure would have resulted in a swift market adjustment. Therefore, as the District Court reasoned, the Plans would not have been able to sell their Avaya stock holdings at the higher, pre-announcement price, and the Plans would have sustained the same losses they incurred when the Company publicly announced the quarterly results in April 2005. In addition, the District Court observed, had defendants decided to divest the Plans of Avaya stock prior to April 19, 2005, based on information that was not publicly available, they would have faced potential liability under the securities laws for insider trading.

*Id.* at 350 (citation omitted).

In sum, the Court held that the Avaya defendants "fulfilled their duty of disclosure under ERISA by informing Plan participants about the potential risks associated with investment in the Avaya Stock Fund" and that their decision not to inform plan participants about adverse corporate developments prior to the April 2005 announcement did not "constitute a breach of their disclosure obligations under ERISA." *Id.* at 350-51.

## II.   APPLICATION OF *EDGAR V. AVAYA* TO PLAINTIFF'S CLAIMS.

*Avaya* governs this Court's review of Plaintiff's Amended Complaint and compels the immediate dismissal of the lawsuit. Indistinguishable from the claims in *Avaya*, Plaintiff alleges that Defendants breached their fiduciary duties under ERISA by offering Coors stock as an investment option in its defined contribution plans and should have either: (a) instructed the Plans' trustees to sell the Plans' investments in company stock (despite ERISA's endorsement of investments in employer stock and notwithstanding the fact that such instructions would have violated federal insider trading laws); or (b) furnished the "correct" information to Plan participants so they could have transferred out of company stock investments before the stock price declined. (Am. Compl., D.I. 25, ¶116). Considered next to *Avaya*, Phillips' claims cannot go forward.

### A.   The Prudence Claim.

Like the Avaya plans, the Plans are EIAPs and give participants the opportunity to invest in several separate funds, including a company stock fund (D.I. 45, Ex. 1, §9.3 and Ex. 3, §9.3). The challenged investments serve the congressional goal of employee ownership, *i.e.*, the Plans afford employees an opportunity "to participate in the future growth of [Molson] Coors through the ownership of common stock." (D.I. 45, Ex. 2 at 8 and Ex. 4 at 20) (emphasis added). The goal of employee ownership was central to the Third Circuit's decision in *Edgar* to apply

*Moench's* "abuse of discretion" standard to a fiduciary's decision to retain company stock as an investment option. Given the stated objectives for the offering of Coors stock to employees, an "abuse of discretion" standard informs this Court's review.

Viewed through this prism, it is clear that the Amended Complaint failed to plead facts that could overcome the "presumption of prudence" accorded the Plans' investments. Like the *Edgar* plaintiff, Mr. Phillips alleged that an April 2005 earnings announcement where "the public" learned that "cost synergies from the Merger would not be achieved"[10] and a corresponding nineteen to twenty percent decline on the price of company shares, rendered Coors stock an imprudent investment. (D.I. 25 ¶¶ 96-97). However, the Third Circuit specifically held in *Edgar* that allegations of: (1) a twenty-five percent decline in stock price (five percent more than the alleged short-term Coors stock decline in the instant case), (2) the cost of "integrating a recent corporate acquisition [being] greater than defendants publicly represented" or (3) "corporate developments that were likely to have a negative effect on the company's earnings" were insufficient to rebut the presumption of prudence. 503 F.3d at 348. These are exactly the allegations Phillips made concerning the Molson Coors merger and stock.

Missing entirely is any allegation speaking to "the type of dire situation" contemplated by the Third Circuit in *Moench* and *Edgar* -- such as a precipitous and lasting decline in a company's stock price or knowledge by fiduciaries of a company's impending collapse. *Id.* Phillips cannot point to such events because they did not occur. Like Avaya's stock, the Coors

---

[10] Despite Plaintiff's bald assertions about merger synergies, Molson Coors has in fact quite dramatically "exceeded our three-year $175 million merger synergies target and wrapped up this program with $180 million of savings delivered." *See* Molson Coors Brewing Co., Form 10-K, 2/22/08 at 33 (attached as Exhibit "A"). This incontrovertible fact alone compels the immediate dismissal of the lawsuit. *See* D.I. 44 at 20-21. In addition, it is worth noting that the closing price of Molson Coors stock on the date that Plaintiff's Amended Complaint was filed – March 30, 2006 – was $68.69/share, or $5.69 per share more than its trading price on the date of the April 28, 2005 earnings announcement. *See* http://finance.yahoo.com.

stock experienced a brief downward fluctuation and then rebounded. Further, and as explained in Defendants' Opening Brief, it is undisputed that Molson Coors remains profitable and continues to pay dividends. *See* D.I. 44 at 3-4, 21, 26.

