# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: RADIOSHACK CORP. | § | MDL DOCKET NO. 1875 |
| "ERISA" LITIGATION | § | (4:08-MD-1875-Y) |
| | § | |

| | | |
|---|---|---|
| ROBERT MAXWELL and | § | |
| ROBERT OUTLAW | § | |
| | § | |
| VS. | § | ACTION NO. 4:06-CV-499-Y |
| | § | (Cons. w/ 4:06-CV-900-Y) |
| RADIOSHACK CORPORATION, ET AL. | § | |
| AND | | |
| JEFFREY V. CORMIER | § | |
| | § | |
| VS. | § | ACTION NO. 4:07-CV-285-Y |
| | § | |
| RADIOSHACK CORPORATION, ET AL. | § | |

ORDER PARTIALLY GRANTING MOTIONS
TO DISMISS AND GRANTING REQUESTS FOR LEAVE TO AMEND

Pending before the Court are similar motions to dismiss filed
by the defendants in both of the above-referenced cases [document
number 36 in 4:06-CV-499-Y and document number 35 in 4:07-CV-285-Y].
After review of the motions, the related briefs, the plaintiffs'
complaints, and the applicable law, the Court concludes that the
motions should be and hereby are PARTIALLY GRANTED. Nevertheless,
the Court concludes that Plaintiffs' requests for leave to amend
should be GRANTED.

Plaintiffs, all former employees of defendant RadioShack
Corporation ("RadioShack"), brought these actions alleging that they
and others similarly situated were harmed when executives at

RadioShack permitted investments of the assets of its 401(k) plan
and supplemental stock purchase plan ("SUP plan") in RadioShack stock,
despite the fact that they knew information about RadioShack's
business that made those investments undesirable. In particular,
Plaintiffs allege that Defendants knew RadioShack was facing a $62
million write-down of obsolete or unmarketable inventory, but made
statements to the contrary and held and continued to invest plan funds
in RadioShack stock despite the fact that they knew its price was
inflated. Plaintiffs further allege that once the write-down was
announced, the price of the stock dropped 8.04 percent and has never
recovered. Plaintiffs contend that Defendants' actions constitute
breaches of the fiduciary duties they owe to plan participants under
the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§
1001-1461 ("ERISA").

Defendants have moved to dismiss all of the plaintiffs' claims.
They contend that certain of the plaintiffs' claims must be dismissed
for lack of subject-matter jurisdiction because they lack standing
to pursue their claims. The remainder of the plaintiffs' claims are,
Defendants contend, subject to dismissal for their failure to state
a viable claim for relief.

## I.  Applicable Law

### A.  Rule 12(b)(1)

Rule 12(b)(1) authorizes dismissal where the Court lacks subject-
matter jurisdiction. "Federal courts are courts of limited
jurisdiction" and, as a result, "the burden of establishing federal
jurisdiction rests on the party seeking the federal forum." *See*

*Howery v. Allstate Ins. Co.*, 253 F.3d 912, 916 (5th Cir. 2001).

B.  Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) authorizes the dismissal of a complaint that fails "to state a claim upon which relief can be granted." This rule must, however, be interpreted in conjunction with Rule 8(a), which sets forth the requirements for pleading a claim for relief in federal court. Rule 8(a) calls for "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002) (holding Rule 8(a)'s simplified pleading standard applies to most civil actions).

As a result, "[a] motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted." *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982), *cert. denied*, 459 U.S. 1105 (1983) (quoting Wright & Miller, *Federal Practice and Procedure* § 1357 (1969)). The Court must accept as true all well pleaded, non-conclusory allegations in the complaint and liberally construe the complaint in favor of the plaintiff. *Kaiser Aluminum*, 677 F.2d at 1050.

The plaintiff must, however, plead specific facts, not mere conclusory allegations, to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). Indeed, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," and his "factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful

in fact)." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 & 1974 (2007) (abrogating *Conley v. Gibson*, 355 U.S. 41 (1957), to the extent the Court stated therein that a plaintiff can survive a motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief").

