# EXHIBIT A

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: DIEBOLD ERISA | ) | CASE NO. 5:06 CV 0170 |
| LITIGATION; | ) | |
| | ) | JUDGE PETER C. ECONOMUS |
| | ) | |
| | ) | |
| This Document Relates To: | ) | |
| All Actions | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| | ) | |

This matter is before the Court on Defendants' motion to dismiss Plaintiffs' Consolidated Class Action Complaint. (Doc. No. 44.)

## I.      Background

This consolidation class action seeks recovery for former Diebold employees who invested in Diebold stock through the company's 401(k) Savings Plan (the "Plan"). It is premised on violations of the Employee Retirement Income Security Act ("ERISA"), and names as Defendants certain officers, directors, and employees of Diebold. Also before the Court, is litigation brought under the federal securities laws that seeks recovery for anyone who traded Diebold securities during the class period, consolidated under the caption 5:05CV2873, In Re Diebold Securities Litigation.

1

### A.    Procedural History

Plaintiffs Vincent McDermott, Walter C. Farrell, Jr., Liberto Forbes, and Brenda Barnett (collectively, "Plaintiffs") are former employees of Diebold and participants in the Plan. Plaintiffs invested in shares of the Diebold Company Stock Fund (the "Fund"), which was offered as a Plan investment. Plaintiffs bring this action individually and on behalf of all others similarly situated, seeking to recover on behalf of the Plan losses allegedly caused by Defendants' breach of fiduciary duty. Plaintiffs contend that Defendants failed to act solely in the interests of the Plan participants and beneficiaries, and to exercise the required skill, care, prudence, and diligence in administering the Plan from October 23, 2003 through September 21, 2005 (the "Class Period"). (Compl. ¶ 2.)

Plaintiff McDermott commenced this action by filing a class action Complaint on January 24, 2006. (Doc. No. 1.) Subsequently, four similar class action complaints were filed.[1] On October 20, 2006, the Court entered an order consolidating all the ERISA actions under the caption of the instant case. (Doc. No. 42.) Plaintiffs filed the Consolidated Class Action Complaint (the "Complaint") on April 6, 2007. (Doc. No. 41.) On June 4, 2007, Defendants filed a motion to dismiss. (Doc. No. 44.) Plaintiffs opposed the motion to dismiss (Doc. No. 46), and Defendants replied. (Doc. No. 49.)[2]

The following facts are relevant to the instant Motion to Dismiss.

### B.    The Plan

---

[1] Case Nos. 5:06-cv-00307, 5:06-cv-00324, 5:06-cv-00361, 5:06-cv-00579

[2] In addition, both parties filed notices of supplemental authority, Plaintiffs on September 19, 2007 (Doc. No. 50), and Defendants on October 8, 2007. (Doc. No. 51.) Defendants' notice was accompanied by the affidavit of Victoria Gorokhovich, which included several exhibits. (Doc. No. 53.) Plaintiffs filed an opposition to Defendants' supplemental authority (Doc. No. 53), and Defendants filed a reply to Plaintiffs' opposition. (Doc. No. 54.) All of the foregoing have been considered by the Court in deciding the instant motion.

According to Plaintiffs, the Plan constitutes an "employee pension benefit plan," subject to the provisions of ERISA. (Compl. ¶ 53.) The Plan covers all non-bargaining unit employees of Diebold and its affiliates that have completed at least ninety days of service. The Plan has two components. The first is a profit sharing portion, consisting of all plan assets and funds, except those invested in Diebold stock. The second component consists solely of all plan assets and funds invested in Diebold common stock. (Compl. ¶ 54.)

Pursuant to the Plan's investment policy, the "primary objective of the Plan is to encourage eligible employees to save for retirement." (Compl. ¶ 55.) Plan participants may invest in a variety of investment options selected and maintained by the Plan's fiduciaries. As of December 31, 2004, there were fourteen investment options, one of which was the Fund. (Compl. ¶ 57.)

Generally, participants could contribute up to 50% of their pre-tax compensation to the Plan. (Compl. ¶ 56.) The Company made matching contributions to the Plan, up to a certain percentage of the participant's compensation in a given period. (Compl. ¶ 59.) The Company also, in its discretion, could make additional matching contributions in an amount determined solely by the Board. (Compl. ¶ 60.) All matching contributions made by the Company were invested automatically in the Fund. (Compl. ¶ 61.) Thus, according to Plaintiffs, every Plan participant held Diebold stock in their Plan account during the Class Period. (Id.) Matching contributions were invested in the Fund for at least twelve months. Thereafter, participants were permitted to transfer the Company's matching contributions to other investment alternatives. Participants, upon attaining age fifty-five,

3

were permitted to transfer all matching contributions from the Fund to any other investment alternative at any time. (Id.) Participants hired before July 1, 2003, were fully vested in their contribution and matching contributions. (Compl. ¶ 58.) Participants hired after July 1, 2003, became fully vested upon completion of three years of service or if their employment terminated due to death, disability, or retirement on or after normal retirement age. (Id.)