### B. The Disclosure/Misrepresentation Claim.

The Third Circuit's decision also requires the immediate dismissal of Phillips' disclosure/misrepresentation claims. Like the Avaya SPDs, the Coors SPDs inform Plan participants that their investments are tied to the market performance of the funds they choose and do not guarantee a particular return on participants' investments:

> [t]he amount in your account(s) will reflect your contributions, the length of time you participated in the Plan and your success in investing in your account...the value of an investment in any of the funds available under the Plan can be expected to increase or decrease as a result of market conditions and other factors affecting the financial marketplace.

(D.I. 45, Ex. 2 at 4, 15; Ex. 4 at 9, 33).

Indistinguishable from the Avaya SPDs, the Coors Plans' SPDs inform participants that they alone are responsible for their investment choices: "[h]ow you choose to invest your Plan accounts is an important decision you should consider carefully. Neither the Plan Administrator nor any of its employees can advise you concerning how to invest your accounts, nor can they take responsibility for the performance of any investment option you choose." (D.I. 45, Ex. 2 at 15; Ex. 4 at 33). And just like the Avaya SPDs, the Coors Plans' SPDs <u>explicitly</u> warn participants about the particular risks associated with investing in such a non-diversified fund: "[t]he Coors Stock Fund is considered a higher risk investment because, among other reasons, it consists of a single security rather than a diversified portfolio of securities. <u>The Coors Stock Fund is not a managed or diversified investment</u>." (D.I. 45, Ex. 2 at 9; Ex. 4 at 20) (emphasis added).

The Third Circuit's decision in *Avaya* makes clear that Defendants here adequately apprised participants about the risks associated with investment in Coors stock and that Defendants shouldered no additional duty to give investment advice or "opine on" the stock's condition.[11] Furthermore, as the *Edgar* Court held, Defendants' decision not to inform plan participants about adverse corporate developments prior to April 2005 does not constitute a breach of their disclosure obligations under ERISA, assuming Defendants had such information. Taken together, Plaintiff failed to plead facts sufficient to state a claim for ERISA disclosure violations, and therefore, his disclosure/misrepresentation claims should now be dismissed.

## CONCLUSION

For the reasons set forth above and in Defendants' previous submissions to the Court, Defendants respectfully submit that Plaintiff's Amended Complaint should be dismissed with prejudice.

---

[11] In fact, the Plans' SPDs reflect this: "Neither the Plan Administrator nor any of its employees can advise you concerning how to invest your accounts." (D.I. 45, Ex. 2 at 15; Ex. 4 at 33)

OF COUNSEL:

Brian T. Ortelere
Morgan Lewis & Bockius LLP
1701 Market Street
Philadelphia, Pennsylvania 19103-2921
(215) 963-5150/5201

Donald L. Havermann
Morgan Lewis & Bockius LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 739-5072

Attorneys for Defendants Peter H. Coors, W. Leo Kiely III, Charles M. Herington, Franklin W. Hobbs, Randall Oliphant, Pamela Patsley, Wayne Sanders, Albert C. Yates, Barbara Albanesi, David Barnes, Chat Chatterjee, James Fredericks, Michael J. Gannon, Robert Klugman, Michael Kruteck, Vonda Mills, Jeff Morgan, Michael Rumley, Ben Schwartz, Rob Witwer, Timothy Wolf, Katherine L. MacWilliams and Harold R. Smethhills

Dated: March 24, 2008

/s/ Jeffrey L. Moyer
Charles F. Richards, Jr. (#701)
*richards@rlf.com*
Jeffrey L. Moyer (#3309)
*moyer@rlf.com*
Elizabeth Tucker Sudderth (#4468)
*sudderth@rlf.com*
Richards, Layton & Finger, P.A.
One Rodney Square, P.O. Box 551
Wilmington, Delaware 19899-0551
(302) 651-7700

Attorneys for Defendants

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 24, 2008, copies of the foregoing were served upon the following counsel of record in the manner indicated:

**BY CM/ECF:**

Pamela S. Tikellis
Robert J. Kriner, Jr.
A. Zachary Naylor
Chimicles & Tikellis LLP
One Rodney Square
P.O. Box 1035
Wilmington, Delaware 19899

/s/ *Elizabeth Tucker Sudderth*
Elizabeth Tucker Sudderth (#4468)
*sudderth@rlf.com*