In considering a motion to dismiss for failure to state a claim, "courts must limit their inquiry to the facts stated in the complaint and the documents either attached to or incorporated in the complaint." *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017-18 (5th Cir. 1996). Documents attached to or incorporated in the complaint are considered part of the plaintiff's pleading. *See* FED. R. CIV. P. 10(c); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000); *Paulemon v. Tobin*, 30 F.3d 307, 308-09 (2nd Cir. 1994); *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990). "Where the allegations in the complaint are contradicted by facts established by documents attached as exhibits to the complaint, the court may properly disregard the allegations." *Martinez v. Reno*, No. 3:97-CV-0813-P, 1997 WL 786250, at *2 (N.D. Tex. Dec. 15, 1997) (citing *Nishimatsu Const. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)); *accord Associated Builders, Inc. v. Alabama Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974). Similarly, documents of public record can be considered in ruling on a 12(b)(6) motion to dismiss. *Davis v. Bayless*, 70 F.3d 367, 372 n.3 (5th Cir. 1995).

## II.  Analysis

### A.  Standing

Initially, Defendants contend that plaintiff Maxwell lacks standing because he is no longer a participant in the 401(k) plan and was never a participant in the SUP plan. Defendants make similar arguments as to plaintiff Cormier, who they contend is no longer a participant in the SUP plan.

"[S]tanding to bring an action founded on ERISA is a 'jurisdictional' matter." *Cobb v. Central States*, 461 F.3d 632, 635 (5th Cir. 2006). ERISA section 502(a)(2) affords remedies only to benefit plan participants, beneficiaries, and fiduciaries. *See* 29 U.S.C.A. § 1132(a) (West 1999); *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 139-40 (1985). As a result, "the issue of whether a particular plaintiff falls within one of the three enumerated classes of litigants (participants, beneficiaries or fiduciaries) is a jurisdictional one." *Cobb*, 461 F.3d at 635.

Defendants contend that because plaintiffs Maxwell and Cormier cashed out of the plans, they are no longer ERISA "participants" and thus do not have standing to bring this action. Defendant's arguments are foreclosed, however, by the Supreme Court's recent decision in *LaRue v. Dewolff, Boberg & Assocs., Inc.*, 128 S. Ct. 1020 (2008). In that case, the Court refused to dismiss as moot the ERISA section 502(a)(2) claims of a former employee of the defendant who had withdrawn his funds from the defendant's defined-contribution plan. The Court noted that ERISA defines "participant" to "include a former employee with a colorable claim for benefits," and cited the Seventh

Circuit's decision in *Harzewski v. Guidant Corp.*, 489 F.3d 799 (7th Cir. 2007). *LaRue*, 128 S. Ct. at 1026 n.6. In *Harzewski*, the Seventh Circuit concluded that former employees who had cashed out of their employer's defined-contribution plan remained ERISA participants for purposes of a section 502(a)(2) claim against the employer for breach of fiduciary duties by allegedly imprudently failing to divest the plan of company stock during a time when the stock's price was fraudulently inflated.    As a result, this Court concludes that Maxwell's and Cormier's withdrawal of their funds from the 401(k) or SUP plans does not divest them of standing to pursue their claims.

Defendants further contend that Maxwell lacks standing to pursue any claims regarding the SUP plan because he was never a participant in that plan. Having determined, however, that Maxwell has standing to pursue his claims regarding the 401(k) plan--and thus that he has "demonstrate[d] individual standing vis-as-vis the defendant[s]"--the decision of whether he can pursue claims of SUP plan participants challenging similar practices should be left for later determination under Rule 23.    *See Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998); *but cf. In re Mutual Funds Inv. Litig.*, 519 F. Supp. 2d 580, 583-87 (D. Md. 2007) (surmising that recent Supreme Court cases raise questions about the *Fallick* court's approach to standing, but concluding that standing is still demonstrated where a plaintiff "plausibly alleges that (1) she has suffered an injury in fact traceable to a defendant and redressable by the court, *and* (2) her claimed injury is shared in common with others who have been similarly harmed by the same defendant's actions").

B. Duty to Prudently and Loyally Manage Plan Assets

Plaintiffs' complaints allege that Defendants breached their ERISA fiduciary duties to prudently and loyally manage the 401(k) and SUP plans' assets.[1] ERISA requires that:

> (1)  [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and--
>
> . . . .
>
> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;
>
> (C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so
> . . . .

29 U.S.C.A. § 1104(a)(1) (West 1999).    Plaintiffs contend that Defendants' failure to divest the plans of all RadioShack stock and their maintaining RadioShack stock as an investment option despite the fact that they knew the stock price was inflated constituted a breach of these duties.