As of December 31, 2004, the Plan held 2,488,383 shares of Diebold stock, with a fair market value at the time of $138,677,575.00. This holding represented approximately 37% of the Plan's total invested assets. (Compl. ¶ 63.)

### C. Defendants

Diebold is an Ohio corporation with its principal executive offices in North Canton, Ohio. (Compl. ¶ 18.) Its stock is listed on the NYSE and trades under the symbol DBD. ERISA requires every plan to provide for one or more named fiduciaries who will have "authority to control and manage the operation and administration of the plan." 29 U.S.C. § 1102(a)(1). Rather than delegating fiduciary responsibility for the Plan to external providers, Diebold elected to internalize the fiduciary functions. (Compl. ¶ 67.) According to Plaintiffs, Diebold, the Board of Directors (the "Board"), the Benefits Committee, the Investment Committee, the Management 401(k) Committee, the Compensation Committee, and the individual defendants in their capacity as members of each of those separate entities, all acted as fiduciaries of the Plan. (Compl. ¶ 65.)

Diebold's Investment Committee (the "Investment Committee") held principal responsibility for management and evaluation of Plan assets. (Compl. ¶ 20.) The Board

4

was responsible for selecting, appointing, and monitoring members of the Investment Committee. (Id.) The Board also selected, appointed, and monitored the Compensation Committee. (Id.) Defendant O'Dell was the Company's President and CEO, as well as the Chairman of its Board of Directors (the "Board") from 1999 until his resignation on December 12, 2005. (Compl. ¶ 22.) As CEO, O'Dell had authority to appoint and monitor members of the Management 401(k) Committee, which in turn was responsible for selecting investment options for the Plan. (Id.) According to Plaintiffs, the Board and its individual members[3] were fiduciaries of the Plan because they exercised discretionary authority regarding management and administration of the Plan. (Compl. ¶ 21.)

The Benefits Committee, also appointed by the Board, served as the administrator of the Plan (the "Plan Administrator") and the named fiduciary of the Plan.[4] (Compl. ¶ 38.) The Investment Committee was responsible for reviewing the performance of the Company's retirement plans and the 401(k) savings plans to assure adequate and competitive returns.[5] (Compl. ¶ 41.) The Board selected the members of the Investment Committee and delegated to it responsibility for selecting and monitoring investment options and overseeing the Plan. (Compl. ¶ 42.) The Management 401(k) Committee was responsible for selecting investment options and funds that satisfied the objectives and

---

[3] Individual Board members include Defendants O'Dell, Bockius, Connor, Crandall, Evans, Fitzgerald, Lassiter, Lauer, Massy, Roorda, Timken, Wallace, and Swidarski collectively, the "Director Defendants"). (Compl. ¶¶ 22-37.) Although Cox, Jones, Miller, and Weber were initially named in the Complaint, Complaints against those individuals were subsequently dismissed. (Dkt. # 55).

[4] Members of the Benefits Committee included Defendants Chuck Scheurer, Caree Francis-Voegsang, Sheila Rutt, Gregory Geswein, Larry Miller, Jeffrey Schwartz, William Sekula, Kevin Krakora, Patricia Robinson, Timothy McDannold, and Doug Jones (collectively, the "Benefits Committee Defendants"). (Compl. ¶¶ 39-40.)

[5] Members of the Investment Committee during the Class Period included Defendants Crandall, Massy, Wallace, and Roorda (collectively, the "Investment Committee Defendants"). (Compl. ¶¶ 43-44.)

guidelines of the Plan. (Compl. ¶ 45.) The Management 401(k) Committee was also charged with the duty to administer the Plan's investment guidelines. (Id.) The Management 401(k) Committee was comprised of Diebold officers appointed by the CEO, with the concurrence of the Investment Committee. (Compl. ¶ 46.)