The parties' briefs spend a number of pages debating whether RadioShack's SUP plan and the stock-purchase fund in its 401(k) plan are employee stock-ownership plans ("ESOPs") under ERISA. This is because ERISA affords slightly greater latitude to the decisions of ESOP fiduciaries than to other ERISA fiduciaries.    An ESOP is an

---

[1] Plaintiffs contend that Defendants were ERISA fiduciaries because they exercised discretionary authority or control respecting management and disposition of plan assets and had discretionary authority or responsibility in the administration of the plans.  See 29 U.S.C. § 1002(21)(A)(i) & (iii) (West 1999).

individual account plan that is designed to invest primarily in employer stock. *See* 29 U.S.C. § 1107(d)(6)(A). Thus, unlike ERISA pension plans, an ESOP's primary purpose is not to maximize an employee's retirement benefits but instead to encourage an employee's investment in his employer's stock. *See Moench v. Robertson*, 62 F.3d 553, 568-69 (3d Cir. 1995); *Summers v. State Street Bank & Trust Co.*, 453 F.3d 404, 410 (7th Cir. 2006). "Congress expressly intended that the ESOP would be both an employee retirement benefit plan and a 'technique of corporate finance' that would encourage employee ownership." *Martin v. Feilen,* 965 F.2d 660, 664 (8th Cir. 1992). As a result, "under normal circumstances, ESOP fiduciaries cannot be taken to task for failing to diversify investments, regardless of how prudent diversification would be under the terms of an ordinary non-ESOP pension plan." *Moench,* 62 F.3d at 568.

Nevertheless, ESOP fiduciaries remain subject to many of ERISA's "stringent requirements, and . . . must act in accordance with the duties of loyalty and care." *Id.* at 569. "ESOP fiduciaries must, then, wear two hats, and are 'expected to administer ESOP investments consistent with the provisions of both a specific employee benefits plan and ERISA.'" *Id.* (quoting *Kuper v. Quantum Chem. Corp.*, 852 F. Supp. 1389, 1395 (S.D. Ohio 1994), *aff'd,* 66 F.3d 1447 (6th Cir. 1995)). Generally, the requirements imposed by each "hat" coincide. "But when the plaintiff claims that an ESOP fiduciary violated its ERISA duties by continuing to invest in employer securities, the conflict becomes particularly stark." *Id.; see Donovan v. Cunningham,* 716 F.2d 1455, 1466 (5th Cir. 1983) ("Competing with Congress'

expressed policy to foster the formation of ESOPs is the policy expressed in equally forceful terms in ERISA:  that of safeguarding the interests of participants in employee benefit plans by vigorously enforcing standards of fiduciary responsibility.").

In *Moench*, the United States Court of Appeals for the Third Circuit balanced these sometimes conflicting requirements by looking to trust law, which imposes differing standards of review on a trustee's decision depending upon whether the trustee was mandated or simply permitted by the trust to make a particular investment. *Moench*, 62 F.3d at 571.  The court noted that when a "fiduciary is not absolutely required to invest in employer securities but is more than simply permitted to make such investments . . . there may come a time when such investments no longer serve the purpose of the trust, or the settlor's intent." *Id*.  In such a case, the fiduciary should not be immune from judicial inquiry, "but also should not be subject to the strict scrutiny that would be exercised over a trustee [who is] only authorized to make a particular investment." *Id*.  As a result, the court held that an abuse-of-discretion standard is appropriate:

> [W]e hold that in the first instance, an ESOP fiduciary who invests assets in employer stock is entitled to a presumption that it acted consistently with ERISA by virtue of that decision. However, the plaintiff may overcome that presumption by establishing that the fiduciary abused its discretion by investing in employer securities.
> In attempting to rebut the presumption, the plaintiff may introduce evidence that "owing to circumstances not known to the settlor and not anticipated by him [the making of such investment] would defeat or substantially impair the accomplishment of the purposes of the trust." Restatement (Second) [of Trusts] § 227 comment g.  As in all trust cases, in reviewing the fiduciary's actions, the

> court must be governed by the intent behind the trust--in other words, the plaintiff must show that the ERISA fiduciary could not have believed reasonably that continued adherence to the ESOP's direction was in keeping with the settlor's expectations of how a prudent trustee would operate. In determining whether the plaintiff has overcome the presumption, the courts must recognize that if the fiduciary, in what it regards as an exercise of caution, does not maintain the investment in the employer's securities, it may face liability for that caution, particularly if the employer's securities thrive.