### D.    Claims

Plaintiffs allege that all Defendants owed a fiduciary duty to them under ERISA. Plaintiffs aver that all of the Defendants qualify as fiduciaries under ERISA because each Defendant exercised discretionary authority or control over management of the Plan or disposition of the Plan's assets.   The Plaintiffs further allege that Diebold had the authority to appoint, monitor, and remove the other defendants from their individual fiduciary rules, so the actions of the Board, the Investment Committee, the Compensation Committee, and the Individual Defendants can be imputed to Diebold under the doctrine of *respondeat superior*.

Plaintiffs set fourth six counts alleging various fiduciary breaches against the various Defendants.   Count I alleges failure to prudently and loyally manage the Plan's assets against all Defendants.   Count II alleges failure to provide complete and accurate information to Plan participants against all Defendants.   Count III alleges failure to monitor against all Defendants.   Count IV alleges breach of duty to avoid conflicts against all defendants.   Count V alleges co-fiduciary liability against all Defendants. Count VI makes certain allegations directed towards the company specifically.

6

## II.    Standard of Review

Defendants move to dismiss Plaintiffs' claims pursuant to Rule 12(b)(6). In deciding a motion to dismiss under Rule 12(b)(6), the Court must take all well-pleaded allegations in the complaint as true and construe those allegations in a light most favorable to the plaintiff. Dana Corp. v. Blue Cross & Blue Shield Mut., 900 F.2d 882 (6th Cir.1990); Craighead v. E.F. Hutton & Co., 899 F.2d 485 (6th Cir.1990). If an allegation is capable of more than one inference, the Court must construe it in the plaintiff's favor. Columbia Natural Res., Inc. v. Tatum, 58 F.3d 1101, 1109 (6th Cir. 1995).

However, the Court need not accept as true a legal conclusion couched as a factual allegation. Papasan v. Allain, 478 U.S. 265, 268 (1986). A well-pleaded allegation is one that alleges specific facts and does not rely merely upon conclusory statements. Likewise, a court need not accept unwarranted factual inferences. Montgomery v. Huntington Bank, 346 F.3d 693, 697 (6th Cir. 2003) (citing Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987). The complaint must include direct or indirect allegations "respecting all the material elements to sustain a recovery under *some* viable legal theory." In re DeLorean Motor Co., 991 F.2d 1236, 1240 (6th Cir. 1993) (citations omitted). The Court may take into account any relevant plan documents in considering a motion to dismiss. In re Cardinal Health, Inc. ERISA Litig., 424 F.Supp.2d 1002, 1015 (S.D. Ohio 2006).

7

## III.    Fiduciary Status of Defendants

### A.    Defendants' Fiduciary Obligations

Defendants first contend that all Plaintiffs' claims should be dismissed because Defendants were not fiduciaries with respect to the Plan. ERISA contains a statutory definition of ERISA fiduciaries. Section 3(21)(A) that:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).    Therefore, fiduciary status under ERISA is defined "in functional terms of control and authority over the plan." Mertens v. Hewitt Assocs., 508 U.S. 248, 262, 124 L. Ed. 2d 161, 113 S. Ct. 2063 (1993); Arizona State Carpenters Pension Trust Fund v. Citibank, 125 F.3d 715, 720 (9th Cir. 1997); In re Enron Corp. Sec. Derivative & "ERISA" Litig., 284 F. Supp. 2d 511, 544 (S.D. Tex. 2003). According to the Sixth Circuit, courts must "examine the conduct at issue to determine whether it constitutes 'management' or 'administration' of the plan, giving rise to fiduciary concerns, or merely a business decision that has an effect on an ERISA plan not subject to fiduciary standards." Hunter v. Caliber Sys., 220 F.3d 702, 718 (6th Cir. 2000). Therefore, to state proper fiduciary duty claims against any of the Defendants, the Complaint must allege sufficient facts to show whether each "person was acting as a

8

fiduciary when taking the action subject to a complaint." <u>Seaway Food Town, Inc. v.</u> <u>Med. Mut. of Ohio</u>, 347 F.3d 610, 617 (6th Cir. 2003).

### B.    Whether Plaintiffs Sufficiently Allege Defendants' Fiduciary Status

Defendants argue that because none of the conduct on which Plaintiffs base the Complaint was carried out by Defendants in their performance of a fiduciary function, they cannot be held liable under ERISA. Defendants assert that the allegedly false financial statements and material non-disclosures identified in the Complaint only relate to press releases and financial data issued by Diebold to the general public or the SEC. Defendants argue that such communications did not relate to benefits available under the Plan and thus Defendants were not acting in a fiduciary capacity when the statements were issued.