*Id.*

Thus, Defendants urge that the stock-purchase fund in the 401(k) plan and the SUP plan are ESOPs, and that they are therefore entitled to the presumption of prudence.[2] Plaintiffs unsurprisingly disagree. Fortunately, however, this Court does not need to resolve the issue because, after the filing of the parties' initial briefs, the Third Circuit extended its decision in Moench to all eligible individual account plans ("EIAPs"):

> Because one of the purposes of EIAPs is to promote investment in employer securities, they are subject to many of the same exceptions [to ERISA fiduciary duties] that apply to ESOPs. . . . Consequently, EIAPs, like ESOPs, place employee retirement assets at much greater risk than traditional ERISA plans. Given these similarities, we conclude that the underlying rationale of *Moench* applies equally here. In sum, we conclude that the district court correctly determined that *Moench's* abuse of discretion standard governs judicial review of the defendants decision to offer the Avaya's Stock Fund as an investment option.

*Edgar v. Avaya, Inc.*, 503 F.3d 340, 347-48 (3d Cir. 2007); *see also Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1098 n.3 (9th Cir. 2004) (noting that "stock bonus plans . . . and ESOPs are both

---

[2]RadioShack's 401(k) plan specifically states that the alleged ESOP portion of the plan "shall be invested primarily in Company Stock." (Def.'s App. in Supp. of Mot. to Dism. Cormier's Compl. at 185). Similarly, the SUP plan directs its trustee "[t]o keep the Trust Fund in [RadioShack] Stock." (*Id.* at 517.)

EIAPS and are treated the same for purpose of fiduciary duty analysis"). Plaintiffs do not dispute that RadioShack's plans are EIAPs. *See* 29 U.S.C.A. § 1107 (d)(3) (defining EIAP to include a profit-sharing or savings plan that explicitly provides for acquisition and holding of employer securities).

This Court is persuaded by the Third Circuit's reasoning. The United States Court of Appeals for the Fifth Circuit has not specifically adopted a standard of review to apply to an ERISA fiduciary's decision to offer company stock as an investment option despite knowledge of the employer's adverse financial situation. Nevertheless, in *Langbecker v. Electronic Data Systems Corp.*, 476 F.3d 299 (5th Cir. 2007), the Fifth Circuit reversed the district court's certification of a class action in a suit by the defendant's employees alleging that the defendant's executives breached their fiduciary duties under ERISA by continuing to offer company stock as a plan option. *Id.* at 303-04. In so doing, the court approved of the Third Circuit's approach in *Moench* and expressed skepticism about whether such claims are viable. *Id.* at 308 & n.19 (noting that "[t]he Third Circuit [in *Moench*] wisely balanced the competing policies of ERISA fiduciary duties with statutory exemptions to those duties crafted by Congress to encourage employees' investments in their companies' stocks" and that the employees' claims "seem[] fraught with uncertainty").

Certain language in *Langbecker*, however, gives the Court pause, inasmuch as, although expressing skepticism about such claims, the Fifth Circuit concluded that at the preliminary class-certification

stage, it could "not rule out [the employee's] theories as a matter
of law." *Id. (dictum)*. The *Langbecker* decision, however, predated,
the Third Circuit's post-*Moench* decision in *Edgar*, 503 F.3d 340 (3d
Cir. 2007). In *Edgar*, the Third Circuit held that *Moench's*
presumption of prudence **could** be applied at the pleading stage:

> Finally, Edgar argues that the District Court's application
> of *Moench's* presumption of prudence at the motion-to-
> dismiss stage is somehow inconsistent with the liberal
> pleading standards set forth in Rule 8 of the Federal Rules
> of Civil Procedure. We are unconvinced. Quite simply,
> if a plaintiff does not plead all of the essential elements
> of his or her legal claims, a district court is required
> to dismiss the complaint pursuant to Rule 12(b)(6). For
> example, in *Wright v. Oregon Metallurgicial Corp.*, the
> Ninth Circuit concluded that "Plaintiffs' alleged facts
> effectively preclude[d] a claim under *Moench*, eliminating
> the need for further discovery." 360 F.3d at 1098. As the
> Court noted, "published accounts of [the employer's]
> earnings and financial fundamentals during the relevant
> period, attached to the complaint, demonstrate that [the
> employer] was far from the sort of deteriorating financial
> circumstances involved in *Moench* and was, in fact,
> profitable and paying substantial dividends throughout that
> period." *Id.* Given these circumstances, "[m]ere stock
> fluctuations, even those that trend downward significantly,
> are insufficient to establish the requisite imprudence to
> rebut the *Moench* presumption." *Id.* at 1099. We find the
> Ninth Circuit's reasoning to be logical, and see no reason
> to allow this case to proceed to discovery when, even if
> the allegations are proven true, Edgar cannot establish
> that defendants abused their discretion.