Considering the liberal definition of an ERISA fiduciary, the Court finds that Plaintiffs' allegations are sufficient to survive a motion to dismiss. "Fiduciary status is a fact sensitive inquiry and courts generally do not dismiss claims at this early stage where the complaint sufficiently pleads defendants' ERISA fiduciary status." <u>In re Schering-Plough Corp. ERISA Litig.</u>, 2007 WL 2374989, at *7 (D.N.J. Aug. 15, 2007) (citing <u>Pietrangelo v. NUI Corp.</u>, 2005 WL 1703200, at *6-7 (D.N.J. July 20, 2005); <u>see also</u> <u>Smith v. Local 819 I.B.T. Pension Plan</u>, 291 F.3d 236, 241 (2d Cir. 2002). Broad allegations of fiduciary status that essentially follow the language of the statute, "unless squarely refuted by Plaintiffs' own pleading or by documents essential to their claims, are sufficient." <u>In re Honeywell Int'l ERISA Litig.</u>, No. Civ. 03-1214(DRD), 2004 WL

9

3245931, at *10 n.13 (D.N.J. Sept. 14, 2004) (citing In re WorldCom, 263 F.Supp.2d

745, 767-68 (S.D.N.Y. 2003)).

> It is typically premature to determine a defendant's fiduciary status at the
> motion to dismiss stage of the proceedings. Thus, under Federal Rule of
> Civil Procedure 8(a)'s notice pleading requirements, courts will typically
> have insufficient facts at the motion to dismiss stage from which to make
> the law/fact analysis necessary to determine functional or named fiduciary
> status.

Elec. Data. Sys., 305 F.Supp.2d at 665.   See also Rankin v. Rots, 278 F.Supp.2d 853,

879 (E.D. Mich. 2003).

Defendants also assert that the communications referenced by Plaintiffs in Count

II are not actionable under ERISA as a matter of law because Defendants were under no

obligation to disclose corporate business or financial information. Defendants cite

Sprague v. Gen. Motors Corp., 133 F.3d 388, 405 (6th Cir. 1998). However, in a

subsequent case directly addressing Sprague, the Sixth Circuit held (and characterized

Sprague as so holding) that a breach of fiduciary duty claim may be maintained where an

employer "*on its own initiative* provides inaccurate and misleading information about the

future benefits of a plan." James v. Pirelli Armstrong Tire Corp., 305 F.3d 439, 455 (6th

Cir. 2002). According to the Sixth Circuit, to immunize an ERISA fiduciary in such

circumstances "would be contrary to the basic concept of a fiduciary duty, which 'entails

not only a negative duty not to misinform, but also an affirmative duty to inform when

the trustee knows that silence might be harmful.'" Id. (quoting Krohn v. Huron Mem'l

Hosp., 173 F.3d 542, 548 (6th Cir. 1999)). The court in James also cited approvingly

Mullins v. Pfizer, Inc., 23 F.3d 663, 668 (2d Cir. 1994), which noted that "when a plan administrator speaks, it must speak truthfully." Id.

To the extent that the alleged misrepresentations included in the company's public filings did not relate specifically to Plan benefits, they are not actionable under ERISA. In re Ferro, 422 F.Supp.2d at 865. However, to the extent that the allegedly inaccurate or misleading communications relate to SEC filings that were incorporated by reference into the Plan documents, and/or were disseminated to Plan participants, such misrepresentations are actionable under ERISA. Goodyear, 438 F.Supp.2d at 795 (N.D. Ohio 2006) (citing Ferro, 422 F.Supp.2d at 865; see also In re Gen. Motors ERISA Litig., No. 05-71085, 2007 WL 2463233, at *6 (E.D. Mich. Aug. 28, 2007) ("Gen. Motors II"); In re CMS Energy ERISA Litig., 312 F.Supp.2d 898, 915-16 (E.D. Mich. 2004). For instance, issuance of a Form S-8, a short-form registration statement for securities issued to employees under employee benefit plans, "constitutes a legally sufficient fiduciary act at the pleading stage where it is alleged that the Form S-8 incorporated general SEC filings containing misrepresentations or material omissions." Gee v. UnumProvident Corp., No. 1:03-CV-147, MDL 1:03-MD-1552, 2005 WL 534873, at *16 (E.D. Tenn. Jan 13, 2005) (citing In re Reliant Energy ERISA Litig., 336 F.Supp.2d 646, 661-62 (S.D. Tex. 2004)).