*Id.* at 349.[3] The Court also notes that the *Langbecker* decision
predated the Supreme Court's recent decision in *Bell Atlantic
Corporation v. Twombly*, 127 S. Ct. 1955 (2007), in which the Supreme

---

[3] In *Edgar*, the Third Circuit affirmed the district court's dismissal of the
employees' complaint where they alleged that "the cost of integrating a recent
corporate acquisition was greater than defendants publicly represented; (2)
rather than having a positive financial impact, the acquisition reduced Avaya's
earnings by at least $.06 per share during the 2005 fiscal year; (3) changes to
Avaya's method of delivering products to market were causing severe disruptions
in sales; and (4) the company was experiencing a dramatic reduction in demand for
its products." 503 F.3d at 348. After disclosures of these developments were
made, "the price of Avaya's stock declined by $2.68 per share." *Id.*

Court held that a complaint must set forth "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974. As a result, this Court concludes that *Moench*'s presumption of prudence may be applied at the pleading stage.

After review of Plaintiffs' complaints, the Court concludes that they do not overcome the presumption. Plaintiffs allege that beginning as early as January 14, 2003, Defendants issued a series of false statements in press releases, quarterly reports, and presentations to investors and industry analysts that overstated earnings, inflated earnings projections, and overvalued inventory. These statements often touted RadioShack's culture of integrity and inventory controls and included reassurances that RadioShack's inventory was salable and that markdowns would not be required. On at least two occasions, however, those reassurances were soon followed by inventory markdowns. In February 2006, RadioShack announced that it had engaged in a $62 million write-down of excess, obsolete, and slow-moving inventory in 2005.[4] As a result of the announcement, the price of Radioshack stock dropped 8.04 percent, from a closing price of 20.75 per share on February 16, 2006, to a closing price of 19.08 per share, with 10,487,600 shares traded.[5] As a result,

---

[4]Cormier alleges that the inventory markdowns were the result of RadioShack's concentration on and accumulation of inventory in its wireless business, even though Defendants knew or should have known that the company's business model was too dependent on the wireless category.

[5]The evidence submitted by Defendants reflects, however, that RadioShack's stock price rebounded from this loss in less than one year. *See* Defs.' App. in Supp. of Mot. Dism. Cormier's Compl. at 59 (reflecting that RadioShack's stock closed at $20.82 on January 29, 2007); *see also In re Administaff Secs. Litig.*, Civ. No. 03-2082, 2006 WL 846378, at *1 n.1 (S.D. Tex. Mar. 30, 2006) (noting that a district court may take judicial notice of stock prices and consider materials filed with the SEC in ruling on a motion to dismiss).

two debt-rating agencies downgraded Radioshack's stock,[6] and five of RadioShack's largest institutional investors reduced their holdings in the stock. Plaintiffs allege that Defendants knew or should have known that the markdowns would be required, that they would result in a significant drop in the price of RadioShack's stock, and that they therefore should have divested the 401(k) and SUP plans of all RadioShack stock and no longer permitted its employees to purchase such stock with plan assets.

These allegations are strikingly similar to those made in *Edgar*, where the company's stock price "declined by $2.68 per share following Avaya's [adverse] earnings announcement" because "changes to Avaya's method of delivering products to market were causing severe disruption in sales[,] and [] the company was experiencing a dramatic reduction in demand for its products." 503 F.3d at 348. Nevertheless, the Third Circuit concluded that a breach-of-fiduciary-duty claim had not been adequately alleged:

Edgar's allegations, if true, indicate that during the

---

[6] Plaintiff Cormier alleges that "Standard & Poor's reduced the rating on RadioShack debt from A to B, and Moody's and Fitch reduced their outlook for RadioShack from stable to negative." (Cormier's Compl. at 19, ¶ 77.)