Plaintiffs also allege that Defendants communicated with Plan participants, and that those communications included statements regarding investments in Diebold stock. (Compl. ¶ 108.) Plaintiffs allege that Defendants incorporated the company's SEC filings into certain documents disseminated to Plan participants, including Form S-8 registration

11

statements, SPDs and prospectuses. (Compl. ¶ 109.) Plaintiffs assert that such communications were inaccurate, incomplete and misleading because they failed to inform the participants of the difficulties the company was experiencing with its voting machine business. (Compl. ¶ 206.)

The Court finds that these allegations are sufficient to demonstrate fiduciary conduct at this stage in the litigation. Further, the Court notes that the law regarding a fiduciary's duty of disclosure is "both controversial and evolving," and, therefore, the issue is not appropriate for a motion to dismiss. In Re AEP ERISA Litigat., 327 F. Supp. 2d 812, 825 (S.D. Ohio 2004) (citing Xcel Energy, 312 F. Supp. 2d at 1182 ("The issue is more amenable to resolution on a motion for summary judgment after discovery has shed further light on the facts and circumstances of the case.").

The Court will now look at each breach of fiduciary duty claim and assess Defendants' alternative arguments.

## IV.       Breach of Fiduciary Duty Claims

### A.       Count I- Prudent Investment

Plaintiffs allege that Defendants are ERISA fiduciaries regarding the failure to prudently and loyally manage the Plan's assets. Specifically, Plaintiffs aver that Defendants breached their fiduciary duties of loyalty and prudence by continuing to offer Diebold stock as an investment under the Plan despite the fact that they knew the company's stock price was artificially inflated. Defendants counter that Count I must be dismissed because they are entitled to a presumption of reasonableness with respect to decisions made in a fiduciary capacity. Defendants argue that this presumption of

reasonableness applies because the Plan constitutes an employee stock-ownership plan ("ESOP"). Before turning to the dispute over whether the Plan constitutes an ESOP, the Court will first outline the general duties of fiduciaries under ERISA.

### 1.        Prudent Person Standard

The Sixth Circuit has enumerated three general duties of pension plan fiduciaries under Section 1104(a)(1). Kuper v. Iovenko, 66 F.3d 1447, 1458 (6th Cir. 1995). The first is a "duty of loyalty" pursuant to which "all decisions regarding an ERISA plan 'must be made with an eye single to the interest of the participants and beneficiaries.'" Id. The second obligation imposed under ERISA, the "prudent person" obligation, imposes "an unwavering duty" to act both "as a prudent person would act in a similar situation" and "with single minded devotion" to those same plan participants and beneficiaries. Id. Finally, an ERISA fiduciary must "act for the exclusive purpose" of providing benefits to plan beneficiaries. Id. Therefore, "[a] fiduciary breaches his duty by providing plan participants with materially misleading information, 'regardless of whether the fiduciary's statements or omissions were made negligently or intentionally.'" See AEP, 327 F. Supp. 2d at 819.

Pursuant to these duties of prudence and loyalty, ERISA requires fiduciaries to diversify the investments of the plan so as to minimize the risk of large losses unless, under the circumstances, it is clearly prudent no to do so. 29 U.S.C. § 1104(a)(1)(C). However, an "eligible independent account plan" ("EIAP") is exempt from the prudent person standard of care requirement that plan fiduciaries diversify the Plans investments. A plan is an EIAP when it is an individual account plan which is also a profit sharing,

stock bonus, thrift, or savings plan. Id. § 1107(d)(3)(A). In the case of an EIAP, the diversification requirement and the prudence requirement (to the extent that it requires diversification) are not violated by acquisition of or holding of qualifying employer securities. 29 U.S.C. § 1103(a)(1)(c) and (2). This special rule for EIAPs reflects a "strong policy and preference in favor of investment in employer stock." Unaka Co., 2005 U.S. Dist. LEXIS 43660, 2005 WL 1118065, at *15.

One type of EIAP is an employee stock ownership plan ("ESOP"), an ERISA plan investing primarily in "qualifying employer securities" – which are usually shares of stock in the employer creating the plan. 29 U.S.C. § 1107(d)(6)(A). Congress envisioned that an ESOP would function both as an employee retirement benefit plan and a technique of corporate finance that would encourage employee ownership. Kuper, 66 F.3d at 1457. Because of these dual purposes, ESOPs are not designed to guarantee retirement benefits, and they place employee retirement assets at much greater risk than the typical diversified ERISA plan. Id.