[7] Plaintiff Cormier specifically alleges the following reductions:

a.    Private Capital Management, L.P. owned 6,947,482 shares in RadioShack stock in 2005, and sold its entire stake in 2006.
b.    Morgan Stanley reduced its stake in RadioShack during 2005 and 2006 from 10,452,961 shares to 985,597 shares.
c.    AMVESCAP reduced its stake in RadioShack from 12,691,00 shares at the end of 2004, to 8,093,446 shares at the end of 2005, to 4,092,572 at the end of 2006.
d.    T. Rowe Price reduced its stake in RadioShack during 2005 and 2006 from 14,843,028 to 13,681,128 to 8,474,228 shares.
e.    Capital Group International reduced its stock from 8,185,620 shares at the end of 2004, to 6,465,680 shares at the end of 2005.

(Cormier's Compl. at 21, ¶ 82.)

Class Period, Avaya was undergoing corporate developments that were likely to have a negative effect on the company's earnings and, therefore, on the value of the company's stock. . . . We cannot agree, however, that these developments, or the corresponding drop in stock price, created the type of dire situation which would require defendants to disobey the terms of the Plans by not offering the Avaya Stock Fund as an investment option, or by divesting the plans of Avaya securities. Indeed, had defendants divested the Plans of Avaya common stock during the Class Period, they would have risked liability for having failed to follow the terms of the plan.

*Id.* at 348-49. "Mere stock fluctuations, even those that trend downward significantly, are insufficient to establish the requisite imprudence to rebut the *Moench* presumption." *Wright*, 360 F.3d at 1099 (dismissing complaint under Rule 12(b)(6)). This Court concludes that Plaintiffs have failed to state a claim for breach of fiduciary duty as a result of Defendants' failure to divest the plans of RadioShack stock and maintaining it as an investment option under the plans.

C. Misrepresentation/Failure to Disclose

Plaintiffs also allege that Defendants breached their fiduciary duties under ERISA by making misrepresentations about RadioShack's inventory and by conveying inaccurate information about the soundness of RadioShack stock. Defendants urge several reasons for the dismissal of these claims, including that Plaintiffs have wholly failed to allege that they relied on the misrepresentations to their detriment. *See In re Elec. Data Sys. ERISA Litig.*, 224 F.R.D. 613, 630 (E.D. Tex. 2004) ("A plaintiff must establish reasonable and detrimental reliance upon a material misrepresentation to recover for breach of fiduciary duty based on misrepresentations" in a case

under ERISA claiming misrepresentation of plan investment options). The Court has thoroughly reviewed the complaints and finds no allegations that the plaintiffs detrimentally relied on Defendants' alleged misrepresentations.

D. Derivative Claims

Plaintiffs' claims for failure to monitor other fiduciaries, co-fiduciary liability, and conflict of interest are derivative of their other claims. Thus, because the fiduciary-duty and misrepresentation claims are subject to dismissal, these claims are as well.

E. Putnam Funds

Plaintiff Cormier contends that Defendants also breached their ERISA duties of prudence and loyalty by selecting and maintaining Putnam Funds for the 401(k) plan. According to Cormier, Putnam Funds were imprudent because they have performed below average, particularly in light of the allegedly excessive fees Putnam charges, and because they have incurred significant expenses as a result of fines from the SEC and settling lawsuits. Cormier alleges that only Putnam Funds were offered in the 401(k) plan from 1996 to 2003, and thereafter the majority of fund options were Putnam Funds.

Defendants invoke the "safe-harbor" provision of ERISA section 404(c), which states that where a pension plan "provides for individual accounts and permits a participant to exercise control over the assets in his account," fiduciaries are not liable "for any loss, or by reason of any breach, which results from such participant's exercise of control." 29 U.S.C.A. § 1104(c)(1)(A)(ii) (West 1999). The Department of Labor has interpreted this provision "to

qualify plans for this defense only if, *inter alia*, they offer a diversified array of investments; provide adequate information concerning the investments to the participants; and authorize flexible and autonomous control by the participants." *Langbecker*, 476 F.3d at 310 (citing 29 C.F.R. § 2550.404c-1(2005)).