Due to the special treatment of ESOPs by ERISA legislation, both the Sixth and Third Circuits have held that an ESOP fiduciary's decision to invest in employer securities be reviewed for an abuse of discretion.    Kuper, 66 F.3d at 1459; Moench v. Robertson, 62 F.3d 553 (3d Cir. 1995). Kuper creates a presumption that a fiduciary's decision to remain invested in employer securities was reasonable. 66 F.3d at 1459. A plaintiff may then rebut this presumption of reasonableness by showing that a prudent fiduciary acting under similar circumstances would have made a different

14

investment decision. Id. ESOPs, however, are still governed by ERISA requirements for fiduciaries. Id.

### 2.    Whether the Plan Constitutes an ESOP

Defendants maintain that the Plan constitutes an ESOP, thus entitling the fiduciaries to a presumption of reasonableness. Plaintiffs first argue that a determination of whether the plan is an ESOP is not appropriate for determination on a motion to dismiss. Several courts have reached the same conclusion. See Shirk v. Fifth Third Bancorp, No. 05-cv-49, 2007 WL 1100429, at *9 (S.D. Ohio Apr. 10, 2007) (quoting Cardinal Health, 424 F.Supp.2d at 1032-33) ("Where the plaintiffs are alleging a breach of fiduciary duty based not only on a failure to diversify but also because a company's stock was itself an imprudent investment, 'it is neither necessary notrappropriate' for the Court to determine whether a plan qualifies as an ESOP on a motion to dismiss."); see also In re AEP ERISA Litig., 327 F.Supp.2d 812, 828 (S.D. Ohio 2004).

Other courts, however, hold that determining whether a plan is an ESOP is permissible at the pleading stage because the question is purely a legal one. In re Gen. Motors ERISA Litig., No. 05-71085, 2006 WL 897444, at *7 (E.D. Mich. Apr. 6, 2006) ("*Gen. Motors I*"); In re Duke Energy ERISA Litig., 281 F.Supp.2d 786, 794 (W.D.N.C. 2003). "[W]hether the Plans are ESOPs depends entirely upon whether they invest primarily in qualifying [employer] stock and meet the guidelines set by the Internal Revenue Code and the Secretary of the Treasury." Gen. Motors I, 2006 WL 897444, at *7 (citing 29 U.S.C. § 1107(d)(6)).

ERISA defines an ESOP as an individual account plan:

15

(A) which is a stock bonus plan which is qualified, or a stock bonus plan and money purchase plan both of which are qualified, under section 401 of Title 26, and which is designed to invest primarily in qualifying employer securities, and

(B) which meets other such requirements as the Secretary of the Treasury may prescribe by regulation.

29 U.S.C. § 1107(d)(6). According to the applicable Treasury regulation, "[t]o be an ESOP, a plan must be formally designated as such in the plan document." 29 C.F.R. § 2550.407d-6(a)(2).

The Court finds that it is only proper to determine whether the Plan constitutes an ESOP if the two criteria are readily ascertainable from the plan documentation. In the instant case, however, there appears to be a factual dispute about whether the Plan's primary purpose was to invest in qualified employer securities, or to encourage eligible employees to save for retirement, as the Investment Guidelines suggest. Accordingly, the Court concludes that no determination regarding the Plan's status as an ESOP is appropriate at this stage.[6] Because the presumption of reasonableness Defendants seek to employ as a bar to Plaintiffs' claim cannot be applied in the absence of an affirmative ESOP finding, dismissal is not warranted at this stage.[7]

---

[6] According to the Complaint, Diebold stock comprised only 37% of Plan assets. This allegation lends further support to the Court's determination that a factual dispute exists about the Plan's "primary purpose."

[7] Plaintiffs argue that the Plan was not an ESOP because investment in employer stock was permissive, not mandatory. Further, Plaintiffs contend that the primary design of the Plan was not investment in qualifying employer securities, but "to encourage eligible employees to save for retirement." (Statement of Investment Guidelines, Compl. Ex. F, at 2.) The permissive nature of investment in company stock is irrelevant, however, as the statute requires only that an ESOP be designed primarily, not solely, to invest in employer securities.

### 3.    Presumption of Reasonableness

Even were the Court to find that the Plan constitutes an ESOP, the Defendants are

not entitled to a presumption of reasonableness at this stage in the litigation. Defendants

assert that the presumption of reasonableness cannot be overcome as a matter of law

where it can be shown that: (1) the price of the stock at issue fluctuated; and (2) at least

some stock analysts recommended holding the stock. Kuper, 66 F.3d at 1460. As

discussed earlier, the Kuper court found that defendants presented sufficient evidence at

trial to sustain a finding that a reasonable fiduciary would have continued to hold the

stock during the class period, and that the plaintiffs failed to overcome the presumption

of reasonableness. The Sixth Circuit relied on evidence presented to the trial court that

the price of the stock at issue fluctuated significantly during the period and that several

investment advisors recommended holding the stock. Id. at 1460.

However, the Sixth Circuit gave no indication at all that it was creating a pleading

standard, and instead merely identified facts in the record that led it to conclude that the

trial court did not abuse its discretion in finding in favor of the defendants. Courts have

consistently rejected application of Kuper at the pleading stage in the manner proposed

by Defendants. See AEP, 327 F.Supp.2d at 828-29 (rejecting application of Kuper at

pleading stage); see also In re Goodyear Tire & Rubber Co. ERISA Litig., 438 F.Supp.2d

783, 793 (N.D. Ohio 2006); In re Ferro Corp. ERISA Litig., 422 F.Supp.2d 850, 860

(N.D. Ohio 2006); In re JDS Uniphase Corp. ERISA Litig., 2005 WL 1662131, at *8

(N.D. Cal. July 14, 2005).

17

In JDS, for example, the court denied Defendants' motion to dismiss an ERISA action where Defendants relied on the abuse of discretion standard as applied by the Kuper court. In re JDS Uniphase Corp. ERISA Litig., 2005 WL 1662131, at *8 (N.D. Cal. July 14, 2005). The court reasoned that, "whether on a full development of the record the evidence will sustain plaintiffs' allegations remains to be seen, but on this motion to dismiss we must accept the well-pleaded allegations of the complaint as true." Id. Therefore, the Court declines to apply the abuse of discretion standard at this stage in the pleadings.

### B.   Count II- Providing Incomplete and Inaccurate Information

In Count II, Plaintiffs assert that Defendants breached a fiduciary duty by negligently misrepresenting and failing to disclose material information to Plan participants and providing information that omitted undisclosed materially adverse information. (Compl. ¶ 143.) In response, Defendants assert that even if Diebold's SEC filings and annual reports were deceptive and misled the Participants about the suitability of Diebold's stock as an investment option under the Plan, those SEC filings and annual reports were not "fiduciary communications" subject to any ERISA disclosure statement.

"[A] fiduciary may not materially mislead those to whom the duties of loyalty and prudence described in 29 U.S.C. § 1103 are owed." See AEP, 327 F. Supp. 2d at 831. To establish a claim for breach of fiduciary duty based on alleged misrepresentations, a plaintiff must show that: (1) defendant was acting in a fiduciary capacity when it made the challenged statements; (2) the statements constituted material misrepresentations; and (3) plaintiff relied on them to his/her detriment. See Id. at 832. Other courts have also

18

deemed it unlawful for a fiduciary to miscommunicate affirmatively or to mislead plan participants about material matters regarding the plan. See Id. at 831; see, e.g. Enron, 284 F. Supp. 2d at 555. Furthermore, in Unisys the court held that "an ERISA fiduciary has a duty under section 1104(a) to convey complete and accurate information when it speaks to participants and beneficiaries regarding plan benefits." See 74 F.3d at 441. Subsequently, Sixth Circuit stated that "with respect to the situation presented when an employer on its own initiative disseminates false and misleading information about a benefit plan, the position of the Sixth Circuit is aligned with that of the Third Circuit in Unisys." See AEP, 327 F. Supp. 2d at 831.

Defendants argue that Count II should be dismissed because by relying on a fraud on the market theory ("FOTM"), Plaintiffs have failed to sufficiently plead proximate causation (also called "loss causation"). Defendants further argue that Plaintiffs have failed to identify fiduciary conduct or plead detrimental reliance.

### 1.    Loss Causation

The Court will first consider Defendants' arguments on the subject of loss causation. Defendants contend that in order to state an ERISA claim based on a misrepresentation, a plaintiff must plead that he suffered actual damages caused by the defendant's fiduciary breach, and must show a "causal link: between the alleged breach and the harm suffered. See Id.; Kuper, 66 F.3d at 1459-60 ("Proof [of] a causal connection. . . is required between a breach of fiduciary duty and the loss alleged"; finding that a fiduciary's failure to investigate an investment decision is not a sufficient causal link to the harm suffered by the plan). They assert that, where, as here, a plaintiff's

19

alleged damages flow from investing in a publicly-traded stock, <u>Dura Pharms., Inc. v. Broudo</u> instructs that merely asserting that a stock's price was "artificially inflated" at the time of the plaintiff's purchase is not adequate to allege that a misstatement caused loss to the plaintiff. <u>See Id.</u>; 544 U.S. 336, 125 S. Ct. 1627, 1630-31, 161 L. Ed. 2d 577 (2005). Plaintiffs counter that Defendants' argument fails because <u>Dura</u> does not apply in the ERISA context.

Defendants cite <u>Dura</u> for the proposition that the loss causation standard for pleading fraud in securities actions also applies to breach of fiduciary duty claims under ERISA. However, there is no authority in support of an application of <u>Dura</u> in the ERISA context. To the contrary, the notion that securities laws immunize ERISA fiduciaries against liability for imprudent investments, including failing to disclose information to participants, has consistently been rejected. <u>JDS Uniphase</u>, 2005 WL 1662131, at *9; <u>In re Enron Corp. Sec., Derivative & ERISA Litig.</u>, 284 F.Supp.2d 511, 565 (S.D. Tex. 2003); <u>WorldCom</u>, 263 F.Supp.2d at 765-67. Therefore, the Court declines to hold that ERISA requires Plaintiffs to plead loss causation as applied in the securities context.

### 2.    **Actual/Detrimental Reliance**

The Court now turns to Defendants' additional assertion that Count II fails because there is no allegation that Plaintiffs read and relied upon the alleged misstatement to their detriment. Defendants contend that "there is not a single allegation that any Plaintiffs read any of the SEC filings or press releases comprising the bulk of the allegations in the Complaint; hence, there can be no finding that the supposed

20

misrepresentations or omissions caused harm." (Doc. No. 41.) Plaintiffs counter, asserting that Defendants breached their duty to provide complete and accurate information in the SEC filings which became fiduciary representations when incorporated into the Plan documents. Therefore, Plaintiffs argue, reliance can be presumed. (Doc. No. 46.)

In AEP and In Re Cardinal Health, district courts in the Sixth Circuit, determined that the language used to plead reliance was identical to that employed by Plaintiffs in the instant case. In re Cardinal Health ERISA Litig., 424 F. Supp. 2d 1002, 1046 (S.D. Ohio 2006); AEP, 327 F. Supp 2d at 833. The Complaint alleges that "Plaintiff and the class relied to their detriment on ... Defendants' incomplete and inaccurate statements regarding the company stock." (Compl. ¶ 136.) Accordingly, the Court finds that the issue of reliance is more amenable to resolution on a motion for summary judgment or at trial, after discovery has developed a complete evidentiary record. Plaintiffs have, therefore, pled reliance adequately to withstand Defendants' various motions to dismiss.

### 3. Material Misrepresentations

Finally, Defendants assert that Claim II fails because the alleged miscommunications were not material, citing the Sixth Circuit in James v. Pirelli Armstrong Tire Corp., 305 F. 3d 439 (Sixth Cir. 2002). The Pirelli court articulated that when determining the materiality of an alleged misrepresentation, the focus is on whether "there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed decision." Pirelli, 205 F. 3d at 449. However, the court went on to state:

21

> Whether an affirmative misrepresentation was "material" is a mixed question of law and fact ... [A] misrepresentation is material if there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed decision about if and when to retire.

Pirelli, 305 F. 3d at 449 (citing Fischer v. Phila. Elec. Co., 994 F.2d 130, 135 (3d Cir. 1993))

Plaintiffs allege that Diebold "was experiencing accounting irregularities which led to both informal and formal inquiries by the [SEC] and a restatement of certain of the Company's financial statements." (Compl. at ¶ 109). Plaintiffs allege that such statements mislead Plaintiffs into thinking that Diebold stock was a prudent retirement investment. The Court finds such allegations sufficient at this stage in the litigation, as materiality is a mixed question of law and fact.

### C.    Counts III through VI

Defendants' sole argument in support of dismissal of Counts III through VI is that such claims are derivative of the prudence and misrepresentation claims set forth in Counts I and II. Defendants contend that Plaintiffs' failure to monitor, breach of duty of loyalty, co-fiduciary liability, and knowing participation claims must be dismissed because such claims "depend upon the establishment of an underlying breach of fiduciary duty cognizable under ERISA." Duke Energy, 281 F.Supp.2d at 795. Because the Court concludes that Plaintiffs have stated claims for breach of fiduciary duty in Counts I and II, Defendants' argument with respect to Counts III through VI must also fail.

22

## V.      CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (Doc. No. 44) is

**DENIED**. The Court further orders that a status conference is set for **June 12, 2008 at**

**10:00 a.m.** Counsel shall appear in person.

**IT IS SO ORDERED.**


**/s/ Peter C. Economus – May 28, 2008**
**PETER C. ECONOMUS**
**UNITED STATES DISTRICT JUDGE**