Defendants' brief in support of their motion attempts to confine Cormier's complaint to one about fees and expenses, contending that Defendants satisfied their disclosure duties under the regulation regarding those costs. A reading of Cormier's complaint, however, reveals that his claim about the Putnam Funds is not just about the fees and expenses charged by the funds, but about their overall performance. Furthermore, although Defendants contend that participants were offered a variety of options in different asset classes, the SEC filing they submit in support of that contention reflects that virtually all of those offerings were Putnam Funds. *See* Defs.' Br. in Supp. of Mot. Dism. Cormier's Compl. at 35 n.36.

Finally, cases cited by Cormier on this issue suggest that dismissal on 404(c) grounds at this stage of the litigation would be premature. *See* Cormier's Resp. Br. at 31 (citing, *inter alia*, *Rankin v. Rots*, 278 F. Supp. 2d 853, 872 (S.D. Ohio 2004)). In the only case Defendant cites as supporting a Rule 12(b)(6) dismissal on 404(c) grounds, the court notes that

> Participants could choose to invest in twenty primary mutual funds and more than 2500 others through BrokerageLink. . . . It is untenable to suggest that all of the more than 2500 publicly available investment options had excessive expense ratios. The only possible conclusion is that to the extent participants incurred excessive expenses, those losses were the result of participants[']

exercising control over the investments within the meaning
of the safe harbor provision.

*Hecker v. Deere*, 296 F. Supp. 2d 967, 976 (W.D. Wis. 2007). Inasmuch
as it appears Cormier's investment options were much more limited--
indeed, to little other than allegedly underperforming Putnam Funds--
the Court concludes that Defendants have not demonstrated that a Rule
12(b)(6) dismissal of this claim is warranted.

F. Prohibited Transaction

Maxwell and Outlaw allege that by purchasing RadioShack stock
at a price they knew to be inflated, Defendants engaged in a
prohibited transaction under ERISA. *See* 29 U.S.C.A. § 1106 (West
1999). Defendants request dismissal of this claim, noting that this
provision does "not apply to the acquisition . . . by a plan of
qualifying employer securities . . . [i]f such acquisition . . . is
for adequate consideration." 29 U.S.C.A. 1108(e) (West 1999). Under
ERISA, "adequate consideration" includes "the price of the security
prevailing on a national securities exchange." 29 U.S.C.A. § 1002(18)
(West 1999).

Because the complaints fail to contain any allegations that the
plan paid more than market price for RadioShack stock, Defendants
contend this claim should be dismissed. The Court agrees. The cases
Maxwell and Outlaw cite in support of their contention that a
fiduciary's payment of a price it knows to be inflated does not
constitute adequate consideration and is thus a prohibited transaction
under ERISA are largely inapposite, inasmuch as most of those cases
involved stocks that were not sold on a national exchange and were

thus subject to the "good-faith" portion of the definition of "adequate consideration." *See* Maxwell's Resp. Br. at 18 (citing, *inter alia*, *Donovan*, 716 F.2d at 1466; *Chao v. Hall Holding Co*, 285 F.3d 415, 425 (6th Cir. 2002)); *see also* 29 U.S.C.A. § 1002(18)(b) (West 1999) (providing that "in the case of an asset other than a security for which there is a generally recognized market, [adequate consideration is] the fair market value of the asset as determined in good faith by the trustee or named fiduciary").

G.  Leave to Amend

At the conclusion of their briefs, Plaintiffs' request leave to amend any claim that the Court concludes is deficient. Defendants have not addressed the request, and Plaintiffs have not yet filed any amendments to their claims. As a result, although the Court suspects some of the defects noted herein (particularly regarding alleged breaches based upon the imprudent failure to divest and continued investment in RadioShack stock) may be incurable, the Court concludes that the request should be granted. *See U.S. ex rel. Coppock v. Northrop Grumman Corp.*, No. Civ. A. 398CV2143D, 2002 WL 1796979, at *15 n.29 (N.D. Tex. Aug. 1, 2002) (Fitzwater, J.) (noting that "this and other courts typically give a plaintiff at least one opportunity to cure pleading defects that the court has identified before dismissing the case, unless it is clear that the defect is incurable or the plaintiff advises the court that he is unwilling or unable to amend in a manner that will avoid dismissal").

### III. Conclusion

For the foregoing reasons, Defendants' Motions to Dismiss are PARTIALLY GRANTED. Nevertheless, Plaintiffs' requests for leave to amend are GRANTED. Plaintiffs shall have forty-five days from the date of this order to file amended complaints correcting the deficiencies noted herein, if they can do so in good faith.

SIGNED March 31, 2008.

_Terry R. Means_
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE